**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| John Doe 1, et al., | |
| *Plaintiffs,* | |
| v. | Civil Action No. 24-03487-JKB |
| World Wrestling Entertainment, LLC, et al., | |
| *Defendants.* | |

**DEFENDANT LINDA E. MCMAHON'S MEMORANDUM
<u>IN SUPPORT OF MOTION TO DISMISS AND REQUEST FOR HEARING</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ............................................................................. iii

INTRODUCTION .............................................................................................. 1

BACKGROUND ................................................................................................. 2

ARGUMENT....................................................................................................... 5

    I.   Linda E. McMahon is not subject to personal jurisdiction in Maryland, and Plaintiffs' claims against her should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2)................................................................................... 5

        A.  WWE's contacts with Maryland do not authorize the exercise of personal jurisdiction over Ms. McMahon. .............................................. 6

        B.  Maryland's long-arm statute does not authorize specific jurisdiction over Ms. McMahon. ............................................................................... 8

            1.    Plaintiffs do not allege any business activity that would support the exercise of jurisdiction under subsections (b)(1) or (b)(2) of Maryland's long-arm statute. ............................. 9

            2.    Plaintiffs do not allege any tortious act or omission that would support the exercise of jurisdiction under subsections (b)(3) or (b)(4) of Maryland's long-arm statute.................. 10

        C.  The exercise of specific jurisdiction over Ms. McMahon would not comport with due process. ................................................................. 14

            1.    Ms. McMahon has not purposefully availed herself of the privilege of conducting activities in Maryland, and Plaintiffs fail to plead facts alleging otherwise.................................... 15

            2.    Plaintiffs' claims do not arise from any activity of Ms. McMahon in Maryland. ........................................................17

            3.    The exercise of personal jurisdiction over Ms. McMahon would not be constitutionally reasonable............................. 18

    II.  Plaintiffs' claims against Linda E. McMahon are not legally cognizable and should be dismissed under Federal Rule of Civil Procedure 12(b)(6). ......... 20

A. Plaintiffs fail to adequately plead any duty of care owed to them by Ms. McMahon. .......................................................................................... 21

    1. Maryland does not recognize a "general duty" to protect children. ............................................................................ 22

    2. Plaintiffs fail to plead any employment-related duty........... 23

    3. Plaintiffs fail to plead any duty arising from alleged foreseeability.......................................................................... 24

    4. Plaintiffs fail to plead any other "special relationship" triggering a duty of care........................................................ 25

B. Plaintiffs fail to plead injuries resulting from any alleged negligence related to Pat Patterson or Terry Garvin................................................. 27

CONCLUSION ........................................................................................... 27

# TABLE OF AUTHORITIES

**CASES**

*Aphena Pharma Sols.-Maryland LLC v. BioZone Lab'ys, Inc.,*
  912 F. Supp. 2d 309 (D. Md. 2012) .............................................................. 10

*Ashburn v. Anne Arundel Cnty.,*
  306 Md. 617, 510 A.2d 1078 (1986) ............................................................. 21

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..................................................................................... 20

*Asphalt & Concrete Servs., Inc. v. Perry,*
  221 Md. App. 235, 108 A.3d 558 (2015), *aff'd,* 447 Md. 31, 133 A.3d 1143 (2016)  21, 23

*Bell Atl. Corp v. Twombly,*
  550 U.S. 544 (2007) ..................................................................................... 20

*Birrane v. Master Collectors, Inc.,*
  738 F. Supp. 167 (D. Md. 1990) ................................................................... 10

*Bobo v. State,*
  346 Md. 706, 697 A.2d 1371 (1997) ............................................................. 22

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.,*
  582 U.S. 255 (2017) .................................................................................. 6, 19

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) ................................................................................. 18, 19

*Calder v. Jones,*
  465 U.S. 783 (1984) ....................................................................................... 7

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,*
  334 F.3d 390 (4th Cir. 2003) ................................................................ 5, 6, 16

*Christian Book Distributors, Inc. v. Great Christian Books, Inc.,*
  137 Md. App. 367, 768 A.2d 719 (2001) ...................................................... 13

*Consulting Eng'rs Corp. v. Geometric Ltd.,*
  561 F.3d 273 (4th Cir. 2009) ........................................................... 15, 17, 18

*DeBellis v. Woodit,*
  728 F. Supp. 3d 330 (D. Md. 2024) ............................................................. 13

*Doe v. Alsaud,*
  12 F. Supp. 3d 674 (S.D.N.Y. 2014) ...................................................... 24, 26

*Doe v. Comm. Coll. of Baltimore Cnty.*,
  595 F. Supp. 3d 392 (D. Md. 2022)...............................................................25

*Dring v. Sullivan*,
  423 F. Supp. 2d 540 (D. Md. 2006) ............................................................. 19

*ESAB Grp., Inc. v. Centricut, Inc.*,
  126 F.3d 617 (4th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998)...................17

*Fletcher v. Maryland Transit Admin.*,
  741 F. App'x 146 (4th Cir. 2018) (unpublished)............................................26

*Glynn v. EDO Corp.*,
  536 F. Supp. 2d 595 (D. Md. 2008) .................................................................7

*Hampton v. Wells Fargo Bank, N.A.*,
  Civ. No. DLB-22-1712, 2023 WL 6200009 (D. Md. Sept. 22, 2023) ...............7

*Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*,
  299 F. Supp. 2d 505 (D. Md. 2004) .................................................................7

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) .......................................................................................17

*Laser v. Wilson*,
  58 Md. App. 434, 473 A.2d 523 (1984) .........................................................22

*Legends Title, LLC v. Cap. One, Nat'l Ass'n*,
  659 F. Supp. 3d 637 (D. Md. 2023)...........................................................9, 11

*Lewis v. Willough at Naples*,
  311 F. Supp. 3d 731 (D. Md. 2018) ..........................................................9, 15

*Mitchell v. Rite Aid of Maryland, Inc.*,
  257 Md. App. 273, 290 A.3d 1125, *cert. denied*, 483 Md. 579,
  296 A.3d 419 (2023).......................................................................................24

*Molock v. Dorchester Cnty. Family YMCA, Inc.*,
  139 Md. App. 664, 779 A.2d 963 (2001) ..................................................25, 26

*New Wellington Fin. Corp.* v. *Flagship Resort Dev. Corp.*,
  416 F.3d 290 (4th Cir. 2005)............................................................................5

*Orbita Telecom SAC v. Juvare LLC*, 606 F. Supp. 3d 240 (D. Md. 2022) .......................11

*Pace v. State*,
  425 Md. 145, 38 A.3d 418 (2012) ............................................................20, 27

*Pandit v. Pandit*, 808 F. App'x 179 (4th Cir. 2020) (unpublished) ......................11, 13, 14

iv

*Pandit v.* Pandit, No. 8:18-CV-01136-PX, 2018 WL 5026373 (D. Md. Oct. 17, 2018),
   *aff'd,* 808 F. App'x 179 (4th Cir. 2020) ....................................................................13, 14

