# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| John Doe 1, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-3487-JKB |
| World Wrestling Entertainment, LLC, et al., | |
| Defendants. | |

## DEFENDANTS WORLD WRESTLING ENTERTAINMENT, LLC AND TKO GROUP HOLDINGS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF <u>MOTION TO DISMISS, WITH REQUEST FOR HEARING</u>

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 3

PROCEDURAL HISTORY ...................................................................................................... 5

LEGAL STANDARDS ............................................................................................................ 5

ARGUMENT ............................................................................................................................ 7

I.    The Claims Against TKO and WWE Should Be Dismissed Pursuant to Rules
      12(b)(2) and 12(b)(6) for Failure to Plausibly Plead a Successor Liability Theory. .......... 7

II.   The Claims Against TKO and WWE Should Be Dismissed Pursuant to Rule
      12(b)(2) for Lack of Personal Jurisdiction. ..................................................................... 10

      A.    TKO and WWE Are Not Subject to General Jurisdiction in Maryland. ............. 12

      B.    TKO and WWE Are Not Subject to Specific Jurisdiction in Maryland for
            the Claims Alleged in the Complaint. ................................................................. 13

            1.    Maryland's Long-Arm Statute Does Not Authorize Jurisdiction
                  Over TKO or WWE. ................................................................................. 14

                  (a)    Sections 6-103(b)(1) and 6-103(b)(2) Do Not Authorize
                         Jurisdiction Over TKO or WWE. ................................................ 15

                  (b)    Sections 6-103(b)(3) and 6-103(b)(4) Do Not Authorize
                         Jurisdiction Over TKO or WWE. ................................................ 17

            2.    The Exercise of Specific Jurisdiction Over TKO or WWE Would
                  Not Comport with Due Process. ............................................................... 19

                  (a)    Plaintiffs Have Failed to Show That TKO or WWE
                         Purposefully Availed Itself of the Privilege of Conducting
                         Activities in Maryland. ............................................................... 20

                  (b)    Plaintiffs Have Failed to Show That Their Claims Arise
                         Out of TKO's or WWE's Activities Directed at the State............ 21

                  (c)    Exercising Jurisdiction Over TKO or WWE Would Not Be
                         Constitutionally Reasonable. ...................................................... 22

III.     The Claims Against TKO and WWE Should Be Dismissed Pursuant to Rule
         12(b)(6) for Failure to State a Claim.............................................................. 23

         A.     Plaintiffs Fail to Plead a Duty of Care That Defendants Owed Them.................. 24

                1.     The Complaint Fails to Plead That the Alleged Harm to Plaintiffs
                       Was Reasonably Foreseeable.................................................. 25

                2.     The Complaint Fails to Plead a Special Relationship Between
                       Defendants and Plaintiffs. ........................................................ 26

         B.     Any Alleged Duty Owed to Plaintiffs Did Not Extend to Phillips's
                Alleged Out-of-Work Conduct. ........................................................... 29

         C.     Plaintiffs' General Negligence Claim Should Be Dismissed as Duplicative
                of Plaintiffs' Negligent Hiring, Training, and Retention Claim. ......................... 29

         CONCLUSION ...................................................................................... 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*68th Street Site Work Grp.* v. *Airgas, Inc.*,
  2021 WL 4255030 (D. Md. Sept. 16, 2021) ..........................................................7, 8

*AMA Sys., LLC* v. *3B Tech, Inc.*,
  2023 WL 7410854 (D. Md. Nov. 9, 2023) ............................................................7, 9

*Aphena Pharma Sols.-Maryland LLC* v. *BioZone Labs., Inc.*,
  912 F. Supp. 2d 309 (D. Md. 2012) ..........................................................15, 17, 18

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009) ................................................................................................6

*Barclay* v. *Briscoe*,
  47 A.3d 560 (Md. 2012) ........................................................................................24

*Bristol-Myers Squibb Co.* v. *Superior Court*,
  582 U.S. 255 (2017) ..................................................................................10, 11, 12

*Burger King Corp.* v. *Rudzewicz*,
  471 U.S. 462 (1985) ..........................................................................................20, 23

*Carefirst of Md., Inc.* v. *Carefirst Pregnancy Ctrs., Inc.*,
  334 F.3d 390 (4th Cir. 2003) ......................................................................6, 11, 20

*Coleman* v. *KIPP DC Supporting Corporation*,
  2019 WL 1126357 (D. Md. Mar. 12, 2019) ..........................................................21

*Daimler AG* v. *Bauman*,
  571 U.S. 117 (2014) ..............................................................................................13

*Doe* v. *Alsaud*,
  12 F. Supp. 3d 674 (S.D.N.Y. 2014) ................................................................25, 29

*Doe* v. *Archdiocese of Philadelphia*,
  2020 WL 3410917 (D.N.J. June 22, 2020) ........................................................20, 21

*Doe* v. *Pharmacia & Upjohn Co.*,
  879 A.2d 1088 (Md. 2005) ....................................................................................24

*E. Shore Mkts., Inc.* v. *J.D. Assocs. Ltd. P'ship*,
  213 F.3d 175 (4th Cir. 2000) ..................................................................................6

*Edwardo* v. *Roman Catholic Bishop of Providence*,
  579 F. Supp. 3d 456 (S.D.N.Y. 2022) ...............................................................16, 18

*Edwards* v. *Schwartz*,
  378 F. Supp. 3d 468 (W.D. Va. 2019) ......................................................................12

*Ellicott Mach. Corp.* v. *John Holland Party Ltd.*,
  995 F.2d 474 (4th Cir. 1993) .....................................................................................16

*Equal Rights Ctr.* v. *Equity Residential*,
  2016 WL 1258418 (D. Md. Mar. 31, 2016) ................................................................9

*ESAB Grp., Inc.* v. *Centricut, Inc.*,
  126 F.3d 617 (4th Cir. 1997) .....................................................................................10

*Estate of Green* v. *City of Annapolis*,
  696 F. Supp. 3d 130 (D. Md. 2023) ...........................................................................23

*Fidrych* v. *Marriott Int'l, Inc.*,
  952 F.3d 124 (4th Cir. 2020) ...............................................................................13, 19

*Fletcher* v. *Md. Transit Admin.*,
  741 F. App'x 146 (4th Cir. 2018) .........................................................................25, 29

*Gatekeeper Inc.* v. *Stratech Sys., Ltd.*,
  718 F. Supp. 2d 664 (E.D. Va. 2010) ........................................................................12

*Hartford Mut. Ins. Co.* v. *Hoverzon LLC*,
  2021 WL 1390317 (D. Md. Apr. 13, 2021) ...............................................................10

*Helicopteros Nacionales de Colombia, S.A.* v. *Hall*,
  466 U.S. 408 (1984) ...................................................................................................21

*Lewis* v. *Willough at Naples*,
  311 F. Supp. 3d 731 (D. Md. 2018) ...........................................................................14

*Martin* v. *TWP Enters., Inc.*,
  132 A.3d 361 (Md. Ct. Spec. App. 2016) ....................................................................7

*Mitchell* v. *Rite Aid of Maryland, Inc.*,
  290 A.3d 1125 (Md. App. Ct. 2023) ...........................................................................25

*Molock* v. *Dorchester Cnty. Fam. YMCA, Inc.*,
  779 A.2d 963 (Md. Ct. Spec. App. 2001) ...................................................................27

*Nat'l Fire & Marine Ins. Co.* v. *Advanced Lighting Techs.*,
  2024 WL 3377869 (D. Md. July 11, 2024) ..................................................................9

*New Wellington Fin. Corp.* v. *Flagship Resort Dev. Cor.*,
    416 F.3d 290 (4th Cir. 2005) ............................................................5, 10

*Pace* v. *Maryland*,
    38 A.3d 418 (Md. 2012) .......................................................................23

*Perdue Foods LLC* v. *BRF S.A.*,
    814 F.3d 185 (4th Cir. 2016) ..............................................................20

*Phillips* v. *British Airways*,
    743 F. Supp. 3d 702 (D. Md. 2024) ........................................... *passim*

*Pizarro Orta* v. *Creekstone Landscaping & Excavating, LLC*,
    2024 WL 3555093 (D. Md. July 25, 2024)....................................24, 30

*Rachel-Smith* v. *FTData, Inc.*,
    202 F. Supp. 2d 400 (D. Md. 2002) ...............................................15, 18

*Remsberg* v. *Montgomery*,
    831 A.2d 18 (Md. 2003) ...............................................................24, 25

