**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOHN DOE 1, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 1:24-cv-3487-JKB |
| v. | ) | |
| | ) | |
| WORLD WRESTLING ENTERTAINMENT, LLC, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**DEFENDANT VINCENT K. McMAHON'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**KRAMON & GRAHAM, P.A.**

John A. Bourgeois (Bar No. 11834)
Christopher C. Jeffries (Bar No. 28527)
750 East Pratt St., Suite 1100
Baltimore, MD 21202
Telephone: (410) 347-7408
Facsimile: (410) 361-8204
jbourgeois@kg-law.com
cjeffries@kg-law.com

**AKIN GUMP STRAUSS HAUER &
FELD LLP**

Jessica T. Rosenberg
  (admitted *pro hac vice*)
Ilana Roberts
  (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
jrosenberg@akingump.com
iroberts@akingump.com

*Attorneys for Defendant
Vincent K. McMahon*

**HEARING REQUESTED**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT................................................................................ 1

FACTUAL BACKGROUND ................................................................................... 2

PROCEDURAL HISTORY ..................................................................................... 4

LEGAL STANDARD ............................................................................................. 4

ARGUMENT ......................................................................................................... 6

I.    The Court Should Dismiss the Claims Against McMahon Under Rule 12(b)(2)
      for Lack of Personal Jurisdiction ............................................................... 6

      A.    McMahon Is Not Domiciled in Maryland and Is Not Subject to
            General Jurisdiction Here ................................................................... 7

      B.    McMahon Is Not Subject to Specific Personal Jurisdiction Under
            Maryland Law or the Constitution....................................................... 8

            1.    Maryland's long-arm statute does not authorize personal
                  jurisdiction over McMahon......................................................... 8

            2.    Exercising specific jurisdiction over McMahon does not
                  comport with due process ......................................................... 10

II.   The Court Should Dismiss the Complaint Under Rule 12(b)(6) for Failure to
      State a Claim ............................................................................................. 12

      A.    Plaintiffs Fail to State a Claim for Negligence Against McMahon ...................... 12

            1.    McMahon did not personally owe to Plaintiffs any of the
                  alleged employment-based duties ............................................. 13

            2.    McMahon did not owe any duties to business invitees,
                  including Plaintiffs.................................................................... 18

            3.    Plaintiffs fail to plead that their alleged harms were reasonably
                  foreseeable ............................................................................. 19

            4.    None of the remaining alleged duties are legally cognizable .................. 22

      B.    Plaintiffs Fail to State a Claim for Negligent Hiring, Supervision,
            Training, and Retention Against McMahon......................................... 24

CONCLUSION...................................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Antonio v. Sec. Servs. of Am., LLC*,
   701 F. Supp. 2d 749 (D. Md. 2010) ....................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................5, 18

*Athas v. Hill*,
   476 A.2d 710 (Md. 1984) ................................................................13, 15, 16, 24

*Bauman v. Woodfield*,
   223 A.2d 364 (Md. 1966) ................................................................................19

*Beasley v. Bernard*,
   No. 23-cv-3133 (DKC), 2024 WL 326952 (D. Md. Jan. 29, 2024) ....................13, 14, 16, 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................5

*Blount v. Boston*,
   718 A.2d 1111 (Md. 1998) ...............................................................................7

*Bowman v. Top Gun of Va., Inc.*,
   No. 21-cv-2207 (TJS), 2021 WL 5827776 (D. Md. Dec. 8, 2021) .....................14, 16, 17, 24

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cty.*,
   582 U.S. 255 (2017) ....................................................................................6

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ................................................................................10, 11

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
   334 F.3d 390 (4th Cir. 2003) .....................................................................4, 5, 6, 8

*Cent. Va. Aviation, Inc. v. N. Am. Flight Serv. Inc.*,
   23 F. Supp. 3d 625 (E.D. Va. 2014) ...................................................................11

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
   561 F.3d 273 (4th Cir. 2009) ...........................................................................10

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ..................................................................................5, 6

ii

*Doe v. Alsaud*,
    12 F. Supp. 3d 674 (S.D.N.Y. 2014)................................................................17, 19

*E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*,
    213 F.3d 175 (4th Cir. 2000) ...........................................................................5

*Est. of Green v. City of Annapolis*,
    696 F. Supp. 3d 130 (D. Md. 2023)....................................................12, 18, 19

*Fletcher v. Md. Transit Admin.*,
    741 F. App'x 146 (4th Cir. 2018) ...............................................................12, 17

*Gibbs v. Cty. of Del.*,
    No. 15-cv-1012 (RWT), 2015 WL 6150939 (D. Md. Oct. 15, 2015)....................6

*Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*,
    299 F. Supp. 2d 505 (D. Md. 2004) ...................................................................9

*Hastings v. Mechalske*,
    650 A.2d 274 (Md. 1994) ...........................................................................15, 24

*Jarrett v. Home Depot U.S.A., Inc.*,
    No. 21-cv-1514 (SAG), 2021 WL 3288361 (D. Md. Aug. 2, 2021) ..........14, 16, 18

*Joseph v. Bozzuto Mgmt. Co.*,
    918 A.2d 1230 (Md. 2007) ..............................................................................19

*Laser v. Wilson*,
    473 A.2d 523 (Md. App. 1984).........................................................................22

*Lewis v. Willough at Naples*,
    311 F. Supp. 3d 731 (D. Md. 2018)..........................................................8, 9, 10

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)..........................................................20, 21

*Macher v. Netflix Inc.*,
    684 F. Supp. 3d 509 (W.D. Va. 2023) ...............................................................3

*Macias v. Summit Mgmt., Inc.*,
    220 A.3d 363 (Md. App. 2019)..........................................................................18

*Metro. Reg'l Info. Sys. Inc. v. Am. Home Realty Network Inc.*,
    888 F. Supp. 2d 691 (D. Md. 2012)...................................................................11

*Minnick v Southwest Airline Co.*,
    22-cv-3084 (JMC), 2024 WL 4252988 (D. Md. Sept. 20, 2024) .................23, 24

*Molock v. Dorchester Cnty. Family YMCA, Inc.*,
   779 A. 2d 963 (Md. App. 2001)..................................................................22

*Oglesby v. Williams*,
   812 A.2d 1061 (Md. 2002) .........................................................................7

*Pandit v. Pandit*,
   No. 18-cv-1136 (PX), 2018 WL 5026373 (D. Md. Oct. 17, 2018) ..................6, 7, 8

*Pendleton v. State*,
   921 A.2d 196 (Md. 2007) .......................................................................12, 19

*Phillips v. British Airways*,
   743 F. Supp. 3d 702 (D. Md. 2024)..............................................................2, 5

*Phillips v. LCI Int'l, Inc.*,
   190 F.3d 609 (4th Cir. 1999) ......................................................................20

*Pizarro Orta v. Creekstone Landscaping & Excavating, LLC*,
   2024 WL 3555093 (D. Md. July 25, 2024).....................................................24

