# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JOHN DOE 1, et al.,

               *Plaintiffs*,

v.

WORLD WRESTLING
ENTERTAINMENT, LLC, et al.,

               *Defendants*.

Civil Action No. 24-03487-JKB

**DEFENDANT LINDA E. McMAHON'S MEMORANDUM**
**<u>IN SUPPORT OF RENEWED MOTION TO DISMISS AND REQUEST FOR HEARING</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

I.   Allegations of Abuse ............................................................................................. 2

II.   Allegations against Defendants ............................................................................ 5

III.  Procedural History ................................................................................................ 6

ARGUMENT .................................................................................................................. 6

IV.  Linda E. McMahon is not subject to personal jurisdiction in Maryland, and Plaintiffs' claims against her should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2). ........ 6

    A. WWE's contacts with Maryland do not authorize the exercise of personal jurisdiction over Ms. McMahon. ....................................................................... 8

    B. Maryland's long-arm statute does not authorize specific jurisdiction over Ms. McMahon. ........................................................................................................ 9

        1. Plaintiffs do not allege any business activity that would support the exercise of jurisdiction under subsections (b)(1) or (b)(2) of Maryland's long-arm statute. ....................................................... 10

        2. Plaintiffs do not allege any tortious act or omission that would support the exercise of jurisdiction under subsections (b)(3) or (b)(4) of Maryland's long-arm statute. ......................................... 13

        3. Plaintiffs do not allege any connection to real property that would support the exercise of jurisdiction under subsection (b)(5) of Maryland's long-arm statute. ....................................................... 16

    C. The exercise of personal jurisdiction over Ms. McMahon would not comport with due process. ............................................................................................... 16

        1. Ms. McMahon has not purposefully availed herself of the privilege of conducting activities in Maryland, and Plaintiffs fail to plead facts alleging otherwise. ................................................................. 17

i

2.      Plaintiffs' claims do not arise from any activity of Ms. McMahon in Maryland. .................................................................... 19

3.      The exercise of personal jurisdiction over Ms. McMahon would not be constitutionally reasonable. ................................................. 20

V.   Plaintiffs' claims against Linda E. McMahon are not legally cognizable and should be dismissed under Federal Rule of Civil Procedure 12(b)(6). ................................................. 22

A.   Plaintiffs fail to adequately plead any duty of care owed to them by Ms. McMahon. ........................................................................... 23

1.      Plaintiffs fail to plead any employment-related duty. ................... 23

2.      Plaintiffs fail to plead any duty arising from alleged foreseeability. .................................................................................... 24

3.      Plaintiffs fail to plead any other "special relationship" triggering a duty of care. ............................................................... 26

B.   Plaintiffs' sexual harassment claims are time barred. .................................... 29

C.   The Amended Complaint fails to state a valid claim for punitive damages. .. 29

CONCLUSION ........................................................................................... 30

# TABLE OF AUTHORITIES

**CASES**

*Aphena Pharma Sols.-Maryland LLC v. BioZone Lab'ys, Inc.*,
    912 F.Supp.2d 309 (D. Md. 2012) ...................................................................................... 9, 10

*Ashburn v. Anne Arundel Cnty.*,
    306 Md. 617, 510 A.2d 1078 (1986) ...................................................................................... 23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................. 22

*Asphalt & Concrete Servs., Inc. v. Perry*,
    221 Md. App. 235, 108 A.3d 558 (2015), *aff'd,* 447 Md. 31, 133 A.3d 1143 (2016) ........ 22, 23

*Bell Atl. Corp v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................................. 21

*Bell v. Heitkamp, Inc.*,
    126 Md. App. 211, 728 A.2d 743 (1999) ............................................................................... 30

*Birrane v. Master Collectors, Inc.*,
    738 F.Supp. 167 (D. Md. 1990) .............................................................................................. 10

*Bobo v. State*,
    346 Md. 706, 697 A.2d 1371 (1997) ...................................................................................... 23

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
    582 U.S. 255 (2017) ........................................................................................................ 7, 20, 21

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .......................................................................................................... 20, 21

*Calder v. Jones*,
    465 U.S. 783 (1984) .................................................................................................................... 8

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
    334 F.3d 390 (4th Cir. 2003) ..................................................................................................... 7

*Christian Book Distributors, Inc. v. Great Christian Books, Inc.*,
    137 Md. App 367, 768 A.2d 719 (2001) ............................................................................... 15

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
    561 F.3d 273 (4th Cir. 2009) ....................................................................................... 17, 19, 20

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .................................................................................................................. 15

*Doe v. Alsaud*,
    12 F.Supp.3d 674 (S.D.N.Y. 2014) ................................................................ 25, 27

*Doe v. Comm. Coll. of Baltimore Cnty.*,
    595 F.Supp.3d 392 (D. Md. 2022) ...................................................................... 26

*Dominion Mech. Contractors, Inc. v. E.C. Ernst, Inc.*,
    No. 236, Sept. Term, 2021, 2022 WL 873313 (Md. Ct. Spec. App. Mar. 24, 2022)
    (unreported) ..................................................................................................... 15

*Dring v. Sullivan*,
    423 F.Supp.2d 540 (D. Md. 2006) ...................................................................... 21

*Edwardo v. Roman Catholic Bishop of Providence*,
    579 F.Supp.3d 456 (S.D.N.Y. 2022), *aff'd*, 66 F.4th 69 (2d Cir. 2023) .................. 12

*Ellicott Mach. Corp. v. John Holland Party Ltd.*,
    995 F.2d 474 (4th Cir. 1993) .............................................................................. 10

*ESAB Grp., Inc. v. Centricut, Inc.*,
    126 F.3d 617 (4th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998) .......................... 19

*Fletcher v. Maryland Transit Admin.*,
    741 F. App'x 146 (4th Cir. 2018) (unpublished) ................................................... 27

*Glynn v. EDO Corp.*,
    536 F.Supp.2d 595 (D. Md. 2008) ........................................................................ 8

*Goines v. Valley Cmty. Servs. Bd.*,
    822 F.3d 159 (4th Cir. 2016) .............................................................................. 25

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) .......................................................................................... 15

*Hampton v. Wells Fargo Bank, N.A.*,
    Civ. No. DLB-22-1712, 2023 WL 6200009 (D. Md. Sept. 22, 2023) ......................... 8

*Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*,
    299 F.Supp.2d 505 (D. Md. 2004) .................................................................... 8, 18

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) .......................................................................................... 19

*Laser v. Wilson*,
    58 Md. App. 434, 473 A.2d 523 (1984) ................................................................ 26

*Legends Title, LLC v. Capital One, Nat'l Ass'n*,
    659 F.Supp.3d 637 (D. Md. 2023) .................................................................. 14, 15

iv

*Lewis v. Willough at Naples*,
  311 F.Supp.3d 731 (D. Md. 2018) ........................................................ 17

*McLaughlin v. Copeland*,
  435 F.Supp. 513 (D. Md. 1977) .......................................................... 15

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
  888 F.Supp.2d 691 (D. Md.), *aff'd,* 722 F.3d 591 (4th Cir. 2013) ........................................... 18

*Mitchell v. Rite Aid of Maryland, Inc.*,
  257 Md. App. 273, 290 A.3d 1125, *cert. denied*, 483 Md. 579, 296 A.3d 419 (2023) .......... 24

*Molock v. Dorchester Cnty. Family YMCA, Inc.*,
  139 Md. App. 664, 779 A.2d 963 (2001) ................................................. 26, 27

*New Wellington Fin. Corp.* v. *Flagship Resort Dev. Corp.*,
  416 F.3d 290 (4th Cir. 2005) ............................................................. 6

*Orbita Telecom SAC v. Juvare LLC*, 606 F.Supp.3d 240 (D. Md. 2022) .................................... 13

*Owens-Illinois, Inc. v. Zenobia*,
  325 Md. 420, 601 A.2d 633 (1992) ........................................................ 29

*Pace v. State*,
  425 Md. 145, 38 A.3d 418 (2012) ........................................................ 22

*Pandit v. Pandit*,
  Civil No. 8:18-cv-01336-PX, 2018 WL 5026373 (D. Md. Oct. 17, 2018) ............................ 16

*Pandit v. Pandit*, 808 F. App'x 179 (4th Cir. 2020) (unpublished) .............................................. 12

*Phillips* v. *British Airways*,
  743 F.Supp.3d 702 (D. Md. 2024) ..................................................... 6, 9, 10, 14, 16

*Rachel-Smith v. FTData, Inc.*,
  202 F.Supp.2d 400 (D. Md. 2002) ........................................................ 26

