## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN DOE 1, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 1:24-cv-3487-JKB |
| v. | ) | |
| | ) | |
| WORLD WRESTLING ENTERTAINMENT, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

### DEFENDANT VINCENT K. McMAHON'S MEMORANDUM OF LAW
### IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS'
### <u>FIRST AMENDED COMPLAINT</u>

**KRAMON & GRAHAM, P.A.**

John A. Bourgeois (Bar No. 11834)
Christopher C. Jeffries (Bar No. 28527)
750 East Pratt St., Suite 1100
Baltimore, MD 21202
Telephone: (410) 347-7408
Facsimile: (410) 361-8204
jbourgeois@kg-law.com
cjeffries@kg-law.com

**AKIN GUMP STRAUSS HAUER & FELD LLP**

Jessica T. Rosenberg
  (admitted *pro hac vice*)
Ilana Roberts
  (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
jrosenberg@akingump.com
iroberts@akingump.com

*Attorneys for Defendant*
*Vincent K. McMahon*

**HEARING REQUESTED**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 3

PROCEDURAL HISTORY ...................................................................................................... 5

LEGAL STANDARD ............................................................................................................. 5

ARGUMENT ......................................................................................................................... 6

I.      The Court Should Dismiss the First Amended Complaint Against McMahon
        Under Rule 12(b)(2) for Lack of Personal Jurisdiction ........................................ 6

        A.      Maryland's Long-Arm Statute Does Not Authorize Personal
                Jurisdiction Over McMahon ....................................................................... 7

        B.      Exercising Specific Jurisdiction Over McMahon Does Not Comport
                with Due Process......................................................................................... 10

II.     The Court Should Dismiss the First Amended Complaint Under Rule 12(b)(6)
        for Failure to State a Claim .................................................................................... 12

        A.      Plaintiffs Fail to State a Claim for Negligence Against McMahon ..................... 13

                1.      McMahon did not owe Plaintiffs any of the alleged
                        employment-based duties................................................................. 13

                2.      McMahon did not owe any duties to business invitees,
                        including Plaintiffs ............................................................................ 18

                3.      McMahon was not otherwise in a "special relationship" giving
                        rise to any duty owed to Plaintiffs ................................................... 19

                4.      Plaintiffs fail to plead that their alleged harms were reasonably
                        foreseeable ....................................................................................... 21

                5.      McMahon did not owe Plaintiffs a statutory duty ........................... 25

        B.      Plaintiffs Fail to State a Claim for Negligent Hiring, Supervision,
                Training, and Retention Against McMahon.......................................................... 27

CONCLUSION....................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Antonio v. Sec. Servs. of Am., LLC*,
    701 F. Supp. 2d 749 (D. Md. 2010) ...................................................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................................6, 21

*Athas v. Hill*,
    476 A.2d 710 (Md. 1984) ...............................................................................14, 15, 16, 27

*Barclay v. Briscoe*,
    47 A.3d 560 (Md. 2012) ...............................................................................................13, 19

*Bauman v. Woodfield*,
    223 A.2d 364 (Md. 1966) .................................................................................................22

*Beasley v. Bernard*,
    No. 23-cv-3133 (DKC), 2024 WL 326952 (D. Md. Jan. 29, 2024) .........................14, 16, 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................................6

*Bowman v. Top Gun of Va., Inc.*,
    No. 21-cv-2207 (TJS), 2021 WL 5827776 (D. Md. Dec. 8, 2021).............................17, 18, 27

*Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*,
    923 F. Supp. 720 (D. Md. 1996) .......................................................................................28

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)......................................................................................................10, 12

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
    334 F.3d 390 (4th Cir. 2003) .......................................................................................5, 6, 7

*Cent. Va. Aviation, Inc. v. N. Am. Flight Serv. Inc.*,
    23 F. Supp. 3d 625 (E.D. Va. 2014) .................................................................................11

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
    561 F.3d 273 (4th Cir. 2009) ...........................................................................................10

*Doe v. Alsaud*,
    12 F. Supp. 3d 674 (S.D.N.Y. 2014)..................................................................................22

ii

*Doe v. Cmty. Coll. of Baltimore Cnty.*,
    595 F. Supp. 3d 392 (D. Md. 2022) ....................................................................................20

*E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*,
    213 F.3d 175 (4th Cir. 2000) ..............................................................................................6

*Est. of Green v. City of Annapolis*,
    696 F. Supp. 3d 130 (D. Md. 2023) ......................................................................13, 21, 22

*Fletcher v. Md. Transit Admin.*,
    741 F. App'x 146 (4th Cir. 2018) ......................................................................................13

*Gibbs v. Cty. of Del.*,
    No. 15-cv-1012 (RWT), 2015 WL 6150939 (D. Md. Oct. 15, 2015)....................................7

*Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*,
    299 F. Supp. 2d 505 (D. Md. 2004) ....................................................................................8

*Hastings v. Mechalske*,
    650 A.2d 274 (Md. 1994) ..................................................................................................15

*Jarrett v. Home Depot U.S.A., Inc.*,
    No. 21-cv-1514 (SAG), 2021 WL 3288361 (D. Md. Aug. 2, 2021) ....................14, 15, 16, 19

*Joseph v. Bozzuto Mgmt. Co.*,
    918 A.2d 1230 (Md. 2007) ................................................................................................22

*Lamb v. Hopkins*,
    492 A.2d 1297 (Md. 1985) ................................................................................13, 19, 20, 21

*Letlow By & Through Bacon v. Evans*,
    857 F. Supp. 676 (W.D. Mo. 1994) ...................................................................................25

*Lewis v. Willough at Naples*,
    311 F. Supp. 3d 731 (D. Md. 2018) ......................................................................7, 8, 10, 11

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)................................................................................23

*Macias v. Summit Mgmt., Inc.*,
    220 A.3d 363 (Md. App. 2019)..........................................................................................19

*Marcelletti v. Bathani*,
    500 N.W.2d 124 (Mich. App. 1993)...................................................................................25

*Metro. Reg'l Info. Sys. Inc. v. Am. Home Realty Network Inc.*,
    888 F. Supp. 2d 691 (D. Md. 2012) ..................................................................................11

*Minnick v Southwest Airline Co.*,
  22-cv-3084 (JMC), 2024 WL 4252988 (D. Md. Sept. 20, 2024) ......................................27, 28

*Molock v. Dorchester Cnty. Family YMCA, Inc.*,
  779 A.2d 963 (Md. App. 2001).......................................................................................20

*Nammack v. Hampstead Pre-Owned*,
  No. 19-cv-1798 (DKC), 2020 WL 1033589 (D. Md. Mar. 3, 2020) ......................................28

*Pandit v. Pandit*,
  No. 18-cv-1136 (PX), 2018 WL 5026373 (D. Md. Oct. 17, 2018),
  *aff'd*, 808 F. App'x 179 (4th Cir. 2020)...........................................................................7, 9

*Parker v. Ciena Corp.*,
  No. 14-cv-4036 (WDQ), 2016 WL 153035 (D. Md. Jan. 12, 2016),
  *aff'd*, 787 F. App'x 817 (4th Cir. 2019)..............................................................................30

*Pendleton v. State*,
  921 A.2d 196 (Md. 2007) ...............................................................................................21

*Peoples v. Marjack Co.*,
  No. 08-cv-178 (AW), 2010 WL 889567 (D. Md. Mar. 5, 2010)............................................30

*Phillips v. British Airways*,
  743 F. Supp. 3d 702 (D. Md. 2024).................................................................................3, 9

*Pizarro Orta v. Creekstone Landscaping & Excavating, LLC*,
  2024 WL 3555093 (D. Md. July 25, 2024)..........................................................................30

*Ramos v. Bank of Am., N.A.*,
  No. 11-cv-3022 (DKC), 2012 WL 5928732 (D. Md. Nov. 26, 2012)....................................18

*Rhaney v. Univ. of Md. E. Shore*,
  880 A.2d 357 (Md. 2005) .........................................................................................22, 24

*Ruhrgas AG v. Marathon Oil*,
  526 U.S. 574 (1999)........................................................................................................7

*St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*,
  No. 21-cv-2337 (ELH), 2023 WL 2743361 (D. Md. Mar. 31, 2023)....................................23

*Stisser v. SP Bancorp, Inc.*,
  174 A.3d 405 (Md. App. 2017) ........................................................................................11

*Wimbush v. Kaiser Found. Health Plan of the Mid Atl. States, Inc.*,
  No. 14-cv- 525 (TDC), 2015 WL 2090654 (D. Md. May 4, 2015)........................................30

