## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| John Doe 1, et al., <br><br> Plaintiffs, <br><br> v. <br><br> World Wrestling Entertainment, LLC, et al., <br><br> Defendants. | Civil Action No. 1:24-cv-3487-JKB |

## DEFENDANTS WORLD WRESTLING ENTERTAINMENT, LLC AND TKO GROUP HOLDINGS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CORRECTED FIRST AMENDED COMPLAINT, WITH REQUEST FOR HEARING

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 3

PROCEDURAL HISTORY .................................................................................................. 6

LEGAL STANDARDS ......................................................................................................... 6

ARGUMENT ......................................................................................................................... 7

I.      The Claims Against TKO Should Be Dismissed Pursuant to Rules 12(b)(2) and
        12(b)(6) for Failure to Plausibly Plead a Successor Liability Theory. ............................ 7

II.     The Claims Against TKO and WWE Should Be Dismissed Pursuant to Rule
        12(b)(2) for Lack of Personal Jurisdiction. ..................................................................... 9

        A.      TKO and WWE Are Not Subject to General Jurisdiction in Maryland. .............. 11

        B.      TKO and WWE Are Not Subject to Specific Jurisdiction in Maryland for
                the Claims Alleged in the Amended Complaint. .................................................... 12

                1.      Maryland's Long-Arm Statute Does Not Authorize Jurisdiction. ............ 13

                        (a)     Sections 6-103(b)(1) and (2) Do Not Authorize
                                Jurisdiction. .................................................................................. 13

                        (b)     Sections 6-103(b)(3) and (4) Do Not Authorize
                                Jurisdiction. .................................................................................. 16

                        (c)     Section 6-103(b)(5) Does Not Authorize Jurisdiction. ................ 18

                2.      The Exercise of Specific Jurisdiction Over TKO or WWE Would
                        Not Comport with Due Process. .............................................................. 18

                        (a)     Plaintiffs Fail to Show TKO or WWE Purposefully Availed
                                Itself of the Privilege of Conducting Activities in
                                Maryland. ...................................................................................... 19

                        (b)     Plaintiffs Fail to Show Their Claims Arise Out of or Relate
                                to TKO's or WWE's Activities Directed at the State. ................. 20

                        (c)     Exercising Jurisdiction Over TKO or WWE Would Not Be
                                Constitutionally Reasonable. ........................................................ 22

III.  The Claims Against TKO and WWE Should Be Dismissed Pursuant to Rule 12(b)(6) for Failure to State a Claim.................................................................. 22

    A.  Plaintiffs Fail to Plead a Duty of Care That Defendants Owed Them................. 23

        1.  Plaintiffs Fail to Plead That the Alleged Harm by Phillips, Garvin, and/or Patterson Was Reasonably Foreseeable.......................................... 24

        2.  Plaintiffs Fails to Plead a Special Relationship. ...................................... 27

    B.  Any Alleged Duty Did Not Extend to Alleged Out-of-Work Conduct. .............. 29

    C.  Plaintiffs Fail to Plead Breach or Proximate Causation......................................... 29

    D.  Plaintiffs' General Negligence Claim Should Be Dismissed as Duplicative. ........................................................................................................... 30

CONCLUSION........................................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*68th Street Site Work Grp.* v. *Airgas, Inc.*,
  2021 WL 4255030 (D. Md. Sept. 16, 2021) ........................................................7, 8

*AMA Sys., LLC* v. *3B Tech, Inc.*,
  2023 WL 7410854 (D. Md. Nov. 9, 2023) .........................................................7, 9

*Aphena Pharma Sols.-Maryland LLC* v. *BioZone Labs., Inc.*,
  912 F. Supp. 2d 309 (D. Md. 2012) ...........................................................14, 16, 17

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009) .......................................................................................7

*Barclay* v. *Briscoe*,
  47 A.3d 560 (Md. 2012) .................................................................................24

*Beyond Sys., Inc.* v. *Kennedy W. Univ.*,
  2006 WL 1554847 (D. Md. May 31, 2006) ...........................................................14

*Bristol-Myers Squibb Co.* v. *Superior Court*,
  582 U.S. 255 (2017) ..............................................................................10, 11, 21

*Burger King Corp.* v. *Rudzewicz*,
  471 U.S. 462 (1985) ...................................................................................19, 22

*Carefirst of Md., Inc.* v. *Carefirst Pregnancy Ctrs., Inc.*,
  334 F.3d 390 (4th Cir. 2003) ...................................................................10, 12, 20

*Coleman* v. *KIPP DC Supporting Corporation*,
  2019 WL 1126357 (D. Md. Mar. 12, 2019) ...........................................................21

*Daimler AG* v. *Bauman*,
  571 U.S. 117 (2014) ...................................................................................11, 12

*DeBellis* v. *Woodit*,
  728 F. Supp. 3d 330 (D. Md. 2024*)* .....................................................................19

*Diamond* v. *Experian Info. Sol., Inc.*,
  2024 WL 3495795 (D. Md. July 22, 2024) ...........................................................19

*Doe* v. *Alsaud*,
  12 F. Supp. 3d 674 (S.D.N.Y. 2014) ...............................................................24, 29

*Doe* v. *Archdiocese of Philadelphia*,
  2020 WL 3410917 (D.N.J. June 22, 2020) ............................................................20

*Doe* v. *Pharmacia & Upjohn Co.*,
  879 A.2d 1088 (Md. 2005) ..................................................................................24

*Dupuis* v. *Roman Cath. Bishop of Portland*,
  331 A.3d 294 (Me. 2025)......................................................................................26

*E. Shore Mkts., Inc.* v. *J.D. Assocs. Ltd. P'ship*,
  213 F.3d 175 (4th Cir. 2000) .................................................................................7

*Edwardo* v. *Roman Catholic Bishop of Providence*,
  579 F. Supp. 3d 456 (S.D.N.Y. 2022)............................................................14, 17

*Edwards* v. *Schwartz*,
  378 F. Supp. 3d 468 (W.D. Va. 2019) ...............................................................11

*Ellicott Mach. Corp.* v. *John Holland Party Ltd.*,
  995 F.2d 474 (4th Cir. 1993) ...............................................................................15

*Equal Rights Ctr.* v. *Equity Residential*,
  2016 WL 1258418 (D. Md. Mar. 31, 2016)............................................................9

*ESAB Grp., Inc.* v. *Centricut, Inc.*,
  126 F.3d 617 (4th Cir. 1997) ...............................................................................10

*Estate of Green* v. *City of Annapolis*,
  696 F. Supp. 3d 130 (D. Md. 2023)......................................................................23

*Fidrych* v. *Marriott Int'l, Inc.*,
  952 F.3d 124 (4th Cir. 2020) ...............................................................11, 12, 18

*Fletcher* v. *Md. Transit Admin.*,
  741 F. App'x 146 (4th Cir. 2018) ...........................................................23, 24, 29

*Hartford Mut. Ins. Co.* v. *Hoverzon LLC*,
  2021 WL 1390317 (D. Md. Apr. 13, 2021) .........................................................10

*Helicopteros Nacionales de Colombia, S.A.* v. *Hall*,
  466 U.S. 408 (1984)..............................................................................................21

*McLaughlin* v. *Copeland*,
  435 F. Supp. 513 (D. Md. 1977) ..........................................................................18

*Mitchell* v. *Rite Aid of Maryland, Inc.*,
  290 A.3d 1125 (Md. App. Ct. 2023)...............................................................24, 30

*Molock* v. *Dorchester Cnty. Fam. YMCA, Inc.*,
   779 A.2d 963 (Md. Ct. Spec. App. 2001) ............................................................27

*Nat'l Fire & Marine Ins. Co.* v. *Advanced Lighting Techs.*,
   2024 WL 3377869 (D. Md. July 11, 2024).............................................................9

*New River Elec. Corp.* v. *Occupational Safety & Health Rev. Comm'n*,
   25 F.4th 213 (4th Cir. 2022) ..............................................................................26

*New Wellington Fin. Corp.* v. *Flagship Resort Dev. Cor.*,
   416 F.3d 290 (4th Cir. 2005) ..........................................................................6, 9

*Pendleton* v. *State*,
   921 A.2d 196 (Md. 2007) ...................................................................................30

*Perdue Foods LLC* v. *BRF S.A.*,
   814 F.3d 185 (4th Cir. 2016) ........................................................................18, 19

*Phillips* v. *British Airways*,
   743 F. Supp. 3d 702 (D. Md. 2024)............................................................. *passim*

*Pizarro Orta* v. *Creekstone Landscaping & Excavating, LLC*,
   2024 WL 3555093 (D. Md. July 25, 2024).......................................................23, 30

*Rachel-Smith* v. *FTData, Inc.*,
   202 F. Supp. 2d 400 (D. Md. 2002).................................................................14, 17

*Remsberg* v. *Montgomery*,
   831 A.2d 18 (Md. 2003) .....................................................................................24

*Roman Cath. Archbishop of Washington* v. *Doe*,
   330 A.3d 1069 (Md. 2025) ................................................................................2, 6

*Sable* v. *Baltimore Cnty. Gov't*,
   2021 WL 4772921 (D. Md. Oct. 12, 2021) ..........................................................28

*Maryland* v. *Sewell*,
   205 A.3d 966 (Md. 2019) ...................................................................................28

