## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOHN DOE 1, et al., | Civil Action No. 1:24-cv-3487 |
| Plaintiffs, | Hon. James K. Bredar |
| v. | |
| WORLD WRESTLING ENTERTAINMENT, LLC, et al., | **HEARING REQUESTED** |
| Defendants. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS
## WWE AND TKO'S MOTION TO DISMISS

William H. "Billy" Murphy, Jr. (AIS # 6912010153)
Phylecia R. Faublas (AIS # 2206140025)
**MURPHY, FALCON & MURPHY**
1 South Street, Suite 3000
Baltimore, Maryland 21202
Telephone: (410) 951-8750
billy.murphy@murphyfalcon.com
phylecia.faublas@murphyfalcon.com

Greg G. Gutzler
Emma Bruder
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, New York 10017
Telephone: (646) 933-1000
ggutzler@dicellolevitt.com
ebruder@dicellolevitt.com

Adam Prom
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
aprom@dicellolevitt.com

Mark A. DiCello
Robert F. DiCello
**DICELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, OH 44060
Telephone: (440) 953-8888
madicello@dicellolevitt.com
rfdicello@dicellolevitt.com

Dated: July 28, 2025

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................. 1

II.   FACTUAL BACKGROUND ................................................ 1

III.  ARGUMENT ...................................................................... 5

    A.    This Court has Personal Jurisdiction Over WWE and TKO .................................. 5

        1.    Plaintiffs Have Made a Prima Facie Showing Under § 6-103(b)(1) and (b)(2). ................................................................. 6

        2.    Plaintiffs Also Satisfy § 6-103(b)(3) – (b)(5). ............................................. 9

        3.    Exercising Personal Jurisdiction Comports with Due Process. ................ 12

    B.    Plaintiffs Sufficiently Plead Multiple Duties Owed By WWE and TKO ............. 15

        1.    WWE Had Control Over its Employees/Agents........................................ 16

        2.    WWE Owed All Plaintiffs a Duty By Virtue of Special Relationships .... 17

        3.    WWE Owed All Plaintiffs a Duty Arising from Foreseeability................ 22

        4.    WWE Owed All Plaintiffs An Employment-Related or Business Invitee Duty....................................................................................................... 25

        5.    WWE Owes John Does 6 and 8 an Additional Duty Because of the McMahons' Personal Treatment of Them.................................................. 26

    C.    Plaintiffs Have Sufficiently Pled the Other Elements of Negligence .................. 28

    D.    Plaintiffs Have Sufficiently Pled a Claim for Negligent Hiring, Supervision, Training and Retention............................................................................................ 29

    E.    Plaintiffs Have Sufficiently Pled Successor Liability for Defendant TKO .......... 29

IV.   CONCLUSION.................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Sec'y, Fla. Dep't of Corr.*,
No. 23-13455, 2025 WL 1639254 (11th Cir. June 10, 2025)................................21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................15

*Beyond Sys., Inc. v. Kennedy W. Univ.*,
2006 WL 1554847 (D. Md. May 31, 2006)...........................................................8

*Burlington Indus., Inc. v. Ellerth*,
524 U.S. 742 (1998)........................................................................................19

*Coleman v. KIPP DC Supporting Corporation*,
2019 WL 1126357 (D. Md. Mar. 12, 2019)...........................................................14

*CoStar Realty Info., Inc. v. Meissner*,
604 F. Supp. 2d 757 (D. Md. 2009) ..................................................................13

*Cramer v. Hous. Opportunities Comm'n of Montgomery Cnty.*,
304 Md. 705 (Md. 1985)..................................................................................20

*David N. v. St. Mary's Cnty. Dep't of Soc. Servs.*,
198 Md. App. 173 (Md. Ct. Spec. App. 2011) ....................................................18

*DeBellis v. Woodit*,
728 F. Supp. 3d 330 (D. Md. 2024)....................................................................13

*Doe #1 v. Bd. of Educ. of Somerset Cnty.*,
No. CV RDB-22-1491, 2023 WL 375189 (D. Md. Jan. 24, 2023).............20, 23, 24

*Doe v. Alsaud*,
12 F.Supp.3d 674 (S.D.N.Y. 2014) ..................................................................24

*Doe v. Archdiocese of Philadelphia*,
No. CV 19-20934(FLW), 2020 WL 3410917 (D.N.J. June 22, 2020) ...................13

*Doe v. Bd. of Educ. of Prince George's Cnty.*,
888 F. Supp. 2d 659 (D. Md. 2012)....................................................................21

*Doe v. Mercy High Sch., Inc.*,
No. 1:23-CV-01184-JRR, 2024 WL 3103396 (D. Md. June 24, 2024) .................29

*Doe v. Salisbury Univ.*,
    123 F. Supp. 3d 748 (D. Md. 2015) ............................................................26, 28

*Edwardo v. Roman Catholic Bishop of Providence*,
    579 F.Supp.3d 456 (S.D.N.Y. 2022) ..................................................................8

*Est. of Madden v. Sw. Airlines, Co.*,
    No. 1:21-CV-00672-SAG, 2021 WL 2580119 (D. Md. June 23, 2021) ...................16, 19, 27

*Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*,
    2025 WL 1592464 (D. Md. June 5, 2025) .............................................................20

*Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*,
    No. GJH-19-1312, 2020 WL 1322948 (D. Md. Mar. 20, 2020)...........................................5, 8

*Fletcher v. Maryland Transit Admin.*,
    741 F. App'x 146 (4th Cir. 2018) .......................................................................21

*Gray v. Koch Foods, Inc.*,
    580 F. Supp. 3d 1087 (M.D. Ala. 2022), *aff'd*,
    No. 22-13214, 2025 WL 1932964 (11th Cir. July 15, 2025)...............................................20

*Hartford Mut. Ins. Co. v. Hoverzon, LLC*,
    No. CV SAG-20-2713, 2021 WL 461760 (D. Md. Feb. 9, 2021) ...........................................30

*Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*,
    382 Md. 170 (Md. 2004).................................................................................18

*Jordan v. W. Distrib. Co.*,
    286 F. Supp. 2d 545 (D. Md. 2003), *aff'd*,
    135 F. App'x 582 (4th Cir. 2005) ......................................................................20

*K.J. v. J.P.D.*,
    No. 20-CV-14177, 2023 WL 4103013 (D.N.J. June 21, 2023)...........................................20

*Loveless v. Estevez*,
    No. 01985, 2019 WL 4187465, at *12 (Md. Ct. Spec. App. Sept. 3, 2019).....................24, 29

*Maxtena, Inc. v. Marks*,
    No. CIV.A. DKC 11-0945, 2012 WL 113386 (D. Md. Jan. 12, 2012) ................................7, 8

*Miller v. Live Nation Worldwide, Inc.*,
    No. CV CBD-14-2697, 2016 WL 374103 (D. Md. Feb. 1, 2016)...........................................26

*Molock v. Dorchester Cnty. Fam. YMCA, Inc.*,
    139 Md. App. 664 (Md. Ct. Spec. App. 2001) .......................................................21

*New River Elec. Corp. v. Occupational Safety & Health Rev. Comm'n*,
   25 F.4th 213 (4th Cir. 2022) ...................................................24

*Owens v. State*,
   352 Md. 663 (Md. 1999)........................................................15

*P.J. v. City of Jersey City*,
   No. 21-CV-20222, 2022 WL 16949544 (D.N.J. Nov. 15, 2022) .........................20

*Pandit v. Pandit*,
   808 F. App'x 179 (4th Cir. 2020) ...............................................11

*PC-16 Doe v. Hill Reg'l Career High Sch.*,
   203 N.Y.S.3d 572 (2024)..........................................................8

*Perdue Foods LLC v. BRF S.A.*,
   814 F.3d 185 (4th Cir. 2016) ...................................................12

*Phillips v. Brit. Airways*,
   743 F. Supp. 3d 702 (D. Md. 2024) ..............................................11

*Playmark Inc. v. Perret*,
   253 Md. App. 593 (Md. Ct. Spec. App. 2022) ...............................29, 30

*Rachel-Smith v. FTData, Inc.*,
   202 F. Supp. 2d 400 (D. Md. 2002) ..............................................20

*Ramlall v. MobilePro Corp.*,
   202 Md. App. 20 (Md. Ct. Spec. App. 2011) .....................................30

*Robinson v. Bd. of Educ. of Washington Cnty.*,
   No. 1:22-CV-01102-ELH, 2023 WL 2499854 (D. Md. Mar. 14, 2023) ...............29

*Roman Cath. Archbishop of Washington v. Doe*,
   489 Md. 514 (Md. 2025)..........................................................15

*Seiberlich v. Deossa*,
   No. CV TDC-23-0560, 2024 WL 343298 (D. Md. Jan. 30, 2024).................. *passim*

*Sony Chemicals Eur., B.V. v. M/V Ingrita*,
   No. MJG-94-1688, 1995 WL 846692 (D. Md. Nov. 29, 1995).........................12

*Stifel, Nicolaus & Co., Inc. v. Firemoon Energy, LLC*,
   No. GJH-16-628, 2016 WL 8673135 (D. Md. Oct. 28, 2016).........................30

*Tennant v. Shoppers Food Warehouse Md. Corp.*,
   115 Md. App. 381 (Md. Ct. Spec. App. 1997) ...................................26

*Walters v. McMahen*,
    684 F.3d 435 (4th Cir. 2012) ........................................................................15

*Willey v. Bd. of Educ. of St. Mary's Cnty.*,
    557 F. Supp. 3d 645 (D. Md. 2021) .............................................................21

