**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JOHN DOE 1, et al., | Civil Action No. 1:24-cv-3487 |
| Plaintiffs, | Hon. James K. Bredar |
| v. | |
| WORLD WRESTLING ENTERTAINMENT, LLC, et al., | **HEARING REQUESTED** |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT
<u>LINDA MCMAHON'S MOTION TO DISMISS</u>**

William H. "Billy" Murphy, Jr. (AIS # 6912010153)
Phylecia R. Faublas (AIS # 2206140025)
**MURPHY, FALCON & MURPHY**
1 South Street, Suite 3000
Baltimore, Maryland 21202
Telephone: (410) 951-8750
billy.murphy@murphyfalcon.com
phylecia.faublas@murphyfalcon.com

Greg G. Gutzler
Emma Bruder
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, New York 10017
Telephone: (646) 933-1000
ggutzler@dicellolevitt.com
ebruder@dicellolevitt.com

Adam Prom
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
aprom@dicellolevitt.com

Mark A. DiCello
Robert F. DiCello
**DICELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, OH 44060
Telephone: (440) 953-8888
madicello@dicellolevitt.com
rfdicello@dicellolevitt.com

Dated: July 28, 2025

## **TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................................... 1

II.   FACTUAL BACKGROUND ..................................................................................... 1

III.  ARGUMENT ............................................................................................................. 5

    A.    This Court has Personal Jurisdiction Over Ms. McMahon .................................. 5

        1.    Plaintiffs Have Made a Prima Facie Showing Under § 6-103(b)(1) and (b)(2). ... 5

        2.    Plaintiffs Also Satisfy § 6-103(b)(3) – (b)(5). ........................................... 11

        3.    Exercising Personal Jurisdiction Comports with Due Process. ................ 14

    B.    Plaintiffs Sufficiently Plead Multiple Duties Owed to Them By Ms. McMahon. 17

        1.    Ms. McMahon has Control Over WWE Employees/Agents. ................... 18

        2.    Ms. McMahon Owed All Plaintiffs a Duty By Virtue of Special Relationships. .. 19

        3.    Ms. McMahon Owed All Plaintiffs a Duty Arising from Foreseeability. . 24

        4.    Ms. McMahon Owed All Plaintiffs An Employment-Related or Business Invitee Duty. .. 26

        5.    Ms. McMahon Owes John Doe 6 an Additional Duty Because of Her Personal Treatment of Him. .. 27

    C.    Plaintiffs Sufficiently Plead a Request for Punitive Damages ........................... 29

IV.   CONCLUSION ......................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aarow Electrical Solutions v. Tricore Systems, LLC*,
  No. CV JKB-22-2363, 2024 WL 1443743 (D. Md. Apr. 3, 2024).........................................29

*Adams v. Sec'y, Fla. Dep't of Corr.*,
  No. 23-13455, 2025 WL 1639254 (11th Cir. June 10, 2025)................................................23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................................17

*Birrane v. Master Collectors, Inc.*,
  738 F. Supp. 167 (D. Md. 1990) .......................................................................................10

*Burlington Indus., Inc. v. Ellerth*,
  524 U.S. 742 (1998).........................................................................................................21

*CMH Manufacturing v. Neil*,
  620 F. Supp. 3d 316 (D. Md. 2022) ..................................................................................30

*CoStar Realty Info., Inc. v. Meissner*,
  604 F. Supp. 2d 757 (D. Md. 2009) .............................................................................13, 15

*Cramer v. Hous. Opportunities Comm'n of Montgomery Cnty.*,
  304 Md. 705 (Md. 1985)...................................................................................................21

*David N. v. St. Mary's Cnty. Dep't of Soc. Servs.*,
  198 Md. App. 173 (Md. Ct. Spec. App. 2011) ...................................................................20

*Doe #1 v. Bd. of Educ. of Somerset Cnty.*,
  No. CV RDB-22-1491, 2023 WL 375189 (D. Md. Jan. 24, 2023).............................22, 25, 26

*Doe v. Alsaud*,
  12 F. Supp.3d 674 (S.D.N.Y. 2014)...................................................................................25

*Doe v. Bd. of Educ. of Prince George's Cnty.*,
  888 F. Supp. 2d 659 (D. Md. 2012) ..................................................................................22

*Doe v. Salisbury Univ.*,
  123 F. Supp. 3d 748 (D. Md. 2015)...............................................................................28, 29

*Edwardo v. Roman Catholic Bishop of Providence*,
  579 F. Supp. 3d 456 (S.D.N.Y. 2022)................................................................................9, 10

*Est. of Madden v. Sw. Airlines, Co.*,
    No. 1:21-CV-00672-SAG, 2021 WL 2580119 (D. Md. June 23, 2021) ...................18, 21, 28

*Fidelis Cybersecurity, Inc. v. Partner One Cap., Inc.*,
    771 F. Supp. 3d 614 (D. Md. 2025) ............................................................................. *passim*

*Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*,
    2025 WL 1592464 (D. Md. June 5, 2025) ...............................................................................22

*Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*,
    No. GJH-19-1312, 2020 WL 1322948 (D. Md. Mar. 20, 2020) ...........................................5, 7

*Fletcher v. Maryland Transit Admin.*,
    741 F. App'x 146 (4th Cir. 2018) .........................................................................................23

*Gray v. Koch Foods, Inc.*,
    580 F. Supp. 3d 1087 (M.D. Ala. 2022), *aff'd*, No. 22-13214, 2025 WL
    1932964 (11th Cir. July 15, 2025) ........................................................................................22

*Hampton v. Wells Fargo Bank, N.A.*,
    No. CV DLB-22-1712, 2023 WL 6200009 (D. Md. Sept. 22, 2023) .....................................10

*Hartford Mut. Ins. Co. v. Hoverzon, LLC*,
    No. CV SAG-20-2713, 2021 WL 461760 (D. Md. Feb. 9, 2021) ..........................................30

*Hayes v. Pratchett*,
    205 Md. App. 459 (Md. Ct. Spec. App. 2012) ......................................................................27

*Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*,
    382 Md. 170 (Md. 2004) ................................................................................................20, 23

*K.J. v. J.P.D.*,
    No. 20-CV-14177, 2023 WL 4103013 (D.N.J. June 21, 2023) .............................................21

*Laureate Educ., Inc. v. Megahed*,
    No. AW–10–749, 2010 WL 2651895 (D. Md. July 1, 2010) ...................................................8

*Loveless v. Estevez*,
    No. 01985, 2019 WL 4187465, (Md. Ct. Spec. App. Sept. 3, 2019) ...............................25, 26

*Martynuska v. Nat'l Payment Relief, LLC*,
    No. CIV.A. RDB-14-0265, 2014 WL 4214866 (D. Md. Aug. 22, 2014) ..............................13

*Maxtena, Inc. v. Marks*,
    No. CIV.A. DKC 11-0945, 2012 WL 113386 (D. Md. Jan. 12, 2012) ....................................9

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
    888 F. Supp. 2d 691 (D. Md. 2012), *aff'd*, 722 F.3d 591 (4th Cir. 2013) ...............................8

*Miller v. Live Nation Worldwide, Inc.*,
No. CV CBD-14-2697, 2016 WL 374103 (D. Md. Feb. 1, 2016) ........................................27

*Mitchell v. Rite Aid of Maryland, Inc.*,
290 A.3d 1125 (Md. App. 2023) .......................................................................................25

*Molock v. Dorchester Cnty. Fam. YMCA, Inc.*,
139 Md. App. 664 (Md. Ct. Spec. App. 2001) ..................................................................23

*Owens v. State*,
352 Md. 663 (Md. 1999) ...................................................................................................17

*P.J. v. City of Jersey City*,
No. 21-CV-20222, 2022 WL 16949544 (D.N.J. Nov. 15, 2022) .........................................21

*Pandit v. Pandit*,
808 F. App'x 179 (4th Cir. 2020) .....................................................................................13

*PC-16 Doe v. Hill Reg'l Career High Sch.*,
203 N.Y.S.3d 572 (2024) ....................................................................................................9

*Phillips v. Brit. Airways*,
743 F. Supp. 3d 702 (D. Md. 2024) ..................................................................................10

*Planet Techs., Inc. v. Planit Tech. Grp., LLC*,
735 F. Supp. 2d 397 (D. Md. 2010) ....................................................................................8

*Roman Cath. Archbishop of Washington v. Doe*,
489 Md. 514 (Md. 2025) ...................................................................................................17

*Seiberlich v. Deossa*,
No. CV TDC-23-0560, 2024 WL 343298 (D. Md. Jan. 30, 2024)
..........................................................................................................................19, 21, 23, 26

*Sony Chemicals Eur., B.V. v. M/V Ingrita*,
No. MJG-94-1688, 1995 WL 846692 (D. Md. Nov. 29, 1995) ...........................................14

*Stifel, Nicolaus & Co., Inc. v. Firemoon Energy, LLC*,
No. GJH-16-628, 2016 WL 8673135 (D. Md. Oct. 28, 2016) ...........................................30

*Tennant v. Shoppers Food Warehouse Md. Corp.*,
115 Md. App. 381 (Md. Ct. Spec. App. 1997) ..................................................................27

*Universal Leather, LLC v. Koro AR, S.A.*,
773 F.3d 553 (4th Cir. 2014) ...........................................................................................14

*Walters v. McMahen*,
684 F.3d 435 (4th Cir. 2012) ...........................................................................................17

