# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JOHN DOE 1, et al.,

      Plaintiffs,

    v.

WORLD WRESTLING ENTERTAINMENT, LLC, et al.,

      Defendants.

Civil Action No. 1:24-cv-3487

Hon. James K. Bredar

**HEARING REQUESTED**

## PLAINTIFFS' OPPOSITION TO DEFENDANT
## VINCE MCMAHON'S MOTION TO DISMISS

William H. "Billy" Murphy, Jr. (AIS # 6912010153)
Phylecia R. Faublas (AIS # 2206140025)
**MURPHY, FALCON & MURPHY**
1 South Street, Suite 3000
Baltimore, Maryland 21202
Telephone: (410) 951-8750
billy.murphy@murphyfalcon.com
phylecia.faublas@murphyfalcon.com

Greg G. Gutzler
Emma Bruder
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, New York 10017
Telephone: (646) 933-1000
ggutzler@dicellolevitt.com
ebruder@dicellolevitt.com

Adam Prom
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
aprom@dicellolevitt.com

Mark A. DiCello
Robert F. DiCello
**DICELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, OH 44060
Telephone: (440) 953-8888
madicello@dicellolevitt.com
rfdicello@dicellolevitt.com

Dated: July 28, 2025

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................. 1

III.   ARGUMENT ...................................................................................................... 5

    A.    This Court has Personal Jurisdiction Over Mr. McMahon .................................... 5

        1.    Plaintiffs Have Made a Prima Facie Showing Under § 6-103(b)(1) and (b)(2). ........................................................................................................ 5

        2.    Plaintiffs Also Satisfy § 6-103(b)(3) – (b)(5). .......................................... 10

        3.    Exercising Personal Jurisdiction Comports with Due Process. ................ 14

    B.    Plaintiffs Sufficiently Plead Multiple Duties Owed By Mr. McMahon .............. 16

        1.    Mr. McMahon has Control Over WWE Employees/Agents..................... 17

        2.    Mr. McMahon Owed All Plaintiffs a Duty By Virtue of Special Relationships.......................................................................................... 18

        3.    Mr. McMahon Owed All Plaintiffs a Duty Arising from Foreseeability. . 23

        4.    Mr. McMahon Owed All Plaintiffs An Employment-Related or Business Invitee Duty.............................................................................................. 25

        5.    Mr. McMahon Owes John Does 6 and 8 an Additional Duty Because of His Personal Treatment of Them. ............................................................ 27

    C.    Plaintiffs Sufficiently Plead a Claim for Negligent Hiring, Supervision, Training and Retention ...................................................................................................... 29

IV.    CONCLUSION.................................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Sec'y, Fla. Dep't of Corr.*,
No. 23-13455, 2025 WL 1639254 (11th Cir. June 10, 2025)...................................22

*Athas v. Hill*,
458 A.2d 859 (Md. Ct. Spec. App. 1983) .................................................................27

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................16

*Bowman v. Top Gun of Virginia, Inc.*,
No. TJS-21-2207, 2021 WL 5827776 (D. Md. Dec. 8, 2021)..................................27

*Burlington Indus., Inc. v. Ellerth*,
524 U.S. 742 (1998)..................................................................................................20

*CoStar Realty Info., Inc. v. Meissner*,
604 F. Supp. 2d 757 (D. Md. 2009) ....................................................................13, 15

*Cramer v. Hous. Opportunities Comm'n of Montgomery Cnty.*,
304 Md. 705 (Md. 1985)............................................................................................20

*David N. v. St. Mary's Cnty. Dep't of Soc. Servs.*,
198 Md. App. 173 (Md. Ct. Spec. App. 2011) ........................................................19

*Doe #1 v. Bd. of Educ. of Somerset Cnty.*,
No. CV RDB-22-1491, 2023 WL 375189 (D. Md. Jan. 24, 2023)..................21, 24, 25

*Doe v. Alsaud*,
12 F.Supp.3d 674 (S.D.N.Y. 2014) ..........................................................................24

*Doe v. Bd. of Educ. of Prince George's Cnty.*,
888 F. Supp. 2d 659 (D. Md. 2012) ..........................................................................22

*Doe v. Cmty. Coll. of Baltimore Cnty.*,
595 F. Supp. 3d 392 (D. Md. 2022) ..........................................................................22

*Doe v. Mercy High Sch., Inc.*,
No. 1:23-CV-01184-JRR, 2024 WL 3103396 (D. Md. June 24, 2024) ...................29

*Doe v. Salisbury Univ.*,
123 F. Supp. 3d 748 (D. Md. 2015) ......................................................................27, 29

*Est. of Madden v. Sw. Airlines, Co.*,
  No. 1:21-CV-00672-SAG, 2021 WL 2580119 (D. Md. June 23, 2021) ....................17, 20, 28

*Fidelis Cybersecurity, Inc. v. Partner One Cap., Inc.*,
  771 F. Supp. 3d 614 (D. Md. 2025) ...........................................................................7, 9, 12, 15

*Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*,
  2025 WL 1592464 (D. Md. June 5, 2025) ...............................................................................21

*Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*,
  No. GJH-19-1312, 2020 WL 1322948 (D. Md. Mar. 20, 2020).............................................5, 7

*Fletcher v. Maryland Transit Admin.*,
  741 F. App'x 146 (4th Cir. 2018) ............................................................................................22

*Gray v. Koch Foods, Inc.*,
  580 F. Supp. 3d 1087 (M.D. Ala. 2022), *aff'd*, No. 22-13214, 2025 WL
  1932964 (11th Cir. July 15, 2025) ...........................................................................................21

*Hartford Mut. Ins. Co. v. Hoverzon, LLC*,
  No. CV SAG-20-2713, 2021 WL 461760 (D. Md. Feb. 9, 2021) ............................................30

*Hayes v. Pratchett*,
  205 Md. App. 459 (Md. Ct. Spec. App. 2012) .........................................................................26

*Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*,
  382 Md. 170 (Md. 2004).............................................................................................................19

*Jarrett v. Home Depot U.S.A., Inc.*,
  No. 1:21-CV-01514-SAG, 2021 WL 3288361 (D. Md. Aug. 2, 2021)..................................27

*K.J. v. J.P.D.*,
  No. 20-CV-14177, 2023 WL 4103013 (D.N.J. June 21, 2023)...............................................20

*Laureate Educ., Inc. v. Megahed*,
  No. AW–10–749, 2010 WL 2651895 (D. Md. July 1, 2010) ....................................................7

*Levi v. Schwartz*,
  201 Md. 575 (Md. 1953)............................................................................................................26

*Lewis v. Willough at Naples*,
  311 F. Supp. 3d 731 (D. Md. 2018) ..........................................................................................14

*Loveless v. Estevez*,
  No. 01985, 2019 WL 4187465, (Md. Ct. Spec. App. Sept. 3, 2019)....................24, 25, 29, 30

*Maxtena, Inc. v. Marks*,
  No. CIV.A. DKC 11-0945, 2012 WL 113386 (D. Md. Jan. 12, 2012) .....................................9

iv

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
  888 F. Supp. 2d 691 (D. Md. 2012), *aff'd*, 722 F.3d 591 (4th Cir. 2013) ...............................8

*Metromedia Co. v. WCBM Maryland, Inc.*,
  327 Md. 514 (Md. 1992)...........................................................................................26

*Miller v. Live Nation Worldwide, Inc.*,
  No. CV CBD-14-2697, 2016 WL 374103 (D. Md. Feb. 1, 2016)..........................................27

*Molock v. Dorchester Cnty. Fam. YMCA, Inc.*,
  139 Md. App. 664 (Md. Ct. Spec. App. 2001) ........................................................22

*Nammack v. Hampstead Pre-Owned*,
  No. CV DKC 19-1798, 2020 WL 1033589 (D. Md. Mar. 3, 2020) ......................................29

*Owens v. State*,
  352 Md. 663 (Md. 1999)...........................................................................................16

*P.J. v. City of Jersey City*,
  No. 21-CV-20222, 2022 WL 16949544 (D.N.J. Nov. 15, 2022) ..........................................20

*Pandit v. Pandit*,
  808 F. App'x 179 (4th Cir. 2020) ...........................................................................12

*Planet Techs., Inc. v. Planit Tech. Grp., LLC*,
  735 F. Supp. 2d 397 (D. Md. 2010)..........................................................................7

*Rhaney v. Univ. Of Maryland E. Shore*,
  880 A.2d 357 (Md. 2005) ......................................................................................24

*Robinson v. Bd. of Educ. of Washington Cnty.*,
  No. 1:22-CV-01102-ELH, 2023 WL 2499854 (D. Md. Mar. 14, 2023) ...............................30

*Roman Cath. Archbishop of Washington v. Doe*,
  489 Md. 514 (Md. 2025)..........................................................................................16

*Seiberlich v. Deossa*,
  No. CV TDC-23-0560, 2024 WL 343298 (D. Md. Jan. 30, 2024)................................ *passim*

*Sony Chemicals Eur., B.V. v. M/V Ingrita*,
  No. MJG-94-1688, 1995 WL 846692 (D. Md. Nov. 29, 1995).............................................13

*Stifel, Nicolaus & Co., Inc. v. Firemoon Energy, LLC*,
  No. GJH-16-628, 2016 WL 8673135 (D. Md. Oct. 28, 2016).............................................30

*Stisser v. SP Bancorp, Inc.*,
  234 Md. App. 593 (Md. Ct. Spec. App. 2017) .........................................................9

*Tennant v. Shoppers Food Warehouse Md. Corp.*,
115 Md. App. 381 (Md. Ct. Spec. App. 1997) ......................................................27

*Walters v. McMahen*,
684 F.3d 435 (4th Cir. 2012) ...............................................................................16

