# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOHN DOE 1, et al.,<br><br>   *Plaintiffs*,<br><br>v.<br><br>WORLD WRESTLING ENTERTAINMENT, LLC, et al.,<br><br>   *Defendants*. | Civil Action No. 24-03487-JKB |

## DEFENDANT LINDA E. MCMAHON'S REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS

Plaintiffs, John Does 1–8, now have had three chances to demonstrate that Defendant Linda E. McMahon is subject to personal jurisdiction in Maryland. But neither the Complaint, the Amended Complaint, nor Plaintiffs' Opposition to Ms. McMahon's Renewed Motion to Dismiss satisfies the applicable legal standards. Ms. McMahon—an out-of-state defendant with no relevant ties to Maryland—cannot be haled into Maryland to defend against Plaintiffs' claims, and they should thus be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). And because Plaintiffs also fail to plausibly allege any cognizable claim against Ms. McMahon, dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6) as well.

## I.    Plaintiffs fail to establish that Ms. McMahon is subject to personal jurisdiction in Maryland.

Plaintiffs "bear[] the burden of demonstrating personal jurisdiction at every stage following … a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). Plaintiffs have failed to meet their burden. They maintain that five separate subsections of Maryland's long-arm statute authorize this Court's exercise of specific personal jurisdiction over Ms. McMahon. ECF No. 61, Plaintiffs' Opposition to Defendant Linda McMahon's Motion to Dismiss ("Opp.") at 5–14. But none do, as set forth in Ms. McMahon's Renewed Motion to Dismiss. ECF No. 57-1, Memorandum in Support of Renewed Motion to Dismiss and Request for Hearing ("Mot.") at 9–16.

Plaintiffs' shotgun-style jurisdictional pleading should not distract the Court from concluding that the exercise of specific personal jurisdiction over Ms. McMahon would violate the due process requirements of the Fourteenth Amendment. *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396–97 (4th Cir. 2003) (merging the statutory analysis of Maryland's long-arm statute with the constitutional analysis, as "the state's long-arm

1

statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution"). As the Fourth Circuit has explained:

> The due process inquiry for an exercise of specific personal jurisdiction can be distilled to a three-pronged test: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."

*Khashoggi v. NSO Grp. Techs. Ltd.*, 138 F.4th 152, 159 (4th Cir. 2025) (citations omitted). Because no prong is satisfied as to Ms. McMahon, the exercise of specific personal jurisdiction over her would neither be consistent with due process nor authorized by any subsection of Maryland's long-arm statute.

### A. Purposeful availment is not satisfied by vague and conclusory allegations of Ms. McMahon's "involvement" in booking, scheduling, organizing, or promoting unspecified WWE events in Maryland.

Plaintiffs suggest that because Ms. McMahon was involved, in some nonspecific way, with World Wrestling Entertainment's (WWE) alleged activities in Maryland, she therefore purposefully availed herself of the privilege of conducting activities in Maryland. *See* Opp. at 6, 8. But this is nothing more than an improper attempt to impute WWE's alleged contacts with Maryland to Ms. McMahon personally. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").

A helpful analogue is *Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d 505 (D. Md. 2004), in which this Court analyzed an argument similar to Plaintiffs' and found personal jurisdiction over a corporate officer defendant lacking. The *Harte-Hanks* plaintiff's claims arose from a contract with a corporation; the plaintiff sued both the corporation and Robert VanHellemont, a former officer, director, and employee of the corporation. *Id*. at 509, 513. The plaintiff based its claim for specific personal jurisdiction over VanHellemont on his "position as an officer" of the corporation and his "involvement" in the contract that gave

2

rise to the suit. *Id*. at 513. In an affidavit, VanHellemont averred that "he did not personally participate" in the contract, other than providing pricing advice. *Id*.

