**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| JOHN DOE 1, et al. | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-3487-JKB |
| WORLD WRESTLING ENTERTAINMENT, LLC, et al. | |
| Defendants. | |

**DEFENDANTS WORLD WRESTLING ENTERTAINMENT, LLC AND
TKO GROUP HOLDINGS, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS THE CORRECTED FIRST AMENDED
<u>COMPLAINT, WITH REQUEST FOR HEARING</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ................................................................................................................... 2

I.    This Court Lacks Personal Jurisdiction ................................................................. 2

      A.    Plaintiffs Have Not Pled Successor Liability as Against TKO............................ 2

      B.    Maryland's Long-Arm Statute Does Not Authorize Jurisdiction .......................... 3

            1.    Sections 6-103(b)(1) and (b)(2) Do Not Authorize Jurisdiction................ 4

            2.    Sections 6-103(b)(3) and (b)(4) Do Not Authorize Jurisdiction................ 7

            3.    Section 6-103(b)(5) Does Not Authorize Jurisdiction .............................. 9

      C.    Exercising Jurisdiction Does Not Comport with Due Process ............................ 9

II.    Plaintiffs Fail to State a Claim Against TKO and WWE.................................... 10

      A.    Plaintiffs Fail to Plead Any Duty Owed by WWE and TKO ............................ 10

      B.    Plaintiffs Still Fail to Plead Other Required Negligence Factors ........................ 15

      C.    Plaintiffs' Claims Are Impermissibly Duplicative ................................ 15

CONCLUSION................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*68th St. Site Work Grp.* v. *Airgas, Inc.*,
  2021 WL 4255030 (D. Md. Sept. 16, 2021) .......................................................................2, 3

*Aphena Pharma Sols.-Md. LLC* v. *BioZone Labs., Inc.*,
  912 F. Supp. 2d 309 (D. Md. 2012) ...........................................................................................4

*Beyond Sys., Inc.* v. *Kennedy W. Univ.*,
  2006 WL 1554847 (D. Md. May 31, 2006) ..............................................................................5

*Coleman* v. *KIPP DC Supporting Corp.*,
  2019 WL 1126357 (D. Md. Mar. 12, 2019) ...........................................................................10

*CoStar Realty Info., Inc.* v. *Meissner*,
  604 F. Supp. 2d 757 (D. Md. 2009) .........................................................................................10

*David N.* v. *St. Mary's Cnty. Dep't of Soc. Servs.*,
  16 A.3d 991 (Md. App. 2011) ..................................................................................................11

*Doe #1* v. *Bd. of Educ. of Somerset Cnty.*,
  2023 WL 375189 (D. Md. Jan. 24, 2023) ..........................................................................13, 14

*Doe* v. *Alsaud*,
  12 F. Supp. 3d 674 (S.D.N.Y. 2014) .......................................................................................12

*Doe* v. *Salisbury Univ.*,
  123 F. Supp. 3d 748 (D. Md. 2015) .........................................................................................15

*Edwardo* v. *Roman Cath. Bishop of Providence*,
  579 F. Supp. 3d 456 (S.D.N.Y. 2022) .......................................................................................6

*Estate of Madden* v. *Sw. Airlines, Co.*,
  2021 WL 2580119 (D. Md. June 23, 2021) .............................................................................11

*Finley Alexander Wealth Mgmt., LLC* v. *M&O Mktg., Inc.*,
  2020 WL 1322948 (D. Md. Mar. 20, 2020) ..............................................................................5

*Finley Alexander Wealth Mgmt.* v. *M&O Mktg., Inc.*,
  2025 WL 1592464, at *5 (D Md. June 5, 2025) ......................................................................13

*Hierholzer* v. *Guzman*,
  125 F.4th 104 (4th Cir. 2025) ...................................................................................................2

*Horridge* v. *St. Mary's Cnty. Dep't of Soc. Servs.*,
854 A.2d 1232 (Md. 2004) ...................................................................11

*Legends Title, LLC* v. *Cap. One, Nat'l Ass'n*,
659 F. Supp. 3d 637 (D. Md. 2023) .........................................................8

*Loveless* v. *Estevez*,
2019 WL 4187465 (Md. App. Sept. 3, 2019) ................................13, 14

*Maxtena, Inc.* v. *Marks*,
2012 WL 113386 (D. Md. Jan. 12, 2012) ..................................................5

*Miller* v. *Live Nation Worldwide, Inc.*,
2016 WL 374103 (D. Md. Feb. 1, 2016) ..................................................14

*Mitchell* v. *Rite Aid of Md., Inc.*,
290 A.3d 1125 (Md. App. Ct. 2023) .......................................................12

*Pandit* v. *Pandit*,
808 F. App'x 179 (4th Cir. 2020) ..............................................................8

*Phillips* v. *British Airways*,
743 F. Supp. 3d 702 (D. Md. 2024) .......................................................4, 8

*Playmark Inc.* v. *Perret*,
268 A.3d 988 (Md. Ct. Spec. App. 2022) .................................................3

*Pope* v. *State*,
396 A.2d 1054 (Md. 1979) ......................................................................13

