## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JOHN DOE 1, et al.,                          )
                                             )
                        Plaintiffs,          )        Civil Action No. 1:24-cv-3487-JKB
            v.                               )
                                             )
WORLD WRESTLING ENTERTAINMENT, LLC,          )
et al.,                                      )
                                             )
                        Defendants.          )
                                             )
                                             )


## DEFENDANT VINCENT K. McMAHON'S REPLY MEMORANDUM
## IN FURTHER SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS'
## <u>FIRST AMENDED COMPLAINT</u>

**KRAMON & GRAHAM, P.A.**

John A. Bourgeois (Bar No. 11834)
Christopher C. Jeffries (Bar No. 28527)
750 East Pratt St., Suite 1100
Baltimore, MD 21202
Telephone: (410) 347-7408
Facsimile: (410) 361-8204
jbourgeois@kg-law.com
cjeffries@kg-law.com

**AKIN GUMP STRAUSS HAUER & FELD LLP**

Jessica T. Rosenberg
   (admitted *pro hac vice*)
Ilana Roberts
   (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
jrosenberg@akingump.com
iroberts@akingump.com


*Attorneys for Defendant*
*Vincent K. McMahon*

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................................ 1

I.      Plaintiffs Have Not Established Personal Jurisdiction Over McMahon ............................ 1

        A.      The Court Lacks Personal Jurisdiction Under Maryland's Long-Arm Statute ....... 1

        B.      Exercising Personal Jurisdiction Does Not Comport with Due Process ................. 5

II.     Plaintiffs Fail to State a Claim Against McMahon ............................................................ 6

        A.      The FAC Fails to Plead a "Special Relationship" .................................................. 7

        B.      The Standard Negligence Factors Militate Against a Finding of Duty ................. 12

        C.      Plaintiffs' Claim for Negligent Hiring, Training, Supervision, and Retention
                Also Fails for Omitting the Underlying Tort ........................................................ 14

III.    Amendment Would Be Futile and Jurisdictional Discovery Is Unwarranted .................. 15

        CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adams v. Sec'y, Fla. Dep't of Corr.*,
No. 23-13455, 2025 WL 1639254 (11th Cir. June 10, 2025) (per curiam) ...............................9

*Athas v. Hill*,
476 A.2d 710 (Md. 1984) .........................................................................................................4

*Bond v. Messerman*,
873 A.2d 417 (Md. App. 2005), *aff'd*, 895 A.2d 990 (Md. 2006).............................................6

*Burlington Indus., Inc. v. Ellerth*,
524 U.S. 742 (1998)................................................................................................................11

*Cappel v. Riaso, LLC.*,
13 A.3d 823 (Md. App. 2011)...................................................................................................5

*Coffin v. TGM Assocs. LP*,
No. 20-cv-3120 (SAG), 2021 WL 1238560 (D. Md. Apr. 2, 2021) ...........................................5

*Cooper v. Primary Care Sols., Inc.*,
No. 16-cv-259, 2017 WL 1086186 (M.D. La. Mar. 21, 2017) ...................................................3

*CoStar Realty Info., Inc. v. Meissner*,
604 F. Supp. 2d 757 (D. Md. 2009) ..........................................................................................5

*Cramer v. Hous. Opps. Comm'n of Montgomery Cnty.*,
501 A.2d 35 (Md. 1985) .........................................................................................................11

*Cranford v. Tenn. Steel Haulers, Inc.*,
No. 17-cv-2768 (ELH), 2018 WL 3496428 (D. Md. July 20, 2018)....................................3, 5

*Daimler AG v. Bauman*,
571 U.S. 117 (2014).................................................................................................................4

*David N. v. St. Mary's Cnty. Dep't of Soc. Servs.*,
16 A.3d 991 (Md. App. 2011)..................................................................................................10

*Doe #1 v. Bd. of Educ. of Somerset Cnty.*,
No. 22-cv-1491 (RDB), 2023 WL 375189 (D. Md. Jan. 24, 2023)...................................11, 14

*Doe v. Bd. of Educ. of Prince George's Cnty.*,
888 F. Supp. 2d 659 (D. Md. 2012) ..........................................................................................9

*Doe v. Salisbury Univ.*,
  123 F. Supp. 3d 748 (D. Md. 2015) (Bredar, J.)................................................12, 13

*Dring v. Sullivan*,
  423 F. Supp. 2d 540 (D. Md. 2006) ........................................................................6

*Est. of Green v. City of Annapolis*,
  696 F. Supp. 3d 130 (D. Md. 2023) ......................................................................13

*Est. of Madden v. Sw. Airlines Co.*,
  No. 21-cv-672 (SAG), 2021 WL 2580119 (D. Md. June 23, 2021)............................11, 13, 14

*Fidelis Cybersecurity, Inc. v. Partner One Cap., Inc.*,
  771 F. Supp. 3d 614 (D. Md. 2025) ........................................................................2

*Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*,
  No. 19-cv-1312 (GJH), 2020 WL 1322948 (D. Md. Mar. 20, 2020) ..........................2

*Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*,
  No. 19-cv-1312 (SAG), 2025 WL 1592464 (D. Md. June 5, 2025)................................11, 12

*Gambrill v. Bd. of Educ. of Dorchester Cnty.*,
  281 A.3d 876 (Md. 2022) ......................................................................................14

*Giannasca v. Bank of Am., N.A.*,
  No. 17-cv-2110 (ELH), 2018 WL 6046814 (D. Md. Nov. 19, 2018)................................1, 10

