# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOHN DOE 1, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> WORLD WRESTLING ENTERTAINMENT, LLC, et al., <br><br> *Defendants*. | Civil Action No. 24-03487-JKB |

## LINDA E. MCMAHON'S OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED UNDER PSEUDONYMS AND FOR PROTECTIVE ORDER

William J. Murphy (Bar No. 00497)
Samantha Miller Kavanagh (Bar No. 21374)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Tel: (410) 332-0444
Fax: (410) 659-0436
wmurphy@zuckerman.com
skavanagh@zuckerman.com

Laura A. Brevetti *(*admitted *Pro Hac Vice*)
LAW OFFICES LAURA A. BREVETTI
575 Lexington Avenue, 14th Floor
New York, NY 10022
Tel: (917) 970-0250
laura.brevetti@brevettilaw.com

*Attorneys for Linda E. McMahon*

# **TABLE OF CONTENTS**

APPLICABLE LAW ....................................................................................................................... 2

ARGUMENT .................................................................................................................................. 3

I.      The *James* factors, on balance, do not support Plaintiffs' request. ..................................... 5

          A.      Plaintiffs do not establish that public disclosure of their names would pose a risk of harm. ....................................................................................................................... 5

          B.      Plaintiffs are adults, which cuts against allowing them to litigate using pseudonyms. ............................................................................................................. 9

          C.      Allowing Plaintiffs to litigate under pseudonyms would unduly prejudice Ms. McMahon. ......................................................................................................... 11

                1.      It is unfair for anonymous parties to prosecute serious claims against private parties. ......................................................... 11

                2.      One-sided anonymity would unduly prejudice Defendants. ............................................................................................ 12

II.     Ms. McMahon does not oppose the entry of a reasonable confidentiality order, but she cannot agree to the blanket anonymity Plaintiffs request. ................................................ 17

CONCLUSION ............................................................................................................................. 17

Plaintiffs initiated this sprawling lawsuit against high-profile defendants, making serious and damaging allegations. Plaintiffs took steps to ensure that these allegations would be magnified and sensationalized throughout the media landscape, pushing Defendants' names into the headlines and harming their reputations in the process. At the same time, Plaintiffs have preserved complete privacy for themselves, identifying themselves publicly only as "John Does," and revealing their true names to Defendants only after Defendants acquiesced to onerous—but temporary—confidentiality terms.

As this case proceeds to discovery and the temporary confidentiality terms expire, Plaintiffs make an extraordinary request. They ask this Court to allow them to continue litigating their claims against Defendants, including Linda E. McMahon, under pseudonyms. But Plaintiffs cannot meet the high bar necessary to justify a departure from the presumption of open judicial proceedings. It is true that this case involves highly sensitive allegations, one of several factors courts consider in weighing requests for pseudonymity. Consideration of other relevant factors that courts have applied, however, reveals that Plaintiffs cannot justify a complete cloak of anonymity, and thus their motion should be denied. Chief among those factors is the harm one-sided anonymity would cause Ms. McMahon, and her ability vigorously to defend herself against Plaintiffs' false accusations.

As for Plaintiffs' request for a protective order, Ms. McMahon does not oppose in concept. However, she cannot consent to any protective order that provides Plaintiffs with the near-total anonymity they seek. Plaintiffs have made serious allegations against Ms. McMahon; now, they must try to prove them. And because Plaintiffs cannot make the requisite showing to justify pseudonymity, Plaintiffs must litigate this case in the normal fashion and using their own names.

1

## APPLICABLE LAW

"Pseudonymous litigation undermines the public's right of access to judicial proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 273 (4th Cir. 2014). This is because "[t]he public has an interest in knowing the names of the litigants, and disclosing the parties' identities furthers openness of judicial proceedings." *Id.* (internal citations omitted). Accordingly, the Fourth Circuit recognizes "a presumption that parties must sue and be sued in their own names." *Doe v. Sidar*, 93 F.4th 241, 246 (4th Cir. 2024) (citing *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993)) (internal quotation marks omitted).

Courts may set aside this presumption only in "rare" cases characterized by "exceptional" circumstances. *Doe v. Doe*, 85 F.4th 206, 211 (4th Cir. 2023). "[F]ew cases warrant anonymity, and few litigants request it." *Sidar*, 93 F.4th at 247. Against this backdrop, courts carefully scrutinize requests to proceed pseudonymously and do so on a case-by-case basis. The Fourth Circuit has enumerated five non-exhaustive factors for courts to balance when analyzing such requests:

(1) "[W]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature;"

(2) "[W]hether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;"

(3) "[T]he ages of the persons whose privacy interests are sought to be protected;"

(4) "[W]hether the action is against a governmental or private party;" and

(5) "[T]he risk of unfairness to the opposing party from allowing an action against it to proceed anonymously."

