IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOHN DOE 1, et al., | Civil Action No. 1:24-cv-3487 |
| Plaintiffs, | Hon. James K. Bredar |
| v. | |
| WORLD WRESTLING ENTERTAINMENT, LLC, et al., | |
| Defendants. | |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION TO PROCEED UNDER PSEUDONYMS
AND FOR PROTECTIVE ORDER**

# **TABLE OF CONTENTS**

I.   ARGUMENT ........................................................................................................................ 1

    A.   The McMahons Misconstrue the Standard. ....................................................................... 1

    B.   The First *James* Factor "Strongly" Supports Pseudonymity................................................ 3

    C.   The Second *James* Factor Supports Pseudonymity. ........................................................... 4

    D.   The Third and Fourth *James* Factors Do Not Outweigh the First Two Factors.................. 9

    E.   The Fifth *James* Factor Supports Proceeding Under Pseudonyms.................................. 10

    F.   The Terms of the Interim Protective Order Should Substantially Remain. ...................... 13

II.   CONCLUSION .................................................................................................................. 15

Defendants Vince and Linda McMahon (the "McMahons")[1] have known the identities of Plaintiffs for months, yet they wish to force Plaintiffs—victims of child sex abuse—to reveal their identities to the extensive and passionate wrestling community, the media, and the public as a whole. But that would risk re-traumatization of Plaintiffs, along with the risk of harm to innocent third parties like Plaintiffs' families, friends, and employers who mostly do not know about Plaintiffs' abuse or participation in this case.

The binding Fourth Circuit's *James* factors[2] protect against such abuse, and the case law in this Circuit abundantly supports sexual abuse victims like Plaintiffs here proceeding under pseudonyms. The McMahons previously agreed to allow Plaintiffs to remain anonymous, but now have reversed course and mostly argue that it would be unfair for victims like Plaintiffs to litigate anonymously against public figures like the McMahons (even though Plaintiffs already revealed their identities to all Defendants here). The McMahons mostly rely on out-of-circuit authority, which should be rejected, and they give their interests as public figures precedence over childhood sex abuse victims, which is backwards. Plaintiffs should be allowed to proceed under pseudonyms moving forward, and Plaintiffs respectfully request a protective order governing the use of their identities during the litigation.

I. ARGUMENT

A. **The McMahons Misconstrue the Standard.**

The McMahons acknowledge that the Fourth Circuit's five *James* factors apply here, but the McMahons misconstrue that standard in a couple of ways. *First*, the McMahons direct the Court to cases from the Second Circuit and elsewhere, ostensibly because the McMahons believe

---

[1] Plaintiffs reply herein to the separate opposition briefs filed by Vince and Linda McMahon, which largely assert the same arguments. Dkts. 78-79. All Plaintiffs, including John Doe 7 whose claims were dismissed *without* prejudice (Dkt. 67), seek the relief requested in their Motion and this reply.

[2] *See James v. Jacobson*, 6 F.3d 233, 242 (4th Cir. 1993).

1

some of that non-binding case law supports them better than cases in this Circuit. But there is no need for this Court to explore Second Circuit and other cases when abundant binding and persuasive authority exists in this Circuit and District, including from this Court. Indeed, although the Second Circuit analyzes some factors similar to the *James* factors, it goes much further by looking at ten factors, rather than the five that apply here.[3] For example, the McMahons rely on two S.D.N.Y. cases, but both are distinguishable legally and factually. *See Rapp*, 537 F. Supp. 3d at 527 (using Second Circuit's ten factors; emphasizing under a factor *not included* in the Fourth Circuit's *James* factors "the rather unusual facts of this case" including that the plaintiff spoke to a number of people about the relationship at issue, disclosed his identity to a magazine's pop culture website, and likely allowed the magazine to confirm his story through other people to whom he told his story); *Doe v. Combs*, No. 24-CV-7977 (VSB), 2025 WL 1380800, at *4 (S.D.N.Y. May 13, 2025) (plaintiff was an adult at the time of the assault; using Second Circuit's ten factors and emphasizing that in multiple other cases filed by the same law firm against the same defendant in the S.D.N.Y. those other cases largely denied motions to proceed anonymously).

