**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOHN DOE 1, ET AL., | * | |
| *Plaintiffs*, | * | |
| v. | * | |
| | | No. 1:24-cv-03487-JKB |
| WORLD WRESTLING | * | |
| ENTERTAINMENT, LLC, ET AL., | * | |
| *Defendants*. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**INTERVENOR ATTORNEY GENERAL OF MARYLAND'S
LIMITED OPPOSITION TO DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

Page

ARGUMENT.................................................................................................................... 1

I.     STANDARD OF REVIEW .................................................................................... 2

II.    THE COURT SHOULD DENY DEFENDANTS' MOTION FOR JUDGMENT ON THE
       PLEADINGS BECAUSE THE CHILD VICTIMS ACT'S CHANGE TO THE STATUTE
       OF LIMITATIONS COMPORTS WITH DUE PROCESS AND THE EX POST FACTO
       CLAUSE. ................................................................................................................ 3

       A.     The Act's Change to the Statute of Limitations Comports with Due
              Process Because It Has a Rational Basis......................................................... 3

              1.     The Court Should Apply Rational Basis Review to Determine
                     Whether the Act Comports with Due Process..................................... 3

              2.     The Act's Change to the Statute of Limitations Has a Rational
                     Basis Because the General Assembly Enacted It to Address an
                     Important Issue Related to Victims of Child Sexual Abuse. ............. 6

              3.     Defendants' Preferred Due Process Test Conflicts with Fourth
                     Circuit Precedent ............................................................................... 9

              4.     Defendants' Due Process Challenge on Jurisdictional Grounds
                     Fails Because the Act Is Non-Jurisdictional and the Court Has
                     Already Ruled on Specific Jurisdiction............................................ 11

       B.     The Act Does Not Violate the Ex Post Facto Clause Because It Is Civil
              and Not Punitive. .......................................................................................... 12

              1.     The Text of the Act Shows That It Is Intended to Be a Civil and
                     Nonpunitive Law.............................................................................. 13

              2.     The Act is Not Punitive in Effect Under the Mendoza-Martinez
                     Factors. ............................................................................................ 14

                     a.     The Act Has a Rational Connection to a Nonpunitive
                            Purpose (Factor 6).................................................................. 15

                     b.     The Act Facilitates Suits for Tort Liability that Are Not
                            Historically Regarded as Punishment (Factor 2). ................. 16

c.    The Act is Not Excessive with Respect to Its Purpose (Factor 7). ............................................................... 17

d.    The Act Imposes No Affirmative Disability or Restraint (Factor 1). ............................................................... 18

e.    The Act Does Not Promote the Traditional Aims of Punishment (Factor 4). ........................................... 19

f.    Factor 3 (Scienter) and Factor 5 (Behavior that Is Already a Crime) Carry Little Weight Here ......................... 20

C.    The Court Should Decline Defendants' Invitation to Break from Longstanding Precedent Regarding the Scope of the Ex Post Facto Clause. ............................................................................... 21

CONCLUSION ................................................................................. 22

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JOHN DOE 1, ET AL., | * |
|      *Plaintiffs*, | * |
|      v. | * |
| |   No. 1:24-cv-03487-JKB |
| WORLD WRESTLING | * |
| ENTERTAINMENT, LLC, ET AL., | |
|      *Defendants*. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**INTERVENOR ATTORNEY GENERAL OF MARYLAND'S
LIMITED OPPOSITION TO DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS**

**ARGUMENT**

The Child Victims Act's removal of the former time limitation in Courts and Judicial Proceedings § 5-117(b) for civil actions related to child sexual abuse is constitutional under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Ex Post Facto Clause of Article I, § 10 of the U.S. Constitution. Fourth Circuit precedent dictates that a retroactive amendment to a statute of limitations that is supported by a rational basis comports with the Due Process Clause.  Here, the Child Victims Act (the "Act")[1] has a rational basis:  it addressed the important problem of child sexual abuse claims that were not pursued during the then-applicable limitations period

---

[1] 2023 Md. Laws ch. 5 (S.B. 686), codified at Md. Code Ann., Cts. & Jud. Proc. § 5-117, *available at* https://perma.cc/GE8U-XC3S.

through no fault of the victims.  And the Act has withstood review by the Supreme Court of Maryland under the Maryland courts' more rigorous "heightened rational basis" test for retroactive legislation.  Thus, the Court should reject Defendants' argument that the Act's change in the statute of limitations, as applied to them, amounts to a due process violation.

