**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JOHN DOE 1, et al., <br><br>        Plaintiffs, <br><br>       v. <br><br> WORLD WRESTLING ENTERTAINMENT, LLC, et al., <br><br>        Defendants. | Civil Action No. 1:24-cv-3487-JKB |

**<u>DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I.      The Child Victims Act Violates the Due Process Clause as Applied to Defendants ......... 2

II.     The Child Victims Act Violates the Ex Post Facto Clause ................................................. 7

      A.      The CVA's "Civil" or "Remedial" Labeling Is Not Dispositive ........................... 8

      B.      The CVA Is Punitive in Nature ............................................................................... 9

      C.      The CVA's Retroactive Application Violates the Ex Post Facto Clause ............. 15

      D.      Independently, the CVA Violates the Ex Post Facto Clause Because It Imposes a Coercive Penalty for a Public Wrong ................................................................... 16

CONCLUSION .............................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baltimore Scrap Corp. v. Exec. Risk Specialty Ins. Co.*,
388 F. Supp. 3d 574 (D. Md. 2019) ......12

*Bernard v. Cosby*,
648 F. Supp. 3d 558 (D.N.J. 2023) ......7, 9

*C P v. Society for Roman Catholic Diocese of Lake Charles*,
2025 WL 662821 (W.D. La. Feb. 28, 2025) ......8

*Calder v. Bull*,
3 U.S. 386 (1798) ......10, 15

*Campbell v. Holt*,
115 U.S. 620 (1885) ......10

*United States v. Charles*,
240 F. Supp. 2d 488 (M.D.N.C. 2002) ......4

*Chase Securities Corp. v. Donaldson*,
325 U.S. 304 (1945) ......3, 10

*DeLonga v. Diocese of Sioux Falls*,
329 F. Supp. 2d 1092 (D.S.D. 2004) ......8

*Does #1-5 v. Snyder*,
834 F.3d 696 (6th Cir. 2016) ......12

*Ellingburg v. United States*,
607 U.S. 163 (2026) ......9, 16, 17

*Foresman v. Foresman*,
570 P.3d 109 (Haw. 2025) ......8

*Grice v. Colvin*,
97 F. Supp. 3d 684 (D. Md. 2015) ......4

*Hengle v. Treppa*,
19 F.4th 324 (4th Cir. 2021) ......4

*Hopkins v. Watson*,
108 F.4th 371 (5th Cir. 2024) ......11

*Kennedy v. Mendoza-Martinez*,
    372 U.S. 144 (1963)................................................................................10

*Logan v. Drew*,
    790 F. Supp. 181 (N.D. Ill. 1992) ..........................................................11

*Lundeen v. Canadian Pac. Ry. Co.*,
    532 F.3d 682 (8th Cir. 2008) ..................................................................11

*United States v. O'Neal*,
    180 F.3d 115 (4th Cir. 1999) ..................................................................14

*PC-41 Doe v. Poly Prep Country Day School*,
    590 F. Supp. 3d 551 (E.D.N.Y. 2021) ......................................................4

*Shadburne-Vinton v. Dalkon Shield Claimants Trust*,
    60 F.3d 1071 (4th Cir. 1995) ....................................................................3

*Smith v. Doe*,
    538 U.S. 84 (2003)..........................................................................2, 8, 15

*Stogner v. California*,
    539 U.S. 607 (2003).................................................................................16

**Statutes**

Md. Code Ann., Cts. & Jud. Proc. § 5-117(a) (2023)........................................11, 16, 17

Md. Crim. L. § 3-602.2 (2019) ........................................................................13

**Other Authorities**

H.B. 642, 2017 Gen. Assemb., 437th Session (Md. 2017)..............................................15

Defendants WWE, TKO, Vince McMahon, and Linda McMahon respectfully submit this Reply in support of their Motion for Judgment on the Pleadings.[1]

## PRELIMINARY STATEMENT

The CVA is unconstitutional for two independent reasons.  First, it violates the Due Process Clause, as applied to Defendants in this matter.  Second, it violates the Ex Post Facto Clause. Plaintiffs, the Attorney General of Maryland, and Amici Curiae[2] do not rebut Defendants' showing that application of the CVA here would infringe Defendants' constitutional rights.

As to Defendants' Due Process challenge, the oppositions make clear that Plaintiffs, the Attorney General, and Amici all agree that it would be easier to argue against a facial challenge to the CVA (or, at the very least, a generic due process argument akin to those routinely rejected as insufficient).  But Defendants have not advanced a facial challenge to the CVA.  Nor have they advanced threadbare hardships inherent to any revival statute that resurrects historical claims. Instead, as Defendants' opening brief made clear, Defendants' due process challenge is based on the specific facts and circumstances of this case and the resulting hardships and oppressive effects here—including the loss of key witnesses, memories, and documentary evidence central to the parties' claims and defenses.  Those hardships and oppressive effects are particularly significant in this case—these allegations were publicly aired, litigated, and criminally investigated without any resulting liability during the following three decades.  Moreover, the widely reported investigation generated a substantial amount of hearsay and misinformation in the public record on which Plaintiffs now rely.  Yet Defendants, due to both the closure of the events and the

---

[1]  Capitalized terms not otherwise defined have the same meaning as in Defendants' opening brief.