*Phillips* v. *British Airways,*
   743 F. Supp. 3d 702 (D. Md. 2024)....................................................................5, 9, 12, 14

*Roman Cath. Archbishop of Washington v. Doe,*
   489 Md. 514 330 A.3d 1069  (2025) ........................................................................... 1

*Sibert v. Flint,*
   564 F. Supp. 1524 (D. Md. 1983).....................................................................................11

*Talkington v. Atria Reclamelucifers Fabrieken BV,*
   152 F.3d 254 (4th Cir.), *cert. dismissed*, 525 U.S. 1062 (1998)....................................20

*United States v. Undetermined Quantities of Articles of Drug*,
   145 F. Supp. 2d 692 (D. Md. 2001) ............................................................................... 13

*Universal Leather, LLC v. Koro AR, S.A.*,
   773 F.3d 553 (4th Cir. 2014), *cert. denied*, 576 U.S. 1035 (2015)...............14, 15, 17, 18

*Weller v. Cromwell Oil Co.*,
   504 F.2d 927 (6th Cir. 1974) ........................................................................................ 7

*Zinz v. Evans & Mitchell Indus.*,
   22 Md. App. 126, 324 A.2d 140 (1974)...........................................................................11

**STATUTES**

Md. Code Ann., Cts. & Jud. Proc. § 5-117(b) .................................................................1, 25

Md. Code Ann., Cts. & Jud. Proc. § 6-102....................................................................... 6

Md. Code Ann., Cts. & Jud. Proc. § 6-103........................................................................ 6

Md. Code Ann., Cts. & Jud. Proc. § 6-103(a) ............................................................... 9, 10

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)................................................................. 9

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1) .......................................................... 9, 10

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(2) ............................................................ 10

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3) ............................................................11

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(4) ....................................................11, 13, 14

Md. Code Ann., Fam. Law § 5-705(a)(1).........................................................................22

**RULES**

Fed. R. Civ. P. 12(b)(2) ................................................................................ 2, 5

Fed. R. Civ. P. 12(b)(6) .............................................................................. 2, 20

**REGULATIONS**

Md. Code Regs. 09.14.01.01B(12) (1995) ........................................................ 12

Md. Code Regs. 09.14.02.01C (amended 2024) .............................................. 12

## **INTRODUCTION**

This lawsuit makes claims based on decades-old allegations of sexual abuse perpetrated at unspecified times and places in the early to mid-1980's by a now-deceased individual, Mel Phillips. *See* ECF No. 1-6 ("Compl.") ¶¶ 1, 5. Plaintiffs allege that in the 1980's, Phillips used his role as a ringside announcer for World Wrestling Entertainment, LLC ("WWE") to meet and abuse underage boys, including Plaintiffs. *Id.* ¶¶ 2, 3.

Following Maryland's decision to eliminate the statute of limitations applicable to civil claims arising out of alleged incidents of child sexual abuse, *see* Md. Code Ann., Cts. & Jud. Proc. § 5-117(b); *see also Roman Cath. Archbishop of Washington v. Doe*, 489 Md. 514, 523, 330 A.3d 1069, 1074–75 (2025), Plaintiffs filed suit against WWE, its parent company TKO Group Holdings, Inc. ("TKO"), and its cofounders Vincent and Linda McMahon. Phillips died in 2012, and neither he nor his estate are named as parties to Plaintiffs' suit. *See* Compl. ¶ 24 n.8. Instead, given Phillips's former affiliation with WWE, Plaintiffs seek to hold Defendants responsible under theories of purported negligent supervision and retention. *Id.* ¶¶ 277–93.

Plaintiffs' 300-paragraph Complaint is replete with lurid details of alleged sexual abuse by Phillips and certain other individuals associated in the past with WWE. What stands out from the Complaint, however, is what it lacks: any basis for personal jurisdiction over Defendants in Maryland, and any plausible claim for relief. The deficiencies in Plaintiffs' case against Ms. McMahon are particularly stark. Plaintiffs acknowledge that Ms. McMahon is a Connecticut citizen; plead no acts or omissions of Ms. McMahon that occurred in Maryland; and allege only a negligible connection between Ms. McMahon and Maryland that predates and bears no relationship to Plaintiffs' claims. Even if this Court had personal jurisdiction over Ms. McMahon (it does not), Plaintiffs

fail to plead any legally cognizable duty that Ms. McMahon owed to them, an indispensable element of any negligence claim.

Because Plaintiffs' Complaint fails to meet these basic requirements for prosecuting civil claims against her, Defendant Linda E. McMahon respectfully moves to dismiss the claims pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## **BACKGROUND**

Linda E. McMahon is the co-founder and a former executive of WWE. Compl. ¶ 235. She is a citizen of Connecticut, *id.*, and is currently serving as the United States Secretary of Education, *see* Ex. A, Declaration of Linda E. McMahon ("L. McMahon Decl.") ¶ 2. Plaintiffs are five individuals proceeding under the pseudonyms "John Doe 1–5." John Does 1 and 2 are citizens of Massachusetts, Compl. ¶¶ 223–24; John Does 3 and 5 are citizens of Pennsylvania, *id.* ¶¶ 225, 227; and John Doe 4 is a citizen of Florida.[1] *Id.* ¶ 226. Ms. McMahon recently learned Plaintiffs' true names, but to the best of her knowledge and recollection she has never met or communicated with them. L. McMahon Decl. ¶ 11.

Plaintiffs allege that Mel Phillips sexually abused each of them during the 1980's, when they were minors. John Doe 1 alleges that he met Phillips in 1981 or 1982, and that Phillips sexually abused him multiple times during a 12 to 18-month period thereafter. Compl. ¶¶ 162, 176. John Doe 1 alleges specific instances of abuse in Pennsylvania and Massachusetts. *Id.* ¶¶ 168–71. He also alleges that on one occasion, Phillips took him on

---

[1]    No Plaintiff, or any party to this lawsuit, is a citizen of Maryland. Compl. ¶¶ 223–41.

a trip to Maryland to see a wrestling show and abused him in a hotel room after the show. *Id.* ¶¶ 173–74.

John Doe 2 alleges that he attended wrestling shows with Phillips from 1984 to 1989 in at least the following states: Maryland, Pennsylvania, Rhode Island, Massachusetts, Connecticut, and New York. *Id.* ¶¶ 179, 185. While John Doe 2 alleges that he was abused "in all those states multiple times," *id.* ¶ 185, he does not plead any specific instance of alleged abuse that took place in Maryland.

John Doe 3 alleges that he met Phillips in the mid-1980s. *Id.* ¶¶ 188. While John Doe 3 alleges specific acts of abuse in Pennsylvania, *id.* ¶¶ 189–90, and that "Phillips sexually abused him in similar ways at most, if not all of the subsequent wrestling shows he attended with Phillips," *id.* ¶ 191, John Doe 3 does not plead any *specific* instance of alleged abuse that took place in Maryland.