*Rivera* v. *Altec, Inc.*,
    2021 WL 2784265 (D. Md. July 2, 2021)...........................................21

*Roman Cath. Archbishop of Washington* v. *Doe*,
    330 A.3d 1069 (Md. 2025) ...............................................................1, 5

*Sable* v. *Baltimore Cnty. Government*,
    2021 WL 4772921 (D. Md. Oct. 12, 2021) .........................................28

*Maryland* v. *Sewell*,
    205 A.3d 966 (Md. 2019) ....................................................................27

*Simon* v. *Dick's Sporting Goods, Inc.*,
    2022 WL 16722400 (D. Md. Nov. 4, 2022) ........................................24

*Troy Brave LLC* v. *Grantsville Truck & Trailer, LLC*,
    692 F. Supp. 3d 516 (D. Md. 2023) ................................................6, 20

*Walden* v. *Fiore*,
    571 U.S. 277 (2014)............................................................................22

*Wallace* v. *Yamaha Motors Corp, U.S.A.*,
    2022 WL 61430 (4th Cir. Jan. 6, 2022) ..............................................21

*Warr* v. *JMGM Grp., LLC*,
    70 A.3d 347 (Md. 2013) .....................................................................24

*Winffel* v. *Westfield Prop. Mgmt., LLC*
   2022 WL 1591405 (D. Md. May 19, 2022)................................................................28

**Statutes**

28 U.S.C. § 1332 ...........................................................................................................5

28 U.S.C. § 1441 ...........................................................................................................5

28 U.S.C. § 1446 ...........................................................................................................5

Maryland Child Victims Act of 2023 ..........................................................................1

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b) .....................................................11, 14

Md. Code Ann., Fam. Law § 5-705(a)(1) ..................................................................27

**Other Authorities**

Federal Rule of Civil Procedure 4 ..............................................................................10

Federal Rule of Civil Procedure 12 ..................................................................... *passim*

Defendants World Wrestling Entertainment, LLC ("WWE") and TKO Group Holdings, Inc. ("TKO") respectfully move to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs—citizens of Massachusetts, Pennsylvania, and Florida—filed this action against four Defendants—all of whom are also nonresidents of Maryland—asserting purported negligence claims arising from Defendants' alleged acts or omissions in Connecticut that allegedly caused Plaintiffs to be injured in multiple states when they were minors during the 1980s. Specifically, Plaintiffs allege that they are former volunteers who were invited by a now-deceased ring announcer named Mel Phillips to attend, and asked to assist with errands for, wrestling shows, some of which occurred in Maryland. Plaintiffs further allege that Phillips sexually abused them. They claim Defendants should be held liable to them based on Defendants' allegedly negligent hiring, training and retention of Phillips. Plaintiffs' claims must be dismissed because neither WWE nor TKO is subject to personal jurisdiction in this Court and, in any event, Plaintiffs do not properly allege the existence of any legally cognizable duty of the Defendants to sustain their negligence claims.

Plaintiffs appear to have selected Maryland as their forum of choice in an attempt to benefit from the recently enacted Maryland Child Victims Act of 2023 ("CVA")—a statute aimed at addressing systemic harm suffered by Maryland residents as minors arising from the conduct of priests and the Catholic Church in Maryland. *See Roman Cath. Archbishop of Washington* v. *Doe*, 330 A.3d 1069, 1098–99 (Md. 2025). But Plaintiffs' claims do not belong here. No Plaintiff or Defendant resides in Maryland and none are alleged to have resided in Maryland at the time of the alleged conduct. None of the alleged acts or omissions by Defendants are alleged to have occurred

in Maryland.  In fact, based on the Complaint's allegations, the vast majority of the alleged harm to Plaintiffs occurred outside of Maryland.

As explained below, Plaintiffs' Complaint should be dismissed in its entirety against TKO and WWE for three main reasons:

*First*, Plaintiffs fail to plead that WWE or its affiliate TKO is liable under any theory of successor liability—a necessary predicate since the alleged conduct at issue occurred when Phillips was allegedly employed by a now-nonexistent entity, World Wrestling Federation ("WWF"), during the 1980s.  Where, as here, the plaintiffs' claims are predicated on the alleged conduct of an alleged predecessor entity, the complaint must plead both (i) an exception to the general rule of successor non-liability and (ii) facts supporting the invocation of that exception.  The Complaint here fails on both fronts as to both TKO and WWE.

*Second*, neither TKO nor WWE is subject to personal jurisdiction in Maryland as to the claims asserted in Plaintiffs' Complaint.  Plaintiffs do not allege that WWF was incorporated or maintained a principal place of business in Maryland, or that it was otherwise "at home" in Maryland.  Nor could they.  Likewise, neither TKO nor WWE is incorporated or has its principal place of business in Maryland and, by extension, neither is "at home" in Maryland.  Additionally, the Court's exercise of jurisdiction over TKO or WWE is not authorized by Maryland's long-arm statute and would not comport with due process because Plaintiffs have failed to show that WWF (or TKO or WWE) purposefully established minimum contacts in Maryland such that either TKO or WWE should reasonably anticipate being haled into court in Maryland for the claims asserted in the Complaint.

*Finally*, even if Plaintiffs could overcome these jurisdictional deficiencies, the Complaint should be dismissed for failure to plead a negligence claim, a necessary element of which is the

existence of a legally cognizable duty.  No facts are alleged here to make a sufficient showing of such a duty.  To the contrary, Plaintiffs rely almost entirely on allegations that Defendants should have known of Phillips's alleged wrongdoing based on alleged conduct postdating Phillips's actions vis-à-vis Plaintiffs here or that concern individuals other than Phillips.  And the handful of allegations that arguably precede the events giving rise to Plaintiffs' claims fail to plausibly plead that TKO or WWE was, or should have been, aware of Phillips's alleged conduct.

### FACTUAL BACKGROUND[1]

Defendant WWE is an integrated media and entertainment company incorporated in Delaware and headquartered in Connecticut.  *See* ECF No. 15 ("Compl.") ¶¶ 236–37.  WWE is known for promoting successful wrestlers and storylines, and for featuring wrestling shows.  *Id.* ¶ 3.  The entity "World Wrestling Entertainment, LLC" is the product of a series of corporate transactions over the last few decades involving multiple entities.  *See, e.g.*, *id.* ¶¶ 1 n.1, 105, 238.

Defendant TKO is a premium sports and entertainment company incorporated in Delaware and headquartered in New York.  *Id.* ¶¶ 239–40.  In 2023, TKO was formed to be the parent company of WWE.  *Id.* ¶ 240.  Defendants Vincent K. McMahon and Linda McMahon, both citizens of Connecticut, are alleged cofounders of WWE.  *Id.* ¶¶ 234–35, 248.

Plaintiffs are five pseudonymous citizens of Massachusetts, Pennsylvania, and Florida who each allege they were sexually abused as minors in the 1980s by Phillips, who ceased working for WWE's alleged predecessor entity in 1992 and died in 2012.  *Id.* ¶¶ 6, 24 n.8, 57–58, 223–27.  Plaintiffs do not allege they were ever employed by TKO, WWE, or any alleged predecessor entities.  Instead, they allege that Phillips invited them to attend wrestling shows in and outside

---

[1] This Statement of Facts is based upon the allegations in the Complaint, the attached exhibits, and facts of which the Court may take judicial notice.  For purposes of this motion to dismiss only, TKO and WWE do not contest the truth of the properly pleaded allegations of the Complaint.

their states of residence and that Phillips asked them to assist with errands and other tasks in preparation for wrestling shows. *Id.* ¶¶ 1, 3, 92, 183, 267. Specifically:

- John Doe 1, a citizen of Massachusetts, alleges that he met Phillips in 1981 or 1982 and thereafter was sexually abused seven or eight times over a 12- to 18-month period in at least Massachusetts and Pennsylvania. *Id.* ¶¶ 162, 176, 223. John Doe 1 also alleges that Phillips invited him on a trip to Maryland to see an unspecified wrestling show and that, after the show, Phillips took him and others to a hotel in an unspecified state and abused them. *Id.* ¶¶ 173–74.

- John Doe 2, a citizen of Massachusetts, alleges that he attended unspecified "wrestling shows" with Phillips from 1984 to 1989 in at least Maryland, Pennsylvania, Rhode Island, Massachusetts, Connecticut, and New York. *Id.* ¶¶ 179, 185, 224. While John Doe 2 summarily alleges that he was abused "in all those states multiple times," *id.* ¶ 185, he does not allege any specific allegations regarding any alleged events in Maryland.