*Rhaney v. Univ. of Md. E. Shore*,
   880 A.2d 357 (Md. 2005) ............................................................................19

*Ruhrgas AG v. Marathon Oil*,
   526 U.S. 574 (1999)....................................................................................6

*Scott v. Cricket Commc'ns LLC*,
   865 F.3d 189 (4th Cir. 2017) .......................................................................7

*St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*,
   No. 21-cv-2337 (ELH), 2023 WL 2743361 (D. Md. Mar. 31, 2023)....................20

*Stisser v. SP Bancorp, Inc.*,
   174 A.3d 405 (Md. App. 2017).....................................................................6

**STATUTES AND RULES**

28 U.S.C. § 1332.................................................................................................4

28 U.S.C. § 1441.................................................................................................4

28 U.S.C. § 1446.................................................................................................4

Federal Rules of Civil Procedure Rule 12(b)(2) ................................................1, 4, 5, 6

Federal Rules of Civil Procedure Rule 12(b)(6) ................................................1. 5, 11

Md. Code Ann., Cts. & Jud. Proc. § 6-102 (2024) ...............................................7

Md. Code Ann., Cts. & Jud. Proc. § 6-103 ...........................................................................8

Md. Code Ann. Cts. & Jud. Proc. § 6-103(b)(1)....................................................................9

Md. Code Ann. Cts. & Jud. Proc. § 6-103(b)(2)....................................................................9

Md. Code Ann. Cts. & Jud. Proc. § 6-103(b)(3)....................................................................9

Md. Code Ann., Fam. Law § 5-705(a)(1) ...........................................................................23

Defendant Vincent K. McMahon respectfully submits this *Memorandum of Law in Support of His Motion to Dismiss Plaintiffs' Complaint* (the "Motion") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

Five unnamed adults—none of whom are from Maryland—have come to this jurisdiction pleading decades-old allegations from the 1980s in an attempt to capitalize on the recent Maryland Child Victims Act of 2023 ("MCVA"), which eliminates the statute of limitations for civil lawsuits arising out of allegations of child abuse. Plaintiffs seek to hale nonresident Defendant Vincent K. McMahon ("McMahon"), who lacks any meaningful contacts with Maryland, into this state to defend against the decades-old claims. However, while the MCVA may eliminate the statute of limitations, it does not eliminate the statutory and constitutional requirements that a court have personal jurisdiction over all parties before it. The Court has no such jurisdiction here. As a nonresident who is not domiciled in Maryland, there is no general personal jurisdiction over McMahon, and Plaintiffs fail to plead *any* facts to satisfy Maryland's long-arm statute or the due process requirements necessary to assert specific personal jurisdiction over McMahon. Indeed, Plaintiffs do not specify *a single act or omission*—tortious or otherwise—committed by McMahon in Maryland.

Plaintiffs further fail to plead a legally cognizable duty that any of the Defendants—let alone McMahon—owed them, which is fatal to both negligence claims. Under Maryland law, most of the duties alleged in this case—to provide a safe environment; to warn of dangers; to hire, supervise, and retain competent employees—are nondelegable duties of the employer that do not extend to co-employees, officers, or even owners such as McMahon. The Complaint lacks any

1

allegations that McMahon participated in the alleged torts or took any affirmative, direct action; in other words, Plaintiffs fail to plead any personal duty of care.

The Complaint likewise neglects to plead a general duty of care that McMahon purportedly owed to Plaintiffs.  To owe a general duty, the complainants must allege facts establishing that their injuries were "reasonably foreseeable" given the defendant's prior knowledge of the dangerous condition that caused the injury.  Here, Plaintiffs do not sufficiently allege that McMahon had knowledge, constructive or otherwise, that Mel Phillips ("Phillips"), a nonparty who has been deceased for more than a decade, posed a danger ***before*** the Plaintiffs allege that they were abused.  Plaintiffs thus fail to properly plead that their injuries were reasonably foreseeable.  The Complaint attempts to manufacture such knowledge by spouting a broad catalog of negative press, unfounded opinions, speculation, and multi-level hearsay from a hodgepodge of characters (many of whom are deceased).  These accounts expound predominantly upon unrelated alleged scandals from the past thirty years of World Wrestling Entertainment, LLC's ("WWE") history—all of which ***post-date the alleged conduct by Phillips in this case***.  To the extent that a limited number of the allegations arguably imply such knowledge in the requisite timeframe, they lack the factual support, plausibility, consistency, and definiteness required to state a claim.

For all of these reasons, the Court should dismiss the Complaint as against McMahon.

## FACTUAL BACKGROUND[1]

McMahon and his wife, Linda McMahon, both citizens of Connecticut, are the co-founders of what is now known as WWE.  *See* ECF. No. 15 ("Compl.") ¶¶ 234-35.[2]  WWE is an integrated

---

[1] This Motion, including the Factual Background, is based upon the allegations in the Complaint and facts of which the Court may take judicial notice.  For purposes of this Motion only, McMahon assumes the truth of the Complaint's properly pleaded allegations.

[2] *See also Declaration of Vincent K. McMahon*, attached as Ex. 1, ¶ 4, which is admissible for the purposes of assessing jurisdiction.  *See Phillips v. British Airways*, 743 F. Supp. 3d 702, 707 (D. Md. 2024) ("[A] court may look beyond

media and sports entertainment company incorporated in Delaware and headquartered in Connecticut. *Id.* ¶¶ 236-37. TKO Group Holdings, Inc. ("TKO"), a Delaware corporation with headquarters in New York, serves as the parent company of WWE. *Id.* ¶¶ 239-40.

Plaintiffs are five unnamed adults who are citizens of Massachusetts, Pennsylvania, or Florida. *Id.* ¶¶ 223-27. They each allege that Phillips, a former ringside announcer for WWE, sexually abused them in the 1980s when they were minors. *Id.* ¶¶ 162-222. Plaintiffs do not bring claims against Phillips, who is deceased. *Id.* ¶ 24 n.8. Instead, Plaintiffs allege that, based on the same set of "facts," Defendants (i) were negligent in failing to prevent Plaintiffs' alleged injuries, asserting that Defendants knew or should have known of prior instances of Phillips's abuse of other minors, *id.* ¶¶ 247-83, and (ii) negligently hired, trained, supervised, and retained Phillips, *id.* ¶¶ 284-98.

Plaintiffs allege that McMahon owed several duties, many of which are predicated on an employer-employee relationship. *Id.* ¶¶ 258-59, 263, 277, 287-88, 298. The Complaint omits any allegation related to Phillips's or Plaintiffs' employment status vis-a-vis McMahon. Likewise, Plaintiffs allege duties purportedly owed to Plaintiffs as business invitees. *Id.* ¶ 262. The Complaint, however, neglects to allege that McMahon is a landowner or lessor, obligating McMahon to provide a duty of care to them.