*Roman Cath. Archbishop of Washington v. Doe*,
  489 Md. 514, 330 A.3d 1069  (2025) ...................................................... 1

*Sawyer v. Humphries*,
  322 Md. 247, 587 A.2d 467 (1991) ........................................................ 26

*Scott v. Jenkins*, 345 Md. 21, 690 A.2d 1000 (Md. 1997), *superseded on other grounds by Hoile v. State*, 404 Md. 591, 948 A.2d 30 (2008) .............................................. 29

*Sibert v. Flint*,
  564 F.Supp. 1524 (D. Md. 1983) ......................................................... 14

*Talkington v. Atria Reclamelucifers Fabrieken BV*,
   152 F.3d 254 (4th Cir.), *cert. dismissed*, 525 U.S. 1062 (1998)................................. 22

*Universal Leather, LLC v. Koro AR, S.A.*,
   773 F.3d 553 (4th Cir. 2014), *cert. denied*, 576 U.S. 1035 (2015)............................ 16, 19, 20

*Zinz v. Evans & Mitchell Indus.*,
   22 Md. App. 126, 324 A.2d 140 (1974) ..................................................... 12

**STATUTES**

Md. Code Ann., Cts. & Jud. Proc. § 5-101 .................................................... 29

Md. Code Ann., Cts. & Jud. Proc. § 5-117(a) ................................................. 29

Md. Code Ann., Cts. & Jud. Proc. § 5-117(b) ............................................... 1, 28

Md. Code Ann., Cts. & Jud. Proc. § 6-102 ...................................................... 7

Md. Code Ann., Cts. & Jud. Proc. § 6-103 ...................................................... 7

Md. Code Ann., Cts. & Jud. Proc. § 6-103(a)............................................... 9, 10, 11

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b) .............................................. 9, 11

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1)........................................... 9, 10, 12

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(2)........................................... 9, 10, 12

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3)........................................... 9, 12

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(4)........................................ 9, 12, 13, 14

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(5)........................................... 9, 15, 16

Md. Code Ann., Fam. Law § 5-705(a)(1) ...................................................... 28

**RULES**

Fed. R. Civ. P. 12(b)(2)....................................................................... 2, 6

Fed. R. Civ. P. 12(b)(6)....................................................................... 2, 21

## INTRODUCTION

This lawsuit makes claims based on decades-old allegations of sexual abuse and harassment perpetrated at unspecified times and places by three now-deceased individuals: Mel Phillips, Jr.; Pat Patterson; and Terry Garvin. *See* ECF No. 55-1 ("Am. Compl.")[1] ¶¶ 1, 6, 24, 173–302. These individuals were formerly affiliated with World Wrestling Entertainment, LLC ("WWE"). *Id.* ¶¶ 1, 29.

Following Maryland's decision to eliminate the statute of limitations applicable to civil claims arising out of alleged incidents of child sexual abuse, *see* Md. Code Ann., Cts. & Jud. Proc. § 5-117(b); *see also Roman Cath. Archbishop of Washington v. Doe*, 330 A.3d 1069, 1074-75 (Md. 2025), Plaintiffs filed suit against WWE; its parent company TKO Group Holdings, Inc. ("TKO"); and its cofounders, Vincent and Linda McMahon. Garvin died in 1998, Phillips died in 2012, and Patterson died in 2020; neither they nor their estates are named as parties to Plaintiffs' suit. Instead, given the connection to WWE, Plaintiffs seek to hold Defendants responsible under theories of purported negligent supervision and retention. *Id.* ¶¶ 338–393.

Plaintiffs' 114-page, 393-paragraph Amended Complaint is replete with lurid details of alleged sexual abuse and other alleged misconduct by individuals associated in the past with WWE, only some of which is relevant to the claims in this case. What stands out from the Amended Complaint, however, is what it lacks: any basis for personal jurisdiction over Defendants in Maryland, and any plausible claim for relief. The deficiencies in Plaintiffs' case against Ms. McMahon are particularly stark. Plaintiffs acknowledge that Ms. McMahon is a Connecticut citizen, and they allege only conclusory, nonspecific contacts with Maryland based solely on her

---

[1]    Docket entry 55-1 is described as a "Corrected Amended Complaint Comparison Copy." Citations to Plaintiffs' Amended Complaint are made to this version because the only clean version of the Amended Complaint (ECF No. 51) lacks sequential paragraph numbering.

corporate role at WWE. Even if this Court had personal jurisdiction over Ms. McMahon (it does not), Plaintiffs fail to plead any legally cognizable duty that Ms. McMahon owed to them, an indispensable element of any negligence claim.

Because the Amended Complaint fails to meet these basic requirements for prosecuting civil claims against her, Defendant Linda E. McMahon respectfully moves to dismiss the claims pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## <u>BACKGROUND</u>

Linda E. McMahon is the co-founder and a former executive of WWE. Am. Compl. ¶ 318. She is a citizen of Connecticut, *id.*, and is currently serving as the United States Secretary of Education, *see* Ex. A, Supplemental Declaration of Linda E. McMahon ("L. McMahon Decl.") ¶ 2. Plaintiffs are eight individuals proceeding under the pseudonyms "John Does 1–8." John Does 1 and 2 are citizens of Massachusetts, Am. Compl. ¶¶ 303–04; John Does 3, 5, and 7 are citizens of Pennsylvania, *id.* ¶¶ 305, 307, 309; John Doe 4 is a citizen of Florida, *id.* ¶ 306; John Doe 6 is a citizen of Mississippi, *id.* ¶ 308; and John Doe 8 is a citizen of Nevada.[2] Ms. McMahon recently learned Plaintiffs' true names, but to the best of her knowledge and recollection she has never met or communicated with any of them. L. McMahon Decl. ¶ 13.

## I.    Allegations of Abuse

Plaintiffs allege acts of abuse occurring primarily in the 1970's or 1980's, when they were minors. John Doe 1 alleges that he met Mel Phillips in 1981 or 1982, and that Phillips sexually abused him multiple times during a 12 to 18-month period thereafter. Am. Compl. ¶¶ 173, 188. John Doe 1 alleges specific instances of abuse in states other than Maryland, *id.* ¶¶ 179–82, and also alleges that on one occasion, Phillips took him on a trip to Maryland to see a wrestling show

---

[2]    No Plaintiff, or any party to this lawsuit, is a citizen of Maryland. Am. Compl. ¶¶ 303–10, 317–19.

and abused him in a hotel room after the show. *Id.* ¶¶ 184–85.

John Doe 2 alleges that he attended wrestling shows with Phillips from 1984 to 1989 in at least five states, including Maryland. *Id.* ¶¶ 192, 201. While John Doe 2 alleges that he was abused "in all those states multiple times," *id.* ¶ 201, he does not plead any specific instance of alleged abuse that took place in Maryland.

John Doe 3 alleges that he met Phillips in the mid-1980's. *Id.* ¶ 206. While John Doe 3 alleges specific acts of abuse in Pennsylvania, *id.* ¶¶ 207–08, and that "Phillips sexually abused him in similar ways at most, if not all, of the subsequent wrestling shows he attended with Phillips[,]" *id.* ¶ 209, John Doe 3 does not plead any *specific* instance of alleged abuse that took place in Maryland. Instead, John Doe 3 alleges generally that he attended a dozen or more wresting shows with Phillips from 1983–1987 in various states (including Maryland), and that Phillips abused him in all those states. *Id.* ¶ 215. John Doe 3 also claims that at an unspecified time in an unspecified location, Terry Garvin touched his shoulders and made a comment "implying something sexual," which "made John Doe 3 feel uncomfortable." *Id.* ¶ 211.

John Doe 4 alleges he met Phillips in Pennsylvania in 1983 or 1984, and that Phillips later abused him. *Id.* ¶¶ 219–20. John Doe 4 further alleges that on an unspecified date, Phillips brought John Doe 4 to a "WWE Event" in Landover, Maryland, and sexually abused him after the event in a motel. *Id.* ¶ 222. John Doe 4 claims that he "saw Linda McMahon at least once" at a wrestling event, but he fails to describe where or when this sighting occurred. *Id.* ¶ 227.

John Doe 5 alleges he met Phillips in Pennsylvania in 1983 or 1984, and that Phillips took him and other "ring boys" to shows in New York and Philadelphia. *Id.* ¶¶ 238–41. John Doe 5 further alleges that on an unspecified date, Phillips brought John Doe 5 to a "WWE Event" in Landover, Maryland, and sexually abused him after the event in a motel. *Id.* ¶¶ 244–45.