**STATUTES AND RULES**

28 U.S.C. § 1332 ................................................................................................................5

28 U.S.C. § 1441 ................................................................................................................5

28 U.S.C. § 1446 ................................................................................................................5

Federal Rules of Civil Procedure Rule 12(b)(2) ...................................................1, 5, 6, 7

Federal Rules of Civil Procedure Rule 12(b)(6) .................................................1, 6, 12

Md. Code Ann., Crim. Law § 3-602.2 ..............................................................................26

Md. Code Ann., Cts. & Jud. Proc. § 5-117(b) ...................................................................4

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1) ..............................................................8

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(2) ..............................................................8

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3) ...........................................................8, 9

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(4) ..............................................................9

Md. Code Ann., Fam. Law § 5-704 ..................................................................................26

Md. Code Ann., Fam. Law § 5-705 .............................................................................25, 26

Md. Code Ann., Fam. Law § 5-705.1 ........................................................................3, 25, 26

**OTHER AUTHORITIES**

Admin. Order No. 2025-37 (Baltimore City Cir. Ct., June 2, 2025) .................................5

Restatement (Second) of Torts (1965) .......................................................................19, 20

Defendant Vincent K. McMahon respectfully submits this *Memorandum of Law in Support of His Motion to Dismiss Plaintiffs' First Amended Complaint* (the "Motion") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

Eight unnamed adults—none of whom are from Maryland—have come to this jurisdiction pleading decades-old allegations in an attempt to capitalize on the recent Maryland Child Victims Act of 2023 ("MCVA"), which eliminates the statute of limitations for civil lawsuits arising out of allegations of child abuse.  Plaintiffs seek to hale nonresident Defendant Vincent K. McMahon ("McMahon"), who lacks any meaningful contacts with Maryland, into this state to defend against these decades-old claims.  However, while the MCVA may eliminate the statute of limitations, it does not eradicate the statutory and constitutional requirements that a court have personal jurisdiction over all parties before it.  The Court has no such jurisdiction here.  As a nonresident who is not domiciled in Maryland, there is no general personal jurisdiction over McMahon, and Plaintiffs fail to plead sufficient facts to satisfy Maryland's long-arm statute or the due process requirements necessary to assert specific personal jurisdiction over McMahon.  Indeed, despite amending their complaint, Plaintiffs still fail to allege a single tortious act or omission committed by McMahon in Maryland.

The First Amended Complaint, ECF No. 55 ("FAC"), also fails on the merits.  Plaintiffs fail to plead that any of the Defendants—let alone McMahon—owed them a legally cognizable duty, which is fatal to both negligence claims.  The FAC seeks to hold McMahon liable for the tortious acts of deceased nonparties Mel Phillips ("Phillips") and, in one instance, Pat Patterson ("Patterson").  But, in Maryland, there is no general duty to control the conduct of third parties absent a legally recognized "special relationship" or statutory obligation.  Here, Plaintiffs plausibly

1

plead neither.

Under Maryland law, most of the duties alleged in this case—to provide a safe environment; to warn of dangers; to hire, supervise, and retain competent employees—are nondelegable duties of the employer that do not extend to co-employees, officers, or even owners such as McMahon. Beyond those duties inherent in the employment relationship, Plaintiffs attempt to otherwise demonstrate a "special relationship" by invoking tort law buzzwords, including "*in loco parentis*" and "business invitees" to conclude, without factual support, that McMahon owed them a duty. Not only is this tactic misplaced, but it lays bare that Plaintiffs are grasping for a cognizable duty where none exists.

To the extent Plaintiffs contend that Phillips and Patterson possessed a dangerous propensity triggering a duty obligating McMahon to protect Plaintiffs from them, they fail. In order to establish a special relationship predicated on a known dangerous propensity, Plaintiffs must plausibly allege that McMahon took charge and control of them in a "custodial situation" depriving them of their liberties. The FAC does not come close to meeting this standard.

Likewise, the FAC fails to plausibly plead that McMahon had actual or constructive knowledge that Phillips or Patterson posed a danger *prior* to the alleged abuse. Although Plaintiffs attempt to manufacture such knowledge by spouting a broad catalog of negative press, unfounded opinions, speculation, and multi-level hearsay from a hodgepodge of characters (many of whom are deceased), these efforts fail. The accounts expound predominantly upon unrelated alleged scandals from the past thirty years of World Wrestling Entertainment, LLC's ("WWE") history— most of which ***post-date the alleged abuse in this case***. To the extent that a limited number of the allegations arguably imply knowledge at the tail end of the relevant timeframe, they lack the factual support, plausibility, consistency, and definiteness required to state a claim.

Plaintiffs' efforts to establish a statutory duty suffer the same fate. Not only does the FAC lack the factual support to demonstrate McMahon had a statutory duty to any of the Plaintiffs, but the statutes Plaintiffs improperly invoke also do not provide a civil right of action or impose a civilly enforceable duty on the general public. Furthermore, Md. Code Ann., Family Law § 5-705.1, which addresses the reporting of suspected child abuse that occurred outside of Maryland to non-Maryland residents (i.e., the vast majority of abuse alleged in this case), was not enacted until 2003 and cannot possibly have retroactively imposed a tort duty on McMahon.

Plaintiffs' First Amended Complaint continues to suffer from numerous independently fatal defects, and the Court should dismiss the FAC as against McMahon.

## FACTUAL BACKGROUND[1]

McMahon and his wife, Linda McMahon, both citizens of Connecticut, are the co-founders of what is now known as WWE. *See* FAC ¶¶ 317-18.[2] WWE is an integrated media and sports entertainment company incorporated in Delaware and headquartered in Connecticut. *Id*. ¶¶ 319-20. TKO Group Holdings, Inc. ("TKO"), a Delaware corporation with headquarters in New York, was formed to be the parent company of WWE. *Id*. ¶¶ 324-25.

Plaintiffs are eight unnamed adults who are citizens of Florida, Massachusetts, Mississippi, Nevada, and Pennsylvania. *Id*. ¶¶ 303-10. They each allege that Phillips, a former ringside announcer for WWE, sexually abused them when they were minors. *Id*. ¶¶ 173-302. Plaintiffs do not bring claims against Phillips, who is deceased. *Id*. ¶ 24 n.8. Instead, Plaintiffs allege that,

---

[1] This Motion, including the Factual Background, is based upon the allegations in the FAC and facts of which the Court may take judicial notice. For purposes of this Motion only, McMahon assumes the truth of the FAC's properly pleaded allegations.

[2] *See also Declaration of Vincent K. McMahon*, attached as Ex. 1 ("McMahon Decl."), ¶ 4, which is admissible for the purposes of assessing jurisdiction. *See Phillips v. British Airways*, 743 F. Supp. 3d 702, 707 (D. Md. 2024) ("[A] court may look beyond the complaint to affidavits and exhibits to assure itself of personal jurisdiction." (citation omitted)).

3

based on the same set of "facts," Defendants (i) were negligent in failing to prevent Plaintiffs' alleged injuries, asserting that Defendants knew or should have known of prior instances of Phillips's abuse of other minors, *id.* ¶¶ 338-76, and (ii) negligently hired, trained, supervised, and retained Phillips, *id.* ¶¶ 377-93.   Plaintiffs also purportedly extend these same claims to Defendants' alleged negligent oversight of former WWE employees Patterson and Terry Garvin ("<u>Garvin</u>"), also both deceased.  *See*, *e.g.*, *id.* ¶¶ 357, 382.  However, only one plaintiff alleges an instance of abuse by Patterson, *id.* ¶¶ 266, and no plaintiff alleges abuse by Garvin.[3]

Plaintiffs allege that McMahon owed several duties, many of which are predicated on an employer-employee relationship.  *Id.* ¶¶ 351-52, 357, 369, 380-81, 391.  The FAC continues to omit, however, any allegation related to Phillips's or Plaintiffs' employment status vis-a-vis McMahon.  The FAC includes standalone, conclusory paragraphs alleging statutory duties purportedly owed to Plaintiffs and duties based on a range of tort concepts that include special relationship status comprising premises liability and *in loco parentis* theories.  *Id.* ¶¶ 349-50, 356. None is explained or factually supported.