*Simon* v. *Dick's Sporting Goods, Inc.*,
   2022 WL 16722400 (D. Md. Nov. 4, 2022) .........................................................23

*Tobacco Tech., Inc.* v. *Taiga Int'l N.V.*,
   626 F. Supp. 2d 537 (D. Md. 2009)................................................................26, 27

*Troy Brave LLC* v. *Grantsville Truck & Trailer, LLC*,
   692 F. Supp. 3d 516 (D. Md. 2023) ..................................................................7, 20

*Wallace* v. *Yamaha Motors Corp, U.S.A.*,
  2022 WL 61430 (4th Cir. Jan. 6, 2022) ...................................................21

*Warr* v. *JMGM Grp., LLC*,
  70 A.3d 347 (Md. 2013) .......................................................................24

*Winffel* v. *Westfield Prop. Mgmt., LLC*,
  2022 WL 1591405 (D. Md. May 19, 2022) ..............................................29

**Statutes**

28 U.S.C. § 1332 ..........................................................................................6

28 U.S.C. § 1441 ..........................................................................................6

28 U.S.C. § 1446 ..........................................................................................6

Maryland Child Victims Act of 2023 ...................................2, 6, 24, 25, 26

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b) ...................................*passim*

Md. Code Ann., Cts. & Jud. Proc. § 5-117(a)..............................................25

Md. Code Ann., Fam. Law § 5-705(a)(1) ...................................................28

**Other Authorities**

Fed. R. Civ. P. 4 ........................................................................................10

Fed. R. Civ. P. 12 ..............................................................................*passim*

Fed. R. Civ. P. 21 ........................................................................................1

Defendants World Wrestling Entertainment, LLC ("WWE") and TKO Group Holdings, Inc. ("TKO") respectfully move to dismiss Plaintiffs' Corrected First Amended Complaint (ECF No. 55) ("AC") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs—citizens of Massachusetts, Pennsylvania, Florida, Mississippi, and Nevada—bring this action against four Defendants—none of whom are Maryland residents—asserting purported negligence claims arising from Defendants' alleged acts or omissions in Connecticut that allegedly caused Plaintiffs to be injured in multiple states when they were minors, primarily during the 1970s and 1980s. Specifically, Plaintiffs allege they were invited by a now-deceased ring announcer named Mel Phillips to attend, and asked to assist with errands for, wrestling shows, some of which occurred in Maryland. Each Plaintiff asserts that Phillips sexually abused them in connection with some of these events, and some Plaintiffs further allege that they were sexually abused or harassed by one of two other former, now-deceased WWE workers, Terry Garvin and Pat Patterson.[1] Plaintiffs claim Defendants should be held liable to them based on Defendants' allegedly negligent hiring, training, and retention of Phillips, Garvin, and Patterson.

In their prior motion to dismiss, WWE and TKO demonstrated that Plaintiffs John Does 1–5s' claims must be dismissed for a lack of personal jurisdiction and failure to state a negligence claim. In response to that motion, Plaintiffs filed an Amended Complaint, supplementing John Does 1–5s' allegations concerning Phillips and the WWE, adding new allegations by John Doe 3 concerning Garvin, and adding three new Plaintiffs (John Does 6–8), each of whom alleges abuse by Phillips and one of whom (John Doe 6) alleges abuse by Patterson. But Plaintiffs' additional

---

[1] In this motion, Defendants focus on cross-cutting arguments to dismiss, all of which are applicable to all individual Plaintiffs. However, Defendants note that Plaintiffs' claims are also misjoined—individual Plaintiffs raise very different alleged fact patterns of abuse, over different periods of time, and naming three different alleged abusers. Defendants reserve all rights to move to sever these cases under FRCP 21 and other applicable law.

allegations do not cure the prior defects that Defendants identified and, instead, further highlight Plaintiffs' inability to overcome such jurisdictional and pleading deficiencies.

In particular, Plaintiffs appear to have selected Maryland as their forum of choice in an attempt to benefit from the recently enacted Maryland Child Victims Act of 2023 ("CVA")—a statute aimed at addressing systemic abuse suffered by Maryland residents as minors arising from the conduct of priests and the Catholic Church in Maryland. *See Roman Cath. Archbishop of Washington* v. *Doe*, 330 A.3d 1069, 1098–99 (Md. 2025). But Plaintiffs' claims do not belong here. No Plaintiff or Defendant resides in Maryland and none are alleged to have resided in Maryland at the time of the alleged conduct. None of the relevant alleged acts or omissions by Defendants are alleged to have occurred in Maryland. And the vast majority of the alleged harm to Plaintiffs is alleged to have occurred outside of Maryland. As explained below, the Amended Complaint should be dismissed in its entirety against TKO and WWE for three main reasons:

*First*, Plaintiffs fail to plead that TKO is liable under successor liability—a necessary predicate since the alleged conduct at issue occurred when Phillips, Garvin, and Patterson were allegedly employed by a now-nonexistent entity, World Wrestling Federation ("WWF"), in or around the 1980s. Where claims are based on conduct by a predecessor entity, the complaint must plead both (i) an exception to the general rule of successor non-liability and (ii) facts supporting the invocation of that exception. The Amended Complaint pleads neither as to TKO.

*Second*, neither TKO nor WWE is subject to personal jurisdiction in Maryland as to the claims asserted in the Amended Complaint. Plaintiffs do not allege that WWF was incorporated or maintained a principal place of business in Maryland, or that it was otherwise "at home" in Maryland. Nor could they. Likewise, neither TKO nor WWE is incorporated or has its principal place of business in Maryland and, by extension, neither is "at home" in Maryland. Additionally,

the Court's exercise of jurisdiction over TKO or WWE is not authorized by Maryland's long-arm statute and would violate due process because Plaintiffs have failed to show that WWF (or TKO or WWE) purposefully established minimum contacts in Maryland such that either TKO or WWE should reasonably anticipate being haled into court in Maryland for the claims asserted.

*Finally*, the Amended Complaint should be dismissed for failure to plead a negligence claim. No facts are alleged to show a legally cognizable duty. To the contrary, Plaintiffs fail to plead WWE executives knew or should have learned of sexual abuse by Phillips, Garvin, or Patterson *prior to* the alleged abuse of Plaintiffs. Instead, they rely almost entirely on allegations that Defendants should have known of the claimed sexual abuse based on alleged knowledge of generalized "peculiar" behavior in the 1980s, or else based on alleged sexual abuse postdating Phillips's (or Garvin's or Patterson's) actions vis-à-vis Plaintiffs or that concern other individuals.

## **FACTUAL BACKGROUND**[2]

Defendant WWE is an integrated media and entertainment company incorporated in Delaware and headquartered in Connecticut. *See* AC ¶¶ 319–20. WWE is known for promoting successful wrestlers and storylines, and for featuring wrestling shows. *Id.* ¶ 320. WWE is the product of a series of corporate transactions over the last few decades involving multiple entities. *See, e.g.*, *id.* ¶¶ 1 n.1, 321–23. Defendant TKO is a premium sports and entertainment company incorporated in Delaware and headquartered in New York. *Id.* ¶¶ 324–25. In 2023, TKO was formed to be the parent company of WWE. *Id.* ¶ 325. Defendants Vincent McMahon and Linda McMahon, citizens of Connecticut, are alleged cofounders of WWE. *Id.* ¶¶ 317–18, 321, 339.

Plaintiffs are citizens of Massachusetts, Pennsylvania, Florida, Mississippi, and Nevada who each allege they were sexually abused as minors primarily in the 1970s and 1980s by Phillips,

---

[2]  This background is based on the allegations in the Amended Complaint.

who ceased working for WWE's alleged predecessor entity in 1992 and died in 2012. *Id.* ¶¶ 6, 24 n.8, 60. Plaintiffs John Does 3 and 6 also allege harm as a result of Defendants hiring, supervising, and retaining Garvin and Patterson; in particular, John Doe 3 alleges harassment by Garvin and John Doe 6 alleges abuse by Patterson. *Id.* 211, 265–66. Plaintiffs do not allege they were ever employed by TKO, WWE, or any predecessor entities. Instead, they allege Phillips invited them to attend wrestling shows in and outside their states of residence, and asked them to assist with errands and other tasks. *Id.* ¶¶ 1, 3, 97, 196, 361. Specifically:

- John Doe 1, a citizen of Massachusetts, alleges he met Phillips in 1981 or 1982 and was sexually abused seven or eight times over a 12- to 18-month period in at least Massachusetts and Pennsylvania. *Id.* ¶¶ 173–83, 303. John Doe 1 also alleges that Phillips invited him on a trip to Maryland to see a wrestling show and that, after the show, Phillips took him and others to a hotel in an unspecified state and abused them. *Id.* ¶¶ 184–85.

- John Doe 2, a citizen of Massachusetts, alleges he attended unspecified "wrestling shows" with Phillips from 1984 to 1989 in at least Maryland, Pennsylvania, Rhode Island, Massachusetts, Connecticut, and New York. *Id.* ¶¶ 192–202, 304. While John Doe 2 alleges he was abused "in all those states multiple times," *id.* ¶ 201, he does not allege any specific allegations regarding any alleged events in Maryland.