*Wilson v. State*,
    No. 1947, 2023 WL 2314838, at *10-12 (Md. Ct. Spec. App. Mar. 1, 2023).......................21

*Winffel v. Westfield Prop. Mgmt., LLC*,
    No. 19-CV-00838-LKG, 2022 WL 1591405 (D. Md. May 19, 2022) ...................................26

*Zeman v. Lotus Heart, Inc.*,
    717 F. Supp. 373 (D. Md. 1989) ....................................................................12

**Statutes**

Maryland's Child Victims Act of 2023 .................................................... 1, 15, 24

Md. Code Ann., Cts. & Jud. Proc. § 6-103 ........................................... *passim*

Md. Code Ann., Fam. Law §§ 5-705 and 5-705.1 ...................................18, 20

**Other Authorities**

Fed. R. Civ. P. 12(b)(2).................................................................................30

Fed. R. Civ. P. 12(b)(6).............................................................................15, 30

Fed. R. Civ. P. 15(a)(2).................................................................................30

Restatement (Second) of Torts § 317 cmt. c.................................................17

## I.        INTRODUCTION

This action is brought by survivors of sexual harassment and abuse committed by a WWE ringside announcer and other WWE executives who groomed, exploited, and sexually abused underaged children often referred to as Ring Boys, whose jobs were to assist the WWE's ring crew that was responsible for setting up and dismantling the ring for WWE's events. Plaintiffs all suffered sexual abuse in Maryland and brought their claims under Maryland's Child Victims Act of 2023. Plaintiffs bring this action against the child predators' employer: Defendants WWE, TKO, and Vince and Linda McMahon (co-founders of WWE) because they: (i) knew or should have known about the child predators' abuse of Ring Boys; (ii) had duties to prevent the abuse; and (iii) further acquiesced, inspired, and/or participated in WWE's rampant culture of sexual misconduct.

Defendants WWE and TKO seek dismissal,[1] arguing a lack of personal jurisdiction and challenging the sufficiency of Plaintiffs' negligence-based claims. Their motion should be denied in full, and the Plaintiff-survivors should be allowed to pursue justice for their immense suffering.

## II.      FACTUAL BACKGROUND

From the 1970s through the early 1990s, a prominent ringside announcer and ring crew chief, Mel Phillips, worked for WWE and as an agent of WWE co-founders Vince and Linda McMahon for WWE events, including in Maryland.  FAC ¶¶ 1, 4-5, 184, 186, 201, 209, 223, 228-29, 248, 268, 276, 283, 289, 295, 299. Phillips exploited his position with WWE to lure, groom, and sexually abuse underaged Ring Boys. *Id*. ¶¶ 2-5, 49, 92-93, 97, 109-110, 173, 180, 192, 206, 219-23, 239-240, 264, 269, 281-84, 294-96. But it wasn't just Phillips.  Two other WWE executives, Pat Patterson (Vince McMahon's right-hand man) and Terry Garvin (Vice President of

---

[1] The operative complaint is Plaintiffs' Corrected First Amended Complaint ("FAC"), Dkt. No. 55.  Defendants have filed three separate motions to dismiss that Plaintiffs separately oppose, but to the extent that Defendants' motions adopt each other, Plaintiffs incorporate herein their separate opposition briefs.

Operations and Phillips's supervisor), also sexually harassed and abused Ring Boys, including some of the Plaintiffs. *Id*. ¶¶ 35, 68, 79, 85, 98, 211, 264-66.

Plaintiffs have reproduced photos of some of Phillips's abuse, particularly forcibly and sexually "wrestling" underaged boys to groom them and partially satisfy Phillips's foot fetish. *Id*. ¶¶ 50, 168-72, 194. The sexual abuse of Plaintiffs and other Ring Boys was committed in front of other WWE employees/agents like wrestlers, ring crew workers, and executives. *Id*. ¶¶ 40-42, 64, 68, 79, 225, 256. Phillips did not hide his grooming and foot fetish abuse of underaged boys. Indeed, it was so well-known within WWE that the wrestlers and some executives, including Vince McMahon, joked about it. Ms. McMahon even admitted Phillips's foot fetish was a running joke within WWE. *Id*. ¶¶ 20, 64-66. One former high-level employee revealed that "[t]he boys that the company hired to put up the ring and so forth, were being . . . had [that is, abused] by some of the folks who were in the wrestling [operations] side of things. ***And it was just generally known, by everybody, that it was going on.***" (emphasis added). "It was a mess. It was an absolute mess," and the McMahons "clearly knew what was going on, but really did nothing to stop it. . . . There was not a damn thing we could do about it." *Id*. ¶¶ 37-38, 68 (emphasis added).

Wrestlers, referees, employees, executives, and Vince and Linda McMahon all knew that Phillips had a foot fetish, openly acted on the fetish (and worse) in places like WWE dressing rooms, and that he was constantly seen with a group of underaged Ring Boys. *Id*. ¶¶ 36-38, 40-42, 50, 61-70, 85. Phillips constantly surrounded himself with a group of underaged Ring Boys before, during, and after WWE events, including at hotels, so much so that a former manager of WWE wrestlers nicknamed one Ring Boy "Mrs. Phillips" because he and Phillips were constantly together, and Vince McMahon knew about their relationship. *Id*. ¶¶ 54, 113-14. Vince McMahon confessed that he and Ms. McMahon knew about Phillips's "peculiar and unnatural interest" in

boys *before* 1988, and a third party confirmed the accuracy of the confessions. *Id*. ¶¶ 44-45, 48, 51, 55. Indeed, Vince McMahon admitted that he and Ms. McMahon saw Phillips with kids all the time, and Plaintiffs allege multiple direct interactions with both McMahons. *Id*. ¶¶ 48, 53, 114, 227-29, 264, 267, 300. Going back to the ***mid-1970s***, Vince McMahon gave Ring Boys, including one of the Plaintiffs, tasks for the purpose of WWE events, stayed in hotels with Ring Boys, and ate meals with them. *Id*. ¶¶ 53, 93, 114, 277, 282-84. The presence of Ring Boys with Phillips at WWE events going back to the 1970s (and his misconduct towards them) is corroborated by multiple eyewitness accounts, including reporting to Mr. McMahon and his father that Phillips was spotted at a WWE event performing a sexual act on a boy. *Id*. ¶¶ 40-42, 91.

When confronted with the obvious red flags associated with Phillips's foot fetish and transporting underaged boys across state lines (including to Maryland) to perform Ring Boy duties at WWE events, Vince McMahon merely responded "that's why we have gotten rid of [Phillips, Patterson, and Garvin]," which is an implicit admission that he knew or should have known about Phillips's actions and that such improper conduct necessitated firing Phillips, Patterson, and Garvin. *Id*. ¶ 55. In 1988, both McMahons finally fired Phillips due to his misconduct with underaged boys, but they re-hired him merely six weeks later with the caveat that he "steer clear from kids." *Id*. ¶¶ 14, 44, 48, 51, 58-59. Multiple WWE employees complained to WWE supervisors and to Vince McMahon about Phillips being on the road to WWE events with underaged boys, especially after Phillips was fired and then re-hired in 1988. *Id*. ¶ 63.

After being re-hired, Phillips continued abusing Ring Boys like Plaintiffs. *Id*. ¶¶ 14, 251-73. After even more allegations (and lawsuits) of sexual abuse against Ring Boys came to light in the early 1990s—in what became known as the Ring Boy Scandal—Defendants fired Phillips, Patterson, and Garvin. *Id*. ¶¶ 35-36, 79, 94-99, 109-12. WWE and the McMahons gave Phillips

*hundreds of thousands of dollars* to go away in 1992, and then systematically deleted Phillips from WWE video footage. *Id*. ¶¶ 87-89, 114. In the early 1990s, an FBI investigation into Phillips corroborated the Ring Boy Scandal, with the investigation identifying 10 victims of Phillips, and a WWE insider even provided the FBI a videotape of Phillips's abuse. The FBI stated that Phillips's conduct, shown in the video, was consistent with pedophilia. *Id*. ¶¶ 8, 18-19, 48.

The Ring Boy Scandal was just part of WWE's rampant culture of sexual misconduct that reached the top of the company: Vince McMahon. *For decades*, numerous individuals—including WWE wrestlers, employees, referees, and third parties—alleged sexual misconduct committed by Phillips and WWE executives, especially Vince McMahon, Patterson, and Garvin. *Id*. ¶¶ 25, 64-86, 115-43 (detailing myriad allegations and lawsuits). WWE's culture of tolerating and fostering sexual misconduct demonstrates that Defendants knew or should have known about the sexual abuse of Rings Boys like Plaintiffs, and such a culture allowed Phillips, Patterson, and Garvin to prey on underaged victims. *Id*. ¶¶ 141-42. WWE, its executives, and Vince and Linda McMahon not only failed to prevent such abuse but also inspired, cooperated in, and/or participated in similar misfeasance. *Id*. ¶ 143. They controlled WWE (including ring announcers like Phillips) through micromanaging and knew everything going on in the company. *Id*. ¶¶ 144-67. Vince McMahon has admitted that he would do anything to protect the WWE business including lying, cheating, and concealing potential wrongdoing. *Id*. ¶¶ 157-67.

Defendant WWE is the successor entity of multiple former iterations of the company, including the first of which was founded in 1953 by Vince McMahon's father. *Id*. ¶¶ 321, 323. Vince and Linda McMahon co-founded another former iteration of WWE in 1980 and acquired Vince's father's entity in 1982. *Id*. Maryland has been one of WWE's key locations from the company's earliest days, and WWE routinely held shows throughout Maryland—including in

Baltimore, Landover, and Salisbury—from the 1970s through 1992. *Id.* ¶¶ 329-31. WWE promoted and held **hundreds** of wrestling events and public appearances in Maryland throughout those decades. *Id.* (reproducing actual WWE advertisements for Maryland events). Nowadays, WWE and TKO continue to hold events in Maryland, including in Baltimore. *Id.* ¶ 336.