*Willey v. Bd. of Educ. of St. Mary's Cnty.*,
   557 F. Supp. 3d 645 (D. Md. 2021) .......................................................22

*Wilson v. State*,
   No. 1947, 2023 WL 2314838 (Md. Ct. Spec. App. Mar. 1, 2023) ...................................22, 23

*Zeman v. Lotus Heart, Inc.*,
   717 F. Supp. 373 (D. Md. 1989) .........................................................13

**Statutes**

Maryland's Child Victims Act of 2023 ............................................................1, 16, 26

Md. Code Ann., Cts. & Jud. Proc. § 6-103 ............................................................ *passim*

Md. Code Ann., Fam. Law §§ 5-705 and 5-705.1 ..............................................................20, 21

**Other Authorities**

Fed. R. Civ. P. 12(b)(2)...............................................................30

Fed. R. Civ. P. 12(b)(6)...............................................................17, 30

Fed. R. Civ. P. 15(a)(2)...............................................................30

Restatement (Second) of Torts § 317 cmt. c ...............................................................19

## I.    INTRODUCTION

This action is brought by survivors of sexual harassment and abuse committed by a WWE ringside announcer and other WWE executives who groomed, exploited, and sexually abused underaged children often referred to as Ring Boys, whose jobs were to assist the WWE's ring crew that was responsible for setting up and dismantling the ring for WWE's events. Plaintiffs all suffered sexual abuse in Maryland and brought their claims under the Maryland's Child Victims Act of 2023. Plaintiffs bring this action against the child predators' employer: Defendants WWE, TKO, and Vince and Linda McMahon (co-founders of WWE) because they: (i) knew or should have known about the child predators' abuse of Ring Boys; (ii) had duties to prevent them, and (iii) further acquiesced, inspired, and/or participated in the rampant culture of sexual misconduct that permeated within WWE.

Defendant Linda McMahon seeks dismissal,[1] disputing personal jurisdiction and the sufficiency of Plaintiffs' negligence-based claims. Her motion should be denied in full, and the Plaintiff-survivors should be allowed to pursue justice for their immense suffering.

## II.    FACTUAL BACKGROUND

From the 1970s through the early 1990s, a prominent ringside announcer and ring crew chief, Mel Phillips, worked for WWE and as an agent of WWE co-founders Vince and Linda McMahon for WWE events, including in Maryland. FAC ¶¶ 1, 4-5, 184, 186, 201, 209, 223, 228-29, 248, 268, 276, 283, 289, 295, 299. Phillips exploited his position with WWE to lure, groom, and sexually abuse underaged Ring Boys. *Id*. ¶¶ 2-5, 49, 92-93, 97, 109-110, 173, 180, 192, 206, 219-23, 239-40, 264, 269, 281-84, 294-96. But it wasn't just Phillips. Two other WWE executives,

---

[1] The operative complaint is Plaintiffs' Corrected First Amended Complaint ("FAC"), Dkt. No. 55. Defendants have filed three separate motions to dismiss that Plaintiffs separately oppose, but to the extent that Defendants' motions adopt each other, Plaintiffs incorporate herein their separate opposition briefs.

Pat Patterson (Vince McMahon's right-hand man) and Terry Garvin (Vice President of Operations and Phillips's supervisor), also sexually harassed and abused Ring Boys, including some of the Plaintiffs. *Id*. ¶¶ 35, 68, 79, 85, 98, 211, 264-66.

Plaintiffs have reproduced photos of some of Phillips's abuse, particularly forcibly and sexually "wrestling" underaged boys to groom them and partially satisfy Phillips's foot fetish. *Id*. ¶¶ 50, 168-72, 194. The sexual abuse of Plaintiffs and other Ring Boys was done in front of other WWE employees/agents like wrestlers, ring crew workers, and executives. *Id*. ¶¶ 40-42, 64, 68, 79, 225, 256. Phillips did not hide his grooming and foot fetish abuse of underaged boys. Indeed, it was so well-known within WWE that the wrestlers and some executives, including Vince McMahon, joked about it. Ms. McMahon even admitted Phillips's foot fetish was a running joke in the WWE. *Id*. ¶¶ 20, 64-66. One former high-level employee revealed that "[t]he boys that the company hired to put up the ring and so forth, were being . . . had [that is, abused] by some of the folks who were in the wrestling [operations] side of things. ***And it was just generally known, by everybody, that it was going on.***" (emphasis added). "It was a mess. It was an absolute mess," and the McMahons "clearly knew what was going on, but really did nothing to stop it. . . . There was not a damn thing we could do about it." *Id*. ¶¶ 37-38, 68 (emphasis added).

Wrestlers, referees, employees, executives, and Vince and Linda McMahon all knew that Phillips had a foot fetish and that he openly acted on the fetish (and worse) in places like WWE dressing rooms, and that he was constantly seen with a group of underaged Ring Boys. *Id*. ¶¶ 36-38, 40-42, 50, 61-70, 85. Phillips constantly surrounded himself with a group of underaged Ring Boys before, during, and after WWE events, including at hotels, so much so that a former manager of WWE wrestlers nicknamed one Ring Boy "Mrs. Phillips" because he and Phillips were constantly together, and Vince McMahon knew about their relationship. *Id*. ¶¶ 54, 113-14. Vince

McMahon confessed that he and Ms. McMahon knew about Phillips's "peculiar and unnatural interest" in boys *before* 1988, and a third party confirmed the accuracy of the confessions. *Id*. ¶¶ 44-45, 48, 51, 55. Indeed, Vince McMahon admitted that he and Ms. McMahon saw Phillips with kids all the time, and Plaintiffs allege multiple direct interactions with him and Ms. McMahon. *Id*. ¶¶ 48, 53, 114, 227-29, 264, 267, 300. Going back to the **mid-1970s**, Vince McMahon had been giving Ring Boys, including one of the Plaintiffs, tasks for the purpose of WWE events, staying in hotels with Ring Boys, and sometimes eating meals with them. *Id*. ¶¶ 93, 277, 282-84. The presence of Ring Boys with Phillips at WWE events going back to the 1970s (and his misconduct towards them) is corroborated by multiple eyewitness accounts, including reporting to Vince McMahon and his father that Phillips was spotted in a car at a WWE event performing a sexual act on an underaged boy. *Id*. ¶¶ 40-42, 91.

When confronted with the obvious red flags associated with Phillips's foot fetish and transporting underaged boys across state lines (including to Maryland) to perform Ring Boy duties at WWE events, Vince McMahon merely responded "that's why we have gotten rid of [Phillips, Patterson, and Garvin]," which is an implicit admission that he knew or should have known about Phillips's actions and that such improper conduct necessitated firing Phillips, Patterson, and Garvin. *Id*. ¶ 55. In 1988, Vince and Linda McMahon finally fired Phillips due to his misconduct with underaged boys, but they inexplicably re-hired him merely six weeks later with the caveat that he "steer clear from kids." *Id*. ¶¶ 14, 44, 48, 51, 58-59. Multiple WWE employees complained to WWE supervisors and to Vince McMahon about Phillips being on the road to WWE events with underaged boys, especially after Phillips was fired and then re-hired in 1988. *Id*. ¶ 63.

After being re-hired, Phillips continued abusing Ring Boys like Plaintiffs. *Id*. ¶¶ 14, 251-73. After even more allegations (and lawsuits) of sexual abuse against Ring Boys came to light in

the early 1990s – in what became known as the Ring Boy Scandal – Defendants fired Phillips, Patterson, and Garvin. *Id*. ¶¶ 35-36, 79, 94-99, 109-12. WWE and the McMahons gave Phillips *hundreds of thousands of dollars* to go away in 1992, and then systematically deleted Phillips from WWE video footage. *Id*. ¶¶ 87-89, 114. In the early 1990s, an FBI investigation into Phillips corroborated the Ring Boy Scandal with their investigation identifying 10 victims of Phillips. Further, a WWE insider provided the FBI a videotape of Phillips's abuse. The FBI also stated that Phillips's conduct, shown in the video, was consistent with pedophilia. *Id*. ¶¶ 8, 18-19, 48.

The Ring Boy Scandal was just part of WWE's rampant culture of sexual misconduct that reached the top of the company: Vince McMahon. *For decades*, numerous individuals—including WWE wrestlers, employees, referees, and third parties—have alleged sexual misconduct committed by Phillips and WWE executives, especially Vince McMahon, Patterson, and Garvin. *Id*. ¶¶ 25, 64-86, 115-43 (detailing myriad allegations and lawsuits). WWE's culture of tolerating and fostering sexual misconduct demonstrates that Defendants knew or should have known about the sexual abuse of Rings Boys like Plaintiffs, and such a culture allowed Phillips, Patterson, and Garvin to prey on underaged victims. *Id*. ¶¶ 141-42. WWE, its executives, and Vince and Linda McMahon not only failed to prevent such abuse but also inspired, cooperated in, and/or participated in similar misfeasance. *Id*. ¶ 143. They controlled WWE (including ring announcers like Phillips) through micromanaging and knew everything going on in the company. *Id*. ¶¶ 144-67. As detailed more below, Ms. McMahon was a co-founder of WWE and confidante of her husband Vince McMahon who helped run the business including booking and promoting WWE's events, including in Maryland; she was directly involved in the firing and re-hiring of Phillips; she was directly involved in dealing with and concealing WWE's scandals, including the Ring Boy Scandal; and she saw and personally interacted with multiple Ring Boys, including at least one of

the Plaintiffs. Both McMahons, particularly Vince, would do anything to protect their WWE business including lying, cheating, and concealing potential wrongdoing. *Id.* ¶¶ 102-08, 157-67.