*Willey v. Bd. of Educ. of St. Mary's Cnty.*,
557 F. Supp. 3d 645 (D. Md. 2021) .......................................................................22

*Wilson v. State*,
No. 1947, 2023 WL 2314838, (Md. Ct. Spec. App. Mar. 1, 2023) ..................21, 22

*Worden v. 3203 Farmington LLC*,
No. 1373, 2023 WL 4945171, (Md. Ct. Spec. App. Aug. 3, 2023)........................26

*Zeman v. Lotus Heart, Inc.*,
717 F. Supp. 373 (D. Md. 1989) ...........................................................................13

**Statutes**

Maryland's Child Victims Act of 2023 ......................................................... 1, 16, 25

Md. Code Ann., Cts. & Jud. Proc. § 6-103 ...................................................... *passim*

Md. Code Ann., Fam. Law §§ 5-705 and 5-705.1 ..............................................19, 20

**Other Authorities**

Fed. R. Civ. P. 12(b)(2)...........................................................................................30

Fed. R. Civ. P. 12(b)(6)......................................................................................16, 30

Fed. R. Civ. P. 15(a)(2)...........................................................................................30

Restatement (Second) of Torts § 317 cmt. c...........................................................18

## I.    INTRODUCTION

This action is brought by survivors of sexual harassment and abuse committed by a WWE ringside announcer and other WWE executives who groomed, exploited, and sexually abused underaged children often referred to as Ring Boys, whose jobs were to assist the WWE's ring crew that was responsible for setting up and dismantling the ring for WWE's events. Plaintiffs all suffered sexual abuse in Maryland and brought their claims under Maryland's Child Victims Act of 2023. Plaintiffs bring this action against the child predators' employer: Defendants WWE, TKO, and Vince and Linda McMahon (co-founders of WWE) because they: (i) knew or should have known about the child predators' abuse of Ring Boys; (ii) had duties to prevent the abuse; and (iii) further acquiesced, inspired, and/or participated in WWE's rampant culture of sexual misconduct.

Defendant Vince McMahon seeks dismissal,[1] disputing personal jurisdiction and the sufficiency of Plaintiffs' negligence-based claims. His motion should be denied in full, and the Plaintiff-survivors should be allowed to pursue justice for their immense suffering.

## II.    FACTUAL BACKGROUND

From the 1970s through the early 1990s, a prominent ringside announcer and ring crew chief, Mel Phillips, worked for WWE and as an agent of WWE co-founders Vince and Linda McMahon for WWE events, including in Maryland. FAC ¶¶ 1, 4-5, 184, 186, 201, 209, 223, 228-29, 248, 268, 276, 283, 289, 295, 299. Phillips exploited his position with WWE to lure, groom, and sexually abuse underaged Ring Boys. *Id*. ¶¶ 2-5, 49, 92-93, 97, 109-110, 173, 180, 192, 206, 219-23, 239-240, 264, 269, 281-84, 294-96. But it wasn't just Phillips. Two other WWE executives, Pat Patterson (Vince McMahon's right-hand man) and Terry Garvin (Vice President of

---

[1] The operative complaint is Plaintiffs' Corrected First Amended Complaint ("FAC"), Dkt. No. 55. Defendants have filed three separate motions to dismiss that Plaintiffs separately oppose, but to the extent that Defendants' motions adopt each other, Plaintiffs incorporate herein their separate opposition briefs.

Operations and Phillips's supervisor), also sexually harassed and abused Ring Boys, including some of the Plaintiffs. *Id*. ¶¶ 35, 68, 79, 85, 98, 211, 264-66.

Plaintiffs have reproduced photos of some of Phillips's abuse, particularly forcibly and sexually "wrestling" underaged boys to groom them and partially satisfy Phillips's foot fetish. *Id*. ¶¶ 50, 168-72, 194. The sexual abuse of Plaintiffs and other Ring Boys was done in front of other WWE employees/agents like wrestlers, ring crew workers, and executives. *Id*. ¶¶ 40-42, 64, 68, 79, 225, 256. Phillips did not hide his grooming and foot fetish abuse of underaged boys. Indeed, it was so well-known within WWE that the wrestlers and executives, including Vince McMahon, joked about it. Ms. McMahon even admitted Phillips's foot fetish was a running joke in the WWE. *Id*. ¶¶ 20, 64-66. One former high-level employee revealed that "[t]he boys that the company hired to put up the ring and so forth, were being . . . had [that is, abused] by some of the folks who were in the wrestling [operations] side of things. ***And it was just generally known, by everybody, that it was going on.***" (emphasis added). "It was a mess. It was an absolute mess," and the McMahons "clearly knew what was going on, but really did nothing to stop it. . . . There was not a damn thing we could do about it." *Id*. ¶¶ 37-38, 68 (emphasis added).

Wrestlers, referees, non-executive employees, executives, and Vince and Linda McMahon all knew that Phillips had a foot fetish, that he openly acted on the fetish (and worse) in places like WWE dressing rooms, and that he was constantly seen with a posse of underaged Ring Boys. *Id*. ¶¶ 36-38, 40-42, 50, 61-70, 85. Phillips constantly surrounded himself with a group of underaged Ring Boys before, during, and after WWE events, including at hotels, so much so that a former manager of WWE wrestlers nicknamed one Ring Boy "Mrs. Phillips" because he and Phillips were constantly together, and Mr. McMahon knew about their relationship. *Id*. ¶¶ 54, 113-14. Vince McMahon confessed that he and Ms. McMahon knew about Phillips's "peculiar and unnatural

interest" in boys *before* 1988, and a third party confirmed the accuracy of the confessions. *Id*. ¶¶ 44-45, 48, 51, 55. Indeed, Mr. McMahon admitted that he and Ms. McMahon saw Phillips with kids all the time, and Plaintiffs allege multiple direct interactions with Vince. *Id*. ¶¶ 48, 53, 114, 227-29, 264, 267, 300. Going back to the ***mid-1970s***, Vince McMahon had been giving Ring Boys, including one of the Plaintiffs, tasks for the purpose of WWE events, staying in hotels with Ring Boys, and eating meals with them. *Id*. ¶¶ 53, 93, 114, 277, 282-84. The presence of Ring Boys with Phillips at WWE events back in the 1970s (and his misconduct towards them) is corroborated by multiple eyewitness accounts, including reporting to Vince McMahon and his father that Phillips was spotted at a WWE event performing a sexual act on a boy. *Id*. ¶¶ 40-42, 91.

When confronted with the obvious red flags associated with Phillips's foot fetish and transporting underaged boys across state lines (including to Maryland) to perform Ring Boy duties at WWE events, Vince McMahon merely responded "that's why we have gotten rid of [Phillips, Patterson, and Garvin]," which is an implicit admission that he knew or should have known about Phillips's and others' misconduct that necessitated firing Phillips, Patterson, and Garvin. *Id*. ¶ 55. In 1988, both McMahons finally fired Phillips due to his misconduct with underaged boys, but they inexplicably re-hired him merely six weeks later with the caveat that he "steer clear from kids." *Id*. ¶¶ 14, 44, 48, 51, 58-59. Multiple WWE employees complained to WWE supervisors and to Vince McMahon about Phillips being on the road to WWE events with underaged boys, especially after Phillips was fired and then re-hired in 1988. *Id*. ¶ 63.

After being re-hired, Phillips continued abusing Ring Boys like Plaintiffs. *Id*. ¶¶ 14, 251-73. After even more allegations (and lawsuits) of sexual abuse against Ring Boys came to light in the early 1990s—in what became known as the Ring Boy Scandal—Defendants fired Phillips, Patterson, and Garvin. *Id*. ¶¶ 35-36, 79, 94-99, 109-12. WWE and the McMahons gave Phillips

3

*hundreds of thousands of dollars* to go away in 1992, and then systematically deleted Phillips from WWE video footage. *Id*. ¶¶ 87-89, 114. In the early 1990s, an FBI investigation into Phillips corroborated the Ring Boy Scandal, with the investigation identifying 10 victims of Phillips, and a WWE insider provided the FBI a videotape of Phillips's abuse. The FBI stated that Phillips's conduct, shown in the video, was consistent with pedophilia. *Id*. ¶¶ 8, 18-19, 48.

The Ring Boy Scandal was just part of WWE's rampant culture of sexual misconduct that reached the top of the company: Vince McMahon. *For decades*, numerous individuals—including WWE wrestlers, employees, referees, and third parties—have alleged sexual misconduct committed by Phillips and WWE executives, especially Vince McMahon, Patterson, and Garvin. *Id*. ¶¶ 25, 64-86, 115-43 (detailing myriad allegations and lawsuits). WWE's culture of tolerating and fostering sexual misconduct demonstrates that Defendants knew or should have known about the sexual abuse of Rings Boys like Plaintiffs, and such a culture allowed Phillips, Patterson, and Garvin to prey on underaged victims. *Id*. ¶¶ 141-42. WWE, its executives, and Vince and Linda McMahon not only failed to prevent such abuse but also inspired, cooperated in, and/or participated in similar misfeasance. *Id*. ¶143. They controlled WWE (including ring announcers like Phillips) through micromanaging and knew everything going on in the company. *Id*. ¶¶ 144-67.  Multiple personal accounts detail Vince McMahon's micromanaging and control over what happened within WWE, including ring announcers. *Id*. As detailed more below, Mr. McMahon was a co-founder of WWE and served on the board of directors for decades. *Id*. ¶ 317. He was directly involved in all aspects of WWE's business, including: booking and promoting WWE's events, including in Maryland; attending most WWE events that were taped for TV, including in Maryland; the firing and re-hiring of Phillips; dealing with and concealing WWE's scandals, including the Ring Boy Scandal; and personally interacting with and directing multiple Ring Boys,

including several Plaintiffs.  *Id.* ¶¶ 14, 44, 48, 51, 53, 58-59, 69-74, 78, 93, 114, 277, 282-84, 330-35. Vince McMahon has admitted that he would do anything to protect the WWE business including lying, cheating, and concealing potential wrongdoing.  *Id.* ¶¶ 157-67.