In dismissing the plaintiff's claims against VanHellemont, the *Harte-Hanks* court explained that "[p]ersonal jurisdiction over an individual officer, director, or employee of a corporation does not automatically follow from personal jurisdiction over the corporation." 299 F. Supp. 2d at 513. The court further held that VanHellemont's alleged involvement in the contract negotiations was insufficient to confer specific personal jurisdiction. "Neither the plaintiff's complaint nor [a supporting] affidavit points to any *specific* contacts that VanHellemont personally had with Maryland related to these transactions, or any *specific* role that VanHellemont played in the transactions." *Id*. at 515 (emphasis added). Accordingly, the plaintiff failed to make "even a prima facie case that VanHellemont purposefully availed himself of the privilege of conducting activities in Maryland, such that the exercise of jurisdiction would be constitutionally reasonable." *Id*.

Like the individual defendant in *Harte-Hanks*, Ms. McMahon is not subject to personal jurisdiction based on the limited Maryland-based business activities of her former employer, even considering Plaintiffs' conclusory, nonspecific allegations of Ms. McMahon's involvement in those activities. 299 F. Supp. 2d at 515 n.10 (in analyzing personal jurisdiction, a court "need not accept conclusory factual allegations devoid of any reference to actual events." (citation and internal quotation marks omitted)).[1]

Plaintiffs' reliance on *Fidelis Cybersecurity, Inc. v. Partner One Cap., Inc.*, 771 F. Supp. 3d 614 (D. Md. 2025), does not salvage their argument. In *Fidelis*, the plaintiffs' breach of contract suit against a company and its founder and CEO, Daniel Charron, included detailed allegations of

---

[1]    Bizarrely, Plaintiffs argue—without evidentiary support—that Ms. McMahon "indisputably conducted WWE's business in Maryland directly and through WWE's agents." Opp. at 6. That *is* disputed. *See* ECF No. 57-2, Supplemental Declaration of Linda E. McMahon ("L. McMahon Supp. Decl.") ¶¶ 3, 10, 11, 19.

3

monthslong contract negotiations in which Charron personally participated. *Id*. at 620–21, 630–31. The court's conclusion that Charron engaged in "purposeful activity" in Maryland drew on a specific body of Maryland caselaw pertaining to contract negotiations, 771 F. Supp. 3d at 631 (citing cases), and distinguished cases in which the exercise of jurisdiction over a corporate officer was not consistent with due process, *id*. at 635 (citing *Tang v. Altimmune, Inc.*, Civ. No. DLB-21-3283, 2023 WL 2648795, at *7 (D. Md. Mar. 24, 2023) (plaintiff's conclusory allegations that a company's CEO was "involved" in the tortious acts of another employee of the company did not support the exercise of specific personal jurisdiction over the CEO)). The *Fidelis* court concluded that its exercise of jurisdiction over Charron was proper because the plaintiffs' claims were "clearly based on allegations concerning Charron's **personal** and repeated conduct in the course of the alleged fraud[.]" 771 F. Supp. 3d at 635 (emphasis added). Simply put, *Fidelis* is inapposite.

Plaintiffs make much of "excerpts of actual memoranda" they claim "reveal[] Ms. McMahon's involvement in Maryland WWE events[.]" Opp. at 6; *see also id*. at 18. But the excerpts, reproduced in the Amended Complaint, reveal nothing of the sort. *See* ECF No. 55, First Amended Complaint and Demand for Jury Trial ("Am. Compl.") ¶¶ 334–35; *see also* Mot. at 18. The first of Plaintiffs' purported jurisdictional smoking guns is an excerpt from an "interoffice memo" sent **to** Ms. McMahon and **thirty other recipients**, merely *informing* them that two events would be occurring in Maryland in October 1988. Am. Compl. ¶ 335. The memorandum does not "reveal" that Ms. McMahon was involved in planning the events. The only other excerpted memorandum does not mention Ms. McMahon at all. *Id*.

Finally, Plaintiffs cannot skirt the requirement that jurisdictional contacts be assessed individually by pointing to vague allegations of nonspecific actions taken by unnamed agents of

4

Ms. McMahon. *See, e.g.*, Opp. at 15; Am. Compl. ¶ 147.[2] Agency is a legal concept; absent specific factual allegations plausibly alleging the existence of an agency relationship *and* specific allegations of specific Maryland contacts Plaintiffs seek to impute from an agent to Ms. McMahon, these conclusory allegations do not support the exercise of specific personal jurisdiction. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 & n.5 (9th Cir. 2017).