*Rachel-Smith* v. *FTData, Inc.*,
202 F. Supp. 2d 400 (D. Md. 2002) ......................................................6, 13

*Ramlall* v. *MobilePro Corp.*,
30 A.3d 1003 (Md. Ct. Spec. App. 2011) .................................................3

*Remsberg* v. *Montgomery*,
831 A.2d 18 (Md. 2003) ..........................................................................14

*Sable* v. *Baltimore Cnty. Gov't*,
2021 WL 4772921 (D. Md. Oct. 12, 2021) .............................................12

*Saunders* v. *Keenan*,
2015 WL 4622492 (D. Md. July 31, 2015)................................................2

*Seiberlich* v. *Deossa*,
2024 WL 343298 (D. Md. Jan. 30, 2024)..........................................12, 15

*Tennant* v. *Shoppers Food Warehouse Md. Corp.*,
    693 A.2d 370 (Md. App. 1997)........................................................................................14

*Wilson* v. *State*,
    2023 WL 2314838 (Md. App. Mar. 1, 2023)............................................................13

**Statutes**

Md. Code Ann., Cts. & Jud. Proc. § 6-103 ........................................................... *passim*

**Other Authorities**

Restatement (Second) of Torts § 317 (1965)................................................................11

Defendants WWE and TKO respectfully submit this Reply in support of their Motion to Dismiss Plaintiffs' Corrected First Amended Complaint ("Amended Complaint" or "AC").

## PRELIMINARY STATEMENT

WWE and TKO moved to dismiss the initial complaint on three independent grounds: (i) a failure to plead successor liability as to TKO, (ii) lack of personal jurisdiction as to WWE and TKO, and (iii) failure to state a claim as to WWE and TKO.[1]  Doubtless recognizing the fatal deficiencies in that initial pleading, Plaintiffs abandoned it and filed their Amended Complaint. But, as WWE and TKO showed in their Opening Brief (ECF No. 59) ("OB"), the new pleading is "amended" in name only.  It cures none of the defects that, as Plaintiffs themselves implicitly recognized, doomed their first attempt to state a viable claim.  And Plaintiffs' Opposition does nothing to salvage their claims.  More specifically:

*First*, Plaintiffs improperly attempt to retrofit their Amended Complaint by alleging for the first time that TKO is a successor entity as the "declared owner of WWE."  For one thing, Plaintiffs cannot save their claims by making new allegations in an opposition brief.  For another, Plaintiffs cannot seek to hold TKO liable as a successor entity because they have neither (i) identified an exception to the rule of successor non-liability nor (ii) pled facts supporting any such exception.

*Second*, the Court lacks personal jurisdiction over WWE and TKO.  Here again, Plaintiffs' Opposition comes up short.  For starters, Plaintiffs do not dispute that neither WWE nor TKO is subject to general jurisdiction.  Nor do Plaintiffs rebut WWE's or TKO's showing that neither entity is subject to Maryland's long-arm statute because Plaintiffs' claims do not arise out of or relate to any of either WWE's or TKO's alleged contacts (if any) with Maryland.  In fact, Plaintiffs concede that seven of them have made *no* allegations concerning Defendants' conduct in Maryland

---

[1] WWE and TKO adopt Defendant V. McMahon's and L. McMahon's reply briefs to the extent applicable.

remotely related to their claims.  And the eighth, John Doe 6, does not plead any conduct in Maryland capable of establishing a claim in negligence against any Defendants.

*Third*, Plaintiffs have failed to state a negligence claim because they have alleged no facts showing a cognizable duty.  Instead, Plaintiffs argue that all Defendants were on "notice" of alleged misconduct and thus that it was supposedly foreseeable that they might incur liability.  But here again, Plaintiffs plead no *facts* to support those allegations, claiming only in conclusory terms that the alleged underlying conduct "was known by everyone in the WWE."  That sort of generic, barebones allegation falls well short of settled pleading standards in federal court.

## <u>ARGUMENT</u>

### I.    **This Court Lacks Personal Jurisdiction**

### A.    **Plaintiffs Have Not Pled Successor Liability as Against TKO**

The Amended Complaint does not, as required, identify a successor liability theory as to TKO.  *See* OB at 8.  Plaintiffs have now conceded as much by arguing for the first time in their Opposition that, "[a]s the declared owner of WWE, it is a reasonable inference that Defendant TKO expressly or impliedly agreed to assume the liabilities of WWE."  Opp. at 30.  But Plaintiffs cannot fix their pleading with allegations made for the first time in an opposition.  *Saunders* v. *Keenan*, 2015 WL 4622492, at *1 (D. Md. July 31, 2015) (Bredar, J.).