*Gray v. Koch Foods, Inc.*,
  580 F. Supp. 3d 1087 (M.D. Ala. 2022) ................................................................12

*Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*,
  854 A.2d 1232 (Md. 2004) ..................................................................................10

*Jarvis v. Wells Fargo Bank, N.A.*,
  No. 21-cv-687 (DLB), 2022 WL 1663568 (D. Md. May 25, 2022)........................................15

*K.J. v. J.P.D.*,
  No. 20-cv-14177, 2023 WL 4103013 (D.N.J. June 21, 2023)................................11

*Kiriakos v. Phillips*,
  139 A.3d 1006 (Md. 2016) ..................................................................................13

*Laureate Educ., Inc. v. Megahed*,
  No. 10-cv-749 (AW), 2010 WL 2651895 (D. Md. July 1, 2010)............................2

*Legends Title, LLC v. Capital One*,
  659 F. Supp. 3d 637 (D. Md. 2023) ........................................................................4

*Levi v. Schwartz*,
95 A.2d 322 (Md. 1953) ................................................................................................8

*Lewis v. Willough at Naples*,
311 F. Supp. 3d 731 (D. Md. 2018) ................................................................................1

*Linden Homes, Inc. v. Larkin*,
191 A.2d 441 (Md. 1963) ..............................................................................................12

*Loveless v. Estevez*,
No. 01985, Sept. term, 2017, 2019 WL 4187465 (Md. Spec. App. Sept. 3,
2019) (unreported) ..........................................................................................................8

*Maxtena, Inc. v. Marks*,
No. 11-cv-945 (DKC), 2012 WL 113386 (D. Md. Jan. 12, 2012) .................................3

*Metromedia Co. v. WCBM Maryland, Inc.*,
610 A.2d 791 (Md. 1992) ...............................................................................................8

*Miller v. Live Nation Worldwide, Inc.*,
No. 14-cv-2697 (CBD), 2016 WL 374103 (D. Md. Feb. 1, 2016) ................................8

*MyKey Tech., Inc. v. TEFKAT LLC*,
No. 12-cv-1468 (AW), 2012 WL 3257655 (D. Md. Aug. 7, 2012).............................15

*Nammack v. Hampstead Pre-Owned*,
No. 19-cv-1798 (DKC), 2020 WL 1033589 (D. Md. Mar. 3, 2020) ..........................15

*P.J. v. City of Jersey City*,
No. 21-cv-20222, 2022 WL 16949544 (D.N.J. Nov. 15, 2022) .................................11

*Pandit v. Pandit*,
808 F. App'x 179 (4th Cir. 2020) ...................................................................................4

*Park Miller, LLC v. Durham Grp., Ltd.*,
No. 19-cv-4185, 2020 WL 1955652 (N.D. Cal. Apr. 23, 2020)....................................3

*Phillips v. British Airways*,
743 F. Supp. 3d 702 (D. Md. 2024)................................................................................4

*Pizarro Orta v. Creekstone Landscaping & Excavating, LLC*,
No. 23-cv-1954 (EA), 2024 WL 3555093 (D. Md. July 25, 2024) .............................15

*Planet Techs., Inc. v. Planit Tech. Grp., LLC*,
735 F. Supp. 2d 397 (D. Md. 2010)................................................................................2

*Quinn v. Bowmar Publ'g Co.*,
445 F. Supp. 780 (D. Md. 1978) .....................................................................................2

iv

*Seiberlich v. Deossa*,
No. 23-cv-560 (TDC), 2024 WL 343298 (D. Md. Jan. 30, 2024) ............................7, 9, 11, 12

*Sewell v. Strayer Univ.*,
956 F. Supp. 2d 658 (D. Md. 2013) ......................................................................................1

*Tennant v. Shoppers Food Warehouse Md. Corp.*,
693 A.2d 370 (Md. Spec. App. 1997) ...................................................................................9

*Troice v. Willis of Colo. Inc.*,
No. 09-cv-1274, 2014 WL 12824741 (N.D. Tex. Dec. 15, 2014) ........................................3

*Willey v. Bd. of Educ. of St. Mary's Cnty.*,
557 F. Supp. 3d 645 (D. Md. 2021) ...................................................................................8, 9

*Wilson v. State*,
No. 1947, Sept. term, 2021, 2023 WL 2314838 (Md. App. Mar. 1, 2023)
(unreported) .......................................................................................................................8, 9

*Worden v. 3203 Farmington LLC*,
No. 1373, Sept. term, 2021, 2023 WL 4945171 (Md. App. Aug. 3, 2023)
(unreported) ..........................................................................................................................8

*Zachair Ltd. v. Driggs*,
965 F. Supp. 741 (D. Md. 1997) ........................................................................................11

*Zeman v. Lotus Heart, Inc.*,
717 F. Supp. 373 (D. Md. 1989) ..........................................................................................3

**Statutes and Rules**

Md. Rule 1-104(a)(2) ...............................................................................................................8

In his moving brief, Dkt. No. 58-1 ("Motion" or "Mot."), McMahon[1] firmly established that the Court should dismiss the FAC with prejudice because (1) it lacks personal jurisdiction over him and (2) the FAC fails to state a claim. Nothing in Plaintiffs' opposition, Dkt. No. 62 ("Opposition" or "Opp."), compels a different result.

## ARGUMENT

### I.    Plaintiffs Have Not Established Personal Jurisdiction Over McMahon

The Opposition fails to establish that the Court has personal jurisdiction under either Maryland's long-arm statute or the Constitution, thereby dooming Plaintiffs' claims.