*James*, 6 F.3d at 238; *see Sidar*, 93 F.4th at 247.[1] Furthermore, "a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Doe* 85 F.4th at 211. In deciding whether to grant a motion to proceed pseudonymously, the court must ground its analysis in "the circumstances of [the] particular case[]." *Sidar*, 93 F.4th at 247; *James*, 6 F.3d at 238.

## ARGUMENT

Plaintiffs suggest that they are "entitled to proceed under pseudonyms" because their allegations concern sexual abuse. ECF No. 73 ("Mot.") at 3. This is precisely backwards. In no category of cases are certain types of parties "entitled" to litigate from the shadows. Rather, "[t]here is a presumption that parties must sue and be sued in their own names." *Sidar*, 93 F.4th at 246 (citation and quotation marks omitted).

Plaintiffs' Motion fails to justify their request for the "rare dispensation" of pseudonymity. *James*, 6 F.3d at 238. Despite nominally engaging with each of the five factors enumerated in *James v. Jacobson* (the "*James* factors"), Plaintiffs' argument rests almost entirely on *one* factor: their desire to "preserve privacy in a matter of sensitive and highly personal nature." *James*, 6 F.3d at 238. But the sensitivity of Plaintiffs' allegations is just one factor among many this Court must consider in analyzing Plaintiffs' request. It is not, on its own, dispositive. *See, e.g., Doe v. Cook Cnty., Illinois*, 542 F. Supp. 3d 779, 787 (N.D. Ill. 2021) ("The Court recognizes that victims of sexual assault often wish to keep their identities secret out of fear of embarrassment or social stigmatization. Those concerns alone, however, are insufficient to permit a plaintiff to proceed

---

[1] Though courts within the Fourth Circuit speak of the "*James* factors," these factors are not unique; other circuits have crafted similar balancing tests for pseudonymity that include many of the same factors. For example, the Second Circuit's ten-factor test includes each of the *James* factors. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008).

under a pseudonym."); *Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019) ("Courts have … indicated that allegations of sexual assault, by themselves, are not sufficient to entitle a plaintiff to proceed under a pseudonym." (citing *Doe v. Shakur*, 164 F.R.D. 359, 361–62 (S.D.N.Y. 1996)). Ms. McMahon does not dispute that the Amended Complaint includes sensitive allegations, nor does she doubt that Plaintiffs would prefer to prosecute their claims against her without publicly identifying themselves. Plaintiffs come perilously close, however, to arguing that *every* plaintiff in *every* case alleging sexual abuse—or at least those bringing claims under Maryland's Child Victims Act—are entitled to anonymity. That position is not consistent with the applicable law.

Careful analysis of the remaining *James* factors reveals the weakness of Plaintiffs' argument for pseudonymity. They fail to demonstrate with supporting evidence any specific, individualized "risk" of "harm" to themselves or "to innocent non-parties." *James*, 6 F.3d at 238 (factor two). Although Plaintiffs are adults in their late forties and fifties, Plaintiffs assert— wrongly—that their ages do not cut against their bid for pseudonymity. *Id*. (factor three). And they discount entirely any "legitimate interests on the other side," *Sidar*, 93 F.4th at 247 (discussing *James* factors four and five): namely, the harm to Ms. McMahon that would undoubtedly flow from allowing this case to proceed to discovery pursuant to the one-sided anonymity Plaintiffs seek.

For the reasons explained below, Plaintiffs' "stated interest in anonymity" does not outweigh "the public's interest in openness" and the "prejudice that anonymity would pose" to Ms. McMahon. *See Doe,* 85 F.4th at 211. Plaintiffs' Motion should be denied, and until the parties can confer on *reasonable* terms for a protective order, no protective order should be entered.

4

## I. The *James* factors, on balance, do not support Plaintiffs' request.

### A. Plaintiffs do not establish that public disclosure of their names would pose a risk of harm.

Ms. McMahon concedes that the first of the five *James* factors weighs in favor of Plaintiffs' request to proceed under pseudonyms. But that factor is not dispositive, and the weakness of Plaintiffs' position begins to appear at factor two: "whether identification poses a risk of retaliatory physical or mental harm. . . ." *See James*, 6 F.3d at 238.