*Second*, the McMahons overemphasize the public's legitimate interest in open proceedings by contending that only exceptional circumstances warrant proceeding under pseudonyms. That may be true in the context of certain types of civil litigation, but it is not true in the context of cases involving sexual misconduct. In the context of sexual assault, particularly of minors, the Fourth Circuit states that openness "should *yield in deference* to sufficiently pressing needs for party or

---

[3] *Rapp v. Fowler*, 537 F. Supp. 3d 521, 527 (S.D.N.Y. 2021) lists the Second Circuit's ten factors, including *several that are not included* in the Fourth Circuit's *James* factors: whether the plaintiff's identity has been kept confidential, whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity, whether because of the legal issues or otherwise there is an atypically weak public interest in knowing the identities, and whether there are alternative mechanisms for protecting the plaintiff. The McMahons also rely on other distinguishable, out-of-circuit cases. *See Doe v. Cook Cnty., Illinois*, 542 F. Supp. 3d 779, 785 (N.D. Ill. 2021) (considering up to 13 factors and emphasizing the case is against public servants accused of gross abuse of power).

witness anonymity." *James*, 6 F.3d at 242 (emphasis added). The Fourth Circuit and district courts therein have recognized that cases—like here—involving alleged sexual abuse constitute such pressing need for anonymity. *See Doe v. Sidar*, 93 F.4th 241, 248 (4th Cir. 2024) ("Courts have recognized a plaintiff's interest in preserving privacy where the allegations concern sexual assault"). In fact, the Fourth Circuit in *Sidar* recognized that allegations involving sexual assault and the resulting psychological trauma "are not merely sensitive," but implicate privacy or confidentiality concerns "of the highest order." *Sidar*, 93 F.4th at 248-49 (reversing district court's decision to remove pseudonym). Therefore, the *James* factors should be weighed in the context of those "highest order" concerns that Plaintiffs possess here.

> **B.    The First *James* Factor "Strongly" Supports Pseudonymity.**

The McMahons concede that this factor weighs in favor of granting Plaintiffs' motion to proceed under pseudonyms. But it more than just supports Plaintiffs; it "weighs strongly in favor" of granting their motion. *Doe v. Darden Restaurants, Inc.*, 736 F. Supp. 3d 297, 301 (D. Md. 2024); *Doe v. Mercy High Sch., Inc.*, No. 1:23-CV-01184-JRR, 2024 WL 3103396, at *6 (D. Md. June 24, 2024) (involving sexual abuse of a minor; first factor "weighs heavily" in favor of anonymity). In *Doe v. Darden*, this Court acknowledged that the Fourth Circuit has recognized particular sensitivity in cases that involve trauma from sexual assault and that victims of such conduct have an interest in preserving privacy. *Id.* (citing *Sidar*, 93 F.4th at 248). It is the sensitivity of the nature of the *allegations* that matters. *Id.*; *see also* Memorandum Opinion, Dkt. 66 at 1 (this Court noted how "[t]his case concerns allegations of egregious sexual abuse of children.").

Courts in this Circuit and District routinely hold the same as this Court in *Doe v. Darden*, thus further supporting a finding that the first *James* factor "strongly" supports pseudonymity. *See Doe v. Bd. of Educ. of Anne Arundel Cnty.*, No. 1:25-CV-01703-JRR, 2025 WL 1865786, at *2 (D. Md. July 7, 2025) (granting motion to proceed under pseudonym in case involving sexual

3

harassment; collecting cases doing the same); *E.E.O.C. v. Spoa, LLC*, No. CIV. CCB-13-1615, 2013 WL 5634337, at *3 (D. Md. Oct. 15, 2013) (permitting anonymity to "preserve her privacy in a highly sensitive and personal matter involving sexual assault"); *Doe v. Williams*, No. CV 1:23-5745-JDA-SVH, 2024 WL 1120175, at *1 (D.S.C. Mar. 14, 2024) ("It is well-recognized in this circuit that victims asserting allegations of sexual misconduct constitute matters of a highly sensitive and personal nature.") (cleaned up). Indeed, the Fourth Circuit emphasized that it has not been uncommon to close courtrooms to the public while a victim of sex crimes testifies, which is "a step far more drastic" than allowing a sexual assault victim to use a pseudonym. *Sidar*, 93 F.4th at 248.[4] The first *James* factor "weighs strongly in favor" of granting Plaintiffs' motion.