Defendants' Ex Post Facto Clause arguments fare no better.  The text of the Act shows that the General Assembly intended to enact a nonpunitive law that allows for civil judicial actions.  And application of the *Mendoza-Martinez* factors shows that the Act is nonpunitive in effect.  Finally, Defendants invite the Court to ignore hundreds of years of precedent that narrowly defines the scope of the Ex Post Facto Clause.  Under the principles of *stare decisis*, the Court should decline that invitation.

## I.    STANDARD OF REVIEW

The standard of review for Rule 12(c) motions "mirrors that of Rule 12(b)(6) motions." *Ctr. for Excellence in Higher Educ., Inc. v. Accreditation All. of Career Schs. & Colleges*, 166 F.4th 452, 457 (4th Cir. 2026) (citing *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014)).  Such motions "'should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).

II.     **THE COURT SHOULD DENY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS BECAUSE THE CHILD VICTIMS ACT'S CHANGE TO THE STATUTE OF LIMITATIONS COMPORTS WITH DUE PROCESS AND THE EX POST FACTO CLAUSE.**

A.     **The Act's Change to the Statute of Limitations Comports with Due Process Because It Has a Rational Basis.**

The General Assembly enacted the Child Victims Act to address the important problem of child sexual abuse claims that were not pursued during the then-applicable limitations period through no fault of the victims. Thus, the Act has a rational basis and does not violate the Due Process Clause. Only by ignoring binding Fourth Circuit precedent do Defendants contend that the Act's change to the statute of limitations is unconstitutional because it imposes "special hardships" and "oppressive effects" on them. In truth, such hardships or effects are insufficient to render the Act's change to the statute of limitations unconstitutional because the Act has a rational basis. Finally, the Court has already ruled on Defendants' due process arguments regarding personal jurisdiction, and there is no cause to reconsider that ruling now.

1. **The Court Should Apply Rational Basis Review to Determine Whether the Act Comports with Due Process.**

When analyzing whether amendments to statutes of limitation or repose comport with the Due Process Clause, "the relevant inquiry is whether or not the legislation serves a legitimate legislative purpose that is furthered by rational means." *Shadburne-Vinton v. Dalkon Shield Claimants Tr.*, 60 F.3d 1071, 1076 (4th Cir. 1995) (citing *United States v. Monsanto Co.*, 858 F.2d 160, 174 (4th Cir.1988), *cert. denied*, 490 U.S. 1106 (1989)). In *Shadburne-Vinton*, the Fourth Circuit upheld an amendment to an Oregon statute of repose

3

concerning injuries from intrauterine devices.  Based on a series of U.S Supreme Court opinions, the Fourth Circuit applied the rational basis test to determine whether the amended statute of repose violated the Due Process Clause.  60 F.3d at 1075-77 (citing *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15-16 (1976) ("the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way."); *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 728-30 (1984) (applying rational basis standard to retroactive pension legislation); and *General Motors Corp. v. Romein,* 503 U.S. 181, 191 (1992) (for retroactive state legislation to comport with due process, it must serve a legitimate legislative purpose that is furthered by rational means)).

Applying the rational basis test, the Fourth Circuit upheld the Oregon statute of repose despite its express retroactive effect.  *Shadburne-Vinton*, 60 F.3d at 1077.  The court explained:

> After extensive hearings on the legislation, the Oregon legislature determined that retroactive application of the Special IUD Statute was fair and equitable to all parties involved.  Because many of the women suffered injuries from the IUD in the early to mid 1970s, and the link between the IUD and the injuries it caused was not discovered until the early 1980s, the unamended statute of repose barred the claims of many women.

*Id.*  On that basis, the Court found that the legislation "serves a legitimate legislative purpose that is furthered by rational means," and thus comports with the Due Process Clause. *Id.*

The Fourth Circuit is not unique in applying the rational basis test to determine whether statutes of limitations comport with due process; many other jurisdictions apply

4

the same test.  *See, e.g.*, *Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086, 1099-1100 (9th Cir. 2003) (concluding that a California statute of limitation that revived insurance claims passed rational review and, therefore, comported with due process because it was enacted to give relief to earthquake victims); *Wesley Theological Seminary of the United Methodist Church v. U.S. Gypsum Co.*, 876 F.2d 119, 122 (D.C. Cir. 1989) (concluding that a District of Columbia statute of repose comported with due process because it was not irrational "for the District to decide that the losses due to defects in building materials discovered long after installation should fall on the supplier rather than the building's owner."); *Quintanilla v. Roman Cath. Archbishop of Agana*, No. CV 17-00011, 2021 WL 11629867, at *5 (D. Guam Mar. 22, 2021) ("federal courts review constitutional challenges to statutes that revive otherwise time barred actions using the rational basis test to determine whether the retroactive impact of a statute would have changed settled expectations or are wholly unexpected, harsh, and oppressive."); *Abecassis v. Wyatt*, No. CIV.A. H-09-3884, 2013 WL 5231543, at *4 (S.D. Tex. Sept. 16, 2013) ("Given Congress's explicit intent and defendants' failure to show that the amendment is not supported by a rational legislative purpose, the court finds that the amendment to the [Anti–Terrorism Act] extending the statute of limitations to ten years is constitutional and applies to plaintiffs' claims."); *In re Individual 35W Bridge Litig.*, 806 N.W.2d 820, 833 (Minn. 2011) (upholding, under the rational basis test, an amendment to a statute of repose that revived a reimbursement claim related to a bridge collapse).