[2]  Amici Curiae consists of seven different public interest groups:  Public Justice, American Association for Justice, Maryland Association for Justice, Inc., Enough Abuse, Child USA, National Center on Sexual Exploitation, and Human Rights for Kids, and are hereinafter referred to as "Amici."

expiration of the statute of limitations, had no reason to amass evidence rebutting these misstatements in anticipation of future litigation that was not reasonably expected to materialize. Of the three oppositions, only Plaintiffs even attempt to engage with Defendants' as-applied challenge. But Plaintiffs' arguments only reinforce the very hardships and oppressive effects that Defendants have established would contravene their due process rights because Plaintiffs' briefing confirms that they intend to rely on geographically and temporally expansive allegations to bolster their claims.

As for Defendants' Ex Post Facto challenge, the oppositions make the same mistake: they answer the wrong question. Defendants do not dispute that the Maryland legislature labeled the CVA "civil" and "remedial." Instead, Defendants challenge the CVA's punitive effect—the controlling second step of the two-pronged inquiry set forth in *Smith v. Doe*, 538 U.S. 84 (2003). At that step, at least six of the seven *Mendoza-Martinez* factors confirm that the CVA operates as punishment. The oppositions, to the extent they address the *Mendoza-Martinez* factors at all, fail to meaningfully address Defendants' arguments and ignore the cumulative force of the factors.

Nothing in the oppositions undercuts that the CVA is inconsistent with the guarantees embodied in the Constitution's Due Process and Ex Post Facto clauses. Accordingly, Defendants' Motion for Judgment on the Pleadings should be granted.

## **ARGUMENT**

### I.   The Child Victims Act Violates the Due Process Clause as Applied to Defendants

As shown in Defendants' opening brief, the retroactive application of the CVA violates Defendants' due process rights based on the unique facts and circumstances of this case. Specifically, in the 40 years since the alleged abuse and the 30 years since the underlying allegations were first reported and criminally investigated (resulting in *no charges*), key witnesses have died, memories have faded, and documentary evidence has been lost—significantly impairing

Defendants' ability to mount meaningful factual defenses relative to their positions before the original limitations period expired in the 1990s. ECF No. 93-1 ("Defs. Br.") at 1, 6, 11–17. These special hardships and oppressive effects from retroactive application of the CVA are exacerbated by the expansive geographic and temporal scope of Plaintiffs' behind-closed-doors allegations as well as Plaintiffs' ongoing attempts to rely on prejudicial, but irrelevant, allegations in the public domain from the last two decades. *Id.* at 14–17; *see* ECF No. 102 ("Pls. Opp.") at 7, 15–18.

Plaintiffs, the Attorney General, and Amici fail to meaningfully refute Defendants' showing that retroactive application of the CVA results in special hardships and oppressive effects here. Instead, they each argue that the CVA is rationally related to legitimate government interests—which Defendants do not dispute as a general matter—and assert various purported grounds for why the "special hardships or oppressive effects" standard the Supreme Court articulated in *Chase Securities Corp. v. Donaldson*, 325 U.S. 304 (1945), is either inapplicable or not satisfied here. *See* ECF No. 101 ("AG Opp.") at 3–5, 9–11; Pls. Opp. at 9–18. Those arguments are unpersuasive for multiple reasons.

*First*, the Attorney General erroneously asserts that *Chase Securities*' "special hardships or oppressive effects" standard is inapplicable because it conflicts with the Fourth Circuit's decision in *Shadburne-Vinton v. Dalkon Shield Claimants Trust*, 60 F.3d 1071 (4th Cir. 1995). AG Opp. at 3–5, 9–11. Not so. In *Chase Securities*, after holding that the retroactive lifting of a statute of limitations was not a *per se* Fourteenth Amendment violation, the Supreme Court noted that the revival of time-barred claims could violate due process if it results in "special hardships or oppressive effects." 325 U.S. at 315–16. The Supreme Court has never departed from that observation, nor has the Fourth Circuit suggested otherwise. Indeed, in *Shadburne-Vinton*, which involved a facial challenge, the Fourth Circuit did not even reference "special hardships" or

3

"oppressive effects."   60 F.3d at 1074–75.   Even if the Supreme Court's statements in *Chase Securities* are dicta, this Court is nonetheless "obliged to afford great weight to" the Court's observations, and so the "special hardships or oppressive effects" standard plainly applies to Defendants' as-applied challenge.   *Hengle v. Treppa*, 19 F.4th 324, 346–47 (4th Cir. 2021) (citations omitted); *see also Grice v. Colvin*, 97 F. Supp. 3d 684, 709 (D. Md. 2015) (applying "special hardships or oppressive effects" standard to as-applied challenge); *United States v. Charles*, 240 F. Supp. 2d 488, 489 (M.D.N.C. 2002) (same).