John Doe 4 alleges he was abused by Phillips in 1983 or 1984 after meeting Phillips in Pennsylvania. *Id.* ¶¶ 198–99. John Doe 4 further alleges that on an unspecified date, Phillips brought John Doe 4 to a "WWE Event" in Landover, Maryland, and sexually abused him after the event in a motel. *Id.* ¶ 201.

John Doe 5 alleges he met Phillips in Pennsylvania in 1983 or 1984, and that Phillips took him and others to shows in New York and Philadelphia. *Id.* ¶¶ 213–16. John Doe 5 further alleges that on an unspecified date, Phillips brought John Doe 5 to a "WWE Event" in Landover, Maryland, and sexually abused him after the event in a motel. *Id.* ¶¶ 217–18.

Plaintiffs claim that Defendants, including Ms. McMahon, knew or should have known that Phillips was a child abuser but failed to warn or protect Plaintiffs. *See, e.g.*, Compl. ¶¶ 24 & n.8, 274, 278–82. In particular, Plaintiffs allege that: (1) in 1982 or 1983,

Phillips "was spotted in a car" performing oral sex on a minor, and that a security guard later brought the minor to Mr. McMahon and his father, *id.* ¶ 42;[2] (2) in 1988, the McMahons fired Phillips because his "relationship with kids seemed peculiar and unnatural" but then rehired Phillips a few weeks later "with the caveat that Phillips steer clear from kids," *id.* ¶¶ 45, 14, 42; and (3) Mr. McMahon had "eyes and ears everywhere" and that the McMahons "clearly knew what was going on," *id.* ¶¶ 37, 69.

Plaintiffs' Complaint also includes nonspecific allegations of wrongdoing lifted from a recent *Netflix* documentary, *see, e.g.*, Compl. ¶¶ 46, 47, 54, 126, 129, 149, and from post-1992 press accounts of the so-called "Ring Boy Scandal," *see, e.g., id.* ¶¶ 40–42, 60, 65. Plaintiffs further dedicate dozens of paragraphs of the Complaint to alleged sexual misconduct committed by individuals *other* than Phillips, directed at individuals *other* than Plaintiffs. *See, e.g., id.* ¶¶ 66–69, 81, 115, 117, 123. Many of these allegations are atmospheric, anecdotal, and hearsay-based, and appear to be marginally relevant, at best, to Plaintiffs' claims.

On October 23, 2024, Plaintiffs filed suit in the Circuit Court for Baltimore County, Maryland, alleging two causes of action against all Defendants: Negligence (Count I), Compl. ¶¶ 247–83; and Negligent Hiring, Training, and Retention (Count II), *id.* ¶¶ 284–300. In essence, Plaintiffs claim that Defendants acted negligently in failing to prevent Phillips from abusing them. Plaintiffs also appear to claim injury stemming from the negligent hiring or supervision of other former WWE employees (Terry Garvin and Pat Patterson, both of whom are deceased), *see id.* ¶¶ 279–80, 287, 297, although Plaintiffs do not allege that Garvin or Patterson sexually abused them.

---

[2]    Plaintiffs do not plead what, if anything, Mr. McMahon was told about Phillips, or whether Ms. McMahon ever learned of this incident at all.

On December 2, 2024, WWE and TKO removed this case on diversity jurisdiction grounds. ECF No. 1. Shortly thereafter, this Court issued a stay pending the outcome of a constitutional challenge to the Child Victims Act of 2023 ("CVA"), which eliminated the statute of limitations applicable to civil claims in Maryland arising from allegations of child sexual abuse. ECF No. 13. On February 3, 2025, the Supreme Court of Maryland found the CVA to be constitutional as applied to the challenged cases. On February 19, this Court lifted the stay and ordered that Defendants respond to Plaintiffs' complaint by April 7, 2025. ECF No. 31.

## **ARGUMENT**

### I.    **Linda E. McMahon is not subject to personal jurisdiction in Maryland, and Plaintiffs' claims against her should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).**

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. Corp.* v. *Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). To survive a motion to dismiss, a plaintiff must "make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.* Such a showing requires pleading sufficient facts that, if true, would support the court's exercise of its power over the defendant. *Phillips v. British Airways*, 743 F. Supp. 3d 702, 707 (D. Md. 2024).

"Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Because Maryland law does not authorize this Court's exercise of personal jurisdiction over Linda

E. McMahon, Plaintiffs' claims against her must be dismissed. The exercise of personal jurisdiction over Ms. McMahon in this case would also be inconsistent with the requirements of Due Process.

Maryland law recognizes two types of personal jurisdiction: general and specific. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 6-102 & 6-103. As the United States Supreme Court has explained, "[a] court with general jurisdiction may hear *any* claim against that defendant[.]" *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (emphasis in original). Specific jurisdiction, however, "is very different." *Id.* "In order for a state court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Id.* (cleaned up) (emphasis in original).

Plaintiffs do not (and could not) claim that Ms. McMahon, a natural person domiciled in Connecticut, *see* Compl. ¶ 235; L. McMahon Decl. ¶ 2, is subject to general jurisdiction in Maryland. Instead, Plaintiffs rely on Maryland's specific jurisdiction statute. Compl. ¶ 242 (citing Md. Code Ann., Cts. & Jud. Proc. § 6-103). "[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst*, 334 F.3d at 396. Neither condition is satisfied with respect to Ms. McMahon.

### A.    WWE's contacts with Maryland do not authorize the exercise of personal jurisdiction over Ms. McMahon.

Before turning to the specific reasons Ms. McMahon is plainly not subject to personal jurisdiction in Maryland, it is worth emphasizing that "[e]ach defendant's

contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). "Personal jurisdiction must be based on an individual's *personal contacts* with or purposeful availment of the forum state." *Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d 505, 513–14 (D. Md. 2004) (emphasis added).

Plaintiffs seem to believe that any contacts between WWE and Maryland can be imputed to Ms. McMahon for personal jurisdiction purposes. *See, e.g.*, Compl. ¶ 244 (in "Jurisdiction and Venue" section of Complaint, asserting that "WWE shows were routinely held in Maryland, which was one of the company's key locations from the earliest days of the McMahons' ownership of the WWE[.]"). This is not the law. "Personal jurisdiction over an individual officer, director, or employee of a corporation does not automatically follow from personal jurisdiction over the corporation." *Harte-Hanks*, 299 F. Supp. 2d at 513 (citing cases); *see also Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 604 (D. Md. 2008) ("Employment is insufficient to give rise to personal jurisdiction, and a corporation's contacts with a forum state cannot be attributed to its employees."); *Hampton v. Wells Fargo Bank, N.A.*, Civ. No. DLB-22-1712, 2023 WL 6200009, at *1, 4 (D. Md. Sept. 22, 2023) (dismissing claims against individual defendants, who were officers of the defendant company, for lack of personal jurisdiction where the plaintiff failed to make "any specific allegation that [the officers] had any contact with Maryland or engaged in any conduct in Maryland"); *accord Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974) ("It is settled that jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation.") (citing cases).