- John Doe 3, a citizen of Pennsylvania, alleges that he met Phillips in the mid-1980s. *Id.* ¶¶ 188, 225. While John Doe 3 alleges specific acts of abuse in Pennsylvania, *id.* ¶¶ 189–90, and that "Phillips sexually abused him in similar ways at most, if not all of the subsequent wrestling shows he attended with Phillips," *id.* ¶ 191, John Doe 3 does not plead that any alleged abuse occurred in Maryland (or that any such abuse occurred after traveling to Maryland for a WWF event).

- John Doe 4, a citizen of Florida and former resident of Pennsylvania, alleges he was abused by Phillips after meeting Phillips in Pennsylvania in 1983 or 1984. *Id.* ¶¶ 198, 201–09, 226. John Doe 4 further alleges that on an unspecified date, Phillips brought John Doe 4 to a "WWE Event" in Landover, Maryland, and sexually abused him after the event in a motel. *Id.* ¶ 201.

- John Doe 5, a citizen of Pennsylvania, alleges he met Phillips in 1983 or 1984 and that Phillips took him and others to shows in New York and Philadelphia. *Id.* ¶¶ 213–16, 227. John Doe 5 further alleges that on an unspecified date, Phillips brought John Doe 5 to a "WWE Event" in Landover, Maryland, and sexually abused him after the event in a motel. *Id.* ¶¶ 217–18.

Plaintiffs allege that Defendants knew or should have known of Phillips's conduct but failed to warn or protect Plaintiffs, thus proximately causing the injuries Plaintiffs sustained as a result of Phillips's abuse. *E.g.*, *id.* ¶¶ 24 & n.8, 274, 278–82. In particular, Plaintiffs claim that:

- In 1982 or 1983, at a wrestling show in Allentown, Pennsylvania, a wrestler observed Phillips in a car performing oral sex on a minor. *Id.* ¶¶ 40, 42. Although Plaintiffs allege that a security guard later brought the minor to Mr. McMahon and

4

his father, *id.*, Plaintiffs do not allege what, if anything, the McMahons were told about the alleged incident.

- In 1988, the McMahons fired Phillips because his relationship with kids "seemed peculiar and unnatural" and then rehired Phillips a few weeks later "with the caveat that Phillips steer clear from kids." *Id.* ¶ 45; *see id.* ¶¶ 14, 44–45, 50, 290.

- Vincent K. McMahon had "eyes and ears everywhere" and that the McMahons "clearly knew what was going on." *Id.* ¶¶ 11, 37, 69.

Plaintiffs further dedicate dozens of pages of their Complaint to "notice" allegations that postdate Phillips's alleged employment (after 1992) and that concern alleged knowledge of (i) lower-level workers regarding Phillips or (ii) alleged misconduct unrelated to Phillips. *See generally id.* ¶¶ 7–156.

## PROCEDURAL HISTORY

Plaintiffs commenced this litigation in the Circuit Court for Baltimore County, Maryland, on October 23, 2024. ECF No. 15. On December 2, 2024, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. ECF No. 1 at 2. On December 4, 2024, this Court issued a stay pending a decision from the Maryland Supreme Court considering the constitutionality of the CVA in three unrelated cases. ECF No. 13. On February 3, 2025, the Maryland Supreme Court found the CVA to be constitutional as applied to the challenged cases. *Archbishop of Washington*, 330 A.3d at 1106. On February 19, this Court lifted the stay and ordered that Defendants respond to Plaintiffs' Complaint by April 7, 2025. ECF No. 31.

## LEGAL STANDARDS

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. Corp.* v. *Flagship Resort Dev. Cor.*, 416 F.3d 290, 294 (4th Cir. 2005) (citation omitted). Where jurisdiction is assessed based "only on motion papers, supporting legal

memoranda and the relevant allegations in the complaint," plaintiffs must "make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.* (citation omitted). Such a showing requires pleading sufficient facts that, if true, would support the court's exercise of its power over the defendant. *Phillips* v. *British Airways*, 743 F. Supp. 3d 702, 707 (D. Md. 2024). Barebones, speculative, and conclusory assertions regarding a defendant's contacts with a forum state, however, are insufficient to make a prima facie showing of personal jurisdiction. *See Troy Brave LLC* v. *Grantsville Truck & Trailer, LLC*, 692 F. Supp. 3d 516, 521 (D. Md. 2023); *cf. Carefirst of Md., Inc.* v. *Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402–03 (4th Cir. 2003) (collecting cases finding no abuse of discretion in denying jurisdictional discovery where plaintiffs relied on bare, speculative, or conclusory assertions regarding defendants' forum contacts).

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). Claims are facially plausible only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although well-pleaded facts must be accepted as true, courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc.* v. *J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## ARGUMENT

I.    **The Claims Against TKO and WWE Should Be Dismissed Pursuant to Rules 12(b)(2) and 12(b)(6) for Failure to Plausibly Plead a Successor Liability Theory.**

The Complaint should be dismissed as to TKO and WWE for failure to plead successor liability.  Where, as here, the plaintiffs' claims "rest[] entirely on the actions of companies for which the plaintiff[s] claim[] the defendants are liable as successors," the "jurisdictional issues are inextricably intertwined . . . with the adequacy of the factual allegations of successor liability." *AMA Sys., LLC* v. *3B Tech, Inc.*, 2023 WL 7410854, at *3 (D. Md. Nov. 9, 2023) (quoting *68th Street Site Work Grp.* v. *Airgas, Inc.*, 2021 WL 4255030, at *8 & n.4 (D. Md. Sept. 16, 2021)).  As such, for this Court to exercise personal jurisdiction over TKO and WWE, Plaintiffs "must first have adequately pleaded a theory of successor liability"; if they have failed to do so, the Complaint must be dismissed pursuant to Rules 12(b)(2) and 12(b)(6).  *Id.* (quoting *68th Street*, 2021 WL 4255030, at *8).

In the Fourth Circuit, "a corporation that acquires assets of another does not also acquire its liabilities, except where:  (1) the successor expressly or impliedly agrees to assume the liabilities of the predecessor; (2) the transaction may be considered a de facto merger; (3) the successor may be considered a 'mere continuation' of the predecessor; or (4) the transaction is fraudulent." *68th Street*, 2021 WL 4255030, at *9 (citing *PCS Nitrogen Inc.* v. *Ashley II of Charleston LLC*, 714 F.3d 161, 173 (4th Cir. 2013)); *see Martin* v. *TWP Enters., Inc.*, 132 A.3d 361, 377–79 (Md. Ct. Spec. App. 2016) (extending same principles to limited liability companies).  To adequately plead successor liability, a plaintiff must (i) "identify which of the four exceptions [he] is invoking" and (ii) plead "facts supporting the invocation of the chosen exception."  *68th Street*, 2021 WL 4255030, at *9 (citation omitted).

Plaintiffs here have failed to satisfy these pleading standards.  Rather than identify an exception and plead the requisite supporting facts, Plaintiffs make only conclusory and barebones allegations related to successor liability.  In particular, Plaintiffs allege only the following:

- "Defendant TKO Group Holdings, Inc. . . . now owns and operates the WWE." Compl. ¶ 34; *see also id.* ¶ 25 (asserting TKO "acqui[red]" WWE).

- "On September 12, 2023, a transaction completed between Endeavor Group Holdings and World Wrestling Entertainment, Inc., resulted in a merger between the WWE and Ultimate Fighting Championship ('UFC') promotions and the formation of their new parent company, TKO."  *Id.* ¶ 238; *see also id.* ¶ 240.

- "WWE and TKO are the same entity and/or a successor entity to WWF that existed at the time the Plaintiffs were injured."  *Id.* ¶ 250.

- "As successor entities, WWE and TKO acquired any and all assets and liabilities for the entity, WWF, and therefore, are liable for the conduct of the principals, agents, and employees that occurred in the course and scope of their employment and/or in furtherance of the WWF business and brand."  *Id.* ¶ 251.

These allegations do not come close to pleading successor liability.  It is well established that merely pleading a "run-of-the-mill" business transaction and alleging in conclusory terms that a defendant is a "successor entity" responsible for all liabilities of its predecessor is not sufficient to plead an exception to the general rule of successor non-liability.  *68th Street*, 2021 WL 4255030, at *9–11 (collecting cases).