Plaintiffs allege that McMahon breached these duties by failing to provide a safe environment and failing to prevent their alleged abuse. *Id.* ¶¶ 24 n.8, 86, 136, 254, 256, 278, 294-95. They allege that Phillips was temporarily terminated in connection with his alleged "peculiar and unnatural interest and attachment to children" in 1988. *See, e.g., id.* ¶ 290.

---

the complaint to affidavits and exhibits to assure itself of personal jurisdiction." (citation omitted)); *Macher v. Netflix Inc.*, 684 F. Supp. 3d 509, 514 (W.D. Va. 2023) (noting that the court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment" to determine whether jurisdiction exists).

Plaintiffs' underlying allegations of sexual abuse are vague as to timing and location. For example, John Doe 2 alleges that he attended wrestling shows with Phillips between 1984 and 1989 in several states including Maryland, and that he was abused in those states. *Id.* ¶ 185. John Doe 3 alleges that he attended several shows with Phillips during 1984-1987. *Id.* ¶ 195. However, neither (or any) Plaintiff articulates any details of alleged instances of abuse occurring after 1988. In other words, Plaintiffs fail to plead any instances of abuse—including the timing, acts, or location—***after*** Plaintiffs allege Phillips was temporarily terminated in 1988.

The bulk of the purported injuries allegedly occurred outside of Maryland, and Plaintiffs do not allege that McMahon partook in any tortious acts in Maryland. Only one Plaintiff, John Doe 4, alleges encountering McMahon in any fashion (and not in Maryland), and he alleges only that McMahon "checked on the ring when John Doe 4 and other ring boys were working on it." *Id.* ¶ 205.

## PROCEDURAL HISTORY

On October 23, 2024, Plaintiffs commenced this litigation in the Circuit Court for Baltimore County. On December 2, 2024, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Following a stay and eventual decision by the Maryland Supreme Court as to the constitutionality of the MCVA, this Court issued an order directing Defendants to respond to the Complaint by April 7, 2025.

## LEGAL STANDARD

To successfully defend against a motion made pursuant to rule 12(b)(2) of the Federal Rules of Civil Procedure ("Rule 12(b)(2)"), the plaintiff must present a prima facie case for personal jurisdiction. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 396-97 (4th Cir. 2003). For "a district court to assert personal jurisdiction over a nonresident defendant, two

conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.* at 396. A court has general personal jurisdiction to hear "any and all claims" against a defendant, regardless of where those claims arise, if the defendant is "essentially at home in the forum State." *Phillips v. British Airways*, 743 F. Supp. 3d 702, 708, 710 (D. Md. 2024) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 123, 127 (2014)). "[A] federal district court has specific jurisdiction over a nonresident defendant if 'the defendant has purposefully availed itself of the privilege of conducting activities in the state,' 'the plaintiff['s] claims arise out of those activities directed at the state,' and 'the exercise of personal jurisdiction would be constitutionally reasonable.'" *Id.* (quoting *Carefirst*, 334 F.3d at 397).

To survive a motion to dismiss under rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible on its face," "the plaintiff [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need only accept as true well-pleaded facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Indeed, courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## ARGUMENT

I.  **The Court Should Dismiss the Claims Against McMahon Under Rule 12(b)(2) for Lack of Personal Jurisdiction**

The claims against McMahon should be dismissed under Rule 12(b)(2) because the Court lacks personal jurisdiction over him. Maryland has virtually no connection to this action. None of the Plaintiffs reside in Maryland. None of the Defendants are at home in Maryland. And, the majority of Plaintiffs' contentions concern conduct and purported injuries alleged to have occurred *outside* of Maryland.

"A court may not hear any claim against parties for whom personal jurisdiction is lacking." *Pandit v. Pandit*, No. 18-cv-1136 (PX), 2018 WL 5026373, at *1 (D. Md. Oct. 17, 2018); *see also Ruhrgas AG v. Marathon Oil*, 526 U.S. 574, 584 (1999) ("Personal jurisdiction . . . is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'" (citations omitted)). "When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Gibbs v. Cty. of Del*., No. 15-cv-1012 (RWT), 2015 WL 6150939, at *1 (D. Md. Oct. 15, 2015) (quoting *Carefirst*, 334 F.3d at 396). Where, as here, the Court decides a pretrial personal jurisdiction motion without first conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction." *Id.* (quoting *Carefirst*, 334 F.3d at 396).

Plaintiffs have not met their burden. They assert only two conclusory allegations purporting to establish jurisdiction, neither of which suffices to make a prima facie showing of either general or specific jurisdiction over McMahon, mandating dismissal of their claims.

A.    **McMahon Is Not Domiciled in Maryland and Is Not Subject to General Jurisdiction Here**

General jurisdiction permits a court to hear any claim against a defendant, irrespective of whether the claim is related to the defendant's contacts with the forum. *Stisser v. SP Bancorp, Inc.*, 174 A.3d 405, 419 (Md. App. 2017) (citing *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cty.*, 582 U.S. 255, 262 (2017)). For an individual, the "paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler*, 571 U.S. at 137. Maryland has codified this paradigm in section 6-102 of the Maryland Courts and Judicial Proceedings Code. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-102 (2024) ("A court may exercise personal jurisdiction as to any cause of action over a person domiciled in . . . the State."). "A defendant is domiciled where he maintains 'both physical presence and an intent to remain.'" *Pandit*, 2018 WL 5026373, at *3 (citations omitted); *see also Blount v. Boston*, 718 A.2d 1111, 1115 (Md. 1998) (noting that the two most significant objective factors in determining domicile are "where the person lives and where he or she votes or is registered to vote").

Here, Plaintiffs have failed to allege—nor could they—any facts establishing that McMahon was domiciled in Maryland when the action was commenced. That is because McMahon is domiciled in Connecticut and has been since 1972—nearly a full decade before any of the alleged abuse. *See* Ex. 1, ¶ 4 (establishing that McMahon has been domiciled in Connecticut since 1972).

Plaintiffs' conclusory (and false) allegation that McMahon "was a citizen of Maryland ***and*** Connecticut" between the 1970s and early 1990s does nothing to negate this. Compl. ¶ 234 (emphasis added). Citizenship itself requires that the person is domiciled in the state, *see Scott v. Cricket Commc'ns LLC*, 865 F.3d 189, 195 (4th Cir. 2017) ("A person is a citizen of a state ***only if*** she is a citizen of the United States ***and*** a domiciliary of that state.") (emphasis added), and while

"[a] person may have several places of abode or dwelling, . . . he can have only one domicile at a time," *Oglesby v. Williams*, 812 A.2d 1061, 1068 (Md. 2002) (citations omitted).  Thus, Plaintiffs' assertion that McMahon was a "citizen" of both Maryland and Connecticut inherently fails to establish McMahon's domicile.