3

John Doe 6 alleges he met Phillips in "approximately 1988" and traveled with him to WWE events two or three times per year from 1988 until 1992. *Id.* ¶¶ 251, 259. During each of these trips, John Doe 6 alleges that Phillips sexually abused him. *Id.* ¶ 260.[3] John Doe 6 claims that on July 14, 1989, at a WWE event in Baltimore, Maryland, Ms. McMahon walked into a dressing room and "looked right at John Doe 6[.]" *Id.* ¶ 264. John Doe 6 does not allege that he was being abused when Ms. McMahon allegedly "looked right at" him—just that Phillips, Vince McMahon, Pat Patterson, and Terry Garvin were also in the dressing room at the time. *Id.* John Doe 6 alleges that after the event, Patterson sexually abused him in a hotel room. *Id.* ¶¶ 265–66.[4]

John Doe 7 alleges that he met Phillips in "approximately 1974" in Pennsylvania. *Id.* ¶ 274. Thereafter, John Doe 7 alleges that he traveled with Phillips to WWE shows, and that Phillips sexually abused him. *Id.* ¶¶ 278–80, 285. John Doe 7 further alleges that "[i]n hotel rooms— including in Baltimore—Phillips frequently 'wrestled' John Doe 7" in a sexual manner. *Id.* ¶ 287.

John Doe 8 alleges that he met Phillips in "approximately 1982" when he was working concessions at the Baltimore Civic Center in Maryland. *Id.* ¶¶ 292–93. John Doe 8 claims that on or around April 10, 1982, before a WWE event in Baltimore, Phillips took John Doe 8 to a hotel room and abused him. *Id.* ¶¶ 296–98.

---

[3]     John Doe 6 also alleges that former WWE wrestler Koko B. Ware once groped him in a dressing room at a WWE event in Maine. Am. Compl. ¶ 256. This is the first and last mention of Ware, and Plaintiffs bring no claims against Defendants premised on actions committed by Ware.

[4]     John Doe 6 claims that during a WWE event, at an unspecified time and in an unspecified location, he "playfully wrestled" with a boy he believes to be Vince and Linda McMahon's son, Shane, and injured the boy's arm. Am. Compl. ¶ 257. John Doe 6 described "Shane" as "a boy close in age to John Doe 6." *Id.* Shane McMahon, however, is not close in age to John Doe 6. John Doe 6 asserts he was "11 or 12 years old" in "approximately 1988." Shane was born in 1970. L. McMahon Decl. ¶ 17. Furthermore, Ms. McMahon has no recollection of her son suffering the injury described. *Id.*

## II.    Allegations against Defendants

The Amended Complaint alleges two causes of action against all Defendants: Negligence (Count I), Am. Compl. ¶¶ 338–76; and Negligent Hiring, Training, and Retention (Count II), *id.* ¶¶ 377–393. Plaintiffs seek compensatory as well as punitive damages. *Id.* ¶ 393.

Plaintiffs claim that Defendants, including Ms. McMahon, knew or should have known that Phillips, Garvin, and Patterson were sexual harassers and abusers, and that they failed to warn or protect Plaintiffs. *See, e.g.*, Am. Compl. ¶¶ 24 n.8, 345, 366. In particular, Plaintiffs allege that: (1) in 1982 or 1983, Phillips "was spotted in a car" performing oral sex on a minor, and that a security guard later brought the minor to Mr. McMahon and his father, *id.* ¶ 42;[5] (2) in 1988, the McMahons fired Phillips because his "relationship with kids seemed peculiar and unnatural" but then rehired Phillips a few weeks later "with the caveat that Phillips steer clear from kids," *id.* ¶¶ 44–45, 14; (3) the McMahons "clearly knew what was going on," *id.* ¶¶ 11, 61; and (4) that "[t]he McMahons controlled and knew everything within WWE, including the fact that executives, Patterson and Garvin, and the prominent public-facing ring announcer, Phillips, were engaging in rampant sexual misconduct[,]" *id.* ¶ 343.

Plaintiffs' Amended Complaint also includes nonspecific or irrelevant allegations of wrongdoing lifted from a recent *Netflix* documentary, *see, e.g.*, Am. Compl. ¶¶ 7, 46, 133, 136, 157; and from post-1992 press accounts of the so-called "Ring Boy Scandal," *see, e.g., id.* ¶¶ 35-37, 40-45, 164. Plaintiffs further dedicate dozens of paragraphs of the Amended Complaint to alleged sexual misconduct directed at individuals *other* than Plaintiffs. *See, e.g.*, *id.* ¶¶ 70–76, 94–99. Many of these allegations are atmospheric, anecdotal, and hearsay-based, and are marginally relevant, at best, to Plaintiffs' claims.

---

[5]    Plaintiffs do not plead what, if anything, Mr. McMahon was told about Phillips' actions with this unnamed minor, or whether Ms. McMahon ever learned of this incident at all.

### III.    Procedural History

On October 23, 2024, Plaintiffs filed suit in the Circuit Court for Baltimore County, Maryland. On December 2, 2024, WWE and TKO removed this case on diversity grounds. ECF No. 1. Shortly thereafter, this Court issued a stay pending the outcome of a constitutional challenge to the Child Victims Act of 2023 ("CVA"), which eliminated the statute of limitations applicable to civil claims in Maryland arising from allegations of child sexual abuse. ECF No. 13. On February 3, 2025, the Supreme Court of Maryland found the CVA to be constitutional as applied to the challenged cases. On February 19, this Court lifted the stay and ordered that Defendants respond to Plaintiffs' complaint by April 7, 2025. ECF No. 31.

Defendants, including Ms. McMahon, timely filed motions to dismiss on April 7, 2025. ECF No. 48. On April 28, 2025, Plaintiffs filed an Amended Complaint, adding three new John Doe plaintiffs, additional factual allegations, and a claim for punitive damages. Thereafter, the Court denied Defendants' motions to dismiss as moot, ECF No. 56; and, on May 6, 2025, ordered each Defendant to respond to the Amended Complaint by June 11, 2025. ECF No. 54.

## ARGUMENT

### I.    Linda E. McMahon is not subject to personal jurisdiction in Maryland, and Plaintiffs' claims against her should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. Corp.* v. *Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). To survive a motion to dismiss, a plaintiff must "make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.* Such a showing requires pleading sufficient facts that, if true, would support the court's exercise of its power over the defendant. *Phillips v. British*

*Airways*, 743 F.Supp.3d 702, 707 (D. Md. 2024).

"Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Because Maryland law does not authorize this Court's exercise of personal jurisdiction over Ms. McMahon, Plaintiffs' claims against her must be dismissed. For this Court to exercise personal jurisdiction over Ms. McMahon would also be inconsistent with the requirements of due process.

Maryland recognizes two types of personal jurisdiction: general and specific. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 6-102 & 6-103. As the United States Supreme Court has explained, "[a] court with general jurisdiction may hear *any* claim against that defendant[.]" *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (emphasis in original). Specific jurisdiction, however, "is very different." *Id*. "In order for a state court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Id*. (cleaned up) (emphasis in original).

Plaintiffs do not (and could not) claim that Ms. McMahon, who is domiciled in Connecticut, *see* Am. Compl. ¶ 318; L. McMahon Decl. ¶ 2, is subject to general jurisdiction in Maryland. Instead, Plaintiffs rely on Maryland's specific jurisdiction statute. Am. Compl. ¶ 327 (citing Md. Code Ann., Cts. & Jud. Proc. § 6-103). "[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst*, 334 F.3d at 396. Neither condition is satisfied with respect to Ms. McMahon.

**A.    WWE's contacts with Maryland do not authorize the exercise of personal jurisdiction over Ms. McMahon.**

Before turning to the specific reasons Ms. McMahon is not subject to personal jurisdiction in Maryland, it is important to note that "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). "Personal jurisdiction must be based on an individual's *personal contacts* with or purposeful availment of the forum state." *Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F.Supp.2d 505, 513–14 (D. Md. 2004) (emphasis added).