In general, Plaintiffs allege that McMahon breached these duties by failing to provide a safe environment and failing to prevent Plaintiffs' alleged abuse.  *Id.* ¶¶ 24 n.8, 90, 143, 345, 347, 371, 387-88.  Plaintiffs' underlying allegations of sexual abuse are vague as to timing, location, and other critical details, including the nature of the alleged acts.  For example, John Doe 2 alleges that he attended wrestling shows with Phillips between 1984 and 1989 in several states including Maryland, and that he was abused in those states.  *Id.* ¶ 201.  John Doe 3 alleges that he attended

---

[3] John Doe 3 alleges that Garvin once put his hand on his shoulders and made a comment that John Doe 3 interpreted as implying "something sexual," which made him feel uncomfortable.  FAC ¶ 211.  John Doe 3 does not allege that this conduct was tortious in nature or that anyone besides Phillips contributed to his alleged injuries.  FAC ¶ 218.  At most, this amounts to an alleged instance of sexual harassment—not abuse—for which the statute of limitations has long passed, and which is not impacted by the MCVA.  Md. Code Ann., Cts. & Jud. Proc. § 5-117(b).

several shows with Phillips during 1983-1987. *Id.* ¶ 215. Only one plaintiff, John Doe 6, alleges abuse that occurred after 1988, *see*, *e.g.*, *id.* ¶ 270, when the FAC alleges that Phillips was temporarily terminated in connection with his alleged "peculiar and unnatural interest and attachment to children," *see*, *e.g.*, *id.* ¶ 383.

The bulk of the purported injuries allegedly occurred outside of Maryland, and Plaintiffs do not allege that McMahon partook in any tortious acts in Maryland. Only a single plaintiff (again, John Doe 6) clearly alleges even encountering McMahon in Maryland.

## PROCEDURAL HISTORY

On October 23, 2024, Plaintiffs commenced this litigation in the Circuit Court for Baltimore County. On December 2, 2024, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. ECF No. 1. Following a stay and eventual decision by the Maryland Supreme Court as to the constitutionality of the MCVA, this Court issued an order directing Defendants to respond to the original complaint by April 7, 2025.[4] ECF No. 31. Defendants moved to dismiss the complaint on that date, and Plaintiffs subsequently filed the FAC, mooting Defendants' pending motions without prejudice to renew. ECF No. 56. The Court granted the parties' proposed scheduling order, directing Defendants to respond to the FAC by June 11, 2025. ECF No. 54.

## LEGAL STANDARD

To successfully defend against a motion made pursuant to rule 12(b)(2) of the Federal Rules of Civil Procedure ("Rule 12(b)(2)"), a plaintiff must present a prima facie case for personal jurisdiction. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396-97 (4th

---

[4] On June 2, 2025, the Administrative Judge and Chief Judge of the Circuit Court for Baltimore City issued an order temporarily staying all cases filed in that court under the MCVA in an attempt to establish an administrable and consistent manner to handle the influx of cases that have flooded the city's courts since the law's enactment. *See* Admin. Order No. 2025-37 (Baltimore City Cir. Ct., June 2, 2025).

Cir. 2003). For "a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.* at 396. "[A] federal district court has specific jurisdiction over a nonresident defendant if 'the defendant has purposefully availed itself of the privilege of conducting activities in the state,' 'the plaintiff['s] claims arise out of those activities directed at the state,' and 'the exercise of personal jurisdiction would be constitutionally reasonable.'" *British Airways*, 743 F. Supp. 3d at 708 (quoting *Carefirst*, 334 F.3d at 397).

To survive a motion to dismiss under rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible on its face," "the plaintiff [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need only accept as true well-pleaded facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Indeed, courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## ARGUMENT

## I.     The Court Should Dismiss the First Amended Complaint Against McMahon Under Rule 12(b)(2) for Lack of Personal Jurisdiction

The claims against McMahon should be dismissed under Rule 12(b)(2) because the Court lacks personal jurisdiction over him. Maryland has virtually no connection to this action. None of the Plaintiffs reside in Maryland. None of the Defendants are at home in Maryland. And, the

majority of Plaintiffs' contentions concern conduct and purported injuries alleged to have occurred *outside* of Maryland. In other words, personal jurisdiction is lacking.

"A court may not hear any claim against parties for whom personal jurisdiction is lacking." *Pandit v. Pandit*, No. 18-cv-1136 (PX), 2018 WL 5026373, at *1 (D. Md. Oct. 17, 2018), *aff'd*, 808 F. App'x 179 (4th Cir. 2020); *see also Ruhrgas AG v. Marathon Oil*, 526 U.S. 574, 584 (1999) ("Personal jurisdiction . . . is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'" (citations omitted)). "When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Gibbs v. Cty. of Del*., No. 15-cv-1012 (RWT), 2015 WL 6150939, at *1 (D. Md. Oct. 15, 2015) (quoting *Carefirst*, 334 F.3d at 396). Where, as here, the Court decides a pretrial personal jurisdiction motion without first conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction." *Id.* (quoting *Carefirst*, 334 F.3d at 396). Plaintiffs have not met their burden.[5]

### A.    Maryland's Long-Arm Statute Does Not Authorize Personal Jurisdiction Over McMahon

Maryland's long-arm statute confers jurisdiction to the fullest extent permitted by the Constitution. *See Carefirst*, 334 F.3d at 396-97 (noting that the "long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution."). As a result, the statutory analysis under Maryland law "merges with [the] constitutional inquiry." *Lewis v. Willough at Naples*, 311 F. Supp. 3d 731, 734 (D. Md. 2018). Nevertheless, "a number of

---

[5] Many of the arguments advanced by Defendants WWE and TKO and by Defendant Linda McMahon in their respective memoranda of law in support of their motions to dismiss (the "WWE & TKO MTD" and "LM MTD," respectively) are equally applicable to McMahon. To the extent they are applicable, McMahon hereby adopts and joins in the WWE & TKO MTD and LM MTD.

courts . . . have held that a plaintiff must identify the specific provision of the Maryland long-arm statute that confers jurisdiction," and that failure to do so "provides an independent basis for dismissal or transfer." *Id.* at 735. Here, rather than specify their claimed basis for jurisdiction, Plaintiffs have added a single conclusory allegation, unsupported by any facts, that simply parrots five of the long-arm statute's six prongs—none of which apply. FAC ¶ 327.

Sections 6-103(b)(1) and (b)(2) authorize a court to exercise jurisdiction over a defendant who, directly or by an agent, "[t]ransacts any business or performs any character of work or service in the State; [or] (2) [c]ontracts to supply goods, food, services, or manufactured products in the State." Md. Code Ann., Cts. & Jud. Proc. §§ 6-103(b)(1)-(2). Nowhere in the FAC do Plaintiffs allege facts to support that McMahon, in his individual capacity, transacted business or contracted to provide services in Maryland. Indeed, McMahon has no offices or agents in Maryland, no significant or long-term commitments in Maryland, and does not maintain property in Maryland. McMahon Decl. ¶ 5.

And, to the extent Plaintiffs argue that the Court has jurisdiction over McMahon as an agent of WWE, that argument must fail. "[A] federal court may not exercise personal jurisdiction over a corporation's agent if the agent's only connection to the forum state is as an officer or employee of a non-resident corporation that [allegedly] committed a tort in the state, and if the agent's own [alleged] involvement in that tort occurred outside of the forum state." *Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d 505, 514 (D. Md. 2004) (citations omitted). The FAC fails to plausibly allege *any* tortious conduct committed by McMahon either inside or outside of Maryland.

Likewise, Section 6-103(b)(3) has no applicability here. Section 6-103(b)(3) empowers a court to exercise specific jurisdiction over a nonresident who "[c]auses tortious injury in the State

by an act or omission in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3). Here, not only did the vast majority of Plaintiffs' alleged injuries occur outside of Maryland, but Plaintiffs fail to allege that McMahon caused tortious injury in Maryland or committed *any* negligent acts in Maryland. This is fatal to their claim.

Section 6-103(b)(4) fares no better. Section 6-103(b)(4) permits a court to exercise specific jurisdiction over a nonresident who causes tortious injury either inside or outside of Maryland by an act or omission occurring outside the state, provided that the defendant engages in substantial or ongoing activities within Maryland. Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(4). Courts in this Circuit have construed subsection (b)(4) as "a general jurisdiction statute," requiring that the defendant "be at home" in Maryland, while the Fourth Circuit has suggested in dicta that § 6-103(b)(4) authorizes specific jurisdiction only where "the contacts resulting from the [defendants'] conduct [were] continuous over a long period of time." *British Airways*, 743 F. Supp. 3d at 713 (quoting *Pandit*, 808 F. App'x at 187) (additional citations omitted). The FAC fails to meet this "high" bar under either alternative because Plaintiffs—who do not and cannot allege that McMahon is subject to general personal jurisdiction—neglect to allege any facts establishing that McMahon was domiciled in Maryland or that he engaged in a persistent course of conduct in the state. *Id.*; *Pandit*, 2018 WL 5026373, at *3 ("A defendant is domiciled where he maintains 'both physical presence and an intent to remain.'" (citation omitted)).