- John Doe 3, a citizen of Pennsylvania, alleges he met Phillips in the mid-1980s. *Id.* ¶¶ 206, 305. While John Doe 3 alleges acts of abuse in Pennsylvania, *id.* ¶ 208, and that "Phillips sexually abused him in similar ways at most, if not all of the subsequent wrestling shows he attended with Phillips," *id.* ¶ 209, John Doe 3 does not plead abuse occurred in Maryland (or that it occurred after traveling to Maryland for a WWF event). As to Garvin, John Doe 3 alleges he once put his hands on John Doe 3's shoulders and commented about "do[ing] something" for Garvin, which John Doe 3 interpreted as sexually suggestive. *Id.* ¶ 211.

- John Doe 4, a citizen of Florida and former resident of Pennsylvania, alleges Phillips abused him after meeting in Pennsylvania in 1983 or 1984. *Id.* ¶¶ 219–220, 306. John Doe 4 further alleges that Phillips brought him to a "WWE Event" in Landover, Maryland, and sexually abused him after the event in a motel in an unspecified state. *Id.* ¶ 222.

- John Doe 5, a citizen of Pennsylvania, alleges he met Phillips in 1983 or 1984 and that Phillips took him to shows in New York and Philadelphia. *Id.* ¶¶ 238–41, 307. John Doe 5 further alleges that Phillips brought John Doe 5 to a "WWE Event" in Landover, Maryland, and sexually abused him in a motel in an unspecified state. *Id.* ¶¶ 244–45.

- John Doe 6, a citizen of Mississippi, alleges he met Phillips in 1988 at a WWE event in Portland, Maine, and that Phillips called John Doe 6 when WWE had shows in Maine. *Id.* ¶¶ 251–54, 308. John Doe 6 further alleges that between 1988 and 1992, he travelled with

Phillips to approximately ten WWE events in Maryland, New Jersey, Massachusetts, New Hampshire, Pennsylvania, and New York and was sexually abused by Phillips at those events and at hotels. *Id.* ¶¶ 258–63. John Doe 6 alleges two acts of abuse by Phillips and Patterson in Maryland in a hotel room after a WWE event in 1989. *Id.* ¶¶ 264–66.

- John Doe 7, a citizen of Pennsylvania, alleges he met Phillips in 1974 in Philadelphia, *id.* ¶¶ 274, 309, and traveled with Phillips to WWE shows in Maine, Massachusetts, New York, Connecticut, and Maryland. *Id.* ¶ 285. John Doe 7 does not allege acts of abuse at WWE events but claims he was abused in hotel rooms, at the Philadelphia Police Athletic League, and at a church in West Philadelphia. *Id.* ¶¶ 279–80, 287–88.

- John Doe 8, a citizen of Nevada, alleges he met Phillips in 1982 in Baltimore, Maryland while working concessions at the Baltimore Civic Center. *Id.* ¶¶ 292–93, 310. John Doe 8 alleges he was sexually abused by Phillips in a hotel room before a WWE show in Baltimore on or around April 10, 1982. *Id.* ¶¶ 296–97.

Plaintiffs allege that Defendants knew or should have known of Phillips's, Garvin's, and Patterson's conduct, but failed to warn or protect Plaintiffs, thus supposedly proximately causing Plaintiffs' injuries. *E.g.*, *id.* ¶¶ 24 & n.8, 90, 368, 371–75. In particular, Plaintiffs claim that:

- In 1982 or 1983, at a wrestling show in Allentown, Pennsylvania, a wrestler observed Phillips in a car performing oral sex on a minor. *Id.* ¶¶ 40, 42. Although Plaintiffs allege a security guard later brought the minor to Vincent McMahon and his father, *id.*, Plaintiffs do not allege what, if anything, the McMahons were told about the alleged incident.

- In 1988, the McMahons fired Phillips because his relationship with kids "seemed peculiar and unnatural" and then rehired Phillips a few weeks later "with the caveat that Phillips steer clear from kids." *Id.* ¶ 45; *see id.* ¶¶ 14, 44–45, 51, 383.

- Vincent McMahon had "eyes and ears everywhere" and that the McMahons "clearly knew what was going on." *Id.* ¶¶ 11, 37, 73.

- Vincent McMahon "knew that Phillips, Garvin, and Patterson were transporting underaged boys around the country, including in Maryland, to work on WWE's ring crew." *Id.* ¶ 55.

The Amended Complaint also includes "notice" allegations postdating the alleged abuse and concerning (i) alleged knowledge of lower-level WWF employees and non-employees regarding Phillips, Garvin, or Patterson; (ii) alleged knowledge of Garvin or Patterson regarding Phillips's and their own abuse; and (iii) alleged misconduct unrelated to Phillips, Garvin, or Patterson. *See generally id.* ¶¶ 7–167. The Amended Complaint also alleges that Vincent

McMahon, Linda McMahon, lower-level WWF employees, and non-employees were sometimes present at events that Plaintiffs and other underaged boys attended, but does not allege they observed the abuse. *E.g.*, *id.* ¶¶ 53, 197–99, 212, 227–29, 267, 277, 282–83, 300. But those allegations fail to establish that WWF was on notice of any alleged abuse because they fail to plead that anyone whose knowledge can be imputed to WWF knew, or should have known, about Phillips's, Garvin's, or Patterson's alleged sexual abuse of minors.

## PROCEDURAL HISTORY

Plaintiffs John Does 1–5 commenced this litigation in the Circuit Court for Baltimore County, Maryland, on October 23, 2024. ECF No. 15. On December 2, 2024, Defendants removed the case pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. ECF No. 1 at 2. On December 4, 2024, this Court issued a stay pending a decision from the Maryland Supreme Court considering the constitutionality of the CVA in three unrelated cases. ECF No. 13. On February 3, 2025, the Maryland Supreme Court found the CVA to be constitutional as applied to the challenged cases. *Archbishop of Washington*, 330 A.3d at 1106. On February 19, this Court lifted the stay and ordered that Defendants respond to Plaintiffs' Complaint by April 7, 2025, ECF No. 31, on which date all Defendants filed motions to dismiss, ECF Nos. 48–50. In lieu of opposing Defendants' motions, Plaintiffs filed a First Amended Complaint, which they corrected on May 6, 2025. ECF No. 55. On May 9, 2025, the Court denied Defendants' motions to dismiss as moot. ECF No. 56.

## LEGAL STANDARDS

When a defendant moves to dismiss for lack of personal jurisdiction under FRCP 12(b)(2), "the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. Corp.* v. *Flagship Resort Dev. Cor.*, 416 F.3d 290, 294 (4th Cir. 2005). Where jurisdiction is assessed based "only on motion papers, supporting legal memoranda and the relevant allegations in the

complaint," plaintiffs must "make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.* That requires pleading sufficient facts that, if true, would support the court's exercise of its power over the defendant. *Phillips* v. *British Airways*, 743 F. Supp. 3d 702, 707 (D. Md. 2024). Speculative and conclusory assertions regarding a defendant's contacts with a forum state are insufficient. *See Troy Brave LLC* v. *Grantsville Truck & Trailer, LLC*, 692 F. Supp. 3d 516, 521 (D. Md. 2023).

To withstand an FRCP 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). Claims are facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although well-pleaded facts are accepted as true, courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc.* v. *J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## ARGUMENT

### I.    The Claims Against TKO Should Be Dismissed Pursuant to Rules 12(b)(2) and 12(b)(6) for Failure to Plausibly Plead a Successor Liability Theory.

Where, as here, the plaintiffs' claims "rest[] entirely on the actions of companies for which the plaintiff[s] claim[] the defendants are liable as successors," the "jurisdictional issues are inextricably intertwined . . . with the adequacy of the factual allegations of successor liability." *AMA Sys., LLC* v. *3B Tech, Inc.*, 2023 WL 7410854, at *3 (D. Md. Nov. 9, 2023) (quoting *68th Street Site Work Grp.* v. *Airgas, Inc.*, 2021 WL 4255030, at *8 & n.4 (D. Md. Sept. 16, 2021)). So, for this Court to have personal jurisdiction over TKO, Plaintiffs "must first have adequately pleaded a theory of successor liability." *Id.* (quoting *68th Street*, 2021 WL 4255030, at *8). "[A]

corporation that acquires assets of another does not also acquire its liabilities, except [where]: (1) the successor expressly or impliedly agrees to assume the liabilities of the predecessor; (2) the transaction may be considered a de facto merger; (3) the successor may be considered a 'mere continuation' of the predecessor; or (4) the transaction is fraudulent." *68th Street*, 2021 WL 4255030, at \*9 (citing *PCS Nitrogen Inc.* v. *Ashley II of Charleston LLC*, 714 F.3d 161, 173 (4th Cir. 2013)). To plead successor liability, a plaintiff must (i) "identify which of the four exceptions [he] is invoking," and (ii) plead "facts supporting the invocation of the chosen exception." *68th Street*, 2021 WL 4255030, at \*9. Plaintiffs have not done so. Instead, they allege the following:

- "Defendant TKO Group Holdings, Inc. . . . now owns and operates the WWE." AC ¶ 34; *see also id.* ¶ 25 (asserting TKO "acqui[red]" WWE).

- TKO "was formed for the purpose of facilitating the business combination of the UFC and WWE businesses." *Id.* ¶ 324.