## III.    ARGUMENT

### A.    This Court has Personal Jurisdiction Over WWE and TKO

Plaintiffs need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*, No. GJH-19-1312, 2020 WL 1322948, at *4 (D. Md. Mar. 20, 2020) (quoting *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009)). "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Id.*

This Court can exercise specific personal jurisdiction over WWE and TKO for multiple reasons under Maryland's long-arm statute. Plaintiffs allege that WWE and TKO directly *or by an agent* purposefully availed themselves of the privilege of conducting activities within Maryland by: (1) transacting business or performing work or service in Maryland; (2) contracting to supply goods, food (concessions), services, or manufactured products (merchandise and memorabilia) in Maryland; (3) causing tortious injury in Maryland by an act or omission in Maryland; (4) causing tortious injury in Maryland or outside the state by an act or omission outside Maryland and regularly doing or soliciting business, engaging in any other persistent course of conduct in Maryland, or deriving substantial revenue from goods, food, services, or manufactured products used or consumed in Maryland; or (5) having an interest in, using, or possessing real property in Maryland. FAC ¶ 327 (citing Md. Code Ann., Cts. & Jud. Proc. § 6-103).

**1.     Plaintiffs Have Made a Prima Facie Showing Under § 6-103(b)(1) and (b)(2).**

Plaintiffs allege extensive and persistent business activities by WWE and TKO in Maryland for decades during the relevant time period of the complaint and continuing today. WWE directly or through agents transacted business in Maryland for decades through advertising and holding ***hundreds*** of WWE events in multiple cities throughout Maryland. *Id*. ¶¶ 329-30 (displaying actual advertisements for Maryland events).[2] WWE co-founder Vince McMahon conducted business in Maryland, including taping promotional videos for WWE events in Maryland and attending most WWE events in Maryland that were taped for TV. *Id*. ¶¶ 264, 294-300, 331-32. In Owings Mill, Maryland, on behalf of WWE, Vince McMahon hosted and taped about 100 weekly episodes of a TV program called "Tuesday Night Titans" connected to WWE's wrestling events. *Id*. ¶¶ 332-33. Also, Plaintiffs provide excerpts of actual WWE memoranda revealing the company's (and executives' like the McMahons) involvement in Maryland WWE events, including scheduling and organizing those events. *Id*. ¶¶ 334-35. The foregoing demonstrates the extensive business activities WWE and TKO have conducted in Maryland for decades. Defendant TKO incorrectly asserts that Plaintiffs plead no allegations connecting it to Maryland. *Compare id*. ¶ 322 (TKO became WWE's parent company in 2023) *with* ¶ 336 (WWE/TKO events in Baltimore from 2024); Section III.E., *infra* (discussing successor liability).

Because WWE and TKO cannot dispute their extensive business activities in Maryland, they instead challenge personal jurisdiction by contending that Plaintiffs' claims here do not arise out of and are not sufficiently based upon WWE's events in Maryland. Not so. Simply put: without WWE's events in Maryland, Plaintiffs would not have been sexually abused by WWE's pedophile

---

[2] *See also* Post Wrestling (June 16, 2025), https://www.postwrestling.com/2025/06/16/wwe-vince-linda-mcmahon-refile-motions-asking-court-to-throw-out-ring-boy-lawsuit/ (review of Cagematch.net's database of wrestling events suggests that WWE ran more than 230 events in Maryland in the 1980s).

employees in Maryland. Plaintiffs worked as Ring Boys for WWE events, for example setting up and dismantling the wrestling ring, and they were sexually abused in connection with events. FAC ¶¶ 3, 186, 201, 215, 222-23, 228, 235, 241, 248, 258-59, 276, 283, 295. Many of the Plaintiffs were transported across state lines for the purpose of WWE's Maryland events, highlighting that they would not have been there except for WWE's events. *Id*. ¶¶ 184, 201, 215-16, 222, 235, 244-48, 258-59, 264-65, 285. And the perpetrators here (Phillips, Patterson, and Garvin) were hired by and worked for WWE and Vince and Linda McMahon via their status as co-founders and high-ranking executives of WWE. *Id*. ¶ 35. The perpetrators used the WWE events to lure and groom Rings Boys like Plaintiffs so that they could sexually exploit them. *Id*. ¶¶ 3, 4, 6, 12, 26, 97, 258. Defendants WWE and TKO contend that Plaintiffs' claims are not related to WWE's advertising and TV programming in Maryland detailed above. Wrong again. Those activities in Maryland aided WWE's Maryland wrestling events. That direct connection also creates a connection with Plaintiffs' claims because they were lured to and worked at WWE's events in Maryland. Therefore, WWE's promoting, contracting, and scheduling WWE events in Maryland created the opportunity for WWE's predator employees to abuse Plaintiffs in Maryland in connection with WWE's events.

The abuse of Plaintiffs is inextricably linked to WWE's events in Maryland, which is more than sufficient for this court to exercise specific personal jurisdiction. "Maryland courts have long held that the long-arm statute confers jurisdiction as long as the claims asserted 'bear some relationship to the acts in the forum state.'" *Maxtena, Inc. v. Marks*, No. CIV.A. DKC 11-0945, 2012 WL 113386, at *7-8 (D. Md. Jan. 12, 2012) (quoting *Malinow v. Eberly*, 322 F.Supp. 594, 599 (D. Md. 1971)) (finding the corporate officer's participation in meetings and communications with plaintiff's Maryland-based employees gave him access to the proprietary information that he purportedly misappropriated, meaning that his Maryland contacts were relevant to plaintiff's

claims); *see also Finley*, 2020 WL 1322948, at *9 ("**[E]ven a single contact** with the forum can satisfy the transaction of business standard in subsection (b)(1).") (quoting *Hausfeld v. Love Funding Corp.*, 16 F. Supp. 3d 591, 599 (D. Md. 2014)) (emphasis added). Like *Maxtena*, WWE's Maryland events enabled WWE's predator employees to lure Plaintiffs to WWE's events and abuse them in Maryland in connection with the WWE events.

WWE and TKO contend that the out-of-state decision in *Edwardo v. Roman Catholic Bishop of Providence*, 579 F.Supp.3d 456, 474-76 (S.D.N.Y. 2022) is analogous, but it is not.[3] There, the court found insufficient business contacts because defendants' religious activities were targeted at Rhode Island (not New York), the priest's singular trip to New York was divorced from defendants' usual operations, and plaintiff's claims did not sufficiently arise out of the priest's New York business meeting. Unlike *Edwardo*, Plaintiffs here were all abused in connection with WWE events in Maryland at which they performed Ring Boy duties for the benefit of WWE.[4]

Further, Plaintiffs allege that WWE, through the McMahons as co-founders and executives, knew or should have known about Phillips's "peculiar and unnatural interest" in young boys, fired him for it, but rehired him six weeks later, and he went back to recruiting young Ring Boys to sexually exploit them. FAC ¶¶ 13-14. Wrestlers, referees, employees, executives, and the McMahons all knew that Phillips had a foot fetish, openly acted on the fetish (and worse) in places like WWE dressing rooms, and that he was constantly seen with a group of underaged Ring Boys. *Id*. ¶¶ 36-38, 40-42, 50, 61-70, 85. Ms. McMahon even admitted in a 1993 TV interview that Phillips had a foot fetish and that it was a running joke in the WWE, but she then claimed that it

---

[3] *See PC-16 Doe v. Hill Reg'l Career High Sch.*, 203 N.Y.S.3d 572, 573 (2024) (affirming prima facie showing that defendants are subject to personal jurisdiction; distinguishing *Edwardo* because plaintiff alleged sexual assault in connection with field trip before a choir performance, whereas the abuse in *Edwardo* took place at a separate location and separate time from the New York business meeting).

[4] Also factually distinguishable is *Beyond Sys., Inc. v. Kennedy W. Univ.*, 2006 WL 1554847, at *6 (D. Md. May 31, 2006) (sending unsolicited bulk e-mail did not arise out of defendants' minimal educational services in Maryland).

was being blown out of proportion even after a 16-year old boy complained. *Id*. ¶¶ 20-21.  Plaintiffs further allege that WWE had a culture of sexual misconduct that provided the opportunity for Phillips, Patterson, and Garvin to prey on underaged Ring Boys like Plaintiffs. *Id*. ¶¶ 102-08, 141-43, 157-67. Like the perpetrators, Vince McMahon *himself* has been the subject of sexual misconduct allegations and lawsuits for decades within WWE. *Id*. ¶¶ 115-43.

Therefore, Plaintiffs allege ample business- and tort-related actions in Maryland by WWE and its agents that are directly connected to the sexual abuse inflicted upon Plaintiffs in connection with WWE's events in the state, thereby satisfying §§ 6-103(b)(1). For § 6-103(b)(2), WWE and TKO cannot seriously dispute that the booking, contracting, and promotion activities in which the company and its agents engaged for WWE events in Maryland culminated in contracts to supply goods, food (concessions), services (WWE entertainment), or manufactured products (WWE merchandise and memorabilia) for the hundreds of WWE events in Maryland.  FAC ¶¶ 329-30. As explained above, Plaintiffs' claims are directly connected to WWE's contracts for events in Maryland, where Plaintiffs worked and were abused, which satisfies another prima facie showing.