## III.    ARGUMENT

### A.    <u>This Court has Personal Jurisdiction Over Ms. McMahon</u>

Plaintiffs need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*, No. GJH-19-1312, 2020 WL 1322948, at *4 (D. Md. Mar. 20, 2020) (quoting *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009)). "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Id.*

This Court can exercise specific personal jurisdiction over Ms. McMahon for multiple reasons under Maryland's long-arm statute. Plaintiffs allege that Ms. McMahon directly *or by an agent* purposefully availed herself of the privilege of conducting activities within Maryland by: (1) transacting business or performing any character of work or service in Maryland; (2) contracting to supply goods, food (concessions), services, or manufactured products (merchandise and memorabilia) in Maryland; (3) causing tortious injury in Maryland by an act or omission in Maryland; (4) causing tortious injury in Maryland or outside of Maryland by an act or omission outside Maryland and regularly doing or soliciting business, engaging in any other persistent course of conduct in Maryland, or deriving substantial revenue from goods, food, services, or manufactured products used or consumed in Maryland; or (5) having an interest in, using, or possessing real property in Maryland. FAC ¶ 327 (citing Md. Code Ann., Cts. & Jud. Proc. § 6-103).

### 1.    **Plaintiffs Have Made a Prima Facie Showing Under § 6-103(b)(1) and (b)(2).**

Plaintiffs allege extensive and persistent business activities by Ms. McMahon in Maryland

5

for decades during the relevant time period of the complaint. She co-founded WWE and worked there as a corporate officer (from 1980-1993), the President (from 1993-2000), and the CEO (from 1997-2009) and was sometimes referred to as the "co-chief executive." FAC ¶ 318. In those roles, she directly or through WWE agents transacted business in Maryland for decades through advertising and holding **hundreds** of WWE events in multiple cities throughout Maryland. *Id*. ¶¶ 329-30 (displaying actual advertisements for Maryland events).[2] Ms. McMahon's argument that she did not *personally* conduct business in Maryland is a red herring, because she indisputably conducted WWE's business in Maryland directly and through WWE's agents. In fact, Plaintiffs provide excerpts of actual memoranda revealing Ms. McMahon's involvement in Maryland WWE events, including her and her husband Vince McMahon's WWE agents scheduling and organizing those events. *Id*. ¶¶ 334-35 (WWE executives, including Ms. McMahon, participated in booking, contracting, and/or scheduling WWE events in Maryland). Ms. McMahon splits hairs by contending in her declaration that she did not have "responsibility for" marketing or promoting events in Maryland or selecting locations for WWE events. Dkt. 57-2 ¶¶ 10-11. But "responsibility" is not the same as *involvement*, and her declaration does not dispute that she was *involved in* contracting, scheduling, and promoting WWE events, including in Maryland. After all, her name is on a WWE interoffice memorandum from one of her agents, Ed Cohen, confirming WWE television-taped events in Maryland in October 1988. FAC ¶ 335. Moreover, her declaration admits that she was involved in marketing WWE's corporate brand – which indisputably was marketed for WWE events in Maryland. Dkt. 57-2 ¶ 10.

Ms. McMahon argues that her WWE-related business activities in Maryland do not count

---

[2] *See also* Post Wrestling (June 16, 2025), https://www.postwrestling.com/2025/06/16/wwe-vince-linda-mcmahon-refile-motions-asking-court-to-throw-out-ring-boy-lawsuit/ (review of Cagematch.net's database of wrestling events suggests that WWE ran more than 230 events in Maryland in the 1980s).

for specific jurisdiction over her. Wrong. "Defendants' argument that contacts made on behalf of a corporation cannot subject the individual to personal jurisdiction misconstrues the case law . . . where the corporate agent is directly and personally involved in the alleged injury, the individual defendants' status as agents of their employer does not shield their contacts with the forum state from consideration in the personal jurisdiction analysis." *Finley*, 2020 WL 1322948, at *7. "**[E]ven a single contact** with the forum can satisfy the transaction of business standard in subsection (b)(1)." *Id*. at *9 (quoting *Hausfeld v. Love Funding Corp.*, 16 F. Supp. 3d 591, 599 (D. Md. 2014)) (emphasis added).

Multiple cases in this district have refused to dismiss on personal jurisdiction grounds claims against individual corporate executives like Ms. McMahon. In *Fidelis Cybersecurity, Inc. v. Partner One Cap., Inc.*, 771 F. Supp. 3d 614, 634 (D. Md. 2025), the court found that "a survey of more recent caselaw in this district indicates that corporate officers or agents can be held liable for the torts that they personally commit, or which they inspire or participate in, even though performed in the name of the corporation." (internal quotation omitted). In *Fidelis*, the court noted that a defendant does not need to have ever been physically present in Maryland to come under the reach of § 6-103(b)(1), because transacting business simply requires that the defendant's actions culminate in purposeful activity within Maryland. *Id*. at 630. There, plaintiffs alleged that a CEO engaged in negotiations with plaintiffs' Maryland-based management team that culminated in a contractual agreement, and the court found that "[s]uch activity clearly meets the standard for 'transacting business' under the meaning of § 6-103(b)(1)." *Id*. at 630-31 (collecting cases finding personal jurisdiction where out-of-state defendants "transacted business" in Maryland where they engaged in negotiations over the course of weeks).[3]

---

[3] *See also, e.g.*, *Finley*, 2020 WL 1322948, at *7-8 (finding personal jurisdiction over three individual defendants because one personally solicited business from Maryland plaintiffs and all participated in

Likewise, Ms. McMahon can be held liable for the torts that she personally committed, or inspired or participated in, even though performed in the name of WWE. In other words, exercising specific personal jurisdiction over Ms. McMahon is not based merely on her role as one of the highest-ranking executives at WWE; rather, it is based on her involvement in actions (*e.g.* scheduling, organizing, and promoting WWE events in Maryland, not to mention allowing Phillips and Patterson to work such events with Ring Boys) that led to Plaintiffs' sexual abuse. Ms. McMahon relies on *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 699-701 (D. Md. 2012), *aff'd*, 722 F.3d 591 (4th Cir. 2013), but that case is readily distinguishable because there the only fact establishing the CEO's contact with Maryland was a single, isolated social media post referring to a realtor in Maryland.

Ms. McMahon suggests that Plaintiffs' claims here do not arise out of and are not sufficiently based upon WWE's events in Maryland. Not so. Simply put: without WWE's events in Maryland, Plaintiffs would not have been sexually abused by WWE's (and by extension Vince and Linda McMahon's) pedophile employees in Maryland. Plaintiffs worked as Ring Boys for WWE events, and they were sexually abused in connection with those events. FAC ¶¶ 3, 186, 201, 215, 222-23, 228, 235, 241, 248, 258-59, 276, 283, 295. Many of the Plaintiffs were transported across state lines for the purpose of WWE's Maryland events, highlighting that they would not have been there except for WWE's events. *Id.* ¶¶ 184, 201, 215-16, 222, 235, 244-48, 258-59, 264-65, 285. And the perpetrators here (Phillips, Patterson, and Garvin) were hired by and worked for

---

negotiations that culminated in an agreement to provide services in Maryland); *Planet Techs., Inc. v. Planit Tech. Grp., LLC*, 735 F. Supp. 2d 397, 400-404 (D. Md. 2010) (finding personal jurisdiction over a CEO of a Virginia corporation, because the CEO participated in selecting the allegedly infringing mark, controlled the service mark, directed the company's counsel to file for federal trademark registration, and instructed his company to provide competing services); *Laureate Educ., Inc. v. Megahed*, No. AW–10–749, 2010 WL 2651895, at *8–9 (D. Md. July 1, 2010) (holding that a corporate executive had "transacted business" with her Maryland-based employer by attending business meetings in Baltimore on a monthly basis for two years and engaging in frequent communications with her Maryland-based colleagues).

Vince and Linda McMahon via their status as co-founders and high-ranking executives of WWE. *Id*. ¶ 35. Therefore, Ms. McMahon's involvement in booking, contracting, and/or scheduling WWE events —along with marketing WWE's brand for such events—created the opportunity for WWE's predator employees to abuse Plaintiffs in Maryland in connection with WWE events. It is unnecessary for Ms. McMahon to have been physically present in Maryland to come under the reach of § 6-103(b)(1), because her actions culminated in purposeful activity within Maryland. *Fidelis*, 771 F. Supp. 3d at 630-31.

The abuse of Plaintiffs is inextricably linked to WWE's events in Maryland, which is more than sufficient to exercise specific personal jurisdiction. "Maryland courts have long held that the long-arm statute confers jurisdiction as long as the claims asserted 'bear some relationship to the acts in the forum state.'" *Maxtena, Inc. v. Marks*, No. CIV.A. DKC 11-0945, 2012 WL 113386, at *7-8 (D. Md. Jan. 12, 2012) (quoting *Malinow v. Eberly*, 322 F. Supp. 594, 599 (D. Md. 1971)) (finding the corporate officer's participation in meetings and communications with plaintiff's Maryland-based employees gave him access to the proprietary information that he purportedly misappropriated, meaning that his Maryland contacts were relevant to plaintiff's claims).