## III.    ARGUMENT

### A.    <u>This Court has Personal Jurisdiction Over Mr. McMahon</u>

Plaintiffs need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*, No. GJH-19-1312, 2020 WL 1322948, at *4 (D. Md. Mar. 20, 2020) (quoting *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009)). "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Id.*

This Court can exercise specific personal jurisdiction over Mr. McMahon for multiple reasons under Maryland's long-arm statute.  Plaintiffs allege that Mr. McMahon directly *or by an agent* purposefully availed himself of the privilege of conducting activities within Maryland by: (1) transacting business or performing any character of work or service in Maryland; (2) contracting to supply goods, food (concessions), services, or manufactured products (merchandise and memorabilia) in Maryland; (3) causing tortious injury in Maryland by an act or omission in Maryland; (4) causing tortious injury in Maryland or outside the state by an act or omission outside Maryland and regularly doing or soliciting business, engaging in any other persistent course of conduct, or deriving substantial revenue from goods, food, services, or manufactured products used or consumed in Maryland; or (5) having an interest in, using, or possessing real property in Maryland. FAC ¶ 327; Md. Code Ann., Cts. & Jud. Proc. § 6-103.

### 1.    **Plaintiffs Have Made a Prima Facie Showing Under § 6-103(b)(1) and (b)(2).**

Plaintiffs allege extensive and persistent business activities by Mr. McMahon in Maryland

during the relevant time period of the complaint. He co-founded WWE and led the company for decades. FAC ¶ 317. In that role, he directly or through WWE agents transacted business in Maryland for decades through advertising and holding **hundreds** of WWE events in multiple cities throughout Maryland. *Id*. ¶¶ 329-30 (displaying actual advertisements for Maryland events).[2] Mr. McMahon's argument that he did not *personally* conduct business in Maryland is a red herring, because he indisputably conducted WWE's business in Maryland directly and through WWE's agents, including taping promotional videos for WWE events in Maryland and attending most TV-taped events in Maryland. *Id*. ¶¶ 331-32. In Owings Mill, Maryland, Vince McMahon hosted and taped about 100 weekly episodes of a TV program called "Tuesday Night Titans" connected to WWE's events. *Id*. ¶¶ 332-33. Also, Plaintiffs provide excerpts of actual memoranda revealing Mr. McMahon's involvement in Maryland WWE events, including scheduling and organizing them. *Id*. ¶¶ 334-35 (WWE executives, including Mr. McMahon, participated in booking, contracting, and/or scheduling WWE events in Maryland). After all, his name is on a WWE interoffice memo from one of his agents, Ed Cohen, confirming WWE TV-taped events in Maryland in October 1988. *Id*. ¶ 335. Mr. McMahon cannot dispute that he entered Maryland many times over the decades to promote and attend his company's numerous events in the state.

Mr. McMahon argues that his WWE-related business activities in Maryland do not count for specific jurisdiction over him. Wrong. "Defendants' argument that contacts made on behalf of a corporation cannot subject the individual to personal jurisdiction misconstrues the case law . . . where the corporate agent is directly and personally involved in the alleged injury, the individual defendants' status as agents of their employer does not shield their contacts with the forum state

---

[2] *See also* Post Wrestling (June 16, 2025), https://www.postwrestling.com/2025/06/16/wwe-vince-linda-mcmahon-refile-motions-asking-court-to-throw-out-ring-boy-lawsuit/ (review of Cagematch.net's database of wrestling events suggests that WWE ran more than 230 events in Maryland in the 1980s).

from consideration in the personal jurisdiction analysis." *Finley Alexander Wealth Mgmt., LLC*, 2020 WL 1322948, at *7. "**[E]ven a single contact** with the forum can satisfy the transaction of business standard in subsection (b)(1)." *Id*. at *9 (quoting *Hausfeld v. Love Funding Corp.*, 16 F. Supp. 3d 591, 599 (D. Md. 2014)) (emphasis added).

Multiple cases in this district have refused to dismiss on personal jurisdiction grounds claims against individual corporate executives like Mr. McMahon. In *Fidelis Cybersecurity, Inc. v. Partner One Cap., Inc.*, 771 F. Supp. 3d 614, 634 (D. Md. 2025), the court found that "a survey of more recent caselaw in this district indicates that corporate officers or agents can be held liable for the torts that they personally commit, or which they inspire or participate in, even though performed in the name of the corporation." (internal quotation omitted). In *Fidelis*, the court noted that a defendant does not need to have ever been physically present in Maryland to come under the reach of § 6-103(b)(1), because transacting business simply requires that the defendant's actions culminate in purposeful activity within Maryland. *Id*. at 630. There, plaintiffs alleged that a CEO engaged in negotiations with plaintiffs' Maryland-based management team that culminated in a contractual agreement, and the court found that "[s]uch activity clearly meets the standard for 'transacting business' under the meaning of § 6-103(b)(1)." *Id*. at 630-31 (collecting cases finding personal jurisdiction where out-of-state defendants "transacted business" in Maryland where they engaged in negotiations over the course of weeks).[3]

Likewise, Mr. McMahon can be held liable for the torts that he personally committed, or

---

[3] *See also Finley*, 2020 WL 1322948, at *7-8 (finding personal jurisdiction over three individual defendants because one reached out to plaintiffs in Maryland to solicit business and all participated in negotiations that led a service agreement in Maryland); *Planet Techs., Inc. v. Planit Tech. Grp., LLC*, 735 F. Supp. 2d 397, 400-404 (D. Md. 2010) (exercising personal jurisdiction over CEO of a Virginia corporation, because he participated in selecting and controlling the allegedly infringing mark, directed the company's counsel to file for trademark registration, and directed his company to provide competing services); *Laureate Educ., Inc. v. Megahed*, No. AW–10–749, 2010 WL 2651895, at *8–9 (D. Md. July 1, 2010) (executive "transacted business" with her Maryland-based employer by attending monthly meetings in Baltimore and frequently communicating with Maryland-based colleagues).

inspired or participated in, even though performed in the name of WWE. In other words, exercising specific personal jurisdiction over Mr. McMahon is not based merely on his role as one of the highest-ranking executives at WWE; rather, it is based on his involvement in actions (*e.g.* scheduling, organizing, promoting, and attending WWE events in Maryland, not to mention allowing Phillips and Patterson to work such events with Ring Boys) that led to Plaintiffs' sexual abuse. Mr. McMahon relies on *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 699-701 (D. Md. 2012), *aff'd*, 722 F.3d 591 (4th Cir. 2013), but that case is readily distinguishable because there the only fact establishing the CEO's contact with Maryland was a single, isolated social media post referring to a realtor in Maryland.

Mr. McMahon suggests that Plaintiffs' claims here do not arise out of and are not sufficiently based upon WWE's events in Maryland. Not so. Simply put: without WWE's events in Maryland, Plaintiffs would not have been sexually abused by WWE's (and by extension Vince and Linda McMahon's) pedophile employees in Maryland. Plaintiffs worked as Ring Boys for WWE events, for example setting up and dismantling the wrestling ring, and they were sexually abused in connection with events. FAC ¶¶ 3, 186, 201, 215, 222-23, 228, 235, 241, 248, 258-59, 276, 283, 295. Many of the Plaintiffs were transported across state lines for the purpose of WWE's Maryland events, highlighting that they would not have been there except for WWE's events. *Id*. ¶¶ 184, 201, 215-16, 222, 235, 244-48, 258-59, 264-65, 285. And the perpetrators here (Phillips, Patterson, and Garvin) were hired by and worked for Vince and Linda McMahon via their status as co-founders and high-ranking executives of WWE. *Id*. ¶ 35. Therefore, Mr. McMahon's involvement in booking, contracting, and/or scheduling WWE events —along with promoting and attending such events—created the opportunity for WWE's predator employees to abuse Plaintiffs in Maryland in connection with WWE events. It is unnecessary for Mr. McMahon to have been

physically present in Maryland to come under the reach of § 6-103(b)(1), because his actions culminated in purposeful activity within Maryland. *Fidelis*, 771 F. Supp. 3d at 630-31.

The abuse of Plaintiffs is inextricably linked to WWE's events in Maryland, which is more than sufficient to exercise specific personal jurisdiction. "Maryland courts have long held that the long-arm statute confers jurisdiction as long as the claims asserted 'bear some relationship to the acts in the forum state.'" *Maxtena, Inc. v. Marks*, No. CIV.A. DKC 11-0945, 2012 WL 113386, at *7-8 (D. Md. Jan. 12, 2012) (quoting *Malinow v. Eberly*, 322 F.Supp. 594, 599 (D. Md.1971)) (finding the corporate officer's participation in meetings and communications with plaintiff's Maryland-based employees gave him access to the proprietary information that he purportedly misappropriated, meaning that his Maryland contacts were relevant to plaintiff's claims). Mr. McMahon contends that *Stisser v. SP Bancorp, Inc.*, 234 Md. App. 593, 651–52, (Md. Ct. Spec. App. 2017) is analogous to the facts here, but it is not. There, the directors never entered Maryland for the defendant corporation's business, and the only act in Maryland was filing the corporate articles of merger. Unlike *Stisser*, Mr. McMahon indisputably entered Maryland numerous times for WWE's business, and Plaintiffs here were all abused in connection with WWE events in Maryland at which they performed Ring Boy duties for the benefit of WWE and Mr. McMahon.