        **B.**        **Purposeful availment is not satisfied by John Doe 6's allegation that Ms. McMahon once attended a wrestling show in Maryland.**

Plaintiffs further suggest, wrongly, that John Doe 6's allegation that he saw Ms. McMahon in the dressing room before a WWE show held in Baltimore in 1989 suffices to show purposeful availment. Opp. at 11–12. To be clear, this is a dubious allegation. Ms. McMahon infrequently attended wrestling shows, and she *never* entered men's locker rooms or dressing rooms. *See* Ex. A, Second Supplemental Declaration of Linda E. McMahon ("L. McMahon 2d Supp. Decl.") ¶¶ 3, 8. But even taking this uncorroborated allegation as true, a single instance of Ms. McMahon's presence at a wrestling show in Maryland falls well short of demonstrating that she purposefully availed herself of the privilege of conducting activities in the state.

First, even if it were true that Ms. McMahon "looked right at John Doe 6" in a dressing room in Baltimore, Am. Compl. ¶ 264, Plaintiffs have not plausibly alleged that Ms. McMahon's "look" at John Doe 6 "caused tortious injuries" such that Ms. McMahon is subject to the jurisdiction of Maryland courts. *See* Opp. at 12; *see also* Mot. at 13. Indeed, John Doe 6 does not allege he was injured in the dressing room by *anyone*, let alone by Ms. McMahon. *See* Am. Compl. ¶ 264. John Doe 6 instead alleges that hours later, at a hotel, Pat Patterson and Mel Phillips sexually abused him. *Id.* ¶ 265–66. Ms. McMahon's alleged presence in the dressing room did not cause or

---

[2]     As discussed below, neither Mel Phillips, Terry Garvin, nor Pat Patterson were Ms. McMahon's agents. *See also* L. McMahon Supp. Decl. ¶ 16.

5

contribute to the alleged abuse that Plaintiff allegedly suffered in a different location several hours later.

Second, Ms. McMahon's mere presence in Maryland, on one alleged occasion in 1989, does not satisfy the requirements of purposeful availment. As the Supreme Court explained in *Kulko v. Superior Ct. of California In & For City & Cnty. of San Francisco*, to conclude that an out-of-state defendant's "temporary visits" to a state support that state's exercise of specific personal jurisdiction for claims unrelated to those visits "would make a mockery of the limitations on state jurisdiction imposed by the Fourteenth Amendment." 436 U.S. 84, 93 (1978) (in a child support action, defendant's marriage in California and subsequent short visits to the state did not subject him to the jurisdiction of California courts); *see also Harte-Hanks*, 299 F. Supp. 2d at 513 (defendant's single visit to Maryland did not support specific personal jurisdiction); *cf. Sibert v. Flint*, 564 F. Supp. 1524, 1529 (D. Md. 1983) (only "very frequent" visits to Maryland could "arguably subject" the out-of-state defendant to jurisdiction).

Notwithstanding these efforts to bolster their jurisdictional allegations, Plaintiffs fail to satisfy the due process requirement of *purposeful availment*. Dismissal is warranted for that reason alone. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) ("If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three.").

    **C.**    **Plaintiffs' claims do not arise from Ms. McMahon's alleged activities in Maryland.**

A court may exercise specific personal jurisdiction over an out-of-state defendant only if the plaintiff's claims arise out of, or sufficiently relate to, the defendant's contacts with the forum. *DeBellis v. Woodit*, 728 F. Supp. 3d 330, 341 (D. Md. 2024); *Khashoggi*, 138 F.4th at 159. "[T]he phrase 'relates to' … 'does not mean anything goes[.]'" *DeBellis*, 728 F. Supp. 3d at 341 (quoting

6

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021)). Indeed, contacts that are "only conceivably related … in the most attenuated sense" to a plaintiff's claims will not support a court's exercise of specific personal jurisdiction. *Id.* at 345. As the Seventh Circuit has cautioned, "[c]ourts must scrutinize the relationship between in-state contacts and lawsuits to police the boundary between the two types of personal jurisdiction." *B.D. by & through Myers v. Samsung SDI Co. Ltd.*, 143 F.4th 757, 771 (7th Cir. 2025). If the relationship is too "loose[]," "'the core distinction between'" specific and general personal jurisdiction "will 'collapse' altogether." *Id*. (quoting *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 866 (D.C. Cir. 2022)).