In any event, Plaintiffs' new successor-liability assertions do not help Plaintiffs plead successor liability.  To do so, Plaintiffs would have to (i) "identify which of the four exceptions it is invoking for successor liability" and (ii) plead "facts supporting the invocation of the chosen exception."  *68th St. Site Work Grp.* v. *Airgas, Inc.*,2021 WL 4255030, at *9 (D. Md. Sept. 16, 2021).  Plaintiffs do neither.  Instead, they invite the Court to conclude that TKO assumed WWE's liabilities simply because "TKO became the sole managing member of WWE."  Opp. at 30.  But, the only "support" for that new assertion comes from WWE's SEC Form 15, dated September 25,

2023, Opp. at 30 n.23, which is neither referenced in nor attached to Plaintiffs' Amended Complaint and therefore cannot be considered. *Hierholzer* v. *Guzman*, 125 F.4th 104, 115 (4th Cir. 2025). Further, the only language Plaintiffs highlight says merely that WWE was "owned by and/or acquired by" TKO. That conclusory and commonplace disclosure language is insufficient for successor liability pleading purposes. *See 68th St. Site Work Grp.*, 2021 WL 4255030, at *13 (allegations that entity was "owned by and/or was acquired by and/or is one and the same" is an "imprecise and conclusory statement . . . insufficient to plead [] successor liability").

Plaintiffs' only two cases on this subject—*Playmark Inc.* v. *Perret*, 268 A.3d 988, 997 (Md. Ct. Spec. App. 2022) and *Ramlall* v. *MobilePro Corp.*, 30 A.3d 1003 (Md. Ct. Spec. App. 2011)—only underscore their failure to plead successor liability. Under *Playmark*, to plead an "implied assumption of liability" theory, courts look to "(1) whether the successor received or attempted to receive the direct and substantial benefits of the contract; (2) whether the successor represented to the party asserting liability that it would assume the obligations of the contract; and (3) the circumstances under which such conduct occurred." 268 A.3d at 998. Plaintiffs plead no facts as to these factors. *Ramlall* is also inapposite because it concerned a merger whereby the successor was *explicitly* "liable for all the debts and obligations" of the "nonsurviving" predecessor. 30 A.3d at 1012–13. No such explicit assumption is alleged here.

### B.    Maryland's Long-Arm Statute Does Not Authorize Jurisdiction

WWE and TKO showed that Maryland's long-arm statute does not apply because Plaintiffs' claims do not "arise[] from any act enumerated in the statute[.]" OB at 13 (quoting Md. Code Ann., Cts. & Jud. Proc. § 6-103(a)). Plaintiffs' Opposition does not address that showing. Instead, Plaintiffs rely on WWE's and TKO's alleged business activities in Maryland during "the relevant time period of the complaint *and continuing today*." Opp. at 6 (emphasis added). However, as shown in TKO's and WWE's moving papers, because Plaintiffs' allegations against

WWE and TKO rely on a theory of successor liability, *see* AC ¶¶ 323, 341, it is *only* the contacts of the alleged predecessor entity, WWF, that could "provide the ultimate basis for jurisdiction." OB at 9–10.  In any event, none of the long-arm provisions Plaintiffs invoke applies:

### 1.    *Sections 6-103(b)(1) and (b)(2) Do Not Authorize Jurisdiction*

To plead jurisdiction under § 6-103(b)(1), Plaintiffs "must show some purposeful act in Maryland in relation to one or more of the elements of the cause of action."  *Aphena Pharma Sols.-Md. LLC* v. *BioZone Labs., Inc.*, 912 F. Supp. 2d 309, 315 (D. Md. 2012) (alteration omitted). Allegations of contracts or business practices "only *tenuously connected* to the cause of action are not enough . . . ."  OB at 14 (citing *Phillips* v. *British Airways*, 743 F. Supp. 3d 702, 711 (D. Md. 2024) (emphasis added)).  That principle has particular resonance here because Plaintiffs' claims related to Phillips, Patterson, and Garvin did not arise within the scope of those individuals' employment and therefore cannot be imputed to WWF (let alone WWE or TKO).  OB at 14–15.

Plaintiffs nonetheless argue that § 6-103(b)(1) is applicable because "without WWE's events in Maryland, Plaintiffs would not have been sexually abused" here.  Opp. at 6–7.  But Plaintiffs' claims are against WWE and TKO and arise from alleged negligence by WWF executives *unrelated* to the alleged "events in Maryland" underlying their claims.  So while Plaintiffs claim that jurisdiction is appropriate because (i) they "worked as Ring Boys for WWE events," (ii) they "were transported across state lines for the purpose of WWE's Maryland events," (iii) Phillips, Patterson, and Garvin "were hired by and worked for WWE and Vince and Linda McMahon," and "used the WWE events to lure and groom Ring Boys like Plaintiffs so that they could sexually exploit them," and (iv) "WWE's advertising and TV programming . . . aided WWE's Maryland wrestling events," Opp. at 7, none of that has any bearing for personal jurisdiction purposes because none of it concerns acts of negligence in Maryland.