#### A.    The Court Lacks Personal Jurisdiction Under Maryland's Long-Arm Statute

As an initial matter, the Motion established that the FAC does not identify "the specific provision of the Maryland long-arm statute that confers jurisdiction," which constitutes "an independent basis for dismissal or transfer." Mot. at 7-8 (quoting *Lewis v. Willough at Naples*, 311 F. Supp. 3d 731, 735 (D. Md. 2018)). Plaintiffs have not responded to this argument and therefore concede the point. *See Giannasca v. Bank of Am., N.A.,* No. 17-cv-2110 (ELH), 2018 WL 6046814, at *13 (D. Md. Nov. 19, 2018) (finding that plaintiff conceded defendant's argument by failing to respond to it in the opposition).[2]

Even if Plaintiffs had appropriately identified their purported statutory bases for jurisdiction, the Opposition fails to demonstrate that the FAC satisfies the statute. Plaintiffs claim that jurisdiction is proper under Sections 6-103(b)(1) and (2) because McMahon allegedly transacted business and contracted in Maryland. Opp. at 5-10. Plaintiffs are wrong. McMahon's "[c]ontacts as a corporate representative on corporate business" cannot "give rise to personal

---

[1] Capitalized terms not defined herein have the same meanings as ascribed in the Motion.

[2] Further, Plaintiffs cannot cure this defect merely by identifying the applicable provisions in the Opposition because "a plaintiff may not amend her complaint via opposition papers." *Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 673 n.16 (D. Md. 2013).

1

jurisdiction," *Quinn v. Bowmar Publ'g Co.*, 445 F. Supp. 780, 786 (D. Md. 1978), where, as here, the FAC does not allege that he was "***directly and personally*** involved in the alleged injury," *Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*, No. 19-cv-1312 (GJH), 2020 WL 1322948, at *7 (D. Md. Mar. 20, 2020) (emphasis added).  Indeed, while Plaintiffs tout *Finley*, they ignore the critical distinction that the plaintiffs in *Finley* alleged fraud and other intentional torts in which the individual defendants were "directly and personally involved."  *See* Opp. at 6-7.  Notably, the *Finley* plaintiffs claimed that the defendants "personally had contact with Maryland while making the misrepresentations that form[ed] the basis" of their claims.  2020 WL 1322948, at *8.  Here, by contrast, Plaintiffs allege that injuries in the forum stemmed from abuse by third parties—not McMahon.  McMahon is not alleged to have been directly or personally involved in the alleged abuse at all, let alone in Maryland, making *Finley* inapposite.

    Plaintiffs' other cited cases fare no better.  *See* Opp. at 7-9, 13.  In each, the defendant's own direct, personal contacts with the forum caused the alleged injury, and those contacts were central to the court's jurisdictional finding.  *See Fidelis Cybersecurity, Inc. v. Partner One Cap., Inc.,* 771 F. Supp. 3d 614, 634 (D. Md. 2025) (finding personal jurisdiction over defendant in breach of contract and fraud case where he personally engaged in extensive negotiations and made fraudulent representations with Maryland-based plaintiff that gave rise to the contract at issue); *Planet Techs., Inc. v. Planit Tech. Grp., LLC,* 735 F. Supp. 2d 397, 400-04 (D. Md. 2010) (finding personal jurisdiction in trademark infringement and unfair competition case where individual defendant participated in the selection of the infringing service name, directed his company to provide competing computer services, controlled the service mark, and directed counsel for the company to file the federal trademark registration); *Laureate Educ., Inc. v. Megahed*, No. 10-cv-749 (AW), 2010 WL 2651895, at *7 (D. Md. July 1, 2010) (finding jurisdiction where defendant

was the "*primary participant* in the alleged breach and misappropriation of trade secrets" at issue) (emphasis added); *Maxtena, Inc. v. Marks*, No. 11-cv-945 (DKC), 2012 WL 113386, at *7-8 (D. Md. Jan. 12, 2012) (finding jurisdiction where the defendant personally misappropriated information in meetings with Maryland employees); *Zeman v. Lotus Heart, Inc.*, 717 F. Supp. 373, 377 (D. Md. 1989) (finding jurisdiction in contract and fraud action where individual defendants personally negotiated and executed the licensing agreement in Maryland).

Tellingly, Plaintiffs identify no authority finding personal jurisdiction under Sections 6-103(b)(1) or (2) over a non-resident individual defendant accused solely of negligence, whose only alleged contacts with the forum were undertaken in a corporate capacity and were not themselves independently tortious. This strongly suggests, consistent with precedent from other jurisdictions, that personal jurisdiction predicated on a corporate representative's contacts is not appropriate in these circumstances.[3] Personal jurisdiction is also inappropriate here under Section 6-103(b)(2) because "[t]his section is understood to relate only to contract actions." *Cranford v. Tenn. Steel Haulers, Inc.*, No. 17-cv-2768 (ELH), 2018 WL 3496428, at *6 (D. Md. July 20, 2018) (citation modified). This is not a contract action; Section 6-103(b)(2) therefore does not apply.