In analyzing the second *James* factor, "district courts routinely look for 'aggravating factors' or 'evidence' as a means to determine whether a risk of harm truly exists." *Doe*, 85 F.4th at 213 (quotation marks in original). This is because courts cannot "properly weigh this factor based on nothing more than a bare assertion of risk. . . ." *Id*. Here, however, "a bare assertion of risk" is all that Plaintiffs provide. They point generally to the nature of their allegations, suggesting that the allegations are so sensitive that public identification carries a *per se* risk of "re-traumatization." Mot. at 4–5.[2] But Plaintiffs provide no individualized or specific description of this claimed risk. *Cf. In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1251 (11th Cir. 2020) ("The appellants' 'generalized, subjective assertions of fear' were simply not 'the kind of risk of physical or other injury' required to treat them differently than other plaintiffs."). Nor do Plaintiffs include any evidentiary support for the asserted risk—they attach no affidavits or declarations, provide no information about their mental or physical health, and do not explain why public identification of

---

[2] Plaintiffs appear to have abandoned the contention that they are entitled to anonymity due to fear of "retaliat[ion]" from Defendants. *See* Am. Compl. ¶¶ 311–12, 314. Presumably, Plaintiffs did not include this argument in their Motion because it is baseless. *See, e.g.*, *Doe v. Freydin*, No. 21 CIV. 8371 (NRB), 2021 WL 4991731, at *2 (S.D.N.Y. Oct. 27, 2021) (the plaintiff's argument that she feared retaliation from the defendants had "no purchase" because "the defendants already kn[e]w the plaintiff's identity"); *Does v. Shalushi*, No. 10-11837, 2010 WL 3037789, at *3–4 (E.D. Mich. July 30, 2010) (similar).

their names (as opposed to anything else) would create the risk of "re-traumatization" they claim to fear.

Plaintiffs' blank evidentiary record stands in stark contrast to the record presented in *Doe v. Darden Restaurants, Inc.*, a case on which Plaintiffs rely. *See* 736 F. Supp. 3d 297 (D. Md. 2024). In *Darden Restaurants*, this Court found that the second *James* factor weighed in favor of granting a plaintiff's request for pseudonymity where she "submitted a letter from a psychiatrist detailing, inter alia, [her] fear of retaliation and humiliation." *Id.* at 301. Courts in other jurisdictions similarly require plaintiffs to substantiate assertions that public identification of their names would cause them harm. *See, e.g.*, *Doe v. Weinstein*, 484 F. Supp. 3d 90, 95 (S.D.N.Y. 2020) ("Without corroboration from medical professionals, however, [the plaintiff's] general allegation of potential trauma is 'mere speculation' about a risk of psychological injury that cannot support her motion to proceed under a pseudonym."); *Doe v. Gong Xi Fa Cai, Inc.*, No. 19-CV-2678(RA), 2019 WL 3034793, at *2 (S.D.N.Y. July 10, 2019) ("[A]lthough [the plaintiff] argues that revealing her identity would exacerbate her emotional distress, such generalized harm, absent more direct evidence linking disclosure of her name to a specific physical or mental injury, is insufficient."); *Cook Cnty.*, 542 F. Supp. 3d at 787 (denying a plaintiff's request to proceed pseudonymously where she failed to provide "specific information" as to whether her "her specific circumstances demonstrate[d] a risk of serious social stigmatization surpassing a general fear of embarrassment").[3] Plaintiffs' failure to provide evidence—or even specifics—of the claimed risk

---

[3]   Plaintiffs cite one case, *J.E. v. Lyft, Inc.*, in which it appears the court credited the plaintiff's unsupported assertion that publicly revealing her name would exacerbate "an ongoing risk of re-traumatization." No. 1:25-cv-02786-JRR, 2025 WL 3550596, at *2 (D. Md. Dec. 11, 2025). It is worth noting, however, that the defendant did not oppose the plaintiff's request for pseudonymity in that case. *Id.* at *1.

of harm is reason enough for this Court to conclude that the second *James* factor does not support them.