### C. The Second *James* Factor Supports Pseudonymity.

The second *James* factor also strongly supports granting Plaintiffs' motion because there is a risk of retaliatory physical or psychological harm, not just to Plaintiffs, but also to innocent non-parties. Courts in this District recognize that requiring a plaintiff to name himself/herself in a case alleging sexual misconduct can make the plaintiff "vulnerable to significant physical or mental harm as a result of her highly sensitive information being made public." *J.E., v. LYFT, INC., et al.*, No. 1:25-CV-02786-JRR, 2025 WL 3550596, at *2 (D. Md. Dec. 11, 2025). Moreover, multiple cases recognize such a risk due to widespread dissemination of a victim's identity on the Internet. *See E.E.O.C. v. Wal-Mart Stores E., L.P.*, No. 5:23-CV-00623, 2024 WL 349760, at *2 (S.D.W. Va. Jan. 30, 2024) ("Sexual violence is a profoundly negative and traumatic life event . . . . Disclosing Ms. Doe's name on the public docket, which is likely to remain permanently available

---

[4] And there is an entire provision of the Federal Rules of Evidence whose purpose is to protect the privacy interests of such victims. *Id*. The substantial and recent authority within this Circuit supporting pseudonymity in sexual assault cases stands in stark contrast to Vince McMahon's citation to outdated, anachronistic case law. *Doe v. N. Carolina Cent. Univ.*, No. 1:98CV01095, 1999 WL 1939248, at *5 (M.D.N.C. Apr. 15, 1999) (involving sexual assault but denying pseudonymity in Title VII case).

on the Internet, presents a significant risk of subjecting Ms. Doe to future psychological trauma…"); *E.E.O.C. v. Spoa, LLC*, No. CIV. CCB-13-1615, 2013 WL 5634337, at *3 (D. Md. Oct. 15, 2013) (there is a risk of retaliatory or mental harm where a plaintiff "may face psychological harm from having [her] sensitive" information "made permanently available to anyone with Internet access.").

The McMahons contend that Plaintiffs need to proffer some sort of evidence or proof of the risk of harm. Not so. The Fourth Circuit does not, and never has, required evidence or other proof to satisfy the second factor. *See Sidar*, 93 F.4th at 247 (citing *James*, 6 F.3d at 238 to say the second factor directs the court to ask whether identification of the requesting party poses "a risk" of retaliatory physical or mental harm to that party or innocent non-parties); *Doe v. Chesapeake Med. Sols., LLC*, No. CV SAG-19-2670, 2020 WL 13612472, at *2 (D. Md. Feb. 26, 2020) (where "there could be some risk of mental harm to plaintiff upon public dissemination of her identity in connection with" sensitive personal information, anonymity may be warranted).[5] Simply put: a risk of harm is not something akin to a "guarantee" of harm through evidence or proof.

Indeed, this Court in *Doe v. Darden* did not require any such evidence or proof when concluding that the second factor weighs in favor of anonymity. 736 F. Supp. 3d at 301-02 (crediting plaintiffs' *allegations* regarding concern for her physical safety and emotional wellbeing and finding an unsworn letter from a psychiatrist to be sufficiently reliable). Other courts in this District have done the same. *See Bd. of Educ. of Anne Arundel Cnty.*, 2025 WL 1865786, at *2 (crediting assertion of mental anguish if her identity is not protected, without any need for a

---

[5] *Doe v. Doe*, 85 F.4th 206, 213-14 (4th Cir. 2023) also does not require evidence of the risk of harm; rather, the Fourth Circuit noted that district courts can look for "aggravating factors" *or* "evidence" as a means to determine whether a risk of harm exists. Indeed, the Fourth Circuit in *Doe* discussed the appellant's allegations in the complaint about risk of harm, but they could not be credited because appellant had not presented to the district court argument about the allegations in his motion or memorandum.

declaration from the plaintiff or treating physician or other evidence); *J.E.*, 2025 WL 3550596, at *2 (second factor weighs in favor of plaintiff based on assertion contained in plaintiff's motion of risk of re-traumatization from being named); *Williams*, 2024 WL 1120175, at *1-2 (crediting allegations in the complaint and motion regarding risk of physical or mental harm); *Chesapeake Med. Sols.*, 2020 WL 13612472, at *2 (not requiring evidence of a risk of mental harm from public dissemination of her identity). It doesn't make sense to *require* Plaintiffs to provide a declaration from a treating physician because such a requirement assumes without justification that Plaintiffs have had treating mental health providers, which is counter to their allegations that they have largely suffered in silence. First Amended Complaint ("FAC"), Dkt. 55 at ¶ 24.