**2. The Act's Change to the Statute of Limitations Has a Rational Basis Because the General Assembly Enacted It to Address an Important Issue Related to Victims of Child Sexual Abuse.**

Under rational basis review, courts begin with a presumption of constitutionality. *Heller v. Doe by Doe*, 509 U.S. 312, 319-20 (1993) (citations omitted).  The showing required to overturn this "powerful presumption of validity" is "steep."  *Doe v. Settle*, 24 F.4th 932, 943 (4th Cir. 2022) (citations omitted).  "'[T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.'" *Heller*, 509 U.S. at 320-21 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364 (1973)).  "A challenger must show there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *Settle*, 24 F.4th at 943 (quoting *Heller*, 509 U.S. at 320).

As discussed in the Supreme Court of Maryland's decision in *Roman Catholic Archbishop of Washington v. Doe,* 489 Md. 514, 571-75 (2025), the Child Victims Act's change to the statute of limitations on certain child sex abuse claims serves a legitimate legislative purpose that is furthered by rational means.  The General Assembly enacted that change to address an important issue:  it "was presented with a growing body of evidence that many individuals do not disclose abuse until well into adulthood but still suffer life-long emotional, psychological, and physical health issues resulting from the abuse." *Id.* at 571.  Based on such evidence, the General Assembly reopened the statute of limitations to address the "numerous child sexual abuse claims . . . [that] were never pursued during the then-applicable limitations period through no fault of the victims and too often based at

6

least in part on efforts of both perpetrator and non-perpetrator defendants to hide the misconduct." *Id.* "In other words, the existing statute of limitations did not reflect the reality of the time in which a reasonably diligent victim of child sexual abuse should be expected to pursue a claim." *Id*. (citation omitted).

The means by which the General Assembly addressed that problem, *i.e.*, by amending Courts and Judicial Proceedings § 5-117(b) to retroactively remove the limitation period for claims related to child sexual abuse, was rational. "Based on the evidence before the General Assembly concerning the historical prevalence of child sexual abuse, prior cover-ups, and significantly delayed reporting by victims well beyond the [former] 20-year window . . . , the elimination of the statute of limitations in the 2023 Act bore a real and substantial relation to the problem being addressed." *Id.* at 574. Thus, the Child Victims Act's change to the statute of limitations is a rational means of addressing a legitimate legislative purpose.

Based on state constitutional law, the Supreme Court of Maryland reviewed the change to the statute of limitations under a "heightened rational basis" standard, which is more rigorous that the rational basis review standard that applies here. *See id.* at 569-71. Under Maryland's heightened rational basis standard, the statute "'must bear a real and substantial relation to the problem addressed by the statute.'" *Id.* at 569-70 (quoting *Pizza di Joey, LLC v. Mayor of Baltimore*, 470 Md. 308, 348 (2020) (citation omitted and quotation marks removed)). Given the purpose of and basis for the Act's change to the statute of limitations, the Supreme Court of Maryland "readily conclude[d]" that it "bears

a real and substantial relation to the problem it addressed." *Roman Cath. Archbishop of Washington*, 489 Md. at 571.

Given the compelling interests involved, it is unsurprising that other courts have reached the same conclusion when reviewing similar amendments to statutes of limitation for civil child sex abuse claims. *See*, *e.g.*, *Quintanilla v. Roman Cath. Archbishop of Agana*, No. CV 17-00011, 2021 WL 11629867, at *5 (D. Guam Mar. 22, 2021) ("the Guam Legislature's retroactive application of [the amended statute of limitation] does not violate [d]efendant's due process rights because it is a rational response by the legislature to the exceptional circumstances and potential for injustice faced by adults who fell victim to sexual abuse as children."); *Doe v. Hartford Roman Cath. Diocesan Corp.*, 317 Conn. 357, 441-42 (2015) ("Given the unique psychological and social factors that often result in delayed reporting of childhood sexual abuse, which frustrated the ability of victims to bring an action under earlier revisions of the statute of limitations, we cannot say that the legislature acted unreasonably or irrationally in determining that the revival of child sexual abuse victims' previously time barred claims serves a legitimate public interest and accomplishes that purpose in a reasonable way."); *PC-41 Doe v. Poly Prep Country Day Sch.*, 590 F. Supp. 3d 551, 565 (E.D.N.Y. 2021) (holding that New York State's Child Victims Act comports with the New York due process clause because the legislation was "reasonable and not arbitrary in light of the identified injustice").