*Second*, Plaintiffs' contentions that Defendants' proffered hardships and oppressive effects are "boilerplate," not "uniquely problematic," and otherwise insufficient to establish a due process violation (Pls. Opp. at 12–18) are similarly meritless.   Defendants' opening brief provides a detailed accounting of the hardships and oppressive effects at issue here—all predicated, as Plaintiffs concede (*id.* at 14), on dozens of factual assertions from decades ago contained in Plaintiffs' complaint and incorporated by reference therein.   Defs. Br. at 1–7, 11–17.   Unable to point to a single case where comparable arguments have been rejected, Plaintiffs instead rely on inapposite authority like *PC-41 Doe v. Poly Prep Country Day School*, 590 F. Supp. 3d 551 (E.D.N.Y. 2021), where, unlike here, the defendants advanced *no arguments* specific to the facts and circumstances of their case to claim a due process violation.   *Id.* at 564.

Plaintiffs' attempts to downplay the specific arguments Defendants have raised fare no better.   Plaintiffs do not meaningfully challenge the fact that extensive media coverage in the 1990s, the 1992 settlement with Tom Cole, the subsequent criminal investigation resulting in *no charges*, and the expiration of the initial limitations period reasonably led Defendants to believe that these allegations would never again resurface in litigation.   *See* Defs. Br. at 1–7, 12.   Instead, Plaintiffs argue, in essence, that Defendants should have had the foresight to predict (i) "modern"

4

understandings of delayed reporting of child sex abuse and (ii) that the Maryland legislature would do what it repeatedly, and upon the advice of the Attorney General, said it would not do. Pls. Opp. at 14; *see* Defs. Br. at 7–8 (detailing the evolution of the CVA, including first declining to extend the limitations period in 1994, and then, in 2003, refusing to revive previously extinguished claims on the advice of the Attorney General because of due process concerns).

Plaintiffs likewise fail to refute Defendants' arguments regarding the loss of key witnesses who purportedly observed Plaintiffs' alleged interactions with Phillips and others (Defs. Br. at 12–13), summarily contending that "many witnesses are still alive." *See* Pls. Opp. at 16. But none of the non-party witnesses Plaintiffs identify are alleged to have firsthand knowledge of the interactions at issue. *See id*. at 6. Plaintiffs also shrug off Defendants' arguments concerning the deaths of individuals central to Plaintiffs' prior notice allegations (Defs. Br. at 13) as "evidentiary issues . . . for another day." Pls. Opp. at 17. But no discovery or evidentiary ruling can resurrect deceased witnesses or reconstruct lost memories and documentary evidence. This due process concern is particularly stark here: all seven Plaintiffs are alive to testify, while all three alleged perpetrators are deceased, and the few purported witnesses to the alleged abuse are also dead or unidentifiable due to the passage of time.

And, when confronted with Defendants' contentions that Plaintiffs improperly rely on inflammatory conduct alleged to have occurred *decades after* their alleged injuries (Defs. Br. at 14 (citing AC ¶¶ 23, 32, 115–43)), Plaintiffs double down and argue that allegations regarding company culture up to 40 years *after* the conduct at issue somehow "empowered the perpetrators" years *before* that culture allegedly emerged. Pls. Opp. at 18. This argument defies common sense, further demonstrating the special hardships Defendants face in defending against Plaintiffs' allegations here as compared to the original limitations period.

*Third*, Plaintiffs speciously recast Defendants' unremarkable statement that exculpatory records from 40 years ago likely no longer exist—because businesses do not ordinarily retain records for decades, (Defs. Br. at 13)—as an "admi[ssion] that [Defendants] destroyed relevant evidence concerning the Ring Boys Scandal," (Pls. Opp. at 15–16; *see id.* at 3). Defendants' moving brief says nothing of the sort. Their unremarkable observation that entities who were not obligated to preserve documents likely would not have retained them for several decades does not remotely bespeak spoliation. Plaintiffs' argument to the contrary is wholly meritless, which presumably explains why they cite no authority suggesting that parties have any obligation to retain documents long after the expiration of relevant statutes of limitations.

*Fourth*, Plaintiffs incorrectly argue their concession that they are only seeking damages for incidents that occurred in Maryland somehow resolves the due process concerns that Defendants have raised. Pls. Opp. at 19.[3] It does not. Indeed, Plaintiffs' opposition makes clear that they still intend to seek and present evidence concerning claimed conduct and injuries that allegedly occurred behind closed doors, outside the presence of Defendants, in connection with events "up and down the East Coast" in order to prove "state of mind and knowledge." *Id.* As Defendants established in their moving brief, the expansive geographical and temporal scope of Plaintiffs' allegations exacerbates the hardships and oppressive effects of the CVA's retroactive elimination of the statute of limitations, as it significantly increases the number of allegations for which the unavailability of witnesses, faded memories, and the loss of documentary evidence makes it exceedingly difficult to present factual defenses. Defs. Br. at 14–15. Contrary to the Attorney

---

[3] To the extent it is the Attorney General's position that the CVA allows Plaintiffs to seek redress in Maryland for all alleged misconduct that occurred in states nationwide—a point the Attorney General's brief does not clarify, (*see* AG Opp. at 11–12)—the Court need not address that issue, as Plaintiffs have explicitly conceded that such extraterritorial application is not sought here, (Pls. Opp. at 19).