To be clear, as WWE and TKO explain in their Motion to Dismiss, Plaintiffs' allegations are insufficient to establish personal jurisdiction over them.[3] But even if this Court *could* exercise jurisdiction over WWE and TKO, it would still need to find an independent basis to exercise jurisdiction over Ms. McMahon. As explained below, Plaintiffs provide no such basis, and none exists.

### B.    Maryland's long-arm statute does not authorize specific jurisdiction over Ms. McMahon.

Under Maryland's long-arm statute, "[a] court may exercise personal jurisdiction over a person, who directly or by an agent:"

> (1)    Transacts any business or performs any character of work or service in the State;
>
> (2)    Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3)    Causes tortious injury in the State by an act or omission in the State;
>
> (4)    Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
>
> (5)    Has an interest in, uses, or possesses real property in the State; or
>
> (6)    Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

---

[3]    Ms. McMahon joins and incorporates by reference the arguments raised in WWE and TKO's Motion to Dismiss.

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b). Crucially, however, "[i]f jurisdiction over a person is based solely upon" the long-arm statute, "he may be sued only on a cause of action arising from any act enumerated" in the statute itself. *Id.* § 6-103(a).

As an initial matter, the Complaint fails to specify which section of the long-arm statute Plaintiffs contend authorizes personal jurisdiction over Ms. McMahon. *See* Compl. ¶ 242. "Maryland's long-arm statute requires Plaintiffs to identify the section of the long-arm statute on which they rely." *Legends Title, LLC v. Cap. One, Nat'l Ass'n*, 659 F. Supp. 3d 637, 644 (D. Md. 2023). A plaintiff's "failure to cite … a governing provision of the Maryland long-arm statute" may, on its own, support dismissal. *See Lewis v. Willough at Naples*, 311 F. Supp. 3d 731, 735 (D. Md. 2018). Nevertheless, in alleging that "at all relevant times Defendants regularly transacted business in Maryland, contracted to provide services in Maryland, and caused tortious injury in Maryland," Compl. ¶ 242, Plaintiffs appear to invoke subsections (1)–(4) of § 6-103(b). As explained below, however, none of these subsections authorizes this Court's exercise of personal jurisdiction over Ms. McMahon.

### 1.    Plaintiffs do not allege any business activity that would support the exercise of jurisdiction under subsections (b)(1) or (b)(2) of Maryland's long-arm statute.

A Maryland court may exercise jurisdiction over an out-of-state defendant under § 6-103(b)(1) if the defendant either "directly or by an agent … [t]ransacts any business or performs any character of work or service in the State," and the claims in the lawsuit arise from those business transactions. *Id.* § 6-103(a).  "Maryland courts have construed the phrase 'transacting business' narrowly, requiring, for example, significant negotiations or intentional advertising and selling in the forum state." *Phillips*, 743 F. Supp. 3d at 711 (quoting *Aphena Pharma Sols.-Maryland LLC v. BioZone Lab'ys, Inc.*, 912 F. Supp. 2d

309, 315 (D. Md. 2012)). Similarly, a court may exercise jurisdiction under § 6-103(b)(2) if an out-of-state defendant "[c]ontracts to supply goods, food, services, or manufactured products in the State," and the plaintiff's claims arise from those contracts. *Id*. § 6-103(a).

Plaintiffs do not come close to establishing that Ms. McMahon had any personal business dealings or contracts in Maryland, let alone any that would be sufficient to confer jurisdiction under sections (b)(1) or (b)(2) of Maryland's long-arm statute. Indeed, Plaintiffs do not allege *any* facts pertaining to business transactions or contracts attributable to Ms. McMahon, either in Maryland or elsewhere. Plaintiffs allege generally that "WWE shows were routinely held in Maryland, which was one of the company's key locations from the earliest days of the McMahons' ownership of the WWE[.]" Compl. ¶ 244. But Ms. McMahon and WWE are separate legal entities—WWE's alleged contacts with Maryland are not *ipso facto* attributable to Ms. McMahon. "[M]erely because a corporation transacts business in the state, contracts to supply goods or services in the state or has other substantial contacts with the state," it does not follow that "an individual who is [the corporation's] principal should be deemed to have engaged in those activities personally." *See Birrane v. Master Collectors, Inc.*, 738 F. Supp. 167, 169 (D. Md. 1990).

 In this case, there is no allegation that Ms. McMahon transacted any business or entered into contracts in Maryland, and the claims in the Complaint clearly are not based on any such business transactions or contracts.

> **2.    Plaintiffs do not allege any tortious act or omission that would support the exercise of jurisdiction under subsections (b)(3) or (b)(4) of Maryland's long-arm statute.**

Although it is not clear from the face of the Complaint, Plaintiffs' allegation that "Defendants ... caused tortious injury in Maryland," Compl. ¶ 242, appears to be an

invocation of either § 6-103(b)(3) or (b)(4) of the long-arm statute. Neither authorizes jurisdiction over Ms. McMahon.

Subsection (b)(3) of the long-arm statute applies to out-of-state defendants who "cause[] tortious injury in the State by an act or omission in the State." "Maryland courts have consistently held that in order to satisfy § 6-103(b)(3), both the injury itself *and the act giving rise to the injury* must have occurred and originated within Maryland." *Pandit v. Pandit*, 808 F. App'x 179, 186 (4th Cir. 2020) (unpublished) (citing *Zinz v. Evans & Mitchell Indus.*, 22 Md. App. 126, 130-31, 324 A.2d 140, 144 (1974)) (emphasis added). While Plaintiffs claim that at least some portion of their injuries occurred in Maryland, they allege no acts or omissions by Ms. McMahon *in Maryland* that allegedly caused those injuries. As a result, subsection (b)(3) does not authorize jurisdiction over Ms. McMahon.

Plaintiffs fare no better under subsection (b)(4), which authorizes jurisdiction over an out-of-state defendant who causes tortious injury in Maryland by an act or omission outside Maryland but only "if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(4). "Subsection (b)(4) has been construed as a general jurisdiction statute." *Orbita Telecom SAC v. Juvare LLC*, 606 F. Supp. 3d 240, 250 (D. Md. 2022) (citing cases). Accordingly, even though subsection (a) of Maryland's long-arm statute requires a connection between the out-of-state defendant's contacts with the state and the plaintiff's claims, "where personal jurisdiction is alleged under subsection (b)(4), the requirement of subsection (a) has been eliminated." *Legends Title, LLC*, 659 F. Supp. 3d at 644 (quoting *Sibert v. Flint*, 564 F. Supp. 1524, 1528 (D. Md. 1983)). Nevertheless, "[t]he bar is high" for plaintiffs seeking to establish jurisdiction under subsection (b)(4).