Moreover, the Complaint does not even attempt to identify or plead any exception to that rule.  In particular, the Complaint makes no allegations that (i) TKO or WWE expressly or impliedly agreed to assume the liabilities of its predecessor (or that its predecessor(s) did the same) or (ii) that any of the alleged or implied transactions were fraudulent (they were not).  The Complaint is further silent as to each of the considerations relevant to the de facto merger exception (*i.e.*, continuity of the enterprise, continuity of ownership, prompt cessation of the seller corporations' operations, and assumption by the purchaser of obligations necessary for the

uninterrupted continuation of the seller's business). *Equal Rights Ctr.* v. *Equity Residential*, 2016 WL 1258418, at *13 (D. Md. Mar. 31, 2016).

Finally, Plaintiffs also fail to allege that the "mere continuation" exception applies. That exception "focus[es] . . . on whether only one corporation remains in existence after the sale of assets and on the continuation of management and ownership between the predecessor and successor." *Nat'l Fire & Marine Ins. Co.* v. *Advanced Lighting Techs.*, 2024 WL 3377869, at *5 (D. Md. July 11, 2024) (citations omitted); *see AMA Sys. LLC* v. *3B Tech, Inc.*, 2023 WL7410854, at *6 (D. Md. Nov. 9, 2023) (holding that the fact that employees or management of the predecessor entity moved over to the successor company is insufficient to establish a "mere continuation"). In *National Fire*, for example, the court found the mere continuation exception had not been pleaded where the plaintiff "offer[ed] no facts . . . concerning whether [the predecessor entity] continued to exist after the sale of assets to [the successor entity], the extent to which the two entities were owned and managed by the same persons following the sale, the adequacy of consideration [that the predecessor entity] received for the sale, or the purpose of the sale." 2024 WL 3377869, at *6. Those same deficiencies exist here. And, as to TKO in particular, Plaintiffs' allegation that TKO owns WWE, Compl. ¶¶ 34, 239–40, "undercut[s]" the mere continuation exception because "the allegation[] suggest[s] that [WWE] continued to exist after the alleged [transaction]," *AMA*, 2023 WL7410854, at *6.

As further evidence of Plaintiffs' failure to plead successor liability, the Complaint appears to disclaim—incorrectly—any obligation to plead it. In particular, Plaintiffs summarily assert that, although Defendant World Wrestling Entertainment, LLC "was formerly known [by] a variety of names" (at least four of which are referenced in the Complaint),[2] Plaintiffs can (and do) refer to

---

[2] *See* Compl. ¶ 1 n.1 (referencing "World Wide Wrestling Federation" and "World Wrestling Federation"); *id.* ¶ 105 (referencing "Titan Sports, Inc."); *id.* ¶ 238 (referencing "World Wrestling Entertainment, Inc.").

the various business entities "synonymously." Compl. ¶ 1 n.1; *see, e.g.*, *id.* ¶ 106. But Plaintiffs'

obligation to plead successor liability cannot be dispensed with as a matter of law or fact, given

that Plaintiffs' allegations concern events in the 1980s, *see id.* ¶¶ 162–222, and the Complaint

(including material incorporated by reference) makes clear that neither World Wrestling

Entertainment, LLC nor TKO existed during the relevant time period, *see id.* ¶ 109 n.52 (citing

Annual Report indicating that the WWE entity in existence in 2022 was World Wrestling

Entertainment, *Inc.*); ¶ 236 (indicating the current WWE entity is "World Wrestling

Entertainment, LLC"); ¶ 240 (stating that "TKO was formed on March 29, 2023").

Accordingly, because Plaintiffs have failed to plead a successor liability theory as to TKO

or WWE, the Complaint should be dismissed as to both entities under Rules 12(b)(2) and 12(b)(6).

## II.    The Claims Against TKO and WWE Should Be Dismissed Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction.

Even if Plaintiffs had adequately pleaded successor liability as to TKO and WWE, the

Complaint should also be dismissed as to both TKO and WWE because each Plaintiff fails to meet

his burden to make a prima facie showing that this Court has personal jurisdiction over either entity

as to each of his claims based on WWF's alleged contacts with the forum. *See New Wellington*,

416 F.3d at 294; *see also Bristol-Myers Squibb Co.* v. *Superior Court*, 582 U.S. 255, 264–65

(2017) (requiring each plaintiff to establish "a connection between the forum and the[ir] specific

claims at issue"); *Hartford Mut. Ins. Co.* v. *Hoverzon LLC*, 2021 WL 1390317, at *4 (D. Md. Apr.

13, 2021) (explaining that a predecessor entity's contacts "provide the ultimate basis for

jurisdiction" where successor liability is asserted).

Federal courts apply state law to determine the bounds of their jurisdiction over a

defendant. *See* Fed. R. Civ. P. 4(k)(1)(A); *ESAB Grp., Inc.* v. *Centricut, Inc.*, 126 F.3d 617, 622

(4th Cir. 1997). "[F]or a district court to assert personal jurisdiction over a nonresident defendant,

two conditions must be satisfied:  (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst*, 334 F.3d at 396.  Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103(b), reaches as far as the Due Process Clause permits. *Phillips* v. *British Airways*, 743 F. Supp. 3d 702, 708 (D. Md. 2024) (citing *Carefirst*, 334 F.3d at 396).

As the Supreme Court has repeatedly recognized in interpreting the Due Process Clause in the personal jurisdiction context,

> [e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*Bristol-Myers Squibb*, 582 U.S. at 263 (quoting *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 294 (1980)).  In recognition of this bedrock principle, the exercise of authority over a nonresident defendant is "subject to review for compatibility with the Fourteenth Amendment's Due Process Clause" because the "assertion of jurisdiction exposes defendants to the [forum] State's coercive power." *Id.* at 261 (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 918 (2011)).

The Due Process Clause cabins the authority of courts in a particular forum to exercise coercive power over out-of-state defendants by recognizing only "two types of personal jurisdiction:  'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Id.* at 262 (citing *Goodyear*, 564 U.S. at 919).  A court properly imbued with general jurisdiction may hear any claim against a defendant, even if all the conduct underlying the claim occurred outside of the forum state. *Id.*  But our federal system limits the

exercise of general jurisdiction over corporations to forums where a defendant "is fairly regarded as at home." *Id.* (quoting *Goodyear*, 564 U.S. at 924). Specific jurisdiction, by contrast, may be proper where a defendant is not "at home," but must be predicated on a substantial relationship between the forum state and the discrete claim asserted—in other words, for a court "to exercise specific jurisdiction [over a particular defendant], 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Id.* (quoting *Daimler AG* v. *Bauman*, 571 U.S. 117, 127 (2014)). Critically, however, if specific personal jurisdiction exists over a defendant with respect to one claim, the Court "cannot . . . use that claim to exert personal jurisdiction over the same defendant with respect to other claims that do not otherwise support such jurisdiction." *Edwards* v. *Schwartz*, 378 F. Supp. 3d 468, 491 (W.D. Va. 2019) (citing *Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 414 (1984)); *see also Gatekeeper Inc.* v. *Stratech Sys., Ltd.*, 718 F. Supp. 2d 664, 667–68 (E.D. Va. 2010) (collecting cases where courts have held that the specific jurisdiction analysis requires a determination as to each claim alleged in the complaint).

Application of these well-settled principles demonstrates that nonresident Defendants TKO and WWE are not susceptible to general or specific personal jurisdiction for the claims alleged in Plaintiffs' Complaint, and must be dismissed from this case.

### A.     TKO and WWE Are Not Subject to General Jurisdiction in Maryland.

TKO and WWE are not subject to general jurisdiction in Maryland. Due process permits courts to exercise general jurisdiction over a defendant—and hear any and all claims against that defendant—only when that defendant can be deemed "at home" in the forum state. *Bristol-Myers Squibb*, 582 U.S. at 262. A corporate defendant is "at home" in a forum only when it: (1) is incorporated in the forum; (2) has its principal place of business in that forum; or (3), in an "exceptional case," has operations that are "so substantial and of such a nature as to render the

corporation at home" in the forum. *Daimler*, 571 U.S. at 137–39 & n.19; *see Fidrych* v. *Marriott Int'l, Inc.*, 952 F.3d 124, 133–34 (4th Cir. 2020).