Fatally, the allegation also neglects to establish McMahon's domicile "[a]t the time the Complaint was filed," which is the critical requirement to assert general jurisdiction.  *Pandit*, 2018 WL 5026373, at *3 (declining to exercise general jurisdiction because "[a]t the time the Complaint was filed, no Defendant resided in Maryland."); *see also* Ex. 1, ¶ 3 ("I was not a resident of the state of Maryland, nor was I registered to vote in Maryland, at the time the instant lawsuit was commenced.").  Having previously lived in the forum state does not alter the calculus.  *Pandit*, 2018 WL 5026373, at *3 (remarking that "it is utterly implausible to suggest that after thirty years, these Defendants harbor any 'intent to remain'").  Moreover, the allegation is vague and overbroad given that it does not delineate between the time McMahon purportedly lived in Maryland and when he lived in Connecticut, and it spans decades during which no abuse is alleged (i.e., the 1970s and 1990s).

In light of these deficiencies, the Court cannot assert general personal jurisdiction over McMahon, and the Complaint must be dismissed unless Plaintiffs demonstrate specific personal jurisdiction, which they do not.

B.  **McMahon Is Not Subject to Specific Personal Jurisdiction Under Maryland Law or the Constitution**

1.  <u>Maryland's long-arm statute does not authorize personal jurisdiction over McMahon</u>

Maryland's long-arm statute confers jurisdiction to the fullest extent permitted by the Constitution.  *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103; *Carefirst*, 334 F.3d at 396-97 ("The Maryland courts have consistently held that the state's long-arm statute is coextensive with the

limits of personal jurisdiction set by the due process clause of the Constitution.").  As a result, the statutory analysis under Maryland law "merges with [the] constitutional inquiry."  *Lewis v. Willough at Naples*, 311 F. Supp. 3d 731, 734 (D. Md. 2018).  Nevertheless, "a number of courts . . . have held that a plaintiff must identify the specific provision of the Maryland long-arm statute that confers jurisdiction," and that failure to do so "provides an independent basis for dismissal or transfer."  *Id.* at 735.

"Here, Plaintiff[s] ha[ve] not identified which prong of the Maryland long-arm statute authorizes the Court to assert personal jurisdiction over Defendants."  *Id*.  Based on their conclusory allegations unsupported by any facts, however, it appears they are alleging the Court has jurisdiction over McMahon pursuant to subsections 6-103(b)(1), (b)(2), and (b)(3).  *See* Compl. ¶ 242 (alleging in a conclusory manner that "at all relevant times Defendants regularly transacted business in Maryland, contracted to provide services in Maryland, and caused tortious injury in Maryland").

Sections 6-103(b)(1) and (b)(2) authorize a court to exercise jurisdiction over a defendant who "[t]ransacts any business or performs any character of work or service in the State; [or] (2) [c]ontracts to supply goods, food, services, or manufactured products in the State."  Md. Code Ann., Cts. & Jud. Proc. §§ 6-103(b)(1) and (b)(2).  Nowhere in the Complaint do Plaintiffs allege facts to support that McMahon, in his individual capacity, transacted business or contracted to provide services in Maryland.[3]

---

[3] To the extent Plaintiffs argue that the Court has jurisdiction over McMahon as an agent of WWE, that argument must fail.  "[A] federal court may not exercise personal jurisdiction over a corporation's agent if the agent's only connection to the forum state is as an officer or employee of a non-resident corporation that [allegedly] committed a tort in the state, and if the agent's own [alleged] involvement in that tort occurred outside of the forum state."  *Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc*., 299 F. Supp. 2d 505, 514 (D. Md. 2004) (citations omitted).

Likewise, Section 6-103(b)(3) empowers a court to exercise specific jurisdiction over a nonresident who "[c]auses tortious injury in the State by an act or omission in the State." *Id.* § 6-103(b)(3). For all the reasons cited by WWE and TKO in their *Memorandum of Law in Support of Motion to Dismiss* ("WWE MTD"), which motion McMahon hereby joins and incorporates herein to the extent its arguments are applicable, Plaintiffs fail to allege that McMahon caused tortious injury in Maryland by any negligent acts in Maryland, which is fatal to their claim.

        2.    <u>Exercising specific jurisdiction over McMahon does not comport with due process</u>

Even if Maryland's long-arm statute authorized specific personal jurisdiction over McMahon (it does not), the Constitution would not permit it. To determine "whether the assertion of specific jurisdiction is consistent with constitutional due process, the Court must consider '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Lewis*, 311 F. Supp. 3d at 735 (quoting *Consulting Eng'rs Corp. v. Geometric Ltd*., 561 F.3d 273, 278 (4th Cir. 2009)).

The first prong of the test "articulates the minimum contacts requirement of constitutional due process," *id.*, which ensures that "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person,'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted). A defendant has availed himself where he has "'deliberately' . . . engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum." *Id.* at 475-76.

Plaintiffs fail to allege facts establishing *any* contacts McMahon had with Maryland, let

alone minimum contacts. Aside from the false conclusion alleging that McMahon "was a citizen of Maryland and Connecticut and engaged in conduct in those states which forms the basis of this complaint," Plaintiffs allege no facts tying McMahon to Maryland or even purporting to demonstrate that McMahon availed himself of the privileges of the State. Accordingly, asserting specific personal jurisdiction over McMahon does not comport with the Due Process Clause. Because Plaintiffs "fail[] to satisfy the first prong of the personal jurisdictional analysis, the Court need not reach steps two or three of the inquiry." *Cent. Va. Aviation, Inc. v. N. Am. Flight Serv. Inc.*, 23 F. Supp. 3d 625, 631 (E.D. Va. 2014).

Even if the Court were to proceed with the inquiry, Plaintiffs necessarily fail the second prong given the dearth of allegations suggesting that McMahon partook in *any* activities in Maryland, let alone contacts that could "have created a cause of action in Maryland courts." *Metro. Reg'l Info. Sys. Inc. v. Am. Home Realty Network Inc.*, 888 F. Supp. 2d 691, 699-700 (D. Md. 2012) (dismissing complaint as to defendant CEO where plaintiffs' allegations were "based almost exclusively on [defendant company's] Maryland activities and not on [defendant CEO's] personal contacts with the state or its residents").

Finally, even if the Court were to hold that the first two prongs are satisfied (it should not), exercising jurisdiction over McMahon is not constitutionally reasonable. To determine whether jurisdiction is constitutionally reasonable, courts consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (citation and internal quotation marks omitted). Here, these factors all lead to an undeniable conclusion: haling McMahon, a nonresident with zero

allegations connecting him to Maryland, into a court in Maryland—where none of the Plaintiffs reside and minimal alleged acts occurred—would not only be a substantial burden on McMahon and an inefficient use of the Court's resources, but it would also be constitutionally unreasonable.

II. **The Court Should Dismiss the Complaint Under Rule 12(b)(6) for Failure to State a Claim**

Both claims in the Complaint must be dismissed for the additional reason that Plaintiffs fail to plead that McMahon owed them any legally cognizable duty, a critical element of any negligence claim. Liability for either negligence or negligent hiring does not attach to an owner, officer, supervisor, or employee unless certain exceptions are met—none of which applies here. Indeed, despite lobbing a barrage of duties that McMahon purportedly owed to Plaintiffs, the Complaint overlooks that none of the alleged duties apply to McMahon: he was not their employer, their parent, a premises owner, or in any special relationship with Plaintiffs that could otherwise trigger a duty owed to them. Nor have Plaintiffs alleged facts sufficient to establish a general duty based on the alleged foreseeability of their claimed injuries. These deficiencies are fatal to both claims.