Plaintiffs seem to believe that any contacts between WWE and Maryland can be imputed to Ms. McMahon for personal jurisdiction purposes. *See* Am. Compl. ¶ 327 (pleading the basis for personal jurisdiction over Defendants as a group). That is not the law. "Personal jurisdiction over an individual officer, director, or employee of a corporation does not automatically follow from personal jurisdiction over the corporation." *Harte-Hanks*, 299 F.Supp.2d at 513 (citing cases); *see also Glynn v. EDO Corp.*, 536 F.Supp.2d 595, 604 (D. Md. 2008) ("Employment is insufficient to give rise to personal jurisdiction, and a corporation's contacts with a forum state cannot be attributed to its employees."); *Hampton v. Wells Fargo Bank, N.A.*, Civ. No. DLB-22-1712, 2023 WL 6200009, at *1, 4 (D. Md. Sept. 22, 2023) (dismissing claims against individual defendants, who were officers of the defendant company, for lack of personal jurisdiction where the plaintiff failed to make "any specific allegation that [the officers] had any contact with Maryland or engaged in any conduct in Maryland").

To be clear, as WWE and TKO explain in their Motion to Dismiss, Plaintiffs' allegations

are insufficient to establish personal jurisdiction over the corporate defendants.[6] But even if this Court *could* exercise jurisdiction over WWE and TKO, it would still need to find an independent basis to exercise jurisdiction over Ms. McMahon. As explained below, Plaintiffs provide no such basis, and none exists.

**B.    Maryland's long-arm statute does not authorize specific jurisdiction over Ms. McMahon.**

Under Maryland's long-arm statute, "[a] court may exercise personal jurisdiction over a person, who directly or by an agent":

(1)    Transacts any business or performs any character of work or service in the State;

(2)    Contracts to supply goods, food, services, or manufactured products in the State;

(3)    Causes tortious injury in the State by an act or omission in the State;

(4)    Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5)    Has an interest in, uses, or possesses real property in the State; or

(6)    Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b). Moreover, "[i]f jurisdiction over a person is based solely upon" the long-arm statute, "he may be sued only on a cause of action arising from any act enumerated" in the statute itself. *Id*. § 6-103(a).

Plaintiffs allege that subsections (1), (2), (3), (4), *or* (5) of § 6-103(b) authorize this Court's jurisdiction over Defendants. Am. Compl. ¶ 327. As explained below, however, none of these

---

[6]    Ms. McMahon joins and incorporates by reference the arguments raised in WWE and TKO's Motion to Dismiss, as well as the arguments raised in Vincent K. McMahon's Motion to Dismiss.

subsections authorizes this Court's exercise of personal jurisdiction over Ms. McMahon.

> **1.    Plaintiffs do not allege any business activity that would support the exercise of jurisdiction under subsections (b)(1) or (b)(2) of Maryland's long-arm statute.**

A Maryland court may exercise jurisdiction over an out-of-state defendant under § 6-103(b)(1) if the defendant either "directly or by an agent … [t]ransacts any business or performs any character of work or service in the State," and the claims in the lawsuit arise from those transactions. *Id*. § 6-103(a). "Maryland courts have construed the phrase 'transacting business' narrowly, requiring, for example, significant negotiations or intentional advertising and selling in the forum state." *Phillips*, 743 F.Supp.3d at 711 (quoting *Aphena Pharma Sols.-Maryland LLC v. BioZone Lab'ys, Inc.*, 912 F.Supp.2d 309, 315 (D. Md. 2012)). Similarly, a court may exercise jurisdiction under § 6-103(b)(2) if an out-of-state defendant "[c]ontracts to supply goods, food, services, or manufactured products in the State," and the plaintiff's claims arise from those contracts. *Id*. § 6-103(a). "[A] contract in and of itself does not automatically constitute sufficient minimum contacts"; the dispute at issue must "grow out of a contract" that has a "substantial connection" with the forum. *Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 478 (4th Cir. 1993). Allegations of contracts or business practices "only *tenuously connected* to the cause of action are not enough to confer specific jurisdiction." *Phillips*, 743 F.Supp.3d at 711 (emphasis added) (collecting cases).

Plaintiffs do not allege that Ms. McMahon had any *personal* business dealings or entered into contracts in Maryland, let alone identify any business she engaged in that would be sufficient to confer jurisdiction under sections (b)(1) or (b)(2). Nor can WWE's alleged business dealings or contracts in Maryland authorize this Court's jurisdiction over Ms. McMahon. *See Birrane v. Master Collectors, Inc.*, 738 F.Supp. 167, 169 (D. Md. 1990) ("merely because a corporation

transacts business in the state, contracts to supply goods or services in the state or has other substantial contacts with the state," it does not follow that "an individual who is [the corporation's] principal should be deemed to have engaged in those activities personally"). In an apparent attempt to bridge this gap, Plaintiffs refer to business activity allegedly undertaken by Ms. McMahon as a representative of WWE, namely: "participat[ion] in booking and calendaring WWE shows and other WWE public appearances, including in Maryland"; "participat[ion] in securing contracts or other agreements with venues, promoters, and/or distributors in Maryland for WWE events," Am. Compl. ¶ 334; and "involve[ment] in WWE's marketing and publications, including in Maryland," *id.* ¶ 147.[7] Plaintiffs do not, however, identify any particular WWE event in Maryland that Ms. McMahon allegedly "book[ed]" or "calendar[ed]"; describe any particular contract or agreement Ms. McMahon allegedly "secur[ed]" in Maryland; or detail any marketing or publications in Maryland with which Ms. McMahon was allegedly "involved."

Plaintiffs' vague allegations that Ms. McMahon had some role with respect to WWE's business activities in Maryland fail to establish that jurisdiction over her in Maryland is proper. Even assuming Ms. McMahon's "participation" or "involvement" was as Plaintiffs describe,[8] WWE's alleged contracts or business dealings in Maryland are, at best, only tenuously connected

---

[7]    Plaintiffs also allege that Ms. McMahon "participated in complying with Maryland state athletic rules or other regulations applicable to professional wrestling matches." Am. Compl. ¶ 334. Ms. McMahon is not aware of any authority to suggest, however, that complying with a state's laws constitutes transacting business in that state. If Plaintiff is referring to Ms. McMahon's statement in her declaration that she may have briefly held a "seconds" license in Maryland in 2004, *see* L. McMahon Decl. ¶ 12, this cannot establish jurisdiction under subsections (b)(1) or (b)(2). Plaintiffs' claims obviously do not arise from a Maryland license that Ms. McMahon obtained decades after they were allegedly abused. Md. Code Ann., Cts. & Jud. Proc. § 6-103(a).

[8]    Ms. McMahon's roles and responsibilities at WWE from 1980 to 2009 are set forth in her Declaration. Contrary to Plaintiffs' claims, Ms. McMahon had no responsibility for the marketing or promotion of specific WWE events, nor did she select event locations. L. McMahon Decl. ¶ 10.

to Plaintiffs' claims. Plaintiffs claim that they were abused by Phillips, Garvin, and/or Patterson, and that Defendants' alleged negligence allowed the abuse to occur. These claims plainly do not "aris[e] from" WWE's contracts or business activity in Maryland. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103(a). A recent decision from the Southern District of New York analyzing a similar provision of New York's long-arm statute provides a useful analogue. In *Edwardo v. Roman Catholic Bishop of Providence*, the plaintiff alleged that in 1983, a priest affiliated with the Roman Catholic Bishop of Providence traveled from Rhode Island to New York for a business meeting; arranged for the plaintiff to accompany him on the trip and to stay with him at a hotel; and sexually assaulted the plaintiff at the hotel. 579 F.Supp.3d 456, 463 (S.D.N.Y. 2022), *aff'd,* 66 F.4th 69 (2d Cir. 2023). The court concluded that these allegations did not authorize a New York court's exercise of personal jurisdiction over the Roman Catholic Bishop of Providence, reasoning that "it is abundantly clear that Plaintiff's claims do not 'arise out of'" the New York meeting." *Id.* at 475. As the court explained, "the event giving rise to [Plaintiff's] injury"—the sexual abuse in the hotel—"had, at best, a tangential relationship to any contacts [Defendants] had with New York," *i.e.*, the business meeting. *Id.* at 476 (alterations in original). "Put simply, the fact that New York was the situs of the sexual abuse is not sufficient to establish an articulable nexus between the business transacted and the cause of action sued upon." *Id.* (cleaned up).

The same analysis applies here. Taking as true for purposes of this Motion Plaintiffs' allegations that Ms. McMahon had a role in WWE's unspecified business transactions or contracts in Maryland, Plaintiffs do not and cannot allege that their claims arise out of these activities. Accordingly, neither subsections (b)(1) nor (b)(2) authorizes personal jurisdiction in Maryland over Ms. McMahon.