Finally, Plaintiffs cannot rely upon Section 6-103(b)(5). Section 6-103(b)(5) permits a court to exercise jurisdiction over a person who "has an interest in, uses, or possesses real property in the State," which the FAC fails to allege. Absent such an allegation, jurisdiction under § 6-103(b)(5) is plainly inapplicable.

**B.      Exercising Specific Jurisdiction Over McMahon Does Not Comport with Due Process**

Even if Maryland's long-arm statute authorized specific personal jurisdiction over McMahon (it does not), the Constitution would not permit it.  To determine the constitutionality of asserting jurisdiction, the Court must consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."  *Lewis*, 311 F. Supp. 3d at 735 (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)).

The first prong of the test "articulates the minimum contacts requirement of constitutional due process," *id.*, which ensures that "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person,'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted).  A defendant has availed himself where he has "'deliberately' . . . engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum." *Id.* at 475-76.

Plaintiffs allege no facts tying McMahon personally to Maryland or demonstrating that he purposefully availed himself of the privileges of the State.  The only Maryland-related allegations that Plaintiffs have added to the FAC in an attempt to cure this obvious deficiency are allegations that "WWE routinely held shows throughout Maryland," and that "the McMahons issued and/or approved for use in Maryland" certain advertisements.  FAC ¶ 330.  But WWE promoted and conducted events nationwide, and generalized, indirect contacts—particularly those attributable to a corporation—are insufficient to establish that McMahon, in his individual capacity, deliberately engaged in the requisite activity within the State.  As the court held in *Stisser v. SP Bancorp, Inc.*,

10

Maryland courts will not impute a corporation's in-state acts—such as filings or communications—to individual directors or officers where the relevant conduct occurred entirely outside Maryland. 174 A.3d 405, 440-41 (Md. App. 2017) (holding no personal jurisdiction over nonresident corporate directors). The same reasoning applies here. Because Plaintiffs fail to allege McMahon directed any purposeful conduct at Maryland, "the Court need not reach steps two or three of the inquiry." *Cent. Va. Aviation, Inc. v. N. Am. Flight Serv. Inc.*, 23 F. Supp. 3d 625, 631 (E.D. Va. 2014).

Even if the Court were to proceed with the inquiry, Plaintiffs necessarily fail the second constitutional prong given the dearth of allegations suggesting that McMahon had contacts in Maryland that could "have created a cause of action in Maryland courts." *Metro. Reg'l Info. Sys. Inc. v. Am. Home Realty Network Inc.*, 888 F. Supp. 2d 691, 699-700 (D. Md. 2012) (dismissing complaint as to defendant CEO where plaintiffs' allegations were "based almost exclusively on [defendant company's] Maryland activities and not on [defendant CEO's] personal contacts with the state or its residents"). The gravamen of Plaintiffs' case against McMahon is that he was negligent in his supervisory role, but Plaintiffs merely allege that he was *present* in a dressing room in Maryland. FAC ¶ 264. The FAC lacks any allegations that McMahon made supervisory decisions in Maryland or took any action or omission in Maryland that contributed to the alleged harm. Advertising entertainment events in Maryland—part of WWE's nationwide operation—is far removed from the alleged failure to supervise that forms the basis of Plaintiffs' claims. In other words, the FAC entirely fails to plead that Plaintiffs' claims "arise out of" the limited activities that Defendants are alleged to have "directed at the State." *Lewis*, 311 F. Supp. 3d at 735.

Finally, even if the Court were to hold that the first two prongs are satisfied, exercising jurisdiction over McMahon is not constitutionally reasonable. To determine whether jurisdiction

is constitutionally reasonable, courts consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (cleaned up). Here, these factors all lead to an undeniable conclusion: haling McMahon, a nonresident with limited allegations connecting him to Maryland, into a court in Maryland—where none of the Plaintiffs reside and minimal alleged acts occurred—would not only be a substantial burden on McMahon and an inefficient use of the Court's resources, but it would also be constitutionally unreasonable.

## II.    The Court Should Dismiss the First Amended Complaint Under Rule 12(b)(6) for Failure to State a Claim

Both claims in the FAC must be dismissed because they also fail on the merits. The FAC continues to lack non-conclusory allegations establishing a critical element of each claim: duty. Even where an employer owes certain duties, those duties do not attach to an owner, officer, supervisor, or employee unless certain exceptions are met—none of which are alleged or present here. Just as McMahon was not Plaintiffs' employer, he also was not their parent, premises owner, or otherwise in a legally recognized "special relationship" with Plaintiffs or the alleged perpetrators that could give rise to a tort duty. Nor do Plaintiffs' temporally-scattered allegations come close to establishing that the tortious actions of Phillips or Patterson were reasonably foreseeable to McMahon, such that some ill-defined general duty could have existed. Finally, McMahon was likewise under no statutory duty to Plaintiffs. Plaintiffs' conclusory, shotgun-style pleading of nearly every duty in the book itself evinces they are searching blindly for a theory of liability where none exists. There remains no basis for imposing liability on McMahon for the alleged misconduct of Philips, Patterson, or Garvin.

### A.    Plaintiffs Fail to State a Claim for Negligence Against McMahon

For a negligence claim to survive a motion to dismiss under Maryland law, "a plaintiff must 'allege with certainty and definiteness, facts and circumstances sufficient to set forth (a) a duty owed by the defendant to the plaintiff, (b) a breach of that duty and (c) injury proximately resulting from that breach.'" *Est. of Green v. City of Annapolis*, 696 F. Supp. 3d 130, 170-71 (D. Md. 2023) (quoting *Fletcher v. Md. Transit Admin.*, 741 F. App'x 146, 149 (4th Cir. 2018)).

"Duty is a foundational element in a claim of negligence because . . . negligence is a breach of a duty owed to one, and absent that duty, there can be no negligence." *Barclay v. Briscoe*, 47 A.3d 560, 574 (Md. 2012) (cleaned up).  Because the "existence of a duty is a matter of law," it is ripe for determination on a motion to dismiss. *Est. of Green,* 696 F. Supp. 3d at 171 (citations omitted).  Under Maryland law, "a private person is under no special duty to protect another from criminal acts by a third person, in the absence of statutes, or of a special relationship." *Lamb v. Hopkins*, 492 A.2d 1297, 1302 (Md. 1985) (collecting cases).  Recognizing this, Plaintiffs attempt, in conclusory fashion, to manufacture such a relationship by asserting a scattershot list of purported duties that McMahon allegedly owed them, none of which establishes the requisite legal obligation.  Accordingly, Plaintiffs fail to allege that McMahon owed them a legally cognizable duty, thereby dooming their claims.[6]

#### 1.    McMahon did not owe Plaintiffs any of the alleged employment-based duties

Plaintiffs allege a variety of duties based on the purported employment relationship between WWE, Plaintiffs, and/or Phillips (and as relevant to one plaintiff, Patterson)—none of which are legally cognizable, particularly against an officer such as McMahon.  Indeed, Plaintiffs

---

[6] WWE and TKO's memorandum of law, which McMahon has joined where applicable, addresses the FAC's failure to allege a duty of care that *any* Defendant owed to any or all of the Plaintiffs.  *See* WWE & TKO MTD § III.  Accordingly, this Motion focuses on the FAC's additional pleading deficiencies with respect to McMahon, personally.

fail to adequately allege that any of the named defendants owed them a duty as an employer. *See* WWE & TKO MTD § III(A)(2) (noting that Plaintiffs fail to plausibly allege that WWF, WWE, or TKO employed any of the Plaintiffs); *see also id.* § I (highlighting that Plaintiffs also fail to plead successor liability as to TKO). At base, Plaintiffs allege no more than a quasi-employment relationship between themselves and Phillips, a non-party to this action. *See Id.* § III(A)(2) (pointing out that Plaintiffs maintain *Phillips* hired them and that *Phillips* paid them money for the work *he requested*). Plaintiffs, therefore, cannot premise their claims against *any* of the Defendants on duties that an employer typically owes to its employees.