- "On September 12, 2023, a transaction completed between Endeavor Group Holdings and World Wrestling Entertainment, Inc., resulted in a merger between the WWE and Ultimate Fighting Championship ('UFC') promotions and the formation of their new parent company, TKO." *Id.* ¶ 322; *see also id.* ¶ 325.

- "WWE and TKO are the same entity and/or a successor entity to prior corporate incarnations of the business that existed at the time the Plaintiffs were injured." *Id.* ¶ 341.

- "As successor entities, WWE and TKO acquired any and all assets and liabilities for the predecessor entities, and therefore, are liable for the conduct of the principals, agents, and employees that occurred in the course and scope of their employment and/or in furtherance of the business and brand." *Id.* ¶ 342.

Merely pleading a "run-of-the-mill" business transaction and alleging in conclusory terms that a defendant is a "successor entity" responsible for all liabilities of its predecessor is not sufficient. *68th Street*, 2021 WL 4255030, at \*9–11 (collecting cases). Moreover, the Amended Complaint does not plead any exception to that rule as to TKO: it does not allege that (i) TKO expressly or impliedly agreed to assume the liabilities of its predecessor (or that its predecessor(s) did the same) or (ii) that any of the alleged or implied transactions were fraudulent (they were not).

The Amended Complaint is further silent as to each of the considerations relevant to the de facto merger exception (i.e., continuity of the enterprise, continuity of ownership, prompt cessation of the seller corporations' operations, and assumption by the purchaser of obligations necessary for the uninterrupted continuation of the seller's business). *Equal Rights Ctr.* v. *Equity Residential*, 2016 WL 1258418, at *13 (D. Md. Mar. 31, 2016).

Finally, Plaintiffs also fail to allege the "mere continuation" exception, which "focus[es] . . . on whether only one corporation remains in existence after the sale of assets and on the continuation of management and ownership between the predecessor and successor." *Nat'l Fire & Marine Ins. Co.* v. *Advanced Lighting Techs.*, 2024 WL 3377869, at *5 (D. Md. July 11, 2024). In *National Fire*, the court found the mere continuation exception had not been pleaded where the plaintiff "offer[ed] no facts . . . concerning whether [the predecessor entity] continued to exist after the sale of assets to [the successor entity], the extent to which the two entities were owned and managed by the same persons following the sale, the adequacy of consideration [that the predecessor entity] received for the sale, or the purpose of the sale." 2024 WL 3377869, at *6. The same is true here. Plaintiffs' allegation that TKO "was formed for the purpose of facilitating the business combination of UFC and WWE businesses" and that TKO owns WWE, AC ¶¶ 34, 324–25, "undercut[s]" the mere continuation exception because "the allegation[] suggest[s] that [WWE] continued to exist after the alleged [transaction]," *AMA*, 2023 WL 7410854, at *6.

## II.    The Claims Against TKO and WWE Should Be Dismissed Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction.

Even if Plaintiffs had adequately pleaded successor liability as to TKO, the Amended Complaint should also be dismissed as to both TKO and WWE because each Plaintiff fails to meet his burden to make a prima facie showing that this Court has personal jurisdiction over either entity as to each of his claims based on WWF's alleged contacts with the forum. *See New Wellington*,

416 F.3d at 294; *see also Bristol-Myers Squibb Co.* v. *Superior Court*, 582 U.S. 255, 264–65 (2017) (requiring each plaintiff to establish "a connection between the forum and the[ir] specific claims at issue"); *Hartford Mut. Ins. Co.* v. *Hoverzon LLC*, 2021 WL 1390317, at *4 (D. Md. Apr. 13, 2021) (explaining that a predecessor entity's contacts "provide the ultimate basis for jurisdiction" where successor liability is asserted). Federal courts apply state law to determine the bounds of their jurisdiction. *See* Fed. R. Civ. P. 4(k)(1)(A); *ESAB Grp., Inc.* v. *Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997). "[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc.* v. *Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103(b), reaches as far as the Due Process Clause permits. *Phillips*, 743 F. Supp. 3d at 708 (citing *Carefirst*, 334 F.3d at 396).

As the Supreme Court has repeatedly recognized in interpreting the Due Process Clause in the personal jurisdiction context,

> [e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*Bristol-Myers Squibb*, 582 U.S. at 263 (quoting *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 294 (1980)). As such, the exercise of authority over a nonresident defendant is "subject to review for compatibility with the Fourteenth Amendment's Due Process Clause" because the "assertion of jurisdiction exposes defendants to the [forum] State's coercive power." *Id.* at 261 (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 918 (2011)).

The Due Process Clause cabins the authority of courts in a particular forum to exercise coercive power over out-of-state defendants by recognizing only "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Id.* at 262 (citing *Goodyear*, 564 U.S. at 919). A court properly imbued with general jurisdiction may hear any claim against a defendant, even if all the conduct underlying the claim occurred outside of the forum state. *Id.* But our federal system limits the exercise of general jurisdiction over corporations to forums where a defendant "is fairly regarded as at home." *Id.* (quoting *Goodyear*, 564 U.S. at 924). Specific jurisdiction, by contrast, may be proper where a defendant is not "at home," but must be predicated on a substantial relationship between the forum state and the discrete claim asserted—in other words, for a court "to exercise specific jurisdiction [over a particular defendant], 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Id.* (quoting *Daimler AG* v. *Bauman*, 571 U.S. 117, 127 (2014)). Critically, however, if specific personal jurisdiction exists over a defendant with respect to one claim, the Court "cannot . . . use that claim to exert personal jurisdiction over the same defendant with respect to other claims that do not otherwise support such jurisdiction." *Edwards* v. *Schwartz*, 378 F. Supp. 3d 468, 491 (W.D. Va. 2019).

## A.    TKO and WWE Are Not Subject to General Jurisdiction in Maryland.

TKO and WWE are not subject to general jurisdiction in Maryland. Due process permits courts to exercise general jurisdiction over a defendant—and hear any and all claims against that defendant—only when that defendant can be deemed "at home" in the forum state. *Bristol-Myers Squibb*, 582 U.S. at 262. A corporate defendant is "at home" in a forum only when it: (1) is incorporated in the forum; (2) has its principal place of business in that forum; or (3), in an "exceptional case," has operations that are "so substantial and of such a nature as to render the corporation at home" in the forum. *Daimler*, 571 U.S. at 137–39 & n.19; *see Fidrych* v. *Marriott*

11

*Int'l, Inc.*, 952 F.3d 124, 133–34 (4th Cir. 2020).

None of these circumstances applies to WWF, TKO, or WWE. The Amended Complaint acknowledges that TKO is a Delaware corporation with its principal place of business in New York and that WWF was, and WWE is, a Delaware company with its principal place of business in Connecticut. *See* AC ¶¶ 1 n.1, 319, 324. Plaintiffs plead *no* allegations concerning any connection between TKO and Maryland. And the minimal connections alleged in the Amended Complaint between WWF or WWE and Maryland do not describe an "exceptional case" that would render WWF or WWE "at home" here. *See Daimler*, 571 U.S. at 139 n.19; *Fidrych*, 952 F.3d at 134. If WWF, TKO, or WWE could be deemed "at home" in Maryland based on the contacts described in the Amended Complaint, a plethora of companies and their affiliates would be deemed to be "at home" almost anywhere they do business—a formulation that the Supreme Court has long rejected as "unacceptably grasping." *Daimler*, 571 U.S. at 137–38. As the Supreme Court cautioned in *Daimler* and the Fourth Circuit observed in *Fidrych*, a corporate entity "that operates in many places can scarcely be deemed at home in all of them." *Id.* at 139 n.20; *see Fidrych*, 952 F.3d at 134. Because the Amended Complaint fails to allege that WWF, TKO, or WWE has significant ties to Maryland such that WWF was, or TKO or WWE is, "at home" here, TKO and WWE are not subject to general jurisdiction in Maryland.

**B.    TKO and WWE Are Not Subject to Specific Jurisdiction in Maryland for the Claims Alleged in the Amended Complaint.**

TKO and WWE also are not subject to specific jurisdiction in Maryland for Plaintiffs' claims. "Specific jurisdiction exists if, but only if, '(1) the exercise of jurisdiction is authorized under the state's long-arm statute; and (2) the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment.'" *Phillips*, 743 F. Supp. 3d at 711 (alterations omitted) (quoting *Carefirst*, 334 F.3d at 396). Here, the Court's exercise of jurisdiction over WWE

and TKO is not authorized by Maryland's long-arm statute and would not comport with due process for any claim alleged in the Amended Complaint.

### 1.    Maryland's Long-Arm Statute Does Not Authorize Jurisdiction.

"Maryland's long-arm statute limits specific jurisdiction to cases where the cause of action 'arises from any act enumerated in the statute itself.'" *Id.* (quoting Md. Code Ann., Cts. & Jud. Proc. § 6-103(a)).  In particular, as pertinent here, the exercise of jurisdiction is limited to causes of action that arise from the conduct of a party who, directly or through an agent:

> (1)    Transacts any business or performs any character of work or service in the State;
>
> (2)    Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3)    Causes tortious injury in the State by an act or omission in the State;
>
> (4)    Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State; [or]
>
> (5)    Has an interest in, uses, or possesses real property in the State[.]