### 2.    Plaintiffs Also Satisfy § 6-103(b)(3) – (b)(5).

Plaintiffs separately allege personal jurisdiction based on WWE (3) causing tortious injury in Maryland by an act or omission in Maryland; (4) causing tortious injury in Maryland or outside of Maryland by an act or omission outside Maryland and regularly doing or soliciting business, engaging in any other persistent course of conduct in Maryland, or deriving substantial revenue from goods, food, services, or manufactured products used or consumed in Maryland; and (5) having an interest in, using, or possessing real property in Maryland. § 6-103(b).

For § 6-103(b)(3), it authorizes jurisdiction based on acts taken in Maryland by the defendant *or its agent*, and all Plaintiffs allege that they were sexually abused in Maryland by

WWE's agents (Phillips and Patterson). FAC ¶¶ 184-86, 201, 215, 222, 235, 244-45, 248, 258-59, 264, 276, 285-89, 294-99.[5] The sexual misconduct committed by WWE's agents can be attributed to WWE and TKO. *See* Section B.2. *infra* (collecting authority and discussing ratification).

WWE and TKO argue that Plaintiffs do not allege facts suggesting that the McMahons knew or should have known about Phillips's and Patterson's abuse. Wrong. The McMahons were physically present at WWE events near the wrestling ring when Ring Boys were working with WWE's ring crew, including the pedophile Phillips. *See, e.g.*, FAC ¶ 227-28, 264-67, 300 (describing instances of the McMahons' presence and witnessing of Plaintiffs and Ring Boys with Phillips, Patterson, and Garvin as part of the ring crew). The McMahons' attendance at WWE events—including in Maryland—and knowledge of the Ring Boys' work at WWE events plus their knowledge of Phillips's "peculiar and unnatural interest" in young boys helped lead to the tortious injuries inflicted on Plaintiffs before, during, and after WWE events. Indeed, *Vince McMahon admitted* that both he and Ms. McMahon brought Phillips back to WWE after knowing and seeing for themselves that he was chasing after underaged boys in connection with WWE events. FAC ¶¶ 14, 44, 48, 51. Notably, the McMahons' presence at the July 1989 WWE event in Baltimore with John Doe 6 was *after* they fired Phillips in 1988 due to sexual abuse allegations but then re-hired him six weeks later with the caveat that he steer clear of boys (they saw that he did not but still left John Doe 6 in the room with Phillips, Patterson, and Garvin). *Id*. It is reasonable to infer that the McMahons' actions (or acquiescence) in Maryland helped cause Plaintiffs' injuries whenever the McMahons were at a Maryland WWE event with a Plaintiff, Phillips, and Patterson, particularly after the McMahons re-hired Phillips.[6] At the very least, John Doe 6 alleges an incident where the

---

[5] WWE and TKO falsely assert that John Does 1-3 have not pled injury in Maryland. *See id.* ¶¶ 184-86, 201, 215.

[6] It is reasonable to infer that Mr. McMahon was present at more WWE events in Maryland at which additional Plaintiffs (like John Does 4 and 6) worked as Ring Boys, because he attended most TV-taped WWE events. *Id.* ¶ 332.

McMahons' actions at a Maryland WWE event caused tortious injuries. *Id.* ¶ 265.

For § 6-103(b)(4), the defendant need not physically be in Maryland for personal jurisdiction to attach. Instead, it typically requires that a defendant had contacts with Maryland spanning multiple years and encompassing the fulfillment of multiple contracts. *Fidelis*, 771 F. Supp. 3d at 633. As discussed above, that is satisfied by virtue of WWE and TKO's involvement with hundreds of WWE events in Maryland *over the course of decades*.[7] Defendants argue that § 6-103(b)(4) is akin to general jurisdiction, meaning they would have to be "at home" in Maryland. That is wrong. The persistent course of conduct standard in § 6-103(b)(4) "is not tantamount to establishing general jurisdiction" but does require greater contacts than those necessary under § 6-103(b)(1). *Id.* (noting that the Fourth Circuit in *Pandit v. Pandit*, 808 F. App'x 179, 186–87 (4th Cir. 2020) has held that the standard requires Maryland contacts over a long period of time).

Even if this Court does not agree that WWE and TKO's actions constitute a persistent course of conduct in Maryland, another basis for personal jurisdiction exists under § 6-103(b)(4): Plaintiffs allege that Defendants, including Vince and Linda McMahon, have derived substantial revenue from goods, food, services, or manufactured products used or consumed at WWE events in Maryland.[8] As the co-founder of WWE, Mr. McMahon has earned a vast fortune from WWE's business, including business in Maryland. FAC ¶ 317 (since 2024, Vince McMahon has been selling hundreds of millions of dollars' worth of Defendant TKO stock); *cf.* ¶ 318 (to this day, Vince McMahon's wife, Linda McMahon, still holds over $50 million in stock assets, along with over $5 million in WWE-related dividend income). Defendants' vast financial interests and

---

[7] WWE and TKO cite *Phillips v. Brit. Airways*, 743 F. Supp. 3d 702, 707, 711-13 (D. Md. 2024), but it is distinguishable – there was no specific jurisdiction because the plaintiff's claims did not arise from tortious injury in Maryland; the plaintiff got a plane ticket from Washington, D.C. and was injured when disembarking in London.

[8] § 6-103(b)(4) includes "or" language that creates multiple bases: "Causes tortious injury . . . if he regularly does or solicits business, engages in any other persistent course of conduct in the State *or* derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." (emphasis added).

revenue over the decades highlights how personal jurisdiction over them in Maryland is appropriate. Indeed, "[i]t would violate a sense of fairness to permit the [individual defendants] to solicit, negotiate, and consummate corporate business in Maryland in which they personally had so direct and substantial an interest and then allow them to avoid responding in Maryland to legal charges addressed to them personally, which arise from those transactions." *Zeman v. Lotus Heart, Inc.*, 717 F. Supp. 373, 374–78 (D. Md. 1989) (plaintiff sued a California corporation and individual officers/ controlling stockholders for negligence and fraud; refusing to dismiss based on personal jurisdiction); *see also Sony Chemicals Eur., B.V. v. M/V Ingrita*, No. MJG-94-1688, 1995 WL 846692, at *2 (D. Md. Nov. 29, 1995) (negligence case; finding personal jurisdiction because the export company derived substantial revenue from the use of its services in Maryland).

For § 6-103(b)(5), WWE and TKO contend that Plaintiffs do not allege any connection to real property in Maryland.  But Plaintiffs conspicuously allege that from 1984-1986, in Owings Mill, Maryland, Vince McMahon hosted and WWE taped nearly 100 episodes of a TV Program called "Tuesday Night Titans" connected to WWE's events. FAC ¶ 333. Using and possessing real property in Maryland for taping "Tuesday Night Titans" is sufficient for personal jurisdiction, because Plaintiffs allege tortious injury during the same 1984-1986 time frame. *See id.* ¶¶ 192-250 (John Does 2, 3, 4, and 5 were all injured during that time). Moreover, WWE does not dispute (nor could it) that WWE used and possessed arenas hundreds of times in Maryland, at which the company promoted, contracted, and held its events – the same events where Plaintiffs were injured. Such substantial use and possession of real property in Maryland satisfies § 6-103(b)(5).

### 3.    Exercising Personal Jurisdiction Comports with Due Process.

Contrary to WWE and TKO's arguments otherwise, all three considerations in *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016) are satisfied here. First, WWE and TKO

baldly assert that Plaintiffs' allegations regarding WWE's hundreds of Maryland events over the course of decades are conclusory and insufficient. In doing so, they ignore Plaintiffs' extensive allegations detailed above regarding WWE's, the McMahons', and their agents' involvement in business activities that culminated in hundreds of WWE events held throughout Maryland for decades.[9] It is public knowledge that WWE has held hundreds of events in Maryland over the years. *See* FN 2 *supra*. Moreover, Plaintiffs reproduced actual advertisements for Maryland events and actual WWE memoranda revealing the company's (and executives' like the McMahons' involvement in scheduling and organizing Maryland WWE events. FAC ¶¶ 329-30, 334-35.

Additionally, on behalf of WWE, Mr. McMahon personally attended TV-taped WWE events in Maryland, personally promoted WWE events in Maryland, taped and hosted about 100 episodes of a TV program in Maryland connected to WWE's events, and was otherwise involved in booking and scheduling WWE events in Maryland. FAC ¶¶ 330-36. And as detailed above, WWE's Maryland events provided the opportunity for WWE's agents (Phillips, Patterson, and Garvin) to sexually harass and abuse Plaintiffs before, during, and after those WWE events. *See CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 766 (D. Md. 2009) (finding defendant's actions satisfy due process because defendant initiated business in Maryland and plaintiff's claims were related to defendant's licensing agreement with plaintiff).[10]

Second, Plaintiffs' claims against arise out of WWE's business activities in Maryland,

---

[9] Those allegations satisfy many of the purposeful availment considerations: whether the defendant reached into Maryland to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in Maryland; whether the defendant made in-person contact with the resident of the forum in Maryland regarding the business relationship; the nature, quality and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within Maryland.