Ms. McMahon contends that the out-of-state decision in *Edwardo v. Roman Catholic Bishop of Providence*, 579 F. Supp. 3d 456, 474-76 (S.D.N.Y. 2022) is analogous to the facts of this case, but it is not.[4] There, the court found insufficient business contacts because defendants' religious activities were targeted at Rhode Island (not New York), the priest's singular trip to New York was largely divorced from defendants' usual operations, and plaintiff's claims did not

---

[4] *See PC-16 Doe v. Hill Reg'l Career High Sch.*, 203 N.Y.S.3d 572, 573 (2024) (affirming prima facie showing that defendants are subject to personal jurisdiction; distinguishing *Edwardo* because plaintiff alleged sexual assault in connection with field trip before a choir performance, whereas the abuse in *Edwardo* took place at a separate location and separate time from the New York business meeting).

sufficiently arise out of the priest's New York business meeting. Unlike in *Edwardo*,[5] Plaintiffs here were all abused in connection with WWE events in Maryland at which they performed Ring Boy duties for the benefit of WWE and its co-founder, Ms. McMahon.

Ms. McMahon's own participation (and through her WWE agents) in the booking, contracting, scheduling, and/or marketing of WWE events in Maryland enabled WWE to use Ring Boys like Plaintiffs to work at WWE events and suffer sexual abuse by WWE's employees (Phillips, Garvin, and Patterson) in connection with those events. Further, Plaintiffs allege that Ms. McMahon, like her husband and WWE co-founder Vince McMahon, knew or should have known about Mel Phillips's (a WWE ring announcer and ring crew member) "peculiar and unnatural interest" in young boys, fired him for it, but rehired him six weeks later, and he went back to recruiting young Ring Boys to sexually exploit them. FAC ¶¶ 13-14. Wrestlers, referees, employees, executives, and Vince and Linda McMahon all knew that Phillips had a foot fetish, openly acted on the fetish (and worse) in places like WWE dressing rooms, and that he was constantly seen with underaged Ring Boys. *Id*. ¶¶ 36-38, 40-42, 50, 61-70, 85. Ms. McMahon even admitted in a 1993 television interview that Phillips had a foot fetish and that it had become a running joke in the WWE, but she then claimed that it was being blown out of proportion even after a 16-yeard old boy complained to them. *Id*. ¶¶ 20-21. Plaintiffs allege that Ms. McMahon inspired, cooperated in, and/or participated in misfeasance by tolerating, fostering, and concealing WWE's culture of sexual misconduct that provided the opportunity for Phillips, Patterson, and Garvin to prey on underaged Ring Boys like Plaintiffs. *Id*. ¶¶ 102-08, 141-43, 157-67.

---

[5] Also inapposite are *Hampton v. Wells Fargo Bank, N.A.*, No. CV DLB-22-1712, 2023 WL 6200009, at *4 (D. Md. Sept. 22, 2023) (no alleged conduct or business in Maryland); *Birrane v. Master Collectors, Inc.*, 738 F. Supp. 167, 168 (D. Md. 1990) (one visit to Maryland but no contacts with plaintiff there); *Phillips v. Brit. Airways*, 743 F. Supp. 3d 702, 707, 711-13 (D. Md. 2024) (plaintiff's claims did not arise in Maryland; the plaintiff got a plane ticket from Washington, D.C. and was injured disembarking in London).

Therefore, Plaintiffs allege business- and tort-related actions that Ms. McMahon personally committed, or inspired or participated in and for which she can be held liable, thereby satisfying §§ 6-103(b)(1). For the purpose of § 6-103(b)(2), Ms. McMahon cannot seriously dispute that the booking, contracting, scheduling, marketing, and promotion activities in which she and her WWE agents engaged for WWE events in Maryland culminated in contracts to supply goods, food (concessions), services (WWE entertainment), or manufactured products (WWE merchandise and memorabilia) for the hundreds of WWE events in Maryland. FAC ¶¶ 329-30. As explained above, Plaintiffs' claims are directly connected to WWE's contracts for events in Maryland, where Plaintiffs worked and were abused. Her personal involvement in such business activities leads to a prima facie showing of personal jurisdiction.

### 2. Plaintiffs Also Satisfy § 6-103(b)(3) – (b)(5).

Plaintiffs separately allege personal jurisdiction based on Ms. McMahon (3) causing tortious injury in Maryland by an act or omission in Maryland; (4) causing tortious injury in Maryland or outside of Maryland by an act or omission outside Maryland and regularly doing or soliciting business, engaging in any other persistent course of conduct in Maryland, or deriving substantial revenue from goods, food, services, or manufactured products used or consumed in Maryland; and (5) having an interest in, using, or possessing real property in Maryland.

For § 6-103(b)(3), two Plaintiffs (John Doe 4 and John Doe 6) allege that Ms. McMahon was physically present at WWE events near the wrestling ring when they were performing Ring Boy duties with WWE's ring crew, including the pedophile Phillips. FAC ¶ 227 (she was with another boy when she walked by the ring where John Doe 4 was working); ¶ 264 (Ms. McMahon entered the dressing room at a July 1989 WWE event in Baltimore, Maryland, looked right at John Doe 6, and left John Doe 6 in the room with Phillips, Patterson, and Garvin after summoning Vince

McMahon to leave the room with her). Ms. McMahon's attendance at WWE events—including in Maryland—and knowledge of the Ring Boys' work at WWE events plus her knowledge of Phillips's "peculiar and unnatural interest" in young boys forms the basis of her acts or omissions in Maryland that led to the tortious injuries inflicted on Plaintiffs before, during, and after WWE events. Indeed, in the sham defamation lawsuit filed by WWE and Vince McMahon, Phil Mushnick testified that Vince McMahon admitted that both he *and Ms. McMahon* brought Phillips back to WWE after knowing and seeing for themselves that he was chasing after underaged boys in connection with WWE events. FAC ¶¶ 14, 44, 48, 51. Notably, Ms. McMahon's presence at the July 1989 WWE event in Baltimore with John Doe 6 was *after* she helped fire Phillips in 1988 due to allegations that he was sexually abusing children but then re-hired him six weeks later with the caveat that he steer clear of young boys (he did not, and she saw it with her own eyes but still left John Doe 6 in the room with Phillips, Patterson, and Garvin). *Id*. It is reasonable to infer that Ms. McMahon's actions (or acquiescence) in Maryland caused Plaintiffs' injuries whenever she was at a WWE event in Maryland along with Ring Boys, Phillips, and Patterson, particularly after she helped re-hire Phillips. At the very least, Plaintiff John Doe 6 alleges a specific incident in which Ms. McMahon's actions at a WWE event in Baltimore caused tortious injuries.

For § 6-103(b)(4), Ms. McMahon need not physically be in Maryland for personal jurisdiction to attach. Instead, it typically requires that a defendant had contacts with Maryland spanning multiple years and encompassing the fulfillment of multiple contracts. *Fidelis*, 771 F. Supp. 3d at 633. As discussed above, that is satisfied by virtue of Ms. McMahon's involvement with hundreds of WWE events in Maryland *over the course of decades*. Ms. McMahon argues that § 6-103(b)(4) is akin to general jurisdiction, meaning she would have to be "at home" in Maryland. That is wrong. The persistent course of conduct standard in § 6-103(b)(4) "is not tantamount to

12

establishing general jurisdiction" but does require greater contacts than those necessary under § 6-103(b)(1). *Id.* (noting that the Fourth Circuit in *Pandit v. Pandit*, 808 F. App'x 179, 186–87 (4th Cir. 2020) has held that the standard requires Maryland contacts over a long period of time).

Even if this Court does not agree that Ms. McMahon's actions constitute a persistent course of conduct in Maryland, another basis for personal jurisdiction exists under § 6-103(b)(4): Plaintiffs allege that Ms. McMahon has derived substantial revenue from goods, food, services, or manufactured products used or consumed at WWE events in Maryland.[6] As the co-founder of WWE, Ms. McMahon has earned at least tens of millions of dollars from WWE's business, including business in Maryland. To this day, she still holds over $50 million in stock assets, along with over $5 million in WWE-related dividend income. FAC ¶ 318; *cf.* ¶ 317 (since 2024, Ms. McMahon's husband, Vince McMahon, has been selling hundreds of millions of dollars' worth of Defendant TKO stock).[7] Vince and Linda McMahon's vast personal financial interests in WWE over the decades highlights how personal jurisdiction over them in Maryland is appropriate. Indeed, "[i]t would violate a sense of fairness to permit the [individual defendants] to solicit, negotiate, and consummate corporate business in Maryland in which they personally had so direct and substantial an interest and then allow them to avoid responding in Maryland to legal charges addressed to them personally, which arise from those transactions." *Zeman v. Lotus Heart, Inc.*,

---

[6] § 6-103(b)(4) includes "or" language that creates multiple bases: "Causes tortious injury . . . if he regularly does or solicits business, engages in any other persistent course of conduct in the State *or* derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." (emphasis added).

[7] These facts also render inapplicable the fiduciary shield doctrine, which Ms. McMahon suggests limits the reach of Maryland's long-arm statute to a corporate representative like her (it does not). *See CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 767 (D. Md. 2009) (the fiduciary shield doctrine does not apply when (1) the individual is the alter ego of the corporation; (2) if the individual has a substantial interest in the corporation; or (3) when personal jurisdiction is based upon transacting business in Maryland under § 6-103(b)(1)); *Martynuska v. Nat'l Payment Relief, LLC*, No. CIV.A. RDB-14-0265, 2014 WL 4214866, at *7 (D. Md. Aug. 22, 2014) (same).