Mr. McMahon's own participation (and through his WWE agents) in the contracting, scheduling, and/or marketing of WWE events in Maryland enabled WWE to use Ring Boys like Plaintiffs to work at WWE events and suffer sexual abuse by WWE's employees (Phillips, Garvin, and Patterson) in connection with those events. Further, Plaintiffs allege that WWE co-founders Mr. and Ms. McMahon knew or should have known about Mel Phillips's "peculiar and unnatural interest" in young boys, fired him for it, but rehired him six weeks later, and he went back to recruiting young Ring Boys to sexually exploit them. FAC ¶¶ 13-14. Wrestlers, referees,

employees, executives, and Vince and Linda McMahon all knew that Phillips had a foot fetish, openly acted on the fetish (and worse) in places like WWE dressing rooms, and that he was constantly seen with underaged Ring Boys. *Id*. ¶¶ 36-38, 40-42, 50, 61-70, 85. Ms. McMahon even admitted in a 1993 TV interview that Phillips had a foot fetish and that it was a running joke in the WWE, but she then claimed that it was being blown out of proportion even after a 16-year old boy complained to them. *Id*. ¶¶ 20-21. Plaintiffs allege that Vince McMahon inspired, cooperated in, and/or participated in misfeasance by tolerating, fostering, and concealing WWE's culture of sexual misconduct that provided the opportunity for Phillips, Patterson, and Garvin to prey on underaged Ring Boys like Plaintiffs. *Id*. ¶¶ 102-08, 141-43, 157-167. Indeed, just like Phillips, Patterson, and Garvin, Vince McMahon *himself* has been the subject of myriad sexual misconduct allegations and lawsuits for decades including within WWE. *Id*. ¶¶ 115-43.

Therefore, Plaintiffs allege business- and tort-related actions that Mr. McMahon personally committed, or inspired or participated in, and for which he can be held liable, thereby satisfying §§ 6-103(b)(1). Regarding § 6-103(b)(2), Mr. McMahon cannot seriously dispute that the booking, contracting, and promotion activities in which he and his WWE agents engaged for WWE events in Maryland culminated in contracts to supply goods, food (concessions), services (WWE entertainment), or manufactured products (WWE merchandise and memorabilia) for the hundreds of WWE events in Maryland. FAC ¶¶ 329-30. As explained above, Plaintiffs' claims are directly connected to WWE's contracts for events in Maryland, where Plaintiffs worked and were abused. His personal involvement in such activities leads to a prima facie showing of personal jurisdiction.

### 2. Plaintiffs Also Satisfy § 6-103(b)(3) – (b)(5).

Plaintiffs separately allege personal jurisdiction based on Mr. McMahon (3) causing tortious injury in Maryland by an act or omission in Maryland; (4) causing tortious injury in

Maryland or outside of Maryland by an act or omission outside Maryland and regularly doing or soliciting business, engaging in any other persistent course of conduct, or deriving substantial revenue from goods, food, services, or manufactured products used or consumed in Maryland; and (5) having an interest in, using, or possessing real property in Maryland. § 6-103(b).

For § 6-103(b)(3), it authorizes jurisdiction based on acts taken in Maryland by the defendant *or its agent*, and all Plaintiffs allege that they were sexually abused in Maryland by WWE's agents (Phillips and Patterson). FAC ¶¶ 184-86, 201, 215, 222, 235, 244-45, 248, 258-59, 264, 276, 285-89, 294-99. Also, at least three Plaintiffs (John Does 4, 6, and 8) allege that Mr. McMahon was physically present at WWE events near the wrestling ring when they were performing Ring Boy duties with WWE's ring crew, including the pedophile Phillips. FAC ¶ 227 (he checked on the ring where John Doe 4 and other Ring Boys were working);[4] ¶ 264 (Vince McMahon was in the dressing room at a July 1989 WWE event in Baltimore, Maryland and left John Doe 6 in the room with Phillips, Patterson, and Garvin after Linda McMahon summoned him to leave the room with her); ¶ 300 (Vince McMahon attended WWE events in Maryland, inspected the ring, and spoke to Phillips, Patterson, and Garvin in the presence of John Doe 8 while working).[5] Mr. McMahon's attendance at WWE events, including in Maryland, and knowledge of the Ring Boys' work at WWE events plus his knowledge of Phillips's "peculiar and unnatural interest" in boys forms the basis of his acts or omissions in Maryland that led to the tortious injuries inflicted on Plaintiffs before, during, and after WWE events. Indeed, *Vince McMahon admitted* that he and Ms. McMahon brought Phillips back to WWE after knowing and seeing for themselves that he was chasing after underaged boys in connection with WWE events. FAC ¶¶ 14, 44, 48, 51.

---

[4] During some WWE events, John Doe 4 and other Ring Boys stayed close to the wrestling ring in case they were needed by Phillips, including near a table by the ring where Vince McMahon an announcer were seated.  *Id.* ¶ 228.

[5] Mr. McMahon also directly spoke to John Doe 6 in a dressing room before a 1992 WWE event in Maine.  *Id.* ¶ 267.

Notably, Mr. McMahon's presence at the July 1989 WWE event in Baltimore with John Doe 6 was *after* he helped fire Phillips in 1988 due to allegations that he was sexually abusing children but then re-hired him six weeks later with the caveat that he steer clear of young boys (he did not, and Mr. McMahon saw it with his own eyes but still left John Doe 6 in the room with Phillips, Patterson, and Garvin). *Id*. It is reasonable to infer that Mr. McMahon's actions (or acquiescence) in Maryland caused Plaintiffs' injuries whenever he was at a WWE event in Maryland along with Ring Boys, Phillips, and Patterson, particularly after he helped re-hire Phillips.[6] At the very least, Plaintiff John Doe 6 alleges a specific incident in which Mr. McMahon's actions at a WWE event in Baltimore caused tortious injuries. *Id*. ¶¶ 265.

For § 6-103(b)(4), Mr. McMahon need not physically be in Maryland for personal jurisdiction to attach.  Instead, it typically requires that a defendant had contacts with Maryland spanning multiple years and encompassing multiple contracts. *Fidelis*, 771 F. Supp. 3d at 633. As discussed above, that is satisfied by virtue of Mr. McMahon's involvement with hundreds of WWE events in Maryland *over the course of decades*. Mr. McMahon argues that § 6-103(b)(4) is akin to general jurisdiction, meaning he would have to be "at home" in Maryland. That is wrong. The persistent course of conduct standard in § 6-103(b)(4) "is not tantamount to establishing general jurisdiction" but does require greater contacts than those necessary under § 6-103(b)(1). *Id*. (noting that the Fourth Circuit in *Pandit v. Pandit*, 808 F. App'x 179, 186–87 (4th Cir. 2020) has held that the standard requires Maryland contacts over a long period of time).

Even if this Court does not agree that Mr. McMahon's actions constitute a persistent course of conduct in Maryland, another basis for personal jurisdiction exists under § 6-103(b)(4): Plaintiffs allege that Mr. McMahon derived substantial revenue from goods, food, services, or

---

[6] It is reasonable to infer that Mr. McMahon was present at more WWE events in Maryland at which additional Plaintiffs (like John Does 4 and 6) worked as Ring Boys, because he attended most TV-taped WWE events.  *Id*. ¶ 332.

manufactured products used or consumed at WWE events in Maryland.[7] As the co-founder of WWE, Mr. McMahon has earned a vast fortune from WWE's business, including business in Maryland. FAC ¶ 317 (since 2024, Vince McMahon has been selling hundreds of millions of dollars' worth of Defendant TKO stock); *cf.* ¶ 318 (to this day, Vince McMahon's wife, Linda McMahon, still holds over $50 million in stock assets, along with over $5 million in WWE-related dividend income).[8] Vince and Linda McMahon's vast personal financial interests in WWE over the decades highlights how personal jurisdiction over them in Maryland is appropriate. Indeed, "[i]t would violate a sense of fairness to permit the [individual defendants] to solicit, negotiate, and consummate corporate business in Maryland in which they personally had so direct and substantial an interest and then allow them to avoid responding in Maryland to legal charges addressed to them personally, which arise from those transactions." *Zeman v. Lotus Heart, Inc.*, 717 F. Supp. 373, 374–78 (D. Md. 1989) (plaintiff sued a California corporation and individual officers/controlling stockholders for negligence and fraud; refusing to dismiss based on personal jurisdiction); *see also Sony Chemicals Eur., B.V. v. M/V Ingrita*, No. MJG-94-1688, 1995 WL 846692, at *2 (D. Md. Nov. 29, 1995) (negligence case; finding personal jurisdiction because the export company derived substantial revenue from the use of its services in Maryland).

For § 6-103(b)(5), Mr. McMahon contends that Plaintiffs do not allege any connection to real property in Maryland. Not true. Plaintiffs conspicuously allege that from 1984-1986, in Owings Mill, Maryland, WWE taped a TV Program called "Tuesday Night Titans" hosted by Vince

---

[7] § 6-103(b)(4) includes "or" language that creates multiple bases: "Causes tortious injury . . . if he regularly does or solicits business, engages in any other persistent course of conduct in the State **or** derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." (emphasis added).

[8] These facts also render inapplicable here the fiduciary shield doctrine. *See CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 767 (D. Md. 2009) (the fiduciary shield doctrine does not apply when (1) the individual is the alter ego of the corporation; (2) if the individual has a substantial interest in the corporation; or (3) when personal jurisdiction is based upon transacting business in Maryland under § 6-103(b)(1)).