Plaintiffs claim that three now-deceased individuals formerly associated with WWE sexually abused Plaintiffs when they were minors. Even if Ms. McMahon's alleged contacts with Maryland constituted purposeful availment (they do not), the attenuated connections between her alleged contacts with the state and Plaintiffs' claims are far too loose to support the exercise of specific personal jurisdiction.

First, Plaintiffs' claims obviously do not arise from the allegation that Ms. McMahon "looked right at John Doe 6" at a WWE event in Baltimore in 1989. Am. Compl. ¶ 264. John Doe 6 does not allege that Ms. McMahon witnessed anything inappropriate, nor that anything inappropriate occurred in that dressing room. *Id*.; *see* Mot. at 13. Furthermore, even if there were some connection between Ms. McMahon's alleged presence at a WWE event in Baltimore and claims of sexual abuse committed by Phillips, Garvin, or Patterson, that jurisdictional contact would apply only to claims arising *after* July 14, 1989. *See Hardnett v. Duquesne Univ.*, 897 F. Supp. 920, 923 (D. Md. 1995) (citing *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990) ("Only contacts occurring prior to the event causing the litigation may be considered.")). According to the Amended Complaint, all eight Plaintiffs were allegedly

7

abused prior to 1989; only two Plaintiffs (John Does 2 and 6) allege any abuse after 1988. Am. Compl. ¶¶ 192–201, 251–67. By relying on an alleged contact that would trim their case by six plaintiffs and numerous alleged acts of abuse, Plaintiffs reveal the weakness of their jurisdictional argument over Ms. McMahon.

Second, Plaintiffs' conclusory, nonspecific allegations of Ms. McMahon's involvement in "booking, contracting, scheduling, and/or marketing … WWE events in Maryland," *e.g.*, Opp. at 10, bear an insufficient relationship to Plaintiffs claims.[3] Plaintiffs posit that Ms. McMahon's alleged corporate work "created the opportunity" for Mel Phillips, Terry Garvin, or Pat Patterson to abuse them in Maryland because "they would not have been there except for WWE's events." Opp. at 8–9. But this chain of logic reveals the attenuated nature of Plaintiffs' jurisdictional assertions. Plaintiffs do not (and cannot) point to a single, specific contact between Ms. McMahon and Maryland from which their claims supposedly arise. Instead, Plaintiffs rely on a series of "independent relationships" that "do not overlap with one another." *See Samsung*, 143 F.4th at 771. This is not enough to support jurisdiction.

*Samsung*, a recent Seventh Circuit case, illustrates this principle. There, the court considered whether a South Korean company's "deliberate[] exploit[ation]" of the Indiana market subjected it to specific personal jurisdiction where the plaintiff claimed that the company's product (a lithium-ion battery) exploded in his pocket and injured him in Indiana. 143 F.4th at 762, 768. In finding that the company (Samsung SDI) was not subject to the jurisdiction of Indiana courts, the Seventh Circuit found "a disconnect between Samsung SDI's purposeful in-state contacts" and the plaintiff's claims. *Id.* at 771. Samsung SDI formed its contacts with Indiana by selling batteries

---

[3] To the extent Ms. McMahon's alleged corporate work was contractual, it is unlikely there could be a sufficient "jurisdictional nexus" to Plaintiffs claims, which sound in tort. *See DeBellis*, 728 F. Supp. 3d at 344.

8

encased in packs, *id*. at 768; the plaintiff's injuries stemmed from a third party's unauthorized sale of an individual Samsung SDI battery removed from its pack, *id*. at 771. The Seventh Circuit concluded that "Samsung SDI does not exercise the privilege of conducting the type of business that led to [the plaintiff's] injury and subsequent lawsuit." *Id*. It was not enough, the court reasoned, that both the plaintiff and Samsung SDI had ties to Indiana: "fatal to establishing personal jurisdiction here, those independent relationships with Indiana do not overlap with one another." *Id*.