In particular, any alleged advertising or TV programming in Maryland is insufficient to

establish jurisdiction over WWE or TKO because Plaintiffs have not pled that their claims arise out of or relate to such activity.  *See* OB at 14.  In response, Plaintiffs attempt to tie *some* in-state activities to their claims by arguing that WWE's and TKO's advertising and TV programming "created the opportunity" for the abuse and "lured" them to work at WWE events.  Opp. at 7.  Their Amended Complaint, however, makes no such allegations, which therefore cannot be considered in evaluating whether dismissal is warranted.  *See supra* at 2–3.  On top of that, these new allegations are squarely contradicted by the Amended Complaint's *actual* allegations:  with the exception of John Doe 8, Plaintiffs allege that they attended wrestling shows in Maryland because Phillips "invited," "took," or "traveled" with them to Maryland—not because of any purported advertising.  *See, e.g.*, AC ¶¶ 184, 198, 215, 222, 244, 264, 285.  The Court is not required to, and in fact should not, credit facially implausible and contradictory new arguments.  As for John Doe 8, he does not allege he was "lured" to Maryland at all; instead, he alleges that he was *already* working concessions at the Baltimore Civic Center during a WWE event.  AC ¶ 293.

The two cases Plaintiffs rely on to invoke § 6-103(b)(1) jurisdiction do not help them. *Maxtena, Inc.* v. *Marks* reaffirmed the requirement that jurisdiction under that provision is proper *only* where "the cause of action arises from any act enumerated" in the statute itself, and held that jurisdiction was proper because the Maryland-based "purposeful [business] activity" was not only "relevant" but "in some cases[,] critical" to the plaintiff's claims.  2012 WL 113386, at *6–8 (D. Md. Jan. 12, 2012) (cleaned up).  That is not the case here.  *Finley Alexander Wealth Management, LLC* v. *M&O Marketing, Inc.* is also inapposite; it determined that Maryland-based activities giving rise to the plaintiffs' claims were adequately alleged where defendants made allegedly tortious statements *in Maryland* while finalizing an agreement to provide services to the plaintiff's "Maryland-based business."  2020 WL 1322948, at *5–6 (D. Md. Mar. 20, 2020).

For similar reasons, Plaintiffs are wrong that *Beyond Sys., Inc.* v. *Kennedy W. Univ.*, is "factually distinguishable." Opp. at 8 n.4. That case held that personal jurisdiction was absent where the claims did "not arise from Defendants' [Maryland-based] contacts," which included promoting educational programs to Maryland residents. 2006 WL 1554847, at *6 (D. Md. May 31, 2006); OB at 14. Plaintiffs also attempt to distinguish *Edwardo* v. *Roman Cath. Bishop of Providence* by arguing that it "found insufficient business contacts because defendants' religious activities were targeted at Rhode Island (not New York)" and because the "priest's singular trip to New York was divorced from defendants' usual operations." Opp. at 8. But the abuse in *Edwardo*, like the alleged abuse here, involved a perpetrator who had gone to the forum on business for the entity defendant and abused the plaintiff *at a hotel* following business dealings. 579 F. Supp. 3d 456, 463 (S.D.N.Y. 2022). There, the court held it lacked personal jurisdiction over the entity defendants because the priest's acts there "had, at best, a tangential relationship" and did not arise out of the defendants' contacts with the forum. *Id.* at 476. The same is true here. OB at 14–15. Plaintiffs also ignore *Rachel-Smith* v. *FTData, Inc.*, 202 F. Supp. 2d 400, 405–06 (D. Md. 2002), which Defendants relied on, OB at 14; it confirms that the alleged abuse by Phillips, Garvin, and Patterson cannot be imputed to WWF (or TKO or WWE) to establish personal jurisdiction.

Finally, Plaintiffs appear to contend that the McMahons' alleged general awareness of Phillips's "peculiar and unnatural interest" in young boys, as well as alleged misconduct unrelated to Plaintiffs' claims, somehow makes jurisdiction proper. Opp. at 8–9. But Plaintiffs do not explain how that alleged knowledge or their contention that WWE and the McMahons "fired [Phillips] for it" concerns specific conduct by WWF (or WWE or TKO) occurring *in* Maryland *and* is related to their claims. Opp. at 8. And even if these allegations had some legal import, personal jurisdiction still would be improper because the firing and hiring of Phillips occurred in

1988, *after* any of Plaintiffs (with the exception of John Doe 6) allege specific instances of abuse in Maryland.  AC ¶¶ 14, 44, 173, 184–185, 219, 222, 238, 244, 251, 258, 274, 292.

And Plaintiffs hardly attempt to defend their reliance on § 6-103(b)(2), except to state that "WWE and TKO cannot seriously dispute that the booking, contract, and promotion activities" WWE supposedly engaged in "culminated in contracts to supply goods, food (concessions), services (WWE entertainment), or manufactured products (WWE merchandise and memorabilia) for the hundreds of WWE events in Maryland."  Opp. at 9.  That contention is misguided because Plaintiffs have alleged no facts showing that any of their negligence claims against WWE or TKO "[grew] out of a contract" that has a "substantial connection" with Maryland, as required by § 6- 103(b)(2).  OB at 15 (citation omitted).  As such, § 6-103(b)(2) has no bearing here.