Similarly, jurisdiction is improper under Sections 6-103(b)(3), (4), and (5). Section 6-103(b)(3) authorizes jurisdiction over a nonresident who "[c]auses tortious injury in the State" based on acts committed in Maryland. Here, only John Doe 6 claims to have seen McMahon in Maryland, yet he does not allege (nor could he) that McMahon's presence in a dressing room somehow caused alleged abuse that was perpetrated by others, hours after the event, in a different

---

[3] *See, e.g.*, *Troice v. Willis of Colo. Inc.*, No. 09-cv-1274, 2014 WL 12824741, at *3-4 (N.D. Tex. Dec. 15, 2014) (finding personal jurisdiction over a corporate representative only where the individual is alleged to have "committed an intentional tort directed at the forum"); *Cooper v. Primary Care Sols., Inc*., No. 16-cv-259, 2017 WL 1086186, at *6 (M.D. La. Mar. 21, 2017) (finding jurisdiction lacking where "[p]laintiffs have not asserted that the Individual Defendants committed intentional torts that would subject the Individual Defendants to personal liability"); *Park Miller, LLC v. Durham Grp., Ltd*., No. 19-cv-4185, 2020 WL 1955652, at *12 (N.D. Cal. Apr. 23, 2020) (same).

location. *See* Opp. at 11. To be clear, the FAC alleges that Phillips and Patterson—not McMahon—caused the tortious injury. FAC ¶¶ 90, 173-302, 379. And, to the extent those individuals were agents, it would be of the corporation, not McMahon personally, precluding their contacts from being imputed to McMahon. *See Athas v. Hill*, 476 A.2d 710, 718-19 (Md. 1984) (holding that employer's officers and supervisors were not liable for negligent hiring and retention where they acted solely in their official capacity and the duty breached was nondelegable and owed by the employer).

Plaintiffs also misstate the law concerning Section 6-103(b)(4) regarding what constitutes a persistent course of conduct. Opp. at 12-13. In *Pandit v. Pandit*, the Fourth Circuit rejected jurisdiction where the defendant's contacts were not "continuous over a long period of time," and found that sporadic letters and visits were insufficient to establish a "persistent course of conduct." 808 F. App'x 179, 186-87 (4th Cir. 2020). Contrary to Plaintiffs' suggestion otherwise, because continuous contacts are necessary, but not sufficient, *see Phillips v. British Airways*, 743 F. Supp. 3d 702, 713 (D. Md. 2024), courts have held that a defendant must be "essentially at home" to be subject to Section 6-103(b)(4) jurisdiction, *see, e.g.*, *Legends Title, LLC v. Capital One*, 659 F. Supp. 3d 637, 647 (D. Md. 2023) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014)).

Plaintiffs' reliance on the "substantial revenue" component of Section 6-103(b)(4) is also misplaced. To support their claim that McMahon "derived substantial revenue" from Maryland, Plaintiffs cite paragraphs 317 and 318 from the FAC. Opp. at 12-13. Neither paragraph, however, comes close to alleging that McMahon derived *any* revenue from Maryland, let alone substantial revenue. Paragraph 318 relates solely to Linda McMahon. And paragraph 317 merely alleges that since 2024, McMahon has sold TKO stock for millions of dollars. Plaintiffs do not even attempt to allege what portion of those proceeds might be attributed to events in Maryland in the "1970s

through early 1990s," FAC ¶ 317—thirty to fifty years before the alleged sale of stock—dooming their argument. Indeed, the sole reference to Maryland in paragraph 317 is that McMahon "engaged in conduct in Maryland which forms the basis of this complaint," *id.*, which has nothing to do with whether McMahon derived substantial revenue from Maryland.

Finally, McMahon's alleged use or possession of Maryland real property for "Tuesday Night Titans" does not confer jurisdiction. *See* Opp. at 13-14. Under Sections 6-103(a) and (b)(5), the cause of action must arise from the property interest itself, which is clearly not the case here. *See Cranford,* 2018 WL 3496428, at *6 (finding no jurisdiction where negligent driving claim was unrelated to Maryland property) (citing *Cappel v. Riaso, LLC.,* 13 A.3d 823, 829 (Md. App. 2011)).

## B. Exercising Personal Jurisdiction Does Not Comport with Due Process

Plaintiffs have not alleged that McMahon "had a direct personal involvement in a tort committed in" Maryland and therefore fail to satisfy the due process analysis. *Coffin v. TGM Assocs. LP*, No. 20-cv-3120 (SAG), 2021 WL 1238560, at *4 (D. Md. Apr. 2, 2021) (finding no specific personal jurisdiction where executives were not alleged to be directly involved with the plaintiffs or the conduct causing injury). *CoStar Realty Information, Inc. v. Meissner*, 604 F. Supp. 2d 757 (D. Md. 2009), a case cited by Plaintiffs, does not suggest otherwise. *See* Opp. at 15. There, the defendant personally initiated contact with the plaintiffs, negotiated terms, and signed an agreement selecting Maryland as the forum. 604 F. Supp. 2d at 766. Here, McMahon did none of those things—he neither initiated contact with Plaintiffs, brought them into Maryland, nor committed any tortious act there. He has no personal connection to Plaintiffs' injuries nor to Maryland.

Plaintiffs' fallback—that McMahon "created the opportunity" for others to commit torts in Maryland—likewise fails. Opp. at 8, 14. First, to the extent the "opportunity" was created, the FAC fails to allege it was created in Maryland, where no Defendant or Plaintiff is at home. More

importantly, McMahon's purported contacts promoting WWE events in Maryland are not "such that he should reasonably anticipate being haled into court there" to defend acts allegedly perpetrated by others, which are separate and apart from the events themselves and from any corresponding promotions or other alleged contacts with Maryland. *See Bond v. Messerman*, 873 A.2d 417, 429 (Md. App. 2005), *aff'd*, 895 A.2d 990 (Md. 2006) (finding that the defendant's contacts were insufficient to establish specific jurisdiction). Indeed, the FAC fails to allege that McMahon acted with the "manifest intent" of targeting Marylanders in any purported tortious scheme. *Dring v. Sullivan*, 423 F. Supp. 2d 540, 547 (D. Md. 2006). Thus, "requiring [McMahon] to defend [Plaintiffs'] suit in Maryland would offend traditional notions of fair play and substantial justice." *Bond*, 873 A.2d at 431.