Even if this Court were to credit Plaintiffs' unsupported and generalized assertions that they are at risk of "re-traumatization if they are forced to publicly reveal their identities," Mot. at 5, the Court should nevertheless find these conclusory statements insufficient to justify pseudonymity. On this point, *Rapp v. Fowler,* 537 F. Supp. 3d 521 (S.D.N.Y. 2021), is instructive. In *Rapp*, which involved allegations of sexual abuse against the actor Kevin Spacey, the court considered whether the risk of "re-triggering" the plaintiff's post-traumatic stress disorder (PTSD) was the kind of "retaliatory physical or mental harm" that justified the use of a pseudonym. *Id*. at 528–29. The plaintiff had submitted declarations from his treating mental health providers, who averred "that '[the plaintiff's] name being made public to the media, friends or on the internet ... will trigger his post-traumatic stress disorder' causing 'anxiety, anxiety attacks, nightmares, and depression.'" *Id*. at 529 (alterations in original). The *Rapp* court, however, found "[t]he declarations' conclusory statements" to be "of limited utility":

> Neither [declaration] gives any sense of the severity of any consequences of a "retriggering" of the alleged PTSD by future disclosure of [the plaintiff's] identity beyond the conclusory statements that it would entail anxiety, nightmares, and depression. Any of these consequences of course would be regrettable. But the frequency, seriousness, clinical significance and treatability of feelings of anxiety and depression and of nightmares doubtless cover broad spectra.

*Id*. at 530. The court also observed that "being re-exposed to the perceived wrong of which he complains is an inevitable consequence of litigation itself," as the plaintiff would be deposed and subject to cross-examination at trial. *Id*. at 530 (cleaned up). Based on the evidence provided, the *Rapp* court was not persuaded that the risk of "retriggering" was sufficiently tied to public

7

disclosure of the plaintiff's name.[4] This Court should reach a similar conclusion as to Plaintiffs' nonspecific assertions of "re-traumatization" risk here.

Plaintiffs advance one additional argument in support of *James* factor two: that the "significant media coverage" of this case heightens the risk of harm. Mot. at 5. The Court should reject this argument out of hand. In at least two ways, Plaintiffs *themselves* have generated the very media attention they now claim exacerbates their vulnerability. First, consider Plaintiffs' bloated Amended Complaint (ECF No. 55), which appears crafted to maximize media attention. Running nearly 400 paragraphs, the Amended Complaint focuses on many salacious events, allegations, and statements that bear a negligible (if any) connection to Plaintiffs' individual claims, and it includes extraneous alleged details about World Wrestling Entertainment ("WWE") and the McMahons that appear to serve no purpose other than to name high-profile individuals who are not parties to this case. *See, e.g.,* Am. Compl. ¶ 126 (alleging that in an interview, Dwyane "The Rock" Johnson said WWE's "taste" was "questionable").

Second, one of the law firms representing Plaintiffs prominently features this case on its website[5] and has issued several related press releases.[6] One press release even touts the widespread

---

[4]     In finding that the plaintiff insufficiently established that public disclosure of his name would result in harm, the *Rapp* court also observed that the plaintiff "has spoken since the 1990s to an unknown number of people about his 'relationship' with Spacey," and "does not claim that he received assurances of confidentiality from any of them." 537 F. Supp. 3d at 529. The plaintiff failed to address whether those prior disclosures "retriggered [his] PTSD or, if they did not, why further disclosure would yield a different outcome." *Id*.

While Ms. McMahon does not know the precise number of people Plaintiffs have told about the allegations in the Amended Complaint, the number is not zero. *See* Mot. at 5–6 (asserting that Plaintiffs have not disclosed the alleged claims to "*many* people") (emphasis added). Like the plaintiff in *Rapp*, Plaintiffs here fail to support their claimed fear of "re-traumatization" with evidence of any such result stemming from their prior voluntary disclosures.

[5]     *See* Current Case: Sexual Abuse of WWE 'Ring Boys," https://dicellolevitt.com/case-study/sexual-abuse-of-wwe-ring-boys/ (last accessed Jan. 15, 2026).

[6]     *See* DiCello Levitt & Murphy, Falcon & Murphy File Lawsuit Against World Wrestling Entertainment, LLC, Vincent K. McMahon, Linda McMahon, and TKO Group Holdings, Inc. on Behalf of

8

media attention this case has garnered, listing the "numerous publications" that have covered the case, hyperlinking to each article, and noting that lead Plaintiffs' counsel has been "interviewed by several publications."[7] If Plaintiffs genuinely believed that media attention would cause them harm, surely their counsel would not have engaged in such persistent and deliberate efforts to publicize this lawsuit.

On *James* factor two, Plaintiffs offer nothing more than a "bare assertion" that public disclosure of their names would pose a risk of harm.[8] *See Doe*, 85 F.4th at 213. Accordingly, this factor does not support Plaintiffs' request to proceed pseudonymously.