Contrary to the McMahons' assertions, Plaintiffs have provided more than bare assertions of risk. They have provided credible allegations—that are now beyond the motion to dismiss stage—of a risk of physical or psychological harm, along with aggravating factors for that risk. Plaintiffs have alleged that they are seeking to use pseudonyms because of the highly personal nature of their victimization and because of the serious risk of harm to which they would be exposed if forced to reveal themselves. *Id*. at ¶¶ 311-316. They further make clear that, for decades, they have suffered *in silence* from their childhood trauma, including mental and emotional distress. *Id*. at ¶¶ 24, 191, 205, 218, 237, 250, 273, 302, 373-74, 392. Plaintiffs' Motion at 5-6 specified that they have not disclosed their abuse and trauma to many of the people closest to them, such as family, friends, and employers. That means widespread public dissemination of their identities risks further mental and emotional distress, because Plaintiffs have purposefully resisted disclosing it. The fact that the Plaintiffs have informed very few of the people closest to them demonstrates that it is an aggravating factor for the risk of harm from widespread disclosure of Plaintiffs' identities. Additionally, there is a real risk of physical harm due to re-traumatization. *Id*. at ¶¶ 21-

6

22 (discussing former ring boy's tragic suicide due to trauma from abuse).[6] Plaintiffs also allege retaliation that supports the risk of harm to them. *Id*. at ¶¶ 44-45, 48, 102-03, 108, 312 (alleging retaliation from Defendants, including obtaining and using information against a former Ring Boy and bringing a sham defamation lawsuit against a columnist and the New York Post in the context of reporting on the Ring Boys Scandal).

A further aggravating factor supporting the risk of harm to Plaintiffs is the extensive media coverage of this case. Plaintiffs' Motion at 5 n. 2 cited some of that coverage, and Vince McMahon's Opposition at 12 n. 6 provided more. The WWE and the McMahons have been in the public spotlight and media for decades, including the numerous allegations of sexual misconduct against Vince McMahon, and his participation in a Netflix docuseries about him. *See, e.g., id*. at ¶¶ 20 (Linda McMahon gave television interview about the perpetrator Mel Phillips); 69 (former wrestlers confronted Vince McMahon on the "*Phil Donahue Show*" about alleged sexual misconduct by the perpetrators here); 115-152 (detailing media coverage of the many accusations against Vince McMahon and other reporting about him before this case). It is unsurprising that this case subsequently captured the attention of the wrestling community, sports media, and other press. The McMahons try to blame the media coverage of this case on Plaintiffs themselves because Plaintiffs' counsel has discussed the case *generally* via press release, an interview, and website descriptions.[7] It is illogical for the McMahons to suggest that there would be no media coverage

---

[6] Vince McMahon tries to minimize this fact by claiming that there is no evidence of such risk. It is hard to fathom why evidence of a former ring boy's tragic suicide would be needed. The point is that the risk of harm to Ring Boys is real, not speculative, and the harm suffered by another Ring Boy should, at a minimum, constitute an aggravating factor for the risk of harm to Plaintiffs here if not allowed to remain anonymous.

[7] Attorneys regularly give general comment to the press, so this is neither here nor there. Plus, attorneys for both Vince and Linda McMahon have done the same, including claiming that the Plaintiffs' Complaint is "baseless" and "filled with scurrilous lies, exaggerations, and misrepresentations." *See McMahon would oversee student safety — but advocates worry about her own misconduct allegations*, The 19th (Nov. 25, 2024), https://19thnews.org/2024/11/linda-mcmahon-education-leaders-concerned-misconduct-

of this case but for the limited statements about the case issued by Plaintiffs' counsel. Also, discussing *the case* as a whole is apples and oranges compared to revealing Plaintiffs' identities. What matters here is the risk of harm from widespread dissemination of their identities. It is an aggravating factor that the wrestling and sports communities, plus other media, are closely following and discussing this case, which weighs in favor of anonymity, especially in the context of the ongoing national conversation about sexual misconduct against minors and involving people with fame. *See Alger*, 317 F.R.D. at 40 (second factors weighs in favor of anonymity because the case had received a fair amount of press, especially in the context of the ongoing national conversation about sexual misconduct on college campuses).