8

### 3. Defendants' Preferred Due Process Test Conflicts with Fourth Circuit Precedent

Despite controlling precedent from the Fourth Circuit, discussed above, Defendants' brief ignores the rational basis test entirely. Instead, Defendants insist that the Court find that the Child Victims Act's amendment to the statute of limitations violates due process because of alleged "special hardships" and "oppressive effects" suffered by Defendants.

The main case that Defendants cite in support of their preferred test is *Chase Securities Corporation v. Donaldson*, 325 U.S. 304 (1945), *see* Defs. Mem., Dkt. No. 93-1, at 11, which the Fourth Circuit examined in *Shadburne-Vinton*. After comparing *Chase* and two antecedent Supreme Court opinions, *Campbell v. Holt*, 115 U.S. 620 (1885) and *William Danzer & Co. v. Gulf & Ship Island R.R.*, 268 U.S. 633 (1925), to the Supreme Court's more modern opinions in *Usery*, *Pension Benefit*, and *General Motors*, the Fourth Circuit concluded that the "the analysis used by the Court in *Danzer*, *Chase*, and *Campbell* is outdated and no longer valid for purposes of analyzing the constitutionality of retroactive legislation." *Shadburne-Vinton*, 60 F.3d at 1076; *accord Wesley Theological*, 876 F.2d at 122 (suggesting that *Chase* may be defunct in the wake of *Usery* and *Pension Benefit*). Thus, *Chase* has been overtaken by more recent Supreme Court precedents.

Defendants also cite *Grice v. Colvin*, 97 F. Supp. 3d 684 (D. Md. 2015), which concerned, *inter alia*, alleged constitutional violations stemming from the Social Security Administration taking a portion of the plaintiff's tax refund after the government revised a regulation to retroactively reopen the limitations period for debt collection by tax offset.

9

The reasoning of *Grice*, however, is not robust.  Concerning the plaintiffs' due process challenge, Judge Hazel cited *Chase* in stating that "'[s]pecial hardships' or 'oppressive effects' may be present where an individual took a course of action on the assumption that the limitations period would continue or, conversely, an individual would have taken a different course of action if a change in the limitations period could have been foreseen." *Grice*, 97 F. Supp. 3d at 709 (citing *Chase*, 325 U.S. at 316).

Notably, *Shadburne-Vinton* is not mentioned in *Grice*; Judge Hazel did not explain his apparent break with Fourth Circuit precedent.  The only cases, other than *Chase*, that are cited in the court's discussion of potential "special hardships" or "oppressive effects" are (i) *In re Perkins*, No. 03-80777C-7D, 2004 WL 3510116, at *3 (Bankr. M.D.N.C. May 20, 2004), a bankruptcy case concerning whether a debtor had demonstrated an "undue hardship" under Section 528(a)(8) of the Bankruptcy Code, 11 U.S.C. § 523(a)(8), to qualify for discharge of student loan debt; and (ii) a footnote from the dissent to *San Diego Gas & Elec. Co. v. City of San Diego*, 450 U.S. 621, 643 n.7 (1981), concerning a "burdensome and oppressive" taking of land without compensation.  *Grice*, 97 F. Supp. 3d at 709.  Neither case is relevant to the question of whether an amendment to a statute of limitations comports with the Due Process Clause.  Given *Grice*'s silence regarding *Shadburne-Vinton*, the Court should afford it little weight.[2]

---

[2] Like in *Grice*, the district court in *United States v. Charles*, 240 F. Supp. 2d 488, 489 (M.D.N.C. 2002), which is cited on page 13 of Defendants' brief, Dkt. No. 93-1, at 13, applied a "special hardships or oppressive effects" test by citing *Chase*, without mentioning or grappling with *Shadburne-Vinton*.

The other cases cited by Defendants, *see* Defs. Mem. at 11-13, lend no support for their proposed due process test.  In fact, in *Temple-Inland, Inc. v. Cook*, 192 F. Supp. 3d 527, 541 (D. Del. 2016) the court expressly recognized that a due process challenge to a legislative enactment, unlike the executive action that was challenged in that case, is subject to "rational basis review."  And *Stogner v. California*, 539 U.S. 607 (2003) concerns the Ex Post Facto Clause as applied to a criminal statute of limitations permitting prosecution for sex-related child abuse where the prior limitations period had expired.  The Due Process Clause is scarcely mentioned in the majority's opinion in *Stogner*.