General's suggestion, this is not the "same argument" Defendants made in their motions to dismiss, (AG Opp. 12); rather, the argument is that Maryland's revival of these claims causes special due process hardships by forcing Defendants to litigate factual allegations with a far broader geographical scope.

*Finally*, Amici's contention that the "special hardships or oppressive effects" standard categorically cannot apply in child sex abuse cases is similarly misguided. ECF No. 112 ("Amici Opp.") at 9–10. The cases on which Amici rely all stand for the proposition that alleged *child sex offenders* cannot establish "special hardships or oppressive effects" by arguing that, in engaging in sexual abuse, they relied to their detriment on an earlier statute of limitations. *See* Amici Opp. at 9 (first citing *Quintanilla v. Roman Catholic Archbishop of Agana*, 2021 WL 11629867, at *2, *4–5 (D. Guam Mar. 22, 2021) (rejecting argument by alleged abuser); then citing *Roe v. Ram*, 2014 WL 4276647, at *1, *7–8 & n.10 (D. Haw. Aug. 29, 2014) (same); and then citing *Bernard v. Cosby*, 648 F. Supp. 3d 558, 571 (D.N.J. 2023) (same)). Amici's strained attempt to extend this reasoning to non-perpetrators accused of negligence, like Defendants here, is not supported by any case law and, in any event, makes no sense. Defendants' due process argument is not, as Amici have suggested, predicated on "claim[ed] reliance on a shorter limitations period in deciding whether to commit or conceal unlawful conduct." Amici Opp. at 9.

For these reasons, and those stated in Defendants' opening brief (Defs. Br. at 1–17), the CVA violates the Due Process Clause as applied to Defendants in this matter.

## II.    The Child Victims Act Violates the Ex Post Facto Clause

As demonstrated in Defendants' moving papers, application of the CVA would also be unconstitutional under the Ex Post Facto Clause because the CVA is punitive in effect and retroactive. Defs. Br. at 17–24. Plaintiffs and the Attorney General respond by emphasizing the CVA's civil label, invoking inapplicable revival-statute cases, and disputing in isolation the

individual *Mendoza-Martinez* factors that courts weigh in determining whether a civil statute is punitive in effect. Pls. Opp. at 20–28; AG Opp. at 12–22. Amici similarly miss the mark, focusing on the purpose of the statute and the harm caused by child sex abuse. Amici Opp. at 12–15. But these arguments do not answer the controlling question: whether the CVA is punitive *in effect*. Because Defendants have shown that it is, the Motion should be granted.

###### A. The CVA's "Civil" or "Remedial" Labeling Is Not Dispositive

Plaintiffs, the Attorney General, and Amici devote a substantial portion of their responses to establishing that the General Assembly's *intent* in passing the CVA was to create a "civil," "remedial," and "compensatory" statute. Pls. Opp. at 20–23; AG Opp. at 13–14; Amici Opp. at 12–13. But Defendants do not dispute the legislature's chosen label; Defendants challenge the statute's *effects*. Defs. Br. at 19–24. That is the second step of the Supreme Court's two-step test delineated in *Smith v. Doe*, 538 U.S. 84, 92, 97 (2003), and it is where this case is decided.

Specifically, *Smith* prescribes a two-pronged inquiry pursuant to which a civil label does not end the analysis but merely begins it. *Id.* at 92. So, even where a legislature intends to "enact a regulatory scheme that is civil and nonpunitive," a court must still ask whether the statute is "so punitive either in purpose or effect as to negate" that intention. *Id.* For this reason, *Foresman v. Foresman*, 570 P.3d 109, 1103–04 (Haw. 2025), *Oblates of St. Francis de Sales*, 15 A.3d 1247, 1258 (Del. 2011), and *DeLonga v. Diocese of Sioux Falls*, 329 F. Supp. 2d 1092, 1102 (D.S.D. 2004), should be disregarded because each rests solely on the civil-label reasoning that *Smith*'s second step rejects and thus fails to conduct a punitive-effects analysis. The additional cases Plaintiffs cite fare no better. The decision in *C P v. Society for Roman Catholic Diocese of Lake Charles*, 2025 WL 662821, at *1, *4–5 (W.D. La. Feb. 28, 2025), rests on a statute that authorized only a three-year revival window, not the wholesale elimination of the limitations period at issue here, and the court reached its non-punitive conclusion through only a cursory analysis, without

8

ever analyzing the *Mendoza-Martinez* factors. *Bernard v. Cosby*, 648 F. Supp. 3d 558, 565, 572–73 (D.N.J. 2023), is no more helpful:  although that court applied the *Mendoza-Martinez* factors, the relevant New Jersey statute provided only a two-year revival window and revived only a "narrow range of previously extinguished claims," whereas the CVA revives claims on a wholesale basis, arising from *all* past conduct without *any* temporal limit.  The absence of temporal limits increases the punitive effects of the CVA.