*Phillips*, 743 F. Supp. 3d at 713. For the Court to exercise jurisdiction, "the defendant's contacts to the forum must be extensive, continuous, and systematic[,]" such that she is "essentially [] at home" in Maryland. *Id.* (citations omitted).

Plaintiffs allege hardly any contacts between Ms. McMahon and Maryland, let alone "extensive, continuous, and systematic" ones. According to the Complaint, Ms. McMahon's sole connection to Maryland is that she "was ... a resident of Maryland during part of the time period described herein." Compl. ¶ 235. It is true that Ms. McMahon briefly resided in Maryland, from 1970 to 1972, during which time she worked as a paralegal at the Washington, D.C. law firm Covington & Burling. *See* L. McMahon Decl. ¶ 4. But it is untrue that Ms. McMahon lived in Maryland "during part of the time period described" in the Complaint. Ms. McMahon left Maryland over 50 years ago, years before her involvement with WWE and years before Plaintiffs were allegedly abused.

The facts are these: Ms. McMahon never was domiciled in Maryland, has not resided in Maryland since 1972, and never owned any property in Maryland. *See* L. McMahon Decl. ¶¶ 3-4. She does not derive any income from Maryland, does not maintain any bank accounts in Maryland, has never maintained an office in Maryland, and has never personally entered into a contract to provide goods or services to a person or entity in Maryland. *See* L. McMahon Decl. ¶ 3. Ms. McMahon's half century old contact with Maryland falls well short of establishing the "extensive, continuous, and systematic" contacts necessary to authorize this Court's exercise of general jurisdiction over her.[4]

---

[4]      In the course of her employment with WWE, Ms. McMahon may have briefly held a license in Maryland to act as a "second" at a WWE show. *See* L. McMahon Decl. ¶ 10; Md. Code Regs. ("COMAR") 09.14.01.01B(12) (1995) ("'Second' means an individual who assists a boxer, kickboxer, mixed martial arts contestant, or wrestler during a contest."). If Ms. McMahon held this license at all, it was in 2004, and the license would have expired in 2005. *See* Md. Code Ann., Bus. Reg. § 4-309; COMAR 09.14.02.01C (amended 2024).

The district and circuit court decisions in *Pandit* underscore the inapplicability of subsection (b)(4) of Maryland's long-arm statute to Ms. McMahon. *See* No. 8:18-CV-01136-PX, 2018 WL 5026373 (D. Md. Oct. 17, 2018), *aff'd,* 808 F. App'x 179 (4th Cir. 2020). In *Pandit*, the plaintiff brought a defamation action against members of his extended family, all of whom lived in Arkansas. 2018 WL 5026373, at *1. The plaintiff alleged "little ... about any meaningful connection between Defendants and the State of Maryland"; although two defendants previously lived in Maryland, they "moved out of Maryland over thirty years ago," and all defendants "maintained only sporadic contact over the years with Maryland, none of which [was] the subject of the Complaint." *Id.* Judge Xinis found the defendants' contacts with Maryland "simply insufficient to satisfy Section 6-103(b)(4)" and dismissed the case for lack of personal jurisdiction. *Id.* at *3.

The Fourth Circuit affirmed. *Pandit*, 808 F. App'x at 186. In dicta,[5] the Fourth Circuit interpreted the phrase "persistent course of conduct" as it appears in subsection (b)(4) to mean "conduct [that is] continuous over a long period of time." *Id.* at 187. "As the district court correctly observed, the isolated emails and letters the Arkansas Defendants are alleged to have sent to Maryland residents do not meet this threshold.

---

This single additional contact from twenty years ago, which occurred decades after Plaintiffs were allegedly abused, should have no bearing on the Court's personal jurisdiction analysis. *See, e.g.*, *DeBellis v. Woodit*, 728 F. Supp. 3d 330, 345 (D. Md. 2024) ("A defendant's contacts that occur after the underlying controversy are less likely to support the exercise of jurisdiction."); *cf. United States v. Undetermined Quantities of Articles of Drug*, 145 F. Supp. 2d 692, 706 (D. Md. 2001) ("Maryland recognizes the fiduciary shield doctrine which 'serves as a limitation on the reach of a long-arm statute with respect to obtaining jurisdiction over an individual who acted solely as a representative of a corporation, rather than on his or her own behalf.'" (quoting *Christian Book Distributors, Inc. v. Great Christian Books, Inc.*, 137 Md. App. 367, 378–79, 768 A.2d 719, 725 (2001)).

[5]    The Fourth Circuit affirmed on waiver grounds but explained why it would have also affirmed on the merits. *Pandit*, 808 F. App'x at 186.

Similarly, the Arkansas Defendants' infrequent and sporadic visits to Maryland for various family engagements and church events over a fourteen-year period are insufficient to satisfy § 6-103(b)(4)." *Id.* (citations omitted).

In *Phillips*, Judge Boardman observed that the Fourth Circuit's definition of "persistent course of conduct" differed somewhat from the "essentially be at home" standard governing a court's exercise of general jurisdiction over an out-of-state defendant. 743 F. Supp. 3d at 713. Under either standard, however, Ms. McMahon—who is neither "at home" in Maryland nor has any continuous, long-term contacts with the state—is not subject to jurisdiction under subsection (b)(4) of Maryland's long-arm statute.

### C.    The exercise of specific jurisdiction over Ms. McMahon would not comport with due process.

Because no prong of Maryland's long-arm statute authorizes the exercise of jurisdiction over Ms. McMahon, this Court "need not reach whether exercising jurisdiction comports with due process." *See Pandit*, 2018 WL 5026373, at *3; *accord Phillips*, 743 F. Supp. 3d at 714. Nevertheless, as explained below, the exercise of personal jurisdiction over Ms. McMahon in this case would be inconsistent with due process.

Courts in the Fourth Circuit apply "a three-part test to determine whether the exercise of specific personal jurisdiction over a nonresident defendant comports with the requirements of due process." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014). Courts consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal

jurisdiction is constitutionally reasonable." *Id.* (alteration in original). No prong is satisfied with respect to the claims against Ms. McMahon.

> 1. **Ms. McMahon has not purposefully availed herself of the privilege of conducting activities in Maryland, and Plaintiffs fail to plead facts alleging otherwise.**

The first prong of the three-part test "articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). In determining whether a defendant has engaged in purposeful availment, courts consider:

> • whether the defendant maintains offices or agents in the forum state;
>
> • whether the defendant owns property in the forum state;
>
> • whether the defendant reached into the forum state to solicit or initiate business;
>
> • whether the defendant deliberately engaged in significant or long-term business activities in the forum state;
>
> • whether the parties contractually agreed that the law of the forum state would govern disputes;
>
> • whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;
>
> • the nature, quality and extent of the parties' communications about the business being transacted; and
>
> • whether the performance of contractual duties was to occur within the forum.