None of these circumstances applies to WWF, TKO, or WWE. Plaintiffs' Complaint acknowledges that TKO is a Delaware corporation with its principal place of business in New York and that WWF was, and WWE is, a Delaware company with its principal place of business in Connecticut. *See* Compl. ¶¶ 1 n.1, 236, 239. The Complaint makes *no* allegations concerning any connection between TKO and Maryland. And the minimal connections alleged in the Complaint between WWF or WWE and Maryland do not describe an "exceptional case" that would render WWF or WWE "at home" here. *See Daimler*, 571 U.S. at 139 n.19; *Fidrych*, 952 F.3d at 134. If WWF, TKO, or WWE could be deemed "at home" in Maryland based on the contacts described in the Complaint, a plethora of companies and their affiliates would be deemed to be "at home" in many places—a formulation that the Supreme Court has long rejected as "unacceptably grasping." *Daimler*, 571 U.S. at 137–38. As the Supreme Court cautioned in *Daimler* and the Fourth Circuit observed in *Fidrych*, a corporate entity "that operates in many places can scarcely be deemed at home in all of them." *Id.* at 139 n.20; *see Fidrych*, 952 F.3d at 134. Because the Complaint fails to allege that WWF, TKO, or WWE has significant ties to Maryland such that WWF was, or TKO or WWE is, "at home" here, TKO and WWE are not subject to general jurisdiction in Maryland.

**B.    TKO and WWE Are Not Subject to Specific Jurisdiction in Maryland for the Claims Alleged in the Complaint.**

TKO and WWE also are not subject to specific jurisdiction in Maryland for Plaintiffs' claims. "Specific jurisdiction exists if, but only if, '(1) the exercise of jurisdiction is authorized under the state's long-arm statute; and (2) the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment.'" *Phillips*, 743 F. Supp. 3d at 711 (alterations

omitted) (quoting *Carefirst* 334 F.3d at 396). Here, the Court's exercise of jurisdiction over WWE and TKO is not authorized by Maryland's long-arm statute and would not comport with due process for any claim alleged in the Complaint.

### 1.    Maryland's Long-Arm Statute Does Not Authorize Jurisdiction Over TKO or WWE.

"Maryland's long-arm statute limits specific jurisdiction to cases where the cause of action 'arises from any act enumerated in the statute itself.'" *Id.* (quoting Md. Code Ann., Cts. & Jud. Proc. § 6-103(a)). In particular, as pertinent here, the exercise of jurisdiction is limited to causes of action that arise from the conduct of a party who, directly or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State; [or]
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State[.]

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b). Plaintiffs "ha[ve] not identified which prong of the Maryland long-arm statute authorizes the Court to assert personal jurisdiction over Defendants," which, as this Court has squarely held, "provides an independent basis for dismissal." *Lewis* v. *Willough at Naples*, 311 F. Supp. 3d 731, 735 (D. Md. 2018) (Bredar, J.). At best, Plaintiffs appear to reference subsections (1) to (4) as bases for the Court's jurisdiction, *see* Compl. ¶ 242, but none applies to the claims asserted here.

> **(a)    Sections 6-103(b)(1) and 6-103(b)(2) Do Not Authorize Jurisdiction Over TKO or WWE.**

Plaintiffs' allegations concerning WWF's (or TKO's and WWE's) business dealings in Maryland are insufficient to confer jurisdiction over the claims asserted in the Complaint because Plaintiffs' claims do not arise out of those business dealings.

Section 6-103(b)(1) authorizes jurisdiction over a party who transacts business in Maryland. "Maryland courts have construed the phrase 'transacting business' narrowly, requiring, for example, significant negotiations or intentional advertising and selling in the forum state." *Phillips*, 743 F. Supp. 3d at 711 (citation omitted). Allegations of contracts or business practices "only *tenuously connected* to the cause of action are not enough to confer specific jurisdiction." *Id.* (emphasis added) (collecting cases). Instead, Plaintiffs "must show some purposeful act in Maryland in relation to one or more of the elements of the cause of action." *Aphena Pharma Sols.-Maryland LLC* v. *BioZone Labs., Inc.*, 912 F. Supp. 2d 309, 315 (D. Md. 2012) (alteration omitted).

Here, Plaintiffs' allegations concerning WWF's (or TKO's or WWE's) business dealings in Maryland[3] are, at most, only tenuously connected to Plaintiffs' claims—which arise from (i) alleged negligence by WWF executives wholly separate from such business dealings and (ii) an employee's alleged acts that arose outside the scope of his employment as a matter of law and, thus, cannot be imputed to his employer under an agency theory. *See, e.g.*, *Rachel-Smith* v. *FTData, Inc.*, 202 F. Supp. 2d 400, 405–06 (D. Md. 2002) (when a plaintiff does not allege that a perpetrator of abuse was acting in furtherance of the business interests of his employer "in allegedly assaulting [plaintiff]," the plaintiff has not "allege[d] that [the perpetrator] acted in the

---

[3]    John Does 1, 2, and 3 do not plausibly allege any connection between their claims and any WWF (or WWE) business dealings in Maryland. *See* Compl. ¶¶ 173–74 (alleging that Phillips "invited [John Doe 1] on a trip to Maryland" for an unspecified "show" that wrestlers attended); *id.* ¶¶ 185, 195 (alleging that John Does 2 and 3 attended unspecified "wrestling shows" with Phillips in Maryland and elsewhere).

scope of his employment").  The Southern District of New York's decision in *Edwardo* v. *Roman Catholic Bishop of Providence*, 579 F. Supp. 3d 456 (S.D.N.Y. 2022), assessing a similar provision of New York's long-arm statute, is instructive.  There, a priest allegedly traveled from Rhode Island to New York for a business meeting, arranged for the plaintiff to accompany him on the trip and to stay with him at a hotel, retired to the hotel following the business meeting, and sexually assaulted the plaintiff.  *Id.* at 463.  The court rejected the plaintiff's contention that his negligence claims arose out of the defendant church's and diocese's business dealings, reasoning that the priest's sexual abuse of the plaintiff at a hotel "had, at best, a tangential relationship to any contacts Defendants had with New York," namely, the business meeting, which "cannot serve as the statutory basis . . . to exercise personal jurisdiction over Defendants."  *Id.* at 476 (citation omitted).  For the same reasons, § 6-103(b)(1) does not authorize jurisdiction over any of Plaintiffs' claims asserted in the Complaint.

Even if WWF's (or TKO's or WWE's) business dealings in Maryland were sufficient (which they are not), Plaintiffs' allegations certainly would not authorize this Court's jurisdiction over Plaintiffs' claims that arise from acts and injuries alleged to have arisen outside of Maryland (*i.e.*, the vast majority of Plaintiffs' claims)—which have no nexus to Maryland at all.  *Cf. Phillips*, 743 F. Supp. 3d at 712 (no personal jurisdiction where events occurred in Virginia).

Plaintiffs' reliance on Section 6-103(b)(2) of the long-arm statute would be similarly unavailing.  That subsection authorizes specific jurisdiction over a party who, as pertinent, "[c]ontracts to supply . . . services . . . in the State."  "[A] contract in and of itself does not automatically constitute sufficient minimum contacts" and that the dispute at issue must "grow out of a contract" that has a "substantial connection" with the forum.  *Ellicott Mach. Corp.* v. *John*

*Holland Party Ltd.*, 995 F.2d 474, 478 (4th Cir. 1993) (finding short-term contract with Maryland corporation insufficient to establish personal jurisdiction over nonresident defendant).

The suit-related conduct at issue here has nothing to do with WWF's (or TKO's or WWE's), or their agent's, alleged contracts to supply services in Maryland. Plaintiffs do not plead that their allegations of abuse grew out of any contractual relationship with WWF (or TKO or WWE), let alone one that has a substantial connection to Maryland. Further, any such services contracts in Maryland would be, at most, only tenuously connected to Plaintiffs' Maryland-based claims, and no case law supports construing § 6-103(b)(2) differently in this regard from § 6-103(b)(1). In any event, WWF's (or TKO's or WWE's) contracts to supply services in Maryland plainly do not authorize this Court's jurisdiction arising from Plaintiffs' claims related to acts and injuries outside of Maryland.

### (b)    Sections 6-103(b)(3) and 6-103(b)(4) Do Not Authorize Jurisdiction Over TKO or WWE.

Plaintiffs also claim this Court has personal jurisdiction under Maryland's long-arm statute because Defendants "caused tortious injury in Maryland." Compl. ¶ 242. Plaintiffs do not plead whether § 6-103(b)(3) or (b)(4) purportedly applies. Neither does.

Subsection (b)(3) authorizes jurisdiction over a defendant who "[c]auses tortious injury in the State by an act or omission in the State." As such, subsection (b)(3) requires both the alleged injury and the alleged act to have occurred in Maryland. *Aphena*, 912 F. Supp. 2d at 317. This is fatal to Plaintiffs' jurisdictional argument for at least two reasons. *First*, the vast majority of the injuries alleged in the Complaint occurred *outside of Maryland*—in Massachusetts, Pennsylvania, Rhode Island, Connecticut, New York, or unspecified "other states." *E.g.*, Compl. ¶¶ 162–222. *Second*, even assuming each Plaintiff has plausibly pleaded an injury in Maryland (which at least

John Does 1, 2, and 3 have not, *see supra* pp. 3–4), the Complaint fails to plead *any act or omission* by WWF (or TKO or WWE) *in Maryland* that purportedly caused the alleged injury.