A. **Plaintiffs Fail to State a Claim for Negligence Against McMahon**

For a negligence claim to survive a motion to dismiss under Maryland law, "a plaintiff must 'allege with certainty and definiteness, facts and circumstances sufficient to set forth (a) a duty owed by the defendant to the plaintiff, (b) a breach of that duty and (c) injury proximately resulting from that breach.'" *Est. of Green v. City of Annapolis*, 696 F. Supp. 3d 130, 170-71 (D. Md. 2023) (quoting *Fletcher v. Md. Transit Admin.*, 741 F. App'x 146, 149 (4th Cir. 2018)). Here, Plaintiffs

fail to allege that McMahon owed them a legally cognizable duty, a critical element of a claim for negligence, thereby dooming their claims.[4]

"The existence of a duty is a matter of law that a court may dispose of on a motion to dismiss." *Id.* at 171 (citations omitted). A "duty is 'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.'" *Pendleton v. State*, 921 A.2d 196, 204 (Md. 2007) (citations omitted). "Whether a duty exists depends upon whether one party is entitled to the protection of, or is under an obligation to, the other party. . . ." *Id.* at 205 (citations omitted).

      1.    <u>McMahon did not owe Plaintiffs any of the alleged employment-based duties</u>

Plaintiffs allege a variety of duties based on the purported employment relationship between WWE, Plaintiffs, and/or Phillips—none of which are legally cognizable, particularly against a supervisory employee and officer such as McMahon. Indeed, Plaintiffs fail to adequately allege that any of the named entities owed them a duty as an employer. *See* WWE MTD §§ I (highlighting that Plaintiffs fail to plead successor liability as necessary given that neither WWE nor TKO existed during the alleged abuse); III(A)(2) (noting that Plaintiffs fail to allege that WWF, WWE, nor TKO employed any of the Plaintiffs). At base, as articulated by Ms. McMahon in her *Memorandum of Law in Support of Her Motion to Dismiss* ("<u>LM MTD</u>"), Plaintiffs allege no more than a pseudo-employment relationship between themselves and Phillips, a non-party to this action. *See* LM MTD, § II(A)2;[5] *see also* WWE MTD § III(A)(2) (pointing out that Plaintiffs, volunteers invited to events by Phillips, do not allege they were ever employed by WWE).

---

[4] WWE's memorandum of law, which McMahon has joined where applicable, addresses the Complaint's failure to allege a duty of care that *any* Defendant owed to any or all of the Plaintiffs. *See* WWE MTD § III. Accordingly, this Motion focuses on the Complaint's additional pleading deficiencies with respect to McMahon, personally.

[5] McMahon hereby adopts and joins this section of Ms. McMahon's motion in full.

Plaintiffs, therefore, cannot premise their claims against *any* of the Defendants on duties that an employer typically owes to its employees.

But *even if* Plaintiffs could claim they were WWE employees and thus owed such duties (they cannot), those duties would not have been owed to them by McMahon. Officers and supervisory employees are immune from personal liability where they are alleged to have breached "an employer's nondelegable duty" such as "to provide a safe workplace." *See Beasley v. Bernard*, No. 23-cv-3133 (DKC), 2024 WL 326952, at *4 (D. Md. Jan. 29, 2024) (citations omitted) (clarifying the holding of *Athas v. Hill*, 476 A.2d 710, 715 (Md. 1984) and its progeny, which "draws a clear line between 'affirmative, direct acts of negligence' that managers might carry out in breach of a ***personal*** duty of care versus acts that merely constitute performance of, or failure to perform, the employer's nondelegable duties'" (emphasis added)). Thus, an employee can only be liable for negligence if he "breaches a duty of care which he ***personally owed to the plaintiff***" as opposed to "merely for breaching a duty that the employer owed the injured employee." *Id.* (emphasis added) (citations omitted); *see also Jarrett v. Home Depot U.S.A., Inc.*, No. 21-cv-1514 (SAG), 2021 WL 3288361, at *3 (D. Md. Aug. 2, 2021) (holding that officers and employees may be held liable only "for their own tortious conduct" comprising "'affirmative, direct acts of negligence' that managers might carry out in breach of a personal duty of care" and not for "acts that merely constitute performance of, or failure to perform, the employer's nondelegable duties" (citations omitted)). Thus, a corporate officer or supervisor like McMahon cannot be held liable for negligence where: (1) he is carrying out a nondelegable duty of the employer, ***or*** (2) he has not committed an "affirmative, direct act[] of negligence . . . in breach of a personal duty of care." *Jarrett*, 2021 WL 3288361, at *3. Here, both are true, further disqualifying McMahon from

liability.[6]

Plaintiffs endeavor to extend to McMahon the duty "to provide a reasonably safe place to work and to warn of dangers," Compl. ¶ 258, by summarily alleging that, "[a]dults who work in that environment have a duty to know and be aware of the safety of the environment and to warn the children and their parents of safety risks." *Id.* ¶ 259. This extrapolation must fail because— even where adequately alleged—this duty is a nondelegable duty that "remains with the employer notwithstanding the fact that an employee has been charged with carrying [it] out." *Athas*, 476 A.2d at 718 (emphasis added). An employee does not assume a personal duty to his or her co-workers (let alone to third parties who are not employees) merely by performing the employer's nondelegable duty. *Hastings v. Mechalske*, 650 A.2d 274, 279 (Md. 1994).

*Athas* is instructive here. In *Athas*, the chef at a country club assaulted a busboy, and the busboy sued three supervisors and officers of the club, alleging that they "had notice of [the chef's] violent disposition," and negligently discharged their responsibility to provide a safe workplace. 476 A.2d at 711. The duties alleged were practically identical to those alleged here: "hiring, discharging, and disciplining employees"; "providing employees with a reasonably safe place to work"; "warning and instructing employees concerning the dangers of the work place about which [the employer] knew or should have known and which the employees could not reasonably have discovered"; and "exercising reasonable care and caution in the selection and employment of

---

[6] To the extent Plaintiffs contend that McMahon should be held liable as an *owner* of the WWE—rather than as an officer, supervisor, or co-employee—that argument fails. To hold the owner liable, "the Plaintiffs must demonstrate that there is sufficient cause to pierce the corporate veil." *Antonio v. Sec. Servs. of Am., LLC*, 701 F. Supp. 2d 749, 759 (D. Md. 2010). Under Maryland law, the protection afforded a corporate entity will only be disregarded when it is "necessary to prevent fraud or to enforce a paramount equity." *Id.* (explaining that "Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporation's veil") (internal quotation marks omitted); *see also Bowman v. Top Gun of Va., Inc.*, No. 21-cv-2207 (TJS), 2021 WL 5827776, at *4 n.4 (D. Md. Dec. 8, 2021) ("The fiction of the wholly separate corporate form is jealously guarded by courts in Maryland, where, as a matter of public policy, the power to pierce the corporate veil is to be exercised reluctantly and cautiously.") (citations omitted). Here, "there is no suggestion of fraud or the need to enforce a paramount equity . . . such that veil piercing might be permitted." *Bowman*, 2021 WL 5827776, at *4 n.4.