**2.     Plaintiffs do not allege any tortious act or omission that would support the exercise of jurisdiction under subsections (b)(3) or (b)(4) of Maryland's long-arm statute.**

Plaintiffs also claim that this Court has jurisdiction over Defendants pursuant to subsections (b)(3) or (b)(4) of Maryland's long-arm statute. *See* Am. Compl. ¶ 327; Md. Code Ann., Cts. & Jud. Proc. §§ 6-103(b)(3)–(4). Neither applies to Ms. McMahon.

"Maryland courts have consistently held that in order to satisfy § 6-103(b)(3), both the injury itself *and the act giving rise to the injury* must have occurred and originated within Maryland." *Pandit v. Pandit*, 808 F. App'x 179, 186 (4th Cir. 2020) (unpublished) (citing *Zinz v. Evans & Mitchell Indus.*, 324 A.2d 140, 144 (1974)) (emphasis added). While Plaintiffs claim that at least some portion of their injuries occurred in Maryland, they plead no acts or omissions by Ms. McMahon *in Maryland* that caused those injuries. Plaintiffs allege, in conclusory fashion, that "Ms. McMahon engaged in conduct in Maryland which forms the basis of this complaint." Am. Compl. ¶ 318. But Plaintiffs do not explain in their complaint how any conduct by Ms. McMahon in Maryland was related to their claims of abuse. The Amended Complaint describes just one instance in which Ms. McMahon was even present in Maryland: John Doe 6's allegation that on July 14, 1989, at a WWE event in Baltimore, Ms. McMahon "looked right at John Doe 6" when she entered a dressing room where John Doe 6 was present with Messrs. McMahon, Phillips, Garvin, and Patterson. *Id*. ¶ 264. John Doe 6 does not claim that he was being abused when Ms. McMahon allegedly saw him, or that he asked for her help; indeed, he does not allege that anything inappropriate happened in the dressing room. *Id*. Even if Ms. McMahon saw John Doe 6 in a dressing room, Plaintiffs have not plausibly alleged how this constituted an "an act or omission" that injured John Doe 6, let alone the other seven Plaintiffs. As a result, subsection (b)(3) does not authorize jurisdiction over Ms. McMahon.

Plaintiffs fare no better under subsection (b)(4) of the long-arm statute, which authorizes jurisdiction over an out-of-state defendant who causes tortious injury in Maryland by an act or omission outside Maryland but only "if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(4). "Subsection (b)(4) has been construed as a general jurisdiction statute." *Orbita Telecom SAC v. Juvare LLC*, 606 F.Supp.3d 240, 250 (D. Md. 2022) (citing cases). Accordingly, even though subsection (a) of Maryland's long-arm statute requires a connection between the out-of-state defendant's contacts with the state and the plaintiff's claims, "where personal jurisdiction is alleged under subsection (b)(4), the requirement of subsection (a) has been eliminated." *Legends Title, LLC v. Capital One, Nat'l Ass'n*, 659 F.Supp.3d 637, 644 (D. Md. 2023) (quoting *Sibert v. Flint*, 564 F.Supp. 1524, 1528 (D. Md. 1983)). Nevertheless, "[t]he bar is high" for plaintiffs seeking to establish jurisdiction under subsection (b)(4). *Phillips*, 743 F.Supp.3d at 713. For the Court to exercise jurisdiction, "the defendant's contacts to the forum must be extensive, continuous, and systematic[,]" such that she is "essentially [] at home" in Maryland. *Id.* (citations omitted).

Plaintiffs allege no individual contacts Ms. McMahon has had with Maryland, let alone "extensive, continuous, and systematic" contacts. Ms. McMahon never was domiciled in Maryland, has not resided in Maryland since 1972, and never owned any property in Maryland. *See* L. McMahon Decl. ¶¶ 3–4. She does not derive any income from Maryland, does not maintain any bank accounts in Maryland, has never maintained an office in Maryland, and has never personally entered into a contract to provide goods or services to a person or entity in Maryland. *See* L. McMahon Decl. ¶ 3.

As discussed above, Plaintiffs allege only that Ms. McMahon—in her capacity as an employee or executive of WWE—participated in unspecified business and contractual activity of that corporation in Maryland. Those alleged activities do not themselves authorize jurisdiction over Ms. McMahon, as Plaintiffs' claims do not arise from them. *See* Section IV.B.1, *supra*. Nor did those alleged activities render Ms. McMahon "essentially [] at home" in Maryland such that she would be subject to general jurisdiction under subsection (b)(4). *Phillips*, 743 F.Supp.3d at 713. Even assuming that Plaintiffs can overcome the fiduciary shield doctrine, which "serves as a limitation on the reach of a long-arm statute with respect to obtaining jurisdiction over an individual who acted solely as a representative of a corporation, rather than on his or her own behalf," *Christian Book Distributors, Inc. v. Great Christian Books, Inc.*, 768 A.2d 719, 725 (2001), Plaintiffs have not (and cannot) plead facts that would support a finding that Ms. McMahon is subject to general jurisdiction in Maryland. *See also Dominion Mech. Contractors, Inc. v. E.C. Ernst, Inc.,* No. 236, Sept. Term, 2021, 2022 WL 873313, at *11 (Md. Ct. Spec. App. Mar. 24, 2022) (unreported). As Plaintiffs themselves acknowledge, any of Ms. McMahon's business or contractual activity would have occurred "throughout the country," not exclusively or specifically in Maryland. *See, e.g.*, Am. Compl. ¶ 335. If Ms. McMahon were subject to general personal jurisdiction in Maryland, there would be no principled reason she would not be subject to general personal jurisdiction in any other state where WWE held wrestling events. This would be "precisely the expansive result against which [the United States Supreme Court's decisions in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)] cautioned." *Legends Title, LLC*, 659 F.Supp.3d at 649–50 (defendant bank's operation of branches in Maryland, as well as in at least seven other states, was insufficient to confer jurisdiction under § 6-103(b)(4)).

3.    **Plaintiffs do not allege any connection to real property that would support the exercise of jurisdiction under subsection (b)(5) of Maryland's long-arm statute.**

Plaintiffs claim that Defendants, including Ms. McMahon, are subject to personal jurisdiction in Maryland under Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(5). Am. Compl. ¶ 327. Subsection (b)(5) permits the exercise of personal jurisdiction over a person who "[h]as an interest in, uses, or possesses real property in the State," and where the plaintiff's claims arise out of that interest, use, or possession. *Id.* § 6-103(b)(5), (a); *see also McLaughlin v. Copeland*, 435 F.Supp. 513, 529 (D. Md. 1977) ("Jurisdiction under subsection (b)(5) is limited to causes of action having some connection with the alleged property interest.").

Plaintiffs fail to plead that Ms. McMahon used, possessed, or had an interest in real property in Maryland that is somehow related to their claims. Nor could they. Ms. McMahon has never owned property in Maryland. L. McMahon Decl. ¶ 3. She briefly resided in a rented apartment in Gaithersburg, Maryland, from 1970 until 1972, *id.* ¶ 4, but Plaintiffs do not allege that their claims arise from her tenancy in Gaithersburg years before the alleged acts of abuse.[9] There simply is no plausible basis for this Court to exercise jurisdiction over Ms. McMahon under subsection (b)(5) of Maryland's long-arm statute.

C.    **The exercise of personal jurisdiction over Ms. McMahon would not comport with due process.**

Because no prong of Maryland's long-arm statute authorizes the exercise of jurisdiction over Ms. McMahon, this Court "need not reach whether exercising jurisdiction comports with due process." *See Pandit v. Pandit*, Civil No. 8:18-cv-01336-PX, 2018 WL 5026373, at *3 (D. Md. Oct. 17, 2018); *accord Phillips*, 743 F.Supp.3d at 714. Nevertheless, as explained below, the

---

[9]    Indeed, in the Amended Complaint, Plaintiffs withdrew their allegation that Ms. McMahon was "a resident of Maryland during part of the time period described herein." Am. Compl. ¶ 318 (quoted words stricken from the paragraph).

exercise of personal jurisdiction over Ms. McMahon in this case would be inconsistent with due process.

Courts in the Fourth Circuit apply "a three-part test to determine whether the exercise of specific personal jurisdiction over a nonresident defendant comports with the requirements of due process." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014). Courts consider: "(1) the extent to which the defendant purposefully availed [herself] of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Id.* (alteration in original). No prong is satisfied with respect to the claims against Ms. McMahon.

### 1. Ms. McMahon has not purposefully availed herself of the privilege of conducting activities in Maryland, and Plaintiffs fail to plead facts alleging otherwise.