But *even if* Plaintiffs could claim they were WWE employees and thus owed such duties (they cannot), those duties would not have been owed to them by McMahon. Officers and supervisory employees are immune from personal liability where they are alleged to have breached "an employer's nondelegable duty" such as "to provide a safe workplace." *See Beasley v. Bernard*, No. 23-cv-3133 (DKC), 2024 WL 326952, at *4 (D. Md. Jan. 29, 2024) (citations omitted) (clarifying the holding of *Athas v. Hill*, 476 A.2d 710, 715 (Md. 1984) and its progeny, which "draws a clear line between 'affirmative, direct acts of negligence' that managers might carry out in breach of a ***personal*** duty of care versus acts that merely constitute performance of, or failure to perform, the employer's nondelegable duties" (emphasis added)). Thus, an employee can only be liable for negligence if he "breaches a duty of care which he ***personally owed to the plaintiff***" as opposed to "merely for breaching a duty that the employer owed the injured employee." *Id.* (emphasis added) (citations omitted); *see also Jarrett v. Home Depot U.S.A., Inc.*, No. 21-cv-1514 (SAG), 2021 WL 3288361, at *3 (D. Md. Aug. 2, 2021) (holding that officers and employees may be held liable only "for their own tortious conduct" comprising "'affirmative, direct acts of negligence' that managers might carry out in breach of a personal duty of care" and not for "acts

that merely constitute performance of, or failure to perform, the employer's nondelegable duties" (citations omitted)).  Thus, a corporate officer like McMahon cannot be held liable for negligence where: (1) he is carrying out a nondelegable duty of the employer, *or* (2) he has not committed an "affirmative, direct act[] of negligence . . . in breach of a personal duty of care." *Jarrett*, 2021 WL 3288361, at *3.  Here, both are true, disqualifying McMahon from liability.

Plaintiffs endeavor to extend to McMahon the duty "to provide a reasonably safe place to work and to warn of dangers," by summarily alleging that, "[a]dults who work in that environment have a duty to know and be aware of the safety of the environment and to warn the children and their parents of safety risks."  FAC ¶¶ 351-52.  This extrapolation must fail because—even where adequately alleged—this duty is a nondelegable duty that "remains with the employer notwithstanding the fact that an employee has been charged with carrying [it] out." *Athas*, 476 A.2d at 718.  An employee does not assume a personal duty to his or her co-workers (let alone to third parties who are not employees) merely by performing the employer's nondelegable duty. *Hastings v. Mechalske*, 650 A.2d 274, 279 (Md. 1994).

*Athas* is instructive here.  In *Athas*, the chef at a country club assaulted a busboy, and the busboy sued three supervisors and officers of the club, alleging that they "had notice of [the chef's] violent disposition," and negligently discharged their responsibility to provide a safe workplace. 476 A.2d at 711.  The duties alleged were practically identical to those alleged here: "hiring, discharging, and disciplining employees"; "providing employees with a reasonably safe place to work"; "warning and instructing employees concerning the dangers of the work place about which [the employer] knew or should have known and which the employees could not reasonably have discovered"; and "exercising reasonable care and caution in the selection and employment of competent, nonviolent employees." *Id.*  The Maryland Supreme Court affirmed the dismissal

against the individual supervisors and officers. It did so even though those individuals "were responsible for discharging [the employer's] duty to provide [plaintiff] with a safe place to work and to retain only competent, nonviolent employees," and even though, unlike in this case, the individuals conceded that they had acted negligently. *Id.* at 711, 718. The court held that "[i]n undertaking such managerial and personnel functions, the officers assumed an obligation to the employer only," not to the busboy. *Id.* at 718. As such, "[those] supervisory employees cannot be held liable for negligently performing the employer's nondelegable duties." *Id.* Even if "the officers knew of [the chef's prior] involvement in altercations while employed at the club and did nothing about this behavior, then they merely breached the duty of providing a safe place to work which [the employer] owed to" the busboy. *Id.* at 719.

Such is the case here. Even accepting as true that Plaintiffs have adequately alleged an employment relationship with WWE (they have not), *and* that McMahon was responsible for "discharging [the WWE's] duty to provide [Plaintiffs] with a safe place to work and to retain only competent, nonviolent employees" (he was not), *and* that he negligently carried out those functions (he did not), the claims against McMahon *must still be dismissed* because "[i]n undertaking such managerial and personnel functions, [McMahon] assumed an obligation to the [WWE] only." *Id.* at 711, 718; *Beasley*, 2024 WL 326952, at *7 (dismissing plaintiff's claims against individual employees where plaintiff failed to allege employees' involvement outside the scope of their employment).

Furthermore, Plaintiffs continue to fail to allege that McMahon committed an "affirmative, direct act[] of negligence . . . in breach of a personal duty of care" owed to Plaintiffs. *Jarrett*, 2021 WL 3288361, at *3. "When evaluating a corporate officer's potential liability under" this requirement "it is useful to draw a distinction between acts that constitute 'misfeasance' and those

16

that constitute 'mere nonfeasance.'" *Bowman v. Top Gun of Va., Inc.*, No. 21-cv-2207 (TJS), 2021 WL 5827776, at *4 (D. Md. Dec. 8, 2021) (citations omitted). "A corporate officer must take an active role in the commission of a tort for liability to attach; passive behavior and inaction will not suffice." *Id.* Indeed, "failing to maintain a premises in a safe and reasonable manner; failing to warn persons that a condition was a hazard; failing to properly train, instruct, or hire employees, and failing to establish appropriate policies and procedures to keep a premises safe" will not subject a corporate officer to liability. *Id.* (citation omitted).

Here, as in *Bowman*, Plaintiffs allege "mere nonfeasance"—that is, "a corporate officer's inaction, which do[es] not subject the officer to liability." *Id.* (citation omitted). Plaintiffs have not alleged that McMahon "actually participated in the tort[s] that led to [their] injuries." *Id.* Instead, "[a]ll of [their] allegations concern [McMahon's] failure to take steps that might have prevented" Phillips's alleged abuse (and in one instance, Patterson's). *Id.* at *5. "Plaintiffs' argument that [McMahon] exercised control over [Phillips and Patterson] . . . does not transform [McMahon's] alleged conduct into an affirmative and direct act of negligence" for which personal liability might be imposed. *Beasley*, 2024 WL 326952, at *5. Rather, "[t]hese allegations of inaction constitute 'mere nonfeasance' and are thus insufficient to subject [McMahon] to personal liability." *Bowman*, 2021 WL 5827776, at *5 (dismissing negligence claims against CEO and director where there was "simply no allegation . . . that [he] was personally and directly involved in the commission of the tort at issue").

The FAC's addition of a single conclusory allegation attempts to cure this blatant deficiency: Plaintiffs now posit that "[t]he McMahons committed affirmative, direct actions of negligence in breach of their duties." FAC ¶ 357. That allegation is not only entirely unsupported by any facts that Plaintiffs allege throughout the FAC, it is in direct contrast with their own

17

allegations, which repeatedly suggest that Defendants "***failed to act***" and "***failed to take action*** to prevent injury to the Ring Boys," thereby dooming their claim. *Id.* ¶¶ 345, 347 (emphasis added); *see also id.* ¶¶ 24 n.8, 143, 371, 387-88 (alleging that Defendants failed to act); *Ramos v. Bank of Am., N.A.*, No. 11-cv-3022 (DKC), 2012 WL 5928732, at *4 (D. Md. Nov. 26, 2012) (dismissing complaint noting that "when a complaint contains inconsistent and self-contradictory statements, it fails to state a claim").

Finally, to the extent Plaintiffs contend that McMahon should be held liable as an owner of the WWE—rather than as an officer, supervisor, or co-employee—that argument likewise fails. To hold an owner liable, "the Plaintiffs must demonstrate that there is sufficient cause to pierce the corporate veil." *Antonio v. Sec. Servs. of Am., LLC*, 701 F. Supp. 2d 749, 759 (D. Md. 2010). "Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporation's veil" and will only do so when it is "necessary to prevent fraud or to enforce a paramount equity." *Id.* (cleaned up); *see also Bowman*, 2021 WL 5827776, at *4 n.4 ("The fiction of the wholly separate corporate form is jealously guarded by courts in Maryland, where, as a matter of public policy, the power to pierce the corporate veil is to be exercised reluctantly and cautiously.") (citations omitted). Here, "there is no suggestion of fraud or the need to enforce a paramount equity . . . such that veil piercing might be permitted." *Bowman*, 2021 WL 5827776, at *4 n.4.