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b).  While Plaintiffs appear to invoke all five prongs of the Maryland long-arm statute to assert personal jurisdiction over Defendants, they fail to plead sufficient facts to show that the exercise of jurisdiction is authorized under any prong.

### (a)    Sections 6-103(b)(1) and (2) Do Not Authorize Jurisdiction.

Plaintiffs' allegations concerning WWF's (or TKO's and WWE's) business dealings in Maryland are insufficient to confer jurisdiction over the claims asserted because Plaintiffs' claims do not arise out of those business dealings within the meaning of the long-arm statute.

Section 6-103(b)(1) authorizes jurisdiction over a party who transacts business in Maryland.  "Maryland courts have construed the phrase 'transacting business' narrowly, requiring,

for example, significant negotiations or intentional advertising and selling in the forum state." *Phillips*, 743 F. Supp. 3d at 711. But allegations of contracts or business practices "only *tenuously connected* to the cause of action are not enough to confer specific jurisdiction." *Id.* (emphasis added). Plaintiffs instead "must show some purposeful act in Maryland in relation to one or more of the elements of the cause of action." *Aphena Pharma Sols.-Maryland LLC* v. *BioZone Labs., Inc.*, 912 F. Supp. 2d 309, 315 (D. Md. 2012) (alteration omitted).

Plaintiffs allege that WWF "transact[ed] business" in Maryland by pleading that (i) "WWE persistently advertised for and held hundreds of wrestling shows and other public appearances in Maryland," AC ¶ 330; (ii) WWE "taped promotional videos to advertise for WWE shows in Maryland," *id.* ¶ 331, and (iii) "hosted a TV program called 'Tuesday Night Titans'" in Maryland "in connection with WWE's wrestling events," *id.* ¶ 333. But Plaintiffs do not plead that their claims arise out of or relate to any such advertising or TV programming in Maryland. As a result, such allegations are insufficient to establish personal jurisdiction. *See Beyond Sys., Inc.* v. *Kennedy W. Univ.*, 2006 WL 1554847, at *6 (D. Md. May 31, 2006).

Plaintiffs' allegations concerning WWF's (or TKO's or WWE's) business dealings in Maryland are, at most, only tenuously connected to Plaintiffs' claims—which arise from (i) alleged negligence by WWF executives wholly separate from such business dealings, and (ii) an employee's alleged acts that arose outside the scope of his employment as a matter of law and thus cannot be imputed to his employer. *See, e.g.*, *Rachel-Smith* v. *FTData, Inc.*, 202 F. Supp. 2d 400, 405–06 (D. Md. 2002) (when a plaintiff does not allege that a perpetrator of abuse was acting in furtherance of the business interests of his employer "in allegedly assaulting [plaintiff]," the plaintiff has not "allege[d] that [the perpetrator] acted in the scope of his employment"). *Edwardo* v. *Roman Catholic Bishop of Providence*, 579 F. Supp. 3d 456 (S.D.N.Y. 2022), assessing a similar

provision of New York's long-arm statute, is instructive. There, a priest allegedly traveled from Rhode Island to New York for a business meeting, arranged for the plaintiff to accompany him and to stay with him at a hotel, retired to the hotel following the business meeting, and sexually assaulted the plaintiff. *Id.* at 463. The court rejected the plaintiff's contention that his negligence claims arose out of the defendant church's and diocese's business dealings, reasoning that the priest's sexual abuse of the plaintiff at a hotel "had, at best, a tangential relationship to any contacts Defendants had with New York," namely, the business meeting, which "cannot serve as the statutory basis . . . to exercise personal jurisdiction over Defendants." *Id.* at 476. For the same reasons, § 6-103(b)(1) does not authorize jurisdiction over any of Plaintiffs' claims here.

Even if WWF's (or TKO's or WWE's) business dealings in Maryland were sufficient (which they are not), Plaintiffs' allegations certainly would not authorize this Court's jurisdiction over Plaintiffs' claims that arise from acts and injuries alleged to have arisen outside of Maryland (i.e., the vast majority of Plaintiffs' claims)—which have no nexus to Maryland at all. *Cf. Phillips*, 743 F. Supp. 3d at 712 (no personal jurisdiction where events occurred in Virginia).

Plaintiffs' reliance on Section 6-103(b)(2) of the long-arm statute is also unavailing. That subsection authorizes specific jurisdiction over a party who, as pertinent, "[c]ontracts to supply . . . services . . . in the State." "[A] contract in and of itself does not automatically constitute sufficient minimum contacts"; to the contrary, the dispute at issue must "grow out of a contract" that has a "substantial connection" with the forum. *Ellicott Mach. Corp.* v. *John Holland Party Ltd.*, 995 F.2d 474, 478 (4th Cir. 1993). Plaintiffs allege that Vincent and Linda McMahon booked WWE shows and appearances in Maryland and secured contracts with Maryland vendors, promotors, or distributors for WWE events. AC ¶ 334. But the suit-related conduct at issue here has nothing to do with WWF's (or TKO's or WWE's), or their agent's, alleged contracts to supply

services in Maryland.  Plaintiffs do not plead that their allegations of abuse grew out of any contractual relationship with WWF (or TKO or WWE), let alone one that has a substantial connection to Maryland.  Further, any such services contracts in Maryland would be, at most, only tenuously connected to Plaintiffs' Maryland-based claims, and no case law supports construing § 6-103(b)(2) differently in this regard from § 6-103(b)(1).  In any event, WWF's (or TKO's or WWE's) contracts to supply services in Maryland plainly do not authorize this Court's jurisdiction arising from claims related to acts and injuries outside of Maryland.

### (b)    Sections 6-103(b)(3) and (4) Do Not Authorize Jurisdiction.

Plaintiffs also claim this Court has personal jurisdiction under Maryland's long-arm statute because Defendants "caus[ed] tortious injury in Maryland."  AC ¶ 327.  Plaintiffs plead that §§ 6-103(b)(3) and (b)(4) apply.  *Id*.  Neither does.  Subsection (b)(3) authorizes jurisdiction over a defendant who "[c]auses tortious injury in the State by an act or omission in the State."  As such, subsection (b)(3) requires both the alleged injury and the alleged act to have occurred in Maryland. *Aphena*, 912 F. Supp. 2d at 317.  This is fatal to Plaintiffs' jurisdictional argument for at least two reasons.  *First*, the vast majority of the injuries alleged in the Amended Complaint occurred *outside of Maryland*—in Massachusetts, Pennsylvania, Rhode Island, Connecticut, New York, Maine, New Jersey, New Hampshire, or unspecified "other states."  *E.g*., AC ¶¶ 173–302.  *Second*, even assuming each Plaintiff has plausibly pleaded an injury in Maryland (which at least John Does 1, 2, and 3 have not, *see supra* p. 4), the Amended Complaint fails to plead *any act or omission* by WWF (or TKO or WWE) *in Maryland* that purportedly caused the alleged injury.

Instead, the Amended Complaint alleges that Defendants Vincent and Linda McMahon, as executives overseeing WWF with its principal place of business *in Connecticut*, negligently hired, supervised, and retained Phillips, Patterson, and Garvin, and knew or should have known about their alleged abuse, but failed to act *before* allegedly permitting Phillips to bring Plaintiffs to

company events in Maryland and elsewhere.  *E.g.*, AC ¶¶ 319, 345–91.  But absent from the Amended Complaint are any plausible allegations of negligent acts by Vincent or Linda McMahon *in Maryland*, as required to exercise jurisdiction under § 6-103(b)(3).  While Plaintiffs allege in the Amended Complaint that Vincent and Linda McMahon were present at various events that Plaintiffs attended, they do not allege facts to suggest that the McMahons observed any of the alleged abuse.  *See id.* ¶¶ 227, 228–29, 264, 267, 283, 300.  And, as explained above, any alleged sexual abuse by Phillips in Maryland was plainly outside the scope of his employment, which means he was not acting as an agent of WWF (or TKO or WWE) at the time of the events that give rise to Plaintiffs' claims.  *See Rachel-Smith*, 202 F. Supp. 2d at 405–06; *cf. Edwardo*, 579 F. Supp. 3d at 470.  Because § 6-103(b)(3) authorizes specific jurisdiction over a nonresident defendant only based on acts taken in Maryland by the defendant or its agent, § 6-103(b)(3) does not authorize jurisdiction for the claims asserted in the Amended Complaint.

Subsection (b)(4) also fails as a basis for jurisdiction.  While subsection (b)(4) authorizes jurisdiction over a defendant "when there is a tortious injury in or outside the state [following] an act or omission in or outside the state," *Aphena*, 912 F. Supp. 2d at 316, that kind of jurisdiction is limited to situations in which the defendant "engages in a persistent course of conduct" within Maryland, *Phillips*, 743 F. Supp. 3d at 713.  Courts in this Circuit have construed subsection (b)(4) "as a general jurisdiction statute," requiring that the defendant "be at home" in Maryland, while the Fourth Circuit has suggested in dicta that "continuous" contacts "over a long period of time" *may* also authorize jurisdiction under § 6-103(b)(4).  *Id.* (citing *Pandit* v. *Pandit*, 808 F. App'x 179 (4th Cir. 2020) (unpublished)).  The Amended Complaint fails under either alternative, as Plaintiffs fail to plead that WWF was (or that TKO or WWE is) "at home" in Maryland, *see supra* Part II.A, or that WWF, TKO, or WWE otherwise engaged in a kind of persistent course of conduct

in Maryland that is sufficient to authorize jurisdiction.  To be sure, although Plaintiffs collectively

plead at most six or seven specific WWE events in Maryland, AC ¶¶ 222, 244, 264, 286, 294–299,

the Amended Complaint contains conclusory allegations that "WWE routinely held shows and

other public appearances in Maryland" throughout the unspecified "relevant period," *id*. ¶¶ 329–

30.  But such allegations are insufficient even under the Fourth Circuit's unpublished approach in

dicta.  *See Phillips*, 743 F. Supp. 3d at 713–14 (finding allegation that British Airways had

continuous contacts with Maryland by virtue of operating flights into and out of the state was

insufficient to establish jurisdiction even under the broader interpretation of § 6-103(b)(4)).