[10] WWE and TKO rely on distinguishable cases. *DeBellis v. Woodit*, 728 F. Supp. 3d 330, 341–46 (D. Md. 2024) (involving a horse sale in Florida and alleged tortious actions that did *not* occur in Maryland); *Doe v. Archdiocese of Philadelphia*, No. CV 19-20934(FLW), 2020 WL 3410917, at *3 (D.N.J. June 22, 2020) (no purposeful availment because plaintiff did not allege that Archdioce's employment and assignment decisions were carried out in New Jersey and did not allege that Archdiocese directed priest to conduct activities in New Jersey or take plaintiff there).

because without promoting, contracting, and holding WWE events in Maryland, Plaintiffs would not have been sexually abused by WWE employees in Maryland. That's particularly evident, because most of the Plaintiffs were transported across state lines into Maryland for the purpose of attending and working at WWE's events. FAC ¶¶ 184, 201, 215-16, 222, 235, 244-48, 258-59, 264-65, 285. Plaintiffs' claims are inextricably linked to WWE's events in Maryland, because WWE and Vince and Linda McMahon allowed their agents (Phillips, Patterson, and Garvin) to use underaged Ring Boys like Plaintiffs to work at WWE's events. Also linked is Phillips's and Patterson's sexual abuse of Plaintiffs at hotels before and after WWE events, because without the WWE events (and Plaintiffs working there), Plaintiffs would not have been transported into Maryland and given lodging at hotels before and after the events, often staying with other WWE employees and wrestlers which highlights how the hotels were part of the necessary logistics for WWE events. *Id*. ¶¶ 93, 184-85, 196, 198, 202, 212, 222, 244-45, 264-66, 281-83, 296 (Plaintiffs met WWE wrestlers at hotels, stayed in the same hotel as WWE executives like Patterson, Garvin, and Vince McMahon, and even ate breakfast and other meals with WWE employees including Vince McMahon). All those facts, particularly that all Plaintiffs were sexually abused in Maryland in connection with WWE's events, distinguish this case from *Coleman v. KIPP DC Supporting Corporation*, 2019 WL 1126357, at *3-4 (D. Md. Mar. 12, 2019) (estranged wife of pedophile husband sued his employer; alleged emotional distress injuries were suffered in Florida, not Maryland, and claims arose out of defendants' acts or omissions in the District of Columbia).

Third, exercising personal jurisdiction over WWE and TKO is constitutionally reasonable. Defendants assert with hardly any support or analysis that defending in this Court would be burdensome and constitutionally unreasonable. Contrary to their assertion, defending a lawsuit in Maryland where they availed themselves *numerous* times for business *for decades* through

hundreds of WWE events that generated substantial revenue, is not unreasonable, let alone unreasonable enough to offend due process. Moreover, to the extent any burden exists for Defendants, it is outweighed by Maryland's interest in adjudicating claims involving child sex abuse and Plaintiffs' interest in obtaining convenience and effective relief in this forum. Look no further than the Supreme Court of Maryland upholding the constitutionality of Maryland's Child Victims Act of 2023, which allowed Plaintiffs to timely bring their claims. *Roman Cath. Archbishop of Washington v. Doe*, 489 Md. 514, 521 (Md. 2025); FAC at ¶ 337; *Owens v. State*, 352 Md. 663, 690 (Md. 1999) ("The state has an unparalleled interest in protecting children from the potentially devastating effects of sexual abuse and exploitation . . .").

**B.  Plaintiffs Sufficiently Plead Multiple Duties Owed By WWE and TKO**

To survive a Fed. R. Civ. P. 12(b)(6) motion, the allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

WWE and TKO challenge the sufficiency of Plaintiffs' allegations regarding the duty element of their negligence-based claims. But Plaintiffs allege multiple duties owed to them: duties by virtue of special relationships between Plaintiffs and WWE and also between the predators (Phillips, Patterson, and Garvin) and WWE; a duty to exercise reasonable care to avoid foreseeable injury to others; a duty to provide a reasonably safe place to work and to warn of dangers; a duty to take action for the aid or protection of business invitees; statutory duties to report suspected child abuse; and a duty to hire and retain competent staff and not any person who they know or

reasonably should know poses a risk to others. FAC ¶¶ 349-56, 370, 380-81. Defendants assert that there is no duty to protect another from the tortious acts by a third person. But there are exceptions: (1) if the defendant has control over the conduct of the third party; (2) if there is a special relationship between the defendant and the third party *or* between the defendant and the plaintiff; or (3) if there is a statute that is designed to protect a specific class of people. *Est. of Madden v. Sw. Airlines, Co.*, No. 1:21-CV-00672-SAG, 2021 WL 2580119, at *3 (D. Md. June 23, 2021). All those exceptions apply here, which vitiate Defendants' attempt to avoid their duties.

### 1.    WWE Had Control Over its Employees/Agents.

Plaintiffs allege that WWE had control (through Mr. and Ms. McMahon) over the perpetrators Phillips, Patterson, and Garvin. FAC ¶¶ 343, 349, 358-60, 372, 390. As co-founders and the highest-ranking corporate officers of WWE, the McMahons, especially Vince, were notorious for micromanaging everything at WWE, including ring announcers like Phillips. *Id*. ¶¶ 144-167, 317. Vince McMahon also showed control over Phillips at WWE events, when he instructed Phillips to take John Doe 4 away from the arena hallway where he and Hulk Hogan appeared to be arguing and when Vince instructed John Doe 7 to carry wrestlers' suitcases from the hotel to Phillips's vehicle. *Id*. ¶¶ 229, 283. WWE and TKO cannot seriously dispute that Mr. McMahon directed and controlled Garvin (V.P. of Operations and Phillips's supervisor) and Patterson (known as Vince's right-hand man and close confidante). *Id*. ¶ 35; *see also id*. ¶¶ 147, 334-35 (reproducing internal WWE memoranda to WWE executives like the McMahons, Patterson, and Garvin regarding personal appearances and TV-taped events in Maryland, including a memorandum from Pat Patterson). Demonstrating their control over WWE employees/agents, Vince and Linda McMahon were directly involved in the firing and re-hiring of Phillips after allegations of his child sex abuse surfaced, including giving him the directive to steer clear of

16

underaged boys and paying him hundreds of thousands of dollars to go away. *Id*. ¶¶ 14, 44-45, 48, 51, 58, 114, 163. Additionally, the McMahons demonstrated their control specifically during the Ring Boys scandal when they ultimately decided whether Phillips, Patterson, and Garvin would leave or remain part of WWE. *Id*. ¶¶ 55, 94-106. Further, Phillips, Garvin, and Patterson were acting for the benefit of WWE and Vince and Linda McMahon by allowing Ring Boys to work at WWE events as part of the ring crew. The foregoing allegations prevent Defendants WWE and TKO from relying on the supposed rule that there is no duty to protect another (Plaintiffs and other Ring Boys) from the tortious acts by a third person (the child predators within WWE: Phillips, Patterson, and Garvin). *See, e.g.*, Restatement (Second) of Torts § 317 cmt. c. (a master is under a duty to exercise reasonable care to control his servant while acting *outside* the scope of employment so as to prevent intentional harm to others, which includes liability from retaining servants who are in the habit of misconduct dangerous to others).[11]

### 2. WWE Owed All Plaintiffs a Duty By Virtue of Special Relationships.

WWE owed all Plaintiffs a duty to protect them from third parties' (Phillips, Patterson, and Garvin) conduct because of special relationships. FAC ¶¶ 350, 358. A special relationship to protect another may be established: (1) by statute or rule; (2) by a contractual or other private relationship; or (3) indirectly or impliedly by virtue of the relationship between the tortfeasor and a third party." *Seiberlich v. Deossa*, No. CV TDC-23-0560, 2024 WL 343298, at *3–4 (D. Md. Jan. 30, 2024). Duty arises from "the inherent nature of the relationship between the parties," like when "one party undertak[es] to protect or assist the other party, and thus often induc[es] reliance upon the conduct

---

[11] This Restatement section applies to the facts here, because the servants (Phillips, Patterson, and Garvin) were "upon the premises in possession of the master or upon which [they are] privileged to enter only as [the] servant" (the arenas and hotels for WWE events) or were using the chattels of the master (WWE tickets and props like championship belts), and the master (WWE through Vince and Linda McMahon) knew or had reason to know about the ability to control the servants and the necessity and opportunity for exercising such control.

of the acting party." *Id*. A "special relationship" may exist where there is an "element of dependence and ceding of self-control by the injured party." *Id*.

First, a special relationship existed by virtue of Maryland's reporting rules for suspected instances of child abuse. FAC ¶ 355 (citing Md. Code Ann., Fam. Law §§ 5-705 and 5-705.1). By its language, § 5-705 applies to "a person in [Maryland]"—which includes WWE any time its agents like Mr. and Ms. McMahon entered the State—not just Maryland residents. *See Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 382 Md. 170, 184 (Md. 2004) ("To achieve that purpose . . . 5–705 require[s] ***anyone*** who has reason to believe that a child has been subjected to abuse or neglect to notify either DSS or the appropriate law enforcement agency.") (emphasis added); *David N. v. St. Mary's Cnty. Dep't of Soc. Servs.*, 198 Md. App. 173, 182–83 (Md. Ct. Spec. App. 2011) ("the duty to report in section 5–705 applies to all children suspected of being abused or neglected, without any limitation based upon a child victim's state of residence or the place where the abuse or neglect is thought to have happened.").[12] Therefore, a special relationship existed between WWE and Plaintiffs because of the Maryland rule that WWE agents like the McMahons report suspected child abuse committed by WWE's predator employees/agents, namely Phillips.