717 F. Supp. 373, 374–78 (D. Md. 1989) (plaintiff sued a California corporation and individual officers and controlling stockholders of the corporation for negligence and fraud; refusing to dismiss based on personal jurisdiction); *see also Sony Chemicals Eur., B.V. v. M/V Ingrita*, No. MJG-94-1688, 1995 WL 846692, at *2 (D. Md. Nov. 29, 1995) (negligence case; finding personal jurisdiction because the export company derived substantial revenue from the use of its services in Maryland).

For § 6-103(b)(5), Ms. McMahon contends that Plaintiffs do not allege any connection to real property in Maryland. Not true. Plaintiffs conspicuously allege that from 1984-1986 (when Ms. McMahon was the co-founder and a corporate officer of WWE), WWE taped a TV Program called "Tuesday Night Titans" in Owings Mill, Maryland. FAC ¶ 333. Vince McMahon hosted the WWE program, and they taped about 100 weekly episodes in connection with WWE's wrestling events. *Id*. It is reasonable to infer that Ms. McMahon's admitted involvement in promoting and marketing WWE's brand included marketing for the "Tuesday Night Titans' program and WWE events connected to that program. Using and possessing real property in Maryland for taping "Tuesday Night Titans" is sufficient for personal jurisdiction, because Plaintiffs allege tortious injury during the same 1984-1986 time frame. *See id*. ¶¶ 192-250 (John Does 2, 3, 4, and 5 were all injured during that time). Moreover, Ms. McMahon does not dispute (nor could she) that she and WWE used and possessed arenas hundreds of times in Maryland, at which they promoted, marketed, contracted, and held WWE's events – the same events where Plaintiffs were injured. Such substantial use and possession of real property in Maryland satisfies § 6-103(b)(5).

### 3.  Exercising Personal Jurisdiction Comports with Due Process.

Contrary to Ms. McMahon's arguments otherwise, all three considerations in *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014) are satisfied here. First, Ms.

McMahon baldly asserts that not a single allegation satisfies considerations of whether she purposefully availed herself of conducting activities in Maryland. In doing so, she ignores Plaintiffs' extensive allegations detailed above regarding her and her WWE agents' involvement in business activities that culminated in hundreds of WWE events held throughout Maryland over the course of decades.[8] Ms. McMahon attempts to distance herself from the actual advertisements for WWE events that Plaintiffs reproduced. FAC ¶ 330. But her declaration does not disavow involvement in WWE's marketing and promotion efforts and, in fact, admits that she was involved in marketing WWE's corporate brand – which indisputably was marketed for WWE events in Maryland. Dkt. 57-2 ¶ 10. And as detailed above, Ms. McMahon's involvement in business activities for WWE's Maryland events helped provide the opportunity for her agents (Phillips, Patterson, and Garvin) to sexually harass and abuse Plaintiffs before, during, and after those WWE events. She can be liable for the torts that she personally committed, inspired, or participated in, even though performed in the name of WWE. *Fidelis*, 771 F. Supp. 3d at 634; *see also CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 766 (D. Md. 2009) (finding defendant's actions satisfy due process because defendant initiated business in Maryland and plaintiff's claims were related to defendant's licensing agreement with plaintiff).

Second, Plaintiffs' claims against Ms. McMahon arise out of her business activities in Maryland, because without marketing, promoting, contracting, and holding WWE events in Maryland, Plaintiffs would not have been sexually abused by WWE employees in Maryland. That's particularly evident, because most of the Plaintiffs were transported across state lines into

---

[8] Those allegations satisfy many of the purposeful availment considerations, including: whether the defendant reached into Maryland to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in Maryland; whether the defendant made in-person contact with the resident of the forum in Maryland regarding the business relationship; the nature, quality and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within Maryland.

Maryland for the purpose of attending and working at WWE's events. FAC ¶¶ 184, 201, 215-16, 222, 235, 244-48, 258-59, 264-65, 285. Plaintiffs' claims are inextricably linked to WWE's events in Maryland, because WWE and Vince and Linda McMahon allowed their agents (Phillips, Patterson, and Garvin) to use underaged Ring Boys like Plaintiffs to work at WWE's events. Also linked is Phillips's and Patterson's sexual abuse of Plaintiffs at hotels before and after WWE events, because without the WWE events (and Plaintiffs performing Ring Boy duties for such events), Plaintiffs would not have been transported into Maryland and given lodging at hotels before and after the events, often staying with other WWE employees and wrestlers which highlights how the hotels were part of the necessary logistics for WWE events. *Id.* ¶¶ 184-85, 196, 198, 202, 212, 222, 244-45, 264-66, 281-83, 296 (Plaintiffs met WWE wrestlers at hotels, stayed in the same hotel as WWE executives like Patterson, Garvin, and Vince McMahon, and even ate breakfast and other meals with WWE employees including Vince McMahon).[9]

Third, exercising personal jurisdiction over Ms. McMahon is constitutionally reasonable. Contrary to her suggestion that defending this lawsuit in this Court is a burden to her, Ms. McMahon currently works out of an office in Washington, D.C. and owns and stays at a condominium there. Dkt. 57-2 ¶ 2. Defending a lawsuit in this Court just up the road from where she works and frequently stays at her property is not burdensome, let alone burdensome enough to offend due process. Moreover, to the extent any burden exists for Ms. McMahon, it is outweighed by Maryland's interest in adjudicating claims involving child sex abuse and Plaintiffs' interest in obtaining convenience and effective relief in this forum. Look no further than the Supreme Court of Maryland upholding the constitutionality of Maryland's Child Victims Act of 2023, which

---

[9] Such allegations are corroborated by the account of a mother who many times went with her kids to the restaurants where the wrestlers and Vince McMahon would eat after the shows with Phillips and Ring Boys. *Id.* ¶ 93.

allowed Plaintiffs to timely bring their claims. *Roman Cath. Archbishop of Washington v. Doe*, 489 Md. 514, 521 (Md. 2025); FAC ¶ 337; *Owens v. State*, 352 Md. 663, 690 (Md. 1999) ("The state has an unparalleled interest in protecting children from the potentially devastating effects of sexual abuse and exploitation . . .").

### B.    Plaintiffs Sufficiently Plead Multiple Duties Owed to Them By Ms. McMahon

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

The only element of Plaintiffs' negligence-based claims with which Ms. McMahon takes issue is duty (not breach, causation, or loss/injury). But Plaintiffs allege multiple duties owed to them by Ms. McMahon: duties by virtue of special relationships between Plaintiffs and Ms. McMahon and also between the predators (Phillips, Patterson, and Garvin) and Ms. McMahon; a duty to exercise reasonable care to avoid foreseeable injury to others; a duty to provide a reasonably safe place to work and to warn of dangers; a duty to take action for the aid or protection of business invitees; statutory duties to report suspected child abuse; and a duty to hire and retain competent staff and not any person who they know or reasonably should know poses a risk to others. FAC ¶¶ 349-56, 370, 380-81. Ms. McMahon asserts that there is no duty to protect another from the tortious acts by a third person. But there are exceptions: (1) if the defendant has control over the conduct of the third party; (2) if there is a special relationship between the defendant and the third party **or** between the defendant and the plaintiff; or (3) if there is a statute that is designed

to protect a specific class of people. *Est. of Madden v. Sw. Airlines, Co.*, No. 1:21-CV-00672-SAG, 2021 WL 2580119, at *3 (D. Md. June 23, 2021). All those exceptions apply here, which vitiate Ms. McMahon's attempts to avoid her duties.

### 1. Ms. McMahon has Control Over WWE Employees/Agents.

Ms. McMahon co-founded WWE, was one of its highest-ranking officers, and was sometimes referred to as the "co-chief executive," along with Vince McMahon who was notorious for micromanaging everything at WWE – including overseeing employees like Phillips, Patterson, and Garvin. FAC ¶¶ 144-67, 317-18, 340, 343, 349, 358-60, 372, 390. Demonstrating her control over her WWE employees/agents, Ms. McMahon was directly involved in the firing and re-hiring of Phillips after allegations of his child sex abuse surfaced, including giving him the directive to steer clear of underaged boys and paying him hundreds of thousands of dollars to go away. *Id*. ¶¶ 14, 44-45, 48, 51, 58, 114, 163. Additionally, Ms. McMahon demonstrated her control specifically during the Ring Boys scandal when she directly handled the lawsuit, settlement, and re-hiring of Ring Boy Tom Cole, including whether Phillips, Patterson, and Garvin would remain part of WWE. *Id*. ¶¶ 94-108. Ms. McMahon's declaration in support of her motion to dismiss baldly asserts, without any support, that she did not direct the activities of Phillips, Garvin, and Patterson and they did not act as her agent. Dkt. 57-2 ¶ 16. That is belied by not only the above but also her executive positions at the very top of WWE and Plaintiffs' allegations that she was involved in booking and promoting WWE events, including in Maryland, where Phillips, Garvin, and Patterson worked. *See* FAC ¶¶ 147, 334-35 (reproducing internal WWE memoranda to WWE executives like the McMahons, Patterson, and Garvin regarding personal appearances and TV-taped events in Maryland, including a memorandum from Pat Patterson. Further, Phillips, Garvin, and Patterson acted for the benefit of WWE and Vince and Linda McMahon by allowing Ring

Boys to work at WWE events as part of the ring crew. The foregoing allegations prevent Ms. McMahon from relying on the supposed rule that there is no duty to protect another (Plaintiffs and other Ring Boys) from the tortious acts by a third person (the child predators within WWE: Phillips, Patterson, and Garvin). *See, e.g.*, Restatement (Second) of Torts § 317 cmt. c. (a master is under a duty to exercise reasonable care to control his servant while acting *outside* the scope of employment so as to prevent intentional harm to others, which includes liability from retaining servants who are in the habit of misconduct dangerous to others).[10]

### 2. Ms. McMahon Owed All Plaintiffs a Duty By Virtue of Special Relationships.

Ms. McMahon owed all Plaintiffs a duty to protect them from third parties' (Phillips, Patterson, and Garvin) conduct because of special relationships. FAC ¶¶ 350, 358. A special relationship to protect another may be established: (1) by statute or rule; (2) by a contractual or other private relationship; or (3) indirectly or impliedly by virtue of the relationship between the tortfeasor and a third party." *Seiberlich v. Deossa*, No. CV TDC-23-0560, 2024 WL 343298, at *3–4 (D. Md. Jan. 30, 2024). Duty arises from "the inherent nature of the relationship between the parties," like when "one party undertak[es] to protect or assist the other party, and thus often induc[es] reliance upon the conduct of the acting party." *Id*. A "special relationship" may exist where there is an "element of dependence and ceding of self-control by the injured party." *Id*.