McMahon, which taped about 100 weekly episodes in connection with WWE's wrestling events. FAC ¶ 333. Using and possessing real property in Maryland for "Tuesday Night Titans" is sufficient for personal jurisdiction, because Plaintiffs allege tortious injury during the same 1984-1986 time frame. *See id.* ¶¶ 192-250 (John Does 2, 3, 4, and 5 were all injured during that time). Moreover, Mr. McMahon does not dispute (nor could he) that he and WWE used and possessed arenas hundreds of times in Maryland, at which they promoted, marketed, contracted, and held WWE's events – the same events where Plaintiffs were injured. Such substantial use and possession of real property in Maryland satisfies § 6-103(b)(5).

### 3. Exercising Personal Jurisdiction Comports with Due Process.

Contrary to Mr. McMahon's arguments otherwise, all three considerations in *Lewis v. Willough at Naples*, 311 F. Supp. 3d 731, 735 (D. Md. 2018) are satisfied here. First, Mr. McMahon baldly asserts that not a single allegation satisfies considerations of whether he purposefully availed himself of activities in Maryland. In doing so, he ignores Plaintiffs' extensive allegations detailed above regarding his and his WWE agents' involvement in business activities that culminated in hundreds of WWE events held throughout Maryland over the course of decades.[9] Namely, Mr. McMahon personally attended TV-taped WWE events in Maryland, personally promoted WWE events in Maryland, taped and hosted about 100 episodes of a TV program in Maryland connected to WWE's events, and was otherwise involved in booking and scheduling WWE events in Maryland. FAC ¶¶ 330-36. And as detailed above, Mr. McMahon's involvement in business activities for WWE's Maryland events helped provide the opportunity for his agents

---

[9] Those allegations satisfy many of the purposeful availment considerations: whether the defendant reached into Maryland to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in Maryland; whether the defendant made in-person contact with the resident of the forum in Maryland regarding the business relationship; the nature, quality and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within Maryland.

(Phillips, Patterson, and Garvin) to sexually harass and abuse Plaintiffs before, during, and after those WWE events. He can be liable for the torts that he personally committed, inspired, or participated in, even though performed in the name of WWE. *Fidelis*, 771 F. Supp. 3d at 634; *see also CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 766 (D. Md. 2009) (finding defendant's actions satisfy due process because defendant initiated business in Maryland and plaintiff's claims were related to defendant's licensing agreement with plaintiff).

Second, Plaintiffs' claims against Mr. McMahon arise out of his business activities in Maryland, because without marketing, promoting, contracting, and holding WWE events in Maryland, Plaintiffs would not have been sexually abused by WWE employees in Maryland. That's particularly evident, because most of the Plaintiffs were transported across state lines into Maryland for the purpose of attending and working at WWE's events. FAC ¶¶ 184, 201, 215-16, 222, 235, 244-48, 258-59, 264-65, 285. Plaintiffs' claims are inextricably linked to WWE's events in Maryland, because WWE and Vince and Linda McMahon allowed their agents (Phillips, Patterson, and Garvin) to use underaged Ring Boys like Plaintiffs to work at WWE's events. Also linked is Phillips's and Patterson's sexual abuse of Plaintiffs at hotels before and after WWE events, because without the WWE events (and Plaintiffs performing Ring Boy duties for such events), Plaintiffs would not have been transported into Maryland and given lodging at hotels before and after the events, often staying with other WWE employees and wrestlers which highlights how the hotels were part of the necessary logistics for WWE events. *Id.* ¶¶ 93, 184-85, 196, 198, 202, 212, 222, 244-45, 264-66, 281-83, 296 (Plaintiffs met WWE wrestlers at hotels, stayed in the same hotel as WWE executives like Patterson, Garvin, and Vince McMahon, and even ate breakfast and other meals with WWE employees including Vince McMahon).

Third, exercising personal jurisdiction over Mr. McMahon is constitutionally reasonable.

Mr. McMahon asserts with hardly any support or analysis that defending in this Court would be burdensome and constitutionally unreasonable. To the contrary, defending a lawsuit in Maryland where he frequented *numerous* times for business *for decades*, not to mention the hundreds of WWE events held there by his company that generated substantial income for him, is not unreasonable, let alone unreasonable enough to offend due process. Moreover, to the extent any burden exists for Mr. McMahon, it is outweighed by Maryland's interest in adjudicating claims involving child sex abuse and Plaintiffs' interest in obtaining effective relief in this forum. Look no further than the Supreme Court of Maryland upholding the constitutionality of Maryland's Child Victims Act of 2023, which allowed Plaintiffs to timely bring their claims. *Roman Cath. Archbishop of Washington v. Doe*, 489 Md. 514, 521 (Md. 2025); FAC ¶ 337; *Owens v. State*, 352 Md. 663, 690 (Md. 1999) ("The state has an unparalleled interest in protecting children from the potentially devastating effects of sexual abuse and exploitation . . .").

### B.    Plaintiffs Sufficiently Plead Multiple Duties Owed By Mr. McMahon

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

The only element of Plaintiffs' negligence-based claims with which Mr. McMahon takes issue is duty (not breach, causation, or loss/injury). Plaintiffs allege multiple duties owed to them by Mr. McMahon: duties by virtue of special relationships between Plaintiffs and Mr. McMahon and also between the predators (Phillips, Patterson, and Garvin) and Mr. McMahon; a duty to

exercise reasonable care to avoid foreseeable injury; a duty to provide a reasonably safe place to work and to warn of dangers; a duty to protect business invitees; statutory duties to report suspected child abuse; and a duty to hire and retain competent staff and not any person who they know or should know poses a risk to others. FAC ¶¶ 349-56, 370, 380-81. Mr. McMahon asserts that there is no duty to protect another from the tortious acts by a third person. But there are exceptions: (1) if the defendant has control over the conduct of the third party; (2) if there is a special relationship between the defendant and the third party *or* between the defendant and the plaintiff; or (3) if there is a statute that is designed to protect a specific class of people. *Est. of Madden v. Sw. Airlines, Co.*, No. 1:21-CV-00672-SAG, 2021 WL 2580119, at *3 (D. Md. June 23, 2021). All those exceptions apply here, which vitiate Mr. McMahon's attempts to avoid his duties.

### 1. Mr. McMahon has Control Over WWE Employees/Agents.

Mr. McMahon co-founded WWE, was one of its highest-ranking executives, and was notorious for micromanaging everything at WWE, including ring announcers like Phillips. FAC ¶¶ 144-167, 317, 343, 349, 358-60, 372, 390. He also showed control over Phillips at WWE events, when, for example, he instructed Phillips to take John Doe 4 away from the arena hallway where he and Hulk Hogan appeared to be arguing and when Vince instructed John Doe 7 to carry wrestlers' suitcases from the hotel to Phillips's vehicle. *Id.* ¶¶ 229, 283. Mr. McMahon cannot seriously dispute that he directed and controlled Garvin (V.P. of Operations and Phillips's supervisor) and Patterson (known as Vince's right-hand man and close confidante). *Id.* ¶ 35; *see also id.* ¶¶ 147, 334-35 (reproducing internal WWE memoranda to WWE executives like the McMahons, Patterson, and Garvin regarding personal appearances and TV-taped events in Maryland, including a memorandum from Pat Patterson). Demonstrating his control over his WWE employees/agents, Mr. McMahon was directly involved in the firing and re-hiring of

17

Phillips after allegations of his child sex abuse surfaced, including giving him the directive to steer clear of underaged boys and paying him hundreds of thousands of dollars to go away. *Id*. ¶¶ 14, 44-45, 48, 51, 58, 114, 163. Additionally, Mr. McMahon demonstrated his control specifically during the Ring Boys scandal when he and Linda McMahon ultimately decided whether Phillips, Patterson, and Garvin would leave or remain part of WWE. *Id*. ¶¶ 55, 94-106. Further, Phillips, Garvin, and Patterson were acting for the benefit of WWE and Vince and Linda McMahon by allowing Ring Boys to work at WWE events as part of the ring crew. The foregoing allegations prevent Mr. McMahon from relying on the supposed rule that there is no duty to protect another (Plaintiffs and other Ring Boys) from the tortious acts by a third person (the child predators within WWE: Phillips, Patterson, and Garvin). *See, e.g.*, Restatement (Second) of Torts § 317 cmt. c. (a master is under a duty to exercise reasonable care to control his servant while acting *outside* the scope of employment so as to prevent intentional harm to others, which includes liability from retaining servants who are in the habit of misconduct dangerous to others).[10]

### 2. Mr. McMahon Owed All Plaintiffs a Duty By Virtue of Special Relationships.

Mr. McMahon owed all Plaintiffs a duty to protect them from third parties' (Phillips, Patterson, and Garvin) conduct because of special relationships. FAC ¶¶ 350, 358. A special relationship to protect another may be established: (1) by statute or rule; (2) by a contractual or other private relationship; or (3) indirectly or impliedly by virtue of the relationship between the tortfeasor and a third party." *Seiberlich v. Deossa*, No. CV TDC-23-0560, 2024 WL 343298, at *3–4 (D. Md. Jan. 30, 2024). Duty arises from "the inherent nature of the relationship between the

---

[10] This Restatement section applies to the facts here, because the servants (Phillips, Patterson, and Garvin) were "upon the premises in possession of the master or upon which [they are] privileged to enter only as [the] servant" (the arenas and hotels for WWE events) or were using the chattels of the master (WWE props like wrestler belts and tickets to WWE events to lure boys), and the master (Vince and Linda McMahon) knew or had reason to know about their ability to control Phillips, Patterson, and Garvin along with the necessity and opportunity for exercising such control.

parties," like when "one party undertak[es] to protect or assist the other party, and thus often induc[es] reliance upon the conduct of the acting party." *Id*. A "special relationship" may exist where there is an "element of dependence and ceding of self-control by the injured party." *Id*.