This principle applies with even greater force to Ms. McMahon. Ms. McMahon is not a corporation; she is an individual who, at most, engaged in nonspecific corporate work for WWE allegedly related to WWE events in Maryland. If Phillips, Patterson, or Garvin abused Plaintiffs at those events, it was not at Ms. McMahon's direction or with her knowledge. L. McMahon Supp. Decl. ¶ 16. There is a fatal disconnect between Ms. McMahon's alleged contacts with Maryland and Plaintiffs' Maryland-based injuries, which were caused by the intentional tortious conduct of third parties.[4]

### D.   It would not be constitutionally reasonable to subject Ms. McMahon to jurisdiction in Maryland.

Plaintiffs assert two reasons why it would be constitutionally reasonable to subject Ms. McMahon to specific personal jurisdiction in Maryland. First, Plaintiffs argue, Ms. McMahon works "just up the road" from Maryland, in Washington, D.C. Opp. at 16. Second, Plaintiffs point

---

[4] The case Plaintiffs cite, *Maxtena, Inc. v. Marks*, Civil Action No. DKC 11-0945, 2012 WL 113386 (D. Md. Jan. 12, 2012), does not compel a different result. The plaintiff in *Maxtena* alleged that the defendant *personally* solicited a Maryland-based client and "learned about, worked with, and acquired the [allegedly misappropriated] proprietary information … through contacts that he created with the [Maryland] client and [his company's] Maryland-based employees over a significant time period." *Id*. at *9. These allegations of the defendant's *specific* contacts, with a clear and close connection to the plaintiff's claims for misappropriation of trade secrets, are categorically different from Plaintiffs' allegations here.

9

to the Maryland Supreme Court's decision upholding the constitutionality of the Child Victims Act of 2023 ("CVA") as evidence of "Maryland's interest in adjudicating claims involving child sex abuse." *Id*. Neither reason is persuasive.

The Fourth Circuit's instruction that courts consider "the burden on the defendant of litigating in the forum," *Consulting Eng'rs Corp.,* 561 F.3d at 279, encompasses more than just logistics. *See Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.,* 582 U.S. 255, 256 (2017). Indeed, if burden and convenience were assessed only in terms of distance from the courthouse, it is difficult to imagine how Plaintiffs—citizens of Massachusetts, Pennsylvania, Florida, Mississippi, and Nevada—could claim that litigating in Maryland offers them "convenience" at all. *See* Opp. at 16.

In reality, the burden inquiry "encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Bristol-Myers Squibb,* 582 U.S. at 256. This is not, under any reasonable analysis, a Maryland-centric lawsuit. Not a *single party* is a citizen of this state. According to Plaintiffs' own complaint, only some unspecified fraction of their injuries occurred in Maryland. Maryland may indeed be a "convenient" jurisdiction for Plaintiffs because their claims are not subject to a statute of limitations. But a state's interest in removing the statute of limitations applicable to a category of claims cannot displace "territorial limitations on the power of the respective States." *See Bristol-Myers Squibb Co.,* 582 U.S. at 263. Nor can it require an out-of-state defendant like Ms. McMahon to submit to the power of a state with which she has no relevant connection.

Taken to its logical extreme, Plaintiffs' broad conception of specific personal jurisdiction would lead to absurd consequences inconsistent with the "real limits" of the doctrine. *See Ford,* 592 U.S. at 362. Consider a hypothetical: Surely, Tim Cook—who may have *some* level of

involvement with many of Apple's business activities—cannot not be haled into court in Nebraska simply because an employee of an Apple Store there assaults a customer. It may be true that WWE operated in multiple states, and that Ms. McMahon once held a position of prominence at the company. It may also be true that Plaintiffs (as they allege) suffered injuries in Maryland at the hands of individuals associated with WWE. But Ms. McMahon is aware of no case—and Plaintiffs have not cited one—in which a court has exercised specific personal jurisdiction over an out-of-state corporate officer for claims arising from a third party's independent and intentional tortious conduct. This Court should not stretch the doctrine of specific jurisdiction beyond its limits to exercise jurisdiction over Ms. McMahon. Plaintiffs' claims should be dismissed.[5]

## II. Plaintiffs do not plausibly allege any duty owed to them by Ms. McMahon, and Plaintiffs' claims against her must therefore be dismissed for failure to state a claim.