### 2.    *Sections 6-103(b)(3) and (b)(4) Do Not Authorize Jurisdiction*

Personal jurisdiction is also unavailable under §§ 6-103(b)(3) and (b)(4) because the vast majority of Plaintiffs' alleged injuries did not occur in Maryland.  OB at 16–18.  Plaintiffs do not challenge that jurisdictional impediment.  Opp. at 9–12.  Instead, Plaintiffs maintain that § 6-103(b)(3) confers jurisdiction because the acts allegedly committed by Phillips and Patterson can be attributed to WWE and TKO.  Opp. at 9–10.  But those acts, as alleged by Plaintiffs themselves, were outside the scope of Phillips's and Patterson's employment, thus foreclosing any attribution to WWE and/or TKO.  OB at 17.  Underscoring the point, Plaintiffs challenge none of the cases WWE and TKO cited supporting that conclusion.  OB at 14–15, 17.

Plaintiffs also rely on generalized allegations that any purported negligence by the McMahons occurring *anywhere* is somehow sufficient under § 6-103(b)(3).  That reliance is misplaced.  Section 6-103(b)(3) provides for jurisdiction over a nonresident who "[c]auses tortious injury in the State" based on in-state acts.  Accordingly, Plaintiffs' assertion that the McMahons "knew or should have known about Phillips's and Patterson's abuse" given their supposed

"knowledge of Phillips's peculiar and unnatural interest in young boys" is off the mark, Opp. at 10 (cleaned up), given that they allege no negligent conduct by the McMahons in *Maryland*, OB at 21.  In fact, as Plaintiffs acknowledge, only John Doe 6 has pled that the McMahons were present when he was at a WWE event in Maryland.  Opp. at 10–11; *see* AC ¶ 264.  But even then, John Doe 6 has *not* pled that the McMahons witnessed *any* of his alleged abuse, which he claims occurred in a hotel room after the WWE event.  AC ¶ 265.  That omission is critical:  "to satisfy § 6-103(b)(3), both the injury itself and the act giving rise to the injury must have occurred and originated within Maryland."  *Pandit* v. *Pandit*, 808 F. App'x 179, 186 (4th Cir. 2020).

Regarding § 6-103(b)(4), Plaintiffs misstate the applicable standard.  Courts construe that provision "as a general jurisdiction statute."  *See* OB at 17; *Phillips*, 743 F. Supp. 3d at 713; *see Legends Title, LLC* v. *Cap. One, Nat'l Ass'n*, 659 F. Supp. 3d 637, 645 (D. Md. 2023).  Plaintiffs themselves acknowledge that this provision requires "greater contacts than those necessary under § 6-103(b)(1)."  Opp. at 11.  That "bar is high," *Phillips*, 743 F. Supp. 3d at 713, and Plaintiffs have not reached it:  they cannot allege facts showing "continuous" contacts by WWF (or WWE or TKO) with Maryland because WWF (or WWE or TKO) "conduct[ed] the same business in multiple states, and its operations in Maryland [were] not distinguishable from its operations in other states," *id*.  Thus, Plaintiffs' Amended Complaint containing only a handful of conclusory allegations about WWE events in Maryland, which are identical to WWE's activities nationwide, is insufficient to establish jurisdiction over WWE or TKO.  And, Plaintiffs' reliance on *Pandit* is misplaced because the Fourth Circuit held there that personal jurisdiction over the out-of-state defendants *was not* proper, even where the defendants had "engaged in extensive electronic communications" with a Maryland resident.  808 F. App'x 179 at 187.

Finally, Plaintiffs argue—for the first time—that jurisdiction is appropriate under (b)(4)

8

based on "substantial revenue" from WWE events in Maryland.  Opp. at 11–12.  But, the Amended Complaint lacks *any* facts about revenue WWF (or WWE or TKO) earned from Maryland-based business.  Plaintiffs' skeletal allegations related to the McMahons' *personal* wealth say nothing about WWF (or WWE or TKO) revenue.  *Id.* at 11; AC ¶¶ 317–18.  Those allegations do not suggest that any such alleged revenue was derived from "goods, food, services or manufactured products used or consumed" in Maryland, let alone whether WWF (or WWE or TKO) derived such revenue or that it was "substantial" under (b)(4).  Thus, these allegations are irrelevant.

### 3.    *Section 6-103(b)(5) Does Not Authorize Jurisdiction*

Section 6-103(b)(5) requires a connection between a particular claim and an alleged property interest.  OB at 18.  Plaintiffs' allegation that WWE "taped nearly 100 episodes of a TV Program" or "used and possessed arenas [in Maryland] hundreds of times" is irrelevant, Opp. at 12, because none of Plaintiffs' claims are connected to any purported Maryland property interests.  In fact, Plaintiffs have not alleged that any abuse even occurred at those arenas.

### C.    Exercising Jurisdiction Does Not Comport with Due Process

In addition to Plaintiffs' failure to show that Maryland's long-arm statute provides a basis for personal jurisdiction, WWE and TKO have also shown that exercising jurisdiction over them would violate due process.  OB at 18–22.  Plaintiffs attempt to answer that showing by arguing that the *Perdue* considerations are satisfied here, Opp. 12–15, but they have come up short.