## II.    <u>Plaintiffs Fail to State a Claim Against McMahon</u>

McMahon firmly established in the Motion that—fatal to Plaintiffs' claims—the FAC fails to allege any legally cognizable duty McMahon owed to Plaintiffs. Mot. at 13-25. Attempting to refute this point, Plaintiffs rely on cases involving school districts, city employers, departments of social services, and corporations as if analogous to their action against McMahon, individually. They are not. The vast majority of cases cited by Plaintiffs do not address—never mind purport to impose—liability on an individual. The few that do implicate individuals involve defendants who themselves perpetrated the underlying injurious act, unlike McMahon. Notably, Plaintiffs fail to engage with the myriad cases cited by McMahon, relegating them to four footnotes and dismissing them without meaningful analysis. This, coupled with Plaintiffs' citation to inapposite

authority, underscores the plain fact that McMahon owed no personal duty of care to Plaintiffs—by special relationship or otherwise—thereby mandating dismissal.[4]

### A.    The FAC Fails to Plead a "Special Relationship"

As Plaintiffs' cases make clear: "there is no duty to control a third person's conduct" to prevent harm, "unless a 'special relationship' exists" with the third person or the person injured. *Seiberlich v. Deossa*, No. 23-cv-560 (TDC), 2024 WL 343298, at *3 (D. Md. Jan. 30, 2024) (citation omitted). The FAC fails to plausibly plead a special relationship between McMahon and the perpetrators or Plaintiffs, thereby mandating dismissal.

**Employment-Based Duties.** Plaintiffs cite a slew of paragraphs from the FAC that purportedly support the claim that Plaintiffs were "working for" McMahon. Opp. at 25. However, not a single one of the fifteen cited paragraphs remotely comes close to doing so. Indeed, the FAC fails to establish that Plaintiffs were employees of WWE, let alone McMahon, personally. Mot. at 13-14; Opp. at 26. Tellingly, Plaintiffs' only retort to the well-established fact that the duties alleged are non-delegable duties of an employer is to allege misfeasance, which belies the FAC's allegations. Opp. at 26. The FAC alleges textbook nonfeasance. Yet, to escape from the long line of cases cited by McMahon, Plaintiffs attempt to reframe their allegations as misfeasance, arguing that McMahon "participated" in the tort by pointing only to tangential "facts," like that he "inspire[d] and participate[d] in" WWE's culture. Opp. at 26-27 & n.18. Plaintiffs then double down by summarily rejecting McMahon's cited cases as "distinguishable because the supervisors did not participate in the tort." Opp. at 27 n.18. Yet, as in McMahon's cited cases, the FAC does

---

[4] Plaintiffs inaccurately state that McMahon "takes issue" with only the duty element. Opp. at 16. In fact, McMahon expressly joined in his co-Defendants' arguments to the extent applicable to him—including those regarding duty, breach, proximate cause, punitive damages, personal jurisdiction, and otherwise. *See* Mot. at 7 n.5. McMahon also hereby joins and incorporates by reference, to the extent applicable to him, all arguments in the reply briefs of Defendants WWE and TKO and Defendant Linda McMahon.

not allege that McMahon participated in the underlying tort, i.e., Plaintiffs' alleged sexual abuse. Plaintiffs' cited cases likewise fail because, unlike the FAC, all involve defendants who *personally participated* in the injurious action and thus could be liable. *See Worden v. 3203 Farmington LLC*, No. 1373, Sept. term, 2021, 2023 WL 4945171, at *12-13 (Md. App. Aug. 3, 2023) (unreported) (holding that defendant who himself perpetuated a fraud could be held liable for fraud);[5] *Metromedia Co. v. WCBM Maryland, Inc.*, 610 A.2d 791, 793 (Md. 1992) (holding that CEO could be liable for ejectment because he himself "made the decision to refuse to vacate the Premises"); *Levi v. Schwartz*, 95 A.2d 322, 327 (Md. 1953) (holding that executive could be liable for personally directing tortious excavation work). Here, where McMahon was neither the Plaintiffs' employer, nor alleged to have personally participated in the abuse, the FAC has failed to establish that McMahon owed any Plaintiff an employer-based duty. *See* Mot. at 13-18.

**Premises-Based Duties.** Plaintiffs' premises liability argument likewise fails. Under Maryland law, premises liability "relates specifically to an injury as a result of a physical defect on property." *Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 669 (D. Md. 2021) (citation omitted). No such injury is alleged here. Further, Plaintiffs purport to impose liability on McMahon on the theory that they were business invitees at WWE events, and therefore "invitees of Mr. McMahon as WWE's co-founder." Opp. at 27. Plaintiffs fail to provide any authority for this theory and instead cite two inapposite cases that do not even purport to address questions of individual liability. *See Miller v. Live Nation Worldwide, Inc.*, No. 14-cv-2697 (CBD),

---

[5] *Worden* is one of three unreported decisions by the Appellate Court of Maryland that Plaintiffs rely on and fail to identify as unreported. *See also Wilson v. State*, No. 1947, Sept. term, 2021, 2023 WL 2314838 (Md. App. Mar. 1, 2023) (unreported); *Loveless v. Estevez*, No. 01985, Sept. term, 2017, 2019 WL 4187465 (Md. Spec. App. Sept. 3, 2019) (unreported). The Court should disregard these cases entirely. *See* Md. Rule 1-104(a)(2) (mandating that unreported decisions from before July 1, 2023 may not be cited even as persuasive authority, and that later unreported decisions may be cited as persuasive authority only if they are identified as unreported and "if no reported authority adequately addresses an issue before the court").