### B. Plaintiffs are adults, which cuts against allowing them to litigate using pseudonyms.

The third *James* factor asks courts to consider "the ages of the persons whose privacy interests are sought to be protected." *James*, 6 F.3d at 238; *see also id.* at 238–39 ("[A]nonymity [may be] warranted to protect minor plaintiffs.") (citing *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)). As one court in this Circuit explained, "[c]ourts are often more willing to allow parties to

---

"Ring Boys" Who Survived Sexual Abuse, *DiCello Levitt* (Oct. 23, 2024), https://dicellolevitt.com/dicello-levitt-and-murphy-falcon-amp-murphy-file-lawsuit-against-world-wrestling-entertainment-llc-vincent-k-mcmahon-linda-mcmahon-and-tko-group-holdings-inc-on-behalf-of-ring-boys-who-survived-sexual/; WWE 'Ring Boys' Sexual Abuse Case Moves to Discovery, *DiCello Levitt* (Dec. 11, 2025), https://dicellolevitt.com/wwe-ring-boys-sexual-abuse-case-moves-to-discovery/.

[7] *See* DiCello Levitt Partner Greg Gutzler Quoted in Numerous Media Outlets About 'Ring Boys' Sexual Abuse Lawsuit, *DiCello Levitt* (Oct. 31, 2024), https://dicellolevitt.com/dicello-levitt-partner-greg-gutzler-quoted-in-numerous-media-outlets-about-ring-boys-sexual-abuse-lawsuit/.

[8] Plaintiffs' conclusory and nonspecific assertions of risk to "innocent non-parties such as Plaintiffs' families, relatives, friends, and employers," Mot. at 5–6, suffers from the same deficiencies as Plaintiffs' assertions of risk to themselves. Moreover, their stated concern for "innocent non-parties" is belied by the number of people likely falling into that category that Plaintiffs' chose to mention—by name and for no good reason—in the Amended Complaint. *See Freydin*, 2021 WL 4991731, at *3 ("[I]t is not lost on the Court that plaintiff has chosen to inflict upon others the precise harm she now seeks to avoid . . . Specifically, plaintiff's Complaint needlessly exposes identifying information about numerous non-parties . . . in total disregard of their privacy interests.").

9

proceed anonymously in order to protect the privacy rights of children." *Doe v. N. Carolina Cent. Univ.*, No. 1:98CV01095, 1999 WL 1939248, at *4 (M.D.N.C. Apr. 15, 1999).

Plaintiffs are not children. They concede that *James* factor three does not support their bid to remain anonymous, arguing that the Court should consider this factor "neutral." Mot. at 6. But Plaintiffs weight this factor incorrectly. Where the party seeking anonymity is an adult, courts in this district routinely conclude that *James* factor three cuts *against* pseudonymity. *See, e.g.*, *Darden Restaurants*, 736 F. Supp. 3d at 302; *Doe v. Mercy High Sch., Inc.*, No. 1:23-cv-01184-JRR, 2024 WL 3103396, at *7 (D. Md. June 24, 2024); *Smith v. Towson Univ.*, No. CV JRR-22-2998, 2022 WL 18142844, at *2 (D. Md. Nov. 30, 2022), *aff'd,* No. 22-2319, 2023 WL 3053034 (4th Cir. Apr. 24, 2023). *But cf. Doe v. Bd. of Educ. of Anne Arundel Cnty.*, No. 1:25-CV-01703-JRR, 2025 WL 1865786, at *2, 3 (D. Md. July 7, 2025) (in considering the plaintiff's unopposed motion to proceed pseudonymously, concluding that the third *James* factor weighed in favor of the "young adult" plaintiff who alleged abuse occurring when she was a minor.)

Plaintiffs suggest that their ages at the time they were allegedly sexually abused many decades ago should factor into the analysis of *James* factor three. Mot. at 6. It should not. The nature of Plaintiffs' allegations is properly considered as part of the first *James* factor, which asks Courts to assess "whether the justification asserted by the requesting party … is to preserve privacy in a matter of sensitive and highly personal nature." *James*, 6 F.3d at 238. Ms. McMahon does not dispute that allegations of child sexual abuse are sensitive and highly personal. But the third *James* factor is focused on whether the requesting party's *current* age supports anonymity. *See, e.g.*, *Stegall*, 653 F.2d at 186 (discussing the "special vulnerability" of "child-litigants"); *B.R.* v. *F.C.S.B.*, No. 1:19-CV-00917 (RDA/TCB), 2020 WL 12435689, at *25 (E.D. Va. Mar. 10, 2020) ("Although Plaintiff was 12 years of age at the time these incidents occurred, she is now a college-

10

age adult. This case poses no risk that the privacy rights of a person who is presently a child are in jeopardy."). Here, Plaintiffs' ages—ranging approximately from late forties to late fifties—do not weigh in favor of anonymity. *See Mercy High School*, 2024 WL 3103396, at *6–7 (in case involving allegations of child sexual abuse, concluding that "[t]he third factor (Plaintiff's age) weighs against allowing Plaintiff to proceed by pseudonym, as she is not a minor."); *Rapp*, 537 F. Supp. 3d at 530 ("Though [the plaintiff] brings allegations relating to alleged sexual abuse as a minor, he now is an adult in his 50s who has chosen to level serious charges against a defendant in the public eye. This factor weighs in favor of his shouldering the burden of such accusations.").