Moreover, Plaintiffs would not be the only ones subjected to the risk of harm from public disclosure. Indeed, so too would innocent non-parties such as Plaintiffs' families, relatives, friends, and employers who are not aware of Plaintiffs' abuse and trauma. The McMahons attempt to undermine this reality by speculating about the number of people Plaintiffs have informed about their childhood abuse and trauma. Plaintiffs meant what they said in their motion: that they have suffered in silence for decades, "without informing many people closest to them." Mot. at 5-6.  The small number of people closest to Plaintiffs who do know, necessarily means that the vast majority of people closest to Plaintiffs do not know.  Immediate family members, relatives, friends, and co-workers would be unnecessarily subjected to the risk of harm from public dissemination of Plaintiffs' identities, particularly over the Internet. *See Wal-Mart Stores E., L.P.*, 2024 WL 349760, at *2 ("disclosing Ms. Doe's name further subjects her family members to potential harassment,

---

allegations/#:~:text=Brevetti%2C%20an%20attorney%20for%20McMahon,no%20grounds%20to%20continue%20the; *Vince McMahon and WWE accused of allowing 'rampant' sexual exploitation of young boys by announcer in new lawsuit*, NBC News (Oct. 24, 2024), https://www.nbcnews.com/news/us-news/vince-mcmahon-wwe-accused-allowing-rampant-sexual-exploitation-young-b-rcna176988; *Doe v. Alger*, 317 F.R.D. 37, 41 (W.D. Va. 2016) (while Doe's counsel has made some comments about the case to the media, so too has JMU's spokesperson).

prejudice, and feelings of anxiety, shock, and guilt"); *cf. Strike 3 Holdings, LLC v. Doe,* No. 1:23-CV-00445-JRR, 2023 WL 3251412, at *3 (D. Md. May 4, 2023) (discussing in the context of multiple *James* factors the potential reputational harm to immediate family members and protecting them from public scorn, ridicule, and ostracization; granting use of a pseudonym).

### D. The Third and Fourth *James* Factors Do Not Outweigh the First Two Factors.

The third factor (Plaintiffs' ages) should be neutral because the abuse of Plaintiffs was committed when they were minors, although they are now adults. In *Darden*, this Court considered the age of the parties and the allegations when analyzing this factor. 736 F. Supp. 3d at 302 (noting that no minor is a party and the allegations do not involve minors); *see also Bd. of Educ. of Anne Arundel Cnty.*, 2025 WL 1865786, at *2 (finding that the third factor weighs in favor of plaintiff because while she is not currently a minor, she was at all times relevant to the alleged abuse). Because the allegations here involve egregious sexual abuse of children, the third factor should be more neutral than weighing against anonymity. Even if this factor is not viewed as fully neutral, it should have little impact when weighing the *James* factors together.

The fourth factor (whether the action is against a governmental entity or private party) also should have little impact. This case does not involve the government; therefore, the public's interest in openness is not at its "apex" as it is when the government is a party. This Court noted that this reality diminishes the public's interest in Plaintiffs' identities. *Darden*, 736 F. Supp. 3d at 302; *see also A.T.P. v. MTR Hotels LLC*, No. 6:21-CV-647-TMC, 2021 WL 5772826, at *2 (D.S.C. Mar. 12, 2021) (granting motion to proceed anonymously in alleged sex trafficking case; finding the "fourth factor is essentially neutral"). Although anonymity is not supported by the private parties here, this factor should only weigh slightly against anonymity. Put differently, that this action is against private party Defendants does not outweigh the "highest order" privacy and confidentiality concerns from sexual assault and the resulting psychological trauma, especially

9

committed against minors. In sum, the third and fourth *James* factors, neither individually nor together, outweigh the first factor that "strongly" supports Plaintiffs. Nor do they outweigh the second factor that further supports granting Plaintiffs' motion. *See Chesapeake Med. Sols.*, 2020 WL 13612472, at *2 (the third and fourth factors "do not affect the analysis" despite all parties being adults and no governmental entity involvement).