In sum, the cases cited by Defendants do not support the application of their preferred test.  Instead, the Court should follow *Shadburne-Vinton* and uphold the Child Victims Act's amendment to the statute of limitations because it passes rational basis review.

### 4. Defendants' Due Process Challenge on Jurisdictional Grounds Fails Because the Act Is Non-Jurisdictional and the Court Has Already Ruled on Specific Jurisdiction.

Defendants' jurisdictional arguments are incorrect and duplicative of arguments that the Court has already addressed.  The Child Victims Act eliminated time limitations in Courts and Judicial Proceedings § 5-117(b) for civil actions related to child sexual abuse. Like most limitations statutes, nothing in § 5-117(b), as amended by the Act, purports to authorize personal jurisdiction.  Nevertheless, Defendants argue that the Act transgresses "due process limits as applied here if it is interpreted to authorize personal jurisdiction over Defendants for the non-Maryland-based conduct alleged in the Complaint."  Defs. Mem., Dkt. No. 93-1, at 15.  Because the Child Victims Act is not a jurisdictional law, in truth

Defendants' quarrel is with the "minimum contacts" test for personal jurisdiction. *See Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 138 (4th Cir. 2020) ("[t]he Due Process clause permits the exercise of specific personal jurisdiction over a defendant if 'the defendant [has] purposefully established minimum contacts in the forum State such that it should reasonably anticipate being haled into court there.'" (quoting *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016))). The Court disposed of Defendants' same arguments seven months ago, *see* Dkt. No. 66 at 24-28 & 39, and there is no cause to reconsider them now. *See Urb. v. Fed. Home Loan Mortg. Corp.*, No. CV 11-10915-TSH, 2013 WL 12617531, at *2 (D. Mass. July 15, 2013) (denying, under law of the case doctrine, a defendant's Rule 12(c) motion that raised substantially the same arguments that the defendant raised in its prior Rule 12(b) motion).

> **B.**    **The Act Does Not Violate the Ex Post Facto Clause Because It Is Civil and Not Punitive.**

The Ex Post Facto Clause, Article I, § 10 of the U.S. Constitution, bars laws that "'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *United States v. O'Neal*, 180 F.3d 115, 121 (4th Cir. 1999) (quoting *Collins v. Youngblood*, 497 U.S. 37, 43 (1990)). "While laws that retroactively increase 'punishment' or impose a 'penalty' violate the *Ex Post Facto* Clause, retroactive civil or regulatory ones do not." *Id.* at 122 (citations omitted). The Supreme Court has developed a two-pronged inquiry to determine whether a challenged law imposes punishment. *Nat'l Ass'n for Rational Sexual Offense L. v. Stein*, 112 F.4th 196, 202 (4th Cir. 2024) (citing *Smith v. Doe*, 538 U.S. 84, 92 (2003)).

The framework for that two-pronged inquiry is "well established." *Smith*, 538 U.S. at 92. First, the Court considers whether the legislature meant the statute to establish "'civil' proceedings." *Nat'l Ass'n*, 112 F.4th at 202 (quoting *Smith*, 538 U.S. at 92). If the "'intention of the legislature was to impose punishment, that ends the inquiry.'" *Id.* But if the legislature intended to "'enact a regulatory scheme that is civil and nonpunitive'" the Court proceeds to the second step, where the Court evaluates "whether the statute is 'so punitive either in purpose or effect as to negate the State's intention to deem it civil.'" *Id.* Because courts ordinarily defer to the legislature's stated intent, "'only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.*

Because the General Assembly intended the Child Victims Act's change to the statute of limitations to be a civil and non-punitive law and the Act is not punitive in effect, it does not violate the Ex Post Facto Clause.

### 1. The Text of the Act Shows That It Is Intended to Be a Civil and Nonpunitive Law.

The first step in the two-pronged inquiry is an exercise in statutory construction. *Smith*, 538 U.S. at 92 (citations omitted). While affording "considerable deference" to the intent of the legislature, the Court considers "the statute's text and its structure to determine the legislative objective." *Id.* at 92-93 (2003) (citing *Flemming v. Nestor,* 363 U.S. 603, 617 (1960)). Here, the text of the Child Victims Act expressly states that it is:

> FOR the purpose of altering the definition of "sexual abuse" for purposes relating to *civil actions* for child sexual abuse; establishing certain limitations on damages that may be awarded under this Act; repealing the statute of limitations in certain *civil actions* relating to child sexual abuse; repealing a

statute of repose for certain *civil actions* relating to child sexual abuse; providing that a certain party may appeal an interlocutory order under certain circumstances; providing for the retroactive application of this Act under certain circumstances; and generally relating to child sexual abuse.