The second step in *Smith* exists precisely so that a legislature cannot immunize a punitive scheme through labels and placement in a code.  Defs. Br. at 25–26; *Ellingburg v. United States*, 607 U.S. 163, 176–78 (2026) (Thomas, J., concurring).  And as Defendants explained in their opening brief (and further elaborate below), application of the relevant factors shows that the CVA is punitive as-applied to Defendants, the legislature's intent notwithstanding.  Plaintiffs' contention that the CVA lacks the "hallmarks" of punishment catalogued in *Ellingburg* (Pls. Opp. at 21), misfires for the same reason:  those hallmarks bear on legislative intent and statutory construction at step one, not on the punitive-effect question that controls here.  *Ellingburg*, 607 U.S. at 166–68.

### B.    The CVA Is Punitive in Nature

As Defendants have shown, at least six of the seven *Mendoza-Martinez* factors compel the conclusion that the CVA is punitive in effect such that its retroactive effects violate the Ex Post Facto Clause.  Defs. Br. at 19–23.  Plaintiffs' and the Attorney General's contrary arguments isolate each factor and ignore the cumulative force of the analysis, while Amici, for their part, do not even purport to address the *Mendoza-Martinez* factors.

*First*, as Defendants explained, the CVA's predicate conduct is expressly criminal and has always fallen within the traditional domain of criminal punishment (factor 2).  Defs. Br. at 19. Both Plaintiffs and the Attorney General dismiss this factor by pointing out that the CVA is a civil statute.  But that does not distinguish it from every other statute evaluated under *Smith*'s second

9

step using the *Mendoza-Martinez* factors.  Plaintiffs' other responses on factor 2 are even more specious.

To start, Plaintiffs rely on *Campbell v. Holt*, 115 U.S. 620 (1885), and *Chase Securities Corp. v. Donaldson*, 325 U.S. 304 (1945), claiming these cases stand for the proposition that reviving a tort is never punishment.  Pls. Opp. at 24–25.  However, those are due-process, vested-rights cases about whether a defendant has a vested right in a limitations defense—not Ex Post Facto cases about whether a statute is punitive in effect.  *See Chase Securities*, 325 U.S. at 314. In addition, contrary to Plaintiffs' argument (Pls. Opp. at 21), Defendants do not contend that the CVA's tether to criminally defined conduct, standing alone, triggers Ex Post Facto scrutiny. Rather, that tether is one of several *Mendoza-Martinez* factors that collectively establish the CVA's punitive effect at step two.  Defs. Br. at 19.

Plaintiffs also conflate two distinct inquiries when addressing *Calder*'s categories under the second factor.  Pls. Opp. at 24 (citing *Calder v. Bull*, 3 U.S. 386, 390 (1798)).  The second *Mendoza-Martinez* factor asks whether the statutory subject has historically been regarded as punishment as part of the punitive-effects inquiry.  *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963).  The decision in *Calder* does not address the punitive-effects inquiry.  Rather, *Calder* addresses whether a punitive law, once applied retroactively, falls within the Ex Post Facto Clause.  3 U.S. at 391.  As Defendants explain below, because the statute is punitive in nature— including because the second factor supports that conclusion—and it falls within *Calder*'s categories, the CVA's retroactive application violates the Ex Post Facto Clause.  *See infra* § II(C); *see also* Defs. Br. at 23–24.

The Attorney General advances a parallel and equally unavailing argument, contending that the CVA merely "facilitates suit[s] for tort liability that are not historically regarded as

10

punishment." AG. Opp. at 16. But that framing works only by relying on ordinary tort cases untethered to criminal liability and ignoring the CVA's defining feature: liability exists only where the plaintiff proves conduct that Maryland defines as criminal sexual abuse. *Id.* at 16–17.