*Willough at Naples*, 311 F. Supp. 3d at 735–36 (citing *Consulting Eng'rs Corp.*, 561 F.3d at 278).

Plaintiffs utterly fail to demonstrate that Ms. McMahon purposefully availed herself of the privilege of conducting any activities or business in Maryland. *See* Section

I.B.1, *supra*. Not a single allegation in the Complaint satisfies any of the purposeful availment considerations enumerated above. Further, as set forth in her Declaration, Ms. McMahon has not engaged in sufficient Maryland-based or Maryland-directed activities that could support a finding of purposeful availment. *See* L. McMahon Decl. ¶ 3.

Plaintiffs seem to believe that their allegation that WWE conducted wrestling shows in Maryland suffices to show purposeful availment by all Defendants. *See* Compl. ¶¶ 242, 244–45. But this is a blatant misreading of the applicable law. *See* Section I.A, *supra*. As discussed above, Plaintiffs allege just one contact between Ms. McMahon and Maryland: her brief residence in the state more than 50 years ago. *See* Section I.B.2, *supra*. Plaintiffs allege *no facts whatsoever* connecting Ms. McMahon's presence in Maryland in the early 1970's to the claims in this case. Indeed, Ms. McMahon's brief residence in Maryland predates the founding of WWE, *see* Compl. ¶ 235, and predates Plaintiffs' allegations of abuse, *see id.* ¶¶ 162-67 (earliest allegations of abuse occurring in the 1980's). "If … the defendant's contacts with the state are not also the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the state"—*i.e.*, contacts supporting a court's exercise of general jurisdiction. *Carefirst of Maryland, Inc*, 334 F.3d at 397. But as explained in Section I.B.2, *supra*, Ms. McMahon's negligible contacts with Maryland cannot support a finding of general jurisdiction.

Accordingly, Plaintiffs do not and cannot show that Ms. McMahon purposefully availed herself of the privilege of conducting activities or business in Maryland.

## 2. Plaintiffs' claims do not arise from any activity of Ms. McMahon in Maryland.

Plaintiffs' failure to establish prong one (purposeful availment) of the Fourth Circuit's three-part test precludes this Court's exercise of jurisdiction over Ms. McMahon, and the Court need not further analyze the due process requirements. *See Consulting Eng'rs Corp.*, 561 F.3d at 278 ("If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three."). But analysis of prong two—whether the plaintiff's claims arose from the defendant's activities in the forum state, *see Universal Leather,* 773 F.3d at 559— also militates against a finding of personal jurisdiction.

"When a controversy is related to or arises out of a defendant's contacts with the forum, ... a relationship among the defendant, the forum, and the litigation is the essential foundation of in personam jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (citations and internal quotation marks omitted). Here, Plaintiffs fail to establish this "essential foundation." Plaintiffs' claims arise from alleged acts of sexual abuse committed by deceased nonparty Mel Phillips, some unspecified number of which are alleged to have occurred in Maryland. *See, e.g.*, Compl. ¶¶ 6, 173–74, 179, 185, 188, 191, 195, 201, 217–18, 244. That Plaintiffs allegedly suffered harm in Maryland, however, is not enough. "Although the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997).

As discussed above, Ms. McMahon's sole personal contact with Maryland—her brief residence in the early 1970's—bears no relationship to Plaintiffs' claims. To the

extent Plaintiffs have identified acts or omissions attributable to Ms. McMahon that pertain to Plaintiffs' alleged injuries, none occurred in Maryland, and Plaintiffs have not alleged otherwise. Plaintiffs' failure to connect their claims to any activity of Ms. McMahon's in Maryland provides another reason that this Court's exercise of jurisdiction over Ms. McMahon would not comport with due process.

### 3. The exercise of personal jurisdiction over Ms. McMahon would not be constitutionally reasonable.

Plaintiffs' failure to establish either of the preceding prongs of the three-part due process test dooms their assertion that Ms. McMahon is subject to personal jurisdiction in Maryland. *See Consulting Eng'rs Corp.*, 561 F.3d at 279 ("If the plaintiff satisfies prongs one and two, prong three comes into play."). However, even if Ms. McMahon had "purposefully established minimum contacts within the forum State," *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985), this Court's exercise of jurisdiction over her would nevertheless fail at prong three because the exercise of personal jurisdiction over Ms. McMahon would not be constitutionally reasonable. *See Universal Leather,* 773 F.3d at 559.

As the Fourth Circuit has explained:

> The third prong ... permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there. Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Consulting Eng'rs Corp.*, 561 F.3d at 279. "The primary concern in assessing personal jurisdiction is the burden on the defendant." *Bristol-Myers Squibb Co. v. Superior Ct. of*

*California, San Francisco Cnty.*, 582 U.S. 255, 256 (2017) (citation and internal quotation marks omitted). "Assessing this burden obviously requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Id.*

Forcing Ms. McMahon to defend against Plaintiffs' claims in Maryland would undoubtedly burden her. She does not live or work in Maryland, has no relevant contacts with the state, and "could not reasonably anticipate being haled into court" here. *See Rudzewicz*, 471 U.S. at 474. Furthermore, Plaintiffs cannot claim that litigating in Maryland is convenient for them such that it could outweigh the burden on Ms. McMahon: two plaintiffs are Massachusetts citizens, Compl. ¶¶ 223–24; two are Pennsylvania citizens, *id.* ¶¶ 225, 227; and one is a Florida citizen, *id.* ¶ 226.

Plaintiffs assert that "Maryland has a substantial interest in resolving the issues of child sexual abuse that occurred within its borders regardless of the citizenry or residence of the abused child or the alleged abusers." Compl. ¶ 246. But even a state's legitimate interest in a category of suits cannot override the due process restrictions on a court's exercise of personal jurisdiction, which are both "a guarantee of immunity from inconvenient or distant litigation" and "a consequence of territorial limitations on the power of the respective States." *See Bristol-Myers Squibb Co.*, 582 U.S. at 263.

Simply put, this Court's exercise of jurisdiction over Ms. McMahon would not be constitutionally reasonable. "When the facts present even a close question, it would not be in the interests of the parties to litigate this case in Maryland[.]" *Dring v. Sullivan*, 423 F. Supp. 2d 540, 549 (D. Md. 2006) (cleaned up). Here, it is not a close question. This

Court should dismiss Plaintiffs' claims against Ms. McMahon for lack of personal jurisdiction.

## II. Plaintiffs' claims against Linda E. McMahon are not legally cognizable and should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) requires dismissal for failure to state a claim upon which relief can be granted unless the complaint alleges facts that show the claim is "plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation and internal quotation marks omitted). To assess state-law claims, this Court applies Maryland law as determined by the Maryland Supreme Court. *See Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254, 260 (4th Cir. 1998).