Instead, the Complaint alleges that Defendants Vincent K. McMahon and Linda McMahon, as executives overseeing WWF with its principal place of business *in Connecticut*, negligently hired, supervised, and retained Phillips, and knew or should have known about his alleged abuse but failed to act *before* allegedly permitting Phillips to bring Plaintiffs to company events in Maryland and elsewhere. *E.g.*, Compl. ¶¶ 236, 254–98. But absent from the Complaint are any plausible allegations of negligent acts by Mr. McMahon or Ms. McMahon *in Maryland*, as required to exercise jurisdiction under § 6-103(b)(3). And, as explained above, any alleged sexual misconduct by Phillips in Maryland was plainly outside the scope of his employment, which means he was not acting as an agent of WWF (or TKO or WWE) at the time of the events that give rise to Plaintiffs' claims. *See Rachel-Smith*, 202 F. Supp. 2d at 405–06; *cf. Edwardo*, 579 F. Supp. 3d at 470. Because § 6-103(b)(3) authorizes specific jurisdiction over a nonresident defendant only based on acts taken in Maryland by the defendant or its agent, § 6-103(b)(3) does not authorize jurisdiction for the claims asserted in Plaintiffs' Complaint.

Subsection (b)(4) also fails as a basis for jurisdiction. While subsection (b)(4) authorizes jurisdiction over a defendant "when there is a tortious injury in or outside the state [following] an act or omission in or outside the state," *Aphena*, 912 F. Supp. 2d at 316, that kind of jurisdiction is limited to situations in which the defendant "engages in a persistent course of conduct" within Maryland, *Phillips*, 743 F. Supp. 3d at 713. Courts in this Circuit have construed subsection (b)(4) "as a general jurisdiction statute," requiring that the defendant "be at home" in Maryland, while the Fourth Circuit has suggested in dicta that "continuous" contacts "over a long period of time" *may* also authorize jurisdiction under § 6-103(b)(4). *Id.* (citing *Pandit* v. *Pandit*, 808 F. App'x

179 (4th Cir. 2020) (unpublished)).  The Complaint fails under either alternative, as Plaintiffs fail to plead that WWF was (or that TKO or WWE is) "at home" in Maryland, *see supra* Part II.A, or that WWF, TKO, or WWE otherwise engaged in a kind of persistent course of conduct in Maryland that is sufficient to authorize jurisdiction.  To be sure, although Plaintiffs collectively plead at most one or two WWE events in Maryland, Compl. ¶¶ 201, 217–18, the Complaint contains conclusory allegations that "WWE shows were routinely held in Maryland" throughout the unspecified "relevant period," *id*. ¶¶ 244–45.  But such allegations are insufficient even under the Fourth Circuit's unpublished approach in dicta.  *See Phillips*, 743 F. Supp. 3d at 713–14 (finding allegation that British Airways had continuous contacts with Maryland by virtue of operating flights into and out of the state was insufficient to establish jurisdiction even under the broader interpretation of § 6-103(b)(4)).  As such, Plaintiffs fail to establish jurisdiction under § 6-103(b)(4) as well.

### 2.    The Exercise of Specific Jurisdiction Over TKO or WWE Would Not Comport with Due Process.

Exercising specific jurisdiction over TKO or WWE would also be improper because it would not comport with due process.  Due process permits courts to exercise specific jurisdiction over a nonresident defendant only if "the defendant has purposefully established minimum contacts in the forum State such that it should reasonably anticipate being haled into court there." *Fidrych*, 952 F.3d at 138 (alteration omitted) (quoting *Perdue Foods LLC* v. *BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016)).  When determining whether specific jurisdiction exists, courts in this Circuit use a three-pronged analysis that considers the following:  "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether

the exercise of personal jurisdiction would be constitutionally reasonable." *Perdue Foods*, 814 F.3d at 189 (internal quotation marks omitted).  No prong is satisfied here.

> **(a)    Plaintiffs Have Failed to Show That TKO or WWE Purposefully Availed Itself of the Privilege of Conducting Activities in Maryland.**

Plaintiffs fail to plead that WWF (or TKO or WWE) purposefully availed itself of the privilege of conducting activities in Maryland within the meaning of the Due Process Clause.  A defendant has purposefully availed itself of the privilege of conducting activities in Maryland "where the defendant 'deliberately' has engaged in significant activities within a State or has created 'continuing obligations' between [it]self and residents of the forum." *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 475–76 (1985) (citations omitted).  This "requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or 'of the unilateral activity of another party or a third person.'" *Id.* at 475.

The Complaint fails to plead that WWF (or TKO or WWE) deliberately engaged in significant activities or continuing obligations in, or directed at, Maryland.  Although the Complaint summarily alleges that "WWE shows were routinely held in Maryland" throughout the unspecified "relevant period," Compl. ¶¶ 244–45, such bare, conclusory assertions are insufficient to establish jurisdiction. *See Carefirst*, 334 F.3d at 402–03; *Troy Brave*, 692 F. Supp. 3d at 521. Nor does the Complaint allege any negligent acts imputable to WWF (or TKO or WWE) by Vincent K. McMahon or Linda McMahon in Maryland, or that WWF (or TKO or WWE) had any involvement in Phillips's decision to allegedly transport any Plaintiffs to Maryland.

The District of New Jersey's decision in *Doe* v. *Archdiocese of Philadelphia*, 2020 WL 3410917 (D.N.J. June 22, 2020), is instructive.  There, the plaintiff (a former altar boy at a Pennsylvania church) alleged that a priest assigned to his church transported plaintiff to New Jersey and abused him. *Id.* at *1.  In finding the "personal availment" requirement not satisfied,

the court reasoned that the "[p]laintiff d[id] not allege that any negligent conduct on the part of [the d]efendant took place in New Jersey," that "[d]efendant's supervisory duties did not . . . intentionally target New Jersey," or that the defendant directed the priest to take the Plaintiff to New Jersey. *Id.* at \*3.  The court further rejected the plaintiff's contention that the defendant's "alleged knowledge of [the priest]'s conduct, or the conduct of other priests in transporting children to New Jersey for the purpose of sexual abuse" was sufficient to establish jurisdiction, *id.*, because "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause," *id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 295).  This reasoning applies with equal force to Plaintiffs' claims here and shows why the exercise of specific jurisdiction would be inappropriate.

> **(b)**     **Plaintiffs Have Failed to Show That Their Claims Arise Out of TKO's or WWE's Activities Directed at the State.**

The Complaint also must be dismissed for lack of personal jurisdiction over TKO and WWE because Plaintiffs' claims do not arise out of or relate to WWF's (or TKO's or WWE's) activities in Maryland.

For a plaintiff's claims to "arise out of or relate to" the defendant's contacts with the forum, there must be a sufficient "relationship among the defendant, the forum, and the litigation." *Helicopteros*, 466 U.S. at 414; *see Wallace* v. *Yamaha Motors Corp, U.S.A.*, 2022 WL 61430, at \*3 (4th Cir. Jan. 6, 2022); *Rivera* v. *Altec, Inc.*, 2021 WL 2784265, at \*8 (D. Md. July 2, 2021).  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  *Wallace*, 2022 WL 61430, at \*3 (quoting *Bristol-Myers*, 582 U.S. at 264).

In *Coleman* v. *KIPP DC Supporting Corporation*, 2019 WL 1126357 (D. Md. Mar. 12, 2019), the Court found that the plaintiffs' claims related to the defendant school district's alleged

failure to report a former teacher's sexual misconduct did not arise out of *the defendants' activities in Maryland*, as required, "but out of acts or omissions by [d]efendants that occurred in the District of Columbia where [d]efendants conduct[ed] their business." *Id.* at *3; *see id.* at *1. The fact that some of the former teacher's alleged sexual misconduct occurred in Maryland was irrelevant to the due process analysis. *See id.* at *3; *see also Walden* v. *Fiore*, 571 U.S. 277, 284–85 (2014) (emphasizing that the connection with the forum state must arise from the contacts that *the defendant* itself creates with the state).