competent, nonviolent employees." *Id.* The Maryland Supreme Court affirmed the dismissal against the individual supervisors and officers. It did so even though those individuals "were responsible for discharging [the employer's] duty to provide [plaintiff] with a safe place to work and to retain only competent, nonviolent employees," and even though, unlike in this case, the individuals conceded that they had acted negligently. *Id.* at 711, 718. The court held that "[i]n undertaking such managerial and personnel functions, the officers assumed an obligation to the employer only," not to the busboy. *Id.* at 718 (emphasis added). As such, "[those] supervisory employees cannot be held liable for negligently performing the employer's nondelegable duties." *Id.* Even if "the officers knew of [the chef's prior] involvement in altercations while employed at the club and did nothing about this behavior, then they merely breached the duty of providing a safe place to work which [the employer] owed to" the busboy. *Id.* at 719.

Such is the case here. Even accepting as true that Plaintiffs have adequately alleged an employment relationship with WWE (they have not), *and* that McMahon was responsible for "discharging [the WWE's] duty to provide [the Ring Boys] with a safe place to work and to retain only competent, nonviolent employees" (he was not), *and* that he negligently carried out those functions (he did not), the claims against McMahon *must still be dismissed* because "[i]n undertaking such managerial and personnel functions, [McMahon] assumed an obligation to the [WWE] only." *Id.* at 711, 718; *Beasley*, 2024 WL 326952, at *7 (dismissing plaintiff's claims against individual employees where plaintiff failed to allege employees' involvement outside the scope of their employment).

Furthermore, Plaintiffs fail to allege that McMahon committed an "affirmative, direct act[] of negligence . . . in breach of a personal duty of care" owed to Plaintiffs. *Jarrett*, 2021 WL 3288361, at *3. "When evaluating a corporate officer's potential liability under" this

requirement—sometimes referred to as the "participation" doctrine—"it is useful to draw a distinction between acts that constitute 'misfeasance' and those that constitute 'mere nonfeasance.'" *Bowman*, 2021 WL 5827776, at *4 (citations omitted). "A corporate officer must take an active role in the commission of a tort for liability to attach; passive behavior and inaction will not suffice." *Id.* at *4. "Examples of a corporate officer's inaction, which do not subject the officer to liability under the 'participation' doctrine, include: failing to maintain a premises in a safe and reasonable manner; failing to warn persons that a condition was a hazard; failing to properly train, instruct, or hire employees, and failing to establish appropriate policies and procedures to keep a premises safe." *Id.* (citation omitted).

Here, as in *Bowman*, Plaintiffs allege "mere nonfeasance"—that is, "a corporate officer's inaction, which do[es] not subject the officer to liability." *Id.* (citation omitted). Plaintiffs "[have] not alleged that [McMahon] actually participated in the tort[s] that led to [their] injuries." *Id.* at *4. Instead, "[a]ll of [their] allegations concern [McMahon's] failure to take steps that might have prevented" Phillips's alleged abuse. *Id.* at *5. "Plaintiffs' argument that [McMahon] exercised control over [Phillips] . . . does not transform [McMahon's] alleged conduct into an affirmative and direct act of negligence" for which personal liability might be imposed. *Beasley*, 2024 WL 326952, at *5. Rather, "[t]hese allegations of inaction constitute 'mere nonfeasance' and are thus insufficient to subject [McMahon] to personal liability." *Bowman*, 2021 WL 5827776, at *5 (dismissing negligence claims against CEO and director where there was 'simply no allegation . . . that [he] was personally and directly involved in the commission of the tort at issue").

As such, Plaintiffs' failure to allege an employment relationship with WWE, let alone any Defendant, torpedoes their attempt to benefit from any employer-based duties. But even to the

extent they may have been owed such duties (they were not), those duties were not owed to them by McMahon.

        2.     <u>McMahon did not owe any duties to business invitees, including Plaintiffs</u>

Other duties alleged by Plaintiffs fail for similar reasons. Plaintiffs allege that "WWE and the McMahons had a duty to take affirmative action for the aid or protection of business invitees who are in danger on the business' premises because the WWE and the McMahons had knowledge of the danger posed by Phillips." Compl. ¶ 262. As an initial matter, to the extent Plaintiffs allege any abuse in Maryland, they allege it outside of WWE events, including in hotels, on the road, and after hours. Not only does this ruin Plaintiffs' conclusory attempt to impose premises-based liability on Defendants, it also undermines *all* of the duties Plaintiffs allege, which by law cannot impose liability for conduct engaged in by third parties outside of Defendants' "custody or control." *See Fletcher v. Maryland Transit. Admin.*, 741 F. App'x 146, 151 (unpublished) (holding that school district had no duty to ensure students' safety outside of school grounds) (collecting cases); *Doe v. Alsaud*, 12 F. Supp. 3d 674, 681 (S.D.N.Y. 2014) (dismissing negligent supervision and retention claims against employer where plaintiff was assaulted off-premises) (collecting cases).

Furthermore, under Maryland law, it is the "possessor or owner" of land who owes business invitees a duty to "use reasonable and ordinary care to keep the premises safe for the invitee." *Macias v. Summit Mgmt., Inc.*, 220 A.3d 363, 375-76 (Md. App. 2019) (citations omitted). Thus, the duties owed to business invitees are duties that could only be owed to the entrant by the "possessor or owner" of the land—not by company officers or supervisory employees. *See Jarrett*, 2021 WL 3288361, at *3 n.1 ("[T]he underlying principles regarding an employer's non-delegable duties and a supervisory employee's liability are directly applicable [in the premises liability context]—providing a safe place to work is a natural corollary of providing a safe place for invitees

. . . .").  Thus, even to the extent such duties could extend to cover Phillips's alleged actions in this case (they do not), no such duties can be imposed on McMahon.

3.    Plaintiffs fail to plead that their alleged harms were reasonably foreseeable

Plaintiffs' broad-based allegation that "WWE and the McMahons had a general duty to exercise reasonable care to avoid foreseeable injury to others, including the Ring Boys," Compl. ¶ 260, is no more than a conclusory regurgitation of the elements of any negligence cause of action that the Court need not credit.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  In any event, Plaintiffs fail to plausibly plead that their alleged injuries were reasonably foreseeable to McMahon such that he would have owed them any general duty of care.  Indeed, Plaintiffs' vague, conclusory allegations purporting to establish notice prior to any of the alleged abuse do not even come close to sufficiently "alleg[ing] with certainty and definiteness, [the necessary] facts and circumstances" that would require the Court's deference.  *Est. of Green*, 696 F. Supp. 3d at 170-71.