The first prong of the three-part test "articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). In determining whether a defendant has engaged in purposeful availment, courts consider:

- whether the defendant maintains offices or agents in the forum state;

- whether the defendant owns property in the forum state;

- whether the defendant reached into the forum state to solicit or initiate business;

- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;

- whether the parties contractually agreed that the law of the forum state would govern disputes;

- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;

- the nature, quality and extent of the parties' communications about the business being transacted; and

17

• whether the performance of contractual duties was to occur within the forum.

*Lewis v. Willough at Naples*, 311 F.Supp.3d 731, 735–36 (D. Md. 2018) (citing *Consulting Eng'rs Corp.*, 561 F.3d at 278).

Plaintiffs utterly fail to demonstrate that Ms. McMahon, in her personal capacity, purposefully availed herself of the privilege of conducting any activities or business in Maryland. Not a single allegation in the Amended Complaint satisfies any of the purposeful availment considerations enumerated above. Further, as set forth in her Declaration, Ms. McMahon has not engaged in any Maryland-based or Maryland-directed activities that could support a finding of purposeful availment. *See* L. McMahon Decl. ¶¶ 3, 9–11.

Plaintiffs' claim that WWE advertised and held wrestling shows in Maryland, and that Ms. McMahon "participated" or was "involved" in an unspecified way, *see* Am. Compl. ¶¶ 329–36, is insufficient to show purposeful availment by Ms. McMahon or WWE. As explained in Section IV.B.1, *supra*, the Amended Complaint describes Ms. McMahon's involvement in WWE's business and contractual activity at a high level of generality. Plaintiffs' threadbare allegations are made even weaker by the actual examples provided in the Amended Complaint of Ms. McMahon's supposed role. To show that "the McMahons issued and/or approved" advertisements for shows in Maryland, Plaintiffs simply reproduce images of advertisements for WWE events in Maryland, unsupported by any allegation or evidence that Ms. McMahan had anything to do with these advertisements or how such advertisements relate to any alleged negligent conduct on the part of Defendants in Maryland. *See* Am. Compl. ¶ 330. To show that Ms. McMahon "made decisions regarding the location, scheduling, and booking of WWE shows and public appearances" in Maryland, Plaintiffs rely on an excerpt from an "interoffice memo" sent *to Ms. McMahon and thirty other recipients*, which merely informed them that two taped events were confirmed to occur in Maryland in October 1988. *Id*. ¶ 335.

18

"Personal jurisdiction over an individual officer, director, or employee of a corporation does not automatically follow from personal jurisdiction over the corporation." *Harte-Hanks*, 299 F.Supp.2d at 513. Plaintiffs cannot plead around this principle with vague allegations of Ms. McMahon's involvement in WWE's alleged contacts with Maryland. *See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F.Supp.2d 691, 700 (D. Md.), *aff'd*, 722 F.3d 591 (4th Cir. 2013) (rejecting plaintiff's argument that a company's CEO and "public face" must have been "personally involved" in the company's conduct in Maryland and thereby subject to personal jurisdiction based on a determination that such "arguments are speculative at best and find no specific factual support in the record."). Plaintiffs do not and cannot show that Ms. McMahon purposefully availed herself of the privilege of conducting activities or business in Maryland.

## 2. Plaintiffs' claims do not arise from any activity of Ms. McMahon in Maryland.

Plaintiffs' failure to establish prong one (purposeful availment) of the Fourth Circuit's three-part test precludes this Court's exercise of jurisdiction over Ms. McMahon, and the Court need not further analyze the due process requirements. *See Consulting Eng'rs Corp.*, 561 F.3d at 278 ("If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three."). But analysis of prong two—whether the plaintiff's claims arose from the defendant's activities in the forum state, *see Universal Leather*, 773 F.3d at 559—also militates against a finding of personal jurisdiction.

"When a controversy is related to or arises out of a defendant's contacts with the forum, … a relationship among the defendant, the forum, and the litigation is the essential foundation of in personam jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (citations and internal quotation marks omitted). Here, Plaintiffs fail to establish this "essential foundation." Plaintiffs' claims arise from alleged acts of sexual abuse committed by

deceased nonparties—Phillips, Patterson, and Garvin—some unspecified number of which are alleged to have occurred in Maryland. *See, e.g.*, Am. Compl. ¶¶ 184-85, 201, 215, 222, 244, 265, 287, 296. That Plaintiffs allegedly suffered harm in Maryland, however, is not enough. "Although the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997).

As discussed above, Ms. McMahon's only alleged conduct in Maryland consists of "looking right at John Doe 6" during a WWE event in Baltimore, at a time when nothing untoward was alleged to have occurred. *See* Section IV.B.2, *supra*. And her only alleged business contacts with Maryland pertain to her unspecified "participation" and "involvement" with WWE's alleged marketing activities for Maryland events of which Plaintiffs' claims do not arise. Plaintiffs' failure to connect their claims of tortious injury to any activity of Ms. McMahon's in Maryland provides another reason why this Court's exercise of jurisdiction over Ms. McMahon would not comport with due process.

### 3.    The exercise of personal jurisdiction over Ms. McMahon would not be constitutionally reasonable.

Plaintiffs' failure to establish either of the preceding prongs of the three-part due process test dooms their assertion that Ms. McMahon is subject to personal jurisdiction in Maryland. *See Consulting Eng'rs Corp.*, 561 F.3d at 279 ("If the plaintiff satisfies prongs one and two, prong three comes into play."). However, even if Ms. McMahon had "purposefully established minimum contacts within the forum State," *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985), this Court's exercise of jurisdiction over her would nevertheless fail at prong three because the exercise of personal jurisdiction over Ms. McMahon would not be constitutionally reasonable. *See Universal Leather,* 773 F.3d at 559.

As the Fourth Circuit has explained:

> The third prong … permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there. Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Consulting Eng'rs Corp.*, 561 F.3d at 279. "The primary concern in assessing personal jurisdiction is the burden on the defendant." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 256 (2017) (citation and internal quotation marks omitted). "Assessing this burden obviously requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Id.*

Forcing Ms. McMahon to defend against Plaintiffs' claims in Maryland would undoubtedly burden her. She does not live or work in Maryland, has no relevant contacts with the state, and could not "reasonably anticipate being haled into court" here. *See Rudzewicz*, 471 U.S. at 474. Furthermore, Plaintiffs cannot claim that litigating in Maryland is convenient for them such that it could outweigh the burden on Ms. McMahon, as none of the Plaintiffs reside in Maryland.

Plaintiffs assert that "Maryland has a substantial interest in resolving the issues of child sexual abuse that occurred within its borders regardless of the citizenry or residence of the abused child or the alleged abusers." Am. Compl. ¶ 337. But even a state's legitimate interest in a category of lawsuits cannot override the due process restrictions on a court's exercise of personal jurisdiction, which are both "a guarantee of immunity from inconvenient or distant litigation" and "a consequence of territorial limitations on the power of the respective States." *See Bristol-Myers Squibb Co.*, 582 U.S. at 263.

21

Simply put, this Court's exercise of jurisdiction over Ms. McMahon would not be constitutionally reasonable. "When the facts present even a close question, it would not be in the interests of the parties to litigate this case in Maryland[.]" *Dring v. Sullivan*, 423 F.Supp.2d 540, 549 (D. Md. 2006) (cleaned up). Here, it is not a close question. This Court should dismiss Plaintiffs' claims against Ms. McMahon for lack of personal jurisdiction.

**V.    Plaintiffs' claims against Linda E. McMahon are not legally cognizable and should be dismissed under Federal Rule of Civil Procedure 12(b)(6).**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal for failure to state a valid claim for relief when the complaint fails to allege facts showing that the claim is "plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation and internal quotation marks omitted). To assess state-law claims, this Court applies Maryland law as determined by the Maryland Supreme Court. *See Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254, 260 (4th Cir. 1998).

Plaintiffs assert two claims against Ms. McMahon: Negligence (Count I), Am. Compl. ¶¶ 338-76; and Negligent Hiring, Training, and Retention (Count II), *id.* ¶¶ 377-93. "To sufficiently plead a cause of action for negligence in Maryland, a plaintiff must allege with certainty and definiteness, facts and circumstances sufficient to set forth (a) a *duty* owed by the defendant to the plaintiff, (b) a *breach* of that duty and (c) injury *proximately* resulting from that breach." *Pace v. State*, 38 A.3d 418, 423 (Md. 2012) (emphasis in original) (citation and internal quotation marks omitted). A plaintiff alleging negligent hiring, training, and retention must satisfy these same basic

22

elements, *see Asphalt & Concrete Servs., Inc. v. Perry*, 108 A.3d 558, 571 (Md. Ct. Spec. App. 2015), *aff'd,* 133 A.3d 1143 (Md. 2016), and further establish the following:

> (1) the existence of an employment relationship;
> (2) the employee's incompetence;
> (3) the employer's actual or constructive knowledge of such incompetence;
> (4) the employee's act or omission causing the plaintiff's injuries; and
> (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries.