          2.     <u>McMahon did not owe any duties to business invitees, including Plaintiffs</u>

Other duties alleged by Plaintiffs fail for similar reasons. Plaintiffs allege that "WWE and the McMahons had a duty to take affirmative action for the aid or protection of business invitees who are in danger while the WWE possesses arenas or other venues for its business purposes because the WWE and the McMahons had knowledge of the danger posed by Phillips." FAC ¶ 356. Under Maryland law, it is the "possessor or owner" of land who owes business invitees a

duty to "use reasonable and ordinary care to keep the premises safe for the invitee." *Macias v. Summit Mgmt., Inc.*, 220 A.3d 363, 375-76 (Md. App. 2019) (citations omitted). Thus, the duties owed to business invitees are duties that could only be owed to the entrant by the "possessor or owner" of the land—not by company officers or supervisory employees. *See Jarrett*, 2021 WL 3288361, at *3 n.1 ("[T]he underlying principles regarding an employer's non-delegable duties and a supervisory employee's liability are directly applicable [in the premises liability context]— providing a safe place to work is a natural corollary of providing a safe place for invitees . . . ."). Therefore, even to the extent such duties could extend to cover Phillips's alleged actions in this case (they do not), no such duties can be imposed on McMahon.

> ### 3.    McMahon was not otherwise in a "special relationship" giving rise to any duty owed to Plaintiffs

To the extent the FAC seeks to otherwise establish a "special relationship" that could serve to impose a cognizable tort duty on McMahon to protect Plaintiffs from third party misconduct, that endeavor must also fail. "[T]here is no duty to control a third person's conduct so as to prevent personal harm to another, unless a 'special relationship' exists either between the actor and the third person or between the actor and the person injured." *Barclay*, 47 A.3d at 574-75 (cleaned up). Indeed, "one cannot be expected to owe a duty to the world at large to protect it against the actions of third parties[.]" *Id.* at 575.

Courts may find a special relationship where the defendant exhibits control either of "his servant," (i.e., his employee); his "licensee" by virtue of being a land possessor (i.e., business invitee); his minor child (or *in loco parentis*); or of a person "having dangerous propensities." *See Lamb*, 492 A.2d at 1302 (identifying pertinent sections of the Restatement (Second) of Torts (1965) (the "Restatement") describing scenarios in which a special relationship may be found).

19

Plaintiffs' newfound attempt to allege that WWE and McMahon were "*in loco parentis* with Plaintiffs and other Ring Boys*" in order to manufacture a special relationship lacks merit. FAC ¶ 349. A person is *in loco parentis* to a child when he or she puts themselves "in the situation of the lawful father [or mother] of the child with reference to the father's [or mother's] office and duty of making provision for the child." *Molock v. Dorchester Cnty. Family YMCA, Inc.*, 779 A.2d 963, 967 (Md. App. 2001) (citation omitted). The *in loco parentis* doctrine, most often applied in a school setting, "is not applicable in a context where there is no intention that the relevant institution may exercise the authority and control" akin to schools. *Doe v. Cmty. Coll. of Baltimore Cnty.,* 595 F. Supp. 3d 392, 420 (D. Md. 2022) (citation omitted).

Here, Plaintiffs do not and cannot allege that McMahon either intended to exercise the type of authority and control that schools do over their students, or intended to assume the significant responsibility of guiding and shaping the development of children, as required to assert *in loco parentis*. *See Cmty. Coll. of Baltimore Cnty*., 595 F. Supp. 3d at 420. Additionally, attendance at the WWE events was not compulsory, McMahon did not have the right to discipline Plaintiffs, and there is no allegation that the Plaintiffs could not "leave the [WWE] event[s] at any time without sanction," all of which are essential to establishing *in loco parentis*. *Molock*, 779 A.2d at 968.

To otherwise establish a special relationship, Plaintiffs must allege that McMahon took charge and control of Phillips and Patterson and that he knew or should have known they were likely to cause bodily harm to others if not controlled. *See Lamb*, 492 A.2d at 1302 (discussing Section 319 of the Restatement, which "deals with the duty of those in charge of persons having dangerous propensities"). Plaintiffs do not plead this "dangerous propensity" special relationship as to any Defendant—nor could they satisfy the relevant standard even if they had. The dangerous propensity exception applies only to specific custodial situations, the "traditional and obvious

20

examples" being "a correctional institution incarcerating a dangerous criminal or a mental institution confining a dangerous patient." *Id.* at 1301-02 (describing the exception as having "peculiar application to custodial situations") (cleaned up).  Plaintiffs do "not meet the threshold requirement" because they do not—and indeed, cannot—allege that McMahon or any Defendant "took charge" of Phillips or Patterson so as to establish anything resembling a "custodial relationship." *Id.* at 1302.  Indeed, Phillips and Patterson were "free to conduct [their] day-to-day affairs," and there are no allegations that McMahon or any Defendant was "responsible for supervising [Phillips and Patterson] on a daily basis" in the way that a guard supervises an inmate in custody. *Id.* at 1304.  Thus, the FAC fails to allege that McMahon or any Defendant took charge and controlled Phillips and Patterson to the extent necessary to establish this type of special relationship.

4.    Plaintiffs fail to plead that their alleged harms were reasonably foreseeable

Plaintiffs' broad-based allegation that "WWE and the McMahons had a general duty to exercise reasonable care to avoid foreseeable injury to others, including the Ring Boys," FAC ¶ 353, is no more than a conclusory regurgitation of the elements of any negligence cause of action that the Court need not credit. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  In any event, Plaintiffs fail to plausibly plead that their alleged injuries were reasonably foreseeable to McMahon such that he would have owed them any general duty of care.  Indeed, Plaintiffs' vague, conclusory allegations purporting to establish notice prior to any of the alleged abuse do not even come close to sufficiently "alleg[ing] with certainty and definiteness, [the necessary] facts and circumstances" that would require the Court's deference. *Est. of Green*, 696 F. Supp. 3d at 170-71.

"Where the failure to exercise due care creates risks of personal injury, 'the principal determinant of duty becomes foreseeability.'" *Pendleton v. State*, 921 A.2d 196, 205 (Md. 2007)

(citation omitted).  To find liability, "the person accused of negligence must have known or should have known that danger was involved in such act or omission."  *Bauman v. Woodfield*, 223 A.2d 364, 368 (Md. 1966) (citation omitted).  Here, Plaintiffs fail to allege sufficient facts to establish that McMahon knew or should have known of Phillips's or Patterson's alleged ***prior*** misconduct at the time of the alleged harms to Plaintiffs, such that his continued employment would cause Plaintiffs foreseeable injuries.

Plaintiffs' attempt to manufacture McMahon's actual or constructive knowledge by way of citation to negative press from the past thirty years—most of which is unrelated to Phillips, Patterson, or the Plaintiffs' alleged abuse and ***post-dates*** the 1992 public revelation of the so-called "Ring Boy Scandal"—deserves no consideration.  *See Joseph v. Bozzuto Mgmt. Co.*, 918 A.2d 1230, 1236 (Md. 2007) (requiring "either constructive or actual ***pre-injury*** knowledge of" the dangerous condition (emphasis added)); *Rhaney v. Univ. of Md. E. Shore*, 880 A.2d 357, 366, 368 (Md. 2005) (holding university "neither had knowledge nor could have foreseen" attack by student on roommate where there was "no pattern of sufficient ***prior*** violence" by the student); *see also Doe v. Alsaud*, 12 F. Supp. 3d 674, 681 (S.D.N.Y. 2014) ("The prior misconduct, moreover, must be of the same kind that caused the injury; general, unrelated or lesser allegations of prior wrongdoing are insufficient." (collecting cases)).