Accordingly, Plaintiffs also fail to establish jurisdiction under § 6-103(b)(4).

### (c)    Section 6-103(b)(5) Does Not Authorize Jurisdiction.

Plaintiffs also summarily assert that jurisdiction exists under section 6-103(b)(5) because

Defendants have "an interest in, us[e], or possess[] real property in Maryland."  AC ¶ 327.  But

"[j]urisdiction under subsection (b)(5) is limited to causes of action having some connection with

the alleged property interest."  *McLaughlin* v. *Copeland*, 435 F. Supp. 513, 529 (D. Md. 1977).

Plaintiffs fail to plead that WWF had (or that WWE or TKO has) a property interest in Maryland

or that their negligence claims bear a connection to any such property interest in Maryland.  As

such, Plaintiffs fail to establish jurisdiction under § 6-103(b)(5).

### 2.    The Exercise of Specific Jurisdiction Over TKO or WWE Would Not Comport with Due Process.

Exercising specific jurisdiction over TKO or WWE would also violate due process.  Due

process permits courts to exercise specific jurisdiction over a nonresident defendant only if "the

defendant has purposefully established minimum contacts in the forum State such that it should

reasonably anticipate being haled into court there."  *Fidrych*, 952 F.3d at 138 (alteration omitted)

(quoting *Perdue Foods LLC* v. *BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016)).  When determining

18

whether specific jurisdiction exists, courts in this Circuit use a three-pronged analysis that considers the following:  "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of [or relate to] those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."  *Perdue Foods*, 814 F.3d at 189 (internal quotation marks omitted); *see also DeBellis* v. *Woodit*, 728 F. Supp. 3d 330, 341–42 (D. Md. 2024*)* ("while the phrase 'relates to' is clearly more encompassing than a causal nexus, 'that does not mean anything goes,' and the Supreme Court cautioned that the phrase 'relate to' has 'real limits' in order to 'adequately protect defendants foreign to a forum.'" (quoting *Ford Motor Co.* v. *Montana Eighth Judicial District Court*, 592 U.S. 351, 141 (2021)).  No prong is satisfied here.

### (a)    Plaintiffs Fail to Show TKO or WWE Purposefully Availed Itself of the Privilege of Conducting Activities in Maryland.

Plaintiffs continue to fail to plead that WWF (or TKO or WWE) purposefully availed itself of the privilege of conducting activities in Maryland within the meaning of the Due Process Clause. A defendant has purposefully availed itself of the privilege of conducting activities in Maryland "where the defendant 'deliberately' has engaged in significant activities within a State or has created 'continuing obligations' between [it]self and residents of the forum."  *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 475–76 (1985).  This "requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or 'of the unilateral activity of another party or a third person.'"  *Id.* at 475.  "In assessing purposeful availment, courts consider 'the *quality* and *nature* of the defendant's connections' to the forum state, 'not merely the number of contacts between the defendant and the forum state.'"  *Diamond* v. *Experian Info. Sol., Inc.*, 2024 WL 3495795, at *4 (D. Md. July 22, 2024).

The Amended Complaint fails to plead that WWF (or TKO or WWE) deliberately engaged

in significant activities or continuing obligations in, or directed at, Maryland. Although the Amended Complaint summarily alleges that WWE "routinely" and "persistently" held "numerous" events in Maryland between 1970 and 1992, AC ¶¶ 329–30, 336, such bare, conclusory assertions are insufficient. *See Carefirst*, 334 F.3d at 402–03; *Troy Brave*, 692 F. Supp. 3d at 521. Nor does the Amended Complaint allege any negligent acts imputable to WWF (or TKO or WWE) by Vincent or Linda McMahon in Maryland, or that WWF (or TKO or WWE) had any involvement in Phillips's decision to allegedly transport any Plaintiffs to Maryland.

The District of New Jersey's decision in *Doe* v. *Archdiocese of Philadelphia*, 2020 WL 3410917 (D.N.J. June 22, 2020), is instructive. There, the plaintiff (a former altar boy at a Pennsylvania church) alleged that a priest assigned to his church transported him to New Jersey and abused him there. *Id.* at *1. In finding the "personal availment" requirement was not satisfied, the court reasoned that the plaintiff (i) "d[id] not allege that any negligent conduct on the part of [the d]efendant took place in New Jersey," (ii) failed to show that "[d]efendant's supervisory duties . . . intentionally target[ed] New Jersey," and (iii) did not allege that the defendant directed the priest to take the plaintiff to New Jersey. *Id.* at *3. The court further rejected the plaintiff's contention that the defendant's "alleged knowledge of [the priest]'s conduct, or the conduct of other priests in transporting children to New Jersey for the purpose of sexual abuse," was sufficient to establish jurisdiction, *id.*, because "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause," *id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 295). This reasoning applies with equal force to Plaintiffs' claims here and shows why the exercise of specific jurisdiction would be inappropriate.

### (b) Plaintiffs Fail to Show Their Claims Arise Out of or Relate to TKO's or WWE's Activities Directed at the State.

The Amended Complaint also must be dismissed as to TKO and WWE because Plaintiffs'

claims do not arise out of or relate to WWF's (or TKO's or WWE's) activities in Maryland. For a plaintiff's claims to "arise out of or relate to" the defendant's contacts with the forum, there must be a sufficient "relationship among the defendant, the forum, and the litigation." *Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 414 (1984); *see Wallace* v. *Yamaha Motors Corp, U.S.A.*, 2022 WL 61430, at *3 (4th Cir. Jan. 6, 2022). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Wallace*, 2022 WL 61430, at *3 (quoting *Bristol-Myers*, 582 U.S. at 264).

*Coleman* v. *KIPP DC Supporting Corporation*, 2019 WL 1126357 (D. Md. Mar. 12, 2019), found that claims related to a school district's alleged failure to report a teacher's sexual misconduct did not arise out of *the defendants' activities in Maryland* "but out of acts or omissions by [d]efendants that occurred in the District of Columbia where [d]efendants conduct[ed] their business." *Id.* at *3; *see id.* at *1. The fact that some of the former teacher's alleged sexual misconduct occurred in Maryland was irrelevant to the due process analysis. *See id.* at *3.

Similarly here, Plaintiffs' claims arise out of or relate to alleged acts or omissions by Defendants that occurred in Connecticut where Defendants conducted their business, not from allegedly tortious acts or omissions *in Maryland*. *See, e.g.*, AC ¶¶ 319, 345–91. To be sure, Plaintiffs claim that "WWE and the McMahons . . . , including through their agents, voluntarily took custody of the underaged boys by traveling with them out-of-state as part of WWE's ring crew," *id.* ¶ 349; and that at times the McMahons saw John Does or other underaged boys at WWE events, *id.* ¶¶ 227–29, 264, 267, 283, 300. But such allegations fall short of pleading any tortious conduct by Defendants in Maryland, as required. Moreover, neither Phillips's alleged abuse in Maryland nor Plaintiffs' alleged injuries in Maryland are sufficient to permit this Court to exercise its coercive power over TKO or WWE and hear the claims alleged in Plaintiffs' Amended

Complaint.[3]  The exercise of specific jurisdiction therefore would be improper.

        **(c)**        **Exercising Jurisdiction Over TKO or WWE Would Not Be Constitutionally Reasonable.**

Finally, even if Plaintiffs had sufficiently alleged purposeful availment and that their claims arise out of or relate to WWF's (or TKO's or WWE's) Maryland contacts, it would still be constitutionally unreasonable for this Court to exercise personal jurisdiction over TKO or WWE. To determine whether jurisdiction is constitutionally reasonable, courts assess "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477–78.

Here, no Plaintiff or Defendant resides in Maryland and Plaintiffs' claims concern alleged negligence that did not occur in Maryland.  There is nothing remotely convenient or efficient about calling the parties to Maryland to resolve this dispute.  Nor does Maryland have an interest in adjudicating a dispute involving nonresidents, allegations of negligent acts or omissions that occurred outside of the State, and alleged harms which occurred almost entirely outside of Maryland.  For the same reason, Plaintiffs lack a substantial interest in obtaining relief here.