Second, WWE was in a special relationship with Plaintiffs and other Ring Boys through the inherent nature of their working relationship, because all Plaintiffs performed Ring Boy duties for the benefit of WWE and its co-founders Vince and Linda McMahon. FAC ¶¶ 186, 201, 215, 223, 228, 242, 259, 276, 283, 295, 298-99. WWE, through its agents (particularly Mr. McMahon, Phillips, Patterson, and Garvin), permitted Ring Boys to work at WWE events and be given assistance such as money, lodging, food, and entertainment. *Id*. ¶¶ 178, 182-83, 186, 201, 215,

---

[12] Defendants argue that § 5-705.1 was enacted in 2003 and does not apply here. But as *David N.* makes clear, the reporting requirement under §§ 5-705 and 5-705.1 is the same, the difference is that under the latter a report of abuse will be made to a Maryland local department but then forwarded to the appropriate out-of-state authority.

226, 235, 248, 258-59, 276, 295. Moreover, that working relationship included Plaintiffs' dependence and ceding of self-control, because they were *underaged* boys working for adults, almost all of whom traveled out of state to Maryland for WWE events and depended on WWE agents, particularly Phillips and Patterson, for food and lodging. That dependence also flowed to the McMahons because Mr. McMahon admitted that he and Ms. McMahon saw Phillips with kids all the time, and Plaintiffs allege multiple direct interactions with them. *Id.* ¶¶ 48, 53, 114, 227-29, 264, 267, 300; *see also Seiberlich*, 2024 WL 343298, at *3–4 (plaintiff plausibly alleged a special relationship because he was hired to work as a referee who arguably ceded self-control because he was not free to leave the field while working).

Third, WWE was in a special relationship with Phillips, Patterson, and Garvin through control over them as employees/agents of WWE. *Est. of Madden*, 2021 WL 2580119, at *3 (a special relationship can exist between the defendant and the third party). Phillips, Patterson, and Garvin were all important individuals within WWE who worked there for a long time, including closely with the McMahons. FAC ¶¶ 1, 35; *see also id.* ¶¶ 51, 101-06 (Vince and Linda McMahon had the power to hire and fire Phillips, Patterson, and Garvin). WWE and TKO state, without any support, that Phillips was not an employee of WWE. Plaintiffs' allegations make clear that Phillips worked for WWE and the McMahons for decades, and they directed his actions, hired, and fired him. In any event, WWE and TKO can be in a special relationship with independent contractors. *Seiberlich*, 2024 WL 343298, at *4 (league defendants were in special relationship with independent contractor referee who they hired).

WWE and TKO assert that the alleged sexual misconduct by Phillips, Patterson, and Garvin cannot be attributed to WWE and TKO. Yes, it can. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 758-59 (1998) (citing four circumstances in which agency principles impose liability on

employers even where employees commit torts outside the scope of employment, including where the employer was negligent or the employee was aided in accomplishing the tort by the existence of the agency relation);[13] *cf. Cramer v. Hous. Opportunities Comm'n of Montgomery Cnty.*, 304 Md. 705, 720–21 (Md. 1985) (reversing directed verdict for defendant in negligence and sexual assault case because a jury could have found causation between negligent hiring and plaintiff's injuries given that building inspector used his position to take advantage of plaintiff and her home).

Moreover, WWE and TKO can be liable for the sexual misconduct by Phillips, Patterson, and Garvin through ratification. *Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*, 2025 WL 1592464, at *5-6 (D. Md. June 5, 2025) (ratification may be inferred from acquiescence to an employee's unauthorized act due to an employer's silence and failing to disavow the act, whether it knew or "should have known" of the act); *Doe #1 v. Bd. of Educ. of Somerset Cnty.*, No. CV RDB-22-1491, 2023 WL 375189, at *5 (D. Md. Jan. 24, 2023) (school board's acquiescence to sexual misconduct supported vicarious liability despite the conduct falling outside normal scope of employment).[14] For that reason, WWE and TKO's citation to *Rachel-Smith v. FTData, Inc.*, 202 F. Supp. 2d 400, 405–06 (D. Md. 2002) is misplaced, because in that Title VII case the plaintiff did not allege that defendant ratified the assaults or knew or should have known of the conduct beforehand. *Cf. Jordan v. W. Distrib. Co.*, 286 F. Supp. 545, 549-50 (D. Md. 2003), *aff'd*, 135 F. App'x 582 (4th Cir. 2005) (allowing negligence-based claim to proceed because plaintiff alleged

---

[13] *See id.* ("Thus, although a[n employee's] sexual harassment is outside the scope of employment ..., an employer can be liable, nonetheless, where its own negligence is a cause of the harassment[, *i.e.*,] if it knew or should have known about the conduct and failed to stop it."); *see also P.J. v. City of Jersey City*, No. 21-CV-20222, 2022 WL 16949544, at *5-9 (D.N.J. Nov. 15, 2022) (involving police officer's sexual assault of a child in the 1970s; finding that plaintiff stated a claim for vicarious liability); *K.J. v. J.P.D.*, No. 20-CV-14177, 2023 WL 4103013, at *3 (D.N.J. June 21, 2023) ("Plaintiff alleges childhood sexual abuse at the hands of a police officer who used his badge to exercise power and obtain *in loco parentis* authority over the Plaintiff"; denying defendant's motion to reconsider).

[14] *See also Gray v. Koch Foods, Inc.*, 580 F. Supp. 3d 1087, 1131-32 (M.D. Ala. 2022), *aff'd*, No. 22-13214, 2025 WL 1932964 (11th Cir. July 15, 2025) (sufficient showing of ratification for employer liability where HR director observed and participated in sexual harassment but did not remedy it).

that employer knew or should have known that two employees were potentially dangerous).

Here, Plaintiffs allege that Phillips, Patterson, and Garvin used their positions within WWE to abuse Ring Boys and that Defendants acquiesced not only in the use of Ring Boys for WWE work but also in WWE's culture of sexual misconduct. *See, e.g.*, FAC ¶¶ 1, 3, 26, 38, 49, 75, 85, 95-96, 98, 115-43. Moreover, Plaintiffs allege that Vince McMahon *himself* inspired, tolerated, and participated in sexual misconduct within WWE that further supports ratification of similar misconduct by Phillips, Patterson, and Garvin. *Id*. ¶¶ 25, 64-86, 115-43 (detailing myriad allegations and lawsuits involving WWE's culture of sexual misconduct against Ring Boys, wrestlers, WWE employees, and third parties).

Fourth, WWE stood in loco parentis with Plaintiffs, which involves voluntarily taking custody of a child and assuming parental obligations. *Wilson v. State*, No. 1947, Sept.term,2021, 2023 WL 2314838, at *10-12 (Md. Ct. Spec. App. Mar. 1, 2023).  WWE stood in loco parentis over Ring Boys, who were transported across state lines to work, housed overnight, and relied on WWE agents for basic needs.  Courts have recognized in loco parentis duties in comparable sexual abuse circumstances involving schools, coaches, and custodial overnight supervision, including *implied* consent to care for and supervise children.  *See, e.g.*, *Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 668 (D. Md. 2021); *Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d 659, 669 (D. Md. 2012); *Wilson*, 2023 WL 2314838, at *10-12; *Adams v. Sec'y, Fla. Dep't of Corr.*, No. 23-13455, 2025 WL 1639254, at *5-6 (11th Cir. June 10, 2025).[15]

WWE and TKO argue that loco parentis should not apply because Plaintiffs and other Ring

---

[15] WWE and TKO cite factually inapposite cases. *Molock v. Dorchester Cnty. Fam. YMCA, Inc*., 139 Md. App. 664, 673-75 (Md. Ct. Spec. App. 2001) (no evidence that the local (not out-of-state) YMCA exercised custodial control and discipline over students and they were free to leave the YMCA premises, including when they fought in the parking lot); *Fletcher v. Maryland Transit Admin.*, 741 F. App'x 146, 151 (4th Cir. 2018) (unpublished) (school did not have custodial control over students when they were fighting in a neighborhood and attacked a resident outside his home).

Boys were free to leave the WWE events where they worked. Not so. Almost all Plaintiffs traveled across state lines and had to stay overnight for the purpose of WWE's Maryland events. FAC ¶¶ 184, 201, 215-16, 222, 235, 244-48, 258-59, 264-65, 285. And although John Doe 8 did not travel across state lines into Maryland, he was not free to simply leave his work for WWE events without facing discipline, especially after being transported by Mr. McMahon's agent Phillips. *Seiberlich*, 2024 WL 343298, at *3–4 (plaintiff was hired to work as a referee who arguably ceded self-control because he was not free to leave the field while working). It defies common sense for Defendants to suggest that underaged boys were free to leave (by themselves) out-of-state WWE events where they worked, after being transported there by WWE agents, particularly Phillips. Moreover, at least one Plaintiff alleges that when he expressed a desire to go home, Phillips made him travel on a bus with other WWE workers and spend the night.  FAC ¶¶ 178, 181. And Vince and Linda McMahon were aware of their and WWE's in loco parentis standing with respect to Ring Boys like Plaintiffs working for them and WWE.[16]

### 3.    WWE Owed All Plaintiffs a Duty Arising from Foreseeability.

Plaintiffs allege myriad facts that WWE (through the McMahons and other corporate agents) knew or should have known about the possibility of child sex abuse committed by Phillips and Patterson. *Supra* Section II. In short, Plaintiffs allege that it was known by everyone in WWE—wrestlers, referees, employees, executives, and Vince and Linda McMahon—that Phillips had a foot fetish, openly acted on the fetish (and worse) in places like WWE dressing rooms, and that he was constantly seen with a group of underaged Ring Boys. FAC ¶¶ 36-38, 40-42, 50, 61-

---

[16] *Id*. ¶¶ 282-83 (Vince McMahon stayed in hotels and ate meals with Ring Boys, including some Plaintiffs); ¶ 54 (Vince McMahon knew that a Ring Boy nicknamed "Mrs. Mel Phillips" had his parents' permission to be with Phillips for the purpose of WWE events); ¶ 68 (Nelson Sweglar, WWE's company operations manager, said "These were kids that were usually from broken homes whose parents would only be too glad to send them off to do a day's work." "***Everyone knew what was going on***.") (emphasis added). On behalf of WWE and the McMahons, Phillips even had direct contact with Ring Boys' parents before taking them to WWE events. *Id*. ¶¶ 92, 110, 176, 254.