First, a special relationship existed by virtue of Maryland's reporting rules for suspected instances of child abuse. FAC ¶ 355 (citing Md. Code Ann., Fam. Law §§ 5-705 and 5-705.1). By its language, § 5-705 applies to "a person in [Maryland]"—which includes Ms. McMahon any

---

[10] This Restatement section applies to the facts here, because the servants (Phillips, Patterson, and Garvin) were "upon the premises in possession of the master or upon which [they are] privileged to enter only as [the] servant" (namely, the arenas and hotels for WWE events) or were using the chattels of the master (namely, WWE tickets to events and WWE props like championship belts to lure boys), and the master (Vince and Linda McMahon) knew or had reason to know about their ability to control Phillips, Patterson, and Garvin and knew or should have known of the necessity and opportunity for exercising such control. By

time she entered the State—not just Maryland residents. *See Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 382 Md. 170, 184 (Md. 2004) ("To achieve that purpose . . . 5–705 require[s] ***anyone*** who has reason to believe that a child has been subjected to abuse or neglect to notify either DSS or the appropriate law enforcement agency.") (emphasis added); *David N. v. St. Mary's Cnty. Dep't of Soc. Servs.*, 198 Md. App. 173, 182–83 (Md. Ct. Spec. App. 2011) ("[T]he duty to report in section 5–705 applies to all children suspected of being abused or neglected, without any limitation based upon a child victim's state of residence or the place where the abuse or neglect is thought to have happened.").[11] Thus, a special relationship existed between Ms. McMahon and Plaintiffs because of the Maryland rule that she report suspected child abuse committed by her WWE agents, namely Phillips.

Second, Ms. McMahon, as co-founder and top executive of the WWE, was in a special relationship with Plaintiffs and other Ring Boys through the inherent nature of their working relationship, because Plaintiffs performed Ring Boy duties for the benefit of WWE and its co-founders Vince and Linda McMahon. FAC ¶¶ 186, 201, 215, 223, 228, 242, 259, 276, 283, 295, 298-99. Ms. McMahon—through her WWE agents, particularly Phillips, Patterson, and Garvin—permitted Ring Boys to work at WWE events and be given assistance such as money, lodging, food, and entertainment. *Id.* ¶¶ 178, 182-83, 186, 201, 215, 226, 235, 248, 258-59, 276, 295. Moreover, that working relationship included Plaintiffs' dependence and ceding of self-control, because they were *underaged* boys working for adults, almost all of whom traveled out of state to Maryland for WWE events and depended on WWE agents, particularly Phillips and Patterson, for food and lodging. That dependence also flowed to Ms. McMahon because without her corporate

---

[11] Mr. McMahon argues that § 5-705.1 was enacted in 2003 and does not apply here. But as *David N.* makes clear, the reporting requirement under §§ 5-705 and 5-705.1 is the same, the difference is that under the latter a report of abuse thought to have happened out of state to a victim who lives out of state will be made to a Maryland local department but then forwarded to the appropriate out-of-state authority.

leadership, including involvement in booking and promoting the WWE brand and its events, there would not have been events in Maryland for Plaintiffs to work. *See Seiberlich*, 2024 WL 343298, at *3–4 (plaintiff plausibly alleged a special relationship because he was hired to work as a referee who arguably ceded self-control because he was not free to leave the field while working).

Third, Ms. McMahon was in a special relationship with Phillips, Patterson, and Garvin through her control over them as employees/agents of WWE, including hiring and firing them. FAC ¶¶ 1, 35, 51, 101-06; *Est. of Madden*, 2021 WL 2580119, at *3 (a special relationship can exist between the defendant and the third party); *Seiberlich*, 2024 WL 343298, at *4 (league defendants were in special relationship with independent contractor referee who they hired).

Ms. McMahon asserts that Plaintiffs' alleged sexual misconduct by Phillips, Patterson, and Garvin cannot be attributed to her. Yes, it can. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 758-59 (1998) (citing four circumstances in which agency principles impose liability on employers even where employees commit torts *outside* the scope of employment, including the employer was negligent or where the employee was aided in accomplishing the tort by the existence of the agency relation);[12] *cf. Cramer v. Hous. Opportunities Comm'n of Montgomery Cnty.*, 304 Md. 705, 720–21 (Md. 1985) (involving negligence action in sexual assault case; reversing directed verdict for defendant because a jury could have found causation between defendant's negligent hiring and plaintiff's injuries given that the building inspector used his position to obtain knowledge about plaintiff and her home). Moreover, Ms. McMahon can be liable for the sexual misconduct by

---

[12] *See id.* ("Thus, although a[n employee's] sexual harassment is outside the scope of employment ..., an employer can be liable, nonetheless, where its own negligence is a cause of the harassment[, *i.e.*,] if it knew or should have known about the conduct and failed to stop it."); *see also P.J. v. City of Jersey City*, No. 21-CV-20222, 2022 WL 16949544, at *5-9 (D.N.J. Nov. 15, 2022) (involving police officer's sexual assault of a child in the 1970s; finding that plaintiff stated a claim for vicarious liability); *K.J. v. J.P.D.*, No. 20-CV-14177, 2023 WL 4103013, at *3 (D.N.J. June 21, 2023) ("Plaintiff alleges childhood sexual abuse at the hands of a police officer who used his badge to exercise power and obtain *in loco parentis* authority over the Plaintiff"; denying defendant's motion to reconsider).

Phillips, Patterson, and Garvin through ratification. *Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*, 2025 WL 1592464, at *5-6 (D. Md. June 5, 2025) (ratification may be inferred from acquiescence to an employee's unauthorized act due to an employer's silence and failing to disavow the act, whether it knew or "should have known" of the act); *Doe #1 v. Bd. of Educ. of Somerset Cnty.*, No. CV RDB-22-1491, 2023 WL 375189, at *5 (D. Md. Jan. 24, 2023) (school board's acquiescence to known sexual misconduct supported vicarious liability despite the conduct falling outside normal employment scope).[13] Here, Plaintiffs allege that Phillips, Patterson, and Garvin used their positions within WWE to abuse Ring Boys and that Defendants acquiesced not only in the use of Ring Boys for WWE work but also in WWE's culture of sexual misconduct. *See, e.g.*, FAC ¶¶ 1, 3, 26, 38, 49, 75, 85, 95-96, 98, 115-143.

Fourth, Ms. McMahon, through her WWE agents, stood in loco parentis with Plaintiffs, which involves voluntarily taking custody of a child and assuming the obligations of the parent. *Wilson v. State*, No. 1947, Sept.term,2021, 2023 WL 2314838, at *10-12 (Md. Ct. Spec. App. Mar. 1, 2023). Ms. McMahon argues that she did not *personally* take custody of Plaintiffs, but that's splitting hairs – Ms. McMahon can stand in loco parentis through her position as WWE's co-founder, executive, and member of the Board of Directors. Ms. McMahon exercised such authority and stood in loco parentis over Ring Boys, who were transported across state lines, housed overnight, and relied on WWE agents for basic needs. Courts have recognized in loco parentis duties in comparable circumstances involving schools, coaches, and custodial overnight supervision. *See, e.g.*, *Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 668 (D. Md. 2021); *Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d 659, 669 (D. Md. 2012);

---

[13] *See also Gray v. Koch Foods, Inc.*, 580 F. Supp. 3d 1087, 1131-32 (M.D. Ala. 2022), *aff'd*, No. 22-13214, 2025 WL 1932964 (11th Cir. July 15, 2025) (sufficient showing of ratification for employer liability where HR director observed and participated in sexual harassment but did not remedy it).