First, a special relationship existed due to Maryland's reporting rules for suspected instances of child abuse. FAC ¶ 355 (citing Md. Code Ann., Fam. Law §§ 5-705 and 5-705.1). By its language, § 5-705 applies to "a person in [Maryland]"—which includes Mr. McMahon any time he entered the State—not just Maryland residents. *See Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 382 Md. 170, 184 (Md. 2004) ("To achieve that purpose . . . 5–705 require[s] ***anyone*** who has reason to believe that a child has been subjected to abuse or neglect to notify either DSS or the appropriate law enforcement agency.") (emphasis added); *David N. v. St. Mary's Cnty. Dep't of Soc. Servs.*, 198 Md. App. 173, 182–83 (Md. Ct. Spec. App. 2011) ("[T]he duty to report in section 5–705 applies to all children suspected of being abused or neglected, without any limitation based upon a child victim's state of residence or the place where the abuse or neglect is thought to have happened.").[11] Thus, a special relationship existed between Mr. McMahon and Plaintiffs because of the Maryland rule that he report suspected child abuse committed by his WWE agents, namely Phillips.

Second, Mr. McMahon, as co-founder and top executive of the WWE, was in a special relationship with Plaintiffs and other Ring Boys through the inherent nature of their working relationship, because all Plaintiffs performed Ring Boy duties for the benefit of WWE and its co-founders Vince and Linda McMahon. FAC ¶¶ 186, 201, 215, 223, 228, 242, 259, 276, 283, 295, 298-99. Mr. McMahon—through his WWE agents, particularly Phillips, Patterson, and Garvin—

---

[11] Mr. McMahon argues that § 5-705.1 was enacted in 2003 and does not apply here. But as *David N.* makes clear, the reporting requirement under §§ 5-705 and 5-705.1 is the same, the difference is that under the latter a report of abuse will be made to a Maryland local department but then forwarded to the appropriate out-of-state authority.

permitted Ring Boys to work at WWE events and be given assistance such as money, lodging, food, and entertainment. *Id.* ¶¶ 178, 182-83, 186, 201, 215, 226, 235, 248, 258-59, 276, 295. Moreover, that working relationship included Plaintiffs' dependence and ceding of self-control, because they were *underaged* boys working for adults, almost all of whom traveled out of state to Maryland for WWE events and depended on WWE agents, particularly Phillips and Patterson, for food and lodging. That dependence also flowed to Mr. McMahon because he admitted that he and Ms. McMahon saw Phillips with kids all the time, and Plaintiffs allege multiple direct interactions with Vince McMahon. *Id.* ¶¶ 48, 53, 114, 227-29, 264, 267, 300; *see also Seiberlich*, 2024 WL 343298, at *3–4 (plaintiff plausibly alleged a special relationship because he was hired to work as a referee who arguably ceded self-control because he was not free to leave the field while working).

Third, Mr. McMahon was in a special relationship with Phillips, Patterson, and Garvin by controlling them as employees/agents of WWE. *Id.* ¶¶ 1, 35, 51, 101-06; *Est. of Madden*, 2021 WL 2580119, at *3 (a special relationship can exist between the defendant and the third party); *Seiberlich*, 2024 WL 343298, at *4 (league defendants were in special relationship with independent contractor referee who they hired). Mr. McMahon asserts that Plaintiffs' alleged sexual misconduct by Phillips, Patterson, and Garvin cannot be attributed to him. Yes, it can. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 758-59 (1998) (citing four circumstances in which agency principles impose liability on employers even where employees commit torts outside the scope of employment, including the employer was negligent or where the employee was aided in accomplishing the tort by the existence of the agency relation);[12] *cf. Cramer v. Hous. Opportunities*

---

[12] *See id.* ("Thus, although a[n employee's] sexual harassment is outside the scope of employment ..., an employer can be liable, nonetheless, where its own negligence is a cause of the harassment[, *i.e.*,] if it knew or should have known about the conduct and failed to stop it."); *see also P.J. v. City of Jersey City*, No. 21-CV-20222, 2022 WL 16949544, at *5-9  (D.N.J. Nov. 15, 2022) (involving police officer's sexual assault of a child in the 1970s; finding that plaintiff stated a claim for vicarious liability); *K.J. v. J.P.D.*, No. 20-CV-14177, 2023 WL 4103013, at *3 (D.N.J. June 21, 2023) ("Plaintiff alleges childhood sexual abuse at the hands of a police officer who used his badge to exercise power and obtain *in loco parentis* authority over the Plaintiff"; denying defendant's motion to reconsider).

*Comm'n of Montgomery Cnty.*, 304 Md. 705, 720–21 (Md. 1985) (involving negligence action in sexual assault case; reversing directed verdict for defendant because a jury could have found causation between defendant's negligent hiring and plaintiff's injuries given that the building inspector used his position to obtain knowledge about plaintiff and her home). Moreover, Mr. McMahon can be liable for the sexual misconduct by Phillips, Patterson, and Garvin through ratification. *Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*, 2025 WL 1592464, at *5-6 (D. Md. June 5, 2025) (ratification may be inferred from acquiescence to an employee's unauthorized act due to an employer's silence and failing to disavow the act, whether it knew or "should have known" of the act); *Doe #1 v. Bd. of Educ. of Somerset Cnty.*, No. CV RDB-22-1491, 2023 WL 375189, at *5 (D. Md. Jan. 24, 2023) (school board's acquiescence to sexual misconduct supported vicarious liability despite the conduct falling outside normal scope of employment).[13]

Here, Plaintiffs allege that Phillips, Patterson, and Garvin used their positions within WWE to abuse Ring Boys and that Defendants acquiesced not only in the use of Ring Boys for WWE work but also in WWE's culture of sexual misconduct. *See, e.g.*, FAC ¶¶ 1, 3, 26, 38, 49, 75, 85, 95-96, 98, 115-143. Plaintiffs also allege that Vince McMahon *himself* inspired, tolerated, and participated in acts of sexual misconduct that further supports ratification of similar misconduct by Phillips, Patterson, and Garvin. *Id.* ¶¶ 25, 64-86, 115-143 (detailing allegations and lawsuits involving WWE sexual misconduct against Ring Boys, wrestlers, employees, and third parties).

Fourth, Mr. McMahon stood in loco parentis with Plaintiffs, which involves voluntarily taking custody of a child and assuming parental obligations. *Wilson v. State*, No. 1947, Sept.term,2021, 2023 WL 2314838, at *10-12 (Md. Ct. Spec. App. Mar. 1, 2023). As WWE's co-

---

[13] *See also Gray v. Koch Foods, Inc.*, 580 F. Supp. 3d 1087, 1131-32 (M.D. Ala. 2022), *aff'd*, No. 22-13214, 2025 WL 1932964 (11th Cir. July 15, 2025) (sufficient showing of ratification for employer liability where HR director observed and participated in sexual harassment but did not remedy it).

founder and executive, Mr. McMahon exercised his authority and stood in loco parentis over Ring Boys, who were transported across state lines to work, housed overnight, and relied on WWE agents for basic needs.  Courts have recognized in loco parentis duties in comparable sexual abuse circumstances involving schools, coaches, and custodial overnight supervision, including *implied* consent to care for and supervise children. *See, e.g.*, *Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 668 (D. Md. 2021); *Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d 659, 669 (D. Md. 2012); *Wilson*, 2023 WL 2314838, at *10-12; *Adams v. Sec'y, Fla. Dep't of Corr.*, No. 23-13455, 2025 WL 1639254, at *5-6 (11th Cir. June 10, 2025).[14]

Mr. McMahon argues that in loco parentis should not apply because Plaintiffs and other Ring Boys were free to leave the WWE events where they worked. Not so. Almost all Plaintiffs traveled across state lines and had to stay overnight for the purpose of WWE's Maryland events. FAC ¶¶ 184, 201, 215-16, 222, 235, 244-48, 258-59, 264-65, 285. And although John Doe 8 did not travel across state lines into Maryland, he was not free to simply leave his work for WWE events without facing discipline, especially after being transported by Mr. McMahon's agent Phillips. *Seiberlich*, 2024 WL 343298, at *3–4 (plaintiff referee arguably ceded self-control because he was not free to leave the field while working). It defies common sense for Mr. McMahon to suggest that underaged boys were free to leave (by themselves) out-of-state WWE events where they worked, after being transported there by WWE agents, particularly Phillips, and depended on WWE for lodging and meals. Moreover, at least one Plaintiff alleges that when he expressed a desire to go home, Phillips made him travel on a bus with other WWE workers and

---

[14] Mr. McMahon cites factually inapposite cases. *Molock v. Dorchester Cnty. Fam. YMCA, Inc.*, 139 Md. App. 664, 673-75 (Md. Ct. Spec. App. 2001) (no evidence that the local (not out-of-state) YMCA exercised custodial control and discipline over students and they were free to leave the YMCA, including when fighting in the parking lot); *Fletcher v. Maryland Transit Admin.*, 741 F. App'x 146, 151 (4th Cir. 2018) (unpublished) (school did not have custodial control over students when they were fighting in a neighborhood and attacked a resident outside his home); *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 420 (D. Md. 2022) (loco parentis does not apply in colleges).

spend the night.  FAC ¶¶ 178, 181. And Vince and Linda McMahon were aware of their in loco parentis standing with respect to Ring Boys like Plaintiffs working for them and WWE.[15]