Because personal jurisdiction over Ms. McMahon is lacking, the Court need not reach her arguments for dismissal under Federal Rule of Civil Procedure 12(b)(6). But Plaintiffs' negligence claims against Ms. McMahon fail for the additional reason that Plaintiffs do not plausibly allege any duty she owed to them.[6] *See* Mot. at 22–28. Plaintiffs' contrary arguments are unpersuasive.

---

[5] As an alternative to dismissal, Plaintiffs have requested jurisdictional discovery or leave to amend their complaint. Opp. at 30 n.23. No jurisdictional discovery is warranted. "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst of Maryland,* 334 F.3d at 402 (citing cases); *see also Rivera v. Altec, Inc.*, Civil Action No. ELH-21-0681, 2021 WL 2784265, at *11 (D. Md. July 2, 2021). It should be noted as well that Plaintiffs have offered no testimony or other evidence in support of their jurisdictional allegations. Nor should Plaintiffs be permitted to amend their complaint a second time to insert unspecified additional jurisdictional allegations. Plaintiffs have had ample opportunity to allege facts sufficient to support the exercise of jurisdiction over Ms. McMahon. Plaintiffs have not and cannot do so. Amendment would be futile. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (district court may deny leave to amend if amendment would be futile).

[6] Plaintiffs argue they have alleged *more* than negligence against Ms. McMahon. Opp. at 30. They have not. *See* Am. Compl. ¶¶ 338–93. To the extent Plaintiffs suggest they have bought a fraudulent concealment claim, *see* Opp. at 29–30, their vague and conclusory allegations about Ms. McMahon's role in an alleged "cover-up" obviously fall short of the heightened pleading standard for claims involving fraud. *See McCormick v. Medtronic, Inc.*, 219 Md. App. 485, 527 (2014).

11

### A. Alleged duties did not "flow" to Ms. McMahon merely because of her position at WWE.

Plaintiffs' Opposition makes plain that their duty arguments depend almost entirely on obliterating the distinction between Ms. McMahon and WWE. Plaintiffs allege (1) employment-related duties arising from their work as "Ring Boys" at WWE events; (2) business invitee duties arising from their presence at WWE events; (3) *in loco parentis* duties arising from their status as minors who attended WWE events; and (4) duties arising from WWE's affiliation with Mel Phillips, Pat Patterson, and Terry Garvin. But even if these duties existed, they do not automatically "flow" to Ms. McMahon because of "her corporate leadership," as Plaintiffs seem to believe. *See* Opp. at 20–21; *see also id.* at 22, 26, 27.[7]

Assuming *arguendo* that Plaintiffs were WWE employees,[8] WWE's duties as an employer are not delegable to corporate officers like Ms. McMahon, and she cannot be held personally liable for WWE's alleged breach of those duties. *See Jarrett v. Home Depot U.S.A., Inc.*, No. 1:21-cv-01514-SAG, 2021 WL 3288361, at *3 (D. Md. Aug. 2, 2021) (citing *Athas v. Hill*, 300 Md. 133, 148 (1984)). Duties owed to business invitees are similarly nondelegable—if WWE owed duties to Plaintiffs as attendees at WWE events, those duties did not shift to Ms. McMahon. *Id.* (citing *Appiah v. Hall*, 416 Md. 533, 560–61 (2010)).

Plaintiffs' *in loco parentis* arguments are even more fanciful. Ms. McMahon did not know Plaintiffs, *see* L. McMahon Supp. Decl. ¶ 13, and she certainly did not assume any obligations for their care. *See* Mot. at 26–27. The cases Plaintiffs cite as "comparable" to this one are not, in fact, comparable at all. *See* Opp. at 22–23 (citing *Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp.