*First*, Plaintiffs have not alleged facts showing purposeful availment by WWE or TKO.  Instead, they rely on conclusory allegations concerning six advertisements for WWE events in Maryland (most of which are undated or predate any alleged abuse), Opp. at 13, AC ¶ 330, but that smattering of references is insufficient, OB at 19–20.  Plaintiffs also contend that the recording of "a TV program" and the "booking and scheduling [of] WWE events in Maryland" is enough, Opp. at 13, but they are wrong because those activities are unrelated to Plaintiffs' claims, OB at

9

20–22.  As explained above, Plaintiffs' attendance at these events was entirely divorced from these purported Maryland-based activities by the WWE.  *See supra* at 8.  For that reason, Plaintiffs' reliance on *CoStar Realty Info., Inc.* v. *Meissner* is misplaced because that decision held that due process is satisfied where a plaintiff's claims *relate* to a defendant's contacts with the forum.  604 F. Supp. 2d 757, 766 (D. Md. 2009).  That circumstance is not present here.

*Second*, Plaintiffs' claims do not "arise out of WWE's business activities in Maryland."  Opp. at 13.  In response, Plaintiffs recycle their generic allegations about WWE's and TKO's businesses without connecting any of those allegations to any alleged tortious acts by WWF (or WWE or TKO) occurring *in Maryland*; to the contrary, they continue to point to alleged acts or omissions occurring *in Connecticut*, OB at 21, which are not relevant to whether there is personal jurisdiction in Maryland.  For that reason, Plaintiffs' attempt to distinguish one of Defendants' case authorities, *Coleman* v. *KIPP DC Supporting Corp.*, 2019 WL 1126357 (D. Md. Mar. 12, 2019), is unpersuasive.  Plaintiffs argue they have alleged that (i) "WWE and [the McMahons] allowed their agents . . . to use underaged Ring Boys like Plaintiffs to work at WWE's events," and (ii) "without the WWE events[,] . . . Plaintiffs would not have been transported into Maryland and given lodging at hotels (where they were allegedly abused) before and after the events."  But none of those allegations identify acts committed by any Defendants *in Maryland*.  Opp. at 14

*Third*, litigating in Maryland would be constitutionally unreasonable when no Plaintiff or Defendant resides here.  OB at 22.  As such, there is no merit to or logic in Plaintiffs' contention that Maryland would have a greater interest in adjudicating these claims, particularly given that the vast majority of the alleged abuse occurred elsewhere.  *Id.*

## II.    Plaintiffs Fail to State a Claim Against TKO and WWE

### A.    Plaintiffs Fail to Plead Any Duty Owed by WWE and TKO

Plaintiffs have failed to plead a legally cognizable duty.  OB at 23–29.  Attempting to fill

that gap in their Amended Complaint, Plaintiffs' Opposition now points to supposed "duties" that are unsupported by or irreconcilable with their own allegations.

*__Plaintiffs' "Control" Theory Fails__*.  Plaintiffs first claim that a duty was owed because Defendants supposedly had "control" over Plaintiffs or the alleged perpetrators, Opp. at 16–17, but cite no applicable case law.  Instead, they rely on *Estate of Madden* v. *Southwest Airlines, Co*., but that decision held that an employer did not have a duty to its employee's husband because, once the employee had left the workplace, she was operating outside the scope of her employment. 2021 WL 2580119, at *4 & n.1 (D. Md. June 23, 2021).  Similarly, Defendants did not control Phillips, Garvin, or Patterson outside of the workplace in, for example, hotels, where most of the alleged conduct occurred.  Plaintiffs also point to the Restatement of Torts, but the Restatement requires a showing that the employer "knows or should know of the necessity and opportunity for exercising such control" to establish liability.  Restatement (Second) of Torts § 317 (1965). Plaintiffs have not pled facts sufficient to show knowledge or opportunity.  *See* OB at 24–27.

*__Plaintiffs Fail to Plead a Special Relationship__*.  Plaintiffs also argue that a duty was owed based on an alleged "special relationship," Opp. at 17–22, but have alleged no facts showing such a relationship by virtue of (1) a statute, (2) employment status, or (3) an *in loco parentis* theory.

*First*, Maryland's statutory reporting requirements for suspected abuse do not apply because the statute does not apply to out-of-state defendants, and Plaintiffs have not pled that Defendants knew of or had reason to know of any in-state abuse that could trigger a duty to report. OB at 28.  Plaintiffs' cases are inapposite.  *David N.* v. *St. Mary's Cnty. Dep't of Soc. Servs.*, 16 A.3d 991, 996–98 (Md. App. 2011) (holding pre-2003 statute did not require "reports of out-of-state child abuse or neglect"); *Horridge* v. *St. Mary's Cnty. Dep't of Soc. Servs.*, 854 A.2d 1232, 1239 (Md. 2004) (addressing a Maryland agency's failure to investigate reported abuse post-2003).