2016 WL 374103, at *3-4 (D. Md. Feb. 1, 2016) (holding that concert venue owed duty to concert attendees); *Tennant v. Shoppers Food Warehouse Md. Corp.*, 693 A.2d 370, 374-77 (Md. Spec. App. 1997) (holding that supermarket owed duty to slip and fall plaintiff).

**In Loco Parentis.**  As Plaintiffs' own cases describe, the very specific *in loco parentis* relationship "arises only when one is willing to assume all the obligations and to receive all the benefits associated with one standing as a natural parent to a child," and where "[b]oth the parent and the third person assuming responsibility over the child [] demonstrate some indication, in some form, of an intention to establish an *in loco parentis* relationship."  *Wilson*, 2023 WL 2314838, at *10 (citation omitted).  The FAC falls woefully short of this standard, which the Opposition only serves to confirm.  *See* Opp. at 21-23.  Plaintiffs cite completely distinguishable cases, which underscore the inapplicability of the relationship here.  For example, two of the Plaintiffs' cases involve suits by students against a school district—a highly specific situation in which courts have recognized a relationship akin to *in loco parentis*.  *Willey*, 557 F. Supp. 3d at 668; *Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d 659, 669 (D. Md. 2012).  Two others involve criminal defendants found to be *in loco parentis* based on close personal relationships with their victims.  *Wilson*, 2023 WL 2314838, at *11 (noting that perpetrator considered himself "like a godparent" to victim); *Adams v. Sec'y, Fla. Dep't of Corr.*, No. 23-13455, 2025 WL 1639254, at *5 (11th Cir. June 10, 2025) (per curiam) (noting that perpetrator had a "recognizable bond of trust" with the victim "analogous to that between a child and an uncle or guardian").  And Plaintiffs' final case, which they curiously use to argue they were prohibited from leaving WWE events, and therefore somehow *in loco parentis* with McMahon, did not address *in loco parentis* at all.  *Seiberlich*, 2024 WL 343298, at *4.

**Statutory Duty of Care.**  Plaintiffs do not contest, and therefore concede, that no court has ever imposed a tort duty or found a private right of action based on the two Maryland statutes they cite; that courts across the country agree similar reporting statutes do not establish a private right of action; that any such liability would extend only to claims by the specific Plaintiff about whom a report should have been made; and that no Plaintiff has alleged any such incident.  *See Giannasca*, 2018 WL 6046814, at *13 ("In failing to respond to defendant's argument, Plaintiff concedes the point." (citation modified)); Mot. at 25-27.  That alone disposes of Plaintiffs' claim to a statutory duty owed by McMahon.  Plaintiffs nonetheless cite two inapposite cases, which involve claims brought against a county department of social services (and no individual defendants) for the department's failure to investigate previously-reported incidents of abuse.  *See* Opp. at 19 (citing *Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 854 A.2d 1232, 1241-45 (Md. 2004); *David N. v. St. Mary's Cnty. Dep't of Soc. Servs.*, 16 A.3d 991, 1006 (Md. App. 2011)). Furthermore, as to the alleged out-of-state abuse, Plaintiffs fundamentally misconstrue the law as it was understood prior to the 2003 amendments, which "could not be read to require reports of out-of-state child abuse or neglect to Maryland agencies."  *David N.*, 16 A.3d at 998.

**Control or Ratification.**  The Opposition also invokes a scattered mishmash of theories based on "control" and "ratification" to attempt to hold McMahon liable.  Opp. at 17, 20-21.  None is of any avail.  *First*, Plaintiffs argue that "McMahon has [c]ontrol [o]ver WWE [e]mployees [and] [a]gents," which prevents him from relying on the "supposed" rule that there is no duty to protect another from the tortious act of third persons.  Opp. at 17-18.  In support, Plaintiffs rely on a comment from the Restatement regarding the liability of a master (i.e., the employer) for certain acts of his servant (i.e., the employee).  Opp. at 18.  In doing so, Plaintiffs ignore that McMahon did not personally employ Phillips or Patterson, obviating any import of the purported authority.

*Second*, Plaintiffs argue that McMahon was in a special relationship with Phillips, Patterson, and Garvin "by controlling them as employees/agents of WWE," such that their misconduct "can[] be attributed to him." Opp. at 20. No, it cannot. Again, Plaintiffs cite six inapposite cases, not one of which addresses holding an individual liable for the tortious acts of alleged employees of the company. *See* Opp. at 17, 20 (citing *Est. of Madden v. Sw. Airlines Co.*, No. 21-cv-672 (SAG), 2021 WL 2580119, at *3-4 (D. Md. June 23, 2021) (addressing whether airline company owed duty to flight attendant's husband); *Seiberlich*, 2024 WL 343298, at *4 (addressing whether league owed duty to referee with whom it had a contract); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754-55 (1998) (addressing employer's liability for midlevel manager's misconduct in Title VII action); *P.J. v. City of Jersey City*, No. 21-cv-20222, 2022 WL 16949544, at *5-9 (D.N.J. Nov. 15, 2022) (addressing city's liability for police officer's sexual assault under New Jersey law); *K.J. v. J.P.D.*, No. 20-cv-14177, 2023 WL 4103013, at *2 (D.N.J. June 21, 2023) (same); and *Cramer v. Hous. Opps. Comm'n of Montgomery Cnty.*, 501 A.2d 35, 43 (Md. 1985) (addressing housing commission's liability for assault by inspector)).