The Court should conclude that *James* factor three weighs against granting Plaintiffs' Motion.

### C. Allowing Plaintiffs to litigate under pseudonyms would unduly prejudice Ms. McMahon.

While the first three *James* factors focus on the interests of the party seeking pseudonymity, "the fourth and fifth factors focus on the legitimate interests on the other side by asking 'whether the action is against a governmental or private party' and assessing 'the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.'" *Sidar*, 93 F.4th at 247 (citing *James*, 6 F.3d at 238).

#### 1. It is unfair for anonymous parties to prosecute serious claims against private parties.

Plaintiffs devote a single sentence to *James* factor four, asserting in conclusory fashion that "just because this action is against private party Defendants does not outweigh the first two factors . . . ." Mot. at 6. Plaintiffs' drive-by analysis belies the importance of this factor, which weighs heavily against granting Plaintiffs' Motion.

"Actions against the government do no harm to its reputation, whereas suits filed against private parties may damage their good names and result in economic harm." *Doe v. Pittsylvania*

11

*Cnty., Va.*, 844 F. Supp. 2d 724, 730 (W.D. Va. 2012). Accordingly, when the party requesting anonymity and the party opposing it both "are private parties, the unfairness of allowing one to protect their identity but not the other weighs against anonymity." *Darden Restaurants*, 736 F. Supp. 3d at 302. The unfairness is exacerbated where, as here, natural persons are named as defendants and accused of serious misconduct. "When a plaintiff accuses an individual of wrongdoing, basic fairness dictates that those among the defendants' accusers who wish to participate in this suit must do so under their real names." *Doe*, 85 F.4th at 215 (citations omitted) (cleaned up).

Defendants are all private parties, and the McMahons are individuals. Plaintiffs accuse Defendants of enabling child sexual abuse—allegations that are baseless but nevertheless highly damaging. Ms. McMahon intends to vigorously contest Plaintiffs' claims. The fourth *James* factor weighs heavily against allowing Plaintiffs to litigate this case using pseudonyms because it would be "fundamentally unfair" for them to levy such serious allegations but "hide under a shield of anonymity if unsuccessful" in proving them. *Doe*, 85 F.4th at 215.

### 2.   One-sided anonymity would unduly prejudice Defendants.

The fifth *James* factor explicitly asks courts to analyze "the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously." *See Sidar*, 93 F.4th at 247 (citing *James*, 6 F.3d at 238). Plaintiffs downplay any unfairness to Ms. McMahon, arguing—incorrectly—that Ms. McMahon's *private* knowledge of Plaintiffs' names eliminates any possibility that she will suffer harm. Mot. at 6. But this case is not being litigated privately. Plaintiffs have publicly accused Ms. McMahon of wrongdoing; Ms. McMahon is a well-known Cabinet level official who now must publicly defend herself. As a robust body of caselaw establishes, serious risks of unfairness accompany requests for one-sided anonymity. The risks here—which Plaintiffs ignore—are overwhelming.

In *Sidar*, the Fourth Circuit expounded on "two sources of potential unfairness when a plaintiff seeks to proceed anonymously while making allegations against a known defendant":

> For one, there is a concern that anonymity may serve as a "shield behind which" false or "defamatory charges may be launched without shame or liability," *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005), thus creating the risk a blameless defendant will suffer embarrassment and reputational damage merely by being sued. There is also the one-sidedness of allowing a plaintiff to "have [their] cake and eat it too" by gaining the ability to stay anonymous if they lose—thus avoiding reputational harms from disclosing the underlying facts or bringing an unsuccessful lawsuit—while retaining the power to reveal their identity if they win. *Doe v. Doe*, 85 F.4th at 217.

93 F.4th at 249 (alterations in original). The *Sidar* court also observed that "[w]here liability has not been established, there is at least some risk that jurors may view a decision to let one side proceed anonymously as suggesting that the anonymous party's claims are valid or that it has the better case than the non-anonymous party." *Id.*; *see also id.* at 250 ("Having one party incognito but not the other can tilt the scales of justice in the direction of guilt by anonymous accusation, a prospect which would be just as abhorrent to civil litigation as it is to our criminal justice system." (citing *Rapp*, 537 F. Supp. 3d at 531–32)) (Wilkinson, J., concurring).