### E. The Fifth *James* Factor Supports Proceeding Under Pseudonyms.

There is no risk of unfairness to Defendants from allowing Plaintiffs to proceed under pseudonyms, particularly where two out of the four Defendants here (WWE and TKO) do not take a position on Plaintiffs' Motion at this time. The McMahons argue that they will continue to suffer supposed reputational harm if Plaintiffs are allowed to use pseudonyms moving forward. This Court rejected that same argument in *Darden*. *See* 736 F. Supp. at 302-03 ("whatever reputational harm comes to Defendant from these allegations is the same regardless of whether Plaintiff uses her actual name or Jane Doe; the allegations are the same no matter who brings them.").

Moreover, Plaintiffs *already disclosed* their identities to all Defendants here, which also removes any risk of unfairness. *See id.* (plaintiff disclosed her name and address to defendant); *J.E.*, 2025 WL 3550596, at *2 (discerning no risk of unfairness because plaintiff offered to disclose her identity to defendants); *Bd. of Educ. of Anne Arundel Cnty.*, 2025 WL 1865786, at *3 ("Where Defendant knows the true identity of Plaintiff, and is 'fully capable of investigating and responding to the allegations,' there is no risk of prejudice to Defendant's defense."); *Chesapeake*, 2020 WL 13612472, at *2 ("there is no risk of unfairness to the defendants from allowing the action to proceed anonymously, since they are well aware of the plaintiff's identity"). By providing their identities to Defendants, Plaintiffs' Motion is not grounded in a desire to avoid the inconvenience or criticism of litigation; rather, it is grounded in Plaintiffs' privacy and confidentiality concerns regarding their trauma from childhood sexual abuse.

10

The lack of unfairness to the McMahons is further demonstrated by the fact that they already agreed to the Joint Interim Protective Order governing the disclosure and use of Plaintiffs' identities here. Those terms address the logistics of Plaintiffs proceeding under pseudonym and resolve any purported concerns. *Darden*, 736 F. Supp. at 302 (suggesting that agreements between counsel and a protective order can substantially resolve defendant's concerns about logistics and compliance with an order granting pseudonymity).

The McMahons appear to endorse a rule that the fairness factor always counsels against letting a plaintiff use a pseudonym in a case involving public figures and if there is "one-sided anonymity." But the Fourth Circuit has already determined "[t]hat is not the law. This Court has never endorsed such a principle, which would stray from the 'particularized assessment of the equities' mandated by *James*. 6 F.3d at 239." *Sidar*, 93 F.4th at 248. Moreover, the McMahons rely on out-of-circuit, distinguishable cases against public figures who, *themselves*, are accused of sexually assaulting the plaintiffs, unlike this negligence case. *Combs*, 2025 WL 1380800, at *4 (S.D.N.Y case using Second Circuit's ten factors including multiple factors not included in the *James* factors; concluding in pertinent part that allegations that a public figure committed sexual assault furthers an interest in allowing the accused to publicly confront the accuser); *Rapp*, 537 F. Supp. 3d at 532-33 (same); *Doe v. Weinstein*, 484 F. Supp. 3d 90, 98 (S.D.N.Y. 2020) (same; plaintiff was an adult when she met defendant).

The McMahons' argument that one-sided anonymity is inherently unfair against public figures runs counter to the Fourth Circuit's teaching that allegations involving sexual assault and the resulting psychological trauma "are not merely sensitive," but implicate privacy or confidentiality concerns "of the highest order." *Sidar*, 93 F.4th at 248-49. The McMahons would have this Court turn that teaching upside down and instead make the McMahons' interests as public

11

figures paramount over victims of childhood sexual abuse. That defies common sense. The McMahons chose their public lives within and outside of WWE decades ago, and they and the WWE have been allegedly involved in multiple scandals and acts of misconduct that pre-date the filing of this lawsuit. FAC at ¶¶ 20, 69, 115-152, 164. Plus, the McMahons' concern that Plaintiffs' allegations are somehow false or defamatory is belied by the fact that this Court already largely denied Defendants' motions to dismiss.[8]