2023 Md. Laws ch. 5 (S.B. 686) (emphasis added).  The General Assembly's stated purpose targets "civil actions" for child sexual abuse; the term "civil actions" appears three times. These express statements indicate that the legislature intended the Act to be a civil and nonpunitive law.  *See Nat'l Ass'n*, 112 F.4th at 203 (express statement by North Carolina legislature concerning the intent of its sex offender registration statute "intended the registry to be a civil, nonpunitive scheme") (citations omitted).

Here, Defendants do not appear to contest that the General Assembly intended for the Child Victims Act to be a civil and nonpunitive statute.  Rather, they argue, incorrectly, that the effect of the Act is punitive.  *See* Defs. Mem. at 18-23.

### 2.  The Act is Not Punitive in Effect Under the *Mendoza-Martinez* Factors.

Courts balance the seven *Mendoza-Martinez* factors to assess whether a law has a punitive effect.  *Settle*, 24 F.4th at 947-48.  The seven factors are:

(1) whether the sanction involves an affirmative disability or restraint;

(2) whether it has historically been regarded as a punishment;

(3) whether it comes into play only on a finding of scienter;

(4) whether its operation will promote the traditional aims of punishment—
retribution and deterrence;

(5) whether the behavior to which it applies is already a crime;

14

(6) whether an alternative purpose to which it may rationally be connected is assignable for it, and

(7) whether it appears excessive in relation to the alternative purpose assigned.

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963).   At least four factors, including the most significant factor, weigh in favor of finding that the Child Victims Act is not punitive in effect.

### a.  The Act Has a Rational Connection to a Nonpunitive Purpose (Factor 6)

The "'most significant factor'" is whether the challenged law has a rational connection to a nonpunitive purpose, *Nat'l Ass'n*, 112 F.4th at 205 (quoting *Smith*, 538 U.S. at 102), and here this factor militates against the conclusion that the Child Victims Act is punitive.  As discussed above in Argument II.A.2, the General Assembly enacted the Act to address the important problem of child sexual abuse claims that were not pursued during the then-applicable limitations period through no fault of the victims.  *Roman Cath. Archbishop of Washington v. Doe*, 489 Md. 514, 571 (2025).  The elimination of the statute of limitations, by enacting the Act, bore not just a "rational connection" but indeed a "real and substantial relation" to the problem being addressed.  *Id.* at 574.  Therefore, this factor does not show the Act is punitive in effect.

Defendants are wrong to ascribe a punitive effect to the Act based on its definition of "sexual abuse," which references criminal sexual offenses.  *See* Defs. Mem. at 22.  The mere reference to a crime in a civil statute does not make such statute punitive.  *See Simmons v. Galvin*, 575 F.3d 24, 45 (1st Cir. 2009) (the fact that a law barring felons from

15

voting "may be 'tied to criminal activity' is 'insufficient to render the statut[e] punitive.'" (quoting *Ursery,* 518 U.S. at 291)).  In fact, courts have found that civil statutes with far greater linkages to criminal schemes are nonpunitive because the "*Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences."  *Smith*, 538 U.S. at 103 (Alaska's sex offender registry law found to be nonpunitive despite connection to criminal law); *see also*, *e.g.*, *Nat'l Ass'n*, 112 F.4th 196, 204 (4th Cir. 2024) (finding North Carolina's sex offender registry law to be nonpunitive despite the fact that the registration statute is codified in North Carolina's criminal code); *O'Neal*, 180 F.3d at 124 (concluding that a North Carolina law that deprived felons of the right to possess firearms for five years post-conviction is nonpunitive).

### b.  The Act Facilitates Suits for Tort Liability that Are Not Historically Regarded as Punishment (Factor 2).

In enacting the Child Victims Act, the General Assembly removed the limitations period for "an action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor."  2023 Md. Laws ch. 5 (S.B. 686).  So the Act allows for private litigation of tort claims, which are nonpunitive.  *See Lundeen v. Canadian Pac. R. Co.*, 532 F.3d 682, 691 (8th Cir. 2008) (holding that the Ex Post Facto Clause had no application to amendment of statute that affected "negligence actions brought by injured parties against railroads" because "such actions are inherently civil in nature."); *Logan v. Drew*, 790 F. Supp. 181, 183 (N.D. Ill. 1992) (stating that 42 U.S.C. § 1983 created a type of tort liability and is thus "not a criminal statute and does not

16

implicate the ex post facto clause." (citation omitted)).  And it has been observed that "[n]o reported decision of any federal or state court has ever held that punitive damages awarded pursuant to a common law tort claim might constitute criminal punishment under the ex post facto clause." *Roman Cath. Bishop of Oakland v. Superior Ct.*, 128 Cal. App. 4th 1155, 1165 (2005).  "[P]unitive damages arising from common law causes of action possess and retain a quintessentially civil flavor" that "keeps them outside the zone of . . . the ex post facto clause." *Id.* at 1169.