*Second*, contrary to Plaintiffs' arguments, the CVA does require a finding of scienter (factor 3). Defs. Br. at 20. Plaintiffs' retort is that the CVA "does not require that the Defendant had scienter" because it is "a negligence case." Pls. Opp. at 26. That misreads the factor. Liability under the CVA is available only on proof that "sexual abuse" occurred—conduct the statute defines by reference to criminal offenses that by their nature require intentional or knowing wrongdoing. Md. Code Ann., Cts. & Jud. Proc. § 5-117(a) (2023); Defs. Br. at 20. The scienter inheres in the predicate act the plaintiff must prove, regardless of the third party's own mental state. Plaintiffs' reliance on *Lundeen* is not availing because the decision does not address that defect. *See* Pls. Opp. at 26. *Lundeen* involved ordinary negligence actions untethered to criminal conduct, not a statute whose liability predicate is a defined criminal sexual offense. *See Lundeen v. Canadian Pac. Ry. Co.*, 532 F.3d 682, 691 (8th Cir. 2008); *see also Logan v. Drew*, 790 F. Supp. 181, 183 (N.D. Ill. 1992) (holding that recovery of punitive damages for a Section 1983 claim does not violate the Ex Post Facto Clause). The Attorney General's reliance on *Hopkins* is similarly misplaced. AG Opp. at 20. Whereas *Hopkins* declined to "bootstrap" the scienter requirements of predicate felonies into a disenfranchisement statute that merely regulated already-convicted offenders, *Hopkins v. Watson*, 108 F.4th 371, 387 (5th Cir. 2024), the CVA makes proof of intentional criminal "sexual abuse" an essential element of liability. So, unlike the statute at issue in *Hopkins*, the CVA's scienter is not imported from a separate conviction but is an operative fact the statute itself requires for liability to attach. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-117(a) (2023).

11

*Third*, the CVA functions as retribution for past conduct (factor 4).  Defs. Br. at 20–21.
Plaintiffs' unsupported assertion that "bearing the burden of potential civil litigation is the price
paid by all citizens," Pls. Opp. at 26, ignores the very purpose of statutes of limitations:  citizens
should not be subject to limitless and eternal liability.  *See Baltimore Scrap Corp. v. Exec. Risk
Specialty Ins. Co.*, 388 F. Supp. 3d 574, 588 (D. Md. 2019) (explaining that statutes of limitations
"ensure fairness to defendants by encouraging promptness in bringing claims" and allowing
individuals to "plan for the future without the indefinite threat of potential liability") (quoting
*Hecht v. Resolution Tr. Corp.*, 635 A.2d 394, 399 (Md. 1994)).  And, their attempt to distinguish
*Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016) is unavailing.  Selectively quoting from *Snyder*,
Plaintiffs argue that the Sixth Circuit found the statute retributive only because it "imposes actual
restraints on liberty."  Pls. Opp. at 27.  Plaintiffs strategically excerpt the quote, however, which
obscures the court's holding that SORA was "retributive ***in that it looks back at the offense (and
nothing else)*** in imposing its restrictions[.]"  *Snyder*, 834 F.3d at 704 (emphasis added); *see also*
Pls. Opp. at 27 ("The Sixth Circuit thus found that this civil statute was 'retributive . . . in imposing
its *restrictions*.'") (emphasis and modification in original).  Thus, consistent with *Snyder*, the
CVA, which "looks back" to impose punishment, is retributive.

Plaintiffs' and the Attorney General's remaining arguments under this factor minimize and
misconstrue Defendants' contention that the "backward-looking" nature of the CVA renders it
retribution for past conduct.  In particular, Plaintiffs (i) assert summarily that "all tort liability" is
"backward-looking," ignoring that the CVA resurrects long-expired claims by removing the statute
of limitations altogether; (ii) put forth an inapt argument concerning injunctive relief, which makes
little sense in a negligence suit predicated on four-decades-old allegations; and (iii) conflate a cap
on punitive damages with the absence of punishment, which is an obvious logical fallacy—a limit

12

on punishment cannot be equated with the absence of punishment.  Pls. Opp. at 26–27.  And the Attorney General incorrectly contends that Defendants raise mere "wisps of deterrence and retribution" to claim punitive intent.  AG Opp. at 19 (quoting *Nat'l Ass'n for Rational Sexual Offense Ls. v. Stein*, 112 F.4th 196, 210 (4th Cir. 2024)).  Defendants' argument instead goes well beyond the generalized deterrent effect common to torts and civil regulation.  *See* Defs. Br. at 20–21.

*Fourth*, as shown in Defendants' opening brief, the CVA applies exclusively to behavior that is already criminal, which weighs in favor of punitiveness (factor 5).  Defs. Br. at 21–22.  Plaintiffs and the Attorney General try to sidestep this factor by recasting the CVA as a remedial negligence statute aimed at an "enabler" who merely breached a tort-law duty, rather than criminal perpetrators.  Pls. Opp. at 26–27; AG Opp. at 20.  But that distinction neither moves the analysis nor is it correct.  A statute can be punitive even when it imposes consequences on someone other than the abuser.  Indeed, Maryland criminal law itself punishes non-perpetrators whose conduct facilitates or permits abuse, including those who fail to report child sexual abuse.  *See, e.g.*, Md. Crim. L. § 3-602.2 (2019).  The CVA's extension to third parties alleged to have enabled abuse therefore does not diminish its punitive nature; if anything, it confirms that the statute operates within the same punitive space as Maryland's criminal prohibitions.

Further, the Attorney General's assertion that a "mere reference to a crime in a civil statute does not make such statute punitive," AG Opp. at 15, similarly misses the point:  the Attorney General is viewing factors in isolation without regard to their cumulative effect.  Defendants do not argue that a reference to a crime *alone* makes the CVA punitive.  Rather, the *combination* of the factors, including, but not limited to, the tether to criminal conduct, identify the CVA as a

13

punitive statute.   The Attorney General cannot defeat Defendants' showing by isolating and minimizing each factor in turn.