Plaintiffs assert two claims against Ms. McMahon: Negligence (Count I), Compl. ¶¶ 247–83; and Negligent Hiring, Training, and Retention (Count II), *id.* ¶¶ 284–300. "To sufficiently plead a cause of action for negligence in Maryland, a plaintiff must allege with certainty and definiteness, facts and circumstances sufficient to set forth (a) a *duty* owed by the defendant to the plaintiff, (b) a *breach* of that duty and (c) injury *proximately* resulting from that breach." *Pace v. State*, 425 Md. 145, 154, 38 A.3d 418, 423 (2012) (emphasis in original) (citation and internal quotations marks omitted). A plaintiff alleging negligent hiring, training, and retention must satisfy these same basic elements,

*see Asphalt & Concrete Servs., Inc. v. Perry*, 221 Md. App. 235, 256, 108 A.3d 558, 571

(2015), *aff'd,* 447 Md. 31, 133 A.3d 1143 (2016), and further must establish the following:

> (1) the existence of an employment relationship;
> (2) the employee's incompetence;
> (3) the employer's actual or constructive knowledge of such incompetence;
> (4) the employee's act or omission causing the plaintiff's injuries; and
> (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries.

*Id*. (citation omitted).

### A.    Plaintiffs fail to adequately plead any duty of care owed to them by Ms. McMahon.

Counts I and II suffer from the same fatal flaw: Plaintiffs' failure to plead a legally

cognizable duty owed to them by Ms. McMahon. As a general rule, "there is no duty to

control a third person's conduct so as to prevent personal harm to another, unless a

'special relationship' exists either between the actor and the third person or between the

actor and the person injured." *Ashburn v. Anne Arundel Cnty*., 306 Md. 617, 628, 510

A.2d 1078, 1083 (1986). Plaintiffs allege no coherent theory of duty and plead insufficient

facts to show any "special relationship." First, Plaintiffs erroneously suggest that *all* adults

owe *all* children a duty of protection. Compl. ¶¶ 254, 275, 276. Second, Plaintiffs allege

that Ms. McMahon had a duty to provide Plaintiffs with a safe workplace, despite pleading

no facts that Ms. McMahon ever employed them. *Id*. ¶¶ 258, 259, 277, 280. Third,

Plaintiffs claim that Ms. McMahon had a duty to protect them from foreseeable injuries

but fail to adequately allege that Phillips' conduct was reasonably foreseeable. *Id*. ¶¶ 260,

262, 272, 273, 274, 278.

The existence of a legal duty "is a matter of law to be determined by the court and,

therefore, is an appropriate issue to be disposed of on motion for dismissal." *Bobo v.*

*State*, 346 Md. 706, 716, 697 A.2d 1371, 1376 (1997). Because Plaintiffs fail to adequately plead any duty owed to them by Ms. McMahon, neither Count I nor Count II is plausible and both should be dismissed.

> **1.    Maryland does not recognize a "general duty" to protect children.**

Plaintiffs allege that Ms. McMahon had an obligation to "tak[e] action to protect Plaintiffs, as required by the general duty of all adults." Compl. ¶ 254. But Maryland recognizes no such duty. Under Maryland law, "the *parents* of a minor child are charged with, among other things, the care and welfare of that child." *Laser v. Wilson*, 58 Md. App. 434, 445, 473 A.2d 523, 529 (1984) (internal quotation marks omitted) (emphasis added). A parent's duty to provide for the care and welfare of their child cannot be imposed on another person "unless that person accepts the responsibility." *Id*. This black-letter law flies in the face of Plaintiffs' contention that *every* adult owes *every* child a duty of care.

Nor can Plaintiffs argue that Ms. McMahon owed them a statutory duty of care arising from Maryland's mandatory child abuse reporting law. *See* Compl. ¶ 276. That law applies to "person[s] in this State ... who ha[ve] reason to believe that a child has been subjected to abuse or neglect." *See* Md. Code Ann., Fam. Law § 5-705(a)(1). By its terms, the law does not apply to out-of-state persons like Ms. McMahon. Further, Plaintiffs do not allege that Ms. McMahon knew anything about them or their interactions with Phillips that would have triggered a duty to report.

### 2. Plaintiffs fail to plead any employment-related duty.

Plaintiffs charge Ms. McMahon with "a duty to provide the Ring Boys with a safe place to work[.]" Compl. ¶ 277. But Ms. McMahon did not employ any "Ring Boys," see L. McMahon Decl. ¶ 14, and Plaintiffs fail to allege otherwise.

To determine the existence of an employer/employee relationship, Maryland courts consider: "(1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control an employee's conduct, and (5) whether the work is part of the regular business of the employer[.]" *Perry*, 221 Md. App. at 272, 108 A.3d at 580. Plaintiffs' allegations do not come close to establishing any such employment relationship with Ms. McMahon. Plaintiffs allege generally that Phillips "hired" "Ring Boys," *see, e.g.*, Compl. ¶¶ 1, 267, and four Plaintiffs allege an employment or pseudo-employment relationship with Phillips, *see id.* ¶¶ 167, 168, 171 (Phillips gave John Doe 1 cash and front row seats to a wrestling event); *id.* ¶ 190 (Phillips gave John Doe 3 money for helping him set up the ring); *id.* ¶ 202 (John Doe 4 "worked for Phillips on the ring crew" at events in Pennsylvania); *id.* ¶ 216 (John Doe 5 "worked for Phillips on the ring crew" at events in New York and Philadelphia).[6] But no Plaintiff specifically alleges an employment relationship with WWE, let alone with Ms. McMahon.[7]

Plaintiffs' allegations do not come close to establishing that Ms. McMahon employed them. Plaintiffs do not allege that Ms. McMahon hired them, controlled or

---

[6] The Complaint contains no specific allegations that John Doe 2 worked for Phillips or received anything from him. Compl. ¶¶ 179–87.

[7] Plaintiffs allege that "[t]he Ring Boys received some direct financial remuneration for their work for the WWE[.]" Compl. ¶ 269. But the Complaint is unclear as to which Ring Boys allegedly received "direct financial remuneration" and from whom. There is no allegation that any of the Ring Boys were compensated by Ms. McMahon.

directed their behavior, or paid them anything for their work. Accordingly, Plaintiffs cannot premise their negligence claim on any duty owed to them by an employer.

### 3. Plaintiffs fail to plead any duty arising from alleged foreseeability.

Plaintiffs insufficiently plead any duty owed to them by Ms. McMahon arising from the alleged foreseeability of Phillips's conduct. To show that an employee's misconduct was reasonably foreseeable to an employer,[8] a plaintiff must allege facts and circumstances sufficient to plead that the employer was aware of specific prior acts or allegations against the employee in question. *See Mitchell v. Rite Aid of Maryland, Inc.*, 257 Md. App. 273, 284, 290 A.3d 1125, 1131 (2023); *see also Doe v. Alsaud*, 12 F. Supp. 3d 674, 680–81 (S.D.N.Y. 2014) (collecting cases).