Similarly here, Plaintiffs' claims arise out of alleged acts or omissions by Defendants that occurred in Connecticut where Defendants conducted their business, not from any allegedly tortious acts or omissions on the part of Defendants *in Maryland*. *See, e.g.*, Compl. ¶¶ 236, 254–98. Neither Phillips's alleged misconduct in Maryland nor Plaintiffs' alleged injuries in Maryland are sufficient to permit this Court to exercise its coercive power over TKO or WWE and hear the claims alleged in Plaintiffs' Complaint.[4] As such, the exercise of specific jurisdiction would be improper.

**(c)     Exercising Jurisdiction Over TKO or WWE Would Not Be Constitutionally Reasonable.**

Finally, even if Plaintiffs had sufficiently alleged purposeful availment and that their claims arise out of or relate to WWF's (or TKO's or WWE's) Maryland contacts, it would still be constitutionally unreasonable for this Court to exercise personal jurisdiction over TKO or WWE. To determine whether jurisdiction is constitutionally reasonable, courts assess "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most

---

[4]  This is especially true as to John Does 1, 2, and 3—none of whom plausibly allege any connection between their claims and any WWF (or WWE) business dealings in Maryland, *see supra* note 3, and thus cannot assert that their claims arise out of Defendants' contacts with the forum state.

efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477–78.

Here, none of the five Plaintiffs or four Defendants resides in Maryland and Plaintiffs' claims concern allegations of negligence that did not occur in Maryland. There is nothing remotely convenient or efficient about calling the parties to Maryland to resolve this dispute. Nor does Maryland have an interest in adjudicating a dispute involving nonresidents, allegations of negligent acts or omissions that occurred outside of the State, and alleged harms which occurred almost entirely outside of Maryland. For the same reason, Plaintiffs also do not have a substantial interest in obtaining relief in Maryland.

Because exercising jurisdiction over TKO or WWE would be constitutionally unreasonable, the claims against both entities should be dismissed for lack of personal jurisdiction.

## III. The Claims Against TKO and WWE Should Be Dismissed Pursuant to Rule 12(b)(6) for Failure to State a Claim.

While Defendants appreciate the gravity of the Plaintiffs' underlying allegations, the Complaint should nonetheless be dismissed for failure to state a claim upon which relief can be granted based on the theories of relief asserted here. To plead any negligence claim under Maryland law, "a plaintiff must 'allege with certainty and definiteness, facts and circumstances sufficient to set forth (a) a duty owed by the defendant to the plaintiff, (b) a breach of that duty and (c) injury proximately resulting from that breach.'" *Estate of Green* v. *City of Annapolis*, 696 F. Supp. 3d 130, 170–71 (D. Md. 2023) (quoting *Fletcher* v. *Md. Transit Admin.*, 741 F. App'x 146, 149 (4th Cir. 2018)); *see Pace* v. *Maryland*, 38 A.3d 418, 423 (Md. 2012). To plead a claim for negligent hiring, training, and retention, the plaintiff must further plead "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of the incompetence; (4) the employee's act or omission that caused the

plaintiff's injuries; and (5) the employer's negligence in hiring, training, or retaining the employee as the proximate cause of the plaintiff's injury." *Pizarro Orta* v. *Creekstone Landscaping & Excavating, LLC*, 2024 WL 3555093, at *4 (D. Md. July 25, 2024).

Plaintiffs' negligence claims should be dismissed for at least three reasons. *First*, as a matter of law, the Complaint fails to plead a cognizable duty of care owed to Plaintiffs. *Second*, even if Plaintiffs had pleaded a duty of care, any supposed duty did not extend to Phillips's alleged out-of-work conduct. *Finally*, Plaintiffs' general negligence claim should be dismissed as duplicative of Plaintiffs' negligent hiring, training, and retention claim.

### A.    Plaintiffs Fail to Plead a Duty of Care That Defendants Owed Them.

The Complaint fails to sufficiently plead that WWE and TKO owed Plaintiffs a legally cognizable duty. Whether a legal duty exists is a question of law to be decided by the Court. *Simon* v. *Dick's Sporting Goods, Inc.*, 2022 WL 16722400, at *3 (D. Md. Nov. 4, 2022). "In a negligence claim, 'duty' is defined as 'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.'" *Id.* (quoting *Todd* v. *Mass Transit Admin*, 816 A.2d 930, 933–34 (Md. 2003)). "Absent a legally recognized duty owed by the defendant to the plaintiff, . . . [the plaintiff] cannot sustain[] a cause of action in negligence." *Id.* at *4 (internal quotation marks and citation omitted).

Plaintiffs assert that Defendants owed Plaintiffs a common law duty of care because the harm to Plaintiffs was reasonably foreseeable. *See* Compl. ¶¶ 260, 262, 287, 288. While foreseeability is a consideration in determining whether a duty of care exists, "its existence alone does not suffice to establish a duty under Maryland law." *Remsberg* v. *Montgomery*, 831 A.2d 18, 26 (Md. 2003); *see Warr* v. *JMGM Grp., LLC*, 70 A.3d 347, 361 (Md. 2013); *Barclay* v. *Briscoe*, 47 A.3d 560, 574 (Md. 2012); *Doe* v. *Pharmacia & Upjohn Co.*, 879 A.2d 1088, 1093–94 (Md. 2005). That is because Maryland recognizes "the general rule that there is no duty to control a

third person's conduct so as to prevent personal harm to another, unless a 'special relationship' exists either between the [defendant] and the third person or between the [defendant] and the person injured." *Remsberg*, 831 A.2d at 26–27 (quoting *Ashburn* v. *Anne Arundel Co.*, 510 A.3d 1078, 1083 (Md. 1986)); *see Fletcher*, 741 F. App'x at 149–50.  The Complaint appears to claim that a special relationship existed between Defendants and Plaintiffs based on four different theories.  None applies to this set of facts.

> **1.  The Complaint Fails to Plead That the Alleged Harm to Plaintiffs Was Reasonably Foreseeable.**

The Complaint fails to plausibly plead a common law duty of care based on a theory that the alleged harm to Plaintiffs was reasonably foreseeable to Defendants.  To plead that an employee's misconduct was reasonably foreseeable to an employer, a plaintiff must allege facts and circumstances sufficient to plead that the defendant employer was aware of specific prior acts or allegations against the employee in question.  *See Mitchell* v. *Rite Aid of Maryland, Inc.*, 290 A.3d 1125, 1131 (Md. App. Ct. 2023); *Doe* v. *Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014).  "The prior misconduct, moreover, must be of the same kind that caused the injury; general, unrelated or lesser allegations of prior wrongdoing are insufficient." *Alsaud*, 12 F. Supp. 3d at 681 (collecting cases).

Plaintiffs here fail to plausibly plead any *prior* misconduct was known, or should have been known, by Defendants at the time of the alleged harms to Plaintiffs.  The Complaint devotes dozens of paragraphs to alleged *general* awareness of Phillips's severe misconduct that came to light in 1992 or later, as well as alleged misconduct by individuals other than Phillips who worked for WWE or its alleged predecessor entities.  *E.g.*, Compl. ¶¶ 7–156, 252-267, 270-271, 279, 285-

286, 292-297.[5]  But, as a matter of law, those unrelated allegations cannot establish reasonable foreseeability as to the alleged misconduct by Phillips.  While Plaintiffs claim that (i) Vincent McMahon had "eyes and ears everywhere" and thus, the McMahons "clearly knew what was going on," *id.* ¶¶ 37, 69, 146; (ii) a security guard brought a minor to Mr. McMahon after Phillips was allegedly seen performing oral sex on the minor in a car, although the Complaint is silent as to what was specifically told to Mr. McMahon about the incident, and therefore does not adequately plead Mr. McMahon had notice as to Phillips, *id.* ¶¶ 40, 42; and (iii) in 1988, the McMahons fired Phillips because his relationship with kids "seemed peculiar and unnatural" and then rehired him a few weeks later with the instruction to "steer clear from kids," *id.* ¶¶ 14, 44–45, 50, 290, such vague allegations are procedurally insufficient to plead that Defendants knew or should have known of misconduct by Phillips prior to his alleged abuse of Plaintiffs.  As a result, Plaintiffs have failed to plead that the alleged harms to Plaintiffs were reasonably foreseeable to Defendants.

### 2.    The Complaint Fails to Plead a Special Relationship Between Defendants and Plaintiffs.

The Complaint also fails to allege facts showing the existence of a special relationship between Defendants and Plaintiffs.  The Complaint appears to claim four theories as to why Defendants supposedly owed Plaintiffs a special duty of care:  (i) because Plaintiffs were minors, *see* Compl. ¶¶ 258, 259; (ii) based on a statute obligating all persons in Maryland to report suspected child abuse, *see id.* ¶¶ 254, 276; (iii) because Plaintiffs were employed by WWF (or WWE), *see id.* ¶¶ 259, 277, 280; and (iv) because Plaintiffs were business invitees, *see id.* ¶ 262. None is legally viable.