"Where the failure to exercise due care creates risks of personal injury, 'the principal determinant of duty becomes foreseeability.'"  *Pendleton*, 921 A.2d at 205 (citation omitted).  To find liability, "the person accused of negligence must have known or should have known that danger was involved in such act or omission."  *Bauman v. Woodfield*, 223 A.2d 364, 368 (Md. 1966) (citation omitted).  Here, Plaintiffs fail to allege sufficient facts to establish that McMahon knew or should have known of Phillips's alleged ***prior*** misconduct at the time of the alleged harms to Plaintiffs, such that his continued employment would cause Plaintiffs foreseeable injuries.

Plaintiffs' attempt to manufacture McMahon's actual or constructive knowledge by way of citation to negative press from the past thirty years—most of which is unrelated to Phillips or the

Plaintiffs' alleged abuse and ***post-dates*** the 1992 public revelation of the Ring Boys scandal—deserves no consideration. *See Joseph v. Bozzuto Mgmt. Co.*, 918 A.2d 1230, 1236 (Md. 2007) (requiring "either constructive or actual ***pre-injury*** knowledge of" the dangerous condition (emphasis added)); *Rhaney v. Univ. of Md. E. Shore*, 880 A.2d 357, 366, 368 (Md. 2005) (holding university "neither had knowledge nor could have foreseen" attack by student on roommate where there was "no pattern of sufficient ***prior*** violence" by the student); *see also Doe v. Alsaud*, 12 F. Supp. 3d at 681 ("The prior misconduct, moreover, must be of the same kind that caused the injury; general, unrelated or lesser allegations of prior wrongdoing are insufficient.") (collecting cases).

To the extent Plaintiffs attempt to attribute McMahon's actual or constructive knowledge of Phillips's alleged misconduct to the relevant time period, i.e., before the alleged abuse of Plaintiffs occurred, they fail to "allege with certainty and definiteness, facts and circumstances sufficient to set forth" such knowledge. *Est. of Green*, 696 F. Supp. 3d at 170-71. Instead, they proffer only generalized suspicion that the "McMahons controlled and knew everything within WWE," Compl. ¶ 252—which lacks any indicator of "certainty and definiteness"—and vague, third-party allegations that suffer from the same fate. Plaintiffs allege that Phillips was once spotted in a car performing a sexual act on a young boy, and that McMahon was told about it. *Id.* ¶ 40. Plaintiffs, themselves, do not have any personal knowledge of this supposed incident—rather, they allege that in 1992, after the Ring Boys scandal came to light, two wrestlers (both since deceased) alleged that they *heard* that it had happened. *Id.* ¶¶ 40-42. According to the Complaint, one of the wrestlers retroactively claimed that he was present at the venue the night of the alleged incident; Plaintiffs fail to mention, however, that in the same TV appearance, the wrestler admitted that he did not personally see the alleged act, observe anyone reporting it to McMahon, or hear whatever was purportedly told to McMahon. The other wrestler did not even work for the WWE

20

in 1982-1983 when this incident allegedly took place.[7] Plaintiffs cannot plausibly claim that their alleged injuries were rendered "reasonably foreseeable" based entirely on unsupported allegations made by two deceased nonparties, both of whom had their own grievances against the McMahons and the WWE, as to an event they did not witness, and on which they offered conflicting, unspecified details placed vaguely into an expansive timeframe of a number of years from a decade prior. McMahon has consistently and vehemently denied those allegations for 30-plus years, and there is no basis in law or fact for the Court to credit them.

Plaintiffs' remaining notice allegations fare no better. Plaintiffs allege that in 1992, McMahon "confessed to *New York Post* columnist, Phil Mushnick, that he and Ms. McMahon knew of Phillips's 'peculiar and unnatural interest' in boys ***for years before*** they temporarily fired him for it in 1988." *Id.* ¶ 44. This allegation overreaches and misrepresents the Complaint's own sources: Mushnick's March 1992 *New York Post* article (which did not attribute McMahon's supposed knowledge to any specific year), and Mushnick's 1993 deposition (in which he merely claimed that McMahon had known "for some time"). *See id.* ¶¶ 45, 48. Plaintiffs cannot brandish Mushnick's tabloid soundbite *ad nauseam* throughout the Complaint and misattribute it to earlier and earlier timeframes in a contradictory and conclusory fashion to gin up a plausible claim. *See, e.g.*, *id.* ¶¶ 2 (alleging that McMahon "admitt[ed] that he was aware, ***at least as early as the 1980s***,

---

[7] In attempting to further beef up this unsupported allegation, Plaintiffs reference a "1992 investigation into the Ring Boys Scandal" by "a magazine" that referenced the same alleged incident. Compl. ¶ 40. The magazine, *Penthouse*, cited only one source: Bruno Sammartino, the same wrestler upon which Plaintiffs separately rely. *See* Jeff Savage, "No Holds Barred," *Penthouse: The International Magazine for Men* (Sept. 1992). The article notes that Sammartino wrestled in the 1960s and 1970s, returning as an announcer in 1984, *id.*, in contrast to the two-year span in which Plaintiffs allege the incident occurred, Compl. ¶ 42. "[A] court need not feel constrained to accept as truth conflicting pleadings that . . . are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001); *see also St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, No. 21-cv-2337 (ELH), 2023 WL 2743361, at *9 (D. Md. Mar. 31, 2023) (stating that, where a plaintiff incorporates external materials into their complaint, "crediting the document over conflicting allegations in the complaint is proper" (citation omitted)); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (stating that on a motion to dismiss, courts may consider external materials where such materials are "integral to and explicitly relied on in the complaint and . . . the plaintiffs do not challenge [their] authenticity." (citations omitted)).

that Phillips had a "peculiar and unnatural interest in young boys"); 13 (alleging that "Defendants' admission of knowledge" of Phillips's "peculiar and unnatural interest" in young boys "***pre-dated Phillips's abuse of Plaintiffs in this case***") (emphasis added).  The Court need not accept as true pleadings that "are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice."  *In re Livent, Inc.*, 151 F. Supp. 2d at 405-06.

For these reasons, Plaintiffs have failed to plausibly allege McMahon had actual or constructive knowledge prior to the alleged abuse in this case, a legal requirement to establish that their injuries were reasonably foreseeable such that any duty could have been owed to them.[8]

4.    <u>None of the remaining alleged duties are legally cognizable</u>

Plaintiffs' conclusory pleading of various additional nebulous duties suffers the same fate: they fail to allege a legally cognizable duty.