*Id*. (citation omitted).

### A.    Plaintiffs fail to adequately plead any duty of care owed to them by Ms. McMahon.

Counts I and II suffer from the same fatal flaw: Plaintiffs' failure to plead a legally cognizable duty owed to them by Ms. McMahon. As a general rule, "there is no duty to control a third person's conduct so as to prevent personal harm to another, unless a 'special relationship' exists either between the actor and the third person or between the actor and the person injured." *Ashburn v. Anne Arundel Cnty.*, 510 A.2d 1078, 1083 (Md. 1986). Plaintiffs have not alleged a coherent theory of duty nor have they pled sufficient facts to show any "special relationship."

The existence of a legal duty "is a matter of law to be determined by the court and, therefore, is an appropriate issue to be disposed of on motion for dismissal." *Bobo v. State*, 697 A.2d 1371, 1376 (Md. 1997). Because Plaintiffs fail to adequately plead any duty owed to them by Ms. McMahon, neither Count I nor Count II is plausible and both should be dismissed.

### 1.    Plaintiffs fail to plead any employment-related duty.

Plaintiffs charge Ms. McMahon with "a duty to provide the Ring Boys with a safe place to work[.]" Am. Compl. ¶ 351. But Ms. McMahon did not employ any Ring Boys, *see* L. McMahon Decl. ¶ 18, and Plaintiffs fail to allege otherwise.

To determine the existence of an employer/employee relationship, Maryland courts

consider: "(1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control an employee's conduct, and (5) whether the work is part of the regular business of the employer[.]" *Perry*, 408 A.3d at 580 . Plaintiffs fail to adequately allege they had an employment relationship with WWE, let alone with Ms. McMahon. Six Plaintiffs allege that they performed work for Phillips as "Ring Boys" and were paid in cash. Am. Compl. ¶ 186 (John Doe 1); *id*. ¶ 201 (John Doe 2); *id*. ¶ 215 (John Doe 3); *id*. ¶ 259 (John Doe 6); *id*. ¶ 289 (John Doe 7); *id*. ¶ 295 (John Doe 8). John Does 4 and 5 allege they worked for Phillips and performed "Ring Boy" duties, *id*. ¶ 223, 235 (John Doe 4); *id*. ¶ 242 (John Doe 5), but were *not* paid in cash; rather, they were "given WWE merchandise, food, lodging, and access to the WWE shows for [their] services," *id*. ¶ 235, 248. The Amended Complaint's use of the passive voice ("was given"; "was paid") largely obfuscates who, exactly, paid or compensated Plaintiffs. Elsewhere in the Amended Complaint, Plaintiffs clearly allege receiving cash or gifts directly from Phillips, Patterson, or Garvin. *See, e.g., id*. ¶ 276 ("Phillips paid John Doe 7…"); *id*. ¶ 295 ("John Doe 8 … was paid cash for his services by Phillips and Patterson."). Nowhere in the Amended Complaint do Plaintiffs specifically allege they received compensation directly from WWE. And they certainly do not allege—nor could they—that *Ms. McMahon* ever paid or otherwise compensated them. *See* L. McMahon Decl. ¶ 18.

Plaintiffs' allegations do not come close to establishing an employment relationship with Ms. McMahon. Plaintiffs do not allege that Ms. McMahon hired them, controlled or directed their behavior, or paid them anything for their work. Accordingly, Plaintiffs cannot premise their negligence claim on any duty owed to them by Ms. McMahon as their employer.

### 2.    Plaintiffs fail to plead any duty arising from alleged foreseeability.

Plaintiffs insufficiently plead any duty owed to them by Ms. McMahon arising from the

alleged foreseeability of abusive conducted committed by Phillips, Garvin, or Patterson. To show that an employee's misconduct was reasonably foreseeable to an employer,[10] a plaintiff must allege facts and circumstances sufficient to plead that the employer was aware of specific prior acts or allegations against the employee in question. *See Mitchell v. Rite Aid of Maryland, Inc.*, 290 A.3d 1125, 1131 (Md. App. 2023), *cert. denied*, 269 A.3d 419 (Table) (Md. 2023); *see also Doe v. Alsaud*, 12 F.Supp.3d 674, 680–81 (S.D.N.Y. 2014) (collecting cases).

Plaintiffs offer nothing more than conclusory, nonspecific allegations that the conduct of the three alleged abusers was foreseeable to Ms. McMahon. *See, e.g.,* Am. Compl. ¶¶ 11, 37, 61 ("[T]he McMahons 'clearly knew what was going on …'"); *id.* ¶ 343 ("The McMahons controlled and knew everything within WWE…"). Plaintiffs allege Ms. McMahon "knew, at least as early as the 1980s, that Phillips had … a 'peculiar and unnatural interest' in young boys." *Id.* ¶ 13. Plaintiffs appear to be referring to the alleged 1988 firing and rehiring of Phillips with the instruction to "steer clear from kids." *Id.* ¶¶ 14, 44, 383. This allegation has a dubious provenance—it is based on a tabloid article published four years after the fact, *see* Am. Compl. ¶ 45 n.16[11]—but even taking it as true, it is simply too vague, and open to too many interpretations, to charge Ms.

---

[10]    To be clear, Ms. McMahon does not concede that she ever employed Phillips, Garvin, or Patterson. But if Plaintiffs are unable to establish a duty owed to them by WWE arising from the alleged foreseeability of Phillips's misconduct while employed by WWE, they certainly cannot establish such a duty owed to them by Ms. McMahon.

[11]    The footnoted article, a 1992 *New York Post* piece, relates the story of Phillips's alleged firing and rehiring. Am. Compl. ¶ 45 n.16. Notably, Ms. McMahon is not mentioned in the article at all. The article does not describe Phillips's firing and rehiring as Ms. McMahon's decision, nor are the phrases "peculiar and unnatural" and "steer clear from kids" attributed to her. *Id.* To the extent Plaintiffs allege that Ms. McMahon was involved in Phillips's firing and rehiring based solely on this footnoted article, the contents of the article negate the allegation. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) ("[I]f a plaintiff 'attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim.'").

McMahon with knowledge that Phillips was an abuser of children from that point onward. Further, the Amended Complaint contains no specific allegations that, prior to 1992, Ms. McMahon knew or should have known of dangers posed by Patterson or Garvin. *See* Am. Compl. ¶¶ 94–98.

Plaintiffs' conclusory, nonspecific allegations of foreseeability are not sufficient to establish a duty owed to them by Ms. McMahon.

### 3. Plaintiffs fail to plead any other "special relationship" triggering a duty of care.

Maryland recognizes a special duty to exercise reasonable care to protect minors in limited situations where the presence of minors is required by law, such as in primary and secondary schools, where the schools are deemed to act *in loco parentis*. *See Doe v. Comm. Coll. of Baltimore Cnty.*, 595 F.Supp.3d 392, 420–21 (D. Md. 2022) (rejecting special duty in collegiate setting); *see Molock v. Dorchester Cnty. Family YMCA, Inc.*, 779 A.2d 963, 968 (Md. Ct. Spec. App. 2001) (rejecting special duty at YMCA social event).

The Amended Complaint adds the conclusory allegation that "WWE and the McMahons were in *loco parentis* with Plaintiffs and other Ring Boys," asserting that "they, *including through their agents*, voluntarily took custody of the underaged boys[.]" Am. Compl. ¶ 349 (emphasis added). Plaintiffs plead no facts to suggest that Ms. McMahon ever personally assumed custodial responsibility for Plaintiffs. *See Laser v. Wilson*, 473 A.2d 523, 529 (Md. Ct. Spec. App. 1984) ("The parental duty of supervision … may not be imposed upon, or assumed by, another without mutual consent."). The crux of Plaintiffs' *in loco parentis* argument is seemingly based on nothing more than allegations that Phillips's, Garvin's, and Patterson's conduct fell within the scope of their employment such that their actions can be attributed to WWE and, by extension, Ms. McMahon. But any such theory is belied by the more detailed allegations in the Amended Complaint that Phillips, Patterson, and Garvin lured Plaintiffs into working as Ring Boys for the

purpose of sexually abusing them. *See, e.g.*, Am. Compl. ¶¶ 2–3, 26, 49, 85. There is no plausible allegation that these activities "were in furtherance of the [WWE's] business and were authorized by [WWE]." *See Sawyer v. Humphries*, 587 A.2d 467, 470 (Md. 1991) (setting forth Maryland's general test for assessing whether an employee's tortious actions fall within the scope of his employment); *see also Rachel-Smith v. FTData, Inc.*, 202 F.Supp.2d 400, 405–06 (D. Md. 2002) (when a plaintiff does not allege that a perpetrator of abuse was acting in furtherance of the business interests of his employer "in allegedly assaulting [plaintiff]," the plaintiff has not "allege[d] that [the perpetrator] acted in the scope of his employment").