To the extent Plaintiffs attempt to attribute McMahon's actual or constructive knowledge of Phillips's alleged misconduct to the relevant time period, i.e., before the alleged abuse of Plaintiffs occurred, they fail to "allege with certainty and definiteness, facts and circumstances sufficient to set forth" such knowledge.  *Est. of Green*, 696 F. Supp. 3d at 170-71.  Instead, they proffer only generalized suspicion that the "McMahons controlled and knew everything within WWE," FAC ¶ 343—which lacks any indicator of "certainty and definiteness"—and vague, third-

party allegations that suffer from the same fate. Plaintiffs allege that Phillips was once spotted in a car performing a sexual act on a young boy, and that McMahon was told about it. *Id.* ¶ 40. Plaintiffs, themselves, do not have any personal knowledge of this supposed incident—rather, they allege that in 1992, after the Ring Boys scandal came to light, two wrestlers (both since deceased) alleged that they *heard* that it had happened. *Id.* ¶¶ 40-42. According to the FAC, one of the wrestlers, Superstar Billy Graham, retroactively claimed that he was present at the venue the night of the alleged incident, *id.* ¶ 42; Plaintiffs fail to mention, however, that in the same TV appearance, Graham admitted that he did not personally see the alleged act, observe anyone reporting it to McMahon, or hear whatever was purportedly told to McMahon. The other wrestler, Bruno Sammartino, did not even work for the WWE in 1982-1983 when this incident allegedly took place.[7] Plaintiffs cannot plausibly claim that their alleged injuries were rendered "reasonably foreseeable" based entirely on unsupported allegations made by two deceased nonparties, both of whom had their own grievances against the McMahons and the WWE, as to an event they did not witness, and on which they offered conflicting, unspecified details placed vaguely into an expansive timeframe of a number of years from a decade prior. McMahon has consistently and vehemently denied those allegations for 30-plus years—as supported by sources that Plaintiffs themselves cite—and there is no basis in law or fact for the Court to credit them.

---

[7] Plaintiffs deceptively attempt to further beef up this unsupported allegation by citing a "1992 investigation into the Ring Boys Scandal" by "a magazine" that briefly mentioned the same alleged incident. FAC ¶ 40. However, that magazine, *Penthouse*, cited only one source: Bruno Sammartino, the same wrestler upon whom Plaintiffs separately rely. *See* Jeff Savage, *No Holds Barred*, PENTHOUSE: THE INTERNATIONAL MAGAZINE FOR MEN (Sept. 1992). Furthermore, the article notes that Sammartino wrestled in the 1960s and 1970s, returning as an announcer in 1984, *id.*, evincing that Sammartino did not work for WWF during the broad, two-year span in which Plaintiffs suggest the incident occurred, FAC ¶ 42. "[A] court need not feel constrained to accept as truth conflicting pleadings that . . . are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001); *see also St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, No. 21-cv-2337 (ELH), 2023 WL 2743361, at *9 (D. Md. Mar. 31, 2023) (stating that, where a plaintiff incorporates external materials into their complaint, "crediting the document over conflicting allegations in the complaint is proper" (citation omitted)).

Plaintiffs' remaining notice allegations are threadbare, repetitive, and simply cannot support the imposition of a tort duty owed by McMahon to the Plaintiffs in this case. Plaintiffs hinge their case on an allegation that in 1992, McMahon "confessed to *New York Post* columnist, Phil Mushnick, that he and Linda McMahon knew of Phillips's 'peculiar and unnatural interest' in boys before they temporarily fired him for it in 1988." FAC ¶ 44 (emphasis omitted). Plaintiffs loosely brandish this singular tabloid soundbite *ad nauseam* throughout the FAC, including by stretching it to suggest that McMahon had such knowledge "at least as early as the 1980s." *Id.* ¶¶ 2, 13. Despite these unsupported attempts to extend McMahon's alleged knowledge back an entire decade, at the very best Plaintiffs' allegations amount to a charge that McMahon knew as of 1988 that Phillips had a "peculiar and unnatural interest" in boys. And, crucially, only a single Plaintiff, John Doe 6, alleges instances of abuse by Phillips that occurred after 1988.[8] Tellingly, Plaintiffs have since deleted from their amended complaint their prior unsupported allegation that McMahon's alleged "admission of knowledge pre-dated Phillips's abuse of Plaintiffs in this case." *See* ECF. No. 51-1 (Redline) ¶ 13. That allegation—crucial to the legal viability of their claims— has been deleted because it is untenable.

Finally, as to Patterson, Plaintiffs likewise cannot allege that McMahon "had knowledge []or could have foreseen" the single incident of abuse by Patterson that John Doe 6 alleges in 1989. *Rhaney*, 880 A.2d at 366; FAC ¶ 266. Their allegations that McMahon knew or should have known that Patterson may engage in such behavior likewise rely entirely on interviews and press from the decades after the Ring Boys story came to light in 1992. Furthermore, many of these sources explicitly acknowledge that McMahon was *not* told about misconduct by Patterson. *See, e.g.*, FAC ¶ 82 (alleging that wrestler Tony Atlas acknowledged the wrestlers did not complain about

---

[8] John Doe 2 pleads that he continued to work as a Ring Boy in the 1988-1989 period, but he does not allege a specific incident of abuse in those two years. FAC ¶¶ 192-205.

Patterson's alleged misconduct); ¶ 80 (alleging that wrestler Brickhouse Brown "didn't go to Vince McMahon about Patterson" for his alleged misconduct).

Accordingly, Plaintiffs have failed to plead facts showing that McMahon had the requisite knowledge and control over the alleged abusers necessary to trigger a duty under Maryland law. Plaintiffs' generalized allegations about McMahon's position at WWE and supposed omniscience fall far short of the specific, fact-based showing the law requires to establish a cognizable duty.

### 5.    McMahon did not owe Plaintiffs a statutory duty

Plaintiffs also improperly invoke Sections 5-705 and 5-705.1 of the Maryland Code's Family Law article to suggest that McMahon had a statutory duty to report suspected instances of child abuse. FAC ¶ 355. The attempt is misplaced for a handful of equally disqualifying reasons. First, neither provision provides a private civil right of action; indeed, these statutes have never been used by Maryland courts to impose a duty of care in tort, and "the vast majority of courts . . . across the county have found that reporting statutes such as the one at issue here, do not create a private right of action." *Letlow By & Through Bacon v. Evans*, 857 F. Supp. 676, 678 (W.D. Mo. 1994) (listing cases, and dismissing negligence claim of student abused by teacher brought against school principal who allegedly failed to report prior abuse).

Second, even in the limited number of states with statutes that do provide for civil statutory liability (which the cited Maryland statutes do not), such liability only extends to claims by the specific child about whom no such report was made. *See*, *e.g.*, *Marcelletti v. Bathani*, 500 N.W.2d 124, 127 (Mich. App. 1993) ("[W]e have found no authority that adopts [a] construction" that would allow "civil liability [to] run[] to any person other than the allegedly abused child."). In other words, to survive a motion to dismiss, each of the eight Plaintiffs here needed to allege a specific instance of *his own abuse* that McMahon had reason to believe occurred; that McMahon

failed to report *that abuse*; and that the failure led to further injury *to that specific Plaintiff*.  The FAC does not come close to satisfying this standard.

Third, the cited statutes do not impose a civilly enforceable duty on "the general public" to report suspected instances of child abuse, as Plaintiffs allege.  *See* FAC ¶ 355.  Indeed, as in many other states, a separate provision of Maryland law imposes specific reporting duties on a subcategory of individuals who are considered "mandated reporters" in Maryland—a group of which McMahon is not a part.  *See* Md. Code Ann., Fam. Law. § 5-704 (setting reporting requirements for "health practitioner[s], police officer[s], educator[s], or human service worker[s]"); *see also* "Mandated Reporters," Maryland Dept. of Human Services.[9]  The Maryland Legislature knew very well how to impose enforceable penalties for a failure to report suspected child abuse if it so wished, and it did so only for these "mandated reporter" categories—not for the general public.  *See* Md. Code Ann., Crim. Law § 3-602.2 (subjecting mandated reporters identified in Family Law Section 5-704 to misdemeanor liability).  Plaintiffs' broad reading of Family Law Sections 5-705 and 5-705.1 would impose a civil tort duty on any member of the general public who passes through Maryland possessing a suspicion of child abuse and does not report it to Maryland authorities.  Plaintiffs cannot offer any authority to support such a broad reading of those statutes, and Maryland itself rejects it.

Fourth, Family Law Section 5-705.1—one of the two sections cited by Plaintiffs, which addresses the reporting of suspected child abuse that occurred *outside* of Maryland to *non-Maryland* residents (i.e., the vast majority of abuse alleged in this case)—was not enacted until 2003 and cannot possibly have retroactively imposed a tort duty on McMahon.  As such, *even if*

---

[9]*Available at* https://dhs.maryland.gov/child-protective-services/reporting-suspected-child-abuse-or-neglect/mandated-reporters/ (last accessed June 9, 2025) ("You are a mandated reporter if you are one of the following: - Health Practitioner - Educator - Human Service Worker - Police Officer").

these statutes could serve as the basis for a legal duty, it would only be a duty on McMahon to report specific instances of suspected child abuse that he had reason to believe occurred in Maryland or to Maryland citizens. Once again, no Plaintiff puts forth a single allegation that McMahon was aware of any such instance of abuse that could have triggered a duty to report.