**III.**    **The Claims Against TKO and WWE Should Be Dismissed Pursuant to Rule 12(b)(6) for Failure to State a Claim.**

While Defendants appreciate the gravity of the Plaintiffs' underlying allegations, the Amended Complaint should nonetheless be dismissed for failure to state a claim upon which relief can be granted, based on the theories of relief asserted here, even with the additional allegations

---

[3]  This is especially true as to John Does 1, 2, and 3, who do not allege any connection between their claims and any specific WWF (or WWE) business dealings in Maryland, and thus cannot assert that their claims arise out of Defendants' contacts with the forum state.

included in the Amended Complaint.  To plead any negligence claim under Maryland law, "a plaintiff must 'allege with certainty and definiteness, facts and circumstances sufficient to set forth (a) a duty owed by the defendant to the plaintiff, (b) a breach of that duty and (c) injury proximately resulting from that breach.'"  *Estate of Green* v. *City of Annapolis*, 696 F. Supp. 3d 130, 170–71 (D. Md. 2023) (quoting *Fletcher* v. *Md. Transit Admin.*, 741 F. App'x 146, 149 (4th Cir. 2018)). To plead a claim for negligent hiring, training, and retention, the plaintiff must further plead "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of the incompetence; (4) the employee's act or omission that caused the plaintiff's injuries; and (5) the employer's negligence in hiring, training, or retaining the employee as the proximate cause of the plaintiff's injury." *Pizarro Orta* v. *Creekstone Landscaping & Excavating, LLC*, 2024 WL 3555093, at \*4 (D. Md. July 25, 2024).

Plaintiffs' negligence claims should be dismissed for at least three reasons.  *First*, as a matter of law, the Amended Complaint still fails to plead a cognizable duty of care owed to Plaintiffs.  *Second*, even if Plaintiffs had pleaded a duty of care, any supposed duty did not extend to Phillips's alleged out-of-work conduct.  *Finally*, Plaintiffs' general negligence claim should be dismissed as duplicative of Plaintiffs' negligent hiring, training, and retention claim.

### A.    Plaintiffs Fail to Plead a Duty of Care That Defendants Owed Them.

Like the original Complaint, the Amended Complaint fails to sufficiently plead that WWE and TKO owed Plaintiffs a legally cognizable duty.  Whether a legal duty exists is a question of law to be decided by the Court.  *Simon* v. *Dick's Sporting Goods, Inc.*, 2022 WL 16722400, at \*3 (D. Md. Nov. 4, 2022).  "In a negligence claim, 'duty' is defined as 'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.'" *Id.*  "Absent a legally recognized duty owed by the defendant to the plaintiff, . . . [the plaintiff] cannot sustain[] a cause of action in negligence." *Id.* at \*4 (quotation marks omitted).

Plaintiffs assert that Defendants owed Plaintiffs a common law duty of care because the harm to Plaintiffs was reasonably foreseeable. *See* AC ¶¶ 353, 356, 380–81. While foreseeability is a consideration in determining whether a duty of care exists, "its existence alone does not suffice to establish a duty under Maryland law." *Remsberg* v. *Montgomery*, 831 A.2d 18, 26 (Md. 2003); *see Warr* v. *JMGM Grp., LLC*, 70 A.3d 347, 361 (Md. 2013); *Barclay* v. *Briscoe*, 47 A.3d 560, 574 (Md. 2012); *Doe* v. *Pharmacia & Upjohn Co.*, 879 A.2d 1088, 1093–94 (Md. 2005). That is because Maryland recognizes "the general rule that there is no duty to control a third person's conduct so as to prevent personal harm to another, unless a 'special relationship' exists either between the [defendant] and the third person or between the [defendant] and the person injured." *Remsberg*, 831 A.2d at 26–27 (quoting *Ashburn* v. *Anne Arundel Co.*, 510 A.3d 1078, 1083 (Md. 1986)); *see Fletcher*, 741 F. App'x at 149–50. The Amended Complaint appears to claim that a special relationship existed based on four different theories. None applies to this set of facts.

### 1.    Plaintiffs Fail to Plead That the Alleged Harm by Phillips, Garvin, and/or Patterson Was Reasonably Foreseeable.

The Amended Complaint fails to plead a common law duty of care based on a theory that the alleged harm to Plaintiffs was reasonably foreseeable. To plead that an employee's misconduct was reasonably foreseeable to an employer, a plaintiff must allege facts and circumstances sufficient to plead that the defendant employer was aware of specific prior acts or allegations against the employee in question. *See Mitchell* v. *Rite Aid of Maryland, Inc.*, 290 A.3d 1125, 1131 (Md. App. Ct. 2023); *Doe* v. *Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014).[4] "The prior misconduct, moreover, must be of the same kind that caused the injury; general, unrelated or lesser allegations of prior wrongdoing are insufficient." *Alsaud*, 12 F. Supp. 3d at 681 (collecting cases). Here, for Plaintiffs to plead a duty that is actionable under the CVA, they must plausibly assert

---

[4]  Plaintiffs incorrectly assert that Phillips was an employee of WWE or its predecessor.

actual or constructive knowledge of "sexual abuse" as defined in the CVA, i.e., acts of rape or other misconduct that was, at the time, a criminal offense. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-117(a). Plaintiffs fail to plead any Defendant had, or should have had, such knowledge as to Phillips, Garvin, or Patterson at the time of the alleged harms to Plaintiffs.

As to Phillips, the Amended Complaint alleges, by 1988, a *general* awareness of Phillips's claimed "peculiar" behavior around children. *E.g.*, AC ¶ 44. Specifically, Plaintiffs claim that Vincent McMahon had "eyes and ears everywhere" and thus "clearly knew what was going on," *id.* ¶¶ 37, 73, 155; that in 1988, the McMahons fired Phillips because his relationship with underaged boys "seemed peculiar and unnatural," *id.* ¶ 44; and then rehired him a few weeks later with the instruction to "steer clear from kids," *id.* ¶ 45. Such vague allegations are procedurally insufficient to plead that Defendants knew or should have known of instances of "sexual abuse," as defined in the CVA, by Phillips prior to his alleged abuse of Plaintiffs. Plaintiffs also claim a security guard brought a minor to Vincent McMahon after Phillips was allegedly seen performing oral sex on the minor in a car—although the Amended Complaint, like the original Complaint, is silent as to what was specifically told to Vincent McMahon about the incident and therefore does not adequately plead Vincent McMahon had notice as to Phillips. *Id.* ¶¶ 40–42. Plaintiffs' new allegations—that Vincent McMahon, Linda McMahon, and other "executives" saw certain Plaintiffs and other boys purportedly working at WWE events, *see id.* ¶¶ 227–29, 264, 267, 277, 283, 300, and that in or after 1988 unnamed "WWE employees complained to WWE supervisors like Garvin and to Vince McMahon about Phillips being on the road to WWE events with underaged boys," *id.* ¶ 63—likewise fail to plead actual or constructive knowledge of Phillips's alleged abuse. The earliest that Plaintiffs allege that WWE knew or had reason to know of instances of sexual abuse of minors by Phillips is in 1992, *see* AC ¶¶ 15–18, 29—which is after

25

the alleged abuse of Plaintiffs took place, apart from one alleged instance of abuse of John Doe 6 that took place in Portland, Maine, and is not actionable in Maryland or elsewhere, *id.* ¶ 270.[5]

As to Garvin's alleged harassment of John Doe 3 and Patterson's alleged abuse of John Doe 6, *id.* ¶¶ 211, 264–66, Plaintiffs likewise attempt to plead notice by relying on vague, scattershot allegations of purported prior notice, many of which postdate the alleged harm to Plaintiffs or fail to plead when such alleged happenings were made known, or if they were even made known, to Defendants. *E.g.*, *id.* ¶¶ 62, 64(I), 69–70, 80–82, 141. No such allegations plausibly plead that Defendants knew, or should have known, about any prior instance of sexual abuse on the part of Garvin or Patterson at the time of the alleged harms to Plaintiffs.

In addition, Plaintiffs' allegations of purported prior notice as to Phillips, Garvin, and Patterson should be rejected insofar as Plaintiffs seek to impute knowledge of non-Defendants employed by or otherwise affiliated with WWE or its predecessor entities whose knowledge cannot be imputed to WWE or TKO (or any Defendant). "Because a corporate employer can only act and acquire knowledge through its agents, a finding of knowledge is often based on the imputed knowledge of a supervisory employee." *New River Elec. Corp.* v. *Occupational Safety & Health Rev. Comm'n*, 25 F.4th 213, 220 (4th Cir. 2022) (cleaned up). "But when the supervisory employee commits the violation, the employer loses its eyes and ears to detect and prevent misconduct" and his conduct cannot be imputed to the corporate employer. *Id.*; *see Tobacco Tech., Inc.* v. *Taiga Int'l N.V.*, 626 F. Supp. 2d 537, 551 (D. Md. 2009), *aff'd*, 388 F. App'x 362 (4th Cir. 2010). In addition to the McMahons, Plaintiffs appear to rely on purported knowledge of (i) unspecified "WWE employees" (who are not alleged to be supervisory employees, as required); (ii) "WWE wrestlers" (who are not alleged to be WWE employees, let alone supervisory employees); as well

---

[5] *Dupuis* v. *Roman Cath. Bishop of Portland*, 331 A.3d 294 (Me. 2025) (finding Maine CVA unconstitutional).

as (iii) Phillips, Garvin, and Patterson—each of whom purportedly had knowledge of each other's conduct.  Phillips, however, is not alleged to have supervised Garvin or Patterson and thus, any alleged knowledge by him of their conduct cannot be imputed to WWF (or WWE or TKO).  Although Plaintiffs claim Garvin and Patterson "were high-level WWE executives and trusted lieutenants of the McMahons" and that Garvin was Phillips's supervisor, AC ¶¶ 29, 35, their alleged knowledge cannot be imputed to WWF (or WWE or TKO) because, according to the allegations in the Amended Complaint, they abandoned WWF's interests in favor of their own by engaging in alleged sexual abuse at the time as well.  *See Tabacco Tech.*, 626 F. Supp. 2d at 552.