70, 85. WWE and TKO criticize sources[17] cited by Plaintiffs as support for WWE's and the McMahons' knowledge of Phillips's "peculiar and unnatural interest" in boys. But ***Vince McMahon confessed*** that he and Ms. McMahon knew about Phillips's inappropriate proclivity *before* they temporarily fired him for his sexual misconduct in 1988, and a third party confirmed the accuracy of the confessions. *Id.* ¶¶ 43-45, 48, 51, 55. Vince McMahon also admitted that he and Ms. McMahon saw Phillips with kids all the time, and Plaintiffs allege multiple direct interactions with the McMahons. *Id.* ¶¶ 48, 53, 114, 227-29, 264, 267, 300. Notably, Plaintiffs allege that going back to at least the ***mid-1970s*** Vince McMahon had been giving Ring Boys like John Doe 7 tasks for the purpose of WWE events, staying in hotels with Ring Boys like John Doe 7, and eating meals with them. *Id.* ¶¶ 93, 277, 282-84. The presence of Ring Boys with Phillips at WWE events going back to the 1970s (and his misconduct with them) is corroborated by at least one eyewitness. *Id.* ¶ 91 (friend of Phillips recounted memories from the 1970s of meeting Phillips when he worked for WWE, witnessing Phillips "wrestle" underaged boys, and seeing Phillips preoccupied with his group of Ring Boys). It is reasonable to infer that Mr. McMahon saw or knew about the same misconduct, because Phillips openly engaged in his grooming/sexualized "wrestling" and foot fetish for others to see, including the FBI's videotape evidence shot by a WWE employee. *Id.* ¶¶ 8, 10, 50, 91, 113, 192, 194, 224-25, 243, 260. And Vince McMahon intensely micromanaged WWE, including ring announcers like Phillips, further supporting foreseeability. *Id.* ¶¶ 73, 144-167 (he had "eyes and ears everywhere").[18]

Strikingly similar to the facts here are those in *Doe #1*, 2023 WL 375189, at **2, 5, where

---

[17] Defendants criticize Plaintiffs' allegations that a WWE wrestler recounted how he was present at a WWE event around 1982-83 when Phillips was spotted performing a sexual act on a boy *and that it was reported to Mr. McMahon and his father*. *Id.* ¶ 42. But Plaintiffs' allegations must be taken as true.

[18] All those well-pled facts belie Defendants' false characterization of Plaintiffs' allegations that the earliest WWE knew or had reason to know of Phillips's misconduct was in 1992.

a school nurse leveraged her position to groom and manipulate underaged students with food, small gifts, and rides to gain access and coerce them into sexual activities. Plaintiffs alleged that the Board knew of the nurse's "red flag grooming behaviors" based on the Board's *agents'* firsthand observations and reports filed by both parents and school personnel, but the Board failed to take action and the nurse engaged in sexual misconduct with the underaged students. *Id*. The court concluded that plaintiffs' negligence claim could proceed against the Board *under direct and vicarious liability* theories. *Id*.; *cf*. *Loveless v. Estevez*, No. 01985,sept.term,2017, 2019 WL 4187465, at *12 (Md. Ct. Spec. App. Sept. 3, 2019) (finding foreseeable that a sexual relationship would result from "boundary violation conduct" of teacher inappropriately contacting and visiting student at her home even though Board wasn't aware of sexual relationship itself).[19]

Moreover, Plaintiffs allege sexual *harassment* by Phillips, Patterson, and Garvin because such misconduct—like the WWE's culture of rampant sexual misconduct—supports the foreseeability of the sexual *abuse* against Plaintiffs and other Ring Boys, which is covered by the Child Victims Act. *See, e.g.*, FAC ¶ 79 (WWE wrestler saw sexual harassment of Ring Boys; it was "very common knowledge that these kids were being used as pawns for [Phillips, Patterson, and Garvin]"; ¶ 98 (Patterson and Garvin harassing Ring Boy); ¶¶ 64-86, 115-143 (detailing myriad harassment and abuse allegations and lawsuits); ¶ 211 (Garvin harassing comment and touching John Doe 3 in front of Phillips); ¶ 256 (WWE wrestler's harassing touching of John Doe 6 in front of multiple WWE employees/agents including Phillips and Patterson). Like the red flag grooming and boundary violations in *Doe #1* and *Loveless*, all sexual harassment and grooming

---

[19] Defendants' cited case is inapposite. *Doe v. Alsaud*, 12 F.Supp.3d 674, 680–81 (S.D.N.Y. 2014) (no allegations of prior sexual misconduct or actual/constructive knowledge of prior acts). Also, Defendants quote *New River Elec. Corp. v. Occupational Safety & Health Rev. Comm'n*, 25 F.4th 213, 220-21 (4th Cir. 2022) (involving employee burn accident and OSHA safety violations) to assert that when a supervisory employee commits a violation, the employer loses its ability to detect and prevent misconduct. But *New River* further explained that an employer's constructive knowledge and liability can still be imposed when a supervisor's misconduct was "reasonably foreseeable." Here, Plaintiffs allege many facts regarding the foreseeability of sexual misconduct within WWE.

committed by Phillips, Patterson, and Garvin, including in the open at WWE events for others to witness, makes it foreseeable that those same child predators would sexually abuse Ring Boys. *Seiberlich*, 2024 WL 343298, at \*3–4 (foreseeability reflects "*current societal standards* with respect to an acceptable nexus between the negligent act and the ensuing harm.") (cleaned up) (emphasis added).

### 4. WWE Owed All Plaintiffs An Employment-Related or Business Invitee Duty.

Plaintiffs allege that they performed Ring Boy duties as part of the ring crew, working for WWE and Vince and Linda McMahon: setting up the wrestling ring, running errands for WWE executives, handling wrestlers' luggage, and selling wrestler photographs in the arena lobby. FAC ¶¶ 3, 186, 201, 215, 222-23, 228, 235, 241, 248, 258-59, 276, 283, 295. For the work, Plaintiffs received compensation, mostly in cash but also in the form of food, lodging, and admission to the WWE events (including special access to WWE wrestlers and prime seating). *Id.* ¶¶ 12, 21, 186, 201, 209, 212, 215, 223, 226, 231, 235, 240, 248, 258-59, 269, 289, 295. Like Plaintiffs, other Ring Boys were also paid for their services, and Ms. McMahon even re-hired one after he alleged sexual abuse. *Id.* ¶¶ 96, 99-107, 110. Although WWE's predator agents (Phillips, Patterson, and Garvin) mostly oversaw WWE's ring crew, Mr. McMahon also directed Ring Boys and inspected the ring and their work. *Id.* ¶¶ 93, 114, 229, 264, 277, 282-84, 300. Those facts support an employment relationship between WWE and Ring Boys like Plaintiffs.[20] WWE tries to distance itself from the Ring Boys by contending that Phillips hired and paid them. But Ring Boys' work was indisputably for the benefit of WWE's events, Phillips worked directly for WWE, part of Ring Boys' compensation was WWE tickets to its events, and Patterson also paid Ring Boys cash. *Id.* ¶

---

[20] Based on factors such as the payment of wages, the power to control the employee's conduct, whether the work is part of the employer's regular business, the power to select and hire the employee, and the power to discharge.

295.  Notably, Defendants Vince and Linda McMahon argue in their respective motions that any employment-related duties are nondelegable to them individually and belong to WWE.

And even if this Court decided that WWE did not owe Plaintiffs an employment-related duty, at the very least, Plaintiffs were business invitees before, during, and after WWE events (and invitees of the McMahons as WWE's co-founders), especially when they were accompanied by WWE agents and given special access to WWE events. That also attaches a duty on WWE to protect Plaintiffs from dangerous conditions *and the actions of third persons like employees*. *See Miller v. Live Nation Worldwide, Inc.*, No. CV CBD-14-2697, 2016 WL 374103, at *3-4 (D. Md. Feb. 1, 2016) (finding that concert operator had duty to protect business-invitee plaintiff from crowd-surfing because of actual or constructive notice it was occurring at the venue).[21] WWE and TKO rely on a readily distinguishable case decided at the summary judgment stage. *Winffel v. Westfield Prop. Mgmt., LLC*, No. 19-CV-00838-LKG, 2022 WL 1591405, at *6 (D. Md. May 19, 2022) (mall owed no duty for shooting incident because there was no recent criminal activity there and defendants did not know the shooter posed a threat to the mall). In contrast, as detailed above, WWE and the McMahons had actual or constructive notice of Phillips's inappropriate proclivities for boys and WWE's culture of sexual misconduct generally.