*Wilson*, 2023 WL 2314838, at *10-12; *Adams v. Sec'y, Fla. Dep't of Corr.*, No. 23-13455, 2025 WL 1639254, at *5-6 (11th Cir. June 10, 2025).[14]

Ms. McMahon argues that in loco parentis should not apply because Plaintiffs and other Ring Boys were free to leave the WWE events where they worked. Not so. Almost all Plaintiffs traveled across state lines and had to stay overnight for the purpose of WWE's Maryland events. FAC ¶¶ 184, 201, 215-16, 222, 235, 244-48, 258-59, 264-65, 285. And although John Doe 8 did not travel across state lines into Maryland, he was not free to simply leave his work for WWE events without facing discipline, especially after being transported by Ms. McMahon's agent Phillips. *Seiberlich*, 2024 WL 343298, at *3–4 (plaintiff was hired to work as a referee who arguably ceded self-control because he was not free to leave the field while working). It defies common sense for Ms. McMahon to suggest that underaged boys were free to leave (by themselves) out-of-state WWE events where they worked, after being transported there by WWE agents, particularly Phillips, and depended on WWE for lodging and meals. Moreover, at least one Plaintiff alleges that when he expressed a desire to go home, Phillips made him travel on a bus with other WWE workers and spend the night. FAC ¶¶ 178, 181. And Vince and Linda McMahon were aware of their in loco parentis standing with respect to Ring Boys like Plaintiffs working for them and WWE.[15]

---

[14] Ms. McMahon cites *Molock v. Dorchester Cnty. Fam. YMCA, Inc.*, 139 Md. App. 664, 673-75 (Md. Ct. Spec. App. 2001), but that case is distinguishable – there was no evidence that the local (not out-of-state) YMCA exercised custodial control and discipline over students and they were free to leave the YMCA, including when they fought in the parking lot. Also inapposite are *Fletcher v. Maryland Transit Admin.*, 741 F. App'x 146, 151 (4th Cir. 2018) (unpublished) (school did not have custodial control over students when they were fighting in a neighborhood and attacked a resident outside his home); *Doe v. Comm. Coll. of Baltimore Cnty.*, 595 F.Supp.3d 392, 420–21 (D. Md. 2022) (loco parentis does not apply in colleges).

[15] On behalf of WWE and Vince and Linda McMahon, Phillips even had direct contact with Ring Boys' parents before taking them to attend and work at WWE events. FAC ¶¶ 92, 110, 176, 254. *See also id.* 282-83 (Mr. McMahon stayed in hotels and ate meals with Ring Boys, including some Plaintiffs); ¶ 54 (Mr. McMahon knew that a Ring Boy nicknamed "Mrs. Mel Phillips" had his parents' permission to be with Phillips for the purpose of WWE events); ¶ 68 (Nelson Sweglar, WWE's company operations manager, said

23

**3.   Ms. McMahon Owed All Plaintiffs a Duty Arising from Foreseeability.**

Plaintiffs allege myriad facts that Ms. McMahon knew or should have known about the possibility of child sex abuse committed by Phillips and Patterson. *Supra* Section II. In short, Plaintiffs allege that it was known by everyone in WWE—wrestlers, referees, employees, executives, and Vince and Linda McMahon—that Phillips had a foot fetish, openly acted on the fetish (and worse) in places like WWE dressing rooms, and that he was constantly seen with a group of underaged Ring Boys. FAC ¶¶ 36-38, 40-42, 50, 61-70, 85. Ms. McMahon criticizes an article cited by Plaintiffs as support for Vince and Linda McMahon's knowledge of Phillips's "peculiar and unnatural interest" in boys. But she ignores the fact that the article recounted ***Vince McMahon's own confessions*** that he and Ms. McMahon knew about Phillips's inappropriate proclivity *before* they temporarily fired him for it in 1988, and that a third party confirmed the accuracy of the confessions. *Id*. ¶¶ 44-45, 48, 51, 55. Indeed, Vince McMahon admitted that he and Ms. McMahon saw Phillips with kids all the time, and Plaintiffs allege multiple, direct interactions with him and Ms. McMahon. *Id*. ¶¶ 48, 53, 114, 227-29, 264, 267, 300. Notably, Plaintiffs allege that going back to at least the ***mid-1970s*** Vince McMahon had been giving Ring Boys, including John Doe 7, tasks for the purpose of WWE events, staying in hotels with Ring Boys like John Doe 7, and sometimes eating meals with them. *Id*. ¶¶ 93, 277, 282-84. The presence of Ring Boys with Phillips at WWE events going back to the 1970s (and his misconduct towards them) is corroborated by at least one eyewitness account. *Id*. ¶ 91 (friend of Phillips recounted memories from the 1970s of meeting Phillips when he worked for WWE, witnessing Phillips "wrestle" underaged boys, and seeing Phillips preoccupied with his group of Ring Boys).[16] It is

---

"These were kids that were usually from broken homes whose parents would only be too glad to send them off to do a day's work." "*Everyone knew what was going on*." (emphasis added))

[16] Ms. McMahon challenges John Doe 7's allegations of abuse in the 1970s by stating that she co-founded

reasonable to infer that Ms. McMahon saw or knew about the same misconduct, because Phillips openly engaged in his grooming/sexualized "wrestling" and foot fetish for others to see, including the FBI's videotape evidence shot by a WWE employee. *Id.* ¶¶ 8, 10, 50, 91, 113, 192, 194, 224-25, 243, 260. As the WWE's co-founder, executive, and wife and confidante of Vince McMahon, she also knew or should have known what Vince knew about the Ring Boys. *Id.* ¶¶ 161-62, 166 (she handled the business and Vince handled creativity/vision).

Strikingly similar to the facts here are those in *Doe #1*, 2023 WL 375189, at **2, 5, where a school nurse leveraged her position to entice underaged students to the nurse's station, groom, and manipulate them—with food, small gifts, and rides—to gain access and coerce them into sexual activities. Plaintiffs alleged that the Board knew of the nurse's "red flag grooming behaviors" based on the Board's *agents'* firsthand observations and reports filed by both parents and school personnel, but the Board failed to take action and the nurse engaged in sexual misconduct with the underaged students. *Id.* The court concluded that plaintiffs' negligence claim could proceed against the Board under direct and vicarious liability theories. *Id.*; *cf. Loveless v. Estevez*, No. 01985,sept.term,2017, 2019 WL 4187465, at *12 (Md. Ct. Spec. App. Sept. 3, 2019) (court found foreseeable that a sexual relationship would result from "boundary violation conduct" of teacher inappropriately contacting and visiting student at her home even though Board wasn't aware of sexual relationship itself).[17]

Ms. McMahon also contends that Plaintiffs' allegations regarding sexual *harassment* are

---

WWE in 1980, but she ignores Plaintiffs' allegations that WWE is the successor entity of CWC (formed in 1953) after Vince and Linda McMahon acquired that entity from Vince's father. FAC ¶¶ 321-23.

[17] Ms. McMahon's cited cases are inapposite due to lacking facts supporting foreseeability. *Mitchell v. Rite Aid of Maryland, Inc.*, 290 A.3d 1125, 1131 (Md. App. 2023) (no history of violent activity at facility and no indication that individual posed a threat); *Doe v. Alsaud*, 12 F. Supp.3d 674, 680–81 (S.D.N.Y. 2014) (no allegations of prior sexual misconduct or actual/constructive knowledge of prior acts).

time barred and not covered by the definition of sexual abuse in Maryland's Child Victims Act of 2023. That misses the mark. Plaintiffs allege sexual harassment by Phillips, Patterson, and Garvin because such misconduct—like the WWE's culture of rampant sexual misconduct—supports the foreseeability of the sexual *abuse* against Plaintiffs and other Ring Boys, which is covered by the Child Victims Act. *See, e.g.*, FAC ¶¶ 79 (WWE wrestler saw sexual harassment of Ring Boys; it was "very common knowledge that these kids were being used as pawns for [Phillips, Patterson, and Garvin]"); ¶ 98 (Patterson and Garvin harassing Ring Boy); ¶¶ 64-86, 115-43 (detailing myriad harassment and abuse allegations and lawsuits); ¶ 211 (Garvin harassing John Doe 3 in front of Phillips); ¶ 256 (WWE wrestler's harassing touching of John Doe 6 in front of WWE employees/agents including Phillips and Patterson). Like the red flag grooming and boundary violations in *Doe #1* and *Loveless*, all sexual harassment and grooming committed by Phillips, Patterson, and Garvin, including in the open at WWE events for others to witness, makes it foreseeable that those same child predators would sexually abuse Ring Boys. *Seiberlich*, 2024 WL 343298, at *3–4 (foreseeability reflects "*current societal standards* with respect to an acceptable nexus between the negligent act and the ensuing harm.") (cleaned up) (emphasis added).

### 4. Ms. McMahon Owed All Plaintiffs An Employment-Related or Business Invitee Duty.

Plaintiffs allege that they performed Ring Boy duties as part of the ring crew, working for WWE and Vince and Linda McMahon: setting up the wrestling ring, running errands for WWE executives, handling wrestlers' luggage, and selling wrestler photographs in the arena lobby. FAC ¶¶ 3, 186, 201, 215, 222-23, 228, 235, 241, 248, 258-59, 276, 283, 295. For the work, all Plaintiffs were compensated, mostly in cash but also in the form of food, lodging, and admission to the WWE events (WWE tickets and special access to wrestlers and prime seating). *Id.* ¶¶ 12, 21, 186, 201, 209, 212, 215, 223, 226, 231, 235, 240, 248, 258-59, 269, 289, 295. Like Plaintiffs, other

Ring Boys were compensated, and Ms. McMahon even re-hired one after he alleged sexual abuse. *Id*. ¶¶ 96, 99-107, 110. Those facts support an employment relationship with Ring Boys like Plaintiffs.[18] Ms. McMahon can be liable as an executive for affirmative, direct acts of negligence that breach a personal duty owed to Plaintiffs as WWE workers, including her acquiescing not only in the use of Ring Boys for WWE work with predators like Phillips, Patterson, and Garvin but also acquiescing in WWE's culture of sexual misconduct. *Id*. ¶¶ 1, 3, 26, 38, 49, 75, 85, 95-96, 98, 115-143; *Hayes v. Pratchett*, 205 Md. App. 459, 473-77 (Md. Ct. Spec. App. 2012).