### 3.  Mr. McMahon Owed All Plaintiffs a Duty Arising from Foreseeability.

Plaintiffs allege myriad facts that Mr. McMahon knew or should have known about the possibility of child sex abuse committed by Phillips and Patterson. *Supra* Section II. In short, Plaintiffs allege that it was known by everyone in WWE—wrestlers, referees, employees, executives, and Vince and Linda McMahon—that Phillips had a foot fetish, openly acted on the fetish (and worse) in places like WWE dressing rooms, and that he was constantly seen with a group of underaged Ring Boys. FAC ¶¶ 36-38, 40-42, 50, 61-70, 85. Mr. McMahon criticizes sources[16] cited by Plaintiffs as support for Vince and Linda McMahon's knowledge of Phillips's "peculiar and unnatural interest" in boys. But he ignores ***his own confessions*** that he and Ms. McMahon knew about Phillips's inappropriate proclivity *before* they temporarily fired him in 1988, and that a third party confirmed the accuracy of the confessions. *Id*. ¶¶ 43-45, 48, 51, 55. Vince McMahon also admitted that he and Ms. McMahon saw Phillips with kids all the time, and Plaintiffs allege multiple, direct interactions with Mr. McMahon. *Id*. ¶¶ 48, 53, 114, 227-29, 264, 267, 300. Notably, Plaintiffs allege that going back to at least the ***mid-1970s*** Vince McMahon had been giving Ring Boys like John Doe 7 tasks for the purpose of WWE events, staying in hotels with Ring Boys like John Doe 7, and eating meals with them. *Id*. ¶¶ 93, 277, 282-84. The presence

---

[15] *Id*. ¶¶ 282-83 (Vince McMahon stayed in hotels and ate meals with Ring Boys, including some Plaintiffs); ¶ 54 (Vince McMahon knew that a Ring Boy nicknamed "Mrs. Mel Phillips" had his parents' permission to be with Phillips for the purpose of WWE events); ¶ 68 (Nelson Sweglar, WWE's company operations manager, said "These were kids that were usually from broken homes whose parents would only be too glad to send them off to do a day's work." "***Everyone knew what was going on***.") (emphasis added).  On behalf of WWE and the McMahons, Phillips even had direct contact with Ring Boys' parents before taking them to WWE events.  *Id*. ¶¶ 92, 110, 176, 254.

[16] Mr. McMahon criticizes Plaintiffs' allegations that a WWE wrestler recounted how he was present at a WWE event around 1982-83 when Phillips was spotted performing a sexual act on a boy *and that it was reported to Mr. McMahon and his father*. *Id*. ¶¶ 42. But Plaintiffs' allegations must be taken as true.

of Ring Boys with Phillips at WWE events going back to the 1970s (and his misconduct with them) is corroborated by at least one eyewitness. *Id.* ¶ 91 (friend of Phillips recounted memories from the 1970s of meeting Phillips when he worked for WWE, witnessing Phillips "wrestle" underaged boys, and seeing Phillips preoccupied with his group of Ring Boys). It is reasonable to infer that Mr. McMahon saw or knew about the same misconduct, because Phillips openly engaged in his grooming/sexualized "wrestling" and foot fetish for others to see, including the FBI's videotape evidence shot by a WWE employee. *Id.* ¶¶ 8, 10, 50, 91, 113, 192, 194, 224-25, 243, 260. And Vince McMahon intensely micromanaged WWE, including ring announcers like Phillips, further supporting foreseeability. *Id.* ¶¶ 73, 144-167 (he had "eyes and ears everywhere").

Strikingly similar to the facts here are those in *Doe #1*, 2023 WL 375189, at **2, 5, where a school nurse leveraged her position to groom and manipulate underaged students with food, small gifts, and rides to gain access and coerce them into sexual activities. Plaintiffs alleged that the Board knew of the nurse's "red flag grooming behaviors" based on the Board's *agents'* firsthand observations and reports filed by both parents and school personnel, but the Board failed to take action and the nurse engaged in sexual misconduct with the underaged students. *Id.* The court concluded that plaintiffs' negligence claim could proceed against the Board under direct and vicarious liability theories. *Id.*; *cf. Loveless v. Estevez*, No. 01985,sept.term,2017, 2019 WL 4187465, at *12 (Md. Ct. Spec. App. Sept. 3, 2019) (court found foreseeable that a sexual relationship would result from "boundary violation conduct" of teacher inappropriately contacting and visiting student at her home even though Board wasn't aware of sexual relationship itself).[17]

Moreover, Plaintiffs allege sexual *harassment* by Phillips, Patterson, and Garvin because

---

[17] Mr. McMahon's cited cases lack facts for foreseeability.  *Rhaney v. Univ. Of Maryland E. Shore*, 880 A.2d 357, 366 (Md. 2005) (no record to suggest college roommate had a propensity for violence); *Doe v. Alsaud*, 12 F.Supp.3d 674, 680–81 (S.D.N.Y. 2014) (no allegations of prior sexual misconduct or actual/constructive knowledge of prior acts).

such misconduct—like the WWE's culture of rampant sexual misconduct—supports the foreseeability of the sexual *abuse* against Ring Boys like Plaintiffs, which is covered by the Child Victims Act. *See, e.g.*, FAC ¶ 79 (WWE wrestler saw sexual harassment of Ring Boys and that it was "very common knowledge that these kids were being used as pawns for [Phillips, Patterson, and Garvin]"; ¶ 98 (Patterson and Garvin harassing Ring Boy); ¶¶ 64-86, 115-43 (detailing myriad harassment and abuse allegations and lawsuits); ¶ 211 (Garvin harassing comment and touching John Doe 3 in front of Phillips); ¶ 256 (WWE wrestler's harassing touching of John Doe 6 in front of multiple WWE employees/agents including Phillips and Patterson). Just like the red flag grooming and boundary violations in *Doe #1* and *Loveless*, all sexual harassment and grooming committed by Phillips, Patterson, and Garvin, including in the open at WWE events for others to witness, makes it foreseeable that those same child predators would sexually abuse Ring Boys. *Seiberlich*, 2024 WL 343298, at *3–4 (foreseeability reflects "current societal standards with respect to an acceptable nexus between the negligent act and the ensuing harm.") (cleaned up).

### 4. Mr. McMahon Owed All Plaintiffs An Employment-Related or Business Invitee Duty.

Plaintiffs allege that they performed Ring Boy duties as part of the ring crew, working for WWE and Vince and Linda McMahon: setting up the wrestling ring, running errands for WWE executives, handling wrestlers' luggage, and selling wrestler photographs in the arena lobby. FAC ¶¶ 3, 186, 201, 215, 222-23, 228, 235, 241, 248, 258-59, 276, 283, 295. For the work, Plaintiffs received compensation, mostly in cash but also in the form of food, lodging, and admission to the WWE events (including special access to WWE wrestlers and prime seating). *Id*. ¶¶ 12, 21, 186, 201, 209, 212, 215, 223, 226, 231, 235, 240, 248, 258-59, 269, 289, 295. Like Plaintiffs, other Ring Boys were compensated, and Ms. McMahon even re-hired one after he alleged sexual abuse. *Id*. ¶¶ 96, 99-107, 110. Mr. McMahon also directed Ring Boys and inspected the ring and their

work. *Id*. ¶¶ 93, 114, 229, 264, 277, 282-84, 300. He can be liable for affirmative, direct acts of negligence that breach a personal duty owed to Plaintiffs as WWE workers, including his allowing the use of Ring Boys for WWE work with predators like Phillips, Patterson, and Garvin but also inspiring and participating in WWE's culture of sexual misconduct. *Id*. ¶¶ 1, 3, 26, 38, 49, 75, 85, 95-96, 98, 115-143; *Hayes v. Pratchett*, 205 Md. App. 459, 473-77 (Md. Ct. Spec. App. 2012).

Mr. McMahon argues that employment-related duties are nondelegable to him as WWE's co-founder and executive. But he can still be liable for torts that he committed, inspired, or participated in. *Worden v. 3203 Farmington LLC*, No. 1373, Sept.term,2021, 2023 WL 4945171, at *12 (Md. Ct. Spec. App. Aug. 3, 2023). Contrary to Mr. McMahon's contention, that does not require piercing the corporate veil. *Id*. Under the "participation," doctrine, Plaintiffs allege that Mr. McMahon committed misfeasance by inspiring and participating in WWE's rampant culture of sexual misconduct. FAC ¶¶ 25, 64-86, 115-143 (*for decades*, numerous individuals—including WWE wrestlers, employees, referees, and third parties—have alleged sexual misconduct committed by Phillips and WWE executives, especially Vince McMahon, Patterson, and Garvin). Mr. McMahon was also involved in the firing and re-hiring of Phillips; dealing with and concealing WWE's scandals, including the Ring Boy Scandal; and personally interacting with and directing multiple Ring Boys, including several Plaintiffs. *Id*. ¶¶ 14, 44, 48, 51, 53, 58-59, 69-74, 78, 93, 114, 277, 282-84, 330-35. He allowed Phillips, Patterson, and Garvin to utilize the WWE to prey on underaged victims. *Id*. ¶¶ 141-43, 357; *see Levi v. Schwartz*, 201 Md. 575, 583-84 (Md. 1953) (holding the president of a corporation personally liable where he participated in the tort by visiting the scene of the operations and giving orders to the foreman engaged in the tortious conduct); *Metromedia Co. v. WCBM Maryland, Inc.*, 327 Md. 514, 521-22 (Md. 1992) (CEO could be

personally liable for directing, participating, or cooperating in decision to not vacate premises).[18]

And even if this Court decided that Mr. McMahon did not owe Plaintiffs an employment-related duty, Plaintiffs were nonetheless business invitees before, during, and after WWE events (and invitees of Mr. McMahon as WWE's co-founder) especially when they were accompanied by WWE agents and given special access to WWE events, which also attaches a duty on Mr. McMahon to protect Plaintiffs from dangerous conditions *and the actions of third persons like employees*. *See Miller v. Live Nation Worldwide, Inc.*, No. CV CBD-14-2697, 2016 WL 374103, at *3-4 (D. Md. Feb. 1, 2016) (finding that concert operator had duty to protect business-invitee plaintiff from crowd-surfing because of actual or constructive notice it was occurring at the venue).[19] As shown above, WWE and the McMahons had actual or constructive notice of Phillips's misconduct with underaged boys and WWE's culture of sexual misconduct generally.