---

[7] As explained in WWE and TKO Group Holdings, Inc.'s motion to dismiss, Plaintiffs fail to allege that WWE owed them any cognizable duty. *See* ECF No. 59.

[8] As explained in the Renewed Motion to Dismiss, Plaintiffs do not plausibly allege an employment relationship with WWE (or Ms. McMahon). Mot. at 23–24.

12

3d 645, 668 (D. Md. 2021) (school stood *in loco parentis* with its students); *Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d 659, 669 (D. Md. 2012) (school owed duty of care to students); *Wilson v. State*, No. 1974, Sept. Term, 2021, 2023 WL 2314838, at *10–11 (Md. App. Ct. Mar. 1, 2023) (unreported) (criminal defendant stood *in loco parentis* with his minor victim on an overnight trip); *Adams v. Sec'y, Fla. Dep't of Corr.*, No. 23-13455, 2025 WL 1639254, at *5–6 (11th Cir. June 10, 2025) (criminal defendant who was his minor victim's teacher and coach stood *in loco parentis* with her).

Finally, Plaintiffs cannot locate a duty Ms. McMahon *personally* owed to them based on WWE's affiliation with Mel Phillips, Pat Patterson, and Terry Garvin. Plaintiffs' allegations that Ms. McMahon "controlled" Phillips, Patterson, or Garvin are entirely conclusory and unaccompanied by evidence or even specific factual allegations. *See, e.g.*, Am. Compl. ¶¶ 343, 349, 358–60, 372, 390. Nor have Plaintiffs plausibly alleged that Phillips, Patterson, or Garvin were Ms. McMahon's agents. Agency "is a legal concept which depends upon the existence of required factual elements[.]" *Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 26 (2005). Courts consider three factors to determine whether an agency relationship exists: (1) "the agent's power to alter the legal relations of the principal"; (2) "the agent's duty to act primarily for the benefit of the principal"; and (3) "the principal's right to control the agent." *Broadway Servs., Inc. v. Comptroller of Maryland*, 478 Md. 200, 216 (2022) (citation omitted). The Amended Complaint contains *zero* factual allegations about Ms. McMahon's relationship with Garvin or Patterson. As for Phillips, Plaintiffs allege that Ms. McMahon was involved in Phillips's 1988 firing and rehiring.[9] But nothing in the Amended Complaint suggests that Phillips, as a WWE

---

[9] Ms. McMahon was not involved in the decision to terminate Phillips, and she certainly did not rehire Phillips based on a condition that he should "steer clear from kids," as alleged in Plaintiffs' Opposition. *See* L. McMahon 2d Supp. Decl. ¶ 7.

employee, had a "a duty to act primarily" for *Ms. McMahon's* benefit rather than his employer's. Indeed, he did not. *See* L. McMahon Supp. Decl. ¶ 16.

### B. Plaintiffs do not plausibly allege a duty arising from foreseeability.

As detailed in the Renewed Motion, Plaintiffs' foreseeability allegations either are nonspecific, *e.g.*, Am. Compl. ¶¶ 38, 68 ("Everyone knew what was going on[.]"); or are based on after-the-fact accounts, from nonparties to this case, of misconduct by Phillips, Garvin, or Patterson, *e.g.*, *id.* ¶¶ 42, 69 (former wrestlers lodging public accusations on talk shows during the 1990's). The Amended Complaint describes in detail the so-called "Ring Boy scandal," which surfaced in approximately 1992 and involved highly publicized allegations of sexual misconduct by these men. But Plaintiffs claim injuries that occurred *before* 1992, and the Amended Complaint does not plausibly allege Ms. McMahon was aware of specific prior acts or allegations that could have triggered a duty arising from foreseeability. *See* Mot. at 24–26.

For two key reasons, *Doe #1 v. Bd. of Educ. of Somerset Cnty.*, Civil Case No. RDB-22-1491, 2023 WL 375189 (D. Md. Jan. 24, 2023), is not "[s]trikingly similar" to this case, as Plaintiffs claim. *See* Opp. at 25. First, the *Doe #1* court found an alleged abuser's employer (the school board) vicariously liable for the alleged abuse of a student. *Id.* at *5. The court did not hold, or even suggest, that *individual members of the school board* could be held personally vicariously liable. Second, prior to the alleged abuse of the plaintiffs, the school board received a specific report of sexual misconduct by the same employee and did nothing in response. *Id.* Here, by contrast, Plaintiffs do not plausibly allege that Ms. McMahon became aware of specific child abuse allegations against Phillips, Garvin, or Patterson until *after* Plaintiffs were allegedly abused.