*Second*, Plaintiffs have pled no facts to show a duty under an employment theory because they do not allege that WWF (or WWE or TKO) hired Plaintiffs, paid Plaintiffs' wages, had the ability to discharge Plaintiffs, or controlled Plaintiffs' alleged work for WWF (or WWE or TKO). OB at 28.  Plaintiffs do not plead that they were hired, fired, or paid wages *by WWE or TKO*, but instead that *Phillips* performed these actions, including providing "compensation" in various forms.  Opp. at 25.  Thus, Plaintiffs have not pled an employer-employee relationship with WWE and TKO.  *Sable* v. *Baltimore Cnty. Gov't*, 2021 WL 4772921, at *5–6 (D. Md. Oct. 12, 2021).

*Seiberlich* v. *Deossa*, 2024 WL 343298 (D. Md. Jan. 30, 2024), which Plaintiffs repeatedly cite, is distinguishable.  There, the employee, a referee, (1) had a contract with the defendant-league, (2) was on duty when he was assaulted, and (3) previously was threatened in broad daylight.  *See id*. at *3–4.  No similar facts are pled here.  Additionally, as to the alleged perpetrators, even if there existed an employment relationship, *Madden*, also cited by Plaintiffs, actually undercuts their position because that decision held that no duty exists where, as here, the alleged instance of harm occurred *outside* the workplace.  *See supra* at 11.

In an attempt to bolster their employment-based theory, Plaintiffs deflect from their own pleading failure by mischaracterizing WWE and TKO's position.  To that end, Plaintiffs essentially suggest that WWE or TKO are disclaiming that they could ever be vicariously liable.  Opp. at 19–21.  That is a strawman.  Instead, WWE and TKO have argued—and shown based on precedent—that an employer cannot be liable for the sexual misconduct of an employee without the employer's knowledge of the employee's prior misconduct.  *See* OB at 24 (citing *Mitchell* v. *Rite Aid of Md., Inc*., 290 A.3d 1125, 1131 (Md. App. Ct. 2023); *Doe* v. *Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014)).  Nor is there any merit to Plaintiffs' new theories of "ratification" or "acquiescence," by which they suggest that WWE and TKO could be liable by learning of the alleged abuse after the

fact.  *See* Opp. at 20–21.  "[A]n employer cannot ratify an employee's act without 'knowledge of the material facts.'"  *Finley Alexander Wealth Mgmt.* v. *M&O Mktg., Inc.*, 2025 WL 1592464, at *5 (D Md. June 5, 2025) (citation omitted).  Plaintiffs have not pled facts showing knowledge by WWE or TKO.  Plaintiffs also argue that *Rachel-Smith*, is inapposite because there the plaintiff did not allege that the defendant ratified the assaults.  Opp. at 20.  But, in that case, there was an even stronger allegation supporting ratification—which the court found insufficient—as the plaintiff made a formal complaint to her employer who then "launched . . . a cursory investigation." *Rachel-Smith*, 202 F. Supp. 2d at 402.  No such similar allegation was made here.

*Finally*, Plaintiffs have alleged no facts supporting an *in loco parentis* theory, which requires "mutual consent" between "the one legally charged with the care of the child" and "the one assuming the responsibility."  *Pope* v. *State*, 396 A.2d 1054, 1063 (Md. 1979).  The cases Plaintiffs cite in opposition are off-point because Plaintiffs were not in a school or teacher-student relationship with Defendants.  Opp. at 21–22.  Additionally, Plaintiffs have not alleged that WWE or TKO had custody as they do not plead facts suggesting that their parents consented to any such arrangement with WWE or TKO.  *Cf. Wilson* v. *State*, 2023 WL 2314838, at *11 (Md. App. Mar. 1, 2023) (defendant admitted child was in his care).  Instead, Plaintiffs allege that Phillips *targeted* individuals from broken homes, thus undermining any proposition that Phillips, let alone WWE or TKO, mutually agreed with parents to take custody of Plaintiffs.  *See* AC ¶¶ 3, 39, 64, 68, 350.

***Plaintiffs Fail to Plead Foreseeability***.  Plaintiffs also incorrectly argue that foreseeability establishes a duty.  Opp. at 22–25.  But Plaintiffs have not pled that Defendants had actual or constructive knowledge of alleged abuse.  OB at 24–27.  Plaintiffs nonetheless argue that their alleged harm was foreseeable, claiming that their allegations mirror those in *Doe #1* v. *Board of Education of Somerset County*, 2023 WL 375189 (D. Md. Jan. 24, 2023), and *Loveless* v. *Estevez*,

2019 WL 4187465 (Md. App. Sept. 3, 2019). They are wrong. In *Doe #1*, the plaintiffs alleged there was actual knowledge based on the defendant's "firsthand observations" and "reports filed by both parents and school personnel," including a report the perpetrator "engaged in a sexual relationship with another student." 2023 WL 375189, at *5. There are no allegations here of any such firsthand knowledge related to Plaintiffs or receipt of similar reports. In *Loveless*, the plaintiff alleged that a school official had "counseled" the teacher on his "inappropriate" behavior "prior to the sexual relationship beginning." 2019 WL 4187465, at *9. In contrast, Plaintiffs here merely highlight various sources alleging general knowledge of "Phillips's 'peculiar and unnatural interest' in boys," which is unlike the concrete allegations in the cited cases. *See* Opp. at 22–25. Even if, as Plaintiffs suggest, the McMahons' alleged temporary firing of Phillips suffices to demonstrate knowledge, this occurred in 1988, after almost all of the alleged conduct occurred.[2] *See* AC ¶ 44; Opp. at 23. Regardless, foreseeability alone "does not suffice to establish a duty under Maryland law." *Remsberg* v. *Montgomery*, 831 A.2d 18, 26 (Md. 2003); OB at 24.