Plaintiffs also improperly tack a "ratification" theory onto this argument, Opp. at 21, despite omitting it from the long list of conclusory theories included in their negligence cause of action, *see* FAC ¶¶ 338-76; *see also Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"). In any event, the theory is inapplicable to McMahon, who was not Plaintiffs' employer, thereby vitiating the utility of Plaintiffs' cited cases. *See Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*, No. 19-cv-1312 (SAG), 2025 WL 1592464, at *5-6 (D. Md. June 5, 2025) (holding that jury could find employer ratified its employee's defamatory post); *Doe #1 v. Bd. of Educ. of Somerset Cnty.*, No. 22-cv-1491 (RDB),

2023 WL 375189, at *4-5 (D. Md. Jan. 24, 2023) (holding that Board of Education may be liable where it received reports of school nurse's abuse of students); *Gray v. Koch Foods, Inc.*, 580 F. Supp. 3d 1087, 1131-32 (M.D. Ala. 2022) (holding that employer may have ratified sexual assault that HR manager participated in).  Even if McMahon were the Plaintiffs' employer (he was not), "an employer cannot ratify an employee's act without 'knowledge of the material facts,'" something Plaintiffs have also failed to establish.  *Finley*¸ 2025 WL 1592464, at *5 (quoting *Linden Homes, Inc. v. Larkin*, 191 A.2d 441, 443 (Md. 1963)); *see also* Mot. § II(A)(4).

*Finally*, Plaintiffs argue that the "inherent nature of their working relationship" "included Plaintiffs' dependence and ceding self-control," and that this "dependence also flowed to Mr. McMahon because he admitted that he and Ms. McMahon saw Phillips with kids all the time, and Plaintiffs allege multiple direct interactions."  Opp. at 19-20.  Besides concocting this framework out of thin air, Plaintiffs cite only a single case—*Seiberlich* —that is as misplaced here as it is throughout their Opposition.  In *Seiberlich*, the court found that "the element of dependence and ceding of self-control was arguably present" because the injured referee and soccer league had a "contractual relationship that could form the basis for a special relationship."  2024 WL 343298, at *4.  Plaintiffs had no such relationship to McMahon, nor was there otherwise anything "inherent" to their relationship with him—which was essentially nonexistent—that could create a duty.

## B.    The Standard Negligence Factors Militate Against a Finding of Duty

Because Plaintiffs have failed to satisfy the standard applicable to cases in which the injury is caused by the tortious acts of a third party, *supra*, § II(A), they resort to the standard employed in "all other negligence actions."  *See Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 762-63 (D. Md. 2015) (Bredar, J.) (explaining that the standard in cases alleging a duty to protect another from a third party differs from the standard in "all other negligence actions").  But appealing to the factors

applicable to "all other negligence actions," *id.*, will not salvage Plaintiffs' claims.[6]

*First*, the Opposition claims that Plaintiffs' abuse was foreseeable.  Opp. at 23-25.  It doubles down on the FAC's repetitive assertions of McMahon's supposed omniscience and WWE's culture of misconduct, none of which establish pre-injury knowledge with the necessary "certainty and definiteness."  *Est. of Green v. City of Annapolis*, 696 F. Supp. 3d 130, 170-71 (D. Md. 2023).  Plaintiffs likewise continue to ignore the serious timing defects that plague the FAC, including, but not limited to, their complete reliance on events and statements from decades *after* the alleged misconduct (including a videotape possessed by the FBI in 1993), and the alleged 1992 "admission" by McMahon that Phillips had a "peculiar and unnatural interest in boys."  Opp. at 23-24.  That "admission," even if taken as true, would at best support McMahon's knowledge of Phillips's proclivities as of 1988—after which only John Doe 6 alleges abuse.

*Second*, the remaining factors—which the Opposition primarily ignores—militate against a finding of duty.  For example, substantial "consequences to the community"—with which "Maryland courts have historically been exceedingly concerned," *Est. of Madden*, 2021 WL 2580119, at *6—would result from imposing a duty on McMahon personally for injuries to third parties allegedly caused by any of the thousands of WWE employees and contractors.  It "would significantly expand the field of potential liability" and "'open[] the floodgates' to expansive new classes of third-party plaintiffs" against corporate employees with oversight responsibilities like McMahon.  *Id.* (citation omitted).  The other factors likewise support the lack of any cognizable duty: any "connection" between McMahon's own actions and the injuries sustained at the hands

---

[6] These include "(1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered the injury, (3) the closeness of the connection between the defendant's conduct and the injury, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise reasonable care with resulting liability for breach, (7) and the availability, cost and prevalence of insurance for the risk involved."  *Est. of Madden*, 2021 WL 2580119, at *4 (citing *Kiriakos v. Phillips*, 139 A.3d 1006, 1033-34 (Md. 2016)).

of Phillips and Patterson is remote at best; there is no justifiable "policy of preventing future harm" where the alleged abuse was committed many decades ago by individuals who are now deceased; it is not "reasonably certain" that McMahon's alleged inaction would lead to Plaintiffs' injuries; and McMahon deserves no "moral blame" for alleged misconduct committed outside his purview upon individuals he either never or barely met. *Id.* at *5-6.