The *Sidar* court's reference to *Doe v. Smith* is noteworthy. In *Smith*, the plaintiff alleged that when she was 16, the defendant (her then-boyfriend) secretly recorded their sexual encounters and circulated the footage to their high school classmates. 429 F.3d 706, 707 (7th Cir. 2005) (Easterbrook, J.). In reversing the district court's grant of the plaintiff's request for anonymity, the Seventh Circuit observed that, if true, the plaintiff's allegations would "disgrace" the defendant. *Id.* at 710. If false, however, the "shelter of anonymity" would unfairly protect the plaintiff from consequences. *Id.* By citing *Smith*, the Fourth Circuit in *Sidar* implicitly recognized that it can be fundamentally unfair to allow an anonymous plaintiff to litigate allegations of sexual misconduct

13

against a named defendant. Other courts to consider the question have reached similar conclusions. *See, e.g., S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) (sexual harassment) ("Basic fairness dictates that those among the defendants' accusers who wish to participate in this suit as individual party plaintiffs must do so under their real names."); *F.B. v. E. Stroudsburg Univ.*, No. 3:09CV525, 2009 WL 2003363, at *4 (M.D. Pa. July 7, 2009) (sexual assault and harassment) ("[I]t is [the defendant], not the plaintiffs, who is disgraced if the complaint's allegations are ultimately found to be true.").

In recent years, courts in the Southern District of New York have denied several plaintiffs' motions to proceed pseudonymously in sexual assault suits against public figures. *See, e.g.*, *Doe v. Combs*, No. 24-cv-7977 (VSB), 2025 WL 1380800, at *3, 5 (S.D.N.Y. May 13, 2025) (citing cases); *Rapp v. Fowler,* 537 F. Supp. 3d 521, 531–32 (S.D.N.Y. 2021); *Doe v. Weinstein*, 484 F. Supp. 3d 90, 97–98 (S.D.N.Y. 2020). These courts have recognized that one-sided anonymity poses particular problems in cases against high-profile defendants. As the *Rapp* court explained, "[h]ighly publicized cases can cause unknown witnesses to surface." 537 F. Supp. 3d at 531. Where a plaintiff is permitted to litigate anonymously, however, there is an "asymmetry in fact-gathering" that prejudices the defense:

> [The plaintiff's] use of a pseudonym likely would prevent persons with information about [the plaintiff] or his allegations that would be helpful to [the] defense … from coming forward. If they do not know who this accuser is, they likely would have no way of knowing that their information would be pertinent.

*Id*. As the *Combs* court observed, this asymmetry is exacerbated in high profile cases, where a plaintiff's anonymity effectively means that "damaging information about *only Defendants* would be aired through the litigation." *Combs*, 2025 WL 1380800, at *4 (citation and quotation marks omitted) (emphasis added). These impediments to discovery harm not only the defendants, but

14

also "hinder 'the judicial interest in accurate fact-finding and fair adjudication.'" *Rapp*, 537 F. Supp. 3d at 531 (quoting *Weinstein*, 484 F. Supp. 3d at 97–98).

In this case, allowing Plaintiffs to proceed pseudonymously would be particularly unfair and prejudicial to Ms. McMahon. The manner in which Plaintiffs chose to plead their claims illustrates why. The Amended Complaint is filled with alleged statements and recollections of dozens of third parties—reporters, wrestlers, former WWE employees—many of whom are identified by name. *See, e.g.*, Am. Compl. ¶¶ 44–47, 64, 69, 130–31, 166.[9] Although most of these details are utterly irrelevant to the actual claims in this case, Plaintiffs presumably have included them in an effort to enhance public interest and media attention to this case, to increase the extent to which Defendants are subjected to public opprobrium, and to create unfair pressure on Defendants to settle these baseless claims.