There also is no unfairness regarding witnesses. The McMahons speculate that third-party witnesses will somehow be prevented from coming forward just because of Plaintiffs' anonymity. Not so, because the complaint details the circumstances and perpetrators of the alleged abuse, along with certain people with knowledge of the same. *See, e.g., id.* at ¶¶ 62-86 (discussing WWE employees and wrestlers with knowledge of the perpetrators' abuse and other sexual misconduct); *see also Wal-Mart Stores E., L.P.*, 2024 WL 349760, at *2 (defendant's argument that anonymity will make it more difficult to obtain witnesses lacks merit because the complaint specifies time periods and locations of alleged events). Potential witnesses are fully capable of coming forward if they have knowledge of those circumstances, perpetrators, and/or any of the many Ring Boys like Plaintiffs. Defendants are in no way precluded from defending themselves nor appropriately using Plaintiffs' identities so long as the terms of a protective order are strictly followed. As discussed in more detail below, the Joint Interim Protective Order already includes a category for witnesses who may be deposed or asked to give testimony and whom Defendants' counsel reasonably determine need to know Plaintiffs' Identifying Information. That broad category of

---

[8] The McMahons try to bolster this argument by falsely contending that many allegations are irrelevant to Plaintiffs' claims. What is actually irrelevant are the McMahons' subjective views of Plaintiffs' complaint. And Linda McMahon relies on distinguishable, out-of-circuit case law. *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005) ("Everyone at the high school who saw the recording already knows who 'Doe' is" and the parties' dating relationship was no secret).

potential witnesses can be provided with Plaintiffs' Identifying Information so long as they agree to be bound by the terms of the protective order, which is necessary to prevent further dissemination of Plaintiffs' identities. Therefore, the Joint Interim Protective Order already prevents any supposed asymmetry in fact-gathering. The fifth factor supports granting this motion.

### F.  The Terms of the Interim Protective Order Should Substantially Remain.

This Court stated that, if necessary, it "will revisit [the Interim] Protective Order, and the use of Identifying Information in discovery and the balance of this litigation, after any motions to dismiss are decided." Dkt. 47 at ¶ 13. Plaintiffs respectfully request a protective order concerning the use of Identifying Information[9] in discovery and the balance of this litigation. Assuming the Court grants Plaintiffs' motion to proceed under pseudonyms, a further protective order in discovery and the balance of this litigation is necessary to properly govern the disclosure of Plaintiffs' Identifying Information moving forward particularly during investigation and discovery.

The McMahons are wrong that Plaintiffs seek "a complete cloak of anonymity." Plaintiffs already provided their identities to all Defendants, and they are requesting a protective order substantially in the same form as the Interim Protective Order. The Interim Protective Order already allows Defendants to disclose Identifying Information to, among others, experts and investigators, Defendants' current and former employees who may have knowledge of the alleged facts, and other witnesses who may be deposed or asked to give testimony and whom Defendants' counsel reasonably determine need to know Identifying Information for purposes of their testimony. *Id*. at ¶ 3. That broad list of possible disclosures defies Linda McMahon's inaccurate contention that a further protective order equals "near-total anonymity." Ironically, Linda McMahon claims that the terms of the Joint Interim Protective Order are "onerous and

---

[9] The Interim Protective Order defines "Identifying Information" as: the names, current residential addresses, and dates of birth of Plaintiffs, including which pseudonym applies to which Plaintiff.

13

unacceptable," but she already agreed to those terms so her description is not credible.

Importantly, anyone to whom Defendants disclose Identifying Information must agree to be bound to the Interim Protective Order, which helps protect Plaintiffs' identities. *Id*. at ¶ 5. The list of persons to whom Defendants may disclose Identifying Information should be sufficient for Defendants to engage in discovery and prepare their defenses. But Plaintiffs made clear in their Motion at 8 that they are ready and willing to further meet and confer with Defendants on any necessary changes to the Interim Protective Order before submission to the Court for approval.

Linda McMahon's proposal to enter into a confidentiality order governing discovery material achieves hardly anything privacy-wise, because not only would Plaintiffs' identities be on the public docket, there would also be zero protection governing the widespread disclosure of the identities throughout the Internet and media. A confidentiality order allowing for certain document designations and/or redactions has nothing to do with a protective order governing how Plaintiffs' identities can be appropriately disclosed to certain categories of people necessary to the litigation of this case. The latter is what is needed through this motion.