Defendants insist that this factor weighs in their favor because the "conduct to which the [Child Victims Act] is expressly tethered has long been understood as the proper subject of criminal punishment."  Defs. Mem. at 19.  As explained above in connection with Factor 6, however, linkages between a civil law and a criminal framework do not make the civil law punitive.  It is instructive to compare the Child Victims Act to the sex offender registration law that was found to be punitive in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), a case that Defendants cite extensively, *see* Defs. Mem. at 20-21, 23.  Under that law "registrants are subject to numerous restrictions on where they can live and work and, much like parolees, they must report in person, rather than by phone or mail." *Snyder*, 834 F.3d at 703.  The Child Victims Act imposes no such restrictions, so this factor weighs in favor of finding the Act nonpunitive.

### c. The Act is Not Excessive with Respect to Its Purpose (Factor 7).

Defendants assert that the Child Victims Act is excessive because it exposes them to civil claims for alleged abuse that occurred decades ago.  Defs. Mem. at 22.  The

excessiveness inquiry in this factor, however, "is not about second-guessing the legislature's choice of solution." *Settle*, 24 F.4th at 949. Instead, courts ask "whether the chosen means are 'reasonable in light of the nonpunitive objective.'" *Id.* (quoting *Smith*, 538 U.S. at 105). This factor is like the rational basis test and affords deference to the legislature. *Settle*, 24 F.4th at 949; *Nat'l Ass'n*, 112 F.4th at 206 (citation omitted). As discussed above in Argument II.A.2, the Child Victims Act bears a "real and substantial relation" to the problem being addressed, *Roman Cath. Archbishop of Washington*, 489 Md. at 574, so it is not excessive.

### d. The Act Imposes No Affirmative Disability or Restraint (Factor 1).

Here, like the sex offender registration law at issue in *Smith*, the "[t]he Act imposes no physical restraint and does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." 538 U.S. at 100 (citation omitted). Nor does it impose any lesser restraints (on Defendants or anyone else), such as occupational debarment or reporting requirements, which the Supreme Court has confirmed are nonpunitive. *Id.* at 100-102. Nor does the Act temporarily withhold any constitutional right from Defendants, like the firearm law that the Fourth Circuit found to be nonpunitive in *O'Neal*. *See* 180 F.3d at 124 ("although the law does impose an 'affirmative disability,' . . . on felons, it is a mild one, far less onerous than many others that the Court has upheld as not constituting 'punishment.'" (citations omitted)).

**e. The Act Does Not Promote the Traditional Aims of Punishment (Factor 4).**

Courts give this factor "very little weight," *Nat'l Ass'n*, 112 F.4th at 209; *see also Snyder*, 834 F.3d at 704, and mere "wisps of deterrence and retribution" are insufficient to show punitive intent. *Nat'l Ass'n*, 112 F.4th at 210 (citing *Settle*, 24 F.4th at 952). The Supreme Court observed in *Smith* that "[a]ny number of governmental programs might deter crime without imposing punishment." 538 U.S. at 102. If the mere presence of a deterrent purpose were to transform civil laws into criminal laws, the government's ability to engage in effective regulation would be severely undermined. *Id.* (citing *Hudson v. United States*, 522 U.S. 93, 105 (1997)).

As discussed above, the Child Victims Act allows victims of child sexual abuse to file civil actions that would otherwise be time-barred in order to seek damages for their injuries. Tort claims like these are "inherently civil in nature," *cf. Lundeen*, 532 F.3d at 691. Any wisps of retribution or deterrence that arise from such civil suits are insubstantial and ancillary to the intent of the Act.

Defendants analogize this case to *Snyder*, where a sex offender registration law "retroactively required convicted sex offenders to register on a public database, report in person to law enforcement, and comply with restrictions barring them from living, working, or loitering near a school." Defs. Mem. at 20 (citing *Snyder*, 834 F.3d at 697-98, 706). But the Child Victims Act does none of those things, and even if it did, the Supreme Court and the Fourth Circuit have upheld sex offender registry laws with similar nonpunitive effects. *See Smith*, 538 U.S. at 105-06; *Nat'l Ass'n*, 112 F.4th at 210-11.