*Fifth*, the CVA cannot be assigned a non-punitive purpose, and neither Plaintiffs nor the Attorney General offers a meaningful response on this factor (factor 6).  Defs. Br. at 22.  Plaintiffs invoke only the CVA's generic remedial purpose.  Pls. Opp. at 28.  The Attorney General underscores the same point and argues further that statutes with greater linkages to criminal schemes have been deemed non-punitive.  AG Opp. at 15–16.  But as Defendants demonstrated in their opening brief, the plain text of the statute confirms that the General Assembly decided to impose monetary sanctions for claims arising from criminal sexual offenses and nothing else. Defs. Br. at 22.  By tying liability to criminal conduct alone, the most rational explanation for the statute is punishment.  *Id*.

The cases on which the Attorney General relies (AG Opp. at 15–16) do not suggest otherwise.  Instead, those cases are either inapplicable to factor 6, readily distinguishable, or both. For instance, in *United States v. O'Neal*, 180 F.3d 115, 124 (4th Cir. 1999), several factors militated against from punishment because the statute at issue (i) required no finding of scienter because the conviction had already occurred, (ii) did not apply to conduct that was already criminal, and (iii) served a forward-looking public-safety purpose rather than imposing consequences for past conduct.

*Sixth*, the CVA is excessive in its application to Defendants, and Plaintiffs and the Attorney General fail to engage with Defendants' specific hardships (factor 7).  *See* Pls. Opp. at 28; AG Opp. at 17–18.   Adjudicating claims reaching back roughly 40 years—when the alleged perpetrators and key witnesses (Phillips, Garvin, Patterson, Cole, Sammartino, Graham, and Vince McMahon, Sr.) are all deceased—is excessive in relation to any conceivable civil regulatory

14

purpose. Defs. Br. at 22–23. The Attorney General's own framing that this factor is not about "second guessing the legislature's choice of solution" but is instead about "whether the chosen means are reasonable in light of the nonpunitive objective" only underscores Defendants' argument. *See* AG Opp. at 17–18 (citations omitted). The "chosen means" are not reasonable. Maryland previously advanced the same objectives through a far narrower 2017 measure, allowing claims to proceed only until a plaintiff reached the age of 38. H.B. 642, 2017 Gen. Assemb., 437th Session (Md. 2017).

Finally, Defendants do not contend the CVA imposes a physical restraint on liberty (factor 1). However, that single factor does not save the statute. The *Mendoza-Martinez* factors must be viewed collectively, *Smith*, 538 U.S. at 97, and the remaining six factors, taken together, confirm the CVA's punitive effect.

### C.    The CVA's Retroactive Application Violates the Ex Post Facto Clause

Because Defendants have shown that the CVA is punitive in nature and applies retroactively within the scope of the categories identified in *Calder v. Bull*, 3 U.S. 386, 390–91 (1798), the statute violates the Ex Post Facto Clause. Plaintiffs' argument that the CVA fits none of the *Calder* categories depends entirely on the premise that the statute is non-punitive. Pls. Opp. at 24–25. Once the punitive-effect showing has been made, however, the statute is treated as a criminal-law equivalent and the *Calder* categories apply. Defs. Br. at 23–24.

As shown in Defendants' opening brief, the CVA satisfies two *Calder* categories. Defs. Br. at 23. *First*, it enhances punishment. *Id.* Plaintiffs respond that the CVA imposes no fine and even caps damages. Pls. Opp. at 25, 28. But the enhanced punishment is the coercive monetary exposure itself. Defendants faced zero liability after the late 1990s, whereas the CVA now exposes them to temporally unlimited liability. Defs. Br. at 23. Extending the window of exposure enhances the consequences attached to the alleged conduct.

15

*Second*, the CVA alters the quantum of evidence sufficient to impose liability. *Id.* at 23–24. Plaintiffs insist the CVA "alters no rule of evidence" and that a plaintiff who lacks proof simply loses on summary judgment. Pls. Opp. at 25. But, as the Supreme Court explained in *Stogner v. California*, 539 U.S. 607, 615 (2003), a limitations bar "reflects a legislative judgment that, after a certain time, no quantum of evidence" can justify liability. Removing that bar necessarily lowers the evidentiary threshold. *See* Defs. Br. at 23–24.

### D. Independently, the CVA Violates the Ex Post Facto Clause Because It Imposes a Coercive Penalty for a Public Wrong

Finally, as Defendants demonstrated in their opening brief, even if the CVA is not punitive, the statute violates the Ex Post Facto Clause because, as Justices Thomas and Gorsuch have recently explained, *Calder* has been misinterpreted to artificially restrict the Clause to criminal statutes. Properly understood, the Ex Post Facto Clause forbids laws that impose retroactive liability, whether civil or criminal, for past wrongs. Defs. Br. at 24–27 (citing *Ellingburg*, 607 U.S. at 169–86 (Thomas, J., concurring)).