Plaintiffs offer nothing more than conclusory, nonspecific allegations that Phillips' conduct was foreseeable to Ms. McMahon. *See, e.g., id.* ¶¶ 11, 37 ("[T]he McMahons 'clearly knew what was going on …'"); ¶ 252 ("The McMahons controlled and knew everything within WWE, including the fact that … the prominent public-facing ring announcer, Phillips, [was] engaging in rampant sexual misconduct."). Plaintiffs allege Ms. McMahon "knew, at least as early as the early to mid-1980s, that Phillips had … a 'peculiar and unnatural interest' in young boys." *Id.* ¶ 13. But nowhere in the Complaint do Plaintiffs elaborate on what "early to mid-1980s" event triggered this supposed knowledge. It was not until 1988, according to the Complaint, that the McMahons allegedly fired and later rehired Phillips with the instruction to "steer clear from kids." *Id.*

---

[8]    To be clear, Ms. McMahon does not concede that she was Phillips's employer. But if Plaintiffs are unable to establish a duty owed to them by WWE arising from the alleged foreseeability of Phillips's misconduct while employed by WWE, they certainly cannot establish such a duty owed to them by Ms. McMahon.

¶¶ 14, 42, 45. By that point, each Plaintiff had allegedly already been abused by Phillips and there is no specific allegation that any of the Plaintiffs was abused by Phillips after he was rehired in 1988. *See id*. ¶¶ 162, 176 (John Doe 1) (alleging abuse between 1981 or 1982 and 12-18 months afterwards); *id*. ¶¶ 179, 185 (John Doe 2) (alleging abuse in unspecified locations at unspecified dates between 1984 and 1989 but pleading no specific allegation of abuse in or after 1988[9]); *id*. ¶¶ 188, 191, 195 (John Doe 3) (alleging abuse between 1984 and 1987); *id*. ¶¶ 198, 201 (John Doe 4) (alleging abuse beginning in 1983 or 1984); *id*. ¶¶ 213, 217–18 (John Doe 5) (alleging abuse beginning in 1983 or 1984).

Plaintiffs' conclusory, nonspecific allegations of foreseeability are not sufficient to establish a duty owed to them by Ms. McMahon.

### 4.    Plaintiffs fail to plead any other "special relationship" triggering a duty of care.

Maryland recognizes a special duty to exercise reasonable care to protect minors in limited situations where the presence of minors is required by law, such as in primary and secondary schools acting *in loco parentis*. *See Doe v. Comm. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 420–21 (D. Md. 2022) (rejecting special duty in collegiate setting); *see Molock v. Dorchester Cnty. Family YMCA, Inc.*, 139 Md. App. 664, 673, 779 A.2d 963, 968 (2001) (rejecting special duty at YMCA social event). Plaintiffs allege that Ms. McMahon was generally aware that Mr. Phillips invited minors to WWE shows to assist with ring setup. *See, e.g.*, Compl. ¶ 267. But Plaintiffs allege nothing to suggest that Ms. McMahon—or WWE, for that matter—stood *in loco parentis* with minors who assisted in

---

[9]    Given that John Doe 2 was 13 years old in 1984, *see* Compl. ¶ 179, by 1989 he may have already reached adulthood. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-117(b) ("[A]n action for damages arising out of an alleged incident or incidents of sexual abuse *that occurred while the victim was a minor* may be filed at any time." (emphasis added)).

ring setup for wrestling shows. Plaintiffs do not (and could not) allege that while at WWE events, Ms. McMahon exercised any control over them. "Unlike the situation with children who must attend school," any minors who attended WWE events could "leave the event at any time without sanction" and without Ms. McMahon "having any right to stop them." *See Molock*, 139 Md. App. at 674, 779 A.2d at 968.

Moreover, even if Plaintiffs could establish that Ms. McMahon owed them some special duty of protection (and they cannot), that duty would not extend to the conduct of third parties outside Ms. McMahon's "custody or control." The Plaintiffs' allegations in this case, to the extent they involve alleged sex abuse in Maryland, allege that Phillips abused them after hours and in locations outside the control of WWE. *See Fletcher v. Maryland Transit Admin.*, 741 F. App'x 146, 151 (4th Cir. 2018) (unpublished) (school district had no duty to protect students during off-premises activities, and collecting cases); *see also Alsaud*, 12 F. Supp. 3d at 681 (dismissing negligent supervision and retention claims against the employer of plaintiff's assailant where the underlying sexual misconduct was alleged to have occurred outside of defendant's premises at a hotel, and collecting cases). Much of the abuse Plaintiffs claim to have suffered occurred at hotels, in cars, and during trips that Plaintiffs do not allege bore any direct connection to WWE activities. *See, e.g.*, Compl. ¶¶ 165–66, 170–71, 174, 183, 190, 193, 201, 208, 217–19. Any duty of care owed to Plaintiffs by virtue of their presence at WWE events would not extend to acts occurring after those events had taken place, and at locations removed from the sites of the WWE shows. And, moreover, there is no allegation that any of the alleged acts occurred at times and places when Ms. McMahon was in a position to control Mr. Phillips or had assumed responsibility for the care of the Plaintiffs.

**B.    Plaintiffs fail to plead injuries resulting from any alleged negligence related to Pat Patterson or Terry Garvin.**

Because Plaintiffs fail to plead any legally cognizable duty owed to them by Ms. McMahon, Counts I and II should be dismissed in full.  In addition, this Court should dismiss any portions of Plaintiffs' claims premised on alleged negligent hiring or supervision of Terry Garvin or Pat Patterson. *See* Compl. ¶¶ 279–80, 287, 297. The Complaint alleges that Garvin and Patterson committed acts of abuse. But Plaintiffs do not plead, with any specificity, that Garvin or Patterson abused these Plaintiffs. The existence of an injury, like the existence of a duty, is an indispensable element of any negligence claim. *See Pace*, 425 Md. at 154, 38 A.3d at 423.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendant Linda E. McMahon's Motion to Dismiss and dismiss this case with prejudice. Plaintiffs have sought to take advantage of the elimination of the statute of limitations in Maryland for acts of child sex abuse. But the Plaintiffs' opportunistic claims fail because Ms. McMahon is not subject to the exercise of personal jurisdiction over her in Maryland, and the Complaint fails to adequately allege that she owed a tort duty to the Plaintiffs.

Dated: April 7, 2025                    Respectfully submitted,

/s/ William J. Murphy
William J. Murphy (Bar No. 00497)
Samantha Miller Kavanagh (Bar No. 21374)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Tel: (410) 332-0444
Fax: (410) 659-0436
wmurphy@zuckerman.com
skavanagh@zuckerman.com

Laura A. Brevetti *(*admitted *Pro Hac Vice*)
LAW OFFICES LAURA A. BREVETTI
575 Lexington Avenue, 14th Floor
New York, NY 10022
Tel: (917) 970-0250
laura.brevetti@brevettilaw.com

*Attorneys for Linda E. McMahon*