---

[5] Plaintiffs refer to Terry Garvin and Pat Patterson in the causes of action listed in the Complaint but none of the John Does makes any allegations that they were abused by Garvin or Patterson.

Plaintiffs did not adequately plead that Defendants owed them a special duty of care based on their age at the time of the relevant events alleged in the Complaint.  While a special duty to exercise reasonable care to protect minor children has been recognized in certain situations where the presence of minors is required by law, such as in primary and secondary schools, it does not apply to the set of facts alleged here.  *See Molock* v. *Dorchester Cnty. Fam. YMCA, Inc.*, 779 A.2d 963, 968–69 (Md. Ct. Spec. App. 2001) (rejecting special duty at YMCA social event).  Plaintiffs do not allege, nor could they, that they were required by law to attend, or otherwise accompany Phillips to, wrestling shows.  To the contrary, Plaintiffs could "leave the event[s] at any time without sanction and without [TKO, WWE, or any alleged predecessor] having any right to stop them." *Molock*, 779 A.2d at 968.  The Complaint therefore fails to plead that this special legal duty of care applied to Defendants.

Plaintiffs likewise fail to plead that Defendants owed Plaintiffs a statutory duty of care.  In their Complaint, Plaintiffs invoke Maryland law obligating all "person[s] in this State" to report suspected child abuse to local law enforcement.  Md. Code Ann., Fam. Law § 5-705(a)(1).  That law, however, applies to "all Marylanders," *Maryland* v. *Sewell*, 205 A.3d 966, 979 (Md. 2019), and would therefore not be applicable to nonresidents such as Defendants.  Even if such reporting obligations applied to nonresidents physically within the State, as discussed, the Complaint does not adequately plead that any Defendant had knowledge of conduct occurring in Maryland that would trigger a duty to report.  *See supra* Part III.A.1.  As such, the Complaint fails to plead a statutory duty of care owed to Plaintiffs.

The Complaint further fails to plead that Defendants owed Plaintiffs a duty under an employment theory.  Although Plaintiffs claim that Defendants "had a duty to provide [Plaintiffs] with a safe place to work," Compl. ¶ 277; *see id.* ¶¶ 259, 280, any such duty only extends to

employees.  To determine whether an employer-employee relationship exists, courts consider "(1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer."  *Sable* v. *Baltimore Cnty. Gov't*, 2021 WL 4772921, at *5 (D. Md. Oct. 12, 2021) (citation omitted).  Plaintiffs' Complaint does not (and cannot) allege that WWF (or WWE or TKO) hired Plaintiffs, paid Plaintiffs' wages,[6] had the ability to discharge Plaintiffs, or controlled Plaintiffs' alleged work for the WWF (or WWE or TKO).  To the contrary, the Complaint alleges that *Phillips* hired Plaintiffs and that *Phillips* paid Plaintiffs money for the work *he requested*.  *See, e.g.*, Compl. ¶¶ 1, 171, 190, 202, 216, 267.  Because the Complaint fails to allege an employer-employee relationship between WWF (or WWE or TKO) and any Plaintiff, the Complaint fails to plead that Defendants owed any of them a duty to provide a safe place to work.

Plaintiffs' business invitee theory, *see* Compl. ¶ 262, is also deficient.  A special relationship between a business owner and patron giving rise to a duty to exercise due care to protect the patron, can be found only where the owner "(1) controlled a dangerous or defective condition; (2) had knowledge or should have had knowledge of the injury-causing condition; and (3) the harm suffered was a foreseeable result of that condition."  *Winffel* v. *Westfield Prop. Mgmt., LLC*, 2022 WL 1591405, at *4 (D. Md. May 19, 2022) (citing *Troxel* v. *Iguana Cantina, LLC*, 201 Md. App. 476, 496 (2011)).  Because the Complaint fails to plead that Defendants had, or should have had, knowledge of Phillips's alleged misconduct before any Plaintiff was harmed or that any

---

[6]  The Complaint alleges that unspecified individuals "received some direct financial renumeration for their [alleged] work for the WWE, but much of their payment was in the form of room and board, food, transportation, and free access to professional wrestling shows."  Compl. ¶ 269.  But the Complaint does not (and cannot) allege that WWF (or WWE or TKO) paid any wages to any Plaintiff or any other individual who assisted Phillips.

Plaintiff's alleged harm was foreseeable, *see supra* Part III.A.1, the Complaint fails to plead that Defendants owed any Plaintiff a duty under a business invitee theory.

**B.      Any Alleged Duty Owed to Plaintiffs Did Not Extend to Phillips's Alleged Out-of-Work Conduct.**

Even if the Complaint had adequately pleaded that Defendants owed Plaintiffs a duty of care (which it does not), as a matter of law, that duty would not have extended to Phillips's alleged out-of-work conduct.  A defendant cannot be held liable for negligent oversight over third-party conduct that occurs outside of the defendant's custody or control.  *See Fletcher*, 741 F. App'x at 151 (collecting cases holding that school district had no duty to protect students during off-premises activities).  In *Alsaud*, for example, the court dismissed the plaintiff's negligent supervision and retention claims against her assailant's employer at the motion-to-dismiss stage where the underlying sexual misconduct was alleged to have occurred off defendant's premises at a hotel.  12 F. Supp. 3d at 681.  Similarly here, each Plaintiff alleges that Defendants are liable for harm that Phillips allegedly caused Plaintiffs while outside of WWF (or WWE) events, including at hotels, in cars, and during trips that Plaintiffs do not allege bore any connection to WWF (or WWE) activities.  *E.g.*, Compl. ¶¶ 165–67, 170–72, 174, 183, 190, 193, 201, 208, 217–19. Because such alleged conduct took place off premises where Defendants had no control over Phillips, Defendants cannot be held liable for any alleged harm attributed to such conduct.

**C.      Plaintiffs' General Negligence Claim Should Be Dismissed as Duplicative of Plaintiffs' Negligent Hiring, Training, and Retention Claim.**

Finally, Plaintiffs' general negligence claim (Count I) should be dismissed as duplicative of Plaintiffs' negligent hiring, training, and retention claim (Count II).  Where, as here, plaintiffs plead a general negligence claim and a claim for negligent hiring, training, and retention—claims that are "functionally the same" under Maryland law—courts in this district routinely dismiss the general negligence claim as duplicative and to promote judicial economy.  *Pizarro Orta*, 2024 WL

3555093, at *4 (collecting cases).  Such dismissal is "especially" warranted "when the claims are

'rooted in the same factual allegations and theory of liability.'"  *Id.* (citation omitted).  Because

that is the case here, Plaintiffs' general negligence claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants TKO and WWE's Motion to

Dismiss in its entirety.

Dated:  April 7, 2025                                     Respectfully submitted,
        New York, New York

                                                         PAUL, WEISS, RIFKIND, WHARTON &
                                                         GARRISON LLP

                                                         _____*/s/  Gregory F. Laufer*_____
                                                         Daniel J. Toal (*pro hac vice*)
                                                         Richard C. Tarlowe (*pro hac vice*)
                                                         Gregory F. Laufer (*pro hac vice*)
                                                         Emily A. Vance (*pro hac vice*)
                                                         1285 Avenue of the Americas
                                                         New York, NY 10019-6064
                                                         Tel: (212) 373-3000 | Fax: (212) 757-3990
                                                         dtoal@paulweiss.com
                                                         rtarlowe@paulweiss.com
                                                         glaufer@paulweiss.com
                                                         evance@paulweiss.com

                                                         GOODELL, DEVRIES, LEECH & DANN, LLP

                                                         _____*/s/  Linda S. Woolf*_____
                                                         Linda S. Woolf (Federal Bar No: 08424)
                                                         K. Nichole Nesbitt (Federal Bar No: 26137)
                                                         Sean Gugerty (Federal Bar No: 21125)
                                                         One South Street, 20th Floor
                                                         Baltimore, MD 21202
                                                         Tel: (410) 783-4000 | Fax: (410) 783-4040
                                                         lsw@gdldlaw.com
                                                         knn@gdldlaw.com
                                                         sgugerty@gdldlaw.com

                                                         *Attorneys for World Wrestling Entertainment, LLC
                                                         and TKO Group Holdings, Inc.*