Plaintiffs allege that along with WWE and Ms. McMahon, McMahon "had a duty to report unsafe conditions and not to exploit the Ring Boys for their own personal gain."  Compl. ¶ 261. On its face, this alleged duty to "report unsafe conditions" is no more than a reframing of the common law duties to provide employees and invitees with reasonably safe premises, and to warn of known dangers—duties that, for the reasons already discussed, Plaintiffs have failed to establish any Defendant owed them, let alone McMahon.  Furthermore, there is no basis in law for a duty not to "exploit" another for personal gain.

---

[8] At the very best, Plaintiffs' allegations amount to a charge that McMahon knew as of 1988 (when Phillips was allegedly terminated for a period of time) that Phillips had a "peculiar and unnatural interest" in boys.  The Complaint, however, does not allege a single incident of abuse by Phillips that occurred in 1988 or later.  Indeed, only John Doe 2 pleads that he continued to work as a Ring Boy in the 1988-1989 time period, and he does not allege a specific incident of abuse in those two years.  Compl. ¶¶ 179-87.

Nor is there a basis for Plaintiffs to allege a general duty "shared by all citizens and organizations" to "ensur[e] the safety of children." *See* Compl. ¶ 276; *see also id.* ¶ 254 (referring to a "general duty of all adults" to "tak[e] action to protect Plaintiffs"). Maryland imposes no such broad-based duties. Rather, it imposes a comparable duty on parents, *Laser v. Wilson*, 473 A.2d 523, 529 (Md. App. 1984), or when an entity is acting *in loco parentis* in situations where the presence of minors is required by law, *Molock v. Dorchester Cnty. Family YMCA, Inc.*, 779 A. 2d 963, 968 (Md. App. 2001). There is no allegation that McMahon or any Defendant stood *in loco parentis* to Plaintiffs here, where they could not "leave the [WWE] event[s] at any time without sanction." *Id.* Nor is there any other basis for claiming that McMahon held a special type of relationship or control over Plaintiffs that could trigger a similar duty of care. *Cf.* Compl. ¶ 205 (alleging lone instance of a Plaintiff encountering McMahon, where McMahon allegedly "checked on the ring when John Doe 4 and other ring boys were working on it").[9]

To the extent Plaintiffs are attempting to invoke section 5-705(a)(1) of the Maryland Code's Family Law article, Maryland's child abuse reporting law, that effort fails. The law is not applicable to McMahon as a nonresident of Maryland. Md. Code Ann., Fam. Law § 5-705(a)(1). In any event, the Complaint fails to plead that McMahon, or any Defendant, had knowledge—constructive or otherwise—that Phillips posed a danger in advance of any abuse alleged to have occurred in Maryland. *See supra*, § II(A)(3). Indeed, the Complaint does not even allege that McMahon knew any of the Plaintiffs, let alone that he had reason to believe that they had been abused in Maryland potentially triggering a duty to report.

---

[9] McMahon hereby adopts and joins in full Sections II(A)(1) and II(A)(4) of Ms. McMahon's motion, which present substantially similar arguments. *See* LM MTD §§ II(A)(1), II(A)(4).

B.    **Plaintiffs Fail to State a Claim for Negligent Hiring, Supervision, Training, and Retention Against McMahon**

Plaintiffs also fail to state a claim against McMahon for negligent hiring, supervision, training, and retention.  "[A] plaintiff bringing a negligent hiring, retention, supervision, or training claim must establish: '(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, [training, or supervising the employee] . . . as the approximate cause of the plaintiff's injuries.'"  *Minnick v Southwest Airline Co.*, 22-cv-3084 (JMC), 2024 WL 4252988, at *2 (D. Md. Sept. 20, 2024) (citation omitted).  "[T]he five-element standard for negligent hiring, training, retention, and supervision is simply a 'more descriptive recitation' of the basic elements of negligence, and . . . there is no conflict between the two standards."  *Id.* at *4.

The duty to hire, supervise, train, and retain employees is yet another nondelegable duty of the employer that the Complaint fails to establish that WWE owed to the Plaintiffs, let alone McMahon.  *See supra*, § II(A)(1); *Athas*, 476 A.2d at 713 ("Among the nondelegable duties which the employer owed his employees was . . . the duty to select and retain competent employees." (citations omitted)); *Bowman*, 2021 WL 5827776, at *4 ("Examples of a corporate officer's inaction, which do not subject the officer to liability under the 'participation' doctrine, include: . . . failing to properly train, instruct, or hire employees." (citation omitted)); *Hastings*, 650 A.2d at 280 ("[A] supervisor's negligence in the performance of his or her supervisory duties is not enough to subject him or her to personal liability.").  Even without the non-delegation doctrine, the claim must be dismissed against McMahon because Plaintiffs fail to allege—nor could they—the first element of the claim: "the existence of an employment relationship" with McMahon personally. *Minnick*, 2024 WL 4252988, at *2.

24

Plaintiffs also fail to allege the third element further dooming their claim: the employer's actual or constructive knowledge of the employee's incompetence. As with any negligence claim, "there is no duty to be omniscient; the duty is to exercise care based on the facts that the employer knows or should know." *Id.* at *4. For the same reasons already detailed above (*see supra*, § II(A)(3)), Plaintiffs fail to allege facts sufficient to establish that McMahon knew or should have known of Phillips's alleged proclivities in advance of the Plaintiffs' alleged abuse.[10]

## CONCLUSION

For the foregoing reasons, Defendant Vincent K. McMahon respectfully requests that the Court grant his Motion and dismiss the Complaint.

Date: April 7, 2025                                     Respectfully Submitted,


                                                       **AKIN GUMP STRAUSS HAUER &
                                                       FELD LLP**

                                       By:     */s/ Jessica T. Rosenberg*
                                               Jessica T. Rosenberg
                                                 (admitted *pro hac vice*)
                                               Ilana Roberts
                                                 (admitted *pro hac vice*)
                                               One Bryant Park
                                               New York, NY  10036
                                               Telephone: (212) 872-1000
                                               Facsimile: (212) 872-1002
                                               jrosenberg@akingump.com
                                               iroberts@akingump.com

---

[10] Even if the Court finds that Plaintiffs have plausibly pled a claim against McMahon—which they have not—Plaintiffs' action for negligence should be dismissed as duplicative of their action for negligent hiring, training, supervision, and retention. Under Maryland law, the two claims are "functionally the same," and dismissal of the negligence claim as duplicative is "especially" warranted "when the claims are rooted in the same factual allegations and theory of liability," as is true here. *Pizarro Orta v. Creekstone Landscaping & Excavating, LLC*, 2024 WL 3555093, at *4 (D. Md. July 25, 2024) (internal quotation marks and citation omitted).

**KRAMON & GRAHAM, P.A.**
John A. Bourgeois (Bar No. 11834)
Christopher C. Jeffries (Bar No. 28527)
750 East Pratt St., Suite 1100
Baltimore, MD 21202
Telephone: (410) 347-7408
Facsimile: (410) 361-8204
jbourgeois@kg-law.com
cjeffries@kg-law.com

## **CERTIFICATE OF SERVICE**

I certify that on April 7, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

*/s/ Jessica T. Rosenberg*
Jessica T. Rosenberg