Even if Plaintiffs adequately alleged facts to support a claim that WWE stood *in loco parentis* with them, that duty cannot be imputed to Ms. McMahon. Plaintiffs allege that Ms. McMahon was generally aware that minors attended WWE events and sometimes assisted with ring setup*, see, e.g.*, Am. Compl. ¶ 361, and two Plaintiffs claim that they once saw Ms. McMahon at an event, *id*. ¶¶ 227, 264. But Plaintiffs do not (and cannot) allege that while at WWE events, Ms. McMahon exercised any control over them. "Unlike the situation with children who must attend school," any minors who attended WWE events could "leave the event at any time without sanction" from Ms. McMahon, and without Ms. McMahon "having any right to stop them." *See Molock*, 779 A.2d at 968.

Moreover, even if Plaintiffs could establish that Ms. McMahon owed them some special duty of protection (and they cannot), that duty would not extend to the conduct of third parties outside Ms. McMahon's custody or control. The Plaintiffs' allegations in this case, to the extent they involve alleged sex abuse in Maryland, are primarily that Phillips, Patterson, and/or Garvin abused or harassed them after hours and in locations outside the control of WWE. *See Fletcher v. Maryland Transit Admin.*, 741 F. App'x 146, 151 (4th Cir. 2018) (unpublished) (school district

27

had no duty to protect students during off-premises activities, and collecting cases); *see also Alsaud*, 12 F.Supp.3d at 681 (dismissing negligent supervision and retention claims against the employer of plaintiff's assailant where the underlying sexual misconduct was alleged to have occurred outside of defendant's premises at a hotel, and collecting cases). Much of the abuse Plaintiffs claim to have suffered occurred at hotels, in cars, and during trips that Plaintiffs do not allege bore any direct connection to WWE activities. *See, e.g.*, Am. Compl. ¶¶ 176, 183, 208, 213, 221, 245, 261, 285, 296. Any duty of care owed to Plaintiffs by virtue of their presence at WWE events would not extend to acts occurring after those events had taken place, and at locations removed from the sites of the WWE shows. More importantly, Plaintiffs make no allegation that any of the alleged acts occurred at times and places when Ms. McMahon was in a position to control Phillips, Garvin, or Patterson, or had assumed responsibility for Plaintiffs' care.

Finally, Plaintiffs cannot show that Ms. McMahon owed them a statutory duty of care arising from Maryland's mandatory child abuse reporting law. *See* Am. Compl. ¶¶ 345, 355. That law applies to "person[s] *in this State* … who ha[ve] reason to believe that a child has been subjected to abuse or neglect[.]" *See* Md. Code Ann., Fam. Law § 5-705(a)(1) (emphasis added). By its terms, the law does not apply to the actions of persons outside of Maryland, like Ms. McMahon. Further, Plaintiffs do not allege that Ms. McMahon knew anything about their specific interactions with Phillips, Patterson, or Garvin that would have triggered a duty to report.[12]

---

[12]    John Doe 7's claims against Ms. McMahon must be dismissed for the additional reason that his alleged injuries (sexual abuse by Mel Phillips when he was a minor) occurred entirely during the 1970's. Am. Compl. ¶¶ 280–91. As Plaintiffs acknowledge, Ms. McMahon co-founded WWE *in 1980*. *Id.* ¶ 318. As set forth in her Declaration, Ms. McMahon did not work for WWE's predecessor entity, Capitol Wrestling Corporation Ltd. L. McMahon Decl. ¶ 5; Am. Compl. ¶ 321. The Amended Complaint makes no allegations supporting a claim that Ms. McMahon can be held responsible for alleged sexual abuse predating the founding of WWE.

**B.      Plaintiffs' sexual harassment claims are time barred.**

Because Plaintiffs fail to plead any legally cognizable duty owed to them by Ms. McMahon, Counts I and II should be dismissed in full. In addition, this Court should dismiss any portions of Plaintiffs' claims premised on alleged sexual harassment (as distinct from sexual abuse), as the statute of limitations applicable to such claims has lapsed.

The CVA removed the statute of limitations applicable to any "action for damages arising out of a claim or claims of *sexual abuse* that occurred while the victim was a minor[.]" Md. Code Ann., Cts. & Jud. Proc. § 5-117(b) (emphasis added). "Sexual abuse" is specifically defined. *Id*. § 5-117(a). Any alleged misconduct falling outside this definition of "sexual abuse" thus remains subject to Maryland's general three-year statute of limitations. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101.

The Amended Complaint uses the word "harassment" dozens of times and adds details such as John Doe 3's allegation that Garvin touched his shoulders and made a "harassing comment [that] made John Doe 3 feel uncomfortable." Am. Compl. ¶ 211. But sexual harassment—which does not constitute a sex offense or other criminal sexual conduct in Maryland—does not fall within the definition of sexual abuse set forth in the CVA. Md. Code Ann., Cts. & Jud. Proc. § 5-117(a). Claims premised on such alleged conduct are time barred. To the extent Plaintiffs seek to recover for Defendants' failure to prevent sexual harassment, those allegations should be dismissed.

**C.      The Amended Complaint fails to state a valid claim for punitive damages.**

A plaintiff seeking punitive damages must "allege, in detail, facts that, if proven true, would support the conclusion that the act complained of was done with 'actual malice.' Nothing less will suffice." *Scott v. Jenkins*, 690 A.2d 1000, 1008 (Md. 1997), *superseded on other grounds*

*by Hoile v. State*, 948 A.2d 30, 42 (Md. 2008). In Maryland, actual malice sufficient to support a claim for punitive damages means "heinous" conduct, "characterized by evil motive, intent to injure, ill will, or fraud[.]" *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 652-53 (Md. 1992). Since the decision in *Zenobia*, the Maryland Supreme Court has repeatedly made clear that punitive damages are not available for "negligence alone, no matter how gross, wanton, or outrageous[.]" *Id*. at 654.

This is a negligence case. Am. Compl. ¶¶ 338–93. Accordingly, Maryland law precludes an award of punitive damages. Plaintiffs' recitation of the actual malice standard, Am. Compl. ¶ 167, does not change the analysis. Plaintiffs' core allegation is that Defendants knew or should have known that Phillips, Garvin, and Patterson posed a danger to the Ring Boys, and that Defendants acted negligently in failing to prevent their alleged sexual abuse. "[E]ven prior to *Zenobia,* when it was much easier for a plaintiff to prove punitive damages, proof that a dangerous condition existed coupled with a failure to … warn of dangers was generally *not* sufficient to prove punitive damages[.]" *Bell v. Heitkamp, Inc.*, 728 A.2d 743, 752 (Md. Ct. Spec. App. 1999) (emphasis in original). Under current Maryland law, punitive damages are plainly not available in a negligence case such as this one.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant Linda E. McMahon's Motion to Dismiss and dismiss this case with prejudice. Plaintiffs have sought to take advantage of the elimination of the statute of limitations in Maryland for acts of child sex abuse. But the Plaintiffs' opportunistic claims fail because Ms. McMahon is not subject to the exercise of personal jurisdiction over her in Maryland, and the Complaint fails to adequately allege that she owed a tort duty to the Plaintiffs.

Dated:  June 11, 2025                        Respectfully submitted,

                                         */s/ William J. Murphy*

William J. Murphy (Bar No. 00497)
Samantha Miller Kavanagh (Bar No. 21374)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Tel: (410) 332-0444
Fax: (410) 659-0436
wmurphy@zuckerman.com
skavanagh@zuckerman.com

Laura A. Brevetti *(*admitted *Pro Hac Vice*)
LAW OFFICES LAURA A. BREVETTI
575 Lexington Avenue, 14th Floor
New York, NY 10022
Tel: (917) 970-0250
laura.brevetti@brevettilaw.com

*Attorneys for Linda E. McMahon*