Finally, as already detailed, the FAC fails to plead sufficient facts to plausibly allege that McMahon, or any Defendant, had knowledge—constructive or otherwise—that Phillips or Patterson posed a danger in advance of the alleged abuse suffered by Plaintiffs. *See supra*, § II(A)(4). As such, McMahon could not possibly have had the requisite "reason to believe" abuse had occurred that would in turn invoke the reporting requirement.

### B. Plaintiffs Fail to State a Claim for Negligent Hiring, Supervision, Training, and Retention Against McMahon

Plaintiffs also fail to state a claim against McMahon for negligent hiring, supervision, training, and retention. "[A] plaintiff bringing a negligent hiring, retention, supervision, or training claim must establish: '(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, [training, or supervising the employee] . . . as the approximate cause of the plaintiff's injuries.'" *Minnick v Southwest Airline Co.*, 22-cv-3084 (JMC), 2024 WL 4252988, at *2 (D. Md. Sept. 20, 2024) (citation omitted).

First, the duty to hire, supervise, train, and retain employees is yet another nondelegable duty of the employer that the FAC fails to establish that WWE owed to the Plaintiffs, let alone McMahon. *See supra*, § II(A)(1); *Athas*, 476 A.2d at 713 ("Among the nondelegable duties which the employer owed his employees was . . . the duty to select and retain competent employees." (citations omitted)); *Bowman*, 2021 WL 5827776, at *4 ("Examples of a corporate officer's

inaction, which do not subject the officer to liability under the 'participation' doctrine, include: . . . failing to properly train, instruct, or hire employees." (citation omitted)).

Second, even without the non-delegation doctrine, the claim must be dismissed against McMahon because Plaintiffs fail to allege—nor could they—the first element of the claim: "the existence of an employment relationship" with McMahon personally. *Minnick*, 2024 WL 4252988, at *2; *see supra*, § II(A)(1).

Third, Plaintiffs also fail to allege the element requiring the employer's actual or constructive knowledge of the employee's incompetence, further dooming their claim. As with any negligence claim, "there is no duty to be omniscient; the duty is to exercise care based on the facts that the employer knows or should know." *Minnick*, 2024 WL 4252988, at *4. For the same reasons already detailed, *see supra*, § II(A)(4), Plaintiffs fail to allege facts sufficient to establish that McMahon knew or should have known of Phillips's or Patterson's alleged proclivities in advance of the Plaintiffs' alleged abuse.

Finally, the Court should dismiss the FAC because Plaintiffs have not adequately specified what underlying common law tort cause of action against Phillips, Patterson, and/or Garvin they intend to prove caused their injuries. The fourth element of Plaintiffs' claim requires that the "employee's act or omission caus[ed] the plaintiff's injuries." *Minnick*, 2024 WL 4252988, at *2. Specifically, each Plaintiff must "establish that [their] injury was caused by the tortious conduct of [the negligently hired, trained, supervised, or retained employee]." *Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F. Supp. 720, 751 (D. Md. 1996). As Maryland courts have long held, that predicate tortious conduct must "constitute a common law violation." *Nammack v. Hampstead Pre-Owned*, No. 19-cv-1798 (DKC), 2020 WL 1033589, at *6 (D. Md. Mar. 3, 2020) (citing *Bryant*, 923 F. Supp. at 751).

Here, Plaintiffs have alleged actions by Phillips that could conceivably support various common law torts against him—for example, battery, assault, intentional infliction of emotion distress, or negligent infliction of emotional distress. But Plaintiffs have not specified which of those torts they are claiming can be proven, nor which instance(s) of abuse they intend to base them on, or even which alleged perpetrator committed them. All eight Plaintiffs allege equally as part of a single cause of action that Phillips, Patterson, and Garvin were negligently hired, supervised, trained, and retained, FAC ¶¶ 377-93, yet only a single Plaintiff claims a single incident of abuse by Patterson, FAC ¶ 266, and not one raises such an allegation against Garvin. Furthermore, each Plaintiff alleges some details about a select number of interactions with Phillips but otherwise packs a truckload of extremely damning allegations into a single circumscribed allegation at the end of their respective portions of the FAC. *See*, *e.g.*, FAC ¶ 215 (alleging that John Doe 3 attended "at least" a dozen wrestling shows with Phillips from "around" 1983-1987 in "at least" the following states: Maryland, Pennsylvania, "and other states," and that he was abused by Phillips "in all those states multiple times"); ¶ 188 (alleging that Phillips abused John Doe 1 "approximately seven or eight times in a 12-18 month period"). Given the vague, conflated allegations, it is unclear which tort(s) Plaintiffs allege occurred on each of these occasions, which allegations in their FAC they contend support the elements of that tort, and on what basis Garvin has been included at all.

This lack of the requisite pleading formality and basic detail has left Defendants without the ability to challenge the legal sufficiency of this element of Plaintiffs' claims, and without the ability to properly investigate and prepare a defense. Consistent with cases where the perpetrator himself is also a named defendant (which is the typical scenario), the Court should dismiss the

29

negligent hiring, training, supervision, and retention claim for this independent reason.[10] *See*, *e.g.*, *Parker v. Ciena Corp.*, No. 14-cv-4036 (WDQ), 2016 WL 153035, at *7 (D. Md. Jan. 12, 2016), *aff'd*, 787 F. App'x 817 (4th Cir. 2019) (holding that where "the complaint premises [the employer's] liability [for negligent supervision] on [the employee's] intentional infliction of emotional distress," but plaintiff "failed to state a claim for intentional infliction of emotional distress" against the employee, "[plaintiff's] negligence claim against [the employer] must also fail"); *Wimbush v. Kaiser Found. Health Plan of the Mid Atl. States, Inc.*, No. 14-cv- 525 (TDC), 2015 WL 2090654, at *11 (D. Md. May 4, 2015) (holding that "the common law tort claims asserted by [plaintiff] . . . are to be dismissed for failure to state a claim," and therefore "because [plaintiff] does not have a viable claim of tortious conduct by a Kaiser employee, the claims relating to negligent hiring, supervision, or retention are not viable"); *Peoples v. Marjack Co.*, No. 08-cv-178 (AW), 2010 WL 889567, at *9 (D. Md. Mar. 5, 2010) (holding that "[b]ecause the only claim remaining in the case is the Title VII sexual harassment claim," which is not a common law tort, "as a matter of law, Plaintiff cannot bring her claims for negligence, negligent hiring, training, and retention").

## CONCLUSION

For the foregoing reasons, Defendant Vincent K. McMahon respectfully requests that the Court grant his Motion and dismiss the FAC with prejudice.

---

[10] Even if the Court finds that Plaintiffs have plausibly pled a claim against McMahon, Plaintiffs' action for negligence should be dismissed as duplicative of their action for negligent hiring, training, supervision, and retention.  Under Maryland law, the two claims are "functionally the same," and dismissal of the negligence claim as duplicative is "especially" warranted "when the claims are rooted in the same factual allegations and theory of liability," as is true here.  *Pizarro Orta v. Creekstone Landscaping & Excavating, LLC*, 2024 WL 3555093, at *4 (D. Md. July 25, 2024) (cleaned up).

Date: June 11, 2025                         Respectfully Submitted,

                                            **AKIN GUMP STRAUSS HAUER &
                                            FELD LLP**

                                    By:     _/s/ Jessica T. Rosenberg_
                                            Jessica T. Rosenberg
                                               (admitted *pro hac vice*)
                                            Ilana Roberts
                                               (admitted *pro hac vice*)
                                            One Bryant Park
                                            New York, NY  10036
                                            Telephone: (212) 872-1000
                                            Facsimile: (212) 872-1002
                                            jrosenberg@akingump.com
                                            iroberts@akingump.com

                                            **KRAMON & GRAHAM, P.A.**
                                            John A. Bourgeois (Bar No. 11834)
                                            Christopher C. Jeffries (Bar No. 28527)
                                            750 East Pratt St., Suite 1100
                                            Baltimore, MD 21202
                                            Telephone: (410) 347-7408
                                            Facsimile: (410) 361-8204
                                            jbourgeois@kg-law.com
                                            cjeffries@kg-law.com

**<u>CERTIFICATE OF SERVICE</u>**

       I certify that on June 11, 2025, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.


                                                */s/ Jessica T. Rosenberg*
                                                Jessica T. Rosenberg