## 2.    Plaintiffs Fails to Plead a Special Relationship.

The Amended Complaint also fails to allege facts showing the existence of a special relationship between Defendants and Plaintiffs.  Plaintiffs appear to claim four theories of a purported special duty of care: (i) because Plaintiffs were minors, *see* AC ¶¶ 349, 351–52; (ii) based on a statute obligating all persons in Maryland to report suspected child abuse, *see id.* ¶ 355; (iii) because Plaintiffs were employed by WWF (or WWE), *see id.* ¶¶ 350–52, 370, 373; and (iv) because Plaintiffs were business invitees, *see id.* ¶ 356.  None is legally viable.

Plaintiffs fail to cure their pleading that Defendants owed them a special duty of care based on their age at the time of the relevant alleged events.  While a duty in *loco parentis* has been recognized in certain situations where the presence of minors is required by law, such as in primary and secondary schools, it does not apply here.  *See Molock* v. *Dorchester Cnty. Fam. YMCA, Inc.*, 779 A.2d 963, 968–69 (Md. Ct. Spec. App. 2001) (rejecting special duty at YMCA social event).  Although Plaintiffs baldly claim that they were "not free to leave or stay particularly when traveling out-of-state for WWE shows," AC ¶ 349, they plead no facts to substantiate that allegation.  Nor do they claim that "any agent of the [defendant] had the right to discipline" them, *Molock*, 779 A.2d at 968, if, for example, they left the events.  Moreover, Plaintiffs still do not

allege, nor could they, that they were required by law to attend, or otherwise accompany Phillips to, wrestling shows.  Plaintiffs thus fail to plead that this special legal duty of care applies.

Plaintiffs likewise fail to plead that Defendants owed Plaintiffs a statutory duty of care.  In their Amended Complaint, Plaintiffs invoke Maryland law obligating all "person[s] in this State" to report suspected child abuse to local law enforcement.  Md. Code Ann., Fam. Law § 5-705(a)(1); AC ¶ 355.[6]  That law, however, applies to "all Marylanders," *Maryland* v. *Sewell*, 205 A.3d 966, 979 (Md. 2019), and therefore has no application to nonresidents such as Defendants.  And even if such reporting obligations applied to nonresidents physically within the State, the Amended Complaint fails to adequately plead that any Defendant had knowledge of conduct occurring in Maryland or reason to suspect abuse that would trigger a duty to report.  *See supra* Part III.A.1. As such, the Amended Complaint still fails to plead a statutory duty of care owed to Plaintiffs.

The Amended Complaint further fails to plead a duty under an employment theory. Although Plaintiffs claim that Defendants "had a duty to provide [Plaintiffs] with a safe place to work," AC ¶ 370; *see id.* ¶¶ 351, 373, any such duty extends only to employees.  To determine whether an employer-employee relationship exists, courts consider "(1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer." *Sable* v. *Baltimore Cnty. Gov't*, 2021 WL 4772921, at *5 (D. Md. Oct. 12, 2021).  Plaintiffs' Amended Complaint does not allege that WWF (or WWE or TKO) hired Plaintiffs, paid Plaintiffs' wages,[7] had the ability to discharge Plaintiffs, or controlled Plaintiffs' alleged work for the WWF (or WWE or TKO).  These omissions foreclose the existence of an employment relationship.

---

[6]  WWE and TKO adopt Section II(A)(5) of Vincent McMahon's memorandum of law as it applies to them.
[7]  While the Amended Complaint pleads that Plaintiffs, with the exception of John Does 4 and 5, were "paid cash" for their work, Plaintiffs maintain that *Phillips* hired Plaintiffs and that *Phillips* paid Plaintiffs money for the work *he requested*.  *See, e.g.*, AC ¶¶ 1, 182, 186, 201, 215, 248, 259, 289, 295, 298, 361.

Plaintiffs' business invitee theory, AC ¶ 356, also remains deficient. A special relationship between a business owner and patron giving rise to a duty to exercise due care to protect the patron, can be found only where the business "(1) controlled a dangerous or defective condition; (2) had knowledge or should have had knowledge of the injury-causing condition; and (3) the harm suffered was a foreseeable result of that condition." *Winffel* v. *Westfield Prop. Mgmt., LLC*, 2022 WL 1591405, at *4 (D. Md. May 19, 2022). Because Plaintiffs fail to plead that Defendants had, or should have had, knowledge of Phillips's, Garvin's, or Patterson's alleged misconduct before any Plaintiff was harmed or that any alleged harm was foreseeable, *see supra* Part III.A.1, they fail to plead that Defendants owed any Plaintiff a duty under a business invitee theory.

### B.    Any Alleged Duty Did Not Extend to Alleged Out-of-Work Conduct.

Further, any duty of care would not have extended to the alleged out-of-work conduct of Phillips, Garvin, or Patterson. A defendant cannot be held liable for negligent oversight over third-party conduct that occurs outside of the defendant's custody or control. *See Fletcher*, 741 F. App'x at 151 (collecting cases holding that school district had no duty to protect students during off-premises activities). In *Alsaud*, the court dismissed negligent supervision and retention claims where the alleged sexual misconduct occurred off defendant's premises at a hotel. 12 F. Supp. 3d at 681. Similarly, Plaintiffs allege Defendants are liable for harm that at least Phillips and Patterson caused while outside of WWF (or WWE) events, including at hotels, in cars, and during trips that Plaintiffs do not allege are connected to WWF (or WWE) activities. *E.g.*, AC ¶¶ 176–78, 181–83, 185, 196, 202, 208, 212–13, 221–22, 232, 244–47, 255, 260–63, 265–66, 279–82, 287, 296–97. Because such alleged conduct took place off premises where Defendants had no control over its employees, Defendants cannot be held liable for any alleged harm attributed to such conduct.

### C.    Plaintiffs Fail to Plead Breach or Proximate Causation.

To establish breach, Plaintiffs must show "the observance of which duty would have

averted or avoided the injury." *Pendleton* v. *State*, 921 A.2d 196, 204 (Md. 2007).  In cases like this "where the breach of duty is not readily apparent," a general allegation of negligence coupled with a simple statement of a defendant's act or omission "will be regarded as a mere legal conclusion." *Id.* at 217.  As that is all that Plaintiffs allege here, *see* AC ¶¶ 357, 373, Plaintiffs fail to plead Defendants breached any duty of care allegedly owed to Plaintiffs.  To plead proximate causation, a plaintiff must assert that the alleged negligence was both "1) a cause in fact, and 2) a legally cognizable cause" of the injury." *Mitchell*, 290 A.3d at 1150.  "In the context of a third-party's criminal act, proximate cause may be established when an actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime *and* the actor at the time of his negligent conduct *realized or should have realized the likelihood that such a situation might be created*, and that a third person *might avail himself of the opportunity to commit such a tort or crime*." *Id.* at 1158 (internal quotation marks omitted).  As demonstrated, the alleged harm to Plaintiffs was not foreseeable.  *See supra* Part III.A.1.

### D.    Plaintiffs' General Negligence Claim Should Be Dismissed as Duplicative.

Plaintiffs' general negligence claim is duplicative of Plaintiffs' negligent hiring, training, and retention claim because they are "functionally the same" under Maryland law.  *Pizarro Orta*, 2024 WL 3555093, at *4 (collecting cases).  Dismissal is "especially" warranted "when the claims are 'rooted in the same factual allegations and theory of liability.'" *Id.*[8]

### CONCLUSION

The Court should grant Defendants TKO and WWE's Motion to Dismiss in its entirety and dismiss Plaintiff's First Amended Complaint with prejudice.

---

[8] WWE and TKO adopt Section V(C) of Linda McMahon's memorandum of law (ECF No. 57) as it applies to them.

Dated: June 11, 2025
      New York, New York

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

*/s/  Gregory F. Laufer*
Daniel J. Toal (*pro hac vice*)
Richard C. Tarlowe (*pro hac vice*)
Gregory F. Laufer (*pro hac vice*)
Emily A. Vance (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000 | Fax: (212) 757-3990
dtoal@paulweiss.com
rtarlowe@paulweiss.com
glaufer@paulweiss.com
evance@paulweiss.com

GOODELL, DEVRIES, LEECH & DANN, LLP

*/s/  Linda S. Woolf*
Linda S. Woolf (Federal Bar No: 08424)
K. Nichole Nesbitt (Federal Bar No: 26137)
Sean Gugerty (Federal Bar No: 21125)
One South Street, 20th Floor
Baltimore, MD 21202
Tel: (410) 783-4000 | Fax: (410) 783-4040
lsw@gdldlaw.com
knn@gdldlaw.com
sgugerty@gdldlaw.com

*Attorneys for World Wrestling Entertainment, LLC
and TKO Group Holdings, Inc.*