### 5.    WWE Owes John Does 6 and 8 an Additional Duty Because of the McMahons' Personal Treatment of Them

When Plaintiffs like John Does 6 and 8 allege negligence because of a defendant's direct and personal treatment of them, there is a relaxed standard for whether a duty exists. *See Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 762–63 (D. Md. 2015) (explaining that when plaintiffs allege

---

[21] *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388 (Md. Ct. Spec. App. 1997) (an owner *or occupier* of land has a duty to protect a business invitee from unreasonable risk).  WWE and the McMahons occupied or otherwise possessed arenas for their WWE events. FAC ¶ 356.

a defendant's negligence in their direct and personal treatment of plaintiffs, then "[t]here is no set formula for the determination of whether a duty exists" and instead the determination is a policy question of whether the specific plaintiff is entitled to protection from the acts of the defendant).[22]

Here, John Doe 8 alleges Vince McMahon attended WWE events in Maryland, inspected the ring, and spoke to Phillips, Patterson, and Garvin in the presence of John Doe 8 while he worked. FAC ¶ 300. Those WWE events occurred in 1982, well after Vince McMahon became aware in the 1970s that Ring Boys like John Doe 7 had been working as part of the ring crew, staying in hotels with Mr. McMahon, Phillips, and others, and sometimes eating meals with them. *Id.* ¶¶ 53, 93, 114, 277, 282-84. That Phillips was openly engaging in sexual misconduct with underaged boys in the 1970s should have led Mr. McMahon to protect John Doe 8 from Phillips, rather than allow Phillips, Patterson, and Garvin to oversee John Doe 8's work on the ring. *Id.* ¶ 91 (eyewitness account in mid-1970s described Phillips's preoccupation with Ring Boys).

John Doe 6 alleges a specific incident involving Vince and Linda McMahon when they were in a dressing room at a July 1989 WWE event in Baltimore, Maryland with Phillips, Patterson, and Garvin. *Id.* ¶ 264. That event was *after* they fired Phillips in 1988 due to child sex abuse allegations but then re-hired him six weeks later with the caveat that he steer clear of young boys. *Id.* ¶¶ 14, 44, 48, 51. In violation of the McMahons' directive, Mr. McMahon left John Doe 6 in the dressing room with the predators after Ms. McMahon summoned him to leave, and he did not protect John Doe 6 (like separating Phillips from him). *Id.* at ¶ 264. Phillips and Patterson sexually abused John Doe 6 after that event. *Id.* at ¶¶ 264-66.

---

[22] That analysis considers factors such as the foreseeability of harm, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury, the moral blame attached to defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved. *Id.*; *Est. of Madden*, 2021 WL 2580119, at *3-4 (same).

The McMahons' direct and personal treatment of John Does 6 and 8, on behalf of WWE, is an additional reason to find that WWE owes duties to John Does 6 and 8 because it was foreseeable that Phillips would harm them, there is a close connection between the McMahons (and WWE) and John Does 6 and 8 due to their interaction, there is moral blame for allowing Phillips to violate the McMahons' (and WWE's) directive that Phillips steer clear of boys, and it is a vital policy interest to prevent all sexual abuse of children. *See Doe*, 123 F. Supp. 3d at 763 (denying motion to dismiss where plaintiffs alleged that defendants were negligent in their direct and personal treatment of plaintiffs, as evidenced by their failure to adhere to university's policies and procedures).

## C.     Plaintiffs Have Sufficiently Pled the Other Elements of Negligence

WWE and TKO give short shrift to breach and causation but nonetheless challenge the sufficiency of Plaintiffs' pleading those elements. Defendants contend that breach of duty is not readily apparent, but they only cite FAC ¶¶ 357, 373 and ignore the rest of the complaint (incorporated into both causes of action) that details how Defendants allowed their predator employees (Phillips, Patterson, and Garvin) to use WWE to facilitate their sexual misconduct with underaged Ring Boys, including grooming them with tickets to WWE events, special access to wrestlers, and work as part of WWE's ring crew. *See, e.g.*, *id*. at ¶¶ 1-6, 10, 23, 345-47, 358-68, 372; *Seiberlich*, 2024 WL 343298, at *4 (sufficient allegations that league defendants breached their duty by failing to establish procedures to monitor misconduct, ensure reporting, and discipline offenders to prevent the assault). WWE and TKO also criticize Plaintiffs' allegations for causation by repeating their argument that harm to Plaintiffs was not foreseeable. For the same reasons detailed above, the sexual misconduct committed by Phillips, Patterson, and Garvin was foreseeable. *See id*. at *1, 4 (plaintiff sufficiently pled causation because league defendants did not

have effective reporting procedures in place to prevent assault by coach after a *single* prior assault by the same coach).

**D.**    **Plaintiffs Have Sufficiently Pled a Claim for Negligent Hiring, Supervision, Training and Retention**

WWE and TKO argue that the second cause of action is duplicative of Plaintiffs' separate negligence claim, requiring dismissal of the negligence claim. Not so. *See Doe v. Mercy High Sch., Inc.*, No. 1:23-CV-01184-JRR, 2024 WL 3103396, at *23 (D. Md. June 24, 2024) (allowing negligence claim to proceed, because whether to dismiss for duplication is *discretionary* and the facts alleged for negligence versus negligent hiring/supervision/retention "are not true mirror images"). Here, Plaintiffs' two causes of action are not mirror images, because the general negligence claim includes Defendants' liability for direct actions whereas the second cause of action focuses on failure to manage and oversee WWE's child predators and negligently hiring and retaining them. *See Loveless*, 2019 WL 4187465, at *11-12 (negligence and negligent hiring/supervision claims were substantially similar but the latter focused more on failure to train and/or discipline the perpetrator while the inappropriate relationship developed); *Robinson v. Bd. of Educ. of Washington Cnty.*, No. 1:22-CV-01102-ELH, 2023 WL 2499854, at *22-23 (D. Md. Mar. 14, 2023) (finding negligent employment claim *not* redundant).

**E.**    **Plaintiffs Have Sufficiently Pled Successor Liability for Defendant TKO**

Only Defendant TKO challenges the sufficiency of the pleading for successor liability. As TKO acknowledges, a corporation can acquire the liabilities of another in multiple ways: (1) the successor expressly or impliedly agrees to assume the liabilities of the predecessor; (2) the transaction may be considered a de facto merger; or (3) the successor may be considered a 'mere continuation' of the predecessor. Successor liability is a mixed question of law and fact, with a "heavier factual component." *Playmark Inc. v. Perret*, 253 Md. App. 593, 608 (Md. Ct. Spec. App.

29

2022). Here, Defendant TKO was formed in 2023 to be the parent company of WWE and a Ultimate Fighting Championship ("UFC") entity that merged together under TKO's umbrella. FAC ¶¶ 322-26 (TKO "is a premium sports and entertainment company [that] owns iconic properties including UFC . . . [and] WWE"). As the declared owner of WWE, it is a reasonable inference that Defendant TKO expressly or impliedly agreed to assume the liabilities of WWE, particularly because TKO became the sole managing member of WWE.[23] Even Defendant Ms. McMahon says in her declaration that Defendant TKO is "WWE's successor company."[24] Dkt. No. 57-2, ¶ 7; *see also Ramlall v. MobilePro Corp.*, 202 Md. App. 20, 36 (Md. Ct. Spec. App. 2011) (successor means an entity surviving a merger); *Playmark*, 253 Md. App. at 608 (affirming successor liability after merger).

## IV.    CONCLUSION

The eight Plaintiffs who have courageously come forward to seek justice for their horrendous childhood trauma should be allowed to proceed with their negligence-based claims against WWE and TKO.[25]  Plaintiffs have made a prima facie showing of specific personal jurisdiction under nearly all portions of the Maryland long-arm statute, so Defendants' Fed. R. Civ. P. 12(b)(2) motion should be denied. Regarding Defendants' challenge to the sufficiency of the pleading, Plaintiffs have raised plausible claims to relief for all elements of their claims, so the Fed. R. Civ. P. 12(b)(6) motion should also be denied in full.

---

[23] *See* WWE SEC Form 15 (September 25, 2023), https://corporate.wwe.com/f/docs/sec-filings/16945468.PDF (describing the merger).

[24] TKO is specifically a successor of World Wrestling Entertainment, Inc., which is a non-surviving entity of the UFC/WWE merger when TKO caused that non-surviving entity to convert to and become known as World Wrestling Entertainment, LLC with TKO as the parent company. FAC ¶ 322.

[25] Should this Court grant dismissal, Plaintiffs respectfully request leave for jurisdictional discovery into Defendants' Maryland events and/or leave to amend the complaint. *Hartford Mut. Ins. Co. v. Hoverzon, LLC*, No. CV SAG-20-2713, 2021 WL 461760, at *3 (D. Md. Feb. 9, 2021) (ordering limited jurisdictional discovery in the interest of judicial efficiency); *Stifel, Nicolaus & Co., Inc. v. Firemoon Energy, LLC*, No. GJH-16-628, 2016 WL 8673135, at *2 (D. Md. Oct. 28, 2016) (whether to permit jurisdictional discovery is the court's discretion); Fed. R. Civ. P. 15(a)(2).

Dated: July 28, 2025                          _/s/ William H. Murphy, Jr._

William H. "Billy" Murphy, Jr. (Bar No. 07985)
Phylecia R. Faublas (Bar No. 30435)
**MURPHY, FALCON & MURPHY**
1 South Street, Suite 3000
Baltimore, Maryland 21202
Telephone: (410) 951-8750
billy.murphy@murphyfalcon.com
phylecia.faublas@murphyfalcon.com

Greg G. Gutzler
Emma Bruder
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, New York 10017
Telephone: (646) 933-1000
ggutzler@dicellolevitt.com
ebruder@dicellolevitt.com

Adam Prom
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
aprom@dicellolevitt.com

Mark A. DiCello
Robert F. DiCello
**DICELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, OH  44060
Telephone: (440) 953-8888
madicello@dicellolevitt.com
rfdicello@dicellolevitt.com

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 28th day of July 2025, I caused a copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system and electronic notification of such filing is sent to all CM/ECF participants and counsel of record.

*<u>/s/ William H. Murphy, Jr.</u>*

William H. "Billy" Murphy, Jr.