And even if this Court decided that Mr. McMahon did not owe Plaintiffs an employment-related duty, Plaintiffs were nonetheless business invitees before, during, and after WWE events (and invitees of Ms. McMahon as WWE's co-founder) especially when they were accompanied by WWE agents and given special access to WWE events, which also attaches a duty on Ms. McMahon to protect Plaintiffs from dangerous conditions and the actions of third persons like employees. *See Miller v. Live Nation Worldwide, Inc.*, No. CV CBD-14-2697, 2016 WL 374103, at *3-4 (D. Md. Feb. 1, 2016) (concert operator had duty to protect business-invitee plaintiff from crowd-surfing because of actual or constructive notice it was occurring at the venue).[19] As shown above, WWE and the McMahons had actual or constructive notice of Phillips's inappropriate proclivities for underaged boys and WWE's culture of sexual misconduct generally.

### 5. Ms. McMahon Owes John Doe 6 an Additional Duty Because of Her Personal Treatment of Him.

When a Plaintiff like John Doe 6 alleges negligence because of a defendant's direct and

---

[18] Based on factors like the payment of wages, the power to control the employee's conduct, whether the work is part of the employer's regular business, and the power to select, hire, and discharge the employee.

[19] *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388 (Md. Ct. Spec. App. 1997) (an owner *or occupier* of land has a duty to protect a business invitee from unreasonable risk). WWE and the McMahons occupied or otherwise possessed arenas and hotels for their WWE events. FAC ¶ 356.

personal treatment, there is a relaxed standard for whether a duty exists. The court in *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 762–63 (D. Md. 2015) explained that when plaintiffs allege a defendant's negligence in their direct and personal treatment of plaintiffs, then "[t]here is no set formula for the determination of whether a duty exists"[20] and instead the determination is a policy question of whether the specific plaintiff is entitled to protection from the acts of the defendant.[21]

Here, John Doe 6 alleges a specific incident involving Ms. McMahon when she entered the dressing room at a July 1989 WWE event in Baltimore, Maryland, looked right at John Doe 6, and left John Doe 6 in the room with Phillips, Patterson, and Garvin after summoning Vince McMahon to leave the room with her. *Id*. ¶ 264.[22] Ms. McMahon's presence at that event with John Doe 6 was *after* she fired Phillips in 1988 for allegedly sexually abusing children and after she re-hired him six weeks later with the caveat that he steer clear of young boys. *Id*. ¶¶ 14, 44, 48, 51. In violation of her and Vince McMahon's directive that Phillips steer clear of underaged boys, she left John Doe 6 behind with the predators Phillips, Patterson, and Garvin, did nothing to protect John Doe 6 (like separating Phillips from him), and instead summoned her husband Vince to leave with her. *Id*. ¶ 264. Phillips and Patterson later sexually abused John Doe 6 after that event. *Id*. ¶¶ 264-66. That direct and personal treatment of John Doe 6 is an additional reason to find that Ms. McMahon owes duties to John Doe 6 because it was foreseeable that Phillips would harm John

---

[20] Quoting *Doe v. Pharmacia & Upjohn Co.*, 388 Md. 407, 415 (2005).

[21] That analysis considers a variety of factors, such as the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved. *Id*.; *Est. of Madden*, 2021 WL 2580119, at *3-4 (same).

[22] Ms. McMahon's declaration claims "[t]o the best of [her] knowledge and recollection" that she never met or communicated with John Does 1-8. Dkt. 57-2 ¶ 13. But she does not disavow seeing Ring Boys at WWE events, and Plaintiffs' allegations about her presence there, including John Doe 6's specific allegations about this incident, must be taken as true at this stage.

Doe 6, there is a close connection between Ms. McMahon and John Doe 6 when she left him in the dressing room with Phillips, there is moral blame for allowing Phillips to violate Ms. McMahon's own directive that he steer clear of young boys, and it is a vital policy interest to prevent any and all sexual abuse of children. *See Doe*, 123 F. Supp. 3d at 763 (denying motion to dismiss where plaintiffs alleged that defendants were negligent in their direct and personal treatment of plaintiffs, due to their failure to adhere to university's policies and procedures).

### C. <u>Plaintiffs Sufficiently Plead a Request for Punitive Damages</u>

Ms. McMahon's request for dismissal is a challenge to Plaintiffs' requested relief, not their claims, and should be denied for that reason alone. *See Aarow Electrical Solutions v. Tricore Systems, LLC*, No. CV JKB-22-2363, 2024 WL 1443743, at *4–5 (D. Md. Apr. 3, 2024) (J. Bredar) (denying request to dismiss punitive damages request); *Doe v. Mercy High Sch.*, Inc., No. 1:23-CV-01184-JRR, 2024 WL 3103396, at *26–27 (D. Md. June 24, 2024) (sexual abuse case; refusing to dismiss request for punitive damages after finding instructive *Aarow Electrical Solutions*).

Plaintiffs allege that Defendants, including Ms. McMahon, acted with actual malice towards Plaintiffs by allowing Phillips, Garvin, and Patterson to use the WWE as a means to sexually harass and abuse underaged boys, and instead of preventing such abuse, Defendants focused on protecting the WWE business regardless of injury to Plaintiffs and other Ring Boys. FAC ¶ 167. For her part, Plaintiffs allege that Ms. McMahon, as co-founder of WWE, acted as Vince McMahon's confidante and co-leader in running the business, including trying to conceal WWE's culture of sexual abuse and controversies like the Ring Boy Scandal. *Id.* ¶¶ 93, 100-08, 161, 163-66 (alleging that WWE and Ms. McMahon encouraged Ring Boys and others to recant or not make negative statements about the Ring Boy Scandal); *cf. id.* ¶¶ 157-60 (detailing how Mr. McMahon would do anything to protect the WWE business, including admittedly cheating and lying when facing controversies). Moreover, *even after* the Ring Boys Scandal went public in 1992

and Phillips was under investigation (and likely already fired for the second time), WWE and the McMahons still allowed Phillips to attend at least one WWE event – in fact, Vince McMahon spoke to John Doe 6 at that event, and Phillips abused John Doe 6 afterwards. FAC ¶¶ 267-70. Repeated or frequent misconduct of the same nature, misconduct of long duration, attempts to conceal or cover-up misconduct, and failure to take corrective action all support the deterrence value of a significant award of punitive damages. *CMH Manufacturing v. Neil*, 620 F. Supp. 3d 316, 329 (D. Md. 2022). Contrary to Ms. McMahon's characterization of the forgoing allegations, Plaintiffs' request for punitive damages is not based on negligence *alone*, it's also based upon the alleged efforts to conceal and failure to take corrective action for a long duration.

## IV.    CONCLUSION

The eight Plaintiffs who have courageously come forward to seek justice for their horrendous childhood trauma should be allowed to proceed with their negligence-based claims against Ms. McMahon.[23] Plaintiffs' have made a prima facie showing of specific personal jurisdiction under nearly all portions of the Maryland long-arm statute, so Ms. McMahon's Fed. R. Civ. P. 12(b)(2) motion should be denied. Regarding Ms. McMahon's challenge to the sufficiency of the pleading, Plaintiffs have raised a plausible claim to relief based on multiple duties owed by Ms. McMahon, which is all that is required at this stage, and her Fed. R. Civ. P. 12(b)(6) motion should also be fully denied.

---

[23] Should this Court grant dismissal, Plaintiffs respectfully request leave for jurisdictional discovery into Ms. McMahon's involvement in WWE's Maryland events and/or leave to amend the complaint. *Hartford Mut. Ins. Co. v. Hoverzon, LLC*, No. CV SAG-20-2713, 2021 WL 461760, at *3 (D. Md. Feb. 9, 2021) (ordering limited jurisdictional discovery in the interest of judicial efficiency); *Stifel, Nicolaus & Co., Inc. v. Firemoon Energy, LLC*, No. GJH-16-628, 2016 WL 8673135, at *2 (D. Md. Oct. 28, 2016) (whether to permit jurisdictional discovery is the court's discretion); Fed. R. Civ. P. 15(a)(2).

Dated: July 28, 2025                          */s/ William H. Murphy, Jr.*

William H. "Billy" Murphy, Jr. (Bar No. 07985)
Phylecia R. Faublas (Bar No. 30435)
**MURPHY, FALCON & MURPHY**
1 South Street, Suite 3000
Baltimore, Maryland 21202
Telephone: (410) 951-8750
billy.murphy@murphyfalcon.com
phylecia.faublas@murphyfalcon.com

Greg G. Gutzler
Emma Bruder
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, New York 10017
Telephone: (646) 933-1000
ggutzler@dicellolevitt.com
ebruder@dicellolevitt.com

Adam Prom
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
aprom@dicellolevitt.com

Mark A. DiCello
Robert F. DiCello
**DICELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, OH  44060
Telephone: (440) 953-8888
madicello@dicellolevitt.com
rfdicello@dicellolevitt.com

*Attorneys for Plaintiffs*

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of July 2025, I caused a copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system and electronic notification of such filing is sent to all CM/ECF participants and counsel of record.

<u>*/s/ William H. Murphy, Jr.*</u>

William H. "Billy" Murphy, Jr.