### 5. Mr. McMahon Owes John Does 6 and 8 an Additional Duty Because of His Personal Treatment of Them.

When Plaintiffs like John Does 6 and 8 allege negligence because of a defendant's direct and personal treatment of them, there is a relaxed standard for whether a duty exists. *See Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 762–63 (D. Md. 2015) (explaining that when plaintiffs allege a defendant's negligence in their direct and personal treatment of plaintiffs, then "[t]here is no set formula for the determination of whether a duty exists" and instead the determination is a policy question of whether the specific plaintiff is entitled to protection from the acts of the defendant).[20]

---

[18] Mr. McMahon's cited cases are distinguishable because the supervisors did not participate in the tort. *Athas v. Hill*, 458 A.2d 859, 860-62 (Md. Ct. Spec. App. 1983) (supervisors did not participate in employee's knife stabbing); *Jarrett v. Home Depot U.S.A., Inc.*, No. 1:21-CV-01514-SAG, 2021 WL 3288361, at *3 (D. Md. Aug. 2, 2021) (no allegation that manager was involved with the incident nor even at the store); *Bowman v. Top Gun of Virginia, Inc.*, No. TJS-21-2207, 2021 WL 5827776, at *5 (D. Md. Dec. 8, 2021) (no allegations of CEO involvement in vehicle collision).

[19] *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388 (Md. Ct. Spec. App. 1997) (an owner *or occupier* of land has a duty to protect a business invitee from unreasonable risk). WWE and the McMahons occupied or otherwise possessed arenas and hotels for their WWE events. FAC ¶ 356.

[20] That analysis considers factors such as the foreseeability of harm, the degree of certainty that the plaintiff suffered

Here, John Doe 8 alleges Vince McMahon attended WWE events in Maryland, inspected the ring, and spoke to Phillips, Patterson, and Garvin in the presence of John Doe 8 while he worked. FAC ¶ 300. Those 1982 WWE events occurred well after Mr. McMahon became aware in the 1970s that Ring Boys like John Doe 7 had been working as part of the ring crew, staying in hotels with Vince McMahon, Phillips, and others, and eating meals with them. *Id*. ¶¶ 53, 93, 114, 277, 282-84. That Phillips was already openly engaging in sexual misconduct with underaged boys in the 1970s should have led Mr. McMahon to protect John Doe 8 from Phillips, rather than allow Phillips, Patterson, and Garvin to oversee John Doe 8's work. *Id*. ¶ 91 (by the mid-1970s an eyewitness account described Phillips preoccupation with his group of Ring Boys).

John Doe 6 alleges a specific incident involving Mr. McMahon when they were in a dressing room at a July 1989 WWE event in Baltimore, Maryland with Phillips, Patterson, and Garvin. *Id*. ¶ 264. That event was *after* Mr. McMahon fired Phillips in 1988 for due to child sex abuse allegations but then re-hired Phillips six weeks later with the caveat that he steer clear of boys. *Id*. ¶¶ 14, 44, 48, 51. In violation of the McMahons' directive, Vince McMahon left John Doe 6 in the dressing room with the predators after Ms. McMahon summoned him to leave, and he did not protect John Doe 6 (like separating Phillips from John Doe 6). *Id*. ¶ 264. Phillips and Patterson later sexually abused John Doe 6 after that event. *Id*. ¶¶ 264-66.

That direct and personal treatment of John Does 6 and 8 is an additional reason to find that Mr. McMahon owes duties to them because it was foreseeable that Phillips would harm them, there is a close connection between Mr. McMahon and John Does 6 and 8 due to their interaction, there is moral blame for allowing Phillips to violate the McMahon's directive that he steer clear of boys,

---

injury, the closeness of the connection between the defendant's conduct and the injury, the moral blame attached to defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved. *Id*.; *Est. of Madden*, 2021 WL 2580119, at *3-4 (same).

and it is a vital policy interest to prevent all child sex abuse. *See Doe*, 123 F. Supp. 3d at 763 (denying motion to dismiss where plaintiffs alleged that defendants were negligent in their direct and personal treatment of plaintiffs by failing to adhere to university's policies and procedures).

### C.    Plaintiffs Sufficiently Plead a Claim for Negligent Hiring, Supervision, Training and Retention

Mr. McMahon also seeks dismissal of Plaintiffs' second cause of action, relying on many of the same arguments (*e.g.*, nondelegable duty, whether an employment relationship exists with Plaintiffs, and actual or constructive knowledge of the alleged sexual misconduct) that he uses to challenge whether Plaintiffs' have plausibly pled a duty owed by him under Plaintiffs' first cause of action. For the same reasons detailed above, Mr. McMahon's arguments should be rejected.

Mr. McMahon also challenges the second cause of action by feigning ignorance of the underlying torts that Plaintiffs allege were committed by WWE's child predators. Even a cursory review of the FAC makes clear that Plaintiffs allege sexual abuse, particularly committed by Phillips and Patterson, that can constitute assault, battery, and a variety of other common law torts. All Plaintiffs provide excruciating detail of the abuse they suffered and by whom within WWE. FAC ¶¶ 173-302. Mr. McMahon's characterization of their allegations as lacking detail is baseless. *See Loveless*, 2019 WL 4187465, at *11-12 (rejecting defendant's characterization of "inappropriate conduct" as vague because the complaint contained details of the conduct that led to teacher's sexual relationship with student; reversing dismissal of negligent hiring, supervising, and retaining claim). Even the case law cited by Mr. McMahon does not support dismissal.[21]

Finally, Mr. McMahon argues that the second cause of action is duplicative and requires dismissal of Plaintiffs' separate general negligence claim. Not so. *See Doe v. Mercy High Sch.*,

---

[21] *See Nammack v. Hampstead Pre-Owned*, No. CV DKC 19-1798, 2020 WL 1033589, at *6 (D. Md. Mar. 3, 2020) (*denying* motion to dismiss negligent retention and supervision claim that was based on sexual assault and battery).

*Inc.*, No. 1:23-CV-01184-JRR, 2024 WL 3103396, at *23 (D. Md. June 24, 2024) (allowing negligence claim to proceed, because whether to dismiss for duplication is *discretionary* and the facts alleged for negligence versus negligent hiring/supervision/retention "are not true mirror images"). Here, Plaintiffs' two causes of action are not mirror images, because the general negligence claim includes Defendants' liability for direct actions whereas the second cause of action focuses on failure to manage and oversee WWE's child predators and negligently retaining them. *See Loveless*, 2019 WL 4187465, at *11-12 (negligence and negligent hiring/supervision claims were substantially similar but the latter focused more on failure to train and/or discipline the perpetrator while the inappropriate relationship developed); *Robinson v. Bd. of Educ. of Washington Cnty.*, No. 1:22-CV-01102-ELH, 2023 WL 2499854, at *22-23 (D. Md. Mar. 14, 2023) (finding negligent employment claim *not* redundant).

## IV.    CONCLUSION

The eight Plaintiffs who have courageously come forward to seek justice for their horrendous childhood trauma should be allowed to proceed with their negligence-based claims against Vince McMahon.[22] Plaintiffs' have made a prima facie showing of specific personal jurisdiction under nearly all portions of the Maryland long-arm statute, so Mr. McMahon's Fed. R. Civ. P. 12(b)(2) motion should be denied. Regarding Mr. McMahon's challenge to the sufficiency of the pleading, Plaintiffs have raised plausible claims to relief based on multiple duties owed by him, and his Fed. R. Civ. P. 12(b)(6) motion should also be denied in full.

---

[22] Should this Court grant dismissal, Plaintiffs respectfully request leave for jurisdictional discovery into Mr. McMahon's involvement in WWE's Maryland events and/or leave to amend the complaint. *Hartford Mut. Ins. Co. v. Hoverzon, LLC*, No. CV SAG-20-2713, 2021 WL 461760, at *3 (D. Md. Feb. 9, 2021) (ordering limited jurisdictional discovery in the interest of judicial efficiency); *Stifel, Nicolaus & Co., Inc. v. Firemoon Energy, LLC*, No. GJH-16-628, 2016 WL 8673135, at *2 (D. Md. Oct. 28, 2016) (whether to permit jurisdictional discovery is the court's discretion); Fed. R. Civ. P. 15(a)(2).

Dated: July 28, 2025                              */s/ William H. Murphy, Jr.*

William H. "Billy" Murphy, Jr. (Bar No. 07985)
Phylecia R. Faublas (Bar No. 30435)
**MURPHY, FALCON & MURPHY**
1 South Street, Suite 3000
Baltimore, Maryland 21202
Telephone: (410) 951-8750
billy.murphy@murphyfalcon.com
phylecia.faublas@murphyfalcon.com

Greg G. Gutzler
Emma Bruder
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, New York 10017
Telephone: (646) 933-1000
ggutzler@dicellolevitt.com
ebruder@dicellolevitt.com

Adam Prom
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
aprom@dicellolevitt.com

Mark A. DiCello
Robert F. DiCello
**DICELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, OH  44060
Telephone: (440) 953-8888
madicello@dicellolevitt.com
rfdicello@dicellolevitt.com

*Attorneys for Plaintiffs*

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of July 2025, I caused a copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system and electronic notification of such filing is sent to all CM/ECF participants and counsel of record.

*/s/ William H. Murphy, Jr.*

William H. "Billy" Murphy, Jr.