### C. Ms. McMahon owed no additional duty to John Doe 6.

Plaintiffs argue that Ms. McMahon owed John Doe 6 a duty based on her "personal treatment of him." Opp. at 27–28. Ms. McMahon's only alleged "treatment" of John Doe 6 was

14

"look[ing] right at" him, on one occasion, in 1989. Am. Compl. ¶ 264. *Id*.

Plaintiffs cite one case in support of their contention that this brief alleged "look" between Ms. McMahon and John Doe 6 was "treatment" triggering a duty of care: *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 756 (D. Md. 2015). But *Doe* does not help Plaintiffs. In *Doe*, the plaintiffs alleged that a university and two university administrators "negligently breached obligations owed to Plaintiffs under [the school's] Policies and procedures." *Id*. at 762. As this Court observed, the plaintiffs did not seek to hold the university defendants "liable for failure to control the conduct of a third party," but rather for "their direct and personal treatment of Plaintiffs[.]" *Id*. at 763. In other words, the "treatment" was the alleged tortious conduct—it was not the source of the duty.

It is disingenuous for Plaintiffs to suggest that they do not seek to hold Ms. McMahon liable for her failure to control the conduct of a third party. That is *exactly* what Plaintiffs are trying to do here. *See, e.g.*, Opp. at 21. Plaintiffs do not claim that Ms. McMahon injured them—they claim that Mel Phillips, Terry Garvin, or Pat Patterson injured them. But Phillips, Garvin, and Patterson are all dead. Plaintiffs' scattershot efforts to pin the alleged misconduct of these deceased individuals on Ms. McMahon fail because Plaintiffs do not plausibly plead any duty of care she owed them.

## CONCLUSION

Defendant Linda E. McMahon is not subject to the exercise of personal jurisdiction over her in Maryland, and the Amended Complaint fails to adequately allege that she owed any legal duty to Plaintiffs. For the foregoing reasons, and the reasons stated in the Renewed Motion to Dismiss, the Court should dismiss the claims against Ms. McMahon with prejudice.[10]

---

[10] Ms. McMahon joins and incorporates by reference the arguments raised in the Reply in support of Vincent K. McMahon's Motion to Dismiss, as well as those raised in the Reply in support of World Wrestling Entertainment, LLC and TKO Group Holdings, Inc.'s Motion to Dismiss.

15

Dated:  August 27, 2025　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/William J. Murphy*
　　　　　　　　　　　　　　　　　　　　William J. Murphy (Bar No. 00497)
　　　　　　　　　　　　　　　　　　　　Samantha Miller Kavanagh (Bar No. 21374)
　　　　　　　　　　　　　　　　　　　　ZUCKERMAN SPAEDER LLP
　　　　　　　　　　　　　　　　　　　　100 East Pratt Street, Suite 2440
　　　　　　　　　　　　　　　　　　　　Baltimore, MD 21202
　　　　　　　　　　　　　　　　　　　　Tel: (410) 332-0444
　　　　　　　　　　　　　　　　　　　　Fax: (410) 659-0436
　　　　　　　　　　　　　　　　　　　　wmurphy@zuckerman.com
　　　　　　　　　　　　　　　　　　　　skavanagh@zuckerman.com

　　　　　　　　　　　　　　　　　　　　Laura A. Brevetti *(*admitted *Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　　LAW OFFICES LAURA A. BREVETTI
　　　　　　　　　　　　　　　　　　　　575 Lexington Avenue, 14th Floor
　　　　　　　　　　　　　　　　　　　　New York, NY 10022
　　　　　　　　　　　　　　　　　　　　Tel: (917) 970-0250
　　　　　　　　　　　　　　　　　　　　laura.brevetti@brevettilaw.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for Linda E. McMahon*