**<u>*Plaintiffs Fail to Plead a Business-Invitee Duty*</u>.** Plaintiffs' reliance on a business-invitee theory is misplaced because that duty requires actual or constructive notice of the alleged danger. *See Miller* v. *Live Nation Worldwide, Inc.*, 2016 WL 374103, at *3–4 (D. Md. Feb. 1, 2016) (concert venue "knew or should have known" that crowd-surfing was likely to occur based on past concerts by the same group where crowd-surfing occurred); *Tennant* v. *Shoppers Food Warehouse Md. Corp.*, 693 A.2d 370, 377 (Md. App. 1997) (supermarket defendant owed a duty to slip-and-fall plaintiff). For the reasons already given, Plaintiffs have alleged no such facts.

**<u>*No "Additional Duty" Based on "Personal Treatment."*</u>** Finally, Plaintiffs argue, for the first time, that WWE and TKO owed them an "additional duty" because of the McMahons' "direct

---

[2] Only John Does 2 and 6 assert claims of abuse after 1988. *See* AC ¶¶ 201, 251, 259–260.

and personal treatment" of John Does 6 and 8.  Opp. at 26–28.  This new theory does not work.

For one thing, it does not apply to John Does 1–5 and 7, for whom Plaintiffs point to no allegations

of a personal relationship.  But it is also legally unsupported.  Plaintiffs rely on *Doe* v. *Salisbury*

*University*, 123 F. Supp. 3d 748 (D. Md. 2015), for the proposition that there is a "relaxed

standard" for pleading a duty when alleged negligence is based on "direct and personal treatment,"

Opp. at 26.  But *Salisbury* actually makes clear that when defendants are negligent based on their

own treatment of plaintiffs, as opposed to treatment by third parties, courts apply the factors

governing the existence of a duty applied to "all other negligence actions."  123 F. Supp. 3d at

763.  In such a situation, a variety of factors is considered, including the "foreseeability of harm

to the plaintiff[s]," *id*. (citation omitted), which is not adequately pled here for the reasons stated.

### B. Plaintiffs Still Fail to Plead Other Required Negligence Factors

Apart from their inability to plead a viable duty theory, Plaintiffs also do not adequately

plead breach or causation.  OB at 29–30.  Their only answer to that showing relies on *Seiberlich*,

2024 WL 343298, at *4, where the breach at issue was based on a failure to establish a reporting

system, Opp. at 28.  But that decision is inapplicable here since Plaintiffs make no similar

allegation as to WWE and TKO.  Additionally, Plaintiffs' failure to adequately plead foreseeability

as to harm means that Plaintiffs also cannot establish proximate causation.  OB at 24–27, 29–30.

### C. Plaintiffs' Claims Are Impermissibly Duplicative

WWE and TKO showed that Plaintiffs' negligent hiring, training, and retention claims

should be dismissed as duplicative.  OB at 30.  Plaintiffs now say those claims are not duplicative

because they "focus[] on failure to manage and oversee WWE's child predators," Opp. at 29, but

those same allegations underly Plaintiffs' direct negligence claims.

### CONCLUSION

Plaintiffs' Amended Complaint should be dismissed with prejudice.

Dated:  August 27, 2025
        New York, New York

Respectfully submitted,

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

*/s/ Gregory F. Laufer*

Daniel J. Toal (*pro hac vice*)
Richard C. Tarlowe (*pro hac vice*)
Gregory F. Laufer (*pro hac vice*)
Emily A. Vance (*pro hac vice*)
1285 Avenue of the Americas
New York, NY  10019-6064
Tel: (212) 373-3000 | Fax: (212) 757-3990
dtoal@paulweiss.com
rtarlowe@paulweiss.com
glaufer@paulweiss.com
evance@paulweiss.com

**GOODELL, DEVRIES, LEECH & DANN, LLP**

*/s/ Linda S. Woolf*

Linda S. Woolf (Federal Bar No.: 08424)
K. Nichole Nesbitt (Federal Bar No.: 26137)
Sean Gugerty (Federal Bar No.: 21125)
One South Street, 20th Floor
Baltimore, MD  21202
Tel: (410) 783-4000 | Fax: (410) 783-4040
lsw@gdldlaw.com
knn@gdldlaw.com
sgugerty@gdldlaw.com

*Attorneys for World Wrestling Entertainment, LLC and TKO Group Holdings, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of August 2025, I caused a copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system and electronic notification of such filing is sent to all CM/ECF participants and counsel of record.


/s/ *Gregory F. Laufer*
Gregory F. Laufer (*pro hac vice*)