*Finally*, the case Plaintiffs describe as "strikingly similar" illustrates the lack of relevant authority supporting their position. *See* Opp. at 24. In *Doe #1 v. Board of Education of Somerset County*, the court allowed parents to bring claims pursuant to the well-recognized principle— irrelevant to the present case—that a board of education "has a duty 'to exercise reasonable care to protect a pupil from harm.'" 2023 WL 375189, at *5 (quoting *Gambrill v. Bd. of Educ. of Dorchester Cnty.*, 281 A.3d 876, 899-900 (Md. 2022)). Besides being specific to the school context, the opinion also does not address the liability of executives, officials, principals, or other supervisory employees; indeed, the only individual sued was the allegedly abusive nurse.[7]

## C.  Plaintiffs' Claim for Negligent Hiring, Training, Supervision, and Retention Also Fails for Omitting the Underlying Tort

Plaintiffs' claim for negligent hiring, training, supervision, and/or retention should be dismissed for the additional reason that Plaintiffs fail to specify the underlying tort that allegedly caused their injuries. Plaintiffs accuse McMahon of "feigning ignorance" as to the underlying tort they are alleging, yet simultaneously broadly assert that their allegations "can constitute assault, battery, and a variety of other common law torts." Opp. at 29. As evidenced by the long list of cases cited in McMahon's Motion—which Plaintiffs mostly ignore—that is not how pleading this cause of action works. Plaintiffs must specify the underlying common law torts they intend to

---

[7] Plaintiffs' attempt to invoke a lesser standard for John Does 6 and 8, on the basis that they allege fleeting interactions with McMahon, lacks merit. Despite alleging that they were once in the same room as McMahon, their allegations are fundamentally the same as those asserted by the other Plaintiffs and should be evaluated under the same standard.

prove and do so sufficiently to survive a motion to dismiss.  *See* Mot. at 28-30.  Despite Plaintiffs' suggestion otherwise, *Nammack v. Hampstead Pre-Owned*, No. 19-cv-1798 (DKC), 2020 WL 1033589 (D. Md. Mar. 3, 2020), does not compel a different result.  *See* Opp. at 29.  In *Nammack*, the court allowed a negligent retention and supervision claim to proceed precisely *because* the plaintiff had also sufficiently pled a predicate tort of battery.  2020 WL 1033589, at *6.[8]

## III.    Amendment Would Be Futile and Jurisdictional Discovery Is Unwarranted

Further amendment would be futile here: Plaintiffs have already amended their complaint in an attempt to remedy the defects identified by Defendants' original motions to dismiss, and have failed to do so.  *See Jarvis v. Wells Fargo Bank, N.A.*, No. 21-cv-687 (DLB), 2022 WL 1663568, at *7 (D. Md. May 25, 2022) (dismissing claim with prejudice "because [plaintiff] had the opportunity to cure the deficiencies in this claim after the defendant pointed them out, but he still failed to state a claim") (citation omitted).  In addition, "jurisdictional discovery is not warranted" where, as here, "the pleadings contain no specific facts that could establish the requisite contacts with Maryland."  *See MyKey Tech., Inc. v. TEFKAT LLC*, No. 12-cv-1468 (AW), 2012 WL 3257655, at *6 (D. Md. Aug. 7, 2012) (holding that the requested jurisdictional discovery would constitute a "fishing expedition" where "[t]he bulk of [plaintiff's] contentions rest[ed] on the contact [defendant] made with Maryland in a professional capacity") (citation modified).

## CONCLUSION

For the foregoing reasons and those in McMahon's Motion, Defendant Vincent K. McMahon respectfully requests that the Court dismiss the FAC with prejudice.

---

[8] The Court should also dismiss the negligence count as duplicative because both claims "are rooted in the same factual allegations and theory of liability." *Pizarro Orta v. Creekstone Landscaping & Excavating, LLC*, No. 23-cv-1954 (EA), 2024 WL 3555093, at *4 (D. Md. July 25, 2024) (citation modified).  The line Plaintiffs purport to draw, Opp. at 30, is a mirage because the allegations are fundamentally the same in both claims.

Date: August 27, 2025                    Respectfully Submitted,

                                         **AKIN GUMP STRAUSS HAUER &
                                         FELD LLP**

                          By:     */s/ Jessica T. Rosenberg*
                                  Jessica T. Rosenberg
                                     (admitted *pro hac vice*)
                                  Ilana Roberts
                                     (admitted *pro hac vice*)
                                  One Bryant Park
                                  New York, NY  10036
                                  Telephone: (212) 872-1000
                                  Facsimile: (212) 872-1002
                                  jrosenberg@akingump.com
                                  iroberts@akingump.com

                                  **KRAMON & GRAHAM, P.A.**
                                  John A. Bourgeois (Bar No. 11834)
                                  Christopher C. Jeffries (Bar No. 28527)
                                  750 East Pratt St., Suite 1100
                                  Baltimore, MD 21202
                                  Telephone: (410) 347-7408
                                  Facsimile: (410) 361-8204
                                  jbourgeois@kg-law.com
                                  cjeffries@kg-law.com

16

## **CERTIFICATE OF SERVICE**

I certify that on August 27, 2025, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Jessica T. Rosenberg* 
Jessica T. Rosenberg