The Amended Complaint's reliance on identified third parties underscores the need for Plaintiffs to identify themselves. This case, which is premised on alleged misconduct occurring decades ago, is certain to involve challenges to the reliability and credibility of the parties' and witnesses' recollections of events alleged to have occurred 30 or 40 years ago. It is unfair for Plaintiffs to carve out a category of persons—themselves—who alone are protected from the kind of scrutiny this litigation will bring. *See, e.g., Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 142 (S.D. Ind. 1996) (sexual harassment) ("The plaintiff has raised claims in which the parties' testimony is virtually certain to be at odds on material matters, so that their credibility will be directly at issue. … Part of that defense will ordinarily include direct challenges to the plaintiff's credibility[.] … Those may be sensitive subjects, but they are at the heart of plaintiff's credibility

---

[9] Many third parties identified in the Amended Complaint are deceased, allowing Plaintiffs to include their names without fear that these individuals will contradict Plaintiffs' characterization of their alleged statements and opinions.

in making the serious accusations he has made here."); *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015), *aff'd,* 672 F. App'x 48 (2d Cir. 2016) (non-sexual battery) ("A witness who proceeds under her own name and is subject to potentially rigorous cross-examination may feel more inhibited than a pseudonymous witness from fabricating or embellishing an account.").

Asymmetrical discovery is also a concern here. Plaintiffs allege that Mel Phillips, Pat Patterson, and/or Terry Garvin abused them over the course of multiple years and in multiple states. They allege they were "Ring Boys"—that they attended WWE events and interacted with WWE employees. Certain Plaintiffs allege they were harassed or abused in front of others. *E.g.*, Am. Compl. ¶ 256. Plaintiffs presumably will contact any witnesses they believe can corroborate these allegations. But if other witnesses could *refute* Plaintiffs' claims, Plaintiffs' anonymity could prevent these witnesses from coming forward. *See Rapp*, 537 F. Supp. 3d at 531 ("If they do not know who this accuser is, they likely would have no way of knowing that their information would be pertinent."). In this way, Plaintiffs would "have [their] cake and eat it too"—precisely the type of harm identified by the Fourth Circuit in *Sidar*. 93 F.4th at 249.

Fairness demands that Plaintiffs litigate this case using their real names. They make serious and damaging accusations against Ms. McMahon who must defend herself not only in this Court, but also in the court of public opinion. As this high-profile case proceeds to discovery, one-sided anonymity would hinder factfinding and unduly prejudice Ms. McMahon. Simply put, Plaintiffs' "interest in anonymity' does not outweigh "the public's interest in openness" and the "prejudice that anonymity would pose" to Ms. McMahon. *See Doe,* 85 F.4th at 211. Plaintiffs' request to proceed under pseudonyms should therefore be denied.

**II.     Ms. McMahon does not oppose the entry of a reasonable confidentiality order, but she cannot agree to the blanket anonymity Plaintiffs request.**

In addition to requesting pseudonymous status (which the Court should deny), Plaintiffs move for the entry of a protective order with onerous and unacceptable confidentiality terms. Plaintiffs seek to block Defendants from disclosing Plaintiffs' identities "to new people in the course of Defendants' investigations" or as part of "the discovery process." Mot. at 7. Under Plaintiffs' proposed terms, the exception for disclosing information to potential witnesses would be narrow and cumbersome. *See id.*; ECF No. 47, ¶ 3. As explained above, these types of limitations would impede discovery and prejudice Ms. McMahon.

"Plaintiff[s] can seek less drastic remedies than blanket anonymity, such as redactions to protect particularly sensitive information, or a protective order." *See Weinstein*, 484 F. Supp. 3d at 98 (citations omitted). Such remedies are available here. Ms. McMahon does not oppose the entry of an order setting forth confidentiality terms applicable to sensitive discovery materials; she is amenable, for example, to the terms of the model Stipulated Order Regarding Confidentiality of Discovery Material set forth in Appendix D of the Local Rules. But for the reasons explained above, Plaintiffs' desire for privacy cannot come at the expense of fundamental fairness. Ms. McMahon cannot agree to the terms of Plaintiffs' suggested protective order, and the Court should not enter it.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Proceed Under Pseudonyms and for Protective Order should be denied.

Dated:  January 26, 2026                  Respectfully submitted,

*/s/ William J. Murphy*
William J. Murphy (Bar No. 00497)
Samantha Miller Kavanagh (Bar No. 21374)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Tel: (410) 332-0444
Fax: (410) 659-0436
wmurphy@zuckerman.com
skavanagh@zuckerman.com

Laura A. Brevetti *(*admitted *Pro Hac Vice*)
LAW OFFICES LAURA A. BREVETTI
575 Lexington Avenue, 14th Floor
New York, NY 10022
Tel: (917) 970-0250
laura.brevetti@brevettilaw.com

*Attorneys for Linda E. McMahon*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January, 2026 that a copy of the foregoing was served on all counsel of record via CM/ECF.

                                                  */s/William J. Murphy*
                                                  William J. Murphy (Bar No. 00497)