Almost all of Vince McMahon's requests for inclusion in a protective order are unreasonable. *See* Vince McMahon Opposition at 15.

- Limiting a protective order regarding pseudonymity to pre-trial stages is premature and also contrary to the Fourth Circuit's acknowledgement that it is not uncommon to close courtrooms to the public while a victim of sex crimes testifies. *Sidar*, 93 F.4th at 248. The Parties and the Court can address this issue closer to trial.

- Permitting Defendants to reveal Plaintiffs' identities to potential witnesses without first securing their agreement to abide by the terms of a protective order provides zero protection. Defendants could reveal Plaintiffs' identities, and the potential witness could simply refuse to agree to the protective order. The terms of the Joint Interim Protective Order should be followed, namely, anyone to whom Defendants disclose Identifying Information must agree to be bound to the Interim Protective Order, which helps protect further disclosure of Plaintiffs' identities. Dkt. 47 at ¶ 5. Vince McMahon already agreed to that.

- Excluding from a protective order witnesses identified by Plaintiffs would largely achieve nothing. The Complaint identifies many potential witnesses and any additional witnesses identified by Plaintiffs will likely be disclosed through formal discovery or through informal witness disclosures. Assuming Plaintiffs provide comprehensive witness identification, then most, if not all, potential witnesses in the case would automatically be exempted from the terms of the protective order. Such a large exception would swallow the purpose of the protective order.

- Restricting Plaintiffs and their counsel from making public statements and/or press releases during the litigation is an unjustified and inappropriate gag order, especially when separate counsel for the McMahons have also given media comment. *See supra* n. 7; *In re Murphy-Brown, LLC*, 907 F.3d 788, 797-801 (4th Cir. 2018) ("gag orders are presumptively unconstitutional" and must survive strict scrutiny by serving a compelling public interest, being the least restrictive means, and being narrowly tailored). Vince McMahon does not even attempt to meet that standard.

Plaintiffs have no objection to Vince McMahon's request for a provision allowing for the Parties to request modification of the protective order should the need arise, and Plaintiffs have no objection to the Court including any other provisions that it deems just and proper for the benefit of all Parties, particularly Plaintiffs' concerns of the highest order. *Sidar*, 93 F.4th at 248-49.

## II. CONCLUSION

Weighing all of the *James* factors: the first two factors strongly support allowing Plaintiffs to proceed under pseudonyms, the third and fourth factors have little impact, and the fifth factor supports Plaintiffs' motion. Just like other cases in this Circuit and District involving allegations of sexual misconduct, Plaintiffs here should be allowed to continue proceeding under pseudonyms. The Court should reject the McMahons' transparent attempt to intimidate and shame survivors of childhood sexual abuse by forcing them to publicly reveal their identities. Plaintiffs respectfully request that the Court grant their motion to (1) continue proceeding under pseudonyms; (2) omit their home addresses; and (3) order the Parties to submit an agreed protective order (or counter proposals) governing the use of Identifying Information in discovery and the balance of this case.

Dated: February 9, 2026	*/s/ William H. Murphy, Jr.*

William H. "Billy" Murphy, Jr. (# 07985)
Phylecia R. Faublas (# 30435)
**MURPHY, FALCON & MURPHY**
1 South Street, Suite 3000
Baltimore, Maryland 21202
Telephone: (410) 951-8750
billy.murphy@murphyfalcon.com
phylecia.faublas@murphyfalcon.com

Greg G. Gutzler
Emma Bruder
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, New York 10017
Telephone: (646) 933-1000
ggutzler@dicellolevitt.com
ebruder@dicellolevitt.com

Adam Prom
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
aprom@dicellolevitt.com

Mark A. DiCello
Robert F. DiCello
**DICELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, OH  44060
Telephone: (440) 953-8888
madicello@dicellolevitt.com
rfdicello@dicellolevitt.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 9th day of February 2026, I caused a copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system and electronic notification of such filing is sent to all CM/ECF participants and counsel of record.

                                          */s/ William H. Murphy, Jr.*
                                          William H. "Billy" Murphy, Jr.