19

### f. Factor 3 (Scienter) and Factor 5 (Behavior that Is Already a Crime) Carry Little Weight Here

In the context of sexual offender registry laws, the Supreme Court has stated that the third factor (regarding a finding of scienter) and the fifth factor (regarding behavior that is already a crime) are of "little weight" because the "regulatory scheme applies only to past conduct, which was, and is, a crime." *Smith*, 528 U.S. at 105; *see also Settle*, 24 F.4th at 947-48 n.13. For the same reason, the Court should afford these factors little weight in considering whether the Child Victims Act is punitive. That is particularly true here, where Defendants are alleged to have breached a tort-law duty.[3] *See Roman Cath. Bishop of Oakland*, 128 Cal. App. 4th at 1171 (finding that the section of revival statute at issue "applies to those who violated a tort-law duty to safeguard others from the molester" and thus the defendant's "liability does not rest on any criminal violations"). Moreover, the Act itself contains no scienter requirement, and no scienter requirement should be imputed to the Act based on its definition of "sexual abuse." *See Hopkins v. Watson*, 108 F.4th 371, 387 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1138 (2025) (rejecting, in a *Mendoza-Martinez* factor analysis, an "attempt to bootstrap the fact that the crimes listed in [challenged felony disenfranchisement law] have scienter requirements into an argument that [challenged law] *itself* has a scienter requirement" (emphasis in original)).

---

[3] Plaintiffs' amended complaint asserts two causes of action: (i) negligence against all defendants and (ii) negligent hiring, training, and retention against all defendants. Dkt. No. 55 ¶¶ 338-393.

In sum, the Child Victims Act is not punitive in effect under the *Mendoza-Martinez* factors, and Defendants have failed to show by the "clearest proof," *see Smith*, 538 U.S. at 92 & 105, cause for the Court to override the nonpunitive intent of the Act.

**C.    The Court Should Decline Defendants' Invitation to Break from Longstanding Precedent Regarding the Scope of the Ex Post Facto Clause.**

Defendants implore the Court to discard settled law and expand the scope of the Ex Post Fact Clause based on so-called "historical evidence" and the concurrence of Justice Thomas in *Ellingburg v. United States*, 607 U.S. 163, 178-86 (2026).  *See* Defs. Mem. at 24-27.  For over a century, however, the meaning of the Ex Post Facto Clause has been considered "'settled, by decisions of [the Supreme] Court so well known that their citation may be dispensed with.'"  *See Collins v. Youngblood*, 497 U.S. 37, 42-43 (1990) (quoting *Beazell v. Ohio,* 269 U.S. 167, 169-70 (1925)).  There is no reason for the Court to break with that settled law.

Indeed, stare decisis requires the Court to follow precedents like the well-established framework, *see Smith*, 538 U.S. at 92, for this Ex Post Facto Clause inquiry. This Court has recognized that a district court "owes obedience" to the decisions of the court of appeals in that circuit and is bound to follow the circuit court's prior decisions. *Eline v. Town of Ocean City, Md.*, 452 F. Supp. 3d 270, 281 (D. Md. 2020), *aff'd sub nom. Eline v. Town of Ocean City, Maryland*, 7 F.4th 214 (4th Cir. 2021) (citing *Jones v. Tyson Foods, Inc.*, 378 F. Supp. 2d 705, 709 (E.D. Va. 2004), *aff'd sub nom. Jones v. Tyson Foods*, 126 F. App'x 106 (4th Cir. 2005)).  Stare decisis ensures that law develops in a "principled and intelligible fashion" rather than "erratically."  *Vasquez v. Hillery*, 474 U.S.

21

254, 265 (1986). It is such a fundamental doctrine that "[t]he rule of law depends in large part on adherence" to it. *Welch v. Texas Dept. of Highways and Public Transp.*, 483 U.S. 468, 478-79 (1987). Any departure from stare decisis "'demands special justification.'" *Id.* (quoting *Arizona v. Rumsey*, 467 U.S. 203, 212 (1984)). No such departure is warranted here.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion for judgment on the pleadings to the extent it alleges that the Child Victims Act violates the Due Process Clause or the Ex Post Facto Clause.

<div style="margin-left: 50%;">

ANTHONY G. BROWN
Attorney General of Maryland

*/s/ Andrew W. Keir*
ANDREW W. KEIR
Federal Bar No. 29607
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
akeir@oag.maryland.gov
(410) 223-1576
(410) 576-6995 (facsimile)

</div>

June 26, 2026

*Attorneys for Intervenor Attorney General of Maryland*

22

23

## CERTIFICATE OF SERVICE

I certify that on June 26, 2026, I served the foregoing by CM/ECF on all registered CM/ECF users.

/s/ Andrew W. Keir
ANDREW W. KEIR
Federal Bar No. 29607

23