Plaintiffs and the Attorney General incorrectly dismiss Defendants' argument as a "delay[] tactic" (Pls. Opp. at 28) and an invitation to overturn centuries of precedent (AG Opp. at 21–22). Defendants have made no such overtures. In any event, Plaintiffs are wrong that the CVA passes constitutional muster under the approach proposed in Justices Thomas and Gorsuch's recent concurring opinion in *Ellingburg*. Pls. Opp. at 28.

Plaintiffs' own concession decides the question. Plaintiffs agree that "sexual abuse like rape is a public wrong." Pls. Opp. at 29. That is the precise predicate for the *Ellingburg* concurrence test, under which retroactive laws that "impose coercive penalties for public wrongs" fall within the Clause. *Ellingburg*, 607 U.S. at 182 (Thomas, J., concurring). The CVA does not revive ordinary private battery claims; it revives only claims for "sexual abuse" defined explicitly

16

by reference to criminal offenses.  Md. Code Ann., Cts. & Jud. Proc. § 5-117(a).  The public-wrong character is the statute's defining feature.

Plaintiffs' framing—that the CVA is "enforced by a private person to vindicate his own private rights," Pls. Opp. at 29—ignores *Ellingburg*'s recognition that "[a] single act could be both a private wrong and a public wrong."  607 U.S. at 180.  The private cause of action does not erase the public-wrong predicate that the State selected and defined by reference to its criminal law.  In enacting the CVA, the sovereign has deputized private litigants to impose coercive monetary penalties for that publicly defined wrong, retroactively.  Defs. Br. at 26 (citing *Robertson v. United States ex rel. Watson*, 560 U.S. 272, 279 (2010) (Roberts, C.J., dissenting)).

For these reasons, and those set forth in Defendants' opening brief, the CVA violates the Ex Post Facto Clause, and judgment on the pleadings should be entered for Defendants.

## CONCLUSION

The Motion for Judgment on the Pleadings should be granted for all claims.

17

Dated: July 27, 2026
New York, New York

Respectfully submitted,

**PAUL, WEISS, RIFKIND, WHARTON &
   GARRISON LLP**


*/s/ Gregory F. Laufer*
Daniel J. Toal (*pro hac vice*)
Richard C. Tarlowe (*pro hac vice*)
Gregory F. Laufer (*pro hac vice*)
Emily A. Vance (*pro hac vice*)
1285 Avenue of the Americas
New York, NY  10019-6064
Tel: (212) 373-3000 | Fax: (212) 757-3990
dtoal@paulweiss.com
rtarlowe@paulweiss.com
glaufer@paulweiss.com
evance@paulweiss.com


**GOODELL, DEVRIES, LEECH & DANN,
   LLP**


*/s/ Sean Gugerty*
Linda S. Woolf (Federal Bar No.: 08424)
K. Nichole Nesbitt (Federal Bar No.: 26137)
Sean Gugerty (Federal Bar No.: 21125)
One South Street, 20th Floor
Baltimore, MD  21202
Tel: (410) 783-4000 | Fax: (410) 783-4040
lsw@gdldlaw.com
knn@gdldlaw.com
sgugerty@gdldlaw.com


*Attorneys for World Wrestling Entertainment, LLC
and TKO Group Holdings, Inc.*


*/s/ Jessica T. Rosenberg*
Ilana Roberts (*pro hac vice*)
iroberts@akingump.com
Jessica T. Rosenberg (*pro hac vice*)
jrosenberg@akingump.com
(signed with permission of Ilana Roberts)
Akin Gump Strauss Hauer Feld LLP
One Bryant Park

18

New York, NY  10036
Tel: (212) 872-1012 | Fax: (212) 872-1002

John A. Bourgeois
jbourgeois@kg-law.com
Christopher C. Jeffries
cjeffries@kg-law.com
Kramon & Graham, P.A.
750 East Pratt Street, Suite 1100
Baltimore, MD  21202
Tel: (410) 347-7408 | Fax: (410) 361-8204

*Counsel for Vincent K. McMahon*

*/s/ Samantha Miller Kavanagh*
William J. Murphy (Federal Bar No.: 00497)
wmurphy@zuckerman.com
Samantha Miller Kavanagh
skavanagh@zuckerman.com
(signed with permission of William J. Murphy)
Zuckerman Spaeder LLP
100 E. Pratt Street, Suite 2440
Baltimore, MD  21202
Tel: (410) 332-0444 | Fax: (410) 659-0436

Laura A. Brevetti (*pro hac vice*)
Laura.brevetti@brevettilaw.com
Law Offices of Laura A. Brevetti
575 Lexington Avenue, 14th Floor
New York, NY  10022
Tel: (917) 970-0250

*Counsel for Linda McMahon*

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of July 2026, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and electronic notification of such filing is sent to all CM/ECF participants and counsel of record.

/s/ Gregory F. Laufer
Gregory F. Laufer (*pro hac vice*)

20